**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: WAWA, INC. DATA SECURITY LITIGATION | ) Lead Case No. 2:19-cv-06019-GEKP<br>)<br>) CLASS ACTION<br>)<br>) This Filing Relates To: Consumer Track<br>)<br>) |

**CONSUMER TRACK PLAINTIFFS' APPLICATION FOR
<u>APPOINTMENT OF INTERIM CO-LEAD COUNSEL</u>**

Sherrie R. Savett
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ssavett@bm.net

Benjamin F. Johns
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
bfj@chimicles.com

Roberta D. Liebenberg
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA 19107
Tel: (215) 567-6565
rliebenberg@finekaplan.com

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036-8718
Tel: (917) 438-9102
lnussbaum@nussbaumpc.com

*Proposed Interim Co-Lead Counsel for Consumer Track*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................1

II.     BACKGROUND ................................................................4

III.    ARGUMENT ....................................................................7

        A.      Legal Standard for Leadership Appointments ................................7

                1.   Backgrounds of the Proposed Co-Lead Counsel ....................................7

                2.   The Proposed Co-Lead Counsel Have Demonstrated a Willingness
                     and Availability to Commit to a Time-Consuming Project ...................13

                3.   Each Proposed Co-Lead Counsel Has a History of Working
                     Cooperatively with Other Counsel in These Proceedings ......................15

                4.   Each Proposed Co-Lead Counsel Has Extensive Experience
                     in This Type of Litigation .......................................................15

                5.   Each Proposed Co-Lead Counsel Has Access to Sufficient
                     Resources to Prosecute the Litigation in a Timely Manner....................17

        B.      Other Considerations ....................................................17

                1.   Proposed Co-Lead Counsel Are Guided by Lessons Learned
                     from Prior Cases ...........................................................17

                2.   Proposed Co-Lead Counsel Have Developed a Plan to Assign
                     Discrete Tasks to Other Plaintiffs' Counsel.............................19

                3.   Each Proposed Co-Lead Counsel Has Meaningful Ties
                     to the Philadelphia Area, Where Wawa is Based ...................20

        C.      The Court Should Adopt a Multi-Track Approach for the Consumer,
                Financial Institution, and Employee Tracks .................................21

IV.     CONCLUSION....................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*In re Am. Medical Collection Agency, Inc. Customer Data Security Breach Litig.*,
  No. 19-md-2904 (D.N.J.) ...................................................................9, 12, 15, 16, 22

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-md-02617 (N.D. Cal.) ...........................................................................8, 16

*B&R Supermarket, Inc. v. Visa, Inc., et al.*,
  No. 1:17-cv-02738 (E.D.N.Y. Apr. 7, 2017) ............................................................5

*Bray et al. v. GameStop Corp.*,
  No. 17-cv-01365 (D. Del.) .............................................................................11, 16

*Cole v. NIBCO, Inc.*,
  No. 13-cv-07871 (D.N.J.) .....................................................................................15

*In re Countrywide Fin'l. Corp. Customer Data Security Breach Litig.*,
  MDL 1998, No. 08-MD-01998-TBR (W.D. Ky.) .......................................8, 16, 17

*Davis v. Washington Univ. in St. Louis*,
  No. 17-cv-01641 (E.D. Mo.) .................................................................................15

*In re Department of Veterans Affairs Data Theft Litig.*,
  No. 06-mc-506 (D.D.C.) .........................................................................................2

*In re Domestic Airline Travel Antitrust Litig.*,
  MDL No. 2656, 378 F. Supp. 3d 10 (D.D.C. 2019) ..............................................11

*In re Equifax Inc. Customer Data Security Breach Litig.*,
  No. 17-md-2800 (N.D. Ga.) ..............................................................................8, 16

*In re Experian Data Breach Litig.*,
  No. 15-cv-01592 (C.D. Cal.) ...........................................................................7, 16

*Fulton-Green v. Accolade, Inc.*,
  No. 18-cv-00274-GEKP (E.D. Pa.) .......................................................................19

*In re: Generic Pharmaceuticals Pricing Antitrust Litig.*,
  MDL No. 2724 (E.D. Pa.).................................................................................9, 15

*Gordon v. Chipotle Mexican Grill*,
  No. 17-cv-01415 (D. Colo.).............................................................................11, 16

*Greater Chautauqua Federal Credit Union v. Wawa, Inc.*,
    No. 2:20-cv-00895-GEKP (E.D. Pa. Feb. 18, 2020) ................................................5

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    No. 08-md-01954 (D. Me.).........................................................................................8, 17

*In re Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*,
    MDL 2046, No. 09-MD-2046 (S.D. Tex.)................................................................8, 16

*The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
    No. 14-md-02583 (N.D. Ga.).........................................................................................16

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*,
    No. 11-md-2284-GEKP, Dkt. 55 (E.D. Pa. Jan. 11, 2012)............................1, 2, 19

*Kyles v. Stein Mart, Inc., et al.*,
    No. 19-cv-00483 (D. Del.) ......................................................................................11, 16

*Laster v. Wawa, Inc.*,
    BUR-L-000037-20 (N.J. Sup. Ct., Burlington Cty.)....................................................6

*Love Terminal Partners, L.P. v. City of Dallas*,
    527 F. Supp. 2d 538 (N.D. Tex. 2007) ........................................................................11

*In re Marriott Int'l. Customer Data Security Breach Litig.*,
    No. 19-md-2879 (D. Md.).................................................................................13, 16, 22

*McGlade v. Wawa, Inc. et al.*,
    No. 20-cv-00248 (E.D. Pa.) ..........................................................................................21

*In re Medical Informatics Engineering, Inc. Customer Data Security Breach Litig.*,
    No. 15-md-02667 (N.D. Ind.) ................................................................................8, 16

*Meijer, Inc. v. Abbott Labs.*,
    No. 07-cv-05985 (N.D. Cal.) .........................................................................................13

*Meijer, Inc. v. Warner Chilcott Public Ltd. Co.*,
    No. 12-cv-03824 (E.D. Pa.) ...........................................................................................12

*In re Metopropol Succinate Antitrust Litig.*,
    No. 06-cv-71 (D. Del.)...................................................................................................15

*In re Microcrystalline Cellulose Antitrust Litig.*,
    MDL No. 1402, No. 01-cv-00111 (E.D. Pa.) .........................................................12

*In re MyFord Touch Consumer Litig.*,
No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 216783 (N.D. Cal. Dec. 17, 2019) ........................................................................................................................12

*In re Neurontin Marketing and Sales Practices Litig.*,
No. 04-1081 (D. Mass.) ........................................................................................13

*In re Nexus 6P Product Liab. Litig.*,
No. 17-cv-02185 (N.D. Cal.) ..................................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-md-1720 (E.D.N.Y.) ....................................................................................13

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
No. 1:05-md-01720 (E.D.N.Y.) ..............................................................................10

*Perdue v. Hy-Vee, Inc.*,
No. 19-cv-01330 (C.D. Ill.) ..............................................................................11, 16

*In re Plastics Additives Antitrust Litig.*,
MDL No. 1684, No. 03-cv-02038 (E.D. Pa.) ........................................................12

*In re Processed Egg Products Antitrust Litig.*,
No. 08-md-02002-GEKP (E.D. Pa.) ...................................................1, 2, 19, 22

*In re Providian Financial Corp. Credit Card Terms Litig.*,
MDL No. 1301 (E.D. Pa. 2001) ..............................................................................9

*In re Railway Industry Employees No-Poach Antitrust Litig.*,
MDL No. 2850 (W.D. Pa.) .......................................................................................9

*Smith, et al. v. Temple University*,
No. 18-590 (E.D. Pa.) ............................................................................................10

*In re: Sony Gaming Networks and Customer Data Security Breach Litig.*,
No. 11-md-02258 (S.D. Cal.) ...................................................................................2

*In re Target Corp. Customer Data Security Breach Litig.*,
No. 14-2522 (D. Minn.) .......................................................................................9, 16

*In re: TJX Cos. Retail Security Breach Litig.*,
MDL No. 1838, No. 07-cv-10162-WGY (D. Mass.) ..........................................8, 17

*Udeen v. Subaru of Am., Inc.*,
No. 18-cv-17334 (RBK/JS), 2019 U.S. Dist. LEXIS 172460 (D.N.J. Oct. 4, 2019) ........................................................................................................................12

*In re Urethane Antitrust Litig.*,
MDL No. 1616 (D. Kan.)............................................................................................9, 10, 15

*Weeks v. Google LLC*,
No. 18-cv-00801, 2019 U.S. Dist. LEXIS 215943 (N.D. Cal.) .................................................11

*Winstead v. ComplyRight, Inc.*,
No. 18-cv-04990 (N.D. Ill.) .........................................................................................11, 16

*In re Zappos.com, Inc. Customer Data Security Breach Litig.*,
No. 12-cv-325 (D. Nev.).................................................................................................2

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(g) ...................................................................................................3

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ..................................................................................6

## I.      INTRODUCTION

Plaintiffs' counsel in all pending consumer cases have reached agreement on a proposed leadership structure for the Consumer Track cases, subject to Court approval. The proposed structure consists of four proposed Interim Co-Lead Counsel: (i) Sherrie R. Savett of Berger Montague PC; (ii) Roberta D. Liebenberg of Fine, Kaplan and Black, R.P.C.; (iii) Benjamin F. Johns of Chimicles Schwartz Kriner & Donaldson-Smith LLP; and (iv) Linda Nussbaum of Nussbaum Law Group, P.C.

The proposed leadership structure was agreed-upon in accordance with the Court's February 4, 2020 Case Management Order (Dkt. 62), which instructed counsel in each track to "confer and seek consensus on candidates for the position of lead counsel." Counsel conferred and, through extensive negotiations, agreed to bring together formerly competing counsel to form a strong and cohesive group that will work cooperatively and efficiently to best represent the interests of the sizable consumer class, which may be as large as 30 million credit and debit cardholders.

The proposed Co-Lead Counsel also have been mindful of the Court's statement concerning potential leadership at the January 24, 2020 Preliminary Status Conference, where the Court suggested that the plaintiffs could be guided by the leadership structures that Your Honor appointed in two prior MDL class actions. (Tr. p. 26). *See In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, No. 11-md-2284-GEKP, Dkt. 55 (E.D. Pa. Jan. 11, 2012) ("*Imprelis*") (appointing four Co-Lead Counsel); and *In re Processed Egg Products Antitrust Litig.*, No. 08-md-02002-GEKP, Dkt. 3 & 20 (E.D. Pa.) ("*Eggs Antitrust*") (appointing four Co-Lead Counsel for Direct Purchaser class and four Co-Lead Counsel for Indirect Purchaser class). In both of those prior cases, the Court directed Co-Lead Counsel to work

cooperatively with plaintiffs' counsel outside of the Court-appointed leadership team.  *See Imprelis*, Dkt. 55 at n.3 ("[T]he Court fully expects that Plaintiffs' Interim Co-Lead Counsel will draw on the wealth of skills and experience demonstrated by each of the candidates for interim lead counsel in this matter."); *Eggs Antitrust*, Dkt. 3 at 5 ("The Court also expects Interim Co-Lead Counsel to confer conscientiously with all other counsel representing any plaintiff in this Litigation.").  The proposed Co-Lead Counsel here crafted their proposal with those cases in mind.

This proposal is supported by plaintiffs' counsel from all consumer cases filed in these proceedings.[1]  The appointment of four Co-Lead Counsel is not only consistent with *Imprelis* and *Eggs Antitrust*, but also comports with the leadership structure utilized in other data breach cases where, as here, tens of millions of credit cards have been compromised.  *See, e.g., In re Zappos.com, Inc. Customer Data Security Breach Litig.*, No. 12-cv-325 (D. Nev.) (Dkt. Nos. 191, 202) (four Co-Lead Counsel; 24 million affected credit cards); *In re Department of Veterans Affairs Data Theft Litig.*, No. 06-mc-506 (D.D.C.) (Dkt. No. 11 and Minute Order dated Feb. 28, 2007) (four Co-Lead Counsel; 26.5 million affected Veterans); *In re: Sony Gaming Networks and Customer Data Security Breach Litig.*, No. 11-md-02258 (S.D. Cal.) (Dkt. No. 60) (in lieu of Co-Lead Counsel, Court appointed five-member steering committee).

---

[1] These firms include: (i) Tina Wolfson (Ahdoot & Wolfson, PC); (ii) William B. Federman (Federman & Sherwood); (iii) Jonathan Shub (Kohn, Swift & Graf, P.C.); (iv) Melissa R. Emert (Stull, Stull & Brody); (v) Matt Kupillas (Milberg Phillips Grossman, LLP); (vi) Natalie Finkelman (Shepherd, Finkelman, Miller & Shah, LLP); (vii) Jeffrey Gittleman (Barrack, Rodos & Bacine); (viii) Bernard Gross (Law Offices Bernard M. Gross); (ix) Gene Spector (Spector Roseman & Kodroff P.C.); (x) Lori Feldman (George Gesten McDonald, PLLC); (xi) Ariana Tadler (Tadler Law); (xii) Larry King (Kaplan Fox & Kilsheimer LLP); and (xiii) Jean Martin (Morgan & Morgan).  Several other firms filed cases on behalf of both consumer and financial institution classes.  Those counsel support the leadership structure being sought here.

The proposed Co-Lead Counsel will ensure efficiency by splitting tasks among themselves. For example, Ms. Savett and Ms. Liebenberg would be the primary spokespeople in Court for the consumer cases, and Mr. Johns and Ms. Nussbaum would be primarily responsible for coordination with counsel in the other tracks. Moreover, the proposed Co-Lead Counsel would closely coordinate with one another before beginning work on any specific task in order to avoid any potential duplication of effort.

Based on the extensive experience of the proposed Co-Lead Counsel, they do not believe that it is necessary to appoint a Steering Committee for the consumer class. Instead, they believe it would be more efficient to assign counsel to discrete tasks based on their experience and expertise. These highly capable Plaintiffs' counsel will be asked to assist on an as-needed basis on certain pre-defined tasks during the litigation, as discussed more fully below.

Proposed Co-Lead Counsel would work cooperatively not only with the other firms that have filed consumer cases, but also with the firms that have filed the first three Financial Institution Track cases.[2] Proposed Co-Lead Counsel have already coordinated with the proposed Co-Lead Counsel for the Financial Institution Track cases with respect to a schedule for filing Consolidated Amended Complaints and potential motions to dismiss; the coordination of discovery; the potential sharing of experts on overlapping issues; and a draft Protective Order and ESI Order.

---

[2] Proposed Co-Lead Counsel in the consumer track cases believe that the appointment of Gary Lynch of Carlson Lynch, Christian Levis of Lowey Dannenberg, and Karen Riebel of Lockridge Grindal Nauen as proposed Co-Lead Counsel in the Financial Institution Track cases (along with the attorneys working with them) would best serve the interest of the Financial Institution class.

In sum, the proposed Co-Lead Counsel readily satisfy all criteria set forth in the Court's February 4, 2020 Case Management Order, as well as the leadership factors set forth in Fed. R. Civ. P. 23(g).

## II.   BACKGROUND

On December 19, 2019, Wawa first publicly announced a massive nine-month long data breach affecting all of its convenience store and gas pump locations.  According to Wawa, the data breach involves "malware on Wawa payment processing servers," and the "malware affected payment card information, including credit and debit card numbers, expiration dates, and cardholder names."[3]

The Consumer Plaintiffs allege that this data breach occurred because Wawa had not taken sufficient steps to ensure the integrity of its customers' payment card information.  *The Philadelphia Inquirer* reported that, in November of 2019, Visa had warned all gas stations that accept its cards (including Wawa) that cybercriminals were targeting them due to their ongoing use of dated and vulnerable magnetic strip card-reading technology. Payment network standards require most merchants to implement EMV technology,[4] which encompasses the deployment of card-readers equipped to read payment cards embedded with computer chips, which encrypt transactional information at the point of sale. Significantly, Wawa's adoption of that technology was lagging that of other major merchants years before the recent data breach. As far back as 2016, American Express identified Wawa as among the top 100 merchants with respect to

---

[3] *See* Wawa data breach announcement, *available at* https://www.wawa.com/alerts/data-security (last accessed Feb. 17, 2020).

[4] "EMV," which stands for "Europay, MasterCard and Visa," is a global standard for authenticating transactions involving payment cards with embedded computer chips at point-of-sale terminals and automated teller machines.

counterfeit "card present" transactions (transactions in which the customer physically interacts with payment machinery, such as by swiping a card that has a magnetic strip).[5]  Wawa had reportedly requested an extension of the networks' deadline for shifting liability for certain types of fraud from issuers to merchants. Even after its announcement of the data breach, Wawa still apparently deploys magnetic stripe technology on its gasoline pumps.

The data breach is significant.  According to media reports, the Wawa data breached involved approximately 30 million cards, many of which are now available for sale on one of the most notorious websites on the "dark web," called "Joker's Stash[6]".  Significantly, many consumers who shopped at Wawa during the data breach period experienced subsequent fraudulent purchases on their cards.  Wawa has offered free credit monitoring, but only for one year, and has encouraged consumers to check their credit reports for fraudulent accounts opened in their name and to place a fraud alert on their credit report to "protect you against the possibility of an identity thief opening new credit accounts in your name."[7]

Thus far, 28 class actions have been filed in this Court by dozens of law firms representing consumers (23 cases), financial institutions (4 cases),[8] and Wawa employees (1

---

[5] *See B&R Supermarket, Inc. v. Visa, Inc., et al.*, No. 1:17-cv-02738, at Dkt. No. 461-20 (E.D.N.Y. Apr. 7, 2017) (Ex. 55, at 31 and 36).

[6] *See Wawa Breach May Have Compromised More Than 30 Million Payment Cards*, Krebs on Security (Jan. 28, 2020), *available at* https://krebsonsecurity.com/2020/01/wawa-breach-may-have-compromised-more-than-30-million-payment-cards/ (last accessed Jan. 29, 2020).

[7] *See* Wawa data breach announcement, *available at* https://www.wawa.com/alerts/data-security (last accessed Feb. 17, 2020).

[8] In addition to the three cases filed by proposed Co-Lead Counsel for the Financial Institution track, another bank case was filed yesterday.  *See Greater Chautauqua Federal Credit Union v. Wawa, Inc.*, No. 2:20-cv-00895-GEKP (E.D. Pa. Feb. 18, 2020), Dkt. No. 1.

case).  There are no federal cases in any other Districts.  One state court case is pending in New Jersey.[9]

All proposed Co-Lead Counsel initially filed their own separate actions.  Prior to this Court's February 4, 2020 Case Management Order, Ms. Nussbaum and Ms. Liebenberg had been preparing to file a motion to be appointed Lead Counsel, in response to the Lead Counsel motion initially filed by Ms. Savett and Mr. Johns on January 2, 2020 (Dkt. 3).  Mindful of this Court's request that counsel seek to reach a consensus regarding leadership, these separate groups were subsequently able to reach an agreement to combine efforts in the spirit of cooperation to form the joint proposed Co-Lead Counsel group.  This private ordering process, which was encouraged by the Court as noted above, is also recognized as the leading method of leadership formation.  *See* Manual for Complex Litigation § 21.272 (4th ed. 2017) ("By far the most common [method] is the so-called 'private ordering' approach:  The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests.").

The proposed Co-Lead Counsel are comprised of experienced and highly accomplished class action counsel who have decades of experience handling class actions, including data breach cases, and have a proven track record of success and the ability to work efficiently and cooperatively with one another.  In addition, each of the proposed Co-Lead Counsel has the time and resources necessary to litigate this case vigorously on behalf of the consumer class.

---

[9] *Laster v. Wawa, Inc*., BUR-L-000037-20 (N.J. Sup. Ct., Burlington Cty.). The proposed Co-Lead Counsel have reached out to counsel for the *Laster* plaintiffs to begin discussions about coordinating discovery between the federal actions and New Jersey state court action to the extent practicable.

III.    **ARGUMENT**

A.      **Legal Standard for Leadership Appointments**

The Court's February 4, 2020 Case Management Order stated that the "main criteria considered for appointment will be [1] willingness and availability to commit to a time-consuming project, [2] ability to work cooperatively with others, [3] professional experience in this type of litigation, and [4] access to sufficient resources to prosecute the litigation in a timely manner."  (Dkt. 62).  These criteria are consistent with those set forth in Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

1.    **Backgrounds of the Proposed Co-Lead Counsel**

As an initial matter, to provide context for the analysis of the relevant criteria that follows, below is a summary of the background and experience of each proposed Co-Lead Counsel.  Their resumes are attached as Exhibits 1 through 4.

**Sherrie Savett, Berger Montague:** Ms. Savett is a Managing Shareholder and Chair Emeritus of Berger Montague PC. She is Co-Chair of the firm's Technology, Privacy, and Data Breach practice area, as well as the firm's Securities Litigation department and *Qui Tam*/False Claims Act department. She has been a prominent class action and commercial litigator in Philadelphia for 45 years. She is widely recognized as a leading litigator and a top female leader in the profession by local and national legal rating organizations. For example, in 2019, *The Legal Intelligencer* named Ms. Savett a "Distinguished Leader," and in 2018 she was named to the *Philadelphia Business Journal*'s 2018 Best of the Bar: Philadelphia's Top Lawyers.  Ms. Savett has served as Lead or Co-Lead Counsel in dozens of complex class actions throughout her career.  A detailed discussion of her recognitions and accomplishments is set forth on her resume attached as Exhibit 1.

Data breach cases in which Ms. Savett personally held a court-appointed role include *In re Experian Data Breach Litig.*, No. 15-cv-01592 (C.D. Cal.), where she served on the Plaintiffs' Steering Committee and the case settled for benefits valued at over $170 million.  Ms. Savett also served on the Steering Committee in *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, MDL 2046, No. 09-MD-2046 (S.D. Tex.), where the settlement included a cash fund to reimburse out-of-pocket costs and injunctive relief.  Ms. Savett also served on the Plaintiffs' Executive Committee in *In re Countrywide Fin'l. Corp. Customer Data Security Breach Litig.*, MDL 1998, No. 08-MD-01998-TBR (W.D. Ky.), where the case settled in 2010 for benefits including two years of free credit monitoring offered to 1.9 million individuals, a $6.5 million cash fund to reimburse out-of-pocket losses for 17 million individuals, and injunctive relief involving improvements to Countrywide's data security systems.

Ms. Savett also served as Co-Lead Counsel in a notable data breach case, *In re: TJX Cos. Retail Security Breach Litig.*, MDL No. 1838, No. 07-cv-10162-WGY (D. Mass.).  In that case, a settlement was reached in 2008 valued at over $200 million, including: (i) two years of free credit monitoring and identity theft insurance offered to the individuals whose driver's license numbers were exposed; (ii) a $17 million fund available to all 45 million individuals to reimburse out-of-pocket costs and lost time; and (iii) injunctive relief involving improvements to TJX's data security systems.  These elements became the template for many subsequent data breach settlements.  In approving the settlement, former Chief Judge William Young praised the result as an "excellent settlement" containing "innovative" and "groundbreaking" elements.

In addition to these cases, Ms. Savett has been involved in several other data breach cases including *Equifax, Anthem, Medical Informatics*, and *Hannaford Brothers*, as discussed in her

resume at Exhibit 1.  Her firm has also been involved in other data breach cases including *Aetna* and *American Medical Collection Agency*.  *Id.*

**Roberta D. Liebenberg, Fine, Kaplan and Black, R.P.C.**: Ms. Liebenberg is a senior partner at Fine, Kaplan and Black, a nationally recognized firm located in Philadelphia.  It devotes its practice entirely to litigation, with an emphasis on antitrust, class actions, consumer protection, complex commercial litigation, and white-collar criminal defense.  Since its founding in 1975, Fine Kaplan has been involved in many of the country's most significant antitrust and consumer class action cases.  *See* Exhibit 2.

Ms. Liebenberg has been appointed by numerous courts to serve as Lead Counsel, including most recently her appointment by Judge Cynthia Rufe as Lead Counsel for the End Payer Class in *In re: Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) ("*Generics*"), and by Judge Joy Flowers Conti as Co-Lead Counsel for the Class in *In re Railway Industry Employees No-Poach Antitrust Litig.*, MDL No. 2850 (W.D. Pa.) ("*Railway Employees*").[10]  In addition, Ms. Liebenberg also served as Lead Counsel in *In re Providian Financial Corp. Credit Card Terms Litig.*, MDL No. 1301 (E.D. Pa. 2001), a large consumer fraud class action where she achieved a $105 million cash settlement, which at the time was the largest all-cash settlement ever reached on behalf of credit card holders for unfair marketing and billing practices.

Ms. Liebenberg and Fine Kaplan also have experience in cases involving data breach issues and the credit card industry.  For example, Ms. Liebenberg served as a member of the Financial Institution Class expert committee in *In re Target Corp. Customer Data Security*

---

[10] It should be noted that the *Railway Employees* case has recently settled, and in *Generics* there are more than 40 law firms representing the End-Payer class, so Ms. Liebenberg has the time to take on the responsibility of Co-Lead Counsel in this matter.

*Breach Litig.*, No. 14-2522 (D. Minn.) where a settlement was reached on behalf of that Class that was worth over $100 million.  She also served on the expert committee in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 1:05-md-01720 (E.D.N.Y.), which was recently settled with Visa and Mastercard for over $5.54 billion.

In addition, in *In re Urethane Antitrust Litig.*, MDL No. 1616 (D. Kan.), Ms. Liebenberg and Fine Kaplan served as Co-Lead Counsel for 12 years in an action alleging price-fixing of certain urethane chemical products by five major manufacturers.  After a four-week trial in which Ms. Liebenberg served as one of the trial counsel, plaintiffs obtained a jury verdict in excess of $400 million against The Dow Chemical Company.  The court entered judgment for $1.06 billion after trebling—the largest judgment in the U.S. in 2013 and the largest price-fixing judgment ever.  On appeal, the Tenth Circuit unanimously affirmed the judgment.  768 F.3d 1245 (10th Cir. 2014).  Thereafter, while the case was pending in the Supreme Court, the plaintiffs settled with Dow for $835 million.  Combined with four pre-trial settlements, the total settlements reached in the case were $974 million, which was more than 2.4 times the damages found by the jury.  The court commented: "In almost 25 years of service on the bench, this Court has not experienced a more remarkable result."  *Urethane*, 2016 WL 4060156, at *4.

Ms. Liebenberg has significant experience defending Fortune 500 companies and other entities in class actions and other complex commercial cases as well.  This defense experience has provided her with important perspectives and insights that have greatly assisted her in formulating litigation and settlement strategies when she is representing plaintiff classes.  For example, Ms. Liebenberg defended Temple University in connection with a high profile class action lawsuit brought by students enrolled in the Online MBA program of the Fox School of Business and Management and reached a successful settlement last year.  *Smith, et al. v. Temple*

*University*, No. 18-590 (E.D. Pa.).  Ms. Liebenberg also defended Southwest Airlines in a consumer antitrust class action in which a settlement was approved last year, *In re Domestic Airline Travel Antitrust Litig.,* MDL No. 2656, 378 F. Supp. 3d 10 (D.D.C. 2019), and successfully defended Southwest in an antitrust action brought against it.  *Love Terminal Partners, L.P. v. City of Dallas*, 527 F. Supp. 2d 538 (N.D. Tex. 2007).

**Benjamin F. Johns, Chimicles Schwartz Kriner & Donaldson-Smith:** Mr. Johns is a Partner in the firm's Haverford office.  He has a history of successfully prosecuting complex class actions in general, and data breach cases in particular, including the following: *Gordon v. Chipotle Mexican Grill*, No. 17-cv-01415 (D. Colo.) (Mr. Johns served as Co-Lead Counsel in payment card data breach case resulting in settlement); *Bray et al. v. GameStop Corp.*, No. 17-cv-01365 (D. Del.) (same); *Kyles v. Stein Mart, Inc. et al.*, No. 19-cv-00483 (D. Del.) (same; preliminary approval motion forthcoming); *Winstead v. ComplyRight, Inc.*, No. 18-cv-04990 (N.D. Ill.) (served as member of Plaintiffs' Executive Committee in data breach class action which resulted in settlement exceeding $3 million); and *Perdue v. Hy-Vee, Inc.*, No. 19-cv-01330 (C.D. Ill.) (serves as Co-Lead Counsel in ongoing payment card data breach case).

In addition to having relevant data breach experience that will benefit Plaintiffs and the class here, Mr. Johns meets the Court criteria of having the time to dedicate to this important case.  (Dkt. 62 at 2). Within the past few months, he has concluded several other consumer cases in which he served as Co-Lead Counsel: *In re Nexus 6P Product Liab. Litig.*, No. 17-cv-02185 (N.D. Cal.) (defective smartphone class action resulting in settlement valued at $9.75 million, which Judge Beth Labson Freeman described as "substantial" and an "excellent resolution of the case"); *Weeks v. Google LLC*, No. 18-cv-00801, 2019 U.S. Dist. LEXIS 215943, at *8-9 (N.D. Cal.) (defective smartphone class action resulting in $7.25 million settlement that Magistrate

Judge Nathanael Cousins described as an "excellent result"); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 216783 (N.D. Cal. Dec. 17, 2019) (consumer class action concerning allegedly defective MyFord Touch infotainment systems, which settled for $17 million shortly before trial); and *Udeen v. Subaru of Am., Inc.,* No. 18-cv-17334 (RBK/JS), 2019 U.S. Dist. LEXIS 172460 (D.N.J. Oct. 4, 2019) (settlement valued at $6.25 million reached in consumer class action involving defective infotainment systems in certain Subaru automobiles; final approval is scheduled for March 12, 2020).

Mr. Johns has been named a "Lawyer on the Fast Track" by *The Legal Intelligencer,* and is beginning his seventh year as a Partner at the Chimicles firm. Further information about Mr. Johns and his firm is set forth in Exhibit 3.

**Linda P. Nussbaum, Nussbaum Law Group:** Linda Nussbaum is the managing partner of Nussbaum Law Group. She has substantial experience in class action litigation, having practiced in the field for over 35 years.  She has served as Lead or Co-Lead counsel in over 20 cases, including several cases in this district, including *In re Microcrystalline Cellulose Antitrust Litig.*, MDL No. 1402, No. 01-cv-00111 (E.D. Pa.); *In re Plastics Additives Antitrust Litig.*, MDL No. 1684, No. 03-cv-02038 (E.D. Pa.); and *Meijer, Inc. v. Warner Chilcott Public Ltd. Co.*, No. 12-cv-03824 (E.D. Pa.). She is familiar with practice in this District, not only by virtue of her lead positions here, but also because she is currently serving on the Direct Purchaser Plaintiffs' Steering Committee in *Generics*, *supra*.

In the data breach field, Ms. Nussbaum is currently serving as Co-Lead Counsel for a proposed class of over 10 million LabCorp customers victimized by a breach in *In re Am. Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904

(D.N.J.).  She and her firm are also actively involved in *In re Marriott Int'l. Customer Data Security Breach Litig.*, No. 19-md-2879 (D. Md.), which is in the midst of discovery.

In *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y.), Ms. Nussbaum was appointed as Co-Lead Counsel for a proposed class of millions of merchants seeking injunctive relief as to certain rules imposed by the Visa and MasterCard payment card networks. In that role, Ms. Nussbaum has been required to further develop her already-extensive understanding of the operations of those networks, particularly as they relate to their dealings with merchants, and has become familiar with EMV technology and the rules and issues raised by it.  Ms. Nussbaum and her colleague Bart Cohen have been actively involved in payment card litigation for over ten years.  Their resulting knowledge of the payment card industry will be invaluable in this litigation.

Ms. Nussbaum chaired the antitrust department at two of the nation's pre-eminent class action firms before establishing Nussbaum Law Group in 2015. She has served as counsel for Fortune 500 companies in individual actions.  Ms. Nussbaum also has substantial trial experience.[11]  Further information about Ms. Nussbaum and her firm is set forth in Exhibit 4.

### 2.   The Proposed Co-Lead Counsel Have Demonstrated a Willingness and Availability to Commit to a Time-Consuming Project

The work already conducted by the proposed Co-Lead Counsel demonstrates their willingness and availability to commit to a time-consuming project.  They performed many

---

[11]  Ms. Nussbaum represented Kaiser Foundation Health Plan in a RICO action against Pfizer, Inc. resulting in a jury verdict of over $50 million (which was trebled) after a five-week trial. *See In re Neurontin Marketing and Sales Practices Litig.*, No. 04-1081 (D. Mass.). Judge Patti Saris commented afterwards that it was "a fabulous trial[.] [I]t's the kind of thing that you become a judge to sit on." Ms. Nussbaum also served as co-lead and co-trial counsel for antitrust class plaintiffs in *Meijer, Inc. v. Abbott Labs.,* No. 07-cv-05985 (N.D. Cal.), which was settled after a week of trial. Earlier in her career, Ms. Nussbaum tried over 25 jury cases as a criminal defense lawyer, served on trial teams in multiple securities class actions, and invested months of trial preparation in several other complex actions that settled on the verge of trial.

substantive tasks that will allow them to move the case forward on behalf of the consumer class once leadership appointments are made.  To date, they have collectively:

- filed Complaints with plaintiffs from all six states and the District of Columbia in which Wawa operates, each of whom experienced fraudulent charges on their credit or debit cards after using those cards at Wawa during the breach period.  The misuse of data is an important factor for purposes of standing and damages, which will likely be key contested issues in the litigation;

- been contacted by several hundred affected Wawa customers who shared information about their fact patterns and damages, and interviewed many of those customers using a detailed vetting questionnaire tailored to the Wawa data breach;

- gathered additional new and emerging facts to include in the Consolidated Amended Complaint;

- performed legal research regarding actual and potential claims to be brought in these proceedings, including numerous common law and state statutory claims;

- retained several prominent data security experts, each of whom has issued expert reports and provided testimony in high-profile data breach class actions;

- sent an evidence preservation letter to Wawa;

- prepared a detailed time and expense protocol to be applicable to all Plaintiffs' counsel (including Co-Lead Counsel) who may seek to be compensated in the Consumer Track at the end of this matter.  The protocol is aimed at ensuring efficiency and avoidance of duplication of effort, as discussed below;

- drafted a Protective Order to be sent to and negotiated with defense counsel promptly after leadership appointments are made; and

- drafted Requests for Production of Documents, to be served on Wawa promptly after the Court lifts the discovery stay set forth in its February 4, 2020 Order (Dkt. 62).

Each proposed Co-Lead Counsel is committed to devoting substantial resources to vigorously litigate this case, just as they have done in countless prior class actions that they have successfully litigated.   Also, each Co-Lead Counsel and/or their firms have jury trial experience in the class action context, demonstrating their proven willingness and ability to commit to a time-consuming process.

### 3.   Each Proposed Co-Lead Counsel Has a History of Working Cooperatively with Other Counsel in These Proceedings

Each proposed Co-Lead Counsel has a long history of working cooperatively with others, including with each other and with many other counsel in these proceedings. *See, e.g., Cole v. NIBCO, Inc.*, No. 13-cv-07871 (D.N.J.) (Chimicles and Berger Montague worked together as co-counsel in a consumer class action, obtaining a $43 million settlement); *Davis v. Washington Univ. in St. Louis*, No. 17-cv-01641 (E.D. Mo.) (Chimicles and Berger Montague currently serve as Co-Lead Counsel in an ERISA class action); *Am. Medical Collection Agency, supra* (Nussbaum and Berger Montague currently work together in a data breach case where Nussbaum serves as Co-Lead Counsel in the LabCorp track and Berger Montague serves on the Plaintiffs' Steering Committee in the Quest track). In addition, Fine Kaplan has worked extensively with Nussbaum, Berger Montague and Chimicles in numerous antitrust class actions. *See, e.g., In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.); *Urethane Antitrust Litig.,* MDL No. 1616 (D. Kan.); *In re Metopropol Succinate Antitrust Litig.*, No. 06-cv-71 (D. Del.). There are also numerous cases in which the proposed Co-Lead Counsel or their firms worked cooperatively as co-counsel with other counsel who filed cases on behalf of the consumer class in these proceedings.

Just as they have done in the past, each proposed Co-Lead Counsel is committed to working cooperatively with each other and all other counsel in all tracks in this matter, including with defense counsel. Indeed, the proposed Co-Lead Counsel have already had multiple calls and emails with defense counsel to discuss case management issues.

### 4.   Each Proposed Co-Lead Counsel Has Extensive Experience in This Type of Litigation

Experience in data breach litigation is an important leadership factor in cases such as this, which present technical issues of fact and law that are constantly evolving. For example, this

15

case will require an understanding of data security measures, data intrusion techniques, payment card industry standards (PCI DSS), duties owed by merchants to cardholders, standing, damages, and proximate causation regarding identity theft, to name just a few issues.  Thus, appointing a leadership team experienced in data breach litigation is critical and in the best interest of the consumer class.

As discussed above, each proposed Co-Lead Counsel has relevant experience in this field, as well as with complex class action litigation in general.  Collectively, proposed Co-Lead Counsel have experience in the following data breach cases, among others, many of which involved payment card breaches at retail stores similar to Wawa:

1. *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2904 (D.N.J.);

2. *Gordon v. Chipotle Mexican Grill*, No. 17-cv-01415 (D. Colo.);

3. *Bray et al. v. GameStop Corp.*, No. 17-cv-01365 (D. Del.);

4. *Perdue v. Hy-Vee, Inc.*, No. 19-cv-01330 (C.D. Ill.);

5. *Kyles v. Stein Mart, Inc., et al.*, No. 19-cv-00483 (D. Del.);

6. *Winstead et al. v. ComplyRight, Inc.*, No. 18-cv-04990 (N.D. Ill.);

7. *In re Marriott Int'l. Customer Data Security Breach Litig.*, No. 19-md-2879 (D. Md.);

8. *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 17-md-2800 (N.D. Ga.);

9. *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617 (N.D. Cal.);

10. *In re Experian Data Breach Litig.*, No. 15-cv-01592 (C.D. Cal.);

11. *In re Medical Informatics Engineering, Inc. Customer Data Security Breach Litig.*, No. 15-md-02667 (N.D. Ind.);

12. *The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 14-md-02583 (N.D. Ga.);

13. *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-cv-2522 (D. Minn.);

14. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. 09-MD-2046 (S.D. Tex.);

15. *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, No. 08-md-01954 (D. Me.);

16. *In re Countrywide Fin'l. Corp. Cust. Data Breach Litig.*, MDL 1998, No. 08-MD-01998-TBR (W.D. Ky.); and

17. *In re TJX Cos. Retail Security Breach Litig.*, MDL No. 1838, No. 07-cv-10162-WGY (D. Mass.).

Further information about each proposed Co-Lead Counsel's professional experience is set forth in their accompanying resumes.

### 5. Each Proposed Co-Lead Counsel Has Access to Sufficient Resources to Prosecute the Litigation in a Timely Manner

Each proposed Co-Lead Counsel has access to a large professional staff of attorneys, paralegals, and administrative staff. Ms. Savett's firm has 65 attorneys, Ms. Liebenberg's firm has 15 attorneys, Mr. Johns' firm has 18 attorneys, and Ms. Nussbaum's firm has eight attorneys. As discussed above and in the chart attached as Exhibit 5, the proposed Co-Lead Counsel would also draw upon the expertise and resources of other plaintiffs' counsel in these proceedings on an as-needed basis to handle discrete assignments and tasks.

Each proposed Co-Lead Counsel also has adequate financial resources to litigate this case to a successful completion, including through trial and appeal if necessary, and have developed unique insights into the staffing and funding needed to litigate large class actions like this one.

### B. Other Considerations

### 1. Proposed Co-Lead Counsel Are Guided by Lessons Learned from Prior Cases

At the January 24, 2020 Preliminary Status Conference, the Court requested that counsel's leadership applications include a discussion of lessons learned from prior litigation.

First, we have learned the importance of working closely with experts knowledgeable in the relevant field beginning *early* in the case. It is for this reason that we have retained several prominent experts, each of whom has vast experience in high-profile data breach class actions.

One expert has extensive experience concerning data security weaknesses in large data breach class actions, including those involving payment cards.  Another expert has frequently testified on weaknesses in data security systems, the appropriateness of injunctive remedies, and the risks faced by consumers whose personal information was stolen in data breaches.  A third expert has testified on issues of EMV chip technology.  We anticipate using some or all of these experts at the class certification, summary judgment, settlement, and/or trial stages, and to provide input to Co-Lead Counsel when drafting the Consolidated Amended Complaint, drafting discovery requests, and preparing for depositions.

Second, we will ensure the efficient management of this litigation by adopting a detailed time and expense protocol for the Consumer Track.  The protocol will require that all plaintiffs' counsel performing common benefit work must submit time and expense reports to Co-Lead Counsel on a monthly basis, to ensure that counsel is not performing unnecessary or duplicative work.  Under the protocol, counsel must receive pre-approval from Co-Lead Counsel before engaging in work for which compensation will ultimately be sought from a common fund or other settlement structure.  Specifically, the guidelines would include:

- A requirement that any work done receive written approval in advance by Co-Lead Counsel;

- Monthly submittal of time and expenses in an agreed-upon format, certified by counsel;

- Detailed and contemporaneous descriptions of work done, kept in increments of 1/10[th] of an hour, and a prohibition on block billing;

- Excluding time devoted to general "read and review" of filings, orders, pleadings, transcripts, and emails not directly related to substantive assignments.

Third, recent experience has taught that where, as here, the key liability facts are either already known or can be ascertained without protracted discovery, an early mediation is often a fruitful endeavor.  Indeed, in a recent data breach class action before this Court involving the theft of W-2 tax information, the parties engaged in mediation and reached a settlement six months the lawsuit was filed.  *See Fulton-Green v. Accolade, Inc*., No. 18-cv-00274-GEKP (E.D. Pa.) (filed in January 2018; settlement in principle reached in June 2018; final approval granted in September 2019).

Fourth, we have learned from experience in data breach cases the importance of using a *simple* claim form and claims process to maximize class members' participation in any settlement.  Data breach settlements typically include: (i) free credit monitoring and identity theft insurance for a number of years; (ii) a cash fund to reimburse out-of-pocket costs and compensate for time spent responding to the breach; and (iii) injunctive relief to strengthen the defendant's data security systems.  If these or similar benefits are achieved in a settlement, we will craft the settlement notice in simple, clear terms emphasizing the available benefits and requiring minimal effort or documentation to submit a claim.  We would also engage a notice expert with particular expertise in digital notice plans capable of reaching class members through many different avenues such as social media and click-based advertising, geo-targeted to reach primarily residents of the states in which Wawa operates, but also consumers nationwide who might have shopped at Wawa while traveling.

### 2.     Proposed Co-Lead Counsel Have Developed a Plan to Assign Discrete Tasks to Other Plaintiffs' Counsel

Given the magnitude of the Wawa data breach, the large number of plaintiffs and counsel in the Consumer Track, the significant amount of work that will be required to litigate this case, and the Court's preference in prior MDLs (*Imprelis* and *Eggs Antitrust*) for Co-Lead Counsel to

work with firms outside the Court-appointed leadership team, we have developed a plan to work with other plaintiffs' counsel to move the case forward in the most efficient and effective manner.

Specifically, we identified the following substantive areas in which other plaintiffs' counsel will be asked to provide assistance: (i) Pleadings/Complaint; (ii) Plaintiff Vetting & Plaintiff Discovery; (iii) Wawa Discovery; (iv) Third Party Discovery; (v) E-Discovery (ESI Protocol, search methodologies to be applied, etc.); (vi) Briefing/Legal Research; (vii) Experts; and (viii) Class Certification. Attorneys at the law firms identified in footnote 1 have been assigned to assist in these areas. Each firm has been assigned to one category. For the Court's convenience, a chart illustrating which firm has been assigned to which task is attached as Exhibit 5. The chart also includes a brief summary of each firm's professional experience.

The assistance of these firms will be on an as-needed basis, carefully overseen by Co-Lead Counsel. Measures will be put in place to ensure efficient litigation and to avoid duplication of effort. One or more proposed Co-Lead Counsel will oversee each of these substantive areas and will delegate only specific pre-determined tasks to the assigned firms. The assigned firms will be bound by the lodestar and expense protocol discussed above.

Proposed Co-Lead Counsel will coordinate their own tasks among themselves in the above categories, among others, based on the unique strengths of each firm, the needs of the litigation, staffing availability, and other considerations.

### 3.  Each Proposed Co-Lead Counsel Has Meaningful Ties to the Philadelphia Metropolitan Area, Where Wawa Is Based

Ms. Savett, Ms. Liebenberg, Mr. Johns, and their respective firms are headquartered in the Philadelphia metropolitan area. Ms. Nussbaum has staffed the case with two experienced Philadelphia-based attorneys who are admitted in both Pennsylvania and this District. The

Philadelphia area (specifically, Delaware County) is where Wawa is headquartered, and where the key witnesses and evidence are located. All pending federal court cases have been filed in Philadelphia. Wawa is a local Philadelphia company and, we respectfully submit, this litigation should be led by Philadelphia-based counsel.

Each proposed Co-Lead Counsel is familiar with this District's rules, processes and procedures, as well as this Court's policies and procedures, having litigated here many times throughout their careers.

### C.   The Court Should Adopt a Multi-Track Approach for the Consumer, Financial Institution, and Employee Tracks

Courts in data breach cases consistently use a multi-track approach when both consumer and financial institution cases are filed. The multi-track structure accounts for variances between the different types of plaintiffs, classes, legal claims, theories of liability, and damages. The separate tracks typically proceed with distinct Consolidated Complaints, dispositive motions, class certification motions, and so forth. Where practical, counsel coordinate between the tracks for issues such as common discovery, expert work, and briefing schedules, among other things.

The proposed Co-Lead Counsel recommend using a separate Employee Track for the case filed on behalf of a class of current and former Wawa employees, *McGlade v. Wawa, Inc. et al.*, No. 20-cv-00248 (E.D. Pa.). *McGlade* is materially different than the consumer cases because: (i) it is brought solely on behalf of Wawa employees, not consumers; (ii) it alleges that hackers stole employee information, including Social Security numbers, whereas the consumer cases do not allege the theft of employee information; (iii) *McGlade* asserts claims for, *e.g.*, violation of the Fair Labor Standards Act and Pennsylvania Minimum Wage Act, whereas the consumer cases do not assert any employment-related claims; and (iv) the defendants in *McGlade* include various individual Wawa executives, whereas the consumer cases do not name

individual defendants. These differences implicate different legal issues, case theories, defenses, and discovery, justifying treatment as separate tracks.[12]

## IV.   CONCLUSION

The undersigned respectfully seek appointment of the following attorneys as Co-Lead Counsel in the Consumer Track: (i) Sherrie R. Savett of Berger Montague PC; (ii) Roberta D. Liebenberg of Fine, Kaplan and Black, R.P.C.; (iii) Benjamin F. Johns of Chimicles Schwartz Kriner & Donaldson-Smith LLP; and (iv) Linda Nussbaum of Nussbaum Law Group, P.C.  A Proposed Order granting this requested relief is submitted with this application.


Dated: February 19, 2020                          Respectfully submitted,

                                                   _/s/  Sherrie R. Savett_____
                                                   Sherrie R. Savett (PA Bar No. 17646)
                                                   **BERGER MONTAGUE PC**
                                                   1818 Market Street, Suite 3600
                                                   Philadelphia, PA 19103
                                                   Tel: (215) 875-3000
                                                   ssavett@bm.net

                                                   _/s/  Roberta D. Liebenberg_____
                                                   Roberta D. Liebenberg (PA Bar No. 31738)
                                                   **FINE, KAPLAN AND BLACK, R.P.C.**
                                                   One South Broad St., 23rd Floor
                                                   Philadelphia, PA 19107
                                                   Tel: (215) 567-6565
                                                   rliebenberg@finekaplan.com

---

[12] Three-track treatment is consistent with *Marriott, supra,* in which the Court used separate tracks for consumer, financial institution, securities fraud, and derivative cases.  It is also consistent with *Am. Medical Collection Agency, supra,* in which the Court utilized a Quest track, LabCorp track, and Other Labs track specific to the different types of defendants. Also, this Court used a dual-track approach for Direct Purchasers and Indirect Purchasers in *Eggs Antitrust.*

_/s/  Benjamin F. Johns_
Benjamin F. Johns (PA Bar No. 201373)
**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
bfj@chimicles.com

_/s/  Linda P. Nussbaum_
Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036-8718
Tel: (917) 438-9102
lnussbaum@nussbaumpc.com

_Proposed Interim Co-Lead Counsel_
 _for Consumer Track_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of February 2020, a true and correct copy of the accompanying document was filed with the Clerk of Court via the Court's CM/ECF system for electronic service to all counsel of record.

<u>*/s/   Benjamin F. Johns*</u>
Benjamin F. Johns
