UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION<br><br>*This Document Relates to:*<br>*Employee Track Cases* | Case No. 2:19-CV-06019<br><br>**AMENDED CIVIL COLLECTIVE/CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

*Page*

JURISDICTION AND VENUE ...................................................................8
THE PARTIES...........................................................................................9
  PLAINTIFFS ..........................................................................................9
  DEFENDANTS .....................................................................................15
    *The Wawa Defendants*........................................................................15
FACTUAL BACKGROUND ...................................................................16
CLASS ACTION ALLEGATIONS ........................................................37
*Numerosity* .............................................................................................41
*Common Questions of Law and Fact*....................................................43
*Typicality*...............................................................................................45
*Adequacy of Representation* .................................................................45
*Superiority*.............................................................................................45
COUNT I ..................................................................................................46
VIOLATIONS OF THE PENNYSLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW ........................................................46
COUNT II .................................................................................................50
NEGLIGENCE .........................................................................................50
COUNT III................................................................................................51
NEGLIGENCE *PER SE* ..........................................................................51
COUNT IV.................................................................................................52
NEGLIGENT MISREPRESENTATION/FRAUD ...................................52
COUNT V ..................................................................................................55
UNJUST ENRICHMENT .........................................................................55
COUNT VI.................................................................................................56
VIOLATION OF THE FAIR LABOR STANDARDS ACT, ....................56
FAILURE TO PAY OVERTIME WAGES ...............................................56
COUNT VII ...............................................................................................62
PENNSYLVANIA MINIMUM WAGE ACT: UNPAID OVERTIME WAGES .......................62
JURY DEMAND .......................................................................................64

Plaintiff Shawn and Karen McGlade (the "McGlades" or "Plaintiffs"), on their own behalf and on behalf of the below-described Classes of current and former employees of Defendant Wawa, Inc. ("Wawa"), and their spouses (the "Wawa Employee Class" and the "Wawa AGM Employee Class"), by and through their attorneys, and based upon personal knowledge and, where applicable, information and belief, hereby allege the following facts in support of their claims against Wawa.

## INTRODUCTION

1.      The McGlades bring case as a class and collective action on behalf of all similarly-situated, current and former Wawa employees (the "Employee Classes" defined below) that Wawa required, as a condition of their employment at Wawa, to use their own, personal payment cards to purchase gasoline, food, beverages and other Wawa items for their own personal consumption and use, causing them to suffer economic losses as a direct and proximate result of Wawa's failure to protect its employees from such losses.  Mr. McGlade also seeks recovery of unpaid overtime wages for all AGMs from January 2017 through January 2020 for Wawa's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the Pennsylvania Minimum Wage Act ("PMWA").

2.      In December 2019, Wawa revealed for the first time publically that it failed to take reasonable and adequate measures to protect its employees, and the larger consuming public, from hackers who infiltrated Wawa's payment systems and computers, including its point-of-sale ("POS") payment terminals in its stores and at its fuel pumps, installing malicious software ("malware") in early March 2019.

3.      As a result, from at least March 4, 2019 through December 12, 2019, these hackers exploited Wawa's deficient security measures to access and steal highly sensitive,

personal identifiable information ("PII") of its employees, including at least credit and debit card numbers, expiration dates and cardholder names (the "Data Breach").

4.      In the case of the McGlades, they suffered both account takeover and identify theft during the period Wawa's security systems were being accessed and compromised, as unknown individuals were able to access and use their existing credit accounts, and open new credit accounts, using the McGlades' PII believed to have been compromised as a result of the Data Breach, because it was stored on Wawa's compromised computer systems.

5.      According to the financial institutions, who have sued along with the McGlades, certain payment card data obtained from the Data Breach started to become available for sale on the "dark web" shortly after Wawa discovered the breach.

6.      For instance, in January 2020, as-yet-unknown individuals posted "fresh" information for over thirty (30) million payment cards in a package titled the "BIGBADABOOM-III" to the underground website the "Joker's Stash".  They claim as follows:

> Cybersecurity experts were quickly able to identify the Payment Card Data published on Joker's Stash as originating from cards that were used at Wawa. This Payment Card Data included information associated with cards issued by [Financial Institution] Plaintiffs.

7.      The Data Breach was a reasonably foreseeable event due to both Wawa's substandard data security measures and willful refusal to upgrade its security systems in the face of stark public warnings that hackers had been targeting POS systems at gas stations.

8.      Specifically, major credit card companies, including Visa, issued warnings about the precise type of "RAM scraper" malware that is believed to have been involved in the Wawa Data Breach.  Wawa ignored such explicit warnings, choosing instead to maintain outdated POS systems and unprotected computer systems, thereby unnecessarily putting the PII of its trusted employees at risk, despite knowing that it required its employees to use their own payment cards

4

and knowing that such payment card information, and other PII, was being stored and maintained on unprotected computer systems.  Indeed, Wawa maintained such substandard POS and computer systems throughout 2019, even as cybercriminals were accessing employee PII.

9.     Both Wawa and the McGlades reside in Pennsylvania, along with thousands of other Wawa employees.  This is significant to the claims of the Wawa Employee Class, as distinguished from the claims of either the Consumer Class or Financial Institutions.

10.    In April 2018 – nearly a year *before* the Data Breach -- the Pennsylvania Supreme Court held that a Pennsylvania-based employer (like Wawa) has a legal duty to exercise reasonable care to safeguard its employees' (including Mr. McGlade's) sensitive personal information stored by the employer on an internet-accessible computer system. *See generally*, *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018).  The Court further held that, under Pennsylvania's economic loss doctrine, recovery by employees (like Mr. McGlade) for purely pecuniary damages was permissible under a negligence theory provided that the employee plaintiffs can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract.

11.    Despite such clarification of the law in Pennsylvania by the Commonwealth's highest Court, Wawa did not change either its policies and procedures about collecting and storing employee PII, or its POS and computer systems security.

12.    Wawa had a common law duty under Pennsylvania law to exercise reasonable care to protect its employees from the unreasonable risk of harm caused by the Data Breach.

13.    Wawa assumed such duty of care to its employees, including Mr. McGlade, when, as a condition of their employment, it collected PII of the McGlades and others, including their names, the names of spouses and children, their home addresses, their social security numbers

and other PII.  Wawa also required employees, like Mr. McGlade, to use their own payment cards to purchase food, beverages, gas and other essential items sold in Wawa stores, which Wawa employees needed to buy in order to get to and from their jobs, and to complete their long work shifts.

14.     Wawa's  Associate Handbook, last revised December 12, 2019, allows employees discounted food and beverage as follows:

> It is the policy of Wawa to provide Associates and Store Personnel special discounts and complimentary beverages while scheduled to work and working in the stores.  Current Associate Food and Beverage discounts include the Associate discount at 35% and Fit to Fly discount at 50% on eligible products.

Exhibit "A" hereto at p. 66.

15.     As a result of such policy, Wawa knew that its employees, including Mr. McGlade, would be availing themselves of such discounted food and beverage benefit, using their own debit and credit cards for such purchases.  Wawa also knew that it was collecting and storing such employee PII on its unsecure computer systems, thereby exposing employees to substantial risk of the Data Breach, without the employees' knowledge of such risk.

16.     Wawa employees, like Mr. McGlade, did in fact routinely avail themselves of the right to purchase discounted food and beverages, as well as gasoline and other items, utilizing their own payment cards, because Wawa failed to provide any other means for employees to obtain such items, such as company credit, gift cards or other means that would have protected employees from putting their own payment cards at risk simply to do their jobs at Wawa.

17.     Wawa thus owed its employees a duty to exercise reasonable care in the security and protection of such employee PII entrusted to its care.  Wawa breached such duty by its actions, and failures to act, described herein.

18.     The names, addresses and affected purchases of all members of the Employee Class are reasonably ascertainable, because all such information is stored on Wawa's computer systems. In fact, it is believed that a simple comparison of Wawa's employee human resources information (identifying all current and former Wawa employees during the period of the Data Breach) with its POS payment data information for such time period will allow all members of the Employee Class to receive direct mail notice of the certification of the class claims in this case, should the Court so order at the appropriate time.

19.     Separately, Mr. McGlade sues Wawa to ensure that he and others who served as Assistant General Managers ("AGMs") since December 2015 (when Wawa changed its AGM classification to non-exempt) and worked overtime hours without overtime pay are paid what they are owed under the FLSA and PMWA.

20.     Mr. McGlade, and those similarly situated, were subjected to Defendant's policy and practice of failing to compensate its AGMs for overtime, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

21.     Plaintiff seeks a declaration that his rights, the rights of the putative FLSA Class, and the rights of the putative Rule 23 Class under the PMWA, were violated, and seek to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which Plaintiff and members of the Wawa AGM Employee Class may be entitled.

22.     Through this lawsuit, the thousands of affected Wawa employees have a voice in Shawn and Karen McGlade.  Through their brave decision to step forward and sue Wawa, where no active Wawa employee could reasonably be expected to do so, Wawa's unlawful, unfair and deceptive acts and practices, its violations of state and federal wage and hour laws, and its

egregious, gross negligence in allowing cybercriminals to steal the PII of Wawa employees, will be brought to light and properly adjudicated in this Court of law.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiffs and members of the Wawa Employee Class (defined below) are of diverse citizenship from the Defendants and over two-thirds of the Class resides outside of Pennsylvania.

24.     This Court also has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

25.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

26.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

27.     According to Wawa, more than 30,000 employees are located in at least the twenty (20) states in which Wawa operates, and perhaps neighboring states.[1]  Given the unfettered access to Wawa's computer systems cybercriminals enjoyed for the better part of last year, it is believed and therefore averred that the PII of these many employees was exposed, accessed and stolen.

---

[1] https://www.hoursguide.com/wawa/

28.     Wawa's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

29.     Wawa's employees, including Mr. McGlade, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

30.     This Court has personal jurisdiction over the parties because the Wawa Defendants (described below) are located in Pennsylvania.

31.     The Wawa Defendants include Wawa, Inc. and Wild Goose Holding Company (collectively "Wawa" or "Defendants").  These companies are Pennsylvania citizens, are registered to do business in Pennsylvania and conduct substantial business in Pennsylvania, have had systematic and continuous contacts within this State, and have agents and representatives that can be found in this State.

32.     Under 28 U.S.C. § 1391, venue is proper in this District because all Defendants engaged in substantial conduct relevant to the claims Plaintiffs and the Class, and caused harm to members of the Wawa Employee Classes in this District.

33.     Defendants regularly conduct business in this District.

34.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202.

## THE PARTIES

## PLAINTIFFS

35.     Plaintiff, Shawn McGlade is a citizen and resident of Pennsylvania.  Mr. McGlade was employed as a General Manager ("GM") of Wawa in 2019 in charge of one of the 850 Wawa stores.  He had been a Wawa GM since March 2017.  He was hired by Wawa over 5 years

ago, and worked his way up through the Wawa ranks to the level of "Assistant General Manager" ("AGM"), in which role he served between September 2014 until March 2017, when he was promoted to GM.

36.     As a condition of his employment by Wawa, Mr. McGlade was required to provide his PII, including his social security number, home address, and the names of his wife and minor children, among other items of confidential PII.  As further condition of his employment, Mr. McGlade was required to use his personal credit card to pay for food, beverages and other items in his Wawa store while he was working, as well as gasoline for his vehicle to get to and from work.  As a result, Wawa maintained multiple items of the McGlades' PII on its computers systems.

37.     Shawn McGlade was a model employee of Wawa for more than 5 years, entrusted with managing several Wawa stores in Pennsylvania in the course of his tenure, until his abrupt and inappropriate firing on January 3, 2020 in the wake of the public revelation by Wawa on December 19, 2019 that for more than 9 months prior Wawa had negligently allowed the McGlades' PII, and the PII of thousands of other Wawa employees, to be accessed, manipulated and stolen without their knowledge or consent.

38.     Wawa fired Mr. McGlade in January 2020 for enforcing the continuing, unwritten policies, practices and procedures of not allowing AGMs and other lower level employees to work overtime, in order that Wawa could maintain its unrealistic revenue and profit projections at its stores.

39.     As discussed more fully herein, after December 2015 when Wawa chose to re-classify its AGMs as "non-exempt" from the overtime requirements of the FLSA, AGMs

(including Mr. McGlade up to March 2017) still worked overtime; Wawa just didn't want to pay for it, and did not pay for it, in order to make its revenue and profit projects for its stores.

40.     Mr. McGlade entrusted his confidential PII about himself and his family to Wawa's care, but Wawa betrayed that trust.

41.     As a result of that betrayal, and breach of its common law duty to its employees to safeguard the PII entrusted to its case, Mr. McGlade and his family have suffered greatly, both financially and emotionally, for months.  The suffering continues to this day, as it has been only exacerbated by Wawa's improper firing of Mr. McGlade in January 2020.

42.     The McGlades have suffered since early September of last year, trying to reverse wrongful and erroneous charges placed on new credit accounts opened using Shawn McGlade's PII.  Such charges, numbering in the thousands of dollars, were placed on these new credit accounts by unknown cybercriminals who were given access to Shawn McGlade's confidential information due to the gross negligence and incompetence of the Wawa Defendants who failed to engage even the most basic cybersecurity protections, simply to try save money for the company.

43.     Cutting corners on cybersecurity is just one part of Wawa's unspoken credo to *save* money to make *more* money in fulfillment of its "Core Purpose" of having a "passion for winning" at all costs.  https://www.wawa.com/about.  That unspoken credo has turned Wawa into the multi-billion dollar enterprise it is today.

44.     As discussed more fully below, Wawa makes exorbitant profits at the expense of its hard working employees and unwittingly loyal customers.

45.     A company does not grow from a small mom-and-pop convenience store in Folsom Pennsylvania to a corporate behemoth of more than 850 stores operating in 20 states and

generating $12 billion in annual revenue, without cutting a few corners, at the expense of its trusted employees and loyal customers.

46.     Trust and loyalty have price at Wawa, a price Wawa is <u>not</u> willing to pay.

47.     Instead, Wawa betrays the trust of its employees and the loyalty of its customers by willfully putting at risk of attack by cybercriminals their PII.  Wawa deliberately chose to maintain antiquated information technology systems, exposing its employees' PII and its customers' credit and debit card information to cyber attack.  Wawa does so in order to save the millions of dollars it would have had to spend to design and implement a modern cybersecurity program that complied with industry standards.

48.     Wawa also betrays the trust of its more senior employees by continuing policies, practices and procedures of not paying AGMs for overtime hours worked.  Instead, Wawa has directed its GMs at its stores to restrict overtime, making AGMs work off the clock so as to achieve artificially revenue and profitability goals established for its stores.

49.     As a Wawa AGM, then GM, Mr. McGlade witnessed firsthand these policies, practices and procedures.  He was paid a salary and substantial benefits, including bonuses, profit sharing, 401k matching funds, and healthcare benefits, among others.

50.     Plaintiff Karen McGlade is the wife of Shawn McGlade, and a citizen and resident of Pennsylvania.  As a result of the theft of the McGlade's as a result of the Data Breach, Mrs. McGlade too has been harmed, including but not limited to, having to spend her time trying to reverse improper charges on existing accounts, cancel new accounts improperly opened, and monitoring the couple's credit to ensure the drop in Mr. McGlade's credit score did not grow.  The lower credit score was a reason why the couple was denied a mortgage refinance of their home at a lower rate last year.

51.     Mrs. McGlade has spent substantial time and effort trying to cancel the new credit accounts opened in Mr. McGlade's name, avoid the obligation to pay credit balances for purchases not made by the, cancelling a Verizon phone account wrongfully opened in her husband's names, and trying to restore the couple's credit.

52.     In September of 2019, the McGlades discovered that their confidential PII had been compromised.  Someone other than Mr. McGlade had opened a card with the national retailer, Nordstrom, in Mr. McGlade's name, using the social security number and other confidential PII he had entrusted to Wawa, and had charged thousands of dollars in purchases.

53.     Then, the McGlades learned that someone other than Mr. McGlade had opened a credit account with an entity known as E-commodity (believed to be a bank in Pittsburgh Pennsylvania), in Mr. McGlade's name, using the social security number and other confidential PII he had entrusted to Wawa, and sought to bill unauthorized charges to that account.

54.     Then, the McGlades learned that someone other than Mr. McGlade had opened a cellular telephone service account with Verizon in Mr. McGlade's name, using the social security number and other confidential PII he had entrusted to Wawa, and ran up hundreds of dollars in services fees and other charges on that account.

55.     The McGlades are aware of other instances that someone other than Mr. McGlade has opened, or has attempted to open, additional credit accounts in Mr. McGlade's name, using his confidential PII entrusted to Wawa.  While Wawa contends the Data Breach was limited to payment car information, because the McGlades' investigation of these additional instances of identity theft is ongoing, the Plaintiffs will seasonably supplement their factual allegations as needed as more information becomes available to them.

56.     Because Mr. McGlade was required by Wawa to use his own, personal payment card to pay for discounted purchases of food and beverages at the Wawa store at which he was working, it is believed and therefore averred that the McGlades payment cards, and payment card information of other Wawa employees, was exposed by the Data Breach.  That would not have happened if Wawa had made other provisions for Wawa employees to purchase much-needed food and beverages during work.  It would not have happened had Wawa fulfilled its common law duty to protect the PII of its employees, including their payment card information, from the Data Breach.

57.     At no time has Wawa advised Mr. or Mrs. McGlade that their PII has been compromised due to the breach of data security at Wawa, which started sometime in March 2019.  To the contrary, Mr. McGlade was deceived by Wawa senior management about what was happening to his and other employee PII for months.

58.     Specifically, Mr. McGlade was ordered to go to his store on his day off, December 19, 2019 – the same day as self-described "Lead Goose" Chris Gheysens[2] was announcing to the world the Data Breach of Wawa's computer systems – only to sit idly by for hours waiting for further direction from the Wawa, which direction never came.

59.     On December 19, 2019, neither Mr. McGlade nor any of the other Wawa GMs were advised that *their* employee PII had been compromised, and that the Wawa computer systems were invaded by cybercriminals who had access to *their* employee PII.  Instead, Wawa willfully misrepresented the nature and scope of the Data Breach as being limited only to customer credit card information due to malware, and willfully deceived Wawa employees that they had nothing to worry about as it concerned their employee PII in the care of Wawa.

---

[2] Wawa Associate Handbook at 6 (Exhibit "A" hereto).

60.     That deception allowed the loss of Wawa employee PII to continue unabated, and caused continuing harm to the McGlades and other employees.

61.     Indeed, Wawa had the ability to send a direct notice to each of its employees, explaining how their PII had been compromised.  It chose not to do so.

62.     As discussed throughout this Complaint, the McGlades have suffered direct injury and damages as a result of the Data Breach and compromise of their PII due to the gross negligence of Wawa.

63.     Plaintiffs seek declaratory and injunctive relief to stop the harm, damages to compensate them and others in the Wawa Employee Class for such harm, as well as statutory damages, fees and costs.  In order to try to minimize their harm, the McGlades have signed up for credit monitoring with Experian and expect to press both Experian and Wawa for reimbursement of the economic losses, including reimbursement of their time spent in trying to repair their credit as well as their attorney's fees and costs being incurred to assist them in addressing Wawa's breach of security and compromise of their PII.

## DEFENDANTS

### *The Wawa Defendants*

64.     Wawa, Inc. is a corporation, organized and existing under the laws of New Jersey, with its corporate headquarters at 260 West Baltimore Pike, Wawa, Pennsylvania.

65.     Wild Goose Holding Co. ("Wild Goose") is a corporation, organized and existing under the laws of Delaware with its corporate headquarters at 1105 North Market Street, Suite 1300, Wilmington, Delaware.

66.     Upon information and belief, Wild Goose owns Wawa, Inc.  Accordingly, Defendants Wawa, Inc. and Wild Goose Holding Co. are collectively referred to as "Wawa".

67.     Wawa is one of the largest privately owned companies in America. It began in 1803 as an iron foundry in New Jersey.  Toward the end of the 19th Century, owner George Wood took an interest in dairy farming and the family began a small processing plant in Wawa, Pennsylvania.  As home delivery of milk declined in the early 1960s, Grahame Wood, George's grandson, opened the first Wawa Food Market in 1964 as an outlet for dairy products

68.     Today, Wawa operates a chain of convenience retail stores.  Wawa does business under the name "Wawa" and operates 850 stores located in twenty (20) states, including Pennsylvania, New Jersey, Delaware, Maryland, Virginia, Florida and Washington.

69.     In 2015, Wawa was ranked 34th on the Forbes Magazine list of the largest private companies.  By 2019, it had moved up to the rank of 25, with over $12 billion in annual revenue and 34,000 employees.

70.     The acts alleged in this Complaint to have been done by Wawa were authorized, ordered, done and/or ratified by the company's respective officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of their respective business affairs.

71.     Various persons and/or firms not named as Defendants herein, have participated as co-conspirators in the violations alleged herein and have performed acts and made statements or omissions in furtherance thereof.

**FACTUAL BACKGROUND**

72.     Wawa's "Core Purpose" claims to "value people", to "do the right thing" and to "do things right".  However, Wawa chose to sacrifice each of these values in favor of another "Core Purpose": "passion for winning" at all costs.  https://www.wawa.com/about

73.     "Winning" has caused the McGlades and a class of Wawa employees to suffer the loss of their PII.

74.     Wawa misrepresented the nature and scope of the Data Breach of Wawa's computer systems, and the fact that Wawa employee PII, especially Wawa employee payment card information, had been compromised.  Wawa delayed making such report to its employees, as required by law and its common law duty to employees to secure the employee PII entrusted to its care.

75.     By its misrepresentations and omissions, Wawa deceived the McGlades and the members of the Wawa Employee Class, inducing them to sleep on their rights and not take appropriate, immediate measures to protect themselves and their families.

76.     As a result of Wawa's neglect, new credit accounts have been opened in Shawn McGlade's name, using the McGlades' home address as the billing address, by unknown persons who used the McGlades' confidential PII Wawa was entrusted to secure.  Thousands of dollars were billed to these accounts, and the bills were sent to the McGlades' home for payment.

77.     As a result of Wawa's neglect, a new Verizon phone service account was opened in Shawn McGlade's name, again using the McGlades' home address as the billing address, by unknown persons who used the McGlades' confidential PII Wawa was entrusted to secure. Hundreds of dollars in phone and data charges were billed to this account, and the bills were sent to the McGlades' home for payment.

78.     As a result of Wawa's neglect, the McGlades' payment card information has been compromised, exposing the McGlades' confidential PII entrusted to Wawa's care.

79.     As a result of these actions by cybercriminals, and the inactions and negligence of Wawa, the McGlades' have suffered a loss of their PII which has caused them economic harm.

**The Wawa Data Breach**

80.     In early March 2019, certain unknown cyber criminals accessed Wawa's computer systems and installed malware in order to attack Wawa's point-of-sale ("POS") payment systems.  According to Wawa, every POS system in the 850 Wawa stores was affected in some way.

81.     The cybercriminals maintained access to the Wawa computer systems for the period of at least March 4, 2019 through December 10, 2019, when Wawa concedes it became aware of the intrusion.

82.     However, based on the facts set forth herein, it is believed and therefore averred that Wawa knew (or should have known) weeks, or months, before about the intrusion, but failed to admit the same, either publically or privately to Wawa employees and customers.

83.     In its December 19, 2019 "Open Letter from Wawa CEO Chris Gheysens" concerning the "Wawa Data Security Incident", Wawa claimed that "nothing is more important than honoring and protecting" the "trust" of "the people who come through our doors every day." Among those who come through those same doors are the "nearly 37,000 Wawa associates" who go to work for Wawa each week.

84.     However, Wawa failed to timely, clearly and directly notify its employees, including Mr. McGlade, about the impact of the Data Breach on them.

85.     Wawa admits that the cybercriminals stole payment card data of a number of customers of Wawa.  The exact number of customers is not yet known.

86.     But, members of the Wawa Employee Class are "customers" too, having been required by Wawa to use their own payment cards simply to buy food and beverages they need in order to work their shifts at Wawa stores.

87.     Wawa has failed to admit that the cybercriminals accessed and stole the PII of Wawa employees, like Mr. McGlade.  The exact number of affected Wawa employees is not yet known, but is believed to number in the thousands.

88.     The breach of Wawa's computer systems, and the compromise of its employee PII, including employee payment card data, was the direct and proximate result of Wawa's inadequate security measures.

89.     For years, Wawa has refused to implement even the most basis, industry-standard cybersecurity systems, software, procedures and best practices, as set forth in the below guides.

90.     As a result, the McGlades and other members of the Wawa Employee Class have suffered from the unauthorized access to their employee PII, including their payment card information.

**Wawa Knew or Should Have Known About the Problems of
Identity Theft and Fraud Long Before the Data Breach Occurred.**

91.     Wawa knew about the Data Breach prior to notifying its employees, as required.

92.     On December 3, 2019 – 16 days before Wawa announced the Data Breach to the public -- Wawa posted a job opening looking for an "incident response associate" to help with "detection, response and remediation of cyber related attacks on the Wawa enterprise."  An "incident response associate" is needed when a company has need of someone to "respond" to and "remediate" a "cyber related attack on the Wawa enterprise."  The job posting also required the successful applicant to have a "[v]ery basic understanding of relevant legal and regulatory requirements…".

93.     But, Wawa should have known that it was experiencing a "cyber related attack on the Wawa enterprise" in mid-November 2019, when Visa, one Wawa's largest financial services vendors and partners with whom it has a direct contractual relationship and direct reporting

obligations, reported that gas stations, like those maintained by Wawa stores, had emerged as attractive targets for cybercriminals because many have been slow to adopt more-secure payment-processing technology,  such as chip readers as opposed to magnetic-stripe readers to accept credit and debit card payments.

94.     Specifically, Visa advised that during the summer of the 2019 criminals used malware in two data breaches at North American gas stations and that their retail partners, like Wawa, needed to take appropriate steps to protect themselves, their employees and their customers, and the employee PII in their care, custody and control.

95.     Further, since at least 2014, retailers have had the greatest number of data breaches.  The most common incidents have involved hacking, phishing and skimming schemes targeting POS systems, similar to what is believed to have happened in the Wawa Data Breach.

96.     The 2013 Identity Fraud Report released by Javelin Strategy & Research states that in 2012 identity fraud incidents increased by more than one million victims and fraudsters stole nearly $21 billion. The study identified 12.6 million victims of identity fraud in the United States in the past year, which equates to 1 victim every 3 seconds. The report concluded that nearly 1 in 4 data breach letter recipients became a victim of identity fraud, with breaches involving Social Security numbers to be the most damaging.

97.     In 1992, the Organization for Economic Co-operation and Development ("OECD"), an international treaty organization to which the United States became a signatory in 1961, promulgated a framework for corporations and governments to secure their computers and networks.  This framework included the following broad principles:

a.   Accountability: The responsibilities and accountability of owners, providers and users of information systems and other parties concerned with the security of information systems should be explicit.

b.   Awareness: In order to foster confidence in information systems, owners, providers and users of information systems and other parties should readily be able, consistent with maintaining security, to gain appropriate knowledge of and be informed about the existence and general extent of measures, practices and procedures for the security of information systems.

c.   Ethics: Information systems and the security of information systems should be provided and used in such a manner that the rights and legitimate interests of others are respected.

d.   Multidisciplinary: Measures, practices and procedures for the security of information systems should take account of and address all relevant considerations and viewpoints, including technical, administrative, organizational, operational, commercial, educational and legal.

e.   Proportionality: Security levels, costs, measures, practices and procedures should be appropriate and proportionate to the value of and degree of reliance on the information systems and to the severity, probability and extent of potential harm, as the requirements for security vary depending upon the particular information systems.

f.   Integration: Measures, practices and procedures for the security of information systems should be coordinated and integrated with each other and with other measures, practices and procedures of the organization so as to create a coherent

21

system of security.

g.  Timeliness: The security of information systems should be reassessed periodically, as information systems and the requirements for their security vary over time.

h.  Democracy: The security of information systems should be compatible with the legitimate use and flow of data and information in a democratic society.

98.    Based on the OECD's framework, in 1996, the Department of Commerce's National Institute of Standards and Technology ("NIST") issued its own set of "Generally Accepted Principles and Practices for Securing Information Technology Systems".  As described by NIST, certain generally accepted practices include:

a.  Assessment of Risk and Risk Mitigation, including:

i.  The identification of appropriate safeguards as a primary function of computer security risk management.

ii.  The effective implementation of safeguards.  Including the periodic assessment and improvement of safeguards and the reanalysis of risk.

b.  The use of mechanisms to detect unauthorized and/or illegal activity.

99.    In addition, to assist companies in protecting the security of sensitive personal and financial information, the United States Federal Trade Commission ("FTC") has issued a publication entitled "Protecting Personal Information: A Guide for Business" (the "FTC Report"). In this publication, the FTC provides guidelines for businesses on how to develop a "sound data security plan" to protect against crimes of identity theft.

100.    To protect the personal sensitive information in their files, the FTC Report instructs businesses to follow the following guidelines:

     a.   Keep inventory of all computers and laptops where the company stores sensitive data;

     b.   Do not collect personal information if there is no legitimate business need. If there is a legitimate business need, only keep the information as long as necessary;

     c.   Use social security numbers only for required and lawful purposes and do not store these numbers unnecessarily, such as for an employee or customer identification number;

     d.   Encrypt the personal information, particularly if the sensitive information is shipped to outside carriers or contractors. In addition, the business should keep an inventory of all the information it ships;

     e.   Do not store sensitive computer data on any computer with an Internet connection or access unless it is essential for conducting the business;

     f.   Control access to sensitive information by requiring that employees use "strong" passwords; and

     g.   Implement information disposal practices that are reasonable and appropriate to prevent unauthorized access to personally identifying information.

101.    Wawa violated both international and federal guidelines, which have been in place for decades.  In so doing, it did not meet minimum data security industry standards for reasonable business practices, thereby failing to ensure adequate security of the Plaintiffs' and the Employee Class' PII and by failing to retain this PII in a secure and safe manner.

102.    In January 2020, data security expert, Ron Schlecht of BTB Security, wrote as follows: "What is most shocking to me, and should be most appalling to everybody, is how long this went undetected.  How did Wawa just find this recently?  They were obviously not

monitoring at an appropriate level commensurate with their business volume and were unable to detect this anomalous activity."  Christian Hetrick, "*They were obviously not monitoring at an appropriate level*": *Before Wawa data breach, Visa warned it could happen*, The Morning Call (Jan. 2, 2020), https://www.mcall.com/news/pennsylvania/mc-nws-pa-wawa-data-breach-20200102-sp2mm3eulneqhe6d7vbv56byse-story.html.

103.   The Financial Institution Plaintiffs provide additional instances of direct and indirect warnings to Wawa, which should have put Wawa on notice of the Data Breach.  *See* ECF No. 128 at ¶¶ 28-34.  Such factual averments are incorporated by reference thereto, to the extent needed to bolster the Employee Plaintiffs' claims against Wawa.

104.   Despite all these direct and indirect warnings, Wawa did nothing to change its data security practices, especially in relation to the protection of employee PII in its care.  The Data Breach was thus reasonably foreseeable, and preventable, had Wawa only listened to the warnings and acted upon such warning in a timely manner.

105.   Even the McGlades indirectly and unwittingly notified Wawa of the pending Data Breach.  In September 2019, the McGlades were attempting to obtain a mortgage re-finance on their home, and had been told there were several unexplained credit account issues affecting Mr. McGlade's credit score.  Mr. McGlade directly inquired of his superiors at Wawa whether there was something going on at Wawa that might be affecting his credit situation.  He was not told the truth about the pending Data Breach.  Whether Wawa knew about the pending Data Breach at the time, Mr. McGlade's direct inquiry should have caused Wawa to do an investigation which, had it be done properly, should have revealed the pending Data Breach long underway since March.

106.    Instead, Wawa chose to do nothing, and as a result did not discover the cyber attack until much later in the year.  It thus failed to timely notify its employees until December.

107.    Had Wawa taken appropriate steps at the appropriate time, the McGlades' PII, and the PII of thousands of other employees in the Wawa Employee Class, would not have stolen by cybercriminals.  The PII of the Wawa Employee Class would not have been compromised.

**Wawa Breached its Duty to its Employees to Protect Their PII**

108.    Because Wawa required Mr. McGlade and other Wawa employees to provide them their PII as a condition of their employment at Wawa, Wawa had a common law duty to protect the private, highly sensitive, and confidential PII of the McGlades and the members of the Wawa Employee Class entrusted to its care.  The legal duty has been made clear by the Pennsylvania Supreme Court.

109.    Wawa failed to safeguard and prevent the theft of this employee PII from its computers or network.  It failed to take reasonable precautions to protect the PII of Plaintiffs and the Wawa Employee Class, and otherwise failed to act reasonably in fulfillment of their duty to current and former employees.

110.    Specifically, Wawa failed to comply with the above-described industry standards for data security and mishandle the employee PII entrusted to it, as a result of Wawa's employee policies, practices and procedures.

111.    As a direct and proximate result of Wawa's actions and failures to act in maintaining reasonable and adequate security procedures to protect against the theft of Plaintiffs' and the Employee Class' PII, Plaintiffs and the Class have suffered actual harm and damages, including statutory damages, in that the personal and financial information of Plaintiffs and the members of the Wawa Employee Class have been misappropriated, accessed and used

improperly without consent, to purchase goods and services, to expend bank funds and to do other acts described herein.

112.    Because of this misappropriation, Plaintiffs and the Wawa Employee Class have suffered significant economic harm, in the form of lost monies, lost time (including time spent monitoring their credit and working to clean up negative credit due to incidents caused by the Data Breach), lost resources, reductions in their credit scores, and negative impact in their ability to obtain credit.

113.    Wawa's failure to maintain reasonable and adequate security procedures to protect against the theft of Plaintiffs' and the Employee Class' PII has also put members of the Class at an increased and imminent risk of becoming victims of identity theft crimes, fraud and abuse in the future.  In the case of the McGlades and other members of the Wawa Employee Class, that risk has been realized and remains outstanding to this day.

114.    Plaintiffs and members of the Wawa Employee Class have spent, and/or will continue to need to spend, considerable time, effort and money seeking to protect themselves and restore their identities and credit as a result of Wawa's conduct.

115.    Plaintiffs and the Employee Class are unable to obtain appropriate complete relief from Wawa, and thus have come to this Court for a reasonable remedy.

## Wage and Hour Claims

### The *Gervasio* Case in the District of New Jersey

116.    In January 2017, several Wawa current and former AGMs brought a class action lawsuit in New Jersey Federal District Court for unpaid overtime.  The lead plaintiff was named Gervasio.  *See generally, Gervasio v. Wawa*, Dkt. No. 3:17-cv-00245 (D.N.J.)(Sheridan, J.)("*Gervasio*"). In the *Gervasio* case, the AGMs alleged that Wawa violated the Fair Labor

Standards Act (FLSA) and the wage and hour laws of various states in which Wawa has its stores, including Pennsylvania. *See* Dkt. No. 1 (filed January 12, 2017).

117.    The AGMs in *Gervasio* alleged that they routinely worked 50 to 55 hours per week, sometimes more, but were not paid by Wawa for the hours worked in excess of 40 hours, as required by law. But, because Wawa had misclassified AGMs as exempt from coverage of the overtime provisions of the federal and state laws, Wawa refused to pay these employees overtime. So, the AGMs sued to recover what was owed to them.

118.    On January 11, 2018, the New Jersey Court granted the *Gervasio* plaintiffs' motion for conditional class certification and authorized notice to be sent to approximately 1,040 current and former Wawa AGMs. *Compare* Dkt. No. 24 (Jan. 11, 2018 Order) *with* Dkt. No. 111-2 (Decl. of Marc S. Hepworth in Support of Plaintiffs' Unopposed Motion for Final Approval of the Collective Action Settlement) at ¶ 11 ("On February 1, 2018, Plaintiffs' Counsel sent Court-authorized notice to approximately 1,040 current and former AGMs."). "At the end of the notice process, a total of three-hundred thirty three (333) Wawa AGMs, had opted in to this litigation." *Id*. at ¶ 12.

119.    In other words, over 700 current and former AGMs in the *Gervasio* class did not opt-in. These 700 current and former AGMs remain unpaid for overtime worked at Wawa.

120.    In December 2018, after mediation with Hon. Diane Welsh, Wawa chose to settle with the *Gervasio* class of 333 "opt-in" plaintiffs. *Id*. at ¶¶ 13-16. Wawa agreed to pay the class $1,400,000.00. Dkt. No. 111-1 at 8.

**Mr. McGlade's Claims in *Gervasio* and Continuing Claims for Overtime Pay**

121.    Mr. McGlade was a Wawa AGM during the entire calendar year 2015 covered by the *Gervasio* settlement, and was thus eligible to paid for his unpaid overtime out of the

settlement money Wawa agreed to pay its former AGMs for uncompensated overtime, he did not collect.

122.    Mr. McGlade worked hundreds of hours of overtime while an AGM at Wawa.  He worked as an AGM between September 2014 until March 2017, when he was promoted to GM.

123.    His primary job duties as an AGM included working the cash registers, making deli sandwiches, stocking shelves, cleaning the store, assisting customers, and other manual tasks.

124.    Mr. McGlade's hourly rate, like other AGMs, was approximately $22.50 per hour.

125.    Throughout his employment as an AGM, Mr. McGlade, like other similarly situated AGMs, regularly worked more than 40 hours per workweek.

126.    Since prior to 2015, AGMs were required to work 46.5 hours.

127.    However, AGMs typically work 50 to 55 hours per workweek, or more.

128.    Regardless of whether Mr. McGlade and other AGMs were scheduled to work a workweek totaling under 40 hours, scheduled to work a workweek totaling 40 hours, or scheduled to work a workweek totaling in excess of 40 hours, they were regularly required to work a substantial amount of time off-the-clock as part of their job duties as an AGM. Mr. McGlade and other similarly situated AGMs were never compensated for this time worked off-the-clock

129.    Most of the overtime hours Mr. McGlade worked "off the clock" were either early in the morning, when he would be called to work by his GM, in the evening, after his 8 hour shift had ended, or after his 40 hour work week was completed, when he was asked to stay, and work more hours, without compensation, by his GM.

130.    Mr. McGlade came to learn that senior management at Wawa did not want employees to be paid overtime, because overtime caused the wages paid to exceed budgeted expectations for its stores.

131.    Wawa established sales and revenue goals for each of its stores on a monthly basis.  These estimates were based on the company's expectations about future revenues and its hope for future profits.  However, at times, these budget estimates were unrealistic, as they did not take account of actual circumstances and conditions at particular stores.

132.    Nevertheless, Wawa held its GMs accountable to make the numbers.  GMs were told to limit overtime, and in the case of AGMs restrict overtime by having the AGM assigned to each store work off the clock so as to avoid detection and avoid Wawa's obligations to pay overtime.

133.    Wawa AGMs went along with Wawa's unwritten policies, practices and procedures to avoid paying AGMs overtime because Wawa dangled the "carrot" of these AGMs one day getting their own stores to manage as GMs.

134.    This apprentice program has existed at Wawa for decades.  As a result, it is ingrained in the culture of Wawa.  Legacy senior executives and GMs at Wawa were all trained in the policies, practices and procedures of treating Wawa AGMs as "exempt" employees, and thereby ineligible for overtime pay.

135.    The *Gervasio* case demonstrated that such policy, practice and procedure was wrong.  Wawa AGMs were misclassified as exempt.

136.    Wawa reclassified its AGMs as non-exempt in 2015.

137.    As a result, Wawa conceded that it was erroneously not paying its AGMs for overtime earned up until 2015.

138.    Mr. McGlade alleges that, despite such change in classification of Wawa AGMs as non-exempt in 2015, the culture at Wawa did not change.  Wawa senior management continued to enforce the old policies, practices and procedures of not allowing AGMs to collect overtime, despite the re-classification of such employees as non-exempt.

139.    Mr. McGlade has direct personal knowledge of such lack of change in culture and policies, practices and procedures because he was an AGM from September 2014 until March 2017, after which time he was promoted to GM and given his own store to manage.

140.    As a result, Mr. McGlade witnessed firsthand between told by his GM after 2015 to continue to work "off the clock" and avoid billing for his overtime, despite the demands of the AGM position not changing.  AGMs were required to continue to work as hard in 2016 and 2017, as they did in 2015 and 2014.

141.    When Mr. McGlade was promoted to GM, he then witnessed firsthand the continued culture of Wawa senior management holding its GMs accountable for making unrealistic revenue and profit projections for its stores.  Wawa did so by not paying its AGMs for overtime they worked.

142.    Mr. McGlade did not "opt-in" to the *Gervasio* class and settlement out of fear of retaliation from senior management at Wawa.  Even though Wawa had re-classified its AGMs as non-exempt in 2015, and therefore conceded it was required to pay them overtime hours in excess of 40 hours per week, it continued its policies, practices and procedures of making AGMs work overtime hours, without overtime compensation.

143.    It did so through the same network of senior managers and GMs who had been trained in the "old ways" at Wawa, making AGMs work overtime without pay to ensure that Wawa stores met their monthly revenue and profit projections established by Wawa.  Wawa

stores could only meet such quotas by cutting corners, and reducing expenses.  One of the largest such expenses was wages, especially overtime wages.  So Wawa senior management simply continued the practice of treating AGMs as exempt, having GMs make AGMs – GMs in training, waiting for the opportunity to run their own Wawa stores some day – work long hours without legally mandated overtime compensation.

144.    Thus, as a result of the 2015 re-classification of its AMGs, and Wawa's willful continuance of unwritten policies, practices and procedures of having non-exempt AGMs, like Mr. McGlade, continue to work overtime "off the clock" and without legally mandated overtime compensation just to earn the right to have their store one day, Wawa's conduct was willful.

145.    Wawa knew that it has misclassified its AGMs as exempt prior to 2015.

146.    In 2015, Wawa elected to reclassify its AGMs as non-exempt, thereby making AGMs eligible for overtime pay.

147.    Wawa was sued in 2017 by its AGMs for failure to pay overtime in the *Gervasio* action challenging the very practice of having AGMs work overtime hours without overtime compensation.

148.    As a result, Wawa's continuing action in denying non-exempt AGMs, like Mr. McGlade, overtime compensation after 2015 and through at least 2017 when Mr. McGlade was still and AGM, constitutes a willful violation of the FLSA, warranting the application of a three-year statute of limitations to Mr. McGlade's FLSA claims, and the claims of the other, similarly-situated members of the Wawa AGM Employee Class. 29 U.S.C. § 255(a) (applying a three-year statute of limitations to "a cause of action arising out of a willful violation"); *see also*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1998).

149.     An employer's conduct is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id*. at 133.

150.     In this Circuit, to prove a willful violation, an employee must show that the employer actually knew of the specific FLSA requirement at issue at the time of the violation and intentionally did not comply with it. *Souryavong v. Lackawanna Cty.*, 872 F.3d 122 (3d Cir, 2017).

151.     Here, pre-violation awareness by Wawa of its FLSA violation is shown by at least the following facts: (1) Wawa re-classified its AGMs as non-exempt in 2015, after misclassifying them as exempt for years and denying them overtime pay; (2) Wawa was sued in 2017 by a class of AGMs for its FLSA violations in not paying AGMs overtime pay, and elected to settle, paying AGMs the overtime wages to which they were entitled up to 2015; (3) despite its decision to reclassify AGMs in 2015, and being sued by AGMs for FLSA violations in 2017 through 2019, Wawa senior management and GMs continued the policies, practices and procedures of having Wawa AGMs work overtime hours "off the clock" so as to avoid detection and avoid legally mandated overtime payments.  All these decisions by Wawa were willful, and demonstrate Wawa's awareness of the continuing FLSA violations in not paying AGMs like McGlade overtime pay.

152.     Despite re-classifying its AGMs as non-exempt in 2015, Wawa's continued requirement of its GMs, like Mr. McGlade beginning in April 2017, to enforce unwritten policies, practices and procedures about not paying overtime, including having AGMs come in early and work late "off-the-clock" to avoid Wawa having to pay them overtime, was willful.

153.     In fact, Mr. McGlade was fired in January 2020 for enforcing just such an unwritten policy, after he had been told by his supervisor to not allow overtime at his store in

order to make his monthly revenue and profit quota, which quota was unrealistic due to the

hourly demands placed on employees, causing wages to rise, especially due to overtime.

154.    At all times material hereto, Wawa employed Mr. McGlade and the members of

the Wawa AGM Employee Class as AGMs.

155.    Wawa maintained control, oversight, and discretion over the operation of its retail

stores, including its employment practices with respect to Mr. McGlade and the other members

of the Wawa AGM Employee Class.

**Additional Factual Allegations Relating to Continuing Wage and Hour Claims**

156.    29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which
> an employee is on duty on the employer's premises or at a prescribed
> workplace, as well as all other time during which the employee is suffered
> or permitted to work for the employer. Such time includes all pre-shift and
> post-shift activities which are an integral part of the employee's principal
> activity or which are closely related to the performance of the principal
> activity, such as attending roll call, writing up and completing tickets or
> reports, and washing and re-racking fire hoses.

157.    29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of

a principal activity are those closely related activities which are indispensable to its

performance."

158.    Mr. McGlade and the members of the Wawa AGM Employee Class performed

work as AGMs that was integrated into the normal course of Wawa's business.

159.    Consistent with Wawa's ongoing policy, pattern and/or practice, Mr. McGlade

and the other members of the Wawa AGM Employee Class regularly worked in excess of 40

hours per workweek without being paid overtime wages.

160.     Specifically, Mr. McGlade worked at least 50 to 55 hours per week during the period of his employment as an AGM, September 2014 through March 2017.

161.     The number of shifts Mr. McGlade worked per week can be ascertained from Wawa's records.

162.     Wawa assigned all of the work performed by Mr. McGlade and the other members of the Wawa AGM Employee Class, and is aware of all the work they have performed.

163.     In fact, Wawa sent Mr. McGlade a notice in the *Gervasio* case, acknowledging that he was included within the class of affected AGMs who worked overtime up and through 2015 without being paid.

164.     The work done by Mr. McGlade and the other members of the Wawa AGM Employee Class required little skill and no capital investment.

165.     This work required of Mr. McGlade and the other members of the Wawa AGM Employee Class did not include managerial responsibilities.

166.     This work required of Mr. McGlade and the other members of the Wawa AGM Employee Class did not include the exercise of meaningful independent judgment and discretion concerning matters of significance.

167.     It is likely for these reasons that Wawa finally decided in 2015 to re-classify its AGMs as non-exempt under the wage and hours, thereby conceding they were not properly classified and thus were not paid proper overtime wages.

168.     However, in changing its classification of AGMs, Wawa did not change its ongoing policy, pattern and/or practice of not paying re-classified AGMs, including Mr. McGlade and the other members of the Wawa AGM Employee Class, overtime wages for hours they continued to work in excess of 40 hours per workweek.

169.     Instead, Wawa senior management simply directed its GMs to have AGMs work overtime hours off the clock, so as to avoid detection and avoid the obligation to pay for such overtime hours.

170.     Throughout the relevant time period, Mr. McGlade and the other members of the Wawa AGM Employee Class performed the same primary job duties, including the following: working the cash registers, making deli sandwiches, stocking shelves, cleaning the store, assisting customers, and other manual tasks.

171.     Throughout the relevant time period, the primary job duties of Mr. McGlade and the other members of the Wawa AGM Employee Class did not include the following: hiring, firing, disciplining, or directing the work of other employees, and exercising meaningful independent judgment and discretion.

172.     The primary job duties of Mr. McGlade and the other members of the Wawa AGM Employee Class did not materially differ from the duties of other, non-exempt hourly paid employees.  These primary duties were manual in nature.

173.     The manual labor and non-exempt work of Mr. McGlade and the other members of the Wawa AGM Employee Class occupied the majority of their working hours.

174.     Pursuant to a centralized, company-wide policy, pattern and/or practice, Wawa classified all AGMs and other similarly situated current and former employees holding comparable positions but different titles as exempt from coverage of the overtime provisions of the FLSA and PMWA.

175.     Wawa's decision to change the classification of AGMs in 2015 to non-exempt from exempt is an acknowledgement that they had been misclassified up to that time.

176.    Wawa did not perform a person-by-person analysis of the job duties of AGMs when making the decision to classify all of them as exempt from the overtime provisions of the FLSA and PWMA.

177.    Similarly, it is believed and therefore averred that Wawa did not perform a person-by-person analysis of the job duties of AGMs when making the decision to re-classify all of them as non-exempt from the overtime provisions of the FLSA and PWMA in 2015.

178.    Instead, Wawa simply changed the classification, without changing the existing policy, pattern and/or practice of not paying re-classified AGMs, including Mr. McGlade and the other members of the Wawa AGM Employee Class, overtime wages for hours they continued to work in excess of 40 hours per workweek.

179.    Wawa established labor budgets to cover labor costs for the stores in which AGMs worked.

180.    Wawa did not provide sufficient resources in the labor budgets for non-exempt employees to complete all the non-exempt tasks in each store.

181.    Wawa knew or recklessly disregarded the fact that failing to provide sufficient resources in store labor budgets resulted in Mr. McGlade and the other members of the Wawa AGM Employee Class (who were not paid overtime) working more than forty (40) hours in a workweek and primarily performing manual and non-exempt duties during their workweeks, without receiving overtime compensation.  This allowed Wawa to avoid paying additional wages (including overtime) to the non-exempt store level employees, like AGMs.

182.    Wawa acted willfully and knew, by virtue of the fact the its General Managers and Area Managers (as its authorized agents) actually saw Mr. McGlade and the other members of the Wawa AGM Employee Class perform primarily manual labor and non-exempt duties, that

as a result of the underfunded labor budgets Wawa had non-exempt employees primarily performing such work.

183.    Wawa knew through its General Managers and Area Managers (as its authorized agents) that AGMs were primarily performing non-exempt duties after 2015 and up to and including 2019.  Wawa acknowledged the same through its 2015 decision to re-classify.

184.    In operating its over 800 stores in 20 states, Wawa was fully aware of its obligations under the FLSA and state laws to pay overtime wages for non-exempt duties performed by AGMs.

185.    But Wawa chose to put the profitability of its stores over its obligations to its employees.

186.    As a result, Wawa's continuing conduct with respect to not paying AGMs overtime wages was willful and/or in reckless disregard of the FLSA.

## CLASS ACTION ALLEGATIONS

187.    Plaintiffs seek to bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other current and former employees of Wawa, and their spouses, similarly situated in Pennsylvania and other states in which they reside, as members of the following proposed "**Wawa Employee Class**":

> All current and former employees of Wawa, and their spouses in Pennsylvania and other states in which they reside, who, during the period beginning in at least March 2019 and continuing through the present had their PII accessed, disseminated and/or used by unauthorized users as a result of the breach of Wawa's computer systems.  Excluded from the Class are Defendants, any entity in which a Defendant has a controlling interest, and their legal representatives, heirs, successors, and any governmental entities.

Plaintiffs also seek certification of a collective action, pursuant to the FLSA, 29 U.S.C. § 216(b), of the following proposed "**Wawa AGM Employee Class**" or "FLSA Collective":

> All current and former employees of Wawa who, at any time within three (3) years prior to the filing of the Complaint through the date of disposition of this matter, are or have been employed by Wawa in the position of Assistant General Manager and/or employees holding comparable positions but different titles in a Wawa store located in Pennsylvania, and classified as non-exempt from overtime compensation, and who have not been paid for all hours worked by them as well as overtime wages.

188.    Plaintiffs do not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

189.    *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*: With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the AGMs described are "similarly situated" to Plaintiff.  The members of the Wawa AGM Employee Class, on whose behalf Mr. McGlade brings this collective action, are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Wawa's practices, policy, or plan of not paying their AGMs for their pre-shift or post-shift compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Wawa and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

190.    Upon information and belief, Plaintiff estimates that the FLSA Collective, including both current and former AGMs over the relevant period, will include several hundred members who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of collective Class members should be readily available from a review of Wawa's personnel, scheduling, time and payroll records, and from input received from the Collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

191.    Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether they all are entitled to unpaid overtime compensation,

interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, to the factual assessment and legal standards lend themselves to a collective action.

## The PMWA Class Allegations

192. **P**laintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> *All current and former AGM employees who worked for Wawa in Pennsylvania, at any time in since January 2017.*

(hereinafter referred to as the "PMWA Class"). Plaintiff reserves the right to amend this definition as necessary.

193. *Numerosity*:   The members of the PMWA Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

194. *Commonality/Predominance*:   There is a well-defined community of interest among PMWA Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

    a.      Whether the pre-shift off-the-clock time the PMWA Class members spend each shift and each workweek is compensable under the PMWA;

    b.      Whether Wawa violated the PMWA through their pay practices;

    c.      Whether Wawa's violations of the PMWA were willful;

    d.      Whether Wawa violated the Pennsylvania codes by failing to make, keep, and preserve true and accurate payroll records;

e.      Whether Wawa should be required to pay unpaid wages, overtime premiums, compensatory damages, liquidated damages, attorneys' fees and costs, and pre-and post-judgment interest for violating the PMWA and Pennsylvania codes.

195. *Typicality*:  Mr. McGlade's claims are typical of those of the PMWA in that he and all other PMWA Class members suffered damages as a direct and proximate result of Wawa's common and systemic payroll policies and practices.  McGlade's claims arise from Wawa's same policies, practices, and course of conduct as all other PMWA Class members' claims and McGlade's legal theories are based on the same legal theories as all other PMWA Class members: whether all PMWA Class members were employed by Wawa on an hourly basis without receiving compensation for "off-the-clock" wages owed for that work.

196. *Adequacy*:  Mr. McGlade will fully and adequately protect the interests of the PMWA Class and McGlade retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither McGlade nor his counsel has interests that are contrary to, or conflicting with, the interests of the PMWA Class.

197. *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible PMWA Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the PMWA Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Wawa's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform

adjudication on all issues.

198. The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the PMWA Class within that group a separate opt-out notice pertaining to their rights under the Pennsylvania state law. McGlade and his counsel know of no unusual difficulties in the case and Wawa has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

**The Wawa Employee Class Allegations**

<u>*Numerosity*</u>

199.    The proposed Wawa Employee Class is so numerous that joinder of all of its members is impractical.  There are at least 34,000 current Wawa employees, and thousands of other former employees, for whom Wawa maintained their PII on Wawa computer systems.  Of those, thousands used their own payment cards on Wawa compromised POS systems. These current and former employees of Wawa, and their spouses, suffered from the compromise of the Wawa computers and systems and the loss of their PII due to Wawa's actions and failures to act.

200.    The proposed Wawa AGM Employee Class is so numerous that joinder of all of its members is impractical.  There are hundreds of AGMs who worked for Wawa during the period January 2017 through January 2020.  Included among those is Mr. McGlade – who worked as an AGM through March 2017 when he was elevated to GM.  The Class also includes dozens, if not more, others AGMs who were included within the *Gervasio* settlement class, but who, as a result of their continued work at Wawa, the fear of retribution from Wawa senior

management, or other reasons, did not elect to participate in the class settlement and collect

settlement proceeds. As a result, their claims were not released by the *Gervasio* Court's final

order approving the settlement. *See Gervasio*, Dkt. No. 112 at 1 (describing the Settlement

Members as "consist[ing] of all individuals who held the Assistant General Manager ('AGM')

position at Wawa between January 12, 2015 and December 28, 2015 and who joined this Action

by filing a Notice of Filing of Consent to Join Form ('Opt-In Plaintiffs')").

201.    To the extent required by this Court, the Wawa Employee Class is ascertainable

insofar as Wawa maintains the names and addresses of all current and former employees for

whom it collected employee PII. Wawa also maintains records of those Wawa employees who

used their own payment cards to make purchases at Wawa stores, taking advantage of the Wawa

offered discount to employees. Finally, it is believed and therefore averred that Wawa, through

its investigation of the Data Breach or otherwise, has records of all such Wawa Employee Class

members whose PII was compromised as a result of the Data Breach. Thus, Wawa possesses the

information needed to ascertain the Wawa Employee Class.

202.    Similarly, Wawa possesses the information needed to ascertain the Wawa AGM

Employee Class through the above information, as well as the records of service of current and

former AGMs during the period January 2017 and January 2020. By Wawa's participation in the

*Gervasio* class settlement, Wawa also has records of all AGMs who continued to work as AGMs

into 2017 and possibly beyond, thereby making them members of the Wawa AGM Employee

Class in this case due to the limited scope of the *Gervasio* release. *See Gervasio*, Dkt. No. 112 at

3 ("By this Judgment, each Federal Release Opt-In shall be deemed to have, and by operation of

the Judgment shall have, fully, finally, and forever released and discharged the Released Parties

(as defined in the Stipulation) … any and all overtime and other wage claims … arising prior to December 28, 2015").

*Common Questions of Law and Fact*

203.    There are multiple issues of law and fact in this case against Wawa that are common to the Wawa Employee Class, including the following:

    a.    Whether Wawa received and stored PII of Plaintiffs and members of the Class;

    b.    Whether Wawa had a duty to act reasonably in protecting the PII of Plaintiffs and the Class in its care, custody and control;

    c.    Whether Wawa failed to act reasonably in protecting the PII of Plaintiffs and the Class in its care, custody and control;

    d.    Whether the actions and/or failures to act of Wawa caused the PII of Plaintiffs and the Class to be accessed, stolen and used without authorization;

    e.    Whether Wawa failed to timely and reasonably notify Plaintiff and the Class of the theft of their PII in conformity with the laws of Pennsylvania and other states;

    f.    Whether Wawa complied with the security notification laws of Pennsylvania and other States upon learning of the breach of the PII of Plaintiffs and the Class;

    g.    Whether Wawa violated the consumer protection laws of Pennsylvania and other states through its acts and omissions set forth in this Complaint;

    h.    Whether Wawa was negligent in failing to protect the PII of employees in its care, custody and control;

    i.    Whether Plaintiffs and members of the Wawa Employee Class are entitled to declaratory and injunctive relief as to Wawa's conduct;

j.  Whether Plaintiffs and the members of the Wawa Employee Class are entitled to damages, and, if so, the nature of such damages;

k.  Whether Plaintiffs and members of the Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

204.  There are multiple issues of law and fact in this case common to the Wawa AGM Employee Class, including the following:

a.  Whether Wawa AGMs continued to work overtime without pay, even after being re-classified as non-exempt in 2015.

b.  Whether Wawa had unwritten policies, practices and procedures administered by senior management and GMs respecting not allowing AGMs to bill for overtime worked at stores, even after being re-classified as non-exempt in 2015, in order to maintain the monthly profitability goals of Wawa stores;

c.  Whether Wawa failed to pay such AGMs for their overtime worked, in accordance with both federal and Pennsylvania wage and hour laws;

d.  Whether Plaintiffs and members of the Wawa AGM Employee Class are entitled to declaratory and injunctive relief as to Wawa's conduct;

e.  Whether Plaintiffs and the members of the Wawa AGM Employee Class are entitled to damages, and, if so, the nature of such damages;

f.  Whether Plaintiffs and members of the Wawa AGM Employee Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

<em>Typicality</em>

205.    Plaintiffs' claims are typical of the claims of the members of the Wawa Employee Class and the Wawa AGM Employee Class.

206.    Plaintiffs and the members of the Wawa Employee Class sustained injuries as a result of the unlawful compromise and disclosure of their PII, which injuries were directly and proximately caused by Wawa's acts and omissions.  As detailed herein, Plaintiffs' harm consisted of the actual theft of their identity by the use of their PII by unauthorized persons, which caused injury and damages, including identify theft, account takeover, compromise of the McGlades' payment cards and a substantial reduction in Mr. McGlade's credit score at a time he was seeking a lower mortgage payment by a mortgage refinance.

207.    Plaintiffs and the members of the Wawa AGM Employee Class sustained injuries as a result of Wawa's failure to pay overtime earned by Mr. McGlade and other AGMs like him.

<em>Adequacy of Representation</em>

208.    Plaintiffs can and will fairly and adequately represent and protect the interests of the above-described Classes, and Plaintiffs have no interests that conflict with or are antagonistic to the interests of the members of the Classes.  Plaintiffs have retained attorneys competent and experienced in class actions, including consumer fraud class actions involving theft of identify.  No conflict exists between Plaintiffs and the members of the Classes.

<em>Superiority</em>

209.    A class action is superior to any other available method for the fair and efficient adjudication of this controversy and common questions of law and fact overwhelmingly predominate over any individual questions that may arise.

45

210.    The prosecution of separate actions by individual members of the plaintiff Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes.  These adjudications would establish incompatible standards of conduct for the Defendants which would, as a practical matter, be disparities of the claims of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

211.    The Defendants have acted or refused to act on grounds generally applicable to all members of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

212.    Accordingly, class certification is appropriate under Rule 23(b)(1)(A), 23(b)(1)(B), 23 (b)(2) and 23(b)(3).

## COUNT I

### VIOLATIONS OF THE PENNYSLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### THE WAWA EMPLOYEE CLASS V. WAWA

213.    Plaintiffs hereby incorporate by reference thereto the foregoing and following paragraphs hereof as if fully set forth herein.

214.    In order to be employed by Wawa, the Plaintiffs and the members of the Wawa Employee Class were required to supply their PII.

215.    This PII included, but was not limited to, their social security numbers, their names, the names of their spouses and children, their home addresses, their telephone numbers, and other confidential information.

216.    In addition, as required by the Wawa Associate Handbook (Exhibit "A" hereto), Wawa employees were required to use their own payment cards to pay for discounted food,

46

beverages and other items in Wawa stores, as well as gasoline.  The additional PII of employee payment card information was also collected and maintained by Wawa.

217.    On information and belief, the aforementioned PII was stored by Wawa on its computer network, or individual computers within the possession and control of Wawa and its employees.

218.    Long after former employees ended their employment relationship with Wawa, on information and belief, Wawa maintained this personal information without need and/or permission.  On information and belief, Wawa maintained this information knowing that they had no lawful reason and/or need to retain or use the PII of such members of the Wawa Employee Class.

219.    On information and belief, Wawa maintained such employee PII in an unsecure manner, failing to take appropriate steps to secure such PII using appropriate cybersecurity protections.

220.    By knowingly retaining the PII information in an unsecured manner, Wawa allowed such PII to access and disclosed to unknown cyber-criminals, who obtained this information by accessing the unsecured computers of Wawa.

221.    These cybercriminals accessed the employee PII contained therein without any lawful purpose or privilege to do so.  Chiefly, they obtained the employee PII of the Plaintiffs and the Wawa Employee Class in order to steal their identities and commit unlawful acts, including seeking to sell such PII on the dark web.

222.    Despite these clear facts, Wawa failed to timely disclose these facts to Mr. McGlade and other Wawa employees, and intentionally concealed all the material facts about the Data Breach, including the fact that Wawa employee PII had been compromised and stolen.

223.    Instead, Wawa withheld such information from Mr. McGlade and other GMs, AGMs and other senior managerial employees, who were deliberately kept in the dark even as they were told to field and answer questions by the public about the Data Breach.

224.    This failure to timely disclose the full nature and extent of the Data Breach, and its impact on Wawa Employee Class members, caused such members to be confused about and misunderstand the nature and extent of the Data Breach, in particular its impact on employees, causing them sleep on their rights while the cyber-criminals were actively trying to sell employee PII on the dark web.

225.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§201, et seq. ("UTPCPL") makes unlawful any "unfair methods of competition" and "unfair or deceptive acts or practices", including the following, among others:

> (xxi)   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

226.    The unfair methods of competition, and unfair or deceptive acts or practices, in the conduct of any trade or commerce as defined above are declared unlawful under the UTPCPL.

227.    Wawa engaged in the following unfair and deceptive acts or practices, which violated the aforesaid catch-all provision of the UTPCPL, either directly by their own acts and/or omissions, or by their authorization, express or implied, to others to engage in such unfair and deceptive acts:

> a.     Wawa misled and deceived Mr. McGlade and other members of the Wawa Employee Class about the timing, nature and scope of the Data Breach of the Wawa computer systems, by their direct misstatements on December 19, 2019 and by other willful omissions both before and after;

> b.     Wawa's acts or practices, including the failures to act and to speak the truth in the face of misleading and deceptive statements about the timing, nature and scope of the Data Breach, constitute "other fraudulent or

48

deceptive conduct which creates a likelihood of confusion or of misunderstanding, in violation of sub-section (xxi).

228.    The UTPCPL authorizes any person, including natural persons, corporations, trusts, partnerships, incorporated and unincorporated associations, and any other legal entities to seek an injunction, damages, costs, and reasonable attorney's fees to prevent and ameliorate the anticompetitive conducted described herein.

229.    Mr. McGlade is a person pursuant to the UTPCPL.  Mr. McGlade has been injured as a result of Wawa's conduct in violation of Pennsylvania law, and hereby seeks damages.

230.    The acts and practices described herein demonstrate that Wawa acted unlawfully within the meaning of the UTPCPL such that Mr. McGlade may be awarded up to three times his actual damages sustained, and such additional relief as deemed necessary or proper.  These damages consist of, *inter alia*, lost time, money and credit due to Wawa's misleading statements and deception as to the Data Breach and the timing, nature and extent of the compromise of the Wawa computer systems.  Had Mr. McGlade and others in the Wawa Employee Class been told about the truth about the Data Breach, and its impact on them, they would have taken appropriate steps to protect themselves from the further, future loss of time, money and credit.

231.    Mr. McGlade seeks relief Wawa for its unfair and deceptive conduct which allowed Wawa to avoid detection of the compromise and loss of employee PII.

232.    Mr. McGlade and members of the Wawa Employee Class have been injured as a direct result of Wawa's conduct in violation of the UTPCPL sections above, and hereby seeks damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

## COUNT II
## NEGLIGENCE
## THE WAWA EMPLOYEE CLASS V. WAWA

233.    Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

234.    As set forth above, under Pennsylvania common law, Wawa owed, and continues to owe, a duty of care to Plaintiffs and the members of the Wawa Employee Class to do all of the following: (1) ensure that employee PII was secure; (2) ensure that employee PII was not compromised, or accessed by anyone for an improper purpose without consent by Plaintiffs and the Class, (3) was used only for proper purposes, and (4) was properly destroyed at a reasonable time after the employment relationship with former employees ended.  This duty of care also included a duty of reasonable care in safeguarding employee PII and discovering any breach of such PII in a timely manner, and then timely reporting such breach to affected employees.

235.    Wawa breached its duty of care to Plaintiffs and the Wawa Employee Class by failing to provide adequate protections to the employee PII entrusted to its case, and by allowing the employee PII to be accessed by third parties, who used it unlawfully.  Wawa breached its duty of care by failing to timely discover the breach of employee PII and failing to timely and fully report the details of such breach to affected employees, like the McGlades.

236.    As a direct and proximate result of Wawa's actions and inactions alleged above, the Plaintiffs and the Wawa Employee Class suffered damages, including the loss of time and money in monitoring their credit, the loss of use of certain accounts that had been taken over, the effort to shut down new accounts that had been open in their names without their knowledge or

consent, and the loss of credit, including a drop in Shawn McGlade's credit score while he was attempting to lower his mortgage payment by refinancing his home.

237.    In breaching its duty to Plaintiffs and the Class, Wawa acted wantonly, recklessly and with utter disregard for the impact of its negligent conduct on affected Wawa employees, like the McGlades.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

**COUNT III**
**NEGLIGENCE *PER SE***
**THE WAWA EMPLOYEE CLASS V. WAWA**

238.    Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

239.    As described in detail above, various statutes, laws and regulations define the nature and scope of appropriate conduct in relation to cybersecurity.  These statutes, laws and regulations are applicable to Wawa and governed its conduct throughout the relevant time period.

240.    By its acts and omissions set forth herein, Wawa breached and violations these statutes, laws and regulations.

241.    As a direct and proximate result of such breaches and violations of statutes, laws and regulations, Wawa caused harm to Plaintiffs and the Class as detailed herein.

242.    Plaintiffs and the Wawa Employee Class have suffered, and will continue to suffer, harm due to the negligence per se of Wawa.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION/FRAUD**
**THE WAWA EMPLOYEE CLASS V. WAWA**

243.     Plaintiffs hereby incorporate by reference the averments of the foregoing paragraphs as if fully set forth herein.

244.     By engaging in the acts and omissions alleged in this Complaint, Wawa made negligent misrepresentations about the timing, nature and extent of the Data Breach directly to Mr. McGlade and others members of the Wawa Employee Class.

245.     Wawa's misrepresentations included false statements and material misrepresentations about its receipt, storage, maintenance and privacy of employee PII, as it was not maintained in a secure, protected environment fully compliant with industry best practices and standards.  Wawa then waited to tell employees about the Data Breach, even while it was investigating.  When it finally decided to notify employees, it failed to disclose the entirety of the time, place and manner of the unauthorized access to and theft of their PII.  Instead, Wawa told employees only half-truths and misinformation about the timing, nature and scope of the Data Breach.

246.     Wawa's communications to its employees also involved material omissions about the actual facts pertaining to the Data Breach which facts were necessary for Plaintiffs and the Class to take timely and appropriate steps to protect themselves and their families from future harm caused by the theft of their PII.

247.     Wawa intended that Plaintiffs and the Class would rely on its material misrepresentations and omissions to their detriment, which they did.

248.   In particular, Wawa made it a point to bring Wawa General Managers, like Mr. McGlade, together on a December 19, 2020, to explain the Data Breach and what should be done, and said, about the breach at the individual stores.  GMs then repeated these misrepresentations to their subordinate employees at the Wawa stores.  Wawa knew and expected that such repeated miscommunications were taking place, as Wawa intended for such further miscommunications to be made by GMs to other employees.

249.   All of the states in which Wawa has its stores have enacted legislation requiring notification of security beaches involving personal information, including the following twenty (20) states:

a.   Alaska, 2008 H.B. 65;

b.   California, Cal. Civ. Code §§ 56.06, 1785.11.2, 1797.29, 1798.29, 1798.81.5, 1798.82, 1798.84;

c.   Delaware, Del. Ann. Code Title 6, §§ 12B-101 *et seq*.;

d.   Florida, Fla. Stat. § 817.5681;

e.   Georgia, Ga. Code §§ 10-1-910, -912;

f.   Hawaii, Haw. Rev. Stat. § 487N-2;

g.   Kansas, Kan. Stat. 50-7a01;

h.   Maryland, Md. Code, Com. Law § 14-3501 *et seq*.;

i.   Michigan, Mich. Comp. Laws § 445.61 *et seq*.;

j.   Minnesota, Minn. Stat. §§ 325E.61, 325E.64;

k.   Nevada, Nev. Rev. Stat. 603A.101 *et seq*.;

l.   New Jersey, N.J. Stat. 56:8-163;

m.  New York, N.Y. Gen. bus. Law § 899-aa;

n. Pennsylvania, 73 Pa. Stat. § 2303 (2005 S.B. 712, Act 94);

o. Tennessee, Tenn. Code § 47-18-2107;

p. Texas, Tex. Bus. & Comm. Code § 48.001 *et seq.*;

q. Virginia, 2008 S.B. 307, chapter 566;

r. Washington, Wash. Rev. Code § 19.255.010;

s. West Virginia, 2008 S.B. 340, Chapter 37;

t. Wisconsin, Wis. Stat. § 895.507.

250.   By the acts and omissions set forth herein, Wawa violated these laws to the extent any of the current or former employees in the Wawa Employee Class reside in those states.

251.   As described in detail above, Wawa failed to comply with these statutory requisites by, *inter alia*, failing to disclose in the most expedient time possible and without unreasonable delay the fact of the breach of security concerning the PII of Plaintiffs and the Wawa Employee Class.

252.   It is believed and therefore averred that the legitimate needs of law enforcement did not prevent Wawa from providing expedient notice to Plaintiffs and the members of the Wawa Employee Class. To the contrary, Wawa called GMs together to discuss the Data Breach before it was publically announced. Consequently, it is believed and therefore averred that a law enforcement agency did not determine that the notification will impede a criminal or civil investigation and did not make a request that the notification to Wawa employees be delayed.

253.   Wawa failed to provide reasonable security protection to the PII of Plaintiffs and the Wawa Employee Class to prevent a breach of security of the system.

254.   Wawa acted willfully, knowingly and/or recklessly with respect to its acts and omissions above.

54

255.    Plaintiffs and the Wawa Employee Class did in fact reasonably rely on the misrepresentations of Wawa to their detriment. They suffered injury and damages, as more fully set forth herein, due to the delays in conveying the truth about the timing, nature and scope of the Data Breach.

256.    In addition, Wawa concealed and suppressed and/or omitted material facts as to its knowledge of the unauthorized access to the employee PII, and its subsequent actions ostensibly to protect Plaintiffs and the Wawa Employee Class from the unlawful disclosure and use of employee PII.

257.    As a direct and proximate result of Wawa's misrepresentations, omissions, and concealment of the truth, Plaintiffs and the members of the Wawa Employee Class were unaware of the true facts surrounding the theft of their PII and were not able to take timely action to protect themselves from the harmful effects of the unauthorized disclosure and use of their PII.

258.    As a direct and proximate result of Wawa's misrepresentations and omissions, and the concealment and suppression of material facts by Wawa, Plaintiffs and the Wawa Employee Class have suffered and will continue to suffer damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

### COUNT V
### UNJUST ENRICHMENT
### THE WAWA EMPLOYEE CLASS V. WAWA

259.    Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

260.    By engaging in the conduct described in this Complaint, Wawa has knowingly obtained benefits from Plaintiffs and the Wawa Employee Class, namely their labor and the

profits therefrom under circumstances such that it would be inequitable and unjust for Wawa to retain such benefits and profits.

261.    By engaging in the acts and failures to act described in this Complaint, Wawa has been knowingly enriched by the savings in costs that should have been reasonably expended to protect the PII of the Plaintiffs and the Wawa Employee Class.

262.    Wawa knew or should have known that theft of employee PII could happen, yet they failed to take reasonable steps to pay for the level of security required to have prevented the theft of PII of employees and customers.

263.    Thus, Wawa will be unjustly enriched if it is permitted to retain the benefits derived from the theft of Plaintiffs' and the Wawa Employee Class' PII.

264.    Plaintiffs and each member of the Wawa Employee Class are therefore entitled to an award of compensatory damages in an amount to be determined at trial, or the imposition of a constructive trust upon the monies derived by Wawa by means of the above-described actions.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Wawa Employee Class, respectfully seek the relief set forth below.

**COUNT VI**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**FAILURE TO PAY OVERTIME WAGES**
**THE WAWA AGM EMPLOYEE CLASS V. WAWA**

265.    Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

266.    Pursuant to 29 U.S.C. §§ 207 and 216(b), Mr. McGlade seeks to prosecute his FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Wawa as AGMs and individuals holding comparable salaried positions with different titles

employed by Wawa with Pennsylvania at any time three years prior to the filing of this action in January 2020, to the entry of judgment in this case (the "Collective Action Period").

267. Wawa is liable under the FLSA for, *inter alia*, failing to pay proper overtime wages to Mr. McGlade and other similarly situated employees.

268. As discussed above under the section on numerosity, there are many similarly situated current and former AGMs who have not been paid overtime wages in violation of the FLSA who would benefit from the issuance of a court-ordered supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the members of the Wawa AGM Employee Class pursuant to 29 U.S.C. § 216(b).

269. The members of the Wawa AGM Employee Class are known to Wawa, are readily identifiable (see ascertainability discussion above at paragraphs 168-169) and can be located through Defendants' records.

270. At all times relevant to this action, Plaintiff and the Class were each "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1). Since 2015, the position of AGM is not exempt from the FLSA.

271. At all relevant times, Wawa has been, and continues to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*. and FLSA, 29 U.S.C. §§ 206(a) and 207(a).

272. At all relevant times, Wawa, including both Wawa and Wild Goose, has been an employer of Mr. McGlade, and other members of the Wawa AGM Employee Class, within the meaning of the Section 3(d) of the FSLA, 29 U.S.C. § 203(d).

273.     At all relevant times, Wawa, including both Wawa and Wild Goose, has been an enterprise within the meaning of the Section 3(r) of the FSLA, 29 U.S.C. § 203(r).

274.     At all relevant times, Wawa, including both Wawa and Wild Goose, has been an enterprise engaged in commerce or the production of goods for commerce within the meaning of the Section 3(s)(1) of the FSLA, 29 U.S.C. § 203(s)(1), because each Defendant has had employees engaged in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce by any person.

275.     Wawa has had a gross volume of sales or business of not less than $500,000.00.

276.     At all relevant times, Mr. McGlade and all similarly situated AGMs were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

277.     Wawa issued paychecks to Mr. McGlade and all similarly situated employees in the Wawa AGM Employee Class during their employment.

278.     Mr. McGlade and all similarly situated employees in the Wawa AGM Employee Class were paid hourly wages since 2015, non-exempt from overtime by Wawa.

279.     Prior to that, Mr. McGlade and certain members of the Wawa AGM Employee Class, including those who unsuccessfully attempted to opt-in to the *Gervasio* class after the deadline for such opt-ins, were paid on a salary basis exempt from overtime by Wawa. However, these AGMs, including Mr. McGlade, were misclassified as exempt for the years leading up to 2015, including 2015, when Wawa chose to re-classify AGMs as non-exempt.

280.     Wawa directed the work of Mr. McGlade and the members of the Wawa AGM Employee Class.

281.    Wawa directly benefitted from the work of Mr. McGlade and the members of the Wawa AGM Employee Class.

282.    Mr. McGlade and the members of the Wawa AGM Employee Class worked in excess of forty (40) hours per workweek, both prior to and during 2015 (the period covered by the Gervasio class), and for years after, including 2017, 2018 and 2019, during which time Mr. McGlade worked as an AGM up to March 2017.

283.    Mr. McGlade and the members of the Wawa AGM Employee Class worked in excess of forty (40) hours per workweek during those years without receiving overtime compensation required by the FLSA.

284.    Wawa did not pay Mr. McGlade or the members of the Wawa AGM Employee Class for their hours worked in excess of forty (40) hours per workweek, as required.

285.    The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

286.    Wawa has engaged in a widespread pattern and practice of violating the FSLA, as set forth in detail in Complaint filed in the matter of *Gervasio v. Wawa, Inc*. (D.N.J. No. 3:17-cv-002)("*Gervasio*") at Document 1, which Plaintiffs incorporate by reference herein.

287.    Wawa settled the *Gervasio* action, thereby conceding the merit of Mr. McGlade's claims for unpaid overtime wages while serving as a Wawa AGM.  As a result, Mr. McGlade is entitled to be paid.

288.    The widespread pattern and practice of violating the FLSA by not paying AGMs overtime pay, as required, has continued since 2015, and for the years 2017, 2018 and 2019 covered by Mr. McGlade's claims here.

289.     Pursuant to Wawa's continuing policy and pattern or practice, Wawa did not AGMs proper overtime wages for hours they worked for its benefit in excess of forty (40) hours in a workweek.

290.     Wawa's violations of the FLSA were knowing and willful.

291.     Alternatively, Wawa should be estopped from arguing Mr. McGlade has no right to be paid for his unpaid overtime due to its concessions and judicial admissions in the *Gervasio* action.

292.     Mr. McGlade consents in writing to be a party pursuant to this action, pursuant to 29 U.S.C. § 216(b).

293.     The overtime wages provisions set forth in 29 U.S.C. §§ 201, *et seq*., apply to Wawa.

294.     As a result of Wawa's willful failure to compensate its employees, including Mr. McGlade, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Wawa violated, and continue to violate, the FSLA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a).

295.     As a result of Wawa's willful failure to record, report, credit, and compensate its employees, including Mr. McGlade, Wawa failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FSLA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. §§ 211(c) and 215(a).

296.     As a result of Wawa's policy and practice of minimizing labor costs by underfunding labor budgets for its stores, Wawa knew or recklessly disregarded the fact that Mr. McGlade and other AGMs were primarily performing manual labor and non-exempt tasks.

297.     Due to Wawa's failure to provide enough labor budget funds, failure to take into account the impact of the underfunded labor budgets on the job duties of Mr. McGlade and other AGMs, Wawa's actual knowledge, through its GMs and Area Managers, that the primary duties of Mr. McGlade (while working as an AGM) and other AGMs were manual labor and non-exempt tasks, Wawa's failure to perform a person-by-person analysis of Mr. McGlade's and other AGMs' job duties, instituting a policy and practice that did not allow Mr. McGlade and other AGMs to record all hours worked, and its failure to post or keep a notice explain minimum wage and overtime wage requirements, Wawa Corporate knew and/or showed reckless disregard for its conduct that was prohibited by the FSLA, 29 U.S.C. § 255(a).

298.     As a result of Wawa's willful FSLA violations, Mr. McGlade, and other Wawa AGMs (too afraid to come forward to collect what is owed to them, due to the oppressive environment at Wawa that discourages Wawa employees from seeking the overtime wages to which they are entitled), are entitled to (a) recover from Wawa their unpaid wages for all of the hours worked by them, as overtime compensation; (b) recover an additional, equal amount as liquidated damages for Wawa's willful violations of the FSLA; and (c) recover their unreasonably delayed payment of wages, reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

299.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiffs or the Class.

300.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

WHEREFORE, Mr. McGlade, on behalf of himself and other unpaid Wawa employees in the Wawa AGM Employee Class, respectfully seek the relief set forth below.

## COUNT VII
## PENNSYLVANIA MINIMUM WAGE ACT: UNPAID OVERTIME WAGES
## THE WAWA AGM EMPLOYEE CLASS V. WAWA

301.    Plaintiffs hereby incorporate by reference the averments of the foregoing and following paragraphs as if fully set forth herein.

302.    Wawa is an employer covered by the overtime pay mandates of the Pennsylvania Minimum Wage Act ("PMWA"), and Mr. McGlade and other Pennsylvania-based Wawa employees who have served as AGMs are employees entitled to the PMWA's protections.

303.    The PMWA requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek.  43 P.S. § 333.104(c).

304.    Wawa violated the PWMA by failing to pay Mr. McGlade and other Pennsylvania-based Wawa employees the full, legally mandated overtime premium for all hours worked over 40 per week.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class request the Court to enter the following relief:

a.    Certify this case as a Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and denominate Plaintiffs as adequate representatives for the Wawa Employee Class and his undersigned counsel as counsel for the Wawa Employee Class;

b.    Declare unlawful the acts and practices alleged herein, and enjoin the Defendants from committing the acts alleged herein.  Included in the injunction, the provision of credit monitoring services for Plaintiffs and the Class for at least two (2)

years, the provision of bank monitoring for Plaintiffs the Class for at least two (2) years, the provision of credit restoration services for Plaintiffs and the Class for at least two (2) years, and the provision of identity theft insurance for Plaintiffs and the Class for at least two (2) years;

      c.      Enter judgment against all Defendants for the violations alleged herein;

      d.      Award the actual damages incurred by Plaintiffs and the members of the Class as a result of the wrongful acts complained of, along with pre-judgment and post-judgment interest at the maximum rate allowed by law;

      e.      Award unpaid wages in excess of 40 hours in a workweek, at a rate of one and one-half times the regular rate of pay under the FSLA and PMWA using the following common methodology for calculating damages ((Annual Salary ÷ 52) ÷ 40) x Total Number of Overtime Hours Worked x 1.5;

      e.      Award statutory damages set forth herein;

      f.      Award of treble damages or multiple damages by operation of law;

      g.      Award punitive damages;

      h.      Award Plaintiffs the costs of this action, including reasonable attorney's fees, and, where applicable, expert fees; and

      i.      Award such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Plaintiffs and the Class demand a trial by jury of all issues so triable in this cause.

Respectfully submitted,

*/s/Donald E. Haviland, Jr.*
Donald E. Haviland, Jr., Esq. (PA 66610)
*haviland@havilandhughes.com*
William H. Platt II, Esq. (PA Id. No. 83585)
*platt@havilandhughes.com*
**Haviland Hughes**
201 South Maple Avenue
Suite 110
Ambler, PA 19002
Phone: (215) 609-4661
Fax:     (215) 392-4400

*Lead Counsel for Employee Track Plaintiffs*