**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

.

| | |
|---|---|
| **IN RE WAWA, INC. DATA SECURITY LITIGATION** | **Case No. 19-6019-GEKP** |
| | **Class Action** |
| *This document relates to: Consumer Track* | |

**MEMORANDUM OF LAW IN SUPPORT OF
CONSUMER PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER
PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT,
PROVISIONALLY CERTIFYING SETTLEMENT CLASS,
AND DIRECTING NOTICE**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... ii

I. INTRODUCTION ......................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................... 3

    A. The Litigation.......................................................................................... 3

    B. Settlement Negotiations ........................................................................ 4

III. THE PROPOSED SETTLEMENT ............................................................... 5

    A. The Proposed Settlement Class............................................................. 6

    B. Compensation to Class Members.......................................................... 6

    C. Injunctive Relief..................................................................................... 8

    D. Attorneys' Fees and Expenses, Class Representative Service Awards, and Costs of Settlement Administration................................. 9

    E. Notice Program and Settlement Administration ................................. 10

        1. The Settlement Website, Long Form Notice, and other documents posted on the Settlement Website will provide Class Members with comprehensive information about their rights and options under the Settlement................................................... 11

        2. Signs in Wawa's stores and at its fuel pumps, a press release, and information on Wawa's website will inform Class Members of the Settlement and direct them to the Settlement Website to file claims or obtain more information.................................................. 11

IV. ARGUMENT ............................................................................................... 13

    A. The Settlement Is "Fair, Reasonable and Adequate" and Satisfied the Rule 23(e)(2) Factors for Preliminary Approval ................................. 15

        1. The Proposal Was Negotiated at Arm's Length ..................... 16

        2. The Relief Provided for the Class Is Adequate....................... 17

            a. The Settlement accounts for the costs, risks and delay of trial and appeal ............................................................. 19

|  | b. | The Settlement provides for an effective method of distributing relief to the class, including through a simplified claims process | 20 |

|  | c. | The proposed attorneys' fee award is reasonable | 21 |

|  | d. | There are no additional agreements required to be identified under Rule 23(e)(3) | 21 |

| 3. | The Settlement Treats Class Members Equitable Relative to Each Other | 22 |

B. The Proposed Settlement Class Satisfies the Criteria of Rule 23(a) ................... 23

    1. The Class Is Sufficiently Numerous ...................... 23

    2. There Are Questions of Law or Fact Common to the Class ................... 23

    3. The Class Representatives' Claims Are Typical of the Claims of the Class ................... 24

    4. The Class Representatives and Co-Lead Counsel Will Fairly and Adequately Represent the Class ................... 25

    5. Common issues Predominate over any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy ................... 25

        a. Common issues predominate ................... 26

        b. A class action is superior to other means of adjudication ........... 27

C. The Notice Program Provides Class Members with the Best Notice Practicable Under the Circumstances ................... 28

    1. Notice Will Reach Significant Numbers of Class Members ................... 29

    2. The detailed notice form, in-store signs, press release, and settlement website clearly and concisely inform Class Members about their rights and options, including how to file a claim ................... 31

V. INTERIM CO-LEAD COUNSEL SHOULD BE PROVISIONALLY APPOINTED AS CLASS COUNSEL ................... 33

VI. PROPOSED SCHEDULE FOR FINAL APPROVAL HEARING, ETC. ................... 33

VII. CONCLUSION ................... 34

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Adkins v. Facebook, Inc.*,
   No. C 18-05982, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020)........................................................ 19

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997).......................................................................................................23, 25 28

*Brady v. Due North Holdings, LLC*,
   No. 1:17-cv-01313 (S.D. Ind. Oct. 16, 2018) ........................................................................... 20

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020)................................................................................................... 30

*Craig v. Rite Aid Corp.*,
   No. 4:08-cv-2317, 2013 WL84928 (M.D. Pa. Jan. 7, 2013).................................................... 19

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)...................................................................................................... 13

*Fulton-Green v. Accolade, Inc.*,
   No. 18-cv-00274, 2019 WL 316722 (E.D. Pa. Jan. 23, 2019) (Pratter, J.) ......................passim

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008)............................................................................................ 16, 23

*Girsh v. Jepson*,
   521 F.3d 153 (3d Cir. 1975)...................................................................................................... 15

*Hall v. Accolade, Inc.*,
   No. 2:17-cv-03423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) (Pratter, J.) ................. 13, 24

*Hanlon v. Aramark Sports, LLC*,
   No. 09-cv-00465, 2010 WL 374765 (W.D. Pa. Feb. 3, 2010)............................................. 29, 30

*In re CertainTeed Fiber Cement Siding Litig.*,
   303 F.R.D. 199 (E.D. Pa. 2014)................................................................................................ 19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................................................... 31

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liab. Litig.*,
   No. 11-md-02284, 2013 WL 504857 (E.D. Pa. Feb. 12, 2013) (Pratter, J.) .......................... 14

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*,
   296 F.R.D. 351 (E.D. Pa. 2013) (Pratter, J.) ........................................................................... 25

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016)...........................................................................................24, 26

*In re Nat'l Football League Players Concussion Injury Litig.*,
775 F.3d 570 (3d Cir. 2014)...................................................................................................298

*In re Nat'l Football League Players' Concussion Injury Litig.*,
301 F.R.D. 191 (E.D. Pa. 2014).......................................................................................16, 32

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012).......................................................................................17, 27

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2014 WL 12614451 (E.D. Pa. Dec. 19, 2014) .......................................14

*In re Sonic Corp. Customer Data Breach Litig.*,
No. 1:17-md-02807-JSG (N.D. Ohio Dec. 20, 2018) ..........................................................30

*In re Sony Gaming Networks and Customer Data Security Breach Litig.*,
No. 11-md-02258 (S.D. Cal. May 4, 2015) ........................................................................20

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004).............................................................................14, 23, 27, 32

*In re Zappos Security Breach Litig.*,
No. 12-cv-00325 (D. Nev. Dec. 23, 2019)..........................................................................20

*Linnins v. Haeco Americas, Inc. (f/k/a Timco Aviation Services, Inc.)*,
No. 16-cv-00486, 2018 WL 5312193 (M.D.N.C. Oct. 26, 2018).......................................19

*Mack Trucks, Inc. v. Int'l Union, UAW*,
No. 07-cv-03737, 2011 WL 1833108 (E.D. Pa. May 12, 2011) .........................................15

*Mehling v. New York Life Ins. Co.*,
246 F.R.D 467 (E.D. Pa. 2007)..........................................................................................15

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)............................................................................................................29

*Myers v. Jani-King of Philadelphia, Inc.*,
No. CV 09-1738, 2019 WL 2077719 (E.D. Pa. May 10, 2019) .........................................14

*Palamara v. Kings Family Rests.*,
No. 07-cv-00317, 2008 WL 1818453 (W.D. Pa. Apr. 22, 2008).......................................29

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011).................................................................................22, 26, 28

*Swinton v. SquareTrade, Inc.*,
No. 18-cv-00144, 2019 WL 617791 (S.D. Iowa Feb. 14, 2019) .......................................22

*Tyson Foods, Inc. v. Bouaphakeo*,
   ___ U.S. ___, 136 S. Ct. 1036 (2016) ................................................................. 26

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................. 24

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
   726 F.2d 956 (3d Cir. 1983) .................................................................................. 22

*Vinh Du v. Blackford*,
   No. 17-cv-194, 2018 WL 6604484 (D. Del. Dec. 17, 2018) ................................ 15

## Other Authorities
2 MCLAUGHLIN ON CLASS ACTIONS § 6:17 (10th ed. 2013) ........................................... 29

## Rules

Fed. R. Civ. P. 23(c)(2) ................................................................................................... 10

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................ 14, 28, 29

Fed. R. Civ. P. 23(e)(1) ................................................................................................... 10

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................................. 13

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................ 13, 14, 28

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 13, 14, 15, 28

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................. 21

Fed. R. Civ. P. 23(e)(3) ........................................................................................... 15, 22

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................. 33

## I.     INTRODUCTION

Plaintiffs in the Consumer Track of this litigation ("Plaintiffs") and Defendant Wawa, Inc. ("Wawa"), with the assistance of a mediator, the Honorable Diane M. Welsh (Ret.) of JAMS, have reached an agreement to resolve this class action. This case was brought by customers who were affected by a data security incident involving Wawa's payment card environment. Pursuant to the terms set forth in the Parties' Settlement Agreement (the "Settlement Agreement" or "S.A."),[1] Plaintiffs now respectfully submit this memorandum of law in support of the accompanying motion ("Motion").  The Motion asks the Court to enter an order preliminarily approving the settlement ("Settlement") detailed in the Settlement Agreement, and provisionally certify the Settlement Class defined below (the "Class"), find that the proposed Notice Plan provides the best notice practicable, direct that notice of the Settlement be disseminated to members of the Class ("Class Members") in the form and manner proposed therein and schedule a Final Approval Hearing to address whether the Settlement should be finally approved. Wawa does not oppose this motion or the relief sought in this motion.

The Settlement provides for three tiers of relief to Class Members, based on their circumstances. Class Members will be eligible to receive Wawa Gift Cards of $5 or $15, or cash payments of up to $500. The five dollar gift cards will be available to customers who used a debit or credit card ("payment card") to make a purchase at Wawa during the period of March 4, 2019 to December 12, 2019 and attest that they spent at least some time monitoring their accounts as a result of the Data Security Incident. S.A. ¶ 36.a. Class Members need not have

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Joint Declaration of Interim Co-Lead Counsel in Support of Consumer Track Plaintiffs' Motion for an Order Preliminarily Approving the Proposed Class Action Settlement, Provisionally Certifying the Settlement Class, and Directing Notice ("Joint Declaration" or "Jt. Decl."). Unless otherwise indicated, capitalized terms herein shall have the same definition as set forth in the Settlement Agreement.

experienced any actual or attempted misuse of their data in order to be eligible for this Tier of relief. *Id.* Fifteen dollar gift cards will be available to customers who used a payment card to make a purchase at Wawa during the relevant period, had a subsequent fraudulent charge or attempted fraudulent charge on their card, and spent at least some time addressing the fraudulent transaction or otherwise monitoring their account. *Id.,* ¶ 36.b. Depending on the number of claims filed, the total value of $5 and $15 Wawa Gift Cards awarded could reach an aggregate maximum of $8 million. *Id.,* ¶¶ 36.a.vi and 36.b.iv. The Wawa Gift Cards are an appropriate mode of compensation here because Wawa maintains an unusually loyal base of repeat customers who routinely return to its 900+ stores. Indeed, Wawa represents that its gift cards have a 97.2% usage rate, meaning that of all the dollars loaded onto Wawa gift cards, 97.2% of those dollars are redeemed.  Wawa also represents that it sells more than 3,000 products in its store that are less than $5 and that 78% of its products are below that threshold.  Jt. Decl. ¶ 27. *See also* Declaration of Hon. Diane M. Welsh (Ret.) of JAMS in Support of Proposed Class Settlement ("Welsh Decl.") (attached at Ex. 2 to Jt. Decl.), ¶ 12 (describing the persuasiveness of Wawa's statements about its repeat customers during mediation negotiations).

The Settlement also provides for cash payments to Class Members who can demonstrate certain expenditures or out-of-pocket losses resulting from the Data Security Incident. Payments for such expenses or losses are capped at $500 per claimant, and the maximum total payment by Wawa for such claims is $1 million in aggregate. S.A. ¶ 36.c.

Finally, the Settlement provides for significant injunctive relief aimed at strengthening Wawa's payment processing environment. These enhancements, along with other enhancements made prior to the Settlement and attributed in part to this litigation, are valued at no less than $35 million. S.A. ¶¶ 38-41.

The Settlement compares favorably with settlements in similar data breach litigation and was reached only after intensive arm's length negotiations before a skilled and engaged mediator. Welsh Decl., *passim*. Accordingly, Plaintiffs respectfully submit that the Court should preliminarily approve the terms and conditions of the Settlement and permit notice to the Settlement Class.

## II.   FACTUAL BACKGROUND

### A.   The Litigation

Beginning in December 2019, numerous class actions were filed in this district and elsewhere on behalf of Wawa customers whose credit and debit card information was stolen by cybercriminals as part of an attack on Wawa's payment card environment. The resulting Data Security Incident involved transactions at most of Wawa's nearly 900 convenience stores (including fuel dispensers) over a nine-month period from March 4, 2019 until December 12, 2019 (the "Period of the Security Incident"). Information compromised in the Data Security Incident included credit and debit card numbers, card expiration dates, and cardholder names.

On January 8, 2020, Chief Judge Juan Sanchez entered an order consolidating the cases filed by customers relating to the Data Security Incident. (Dkt. 9.)

On June 12, 2020, the Court appointed the following counsel as Interim Co-Lead Counsel for the Plaintiffs in the Consumer Track: Sherrie Savett of Berger Montague PC; Roberta Liebenberg of Fine, Kaplan and Black, R.P.C.; Benjamin Johns of Chimicles Schwartz Kriner & Donaldson-Smith LLP; and Linda Nussbaum of Nussbaum Law Group, P.C. (Dkt. 120.)

On July 27, 2020, Interim Co-Lead Counsel filed the operative Consumer Plaintiffs' Consolidated Class Action Complaint (Dkt. 132) ("Complaint"). Asserting legal claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and violations of

state consumer protection and data privacy statutes, the Complaint alleged, among other things, that despite the foreseeability of a data breach, Wawa failed to implement adequate measures to protect the sensitive, non-public payment card information entrusted to it by its customers. The Complaint further alleged that some Class Members have experienced and will continue to experience fraudulent transactions on their payment cards. The Complaint also alleged that many Class Members have spent time responding to the security incident, may have spent money for protective measures, and were at an increased risk of future misuse of their payment card information. The Complaint sought to remedy those harms through, among other things, reimbursement of out-of-pocket losses and compensation for time spent in response to the Data Security Incident, as well as injunctive relief entailing substantial improvements to Wawa's data security systems.

### B.   Settlement Negotiations

Recognizing the desirability of early settlement discussions and the litigation risk to both sides, at a hearing on June 11, 2020, Wawa and Interim Co-Lead Counsel notified the Court of their intention to participate in a mediation to attempt to resolve the matter. In Case Management Order No. 2, the Court acknowledged that the Parties would be holding a mediation and exchanging documents and substantive mediation statements in advance of the mediation. The Court ordered that "[s]hould the mediation be unsuccessful, motion practice shall proceed according to the foregoing pleading and/or motion schedule, and discovery shall proceed according to a schedule to be negotiated promptly by the parties and presented to the Court for approval." (Dkt. 119.)

Thereafter, the Parties held several meet-and-confer calls to discuss the mediation and the exchange of documents, information, and mediation statements. Jt. Decl. ¶ 9. Through various

rounds of document productions, Wawa produced 3,596 pages of documents to Plaintiffs, and Plaintiffs produced 212 pages of documents to Wawa. *Id.,* ¶¶ 10, 11. The Parties reviewed all produced documents, as well as public information regarding the Data Security Incident and each other's mediation statements, in advance of the mediation. *Id.* Plaintiffs also consulted with their expert witness regarding data security issues in connection with the mediation. *Id.,* ¶¶ 6, 11.

On September 15, 2020, the Parties attended a mediation presided over by Judge Welsh. Welsh Decl. ¶ 8. The mediation, which lasted nearly 12 hours, consisted of joint sessions as well as numerous break-out sessions. *Id.* The negotiations were hard fought and conducted at arms' length and in good faith by experienced counsel who were guided by both their experience and their extensive research of the facts and the law relating to this case. *Id.,* ¶¶ 8-10.

At the end of the mediation session, the Parties reached an agreement in principle, *id*, ¶ 11, which they later memorialized in the Settlement Agreement dated February 9, 2021.

## III.    THE PROPOSED SETTLEMENT

The Settlement provides for monetary relief to Class Members via a three-tier system totaling up to $9 million in aggregate payments. The relief is comprised of Wawa Gift Cards totaling up to $8 million for those who used their payment cards at Wawa during the Period of the Security Incident, and cash payments totaling up to $1 million to those who experienced out-of-pocket losses. The Settlement also includes important injunctive relief designed to further strengthen Wawa's data security systems to prevent future unauthorized intrusions to its data systems.

In exchange for the consideration set forth in the Settlement Agreement, all Class Members who do not exclude themselves from the Settlement release their claims against Wawa

arising from the Data Security Incident.[2] If approved by the Court, the Settlement will result in

the dismissal with prejudice of all of the consumer class actions filed against Wawa related to the

Data Security Incident.

### A.    The Proposed Settlement Class

The Proposed Settlement Class is defined as:

> All residents of the United States who used a credit or debit card at a Wawa
> location at any time during the Period of the Data Security Incident of March 4,
> 2019 through December 12, 2019. Excluded from the Settlement Class are
> Wawa's executive officers and the Judge to whom this case is assigned.

S.A. ¶ 28.

### B.    Compensation to Class Members

Tier One will consist of claimants who can show that they made a Wawa purchase using

a credit or debit card during the Period of the Security Incident and attest that they spent at least

some time monitoring their accounts as a result of the Data Security Incident. Tier One claimants

need not have experienced fraudulent purchases on their payment cards. Tier One claimants will

be entitled to a $5 Wawa Gift Card. Total Tier One compensation is subject to a $6 million cap

and a $1 million floor. *Id.*, ¶ 36.a.[3]

Tier Two will consist of claimants who can show that they made a Wawa purchase using a

credit or debit card during the Period of the Security Incident and submit reasonable proof of a

subsequent fraudulent charge or attempted fraudulent charge. Tier Two claimants must also attest

---

[2] The release in the Settlement Agreement expressly excludes any claims by any current or former Wawa employee or their dependents that any of their social security numbers were compromised as a result of the Data Security Incident.  S.A. ¶ 96.

[3] The ceiling means that if the total value of all Gift Cards in Tier One would be more than $6 million, each gift card will be reduced on a *pro rata* basis so that the total value distributed is $6 million.  The floor means that if the total value of all Gift Cards in Tier One would be less than $1 million, the value of each Gift Card will be increased on a *pro rata* basis until the total value distributed is $1 million. S.A. ¶ 36.a.vi.

that they spent at least some time addressing the fraudulent transaction or monitoring their account as a result of the Data Security Incident. Tier Two claimants will be entitled to a $15 Wawa Gift Card. Total Tier Two compensation is subject to a $2 million cap and no floor. *Id.*, ¶ 36.b.

The Wawa Gift Cards provided as compensation to Tier One and Tier Two claimants will be fully transferable, will be valid for one year, and will be usable toward the purchase of any item sold in a Wawa convenience store (including fuel if the payment is completed inside the store), excluding cigarettes and other tobacco or nicotine delivery products. *Id.,* ¶ 33. Wawa Gift Cards can be used multiple times if the initial transaction is less than the card's face value. *Id*.

Tier Three will consist of claimants who can demonstrate out-of-pocket expenses or losses in connection with a fraudulent transaction incurred on a payment card used at Wawa during the Period of the Security Incident. These losses may include, but are not limited to, unreimbursed fraudulent charges, bank fees, replacement card fees, late fees from transactions with third parties that were delayed due to fraud or card replacements, credit freeze fees, parking expenses or other transportation expenses for trips to a financial institution to address fraudulent charges or receive a replacement payment card, or other expenses reasonably attributable to the Data Security Incident. Tier Three claimants will be entitled to cash payments equal to their out-of-pocket expenses or losses up to $500 for each claimant. Total Tier Three payments are subject to a $1 million cap. *Id.*, ¶ 36.c.

The Settlement Agreement sets forth a straightforward claims process with the use of simple Claim Forms. Class Members will be entitled to relief in only one Tier, and must select a Tier when submitting a claim. Class Members in all Tiers will be given an opportunity to cure any deficiencies in their claim submissions. Class Members who are unable to demonstrate their eligibility for membership in the selected Tier will automatically be eligible for compensation for

the next closest Tier in which their claim submission demonstrates valid membership. *Id.,* ¶ 36. For example, a claimant who submits a deficient claim for Tier 2 and is unable to cure it will be placed into Tier 1 (rather than being rejected outright) if otherwise eligible for Tier 1. *Id.*

Wawa is responsible for generating and distributing the Wawa Gift Cards to claimants. S.A. ¶ 81.

### C.     Injunctive Relief

The Settlement also includes important injunctive relief designed to prevent an unauthorized intrusion into Wawa's data systems in the future. Specifically, for a period of two years, Wawa agrees to:

- Retain a qualified security assessor on an annual basis to assess compliance with Payment Card Industry Data Security Standards ("PCI DSS") requirements and to issue a Report on Compliance that evidences compliance with all such requirements;

- Conduct annual penetration testing and remediate any identified critical vulnerabilities or implement compensating controls where feasible;

- Operate a system that encrypts payment card information and complies with Europay, Mastercard, and Visa ("EMV") security procedures at the point of sale terminals in Wawa stores;

- Operate a system that implements EMV security procedures at the point of sale terminals at Wawa fuel pumps; and

- Maintain written information security programs, policies, and procedures.

*Id.,* ¶¶ 38, 40. The Parties estimate that these enhancements, along with other enhancements made prior to the settlement and attributed in part to this litigation, are valued at no less than $35 million. *Id.,* ¶ 39.  These enhancements will benefit all Wawa customers; class members do not need to submit a claim to receive the benefits of this portion of the settlement.

**D.      Attorneys' Fees and Expenses, Class Representative Service Awards, and Costs of Settlement Administration**

Separate and apart from the compensation to Class Members, Wawa has agreed to pay a lump sum of $3.2 million to cover payment of attorneys' fees and expenses, class representative service awards, and the costs of settlement administration. *Id.,* ¶¶ 77, 79; Welsh Decl. ¶ 15.

Plaintiffs will be applying for service awards of $1,000 for each of the thirteen Class Representatives named in the Complaint, as well as plaintiff Kasan Laster, the proposed Class Representative in the consumer action brought against Wawa in the Superior Court of New Jersey Law Division – Burlington County (the "*Laster* Action"), which was stayed pending the resolution of the mediation and will be voluntarily dismissed in connection with the Settlement. The proposed Service Awards are intended to recognize the Class Representatives for their time, effort, and commitment on behalf of the Settlement Class, including in producing documents and information throughout the litigation and litigating the case on behalf of the Class. S.A. ¶¶ 75, 76.

Plaintiffs request that the Court appoint KCC, LLC ("KCC") to serve as the Settlement Administrator to oversee notice to the Class and to administer the claims process pursuant to the terms of the Settlement Agreement. As demonstrated in the resume of Carla Peak submitted herewith, KCC has extensive experience administering similar consumer data breach settlements. Declaration of Carla Peak Regarding Settlement Notice Program ("KCC Decl.") ¶¶ 4, 6.

Interim Co-Lead Counsel also will apply to the Court for approval of reimbursement of expenses incurred by the Consumer Track Plaintiffs' counsel. To date, those expenses total $39,619.05 and were incurred primarily for expert fees, filing fees, investigative work, copy costs and Plaintiffs' share of the mediator's fees. Jt. Decl. ¶ 42.

Finally, Interim Co-Lead Counsel will apply for attorneys' fees to compensate them and their co-counsel assigned to informal committee positions as noted in their leadership briefing

(including counsel in the *Laster* Action) for their work in this case that has led to this result for the Settlement Class. *Id.*, ¶ 41. The amount requested will be significantly less than counsel's lodestar. *Id.*

### E.   Notice Program and Settlement Administration

The Parties have jointly developed a proposed Notice Program that comports with the requirements of both Fed. R. Civ. P. 23(c)(2) and 23(e)(1).[4] The Notice Program aims to inform Class Members of the Settlement and ensure that they will be able to review the Long Form Notice, Settlement Agreement, and other materials, understand their rights and options – including their right to object to the Settlement or opt out of the Settlement Class – and file a claim before the Court makes a final decision on approving the Settlement and certifying the Settlement Class. *See* Advisory Committee Notes on 2018 Amendment to Rule 23(c)(2) ("The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make claims.").

The Notice Program is designed to provide notice to Class Members by means of signs at Wawa's payment terminals in stores and at fuel pumps, information posted on Wawa's website, information posted on a comprehensive settlement website, a press release from Wawa, and resulting media coverage. Given the extensive press coverage this case has received to date,[5] the Parties expect that the settlement will also benefit from the publicity that is likely to accompany

---

[4] As discussed in more detail below, Wawa – which did not initially provide direct notification of the breach – does not possess contact information such as mailing addresses or email addresses for the Class Members.

[5] *See e.g.,* Wawa Faces Wave of Lawsuits in Aftermath of Massive Data Breach. https://www.inquirer.com/business/wawa-data-breach-class-action-lawsuit-20191226.html.

this filing. KCC Decl. ¶ 11. *See also* Welsh Decl. ¶ 14 (describing settlement negotiations regarding notice).

> 1. **The Settlement Website, Long Form Notice, and other documents posted on the Settlement Website will provide Class Members with comprehensive information about their rights and options under the Settlement.**

The Settlement Administrator will establish a website dedicated to the Settlement, www.WawaConsumerDataSettlement.com ("Settlement Website"). S.A. ¶¶ 30, 44, 55(a); Jt. Decl. ¶ 32(b). The Settlement Website will provide detailed information about the litigation, the Settlement, Class Members' rights and options, and instructions on, and deadlines for, filing a claim, objecting to the Settlement, and opting out of the Class. *Id.* Class Members will be able to access and download important documents from the Settlement Website, including the Long Form Notice, Settlement Agreement, and Claim Forms. S.A. ¶¶ 30, 55; Jt. Decl. ¶ 32.b.[6]  The proposed Long Form Notice, described in more detail in section III.C.2 below, is attached as Exhibit B to the Settlement Agreement for the Court's consideration and approval. Class Members will be able to file their claims electronically through the Settlement Website, or through the mail in hardcopy form. Jt. Decl. ¶ 25. The Settlement Administrator also will maintain an automated call center.  S.A. ¶ 46; Jt. Decl. ¶ 37.

> 2. **Signs in Wawa's stores and at its fuel pumps, a press release, and information on Wawa's website will inform Class Members of the Settlement and direct them to the Settlement Website to file claims or obtain more information**.

For four consecutive weeks when the notice period begins, Wawa will post signs announcing the Settlement at all Wawa locations, both in-store (at or near all card swipe

---

[6] Class Members who cannot or do not wish to download documents from the Settlement Website can ask the Settlement Administrator to send a copy by mail or email. Jt. Decl. ¶ 32.b.

machines) and at or near the card swipe equipment on all fuel dispensers (the "Store Notice").

S.A. ¶ 55.b. The Store Notices will include a QR or other code that can be scanned by customers

using their smartphones in a Wawa store or at a fuel payment terminal.  The QR code, which is

becoming increasingly common during the pandemic,[7] will automatically take customers to the

Settlement Website, which will include links to electronic versions of the Claim Forms and Long

Form Notice. *Id*.  The proposed in-store and fuel pump signs are attached as Exhibit C to the

Settlement Agreement for the Court's consideration and approval. Wawa is responsible for all

costs associated with creating and posting the Store Notice. S.A. ¶ 81.

The signs will be highly effective in providing notice given Wawa's loyal and repeat

customer base.  In the period between January 1, 2021 and January 31, 2021, Wawa's inside

customer transaction count was 46 million and its fuel customer transaction count was 18

million, even as the effects of the pandemic linger.  Declaration of Timothy O'Brien ("O'Brien

Decl.") (attached as Ex. E), ¶ 2. That means at least 64 million people would see signs posted

during this time period.  *Id.* at ¶ 5. These numbers only count individual transactions, not

numbers of people.  *Id.* at ¶ 3.  More individuals could have entered Wawa stores and not

completed a transaction – either accompanying a customer completing a transaction, utilizing a

Wawa service (*e.g.,* lottery machines, automated teller machines or restrooms) or by leaving the

store without making a purchase.  In addition, January is a historically low month for Wawa.  *Id.*

at ¶ 4.  Posting signs for a four-week period in March or April will likely reach even more

---

[7] *See How Businesses are Using QR Codes During COVID-19*, Brandastic (July 14, 2020), https://brandastic.com/blog/how-businesses-are-using-qr-codes/; Kelleher, Suzanne, *Why QR Codes Are Popping Up Everywhere During The Pandemic—And How to Read Them In A Snap*, Forbes (Jun. 16, 2020), https://www.forbes.com/sites/suzannerowankelleher/2020/06/16/why-qr-codes-are-popping-up-everywhere-during-the-pandemic/?sh=4071e9eac14d.

customers.  It is therefore entirely likely that the signs will reach three times as many people as are in the class. Store Notice, therefore, will reach millions of Class Members multiple times during the claims period. *Id.*; KCC Decl. ¶ 14.

Wawa also will issue a press release announcing the Settlement and providing information about how to make a claim for compensation. S.A. ¶ 55.c; Jt. Decl. ¶ 32.d. The proposed press release is attached as Exhibit D to the Settlement Agreement for the Court's consideration and approval. Wawa is responsible for all costs associated with issuing the press release. S.A. ¶ 81.

Wawa also will post a link to the Settlement Website on its website, www.wawa.com. S.A. ¶ 55.a; Jt. Decl. ¶ 32.c.  Wawa's website has approximately 18,400 visits each day, ensuring wide dissemination of notice to Wawa's customers. Jt. Decl. ¶ 32.c. This is the same website location where Wawa initially posted information about the Data Security Incident.

## IV.    ARGUMENT

Federal Rule of Civil Procedure 23(e), as amended in 2018, "explicitly discusses the requirements for class settlements."  *Hall v. Accolade, Inc.*, No. 2:17-cv-03423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019) (Pratter, J.). First, the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A).  The court then decides whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

In conducting their preliminary review, courts are cognizant that there is a "strong public policy . . . which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d

590, 593 (3d Cir. 2010); *accord In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d

Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it

should therefore be encouraged.").

      At this "preliminary approval" stage, a district court may provisionally certify a class,

"leaving the final certification decision for the subsequent fairness hearing." *Hall,* 2019 WL

3996621, at *2; *accord Fulton-Green v. Accolade, Inc*., No. 18-cv-00274, 2019 WL 316722, at

*1 (E.D. Pa. Jan. 23, 2019) (Pratter, J.); *Myers v. Jani-King of Philadelphia, Inc.*, No. CV 09-

1738, 2019 WL 2077719, at *2 (E.D. Pa. May 10, 2019) (preliminary approval is not a

commitment to grant final approval but "establishes an initial presumption of fairness").

      If the district court determines that it will "likely be able to" approve the Settlement and

certify the Settlement Class, it should direct notice in a "reasonable manner to all class members

who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The notice is usually sent

under both Rule 23(e)(1) (regarding settlement) and Fed. R. Civ. P. 23(c)(2)(B) (regarding class

certification). *See* 2018 Advisory Committee Notes on Rule 23(c); *Fulton-Green,* 2019 WL

316722, at *1, *5 (granting motion for preliminary approval of data breach settlement "because it

is within the range of possible approval, the requirements of conditional class certification are

met, and the notice plan is reasonably designed to notify class members of the settlement

agreement"); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2014 WL 12614451,

at *2-4 (E.D. Pa. Dec. 19, 2014) (Pratter, J.) (conditionally certifying class, preliminarily

approving settlement, and directing notice to proposed class); *In re Imprelis Herbicide Mktg,*

*Sales Prac. and Prods. Liab. Litig.*, No. 11-md-02284, 2013 WL 504857, at *1 (E.D. Pa. Feb.

12, 2013) (Pratter, J.) (same).

A.      **The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) Factors for Preliminary Approval.**

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. The factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).[8]

In determining whether preliminary approval is warranted, the Court should consider whether the "proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mehling v. New York Life Ins. Co.*, 246 F.R.D 467, 472 (E.D. Pa. 2007) (citations omitted); *see also Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-cv-03737, 2011 WL

---

[8] As the court in *Vinh Du v. Blackford*, No. 17-CV-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) explains, the Rule 23(3)(2) factors largely overlap with the nine factors the Third Circuit directed courts to consider when determining the fairness of a proposed settlement in *Girsh v. Jepson*. Those factors are: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Blackford*, 2018 WL 6604484, at *6, *quoting Girsh*, 521 F.3d 153, 157 (3d Cir. 1975).

1833108, at *2 (E.D. Pa. May 12, 2011) (same). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy and reasonableness—will be satisfied. *See Mehling*, 246 F.R.D. at 472.

The Settlement here, as explained below, exceeds the preliminary approval threshold. Plaintiffs, without opposition from Defendant, respectfully request that this Court preliminarily approve the proposed Settlement.

### 1. The Proposal Was Negotiated at Arm's Length.

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this litigation, assisted by a neutral and highly experienced mediator. Welsh Decl., *passim*. These circumstances weigh in favor of approval. Whether a settlement arises from arm's-length negotiations is a key factor in assessing preliminary approval. *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who served as a mediator); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations and highlighting the fact that the negotiations included "two full days of mediation").

The Parties participated in settlement discussions mediated by Judge Welsh, during which they reached an agreement in principle after assessing several rounds of offers and counter-offers. Welsh Decl. ¶¶ 8-11. Judge Welsh stated in her Declaration: "In my opinion, the proposed settlement was the result of fair, thorough, and fully-informed arm's-length negotiations between highly capable, experienced, and informed parties and counsel. . . . [F]rom

an experienced mediator's perspective, the negotiated settlement produced by the mediation process represents a thorough, deliberative, and comprehensive resolution that will benefit class members through meaningful relief." *Id.*, ¶¶ 16-17.  Interim Co-Lead Counsel who negotiated the Settlement are experienced and respected class action litigators with significant experience in data breach cases. *Id.*, ¶ 10. The Parties thereafter spent significant amounts of time revising drafts and negotiating details of the final written Settlement Agreement that is now presented to the Court for approval, as well as conducting further confirmatory discovery. Jt. Decl. ¶¶ 19, 20. At all times, these negotiations were at arm's length and, while courteous and professional, were intense and hard-fought on all sides.  *Id.*, ¶ 19.

### 2.    The Relief Provided for the Class Is Adequate.

This case and the proposed Settlement are the product of significant investigation of Plaintiffs' and Class Members' claims.[9] Interim Co-Lead Counsel conducted extensive and lengthy interviews of Plaintiffs and other class members, reviewed the Plaintiffs' documentation and all documents that Wawa produced regarding the Data Security Incident, consulted extensively with their data security expert witness, consulted with a private investigator, and analyzed the applicable laws of Pennsylvania and other jurisdictions regarding breaches of

---

[9] The fact that the Parties have not engaged in *formal* discovery is not determinative. At an early stage, the Parties disclosed to the Court their intention to mediate after engaging in targeted informal discovery, which the Court approved. *See* Case Mgmt. Ord. No. 2 (June 15, 2020) (Dkt. 119). That is consistent with a long line of cases in which courts—including this Court—have preliminarily approved class action settlements in the early stages of litigation, especially where meaningful informal discovery has occurred. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (Pratter, J.) (preliminarily approving class action settlement when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement"); *see also Fulton-Green,* 2019 WL 316722, at *3 (preliminarily approving class action settlement where "[e]ven though formal discovery has not started . . . the parties exchanged a substantial amount of information regarding the discrete issues in this case").

customers' personally identifiable information ("PII") by retailers and others. Jt. Decl. ¶ 6. The results of that analysis appear in large part in the Complaint. (Dkt. 132.)

Wawa produced over 3,000 pages of documents prior to the mediation, including a preliminary report on the Data Security Incident,[10] two other relevant evaluations of its data security, internal and external emails regarding the discovery and investigation of the Data Security Incident, Board presentations, and other relevant documents. Jt. Decl. ¶ 11. Plaintiffs' counsel analyzed the documents in advance of the mediation. *Id.* Counsel also consulted with Plaintiffs' data security expert, who had analyzed the security evaluations produced by Wawa and conducted her own preliminary investigation into the Data Security Incident. *Id.* Plaintiffs' submission of a mediation statement and class counsel's preparation for that proceeding and analysis of Wawa's mediation statement further informed Plaintiffs' assessment of the relative strengths and weaknesses of their claims.  Jt. Decl. ¶ 15.

Moreover, at the mediation with Judge Welsh—which started in the morning and continued until late in the evening—Interim Co-Lead Counsel proffered additional information regarding specific damages incurred by Plaintiffs, and Defendant's counsel provided additional details and facts surrounding the Data Security Incident, events leading up to the Data Security Incident, and the relative lack of widespread credit and debit card fraud after the breach. Jt. Decl. ¶ 16. Based on this information, Interim Co-Lead Counsel's independent investigation of the relevant facts and applicable law, and counsels' broad experience with other payment card and data breach cases, Interim Co-Lead Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Jt. Decl. ¶ 22.

---

[10] After the mediation, Wawa received and produced to Plaintiffs the final security report and an amended report, both of which Co-Lead Counsel reviewed in detail.  Jt. Decl. ¶ 20.

>    a.    **The Settlement accounts for the costs, risks, and delay of trial and appeal.**

The immediate benefits that the Settlement provides stand in contrast to the risks, uncertainties, and delays of continued litigation. Interim Co-Lead Counsel thoroughly assessed those contingencies in considering the terms of the Settlement. Jt. Decl. ¶ 22; Welsh Decl. ¶¶ 16, 17.

If the litigation were to continue, Plaintiffs and the Settlement Class would face a number of delays and challenges, including opposing a motion to dismiss, obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining certification through trial. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL84928, at *9 (M.D. Pa. Jan. 7, 2013) (preliminarily approving settlement where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources").

Also, a comparison with consumer class plaintiffs' monetary recoveries in other data breach settlements demonstrates the strength of this Settlement. *See, e.g., Adkins v. Facebook, Inc.*, No. C 18-05982, 2020 WL 6710086, at *2-3 (N.D. Cal. Nov. 15, 2020) (preliminarily approving data breach settlement providing only injunctive relief); *Linnins v. Haeco Americas, Inc. (f/k/a Timco Aviation Services, Inc.)*, No. 16-cv-00486, 2018 WL 5312193, at *1 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was allegedly disclosed in breach); Final Approval Order and Judgment,

*Brady v. Due North Holdings, LLC*, No. 1:17-cv-01313, at 2 (Dkt. 65) (S.D. Ind. Oct. 16, 2018) (settlement provided extension of identity theft protection services and reimbursement of out-of-pocket expenses of up to $150, $250, $350, or $500 depending on settlement tier) (judgment and relevant pages of Settlement Agreement attached as Ex. A); Final Approval Order, *In re Zappos Security Breach Litig.*, No. 12-cv-00325, at p. 2 (Dkt. 418) (D. Nev. Dec. 23, 2019) (settlement provided "10% coupon" for Zappos goods) (Order attached at Ex. B); Judgment, *In re Sony Gaming Networks and Customer Data Security Breach Litig.,* No. 11-md-02258 (Dkt. 211) (S.D. Cal. May 4, 2015) (settlement involved breach of payment card information and other PII; settlement provided reimbursement of identity theft losses with $1 million aggregate cap and choice of one or two items from a mix of Sony games, online display themes, or a 3-month subscription to the Sony PlayStation service) (judgment and relevant pages of Settlement Agreement attached at Ex. C).  Moreover, the Settlement also includes significant injunctive relief for the Class. As discussed *supra*, the Settlement requires Wawa to implement additional procedures and policies to protect its customers' cardholder information and to prevent the future theft of customer information. These provisions are a key component of the Settlement and provide a significant benefit to Class Members, many of whom will continue to be loyal Wawa customers in the future.

        **b.**      **The settlement provides for an effective method of distributing relief to the class, including through a simplified claims process.**

The Settlement creates a straight-forward claims procedure for Class Members to claim their Wawa Gift Cards or cash reimbursements for out-of-pocket expenses or losses. It also provides for effective notice to Class Members in this unusual case in which the defendant does not have contact information for class members and there is no other reasonable source of Class

Member contact information. Jt. Decl. ¶ 31; Welsh Decl. ¶ 14. As discussed above, for four consecutive weeks, Wawa will post in-store signs announcing the Settlement.  S.A. ¶ 55.b.

To minimize fraudulent claims, Class Members must submit reasonable documentary proof of their Wawa purchase and, if applicable, any resulting fraudulent charges or out-of-pocket costs. S.A. ¶¶ 36.b.iii, 36.c.v.

### c.  The proposed attorneys' fee award is reasonable.

Interim Co-Lead Counsel have devoted significant time and financial resources to the litigation despite the uncertainty of prevailing as to class certification and the merits and establishing damages. Interim Co-Lead Counsel did not broach the topic of attorneys' fees until after agreeing on substantive settlement terms with Wawa. Jt. Decl. ¶ 38; Welsh Decl. ¶ 15. Interim Co-Lead Counsel will apply for fees in an amount constituting a significant negative multiplier of class counsel's aggregate lodestar. Jt. Decl. ¶ 41. The Parties agreed that any attorneys' fees awarded by the Court would be paid out of a separate $3.2 million fund that also will be used for litigation expenses, settlement administration fees, and Service Awards to the Class Representatives. Attorneys' fees will not diminish the settlement funds available for the Class. Jt. Decl. ¶ 44.  This factor favors preliminary approval of the Settlement. *See, e.g.,* *Blackford*, 2018 WL 6604484, at *6 (holding that the "attorney's fees sought are reasonable and do not impact the class' relief"). Plaintiffs will file a motion and supporting materials supporting these requests in advance of the objection deadline and will post them on the Settlement Website so that they can be easily accessed by Class Members. Jt. Decl. ¶ 43.

### d.  There are no additional agreements required to be identified under Rule 23(e)(3).

Rule 23(e)(2)(C)(iv) requires courts to consider any agreement among the parties outside of the settlement agreement. "The parties seeking approval must file a statement identifying any

agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). No such agreement exists in this case. Jt. Decl. ¶ 30.

### 3. The Settlement Treats Class Members Equitably Relative to Each Other.

Finally, as discussed *supra,* the Settlement treats all Class Members equitably and provides Class Members with the same convenient means to recover under the Settlement. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). The proposed Settlement's three-tiered categories of relief and terms and the injunctive relief that benefits all Class Members satisfy this standard. *See, e.g., Swinton v. SquareTrade, Inc.*, No. 18-cv-00144, 2019 WL 617791, at *8 (S.D. Iowa Feb. 14, 2019) ("There is no requirement that all class members in a settlement be treated equally. And, indeed, class members are not treated equally here. Some are entitled to cash refunds and others only benefit from a coupon and injunctive relief.") (citation omitted),

Moreover, the Settlement treats all Class Members fairly and equally in relation to the strengths of their claims. For purposes of setting recovery amounts, the Settlement: (1) makes common-sense distinctions between Class Members who experienced fraud or attempted fraud as a result of the Data Security Incident and those who did not; (2) fairly protects the interests of all parties in targeting cash compensation to Class Members with the greatest injuries; and (3) provides valuable injunctive relief to the entire Class. In sum, the Settlement ensures the Class Members will be treated equitably relative to each other. It should be approved as fair, reasonable, and adequate.

**B.      The Proposed Settlement Class Satisfies the Criteria of Rule 23(a)**

Courts may certify settlement classes that satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22 (1997); *Fulton-Green*, 2019 WL 316722, at *2.

The proposed Class satisfies all requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Further, as required by Rule 23(b)(3), "questions of law or fact common to class members predominate over any questions affecting only individual members," and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Thus, the Settlement Class should be provisionally certified, pending a final certification order after the Fairness Hearing.

**1.      The Class Is Sufficiently Numerous.**

Wawa estimates that there are 22 million class members. Jt. Decl. ¶ 23. Thus, the Class easily satisfies the Rule 23(a)(1) requirement that the class be "so numerous that joinder of all members is impracticable." *See Fulton-Green*, 2019 WL 316722, at *3 (proposed class of 973 people "easily meet[s] the numerosity requirement"); *Gates*, 248 F.R.D. at 439-40 (class of more than 40 potential plaintiffs generally meets numerosity requirement).

**2.      There Are Questions of Law or Fact Common to the Class.**

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *Warfarin*, 391 F.3d at 527-28. The commonality threshold is low and does not require an "identity of claims or facts among class members." *Gates*, 248 F.R.D. at 440. "[F]or purposes of Rule 23(a)(2), even a single common

question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation and alterations omitted).

Here, the facts relating to the Wawa Data Security Incident are the key issues in the case. There are multiple common questions, including "how the data breach occurred, whether [Wawa] had a duty to protect [cardholder information], and whether [Wawa's customers] were harmed by the breach." *Fulton-Green*, 2019 WL 316722, at *3. The commonality requirement has been met.

### 3. The Class Representatives' Claims Are Typical of the Claims of the Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Hall*, 2019 WL 3996621, at *7. Typicality is satisfied where there is a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (hereinafter "*NFL Players II*") (internal citation omitted). Here, the claims of the Class Representatives are "not only similar to those of other class members but are virtually identical." *Fulton-Green*, 2019 WL 316722, at *4.

All of the Class Representatives, who were customers of Wawa during the Period of the Data Security Breach, "seek to hold [Wawa] liable for damages related to the breach and share common questions of law and fact with all other class members. Thus, their claims are typical of the class delineated for the proposed settlement." *Id.*

    **4.**     **The Class Representatives and Co-Lead Counsel Will Fairly and Adequately Represent the Class.**

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class."

> Essentially, the inquiry into the adequacy of the representative parties examines whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*, 296 F.R.D. 351, 361 (E.D. Pa. 2013) (Pratter, J.) (citations and internal quotation marks omitted); *see also Amchem,* 521 U.S. at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

Here, the named Plaintiffs have been actively involved in the litigation of this case, and each has produced documents and reviewed and approved the proposed Settlement. Jt. Decl. ¶ 39. Their interests and those of the other Class Members are aligned: all are equally interested in proving the factual averments in the Complaint, establishing Wawa's liability, and obtaining compensation from Wawa. As described below, the Class Representatives have retained knowledgeable and well-qualified counsel who have successfully prosecuted many class actions, including many actions arising from data breaches. Interim Co-Lead Counsel have vigorously prosecuted the action since even before their appointment, and have devoted substantial effort and resources on behalf of the Class. *Id.*, *passim*.

    **5.**     **Common Issues Predominate over any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy**.

In addition to satisfying the criteria under Rule 23(a), the proposed Settlement Class must meet one of the criteria under Rule 23(b). Plaintiffs seek to certify a class under Rule 23(b)(3),

which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets both requirements.

### a. Common issues predominate.

As the Supreme Court has explained:

> The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036, 1045 (2016) (citations and quotation marks omitted).

Here, the many "common, aggregation-enabling" questions of law and fact include: whether Wawa owed a duty to the Class Members to adequately protect their cardholder information; whether Wawa breached that duty; whether Wawa violated state consumer protection statutes and common law; whether Wawa knew or should have known that its payment card environment and systems were vulnerable to attack from cybercriminals; whether Wawa complied with all applicable payment card industry requirements (*e.g.*, PCI DSS); whether Wawa's conduct or inaction was the proximate cause of the breach of its payment card environment; and whether Plaintiffs and the Class are entitled to recover damages and other relief from Wawa. In other words, Wawa's liability "depend[s] entirely upon" its own duties and actions, and not on the "particularized conduct of individual class members." *Sullivan*, 667 F.3d at 298-300. Class Members would rely on common documentary, testimonial, and expert

evidence to prove Wawa's actions and inactions and to establish liability. Therefore, common issues predominate. *See NFL Players II,* 821 F.3d at 427 (though plaintiffs may have unique injuries, "their negligence and fraud claims still depend on the same common questions regarding the [defendant's] conduct"); *Warfarin*, 391 F.3d at 528 (finding commonality where liability depended on the defendant's conduct, not on conduct of individual class members, and proof of liability "depends on evidence which is common to the class members").

> **b.**    **A class action is superior to other means of adjudication.**

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Processed Egg Prods.*, 284 F.R.D. at 264. Rule 23(b)(4) suggests that courts consider the following non-exhaustive list of factors when making a superiority determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Here, all four considerations weigh in favor of certifying the Settlement Class. There is no indication that Class Members would be interested in litigating individually or that the litigation should proceed in a non-class forum. Indeed, all of the actions filed against Wawa in state and federal courts were styled as class actions, all of the federal actions have been consolidated in this Court, and the lone state-court action has been stayed pending the outcome of this Settlement. Jt. Decl. ¶¶ 4, 38. In addition, the cost and complexity of litigation would

preclude the vast majority of Class Members from filing suit individually.[11]  The class action

Settlement, in contrast, provides Class Members with an immediate monetary benefit and the

benefit of improved security when they use debit or credit cards at Wawa in the future.

> As this Court summarized in another data breach case:

> [A]ll of the claims are almost identical because they arise from the same underlying activity and the damages should be easily provable and quantifiable. Furthermore, the value of the individual claims may be modest and thus impractical to litigate on a case by case basis. This is particularly true for people . . . who have not suffered identity theft but have had to spend time notifying institutions and signing up for identity theft protection programs.

*Fulton-Green*, 2019 WL 316722, at *4 (preliminarily certifying Rule 23(b)(3) class).

### C.   The Notice Program Provides Class Members with the Best Notice Practicable Under the Circumstances.

If the parties show that the "court will likely be able to: (i) approve the proposal under

Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal," then the Court

must "direct notice in a reasonable manner to all class members who would be bound" by the

proposed settlement. Rule 23(e)(1)(B). Pursuant to Rule 23(c)(2)(B), the notice must be the "best

notice that is practicable under the circumstances, including individual notice to all members who

can be identified through reasonable effort."

There are three aspects to notice requirements under Rule 23 and fundamental due

process: (1) notice must be disseminated in a manner "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections"; (2) the content must be of "such nature as reasonably to

convey the required information"; and (3) the notice must "afford a reasonable time for those

---

[11] Because the Parties request certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . [because] the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *accord Sullivan,* 667 F.3d at 322 n.56; *Processed Egg Prods.*, 284 F.R.D. at 264.

interested to make their appearance" and exercise their options to file a claim, object, or opt out of the class. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted); *see also In re Nat'l Football League Players Concussion Injury Litig.,* 775 F.3d 570, 583 (3d Cir. 2014) (principal purpose of notice provision of Rule 23(e)(1) is to "ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement") (quoting 2 MCLAUGHLIN ON CLASS ACTIONS § 6:17 (10th ed. 2013)). The Notice Program achieves all of these objectives.

### 1.  Notice Will Reach Significant Numbers of Class Members.

Rule 23, as amended in 2018, "does not specify any particular means" as the "preferred" means of notice, instead directing courts and counsel to "focus on the means or combination of means most likely to be effective in the case before the court." Advisory Committee Note, 2018 amendment to Rule 23(c)(2)(B).

Where, as here, a settlement relates to the use of payment cards at a particular business, and the parties do not have contact information for Class Members,[12] in-store signage and website postings are a reasonable form of substitute notice.  For example, *Hanlon v. Aramark Sports, LLC,* No. 09-cv-00465, 2010 WL 374765 (W.D. Pa. Feb. 3, 2010) involved claims that a concessionaire at a Pittsburgh sports stadium did not properly truncate credit card information on its receipts, in violation of federal law. The names and addresses of potential class members were

---

[12] Wawa has represented that neither it nor its agents have contact information sufficient to provide direct notice to Settlement Class Members. Jt. Decl. ¶ 31. This is consistent with Class Counsel's experience in other payment card data breach class actions. *Id.*

not in any single repository but rather in the records of the individual banks that issued the credit and debit cards used by the members of the settlement class. *Hanlon*, 2010 WL 374765 at *6. The court determined that the best notice practicable under the circumstances consisted of a single notice in one local newspaper and a flyer in the store announcing the settlement and directing class members to the settlement website. *Id.* Similarly, in *Palamara v. Kings Family Rests.*, No. 07-cv-00317, 2008 WL 1818453, at *1 (W.D. Pa. Apr. 22, 2008), the court approved a notice plan that involved publication in local newspapers and signs in the defendant's restaurants announcing the settlement and directing customers to the restaurant's website or to a manager to obtain more information, including claim forms and a detailed notice about the settlement. *Palamara*, 2008 WL 1818453, at *1; *see also In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-02807-JSG (Dkt. 145), slip op. at 5-6 (N.D. Ohio Dec. 20, 2018) (approving notice plan that omitted individualized direct notice and included signs in affected stores, a banner announcement on defendant's website, and detailed notice on a settlement website) (copy attached hereto at Ex. D).[13]

Media coverage can also be an integral part of an effective notice plan, especially where, as here, the press has been covering the subject matter of this lawsuit. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1115, 1127 (9th Cir. 2020) (affirming district court's final approval of settlement in which notice was provided to injunctive relief class through postings on class counsel's websites and publicly available information "primarily through news coverage").

---

[13] The Advisory Committee on the Rules of Civil Procedure notes that a "simple posting in a place visited by many class members, directing attention to a source of more detailed information, may suffice" when providing notice to members of 23(b)(1) and (b)(2) classes. Although the requirements for notice to a Rule 23(b)(3) class are more stringent, the Advisory Committee notes recognize the potential effectiveness of posting signs in locations where class members are likely to see them.

Wawa has agreed to issue a press release and post a link to the Settlement Website on its own

website. There was widespread news coverage of the Data Security Incident in early 2020 (*see,*

*e.g.*, ¶¶ 195 to 202 of the Complaint and accompanying footnotes), and Plaintiffs expect that

media coverage after issuance of the press release will encourage Class Members to visit the

Settlement Website to learn more about their rights and options under the Settlement. Jt. Decl. ¶

32.d.[14]

     The Parties expect notice to reach virtually all of the proposed Class. KCC Decl. at ¶ 22.

This is well within the permissible range for class notice, especially in a case in which contact

information for Class Members is not reasonably available. *See In re Heartland Payment Sys.,*

*Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040, 1061 (S.D. Tex. 2012) ("consistent

with prevailing standards," the court ordered that "Summary Notice" must reach at least 80% of

the proposed class and approved a plan estimated to reach 81.4% of the class).

     **2.**     **The detailed notice form, in-store signs, press release, and settlement**
          **website clearly and concisely inform Class Members about their**
          **rights and options, including how to file a claim.**

     As required by Rule 23(2)(B), the proposed Long Form notice attached as Ex. B to the

Settlement Agreement "clearly and concisely state[s] in plain, easily understood language: (i) the

nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or

defenses; (iv) that a class member may enter an appearance through an attorney if the member so

desires; (v) that the court will exclude from the class any member who requests exclusion; (vi)

the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on

---

[14] The proposed Notice Program does not include traditional "publication notice" because the combination of in-store signs, notice on Wawa's website, and coverage resulting from the press release will be more effective in reaching Class Members who, by definition, are Wawa customers. KCC Decl. ¶ 11; Jt. Decl. ¶ 32.

members under Rule 23(c)(3)." It also describes the terms of the Settlement, including requests for service awards for the Class Representatives and for an award of attorneys' fees and reimbursement of expenses; informs Class Members about their right to object to the Settlement (and how to do so); provides the date, time, and place of the Final Approval hearing and the procedures for appearing at the hearing; and provides contact information for Co-Lead Counsel and the Settlement Administrator. Jt. Decl. ¶ 33.

The signs to be posted at payment terminals in stores and at fuel pumps clearly and concisely inform Class Members about the Settlement and direct them to the Settlement Website for further information, including how Class Members can participate in the Settlement. *See* Ex. C to Settlement Agreement. These signs also contain a QR code that Class Members can scan with their smartphones to provide easy access to the Settlement Website. S.A. ¶ 55.b; Jt. Decl. ¶ 32.a.

The Notice Program will inform Class Members of the deadlines for objecting to the settlement and excluding themselves from the Class. The deadlines themselves are reasonable. *See Nat'l Football League,* 301 F.R.D. at 203 ("It is well-settled that between 30 and 60 days is sufficient to allow class members to make their decisions to accept the settlement, object, or exclude themselves.").

In sum, the Notice Program warrants approval: it is reasonable, is designed to reach Class Members efficiently, provides the information and time that Class Members need to protect their rights, and is the best notice practicable under the circumstances. *See Warfarin* 391 F.3d at 536-37 (where parties did not have access to names and addresses of the "multitude of people nationwide who purchased" the product at issue, a notice plan that did not include any individual

direct mail notice was a "reasonable effort" to provide the "best notice practicable under the circumstances").

## V.      INTERIM CO-LEAD COUNSEL SHOULD BE PROVISIONALLY APPOINTED AS CLASS COUNSEL

Plaintiffs request that the Court appoint the current Interim Co-Lead Counsel team as Class Counsel for the Settlement Class. Interim Co-Lead Counsel have vigorously represented the interests of Plaintiffs and Class Members at all times since their appointment.

Rule 23(g) sets forth the criteria for evaluating the adequacy of Plaintiffs' counsel:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A). The Court previously held that Class Counsel met these criteria for purposes of Interim Co-Lead Counsel appointments. (Dkt. 120.)  See also Dkt. 78-2 through -5 (exhibits to leadership application including firm resumes).

## VI.     PROPOSED SCHEDULE FOR FINAL APPROVAL HEARING, ETC.

Plaintiffs request that the Court establish dates for disseminating notice to the Settlement Class, deadlines for requests for exclusion or objections, dates for filing papers relating to final settlement approval and attorneys' fees, and a date for the Final Approval Hearing. Plaintiffs propose the following schedule as set forth in the Settlement Agreement and proposed preliminary approval Order:

| Event | Time for Compliance |
|---|---|
| Notice Issuance Date and Launch of Settlement Website | 30 days after entry of Preliminary Approval Order |
| Deadline for Class Counsel's Application for Attorneys' Fees, Expenses, and Service Awards | 90 days after entry of Preliminary Approval Order |
| Opt-Out and Objection Deadline | 105 days after entry of Preliminary Approval Order |
| Claims Deadline | 120 days after entry of Preliminary Approval Order |
| Deadline for Motion in Support of Final Approval of Settlement | 150 days after entry of Preliminary Approval Order |
| Final Approval Hearing | No earlier than 180 days after entry of Preliminary Approval Order |

## VII.    CONCLUSION

Based on the foregoing, Plaintiffs and Interim Co-Lead Counsel respectfully request that the Court: (1) grant preliminary approval to the Settlement; (2) provisionally certify for settlement purposes only the proposed Settlement Class, pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure; (3) approve the proposed Notice Program; (4) approve, set deadlines for, and order the opt out and objection procedures set forth in the Settlement Agreement; (5) appoint Plaintiffs (including Kasan Laster) as Class Representatives; (6) appoint as Class Counsel Sherrie Savett of Berger Montague PC, Benjamin Johns of Chimicles Schwartz Kriner & Donaldson-Smith LLP, Roberta Liebenberg of Fine, Kaplan and Black, R.P.C., and Linda Nussbaum of Nussbaum Law Group, P.C.; and (7) schedule a  Fairness Hearing in accordance with the proposed schedule set forth above. A proposed Preliminary Approval Order is being filed herewith.

Dated: February 19, 2021

Respectfully submitted,

_/s/ Sherrie R. Savett_
Sherrie R. Savett (PA Bar No. 17646)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
ssavett@bm.net


_/s/ Roberta D. Liebenberg_
Roberta D. Liebenberg (PA Bar No. 31738)
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad St., 23rd Floor
Philadelphia, PA 19107
(215) 567-6565
rliebenberg@finekaplan.com


_/s/ Linda P. Nussbaum_
Linda P. Nussbaum _(admitted pro hac vice)_
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036-8718
(917) 438-9102
lnussbaum@nussbaumpc.com


_/s/ Benjamin F. Johns_
Benjamin F. Johns (PA Bar No. 201373)
CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP
361 W. Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com


_Interim Co-Lead Counsel for Consumer Track_
_Plaintiffs_