# EXHIBIT C



THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

IN RE SONY GAMING NETWORKS )
AND CUSTOMER DATA SECURITY )
BREACH LITIGATION )
_____ ) CIVIL CASE NO.
) 11-MD-2258 AJB (MDD)
)
This filing related to: ALL ACTIONS )

**[PROPOSED] JUDGMENT**

WHEREAS, Representative Plaintiffs and the defendants, Sony Computer Entertainment America LLC ("SCEA"), Sony Network Entertainment International LLC and Sony Network Entertainment America Inc. (having been merged into Sony Network Entertainment International LLC on September 30, 2011) (together, "SNE"), and Daybreak Game Company LLC, f/k/a Sony Online Entertainment LLC ("SOE"), (collectively, "Sony" or "the Sony Entities"), entered into a Settlement Agreement dated April 18, 2014, amended by Amendment to the Settlement Agreement dated June 9, 2014, and further modified by side letter dated April 1, 2015 (together with the Exhibits thereto, the "Settlement Agreement");

WHEREAS, on July 11, 2014, the Court entered an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") that, among other things, (a) preliminarily certified, pursuant to Fed. R. Civ. P. 23, a class for the purposes of settlement only; (b) approved the form of notice to Settlement Class Members, and the method of dissemination thereof; (c) directed that appropriate notice of the settlement be given to the Settlement Class; and (d) set a hearing date for final approval of the settlement;

WHEREAS, the notice to the Settlement Class ordered by the Court in its Preliminary Approval Order has been provided, as attested to in the declaration of Shannon R. Wheatman, Ph.D., filed with the Court on April 3, 2015;

WHEREAS, the governmental notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, was provided on or about June 20, 2014, and was supplemented thereafter, as attested to in the declaration of Amy L. Lake, filed with the Court on April 21, 2015; and

WHEREAS, on May 4, 2015, a hearing was held on whether the settlement set forth in the Settlement Agreement was fair, reasonable, adequate, and in the best interests of the Settlement Class, such hearing date being a due and appropriate number of days after such notice to the Settlement Class and the requisite number of days after such governmental notice;

NOW THEREFORE, having reviewed and considered the submissions presented with respect to the settlement set forth in the Settlement Agreement and the record in these proceedings, having heard and considered the evidence presented by the parties and the argument of counsel, having determined that the settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and noting that, as set forth in Paragraph 7.5 of the Settlement Agreement, the application of Co-Lead Settlement Class Counsel for an award of fees, costs and expenses is separate from the issue of whether final approval should be given to settlement set forth in the Settlement Agreement, and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.      The Court incorporates by reference the definitions set forth in the Settlement Agreement.

2.      The Court has subject matter jurisdiction of this matter and all claims asserted against the Sony Entities.

3.      The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under

the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

4.     Pursuant to Fed. R. Civ. P. 23 and this Court's Preliminary Approval Order, for the purposes of settling the Released Claims against the Released Persons in accordance with the Settlement Agreement, the following Persons are members of the Settlement Class:

> All Persons residing in the United States who had a PlayStation Network account or sub-account, a Qriocity account, or a Sony Online Entertainment account at any time prior to May 15, 2011 (referred to herein as "PSN Accountholders," "Qriocity Accountholders," and "SOE Accountholders" respectively). Excluded from the definition of Settlement Class are the Sony Entities and their officers and directors, and those Persons who timely and validly request exclusion from the Settlement Class.

5.     Excluded from the Settlement Class are those Persons identified in Exhibit A, attached hereto, who submitted timely and valid requests for exclusion from the Settlement Class ("Opt-Outs"). Opt-Outs shall neither share in the distribution of any settlement fund nor receive any benefits of the terms of the Settlement Agreement, and shall not be bound by this Judgment.

6.     Representative Plaintiffs and Co-Lead Settlement Class Counsel fairly and adequately represented the interests of Settlement Class Members in connection with the settlement set forth in the Settlement Agreement.

7.     All objections to the settlement set forth in the Settlement Agreement having been considered and having been found either to be mooted by the settlement or not supported by credible evidence, the settlement set forth in the Settlement Agreement is in all respects, fair,

adequate, reasonable, proper, and in the best interest of the Settlement Class, and is hereby approved.

8.      Representative Plaintiffs, the Sony Entities, and Settlement Class Members shall consummate the settlement according to the terms of the Settlement Agreement.  The Settlement Agreement, and each and every term and provision thereof, shall be deemed incorporated herein as if explicitly set forth herein and shall have the full force and effect of an order of this Court.

9.      All the claims alleged in the Litigation and all complaints filed in any action in the Litigation are hereby dismissed with prejudice, each party to bear his own costs, except as may be expressly provided in the Settlement Agreement.

10.      Each Released Claim of each Settlement Class Member is hereby extinguished as against the Released Persons.  Representative Plaintiffs and each Settlement Class Member shall be deemed conclusively to have compromised, settled, discharged, and released the Released Claims against the Released Persons upon the terms and conditions provided in the Settlement Agreement.

11.      Settlement Class Members shall be and hereby are permanently barred and enjoined from, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, commencing, prosecuting, or participating in any recovery in, any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims against the Released Persons is asserted.

12.      Neither this Judgment, the Settlement Agreement, the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any

wrongdoing or liability of any of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Any of the Released Persons may file the Settlement Agreement and/or this Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13. The Court has reviewed the attorneys' fees, costs and expenses petition filed by Co-Lead Settlement Class Counsel on behalf of all Plaintiffs' Counsel and awards attorneys' fees, costs and expenses in the amount of 2,750,000 (combined). Such payment for fees, costs, and expenses by the Sony Entities shall be made to Co-Lead Settlement Class Counsel. The Court recognizes that Co-Lead Settlement Class Counsel are most familiar with the participation and contributions of Plaintiffs' Counsel in this litigation, and, accordingly hereby orders and provides that they shall be and are hereby authorized to allocate and distribute said funds amongst Plaintiffs' Counsel in their sole discretion to be reasonably applied. Any dispute concerning said allocations shall be under the jurisdiction of this Court.

14. The parties have stipulated and the Court has determined that the Court's decision to grant final approval of the settlement set forth in the Settlement Agreement is separate from the issues raised by Co-Lead Settlement Class Counsel's petition for fees, costs, and expenses.

15. Without affecting the finality of this Judgment in any way, this Court retains continuing jurisdiction over the Settling Parties and the Settlement Class for the administration, consummation, and enforcement of the terms of the Settlement Agreement.

16.     In the event the Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated and, in such event, as provided in the Settlement Agreement, this Judgment and all orders entered in connection herewith shall be vacated and null and void.

SO ORDERED.

_____
Honorable Anthony J. Battaglia
United States District Court Judge

Dated: _____

Case 2:19-cv-06019-KRB Document 180-3 Filed 02/19/21 Page 8 of 26
Case 3:11-md-02258-AJB-MDD Document 211 Filed 05/04/15 Page 37 of 28
C.A. No: 11-md-2258, Exhibit A to Judgment

# EXHIBIT A

IN RE SONY GAMING NETWORKS
AND CUSTOMER DATA SECURITY BREACH LITIGATION
Exclusions

| | |
|---|---|
| 1 | AHMED NASSAR |
| 2 | AHRON M WEST |
| 3 | ANDREW LLODRA |
| 4 | ANTHONY ANSELMO |
| 5 | BILLIE OH |
| 6 | BRENDA SIM |
| 7 | CARTER PLOTKIN |
| 8 | CATHERINE S LINARD |
| 9 | CHARLES KUGELMAN |
| 10 | CHRISTIAN LIU |
| 11 | CLAYTON C DALEY III |
| 12 | CODY SEARL |
| 13 | DANIEL SIM |
| 14 | DAVID M GRIMANI |
| 15 | DAVID M JORDAN |
| 16 | DEREK MASSOUDA |
| 17 | DONNA DANICA DJORDJEVICH REYNA |
| 18 | ELIAS ANDERSON |
| 19 | EMMANUEL TAVERAS |
| 20 | ISAAC W COLYER-PENA |
| 21 | JEFFREY NEIL GOFORTH |
| 22 | JESSE M LINDMAR |
| 23 | JESSE W MARSHIK |
| 24 | JOHN KRAYER |
| 25 | JOHN SIK-ON LEE |
| 26 | JONATHAN SATO |
| 27 | JORDAN MASSEY |
| 28 | JOSE VIELMA |
| 29 | JOSEPH A CILLUFFO |
| 30 | KEITH BENSON RADCLIFFE |
| 31 | KEITH PECHARZA |
| 32 | KEIVAN KHALICHI |
| 33 | LINA RIVAS & CESAR RIVAS |
| 34 | MANDI JO WHEELER |
| 35 | MARC WHEELER |
| 36 | MASAKAZU MATSUSHITA |
| 37 | MATTHEW MICHAEL JENSEN |
| 38 | MICHAEL INFINGER |
| 39 | MIKE CUNHA |
| 40 | MORRIS CHOW |
| 41 | NICHOLAS LOSCO |
| 42 | NINA BORCHOWIEC |
| 43 | RICHARD SUN |
| 44 | SHAWN FULFER |
| 45 | STEPHEN CHARLES ENGLAND |
| 46 | THOMAS A NOSTIN II |
| 47 | VICTOR CALDERON |
| 48 | WILLIAM E TADLOCK II |
| 49 | WILLIAM MEREDITH |
| 50 | ZACHARY Y SHARON |

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

IN RE SONY GAMING NETWORKS
AND CUSTOMER DATA SECURITY
BREACH LITIGATION

This filing related to: ALL ACTIONS

)
)
)
)
)
)
)
)

CIVIL CASE NO.
11-MD-2258 AJB (MDD)

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of April 18, 2014, is made and entered into jointly by the following Settling Parties (as defined below) to the above captioned consolidated action: (i) Scott Lieberman, Kyle Johnson, Arthur Howe, Adam Schucher, Rebecca Mitchell, Christopher Wilson, James Wright, Robert Bova, Christian Kalled, Christopher Munsterman, and Timothy Whyland (the "Representative Plaintiffs"), individually and as named class representatives on behalf of the Settlement Class (as defined below), by and through Paul J. Geller, Robbins Geller Rudman & Dowd LLP; Ben Barnow, Barnow and Associates, P.C.; David A. McKay, Law Offices of David A. McKay LLC; Adam J. Levitt, Grant & Eisenhofer, P.A.; Brian R. Strange, Strange & Carpenter; Timothy G. Blood, Blood Hurst & O'Reardon, LLP; and Gayle M. Blatt, Casey Gerry Schenk Francavilla Blatt & Penfield, LLP (together, "Co-Lead Settlement Class Counsel"); and (ii) Sony Computer Entertainment America LLC ("SCEA"), Sony Network Entertainment International LLC ("SNE"),[1] and Sony Online Entertainment LLC ("SOE") (collectively, "Sony" or "the Sony Entities"), by and through their counsel of record, Harvey J. Wolkoff and Mark P. Szpak, Ropes & Gray LLP. The Settlement Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge and

---

[1] On September 30, 2011, Sony Network Entertainment America, Inc. merged into Sony Network Entertainment International LLC.

or promotional Station Cash included within the unused credit amount in the wallet (and which may be referred to as "paid virtual currency").

**2.    The Settlement**

2.1      <u>PSN Accountholders</u>.    Settlement Class Members who are PSN Accountholders (as defined in ¶ 1.23 herein) may submit claims under the Settlement (referred to below as "PSN Claimants") as follows:

(a)      <u>Unused PSN Wallet Credit Payment</u>.    A PSN Claimant:

(1)      who had any PSN Account (other than a sub-account) that was active (i.e., had been logged into at least once), or that was linked to a sub-account that was active, during the period January 1, 2011 through and including May 14, 2011, and

(2)      all of whose PSN Accounts (and any linked sub-accounts) had been completely dormant (i.e., had not been logged into at all) between May 15, 2011 and the date on which the fully executed Settlement Agreement is first filed with the Court (and who has not opened any new PSN account or opened any new sub-account in that period), and

(3)      who certifies in writing on the Claim Form that the reason for there having been no such logins or openings is specifically because of the PSN Intrusion,

may submit a claim to the Claims Administrator to receive a payment equal to any Unused PSN Wallet Credit in the PSN Claimant's Account(s) for which the Unused PSN Wallet Credit in the account is equal to or exceeds $2.00. Upon submission of such a claim, the PSN Claimant's

Account(s) and any linked sub accounts will be suspended and the Unused PSN Wallet Credit in the PSN Claimant'(s) Account(s) will be calculated. The Claims Administrator will make payment with respect to valid claims using amounts deposited by the Sony Entities into the Settlement Administration Account (as defined in ¶ 2.6). Upon payment, the Unused PSN Wallet Credit in any such account for which a payment is made will be extinguished, and the PSN Claimant's Account(s) and any linked sub-accounts will be closed.

(b) Third-Party Services Benefit. A PSN Claimant who:

(1) had any PSN Account that was active (i.e., had been logged into at least once) during the period January 1, 2011 through and including May 14, 2011, during which media services available by prepaid subscription through the PSN from third-party providers Netflix or Hulu Plus were accessed, and

(2) provides documentary evidence in the form of credit card or other payment receipts or statements that the PSN Claimant paid the third-party provider for such third-party media services to be made available to the PSN Claimant at any time during the period April 20, 2011 through and including May 14, 2011 (the "PSN Offline Period"), and

(3) certifies in writing on the Claim Form that the PSN Claimant did not subsequently receive a corresponding credit or reimbursement from the third-party with respect to such payment, and

(4) certifies in writing on the Claim Form that the PSN Claimant did not access media services from the third-party provider during the

16

PSN Offline Period through some other means, such as by
streaming media through Internet-connected computers or ordering
it on disc through the mail,

may submit a claim for either a Theme Benefit or a *PlayStation Plus* New Subscription Benefit,
which claims will be honored for valid claims under this "Third-Party Services Benefit" category
on a first-come, first-served basis up to a maximum of $1 million (the "Third-Party Services
Claim Allocation").

    (c)    <u>PSN User Benefits</u>.

    (1)    <u>PSN 'Welcome Back' Participants</u>. A PSN Claimant who
participated in the "Welcome Back" package offered to PSN Accountholders following the PSN
Intrusion (i.e., who requested and received any free games, free PSN premium service
subscription periods or free movies under the PSN Welcome Back program with respect to any
of the PSN Claimant's Accounts) shall be referred to hereunder as a "PSN 'Welcome Back'
Participant" and may submit a claim for any one (1) of the PSN Benefit Options described
below. Claims by PSN 'Welcome Back' Participants will be honored in this fashion on a first-
come, first-served basis up to a maximum of $4 million (the "PSN 'Welcome Back' Participant
Allocation")

    (2)    <u>PSN 'Welcome Back' Non-Participants</u>. A PSN Claimant who did
not participate in the "Welcome Back" package offered to PSN Accountholders following the
PSN Intrusion (i.e., who did not request or receive any free games, free PSN premium service
subscription periods or free movies under the PSN Welcome Back program with respect to any
of the PSN Claimant's Accounts) shall be referred to hereunder as a "PSN 'Welcome Back'
Non-Participant" and may submit a claim for any two (2) of the PSN Benefit Options described

below (i.e., either two separate PSN Benefit Options, or two instances of any one of the PSN Benefit Options). Claims by PSN 'Welcome Back' Non-Participants will be honored in this fashion on a first-come, first-served basis up to a maximum of $6 million (the "PSN 'Welcome Back' Non-Participant Allocation") .

        (3)    <u>PSN Benefit Options</u>. The "PSN Benefit Options" referred to in the two preceding paragraphs shall be the Game Benefit, the Theme Benefit, and the *PlayStation Plus* New Subscription Benefit.

        (4)    <u>PSN Claimants Household Limit</u>. Valid claims under ¶ 2.1(c)(1) or ¶ 2.1(c)(2) above shall be, taken together, limited to three per household. In the event such per household limit is reached as to any household, other PSN Claimants from the same household who submit valid claims, but as to whom the per household limit has been reached, will be eligible for the *PlayStation Plus* All Subscriptions Benefit, which will be provided to such claimants through their PSN accounts.

        (5)    <u>PSN Claimants Benefit if Allocation is Reached</u>. In the event the PSN 'Welcome Back' Participant Allocation or the PSN 'Welcome Back' Non-Participant Allocation is reached, other PSN Claimants who submit valid claims, but who do so after such allocation has been reached, will be eligible for the *PlayStation Plus* All Subscriptions Benefit, which will be provided to such claimants through their PSN accounts.

        2.2    <u>Qriocity Accountholders</u>. Settlement Class Members who are Qriocity Accountholders (as defined in ¶ 1.23 herein) but did not also have a PSN account (or sub-account) at the time of the Intrusions (such Qriocity Accountholders being referred to hereunder as "Qriocity Claimants") may submit a claim under the Settlement for a "Qriocity User Benefit," which shall be one free month of Music Unlimited service (it being understood that "Music

Unlimited" is the current name for the music portion of the Qriocity service) which shall be made available through a voucher code to be distributed to a valid claimant.

2.3    <u>SOE Accountholders</u>.    Settlement Class Members who are SOE Accountholders (as defined in ¶ 1.23 herein) may submit claims under the Settlement (referred to below as "SOE Claimants") as follows:

(a)    <u>Unused SOE Wallet Credit Payment</u>.   An SOE Claimant:

(1)    who had any SOE Account that was active (i.e., had been logged into at least once) during the period January 1, 2011 through and including May 14, 2011, and

(2)    all of whose SOE Accounts had been completely dormant (i.e., had not been logged into at all) between May 15, 2011 and the date on which the fully executed Settlement Agreement is first filed with the Court (and who has not opened any new SOE account in that period), and

(3)    who certifies in writing on the Claim Form that the reason for there having been no such logins or openings is specifically because of the SOE Intrusion,

may submit a claim to the Claims Administrator to receive a payment equal to any Unused SOE Wallet Credit in the SOE Claimant's Account(s) for which the Unused SOE Wallet Credit in the account is equal to or exceeds $2.00.   Upon submission of such a claim, the SOE Claimant's Account(s) will be suspended and the Unused SOE Wallet Credit in the SOE Claimant(s) Account(s) will be calculated. The Claims Administrator will make payment with respect to valid claims using amounts deposited by the Sony Entities into the Settlement Administration

Account (as defined in ¶ 2.6). Upon payment, the Unused SOE Wallet Credit in any such account for which a payment is made will be extinguished, and the SOE Claimant's Account(s) will be closed.

  (b) <u>SOE User Benefit</u>.

   (1) An SOE Claimant may submit a claim to receive $4.50 worth of "Station Cash" (i.e., 450 units of Station Cash, referred to herein as the "SOE User Benefit") to be credited to the SOE Claimant's Account. In the event valid claims for SOE User Benefits exceeds $4 million (the "SOE User Benefit Allocation"), the amount of each SOE User Benefit under this subparagraph shall be proportionally reduced. E.g., if the total of such claims exceeds $4 million by $400,000 (i.e., by 1/10 of $4 million), the dollar amount of each such SOE User Benefit shall be $4.05 (i.e., 405 units of Station Cash). Such Station Cash will be good for all uses for which Station Cash may otherwise be used.

 2.4 <u>Interrelationship Between Benefit Claims and Accounts.</u>

  (a) A Settlement Class Member who is both a PSN Accountholder and an SOE Accountholder may file a claim as a PSN Claimant and may also file a claim as an SOE Claimant.

  (b) A Settlement Class Member who is both a Qriocity Accountholder and an SOE Accountholder may file a claim as a Qriocity Claimant and may also file a claim as an SOE Claimant.

  (c) A PSN Claimant who submits a claim for an Unused PSN Wallet Credit Payment is ineligible to request any other benefit that may be available to PSN Claimants hereunder, and vice versa.

  (d) An SOE Claimant who submits a claim for an Unused SOE Wallet Credit

Payment is ineligible to request any other benefit that may be available to SOE Claimants hereunder, and vice versa.

        (e)    Except as stated with respect to the Unused PSN Wallet Credit Payment and the Unused SOE Wallet Credit Payment, all Settlement Class Member benefits hereunder are available to eligible class members for valid claims only on a per person basis, not on a per account basis regardless of the number of accounts a Settlement Class Member may have or have had. Specifically, and without limitation:

        (i)    PSN User Benefits are available to eligible PSN Claimants for valid claims on a per class member basis, regardless of the number of PSN accounts or sub-accounts a PSN Claimant may have or have had;

        (ii)    the Qriocity User Benefit is available to eligible Qriocity Claimants for valid claims on a per class member basis, regardless of the number of Qriocity accounts a Qriocity Claimant may have or have had; and

        (iii)    the SOE User Benefit is available to eligible SOE Claimants for valid claims on a per class member basis, regardless of the number of SOE accounts an SOE Claimant may have or have had.

    2.5    <u>Identity Theft Protection Claims</u>. Any Settlement Class Member may submit a claim to the Claims Administrator for reimbursement for "Identity-Theft-Related Charges" that a Settlement Class Member claims and documents in accordance with the Claims Process described below and proves by a preponderance of the evidence (i.e., more likely than not to be true) to have directly and proximately resulted from the PSN Intrusion or the SOE Intrusion, i.e., from a third-party's unauthorized use of information regarding the claimant that the claimant demonstrates was obtained by the third-party from the Intrusions and not from any other source.

(a)     "Identity-Theft-Related Charges" shall mean out-of-pocket payments (not otherwise reimbursed) for expenses that are incurred as a direct result of "Actual Identity Theft", which means someone assuming the Settlement Class Member's identity and taking out a line of credit, establishing a new financial account, or otherwise obtaining monies and other things of value fraudulently in the name of the Settlement Class Member (other than unauthorized charges on a payment card account associated with a Settlement Class Member's PSN Account, Qriocity Account or SOE Account).

(b)     In the absence of a Settlement Class Member having been the subject of Actual Identity Theft resulting from the Intrusions, no reimbursement shall be available hereunder, including for such items as (without limitation) credit monitoring, out-of-pocket expenses, lost time, attorneys' fees, payment card or financial account replacement costs, or unauthorized charges of any sort.

(c)     Claims alleging Actual Identity Theft shall be made within 60 days of the Effective Date.  The Claims Administrator will commence rendering decisions on such claims on or after 60 days following the Effective Date.  Prior to deciding any such claim, the Claims Administrator shall afford the Sony Entities an opportunity to review and comment on the claim and provide such relevant information to the Claims Administrator as the Sony Entities may wish, with Co-Lead Settlement Class Counsel then being afforded an opportunity to review and comment on the claim in turn.  The decision of the Claims Administrator shall be final and binding on the claimant and on the Sony Entities; however, given the settlement context and the limited process surrounding such claims and decisions, the parties agree that no such decision shall be deemed to constitute a finding, admission or waiver by any Settling Party as to any matter of fact, law or evidence having any collateral effect on any claim hereunder or in any

other proceeding or before any other forum or authority.  Further, the parties agree that every such decision shall remain confidential and shall not be submitted to or admissible in any other proceeding or before any other forum or authority.

(d)　　The Claims Administrator may award up to $2,500 in reimbursements on any claim that the Claims Administrator decides is valid and meets the requirements for reimbursement hereunder, up to an aggregate maximum of $1 million across all valid claims (the "Identity Theft Protection Claim Allocation"). The Claims Administrator will make payment with respect to valid claims using amounts deposited by the Sony Entities into the Settlement Administration Account (as defined in ¶ 2.6).  Payment on any claim pursuant to any decision of the Claims Administrator hereunder shall not commence until 180 days after the final date for submitting claims or all claims hereunder have been finally decided, whichever is later, and shall be subject to pro rata reduction in the event such amounts together would otherwise exceed the Identity Theft Protection Claim Allocation.  No pre-funding shall be required, except to the extent the Claims Administrator requires funds for expenses reasonably incurred or expected to be incurred in administering review of such claims.

2.6　　Settlement Administration Account.  The Claims Administrator shall establish a settlement administration account ("Settlement Administration Account"), which shall be funded by the Sony Entities from time to time, as required by the Claims Administrator, with such sums as are necessary and required to effectuate the terms of the settlement, including amounts necessary and required to pay Unused PSN Wallet Credit Payments, Unused SOE Wallet Credit Payments, Identity Theft Protection Claims, Costs of Claims Administration, and such other costs as specifically set forth herein.

2.7　　The settlement website shall include a "Good Account Practices" message

successors and assigns of the parties hereto.

10.12   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.13   This Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice of law principles.

10.14   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.15   All dollar amounts are in United States dollars.

10.16   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*Counsel for the Sony Entities*

Harvey J. Wolkoff
Mark P. Szpak
ROPES & GRAY LLP
800 Boylston Street, Prudential Tower
Boston, MA 02199
(617) 951-7600
hwolkoff@ropesgray.com
mszpak@ropesgray.com

38

*Co-Lead Settlement Class Counsel*

Paul J. Geller, ROBBINS GELLER RUDMAN
    & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

Ben Barnow, BARNOW AND
    ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000

Timothy G. Blood,  BLOOD HURST &
    O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California 92101
(619) 338-1100

Gayle M. Blatt, CASEY GERRY SCHENK
    FRANCAVILLA BLATT &
    PENFIELD LLP
110 Laurel Street
San Diego, California 92101
(619) 238-1811

David A. McKay, LAW OFFICES OF
    DAVID A. MCKAY LLC
555 North Point Center East, Suite 400
Alpharetta, Georgia 30022
(678) 366-5180

Adam J. Levitt, GRANT & EISENHOFER,
    P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000

Brian R. Strange, STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055

*Co-Lead Settlement Class Counsel*

---

Paul J. Geller, ROBBINS GELLER RUDMAN
    & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

Ben Barnow, BARNOW AND
    ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000

Timothy G. Blood,  BLOOD HURST &
    O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California 92101
(619) 338-1100

Gayle M. Blatt, CASEY GERRY SCHENK
    FRANCAVILLA BLATT &
    PENFIELD LLP
110 Laurel Street
San Diego, California 92101
(619) 238-1811

David A. McKay, LAW OFFICES OF
    DAVID A. MCKAY LLC
555 North Point Center East, Suite 400
Alpharetta, Georgia 30022
(678) 366-5180

Adam J. Levitt, GRANT & EISENHOFER,
    P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000

Brian R. Strange, STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055

39

*Co-Lead Settlement Class Counsel*

Paul J. Geller, ROBBINS GELLER RUDMAN
&amp; DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

Ben Barnow, BARNOW AND
ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000

Timothy G. Blood, BLOOD HURST &amp;
O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California 92101
(619) 338-1100

Gayle M. Blatt, CASEY GERRY SCHENK
FRANCAVILLA BLATT &amp;
PENFIELD LLP
110 Laurel Street
San Diego, California 92101
(619) 238-1811

David A. McKay, LAW OFFICES OF
DAVID A. MCKAY LLC
555 North Point Center East, Suite 400
Alpharetta, Georgia 30022
(678) 366-5180

Adam J. Levitt, GRANT &amp; EISENHOFER,
P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000

Brian R. Strange, STRANGE &amp; CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, Califoraia 90025
(310) 207-5055

39

*Co-Lead Settlement Class Counsel*

Paul J. Geller, ROBBINS GELLER RUDMAN
    & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

Ben Barnow, BARNOW AND
    ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000

Timothy G. Blood, BLOOD HURST &
    O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California 92101
(619) 338-1100

Gayle M. Blatt, CASEY GERRY SCHENK
    FRANCAVILLA BLATT &
    PENFIELD LLP
110 Laurel Street
San Diego, California 92101
(619) 238-1811

David A. McKay, LAW OFFICES OF
    DAVID A. MCKAY LLC
555 North Point Center East, Suite 400
Alpharetta, Georgia 30022
(678) 366-5180

Adam J. Levitt, GRANT & EISENHOFER,
    P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000

Brian R. Strange, STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055

39

*Co-Lead Settlement Class Counsel*

Paul J. Geller, ROBBINS GELLER RUDMAN
    & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

Ben Barnow, BARNOW AND
    ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000

Timothy G. Blood,  BLOOD HURST &
    O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California 92101
 (619) 338-1100

Gayle M. Blatt, CASEY GERRY SCHENK
    FRANCAVILLA BLATT &
    PENFIELD LLP
110 Laurel Street
San Diego, California 92101
(619) 238-1811

David A. McKay, LAW OFFICES OF
    DAVID A. MCKAY LLC
555 North Point Center East, Suite 400
Alpharetta, Georgia 30022
(678) 366-5180

Adam J. Levitt, GRANT & EISENHOFER,
    P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000

Brian R. Strange, STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055

*Co-Lead Settlement Class Counsel*

Paul J. Geller, ROBBINS GELLER RUDMAN
    & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

Ben Barnow, BARNOW AND
    ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000

Timothy G. Blood, BLOOD HURST &
    O'REARDON, LLP
701 B Street, Suite 1700
San Diego, California 92101
(619) 338-1100

Gayle M. Blatt, CASEY GERRY SCHENK
    FRANCAVILLA BLATT &
    PENFIELD LLP
110 Laurel Street
San Diego, California 92101
(619) 238-1811

David A. McKay, LAW OFFICES OF
    DAVID A. MCKAY LLC
555 North Point Center East, Suite 400
Alpharetta, Georgia 30022
(678) 366-5180

Adam J. Levitt, GRANT & EISENHOFER,
    P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000

Brian R. Strange, STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055