**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
.

| | |
|---|---|
| **IN RE WAWA, INC. DATA SECURITY LITIGATION** | **Case No. 19-6019-GEKP** |
| | **Class Action** |
| *This document relates to: Consumer Track* | |

**JOINT DECLARATION OF INTERIM CO-LEAD COUNSEL IN SUPPORT OF CONSUMER PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, PROVISIONALLY CERTIFYING SETTLEMENT CLASS, AND DIRECTING NOTICE**

We, Sherrie R. Savett, Roberta D. Liebenberg, Benjamin F. Johns, and Linda P. Nussbaum, hereby declare as follows:

1.      On June 12, 2020, the Court determined that we met the criteria of Federal Rule of Civil Procedure 23(g) for purposes of interim class counsel appointments and appointed us as Interim Co-Lead Counsel for the Plaintiffs in the Consumer Track ("Plaintiffs") of this class action litigation (the "Action") against Wawa, Inc. ("Wawa"). (Dkt. 120.) In that capacity, we submit this joint declaration in support of Consumer Track Plaintiffs' Motion for an Order Preliminarily Approving the Proposed Class Action Settlement, Provisionally Certifying the Settlement Class, and Directing Notice ("Motion").[1]

2.      We have personal knowledge of the facts stated in this Declaration and are competent to testify to them.

---

[1] Unless otherwise indicated, capitalized terms herein shall have the same definition as set forth in the Settlement Agreement between the Consumer Track Plaintiffs and Wawa dated February 9, 2021 ("Settlement Agreement" or "S.A."). A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to this Declaration.

**Summary of the Litigation**

3.      In December 2019, Wawa disclosed that cybercriminals accessed credit and debit card information as part of a massive cyber-attack on Wawa's payment card environment (the "Data Security Incident"). Wawa's investigation ultimately determined that the perpetrators of the Data Security Incident extracted information from March 4, 2019 until December 12, 2019 (the "Period of the Security Incident").

4.      Soon after Wawa announced the Data Security Incident, Plaintiffs and others filed proposed class actions in this Court on behalf of Wawa customers. On January 8, 2020, Chief Judge Juan Sanchez consolidated the pending actions. (Dkt. 9.)

5.      We have been coordinating amongst ourselves and with our co-counsel to investigate, organize, and prosecute the Action since well before our June 2020 appointment as Interim Co-Lead Counsel.

6.      Before filing the Consumer Plaintiffs' Consolidated Class Action Complaint ("Complaint") on July 27, 2020 (Dkt. 132), we investigated Plaintiffs' claims and those of other members of the proposed class ("Class Members"), by, *inter alia*, conducting extensive and lengthy interviews of Plaintiffs and other Class Members; analyzing the Plaintiffs' documentation and publicly-available information about the Data Security Incident regarding the Data Security Incident; consulting with a private investigator; and analyzing the applicable laws of Pennsylvania and other jurisdictions regarding breaches of customers' personally identifiable information ("PII") held by retailers and others. We engaged an expert witness regarding data security issues early in the litigation and consulted with her extensively before filing the Complaint and throughout the litigation.

7. We determined that it would be in the best interests of the proposed Class to move this matter towards resolution through a negotiated settlement. We communicated with counsel for Wawa, who shared an interest in doing so. In a series of pre-mediation discussions, each side argued the merits of its position and the weaknesses in the other side's position. We agreed that an experienced mediator could help the Parties reach a negotiated settlement.

8. At a hearing on June 11, 2020, we and Wawa's counsel notified the Court of our intention to participate in a mediation to attempt to resolve the matter. Case Management Order No. 2 acknowledged that the Parties would be holding a mediation and exchanging documents and substantive mediation statements in advance of the mediation. (Dkt. 119.)

9. Thereafter, we and Wawa's counsel held several meet and confer calls to discuss the mediation, including the selection of the Hon. Diane Welsh (Ret.) of JAMS as the mediator and the exchange of mediation statements, as well as the necessity of conducting informal discovery that would provide the information each side would need to properly evaluate the litigation and conduct the mediation.

10. In accordance with agreements made during our meet and confer calls, Plaintiffs produced 212 pages of documents to Wawa. We understand that Wawa's counsel reviewed those documents in advance of the mediation.

11. As agreed during our meet and confer sessions, Wawa produced 3,596 pages of documents to Plaintiffs through a series of rolling productions. The documents included a preliminary report on the Data Security Incident and two other relevant evaluations of its data security, internal and external emails regarding the discovery and investigation of the Data Security Incident, Board presentations, and other relevant documents. Before the mediation, Plaintiffs' counsel reviewed all of the documents Wawa had then produced, as well as significant

3

amounts of publicly available information about the Data Security Incident. We also consulted

with our data security expert, who analyzed the security evaluations produced by Wawa and

conducted her own preliminary investigation into the Data Security Incident.

12.     At the direction of Judge Welsh, the Parties prepared and exchanged detailed

mediation statements in advance of the mediation. The mediation statements addressed the

factual issues in the case and key legal issues, including standing, damages, class certification,

and overall data breach precedent in this Circuit and beyond. Each statement also proposed

settlement terms. *See* Declaration of Hon. Diane M. Welsh (Ret.) of JAMS in Support of

Proposed Class Settlement attached as Exhibit 2 to this Declaration ("Welsh Decl.") ¶ 7. The

Parties reviewed and analyzed each other's mediation statement before meeting with Judge

Welsh.

## The Mediation and Continued Settlement Negotiations

13.     On September 15, 2020, the Parties took part in a mediation presided over by

Judge Welsh. *See* Welsh Decl. ¶ 8.

14.     The mediation lasted almost 12 hours and included both joint sessions and

numerous break-out sessions. The negotiations were hard fought and conducted at arm's length

and in good faith. Judge Welsh concluded that both sides were "zealously represented" at the

mediation by "highly qualified attorneys with extensive experience and expertise in complex

class actions in general, and data breach litigation in particular." *Id.* at ¶ 10.

15.     The work involved in submitting our mediation statement, analyzing in detail

Wawa's mediation statement, and preparing for the mediation informed our assessment of the

relative strengths and weaknesses of Plaintiffs' claims. We refined our assessments as

appropriate during the lengthy mediation.

16.     At the mediation, we proffered additional information regarding specific damages incurred by Plaintiffs, and Wawa's counsel provided additional details and facts surrounding the Data Security Incident, events leading up to the Data Security Incident, and, importantly, the lack of widespread credit and debit card fraud after the breach.

17.     Throughout the mediation, we zealously advanced the Settlement Class Members' positions. We were fully prepared to proceed with the litigation rather than accept a settlement that was not in the best interests of the Class.

18.     At the end of the mediation session, the Parties reached an agreement in principle to resolve this proposed class action (the "Settlement").

19.     The Parties spent significant amounts of time after the mediation in drafting, negotiating, and revising details of the final written Settlement Agreement that is now presented to the Court for approval. At all times, these negotiations were at arm's length and, while courteous and professional, were intense and hard-fought on both sides.

20.     During this period of post-mediation negotiations, Wawa received and produced to Plaintiffs the final report regarding the Data Security Incident and an amended report.  Co-Lead Counsel reviewed the reports in detail to confirm the reasonableness of the negotiated Settlement.

21.     Each of us, acting in our capacity as duly appointed Interim Co-Lead Counsel, actively and continuously represented the Settlement Class Members throughout the mediation and continued settlement negotiations. Individually and collectively, we have extensive experience in class actions in general and data breach litigation in particular.  *See* Dkt. 120 (appointing Interim Co-Lead Counsel) and Dkt. 78-1 through 78-4 (firm resumes attached as

exhibits to motion for appointment as Interim Co-Lead Counsel). Wawa, too, was represented by highly qualified and experienced counsel.

22.     Based on the information obtained at the mediation, our independent investigation of the relevant facts and applicable law, our review of the data security reports and other documents produced by Wawa, and our broad experience with other payment card and other data breach cases, we determined that the Settlement being presented to the Court for approval is fair, reasonable, adequate, and in the best interest of the Settlement Class. Moreover, Judge Welsh stated in her Declaration: "[F]rom an experienced mediator's perspective, the negotiated settlement produced by the mediation process represents a thorough, deliberative, and comprehensive resolution that will benefit class members through meaningful relief."  Welsh Decl. ¶ 17.

## The Settlement Agreement

23.     The Settlement Agreement defines the proposed Settlement Class as:

> All residents of the United States who used a credit or debit card at a Wawa location at any time during the Period of the Data Security Incident of March 4, 2019 through December 12, 2019. Excluded from the Settlement Class are Wawa's executive officers and the Judge to whom this case is assigned.

S.A. ¶ 28. Wawa estimates that there are approximately 22 million class members.

24.     Under the Settlement, Wawa will provide up to $9 million in Wawa gift cards and cash to Consumer Track class members. The $9 million will be allocated to three tiers of class members.

a.     Tier One consists of customers who used a payment card at Wawa during the Period of the Security Incident, did not experience a subsequent fraudulent transaction on their card, and spent time monitoring their accounts as a result of the

6

incident. Those customers may receive a $5 Wawa gift card. Total claims in Tier One are subject to a $6 million cap and a $1 million floor. S.A. ¶ 36.a.

b.      Tier Two consists of customers who experienced an actual or attempted fraudulent transaction on a card after using it at Wawa during the Period of the Security Incident and spent time addressing the fraudulent transaction or otherwise monitoring their account. Those customers may receive a $15 Wawa gift card. Total claims in Tier Two are subject to a $2 million cap.  S.A. ¶ 36.b.

c.      Tier Three consists of customers who have actual out-of-pocket monetary damages in connection with an actual or attempted fraudulent transaction reasonably attributable to the Data Security Incident. Out-of-pocket expenses may include items such as unreimbursed fraud charges, bank fees, replacement card fees, late fees from transactions with third parties that were delayed due to fraud or card replacements, credit freeze fees, parking or other transportation expenses for trips to a financial institution to address fraudulent charges or receive a replacement payment card, and other expenses reasonably attributable to the Data Security Incident. Those customers may receive a cash payment equal to their out-of-pocket expenses up to $500. Total claims in Tier Three are subject to a $1 million cap. S.A. ¶ 36.c.

25.    The Claim Forms require that Class Members provide reasonable documentary proof of their Wawa purchase and, if applicable, any resulting fraudulent charges or out-of-pocket costs. S.A. ¶ 36 and Ex. A to S.A.  Class Members can submit their claims and upload supporting documentation directly to the Settlement Website (*see* paragraph 32.a. below) or mail claims and documentation to the Settlement Administrator. *Id.*

26.    The Wawa Gift Cards provided as compensation to Tier One and Tier Two claimants will be fully transferable, will not expire in less than one year, and will be usable toward the purchase of any item (including fuel if the purchase is completed inside the store) sold at Wawa stores, excluding cigarettes and other tobacco or nicotine delivery products. Wawa Gift Cards can be used multiple times if the initial transaction is less than their full face value. S.A. ¶ 33.

27.    Wawa Gift Cards are especially valuable to recipients.  Among other things, Wawa informed us that:

    a.    Wawa maintains an especially loyal base of regular customers who routinely make repeat purchases at its 900+ stores;

    b.    Wawa's gift cards have a 97.2% usage rate in the past two years based on dollars, meaning that of all the dollars loaded onto Wawa gift cards, 97.2% of those gift card dollars are redeemed; and

    c.    More than 3,000 products sold in Wawa convenience stores cost less than $5.00 and 78% of the products Wawa sells are below that threshold.

28.    In addition to this direct relief to the class, Wawa agreed to implement various injunctive measures aimed at strengthening its data security environment governing payment card transactions. Among other things, Wawa agreed to retain a qualified security assessor on an annual basis to assess compliance with PCI-DSS requirements and issue a Report on Compliance that evidences compliance with all such requirements; conduct annual penetration testing; operate a system that is designed to encrypt payment card information and complies with Europay, Mastercard, and Visa ("EMV") security procedures at the point-of-sale terminals in Wawa stores; operate a system that implements EMV security procedures at the point of sale

terminals at Wawa fuel pumps; and maintain written information security programs, policies, and procedures. These security enhancements will be in place for a period of two years, and Wawa's Counsel will provide Class Counsel with semi-annual updates (or less frequently if agreed upon by Class Counsel) during the two-year period in which it will implement these measures. S.A. ¶¶ 38, 40, 41. The Parties have agreed that the injunctive relief and Wawa's improvements to its data security posture is valued at no less than $35 million. S.A. ¶ 39. These new security enhancements are designed to prevent a future breach and have been verified in confirmatory discovery performed by Co-Lead Counsel. These enhancements will benefit any future Wawa customer; class members do not need to submit a claim to receive the benefits of this portion of the settlement.

29.     If the Court approves the Settlement, all Settlement Class Members will release their claims arising out of the Data Security Incident and all of the consumer class actions filed against Wawa related to the Data Security Incident will be dismissed with prejudice.

30.     There are no additional agreements among the Parties outside of the Settlement Agreement.

**Notice Plan and Settlement Administration**

31.     Our settlement negotiations also addressed notice. Wawa represented that neither it nor its agents have contact information sufficient to provide direct mail or email notice to Settlement Class Members. S.A. ¶ 54. This is consistent with Class Counsel's experience in other payment card data breach class actions.

32.     After extensive negotiations regarding effective notice to the proposed class, we and Wawa agreed to the following multi-faceted notice program:

        a.      *In-Store Notice*. Wawa will post signs concerning the Settlement at all of

its stores and fuel dispensers for four consecutive weeks ("Store Notice"). S.A. ¶ 55.b.

The Store Notice will include a QR or other code that customers can scan with a

smartphone or other device. Doing so will direct customers to the Settlement Website,

which will provide access to electronic versions of the Claim Forms and Long Form

Notice. *Id.* True and correct copies of the proposed Store Notices are attached as Exhibit

C to the Settlement Agreement. During our negotiations, Wawa estimated that more than

60 million customers enter its stores or use its fuel pumps during an average four-week

period, even during the pandemic and quarantine. It also explained that its customers are

highly likely to be repeat customers. The Store Notice will reach more than 60 million

Class Members during the claim period, a number that is likely three times the number of

Class Members. Therefore, the Parties agreed that posting notice of the Settlement in

stores and at fuel dispensers will be highly effective in providing notice of the Settlement,

and in fact is the most effective means of disseminating notice to Class Members.[2]

   b. *Settlement Website.* The Settlement Administrator will establish and

maintain a website dedicated to the Settlement:

www.WawaConsumerDataSettlement.com. The Settlement Website will provide detailed

information about the Action, the Settlement, Class Members' rights and options, and

instructions on, and deadlines for, filing a claim, objecting to the Settlement, and opting

out of the Settlement Class. Class Members will be able to access and download

important documents from the Settlement Website, including the Long Form Notice,

---

[2] *See, e.g., In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-02807-JSG
(Dkt. 145), slip op. at 5-6 (N.D. Ohio Dec. 20, 2018) (approving notice plan that omitted
individualized direct notice and included signs in affected stores, an announcement on
defendant's website, and detailed notice on a settlement website) (copy attached hereto as
Exhibit 3).

Settlement Agreement, and Claim Forms. S.A. ¶ 55.a. Class Members who cannot or do not wish to download documents from the Settlement Website can ask the Settlement Administrator to send a copy by mail or email.

      c.    *Wawa Website Link to Settlement Website*.  Wawa will post a link to the Settlement Website on its website, www.wawa.com. S.A. ¶ 55.a. Wawa initially disclosed the Data Security Incident on its website on December 19, 2019, and information about the incident has been available on the website ever since. Wawa stated that its website has about 18,400 visits each day, ensuring wide dissemination of notice to Wawa's customers.

      d.    *Press Release*.  Wawa will issue a press release announcing the Settlement and directing Settlement Class Members to the Settlement Website for information about how to make a claim for compensation. S.A. ¶ 55.c. A true and correct copy of the press release is attached as Exhibit D to the Settlement Agreement. The press release that Wawa issued on December 19, 2020 disclosing the Data Security Incident led to significant media coverage.[3] We expect that media coverage after issuance of the Settlement press release will encourage Class Members to visit the Settlement Website to learn more about their rights and options.

33.    The proposed Long Form Notice, which is attached as Exhibit B to the Settlement Agreement, clearly describes the proposed Settlement, the benefits available to Settlement Class Members under the Settlement, the scope of the release, and the binding effect of a class judgment; the definition of the Settlement Class; how to file a claim for a Gift Card or cash

---

[3] *See, e.g.,* Wawa Faces Wave of Lawsuits in Aftermath of Massive Data Breach. https://www.inquirer.com/business/wawa-data-breach-class-action-lawsuit-20191226.html.

reimbursement; Settlement Class Members' right to enter an appearance through an attorney, object to the settlement, or exclude themselves from the Settlement Class, and the time and manner for doing so; the date and time of the Fairness Hearing; and information about the separate fund of $3.2 million to be used for Service Awards of up to $1000 for each Class Representative, reimbursement of counsel's expenses, attorneys' fees, and settlement administration costs that the Court may award.

34.     The Settlement also creates a straight-forward procedure for Class Members to claim their Wawa Gift Cards or cash reimbursements for out-of-pocket expenses or losses. Class Members can submit their claims by mail or online through the Settlement website. If submitting a claim through the Settlement Website, Class Members can upload their supporting documentation with their claim.

35.     The Motion requests appointment of KCC LLC as Settlement Administrator. After soliciting and reviewing bids from several companies providing class action administration services, we determined that KCC's bid was the most competitive, taking into consideration the services to be provided and our prior experience with KCC in other matters.

36.     KCC has extensive experience administering class action settlements, including similar consumer data breach settlements. *See* Declaration of Carla Peak Regarding Settlement Notice Program ("KCC Decl.") (attached hereto as Exhibit 4) ¶¶ 4, 6.

37.     In addition to establishing and administering the Settlement Website, the Settlement Administrator will assist with the Notice Program, conduct claims administration services as described in the Settlement Agreement, and provide an automated call center to address any questions Class Members may have.  S.A. ¶¶ 42-52.

**<u>Service Awards, Settlement Administration Expenses,</u>**
**<u>and Attorneys' Fees and Expenses</u>**

38.     At the end of the mediation, after the Parties had agreed on the substantive terms for relief for the Class, we broached the topic of attorneys' fees. Judge Welsh assisted the Parties in coming to agreement that Wawa will make a separate lump sum payment of $3.2 million to be used for settlement administration services, Service Awards to the thirteen Class Representatives named in the Complaint and to Kasan Laster (the proposed Class Representative in a state court action against Wawa arising from the Data Security Incident[4] and stayed pending the outcome of settlement negotiations in this action), and attorneys' fees and reimbursement of expenses, as may be awarded by the Court.

39.     The Motion seeks Service Awards of $1,000 to each of the Class Representatives (including Mr. Laster). Each of them has been actively involved in the litigation of this Action. All have produced documents and reviewed and approved the proposed Settlement. They have no interests that conflict with those of the Settlement Class.

40.     KCC estimates that settlement administration expenses will be approximately $73,885. KCC Decl. ¶ 12.

41.      Our firms have devoted significant time and financial resources to the litigation despite the uncertainty of prevailing on the merits and establishing damages, as have our co-counsel assigned to informal committee positions and counsel in the *Laster* action. Fifteen days before the deadline for objecting to or opting out of the Settlement, we will apply for attorneys' fees and reimbursement of expenses. The amount requested for fees will constitute a significant negative multiplier of our and our co-counsel's aggregate lodestar.

---

[4] *Laster v. Wawa, Inc.,* No. BUR-L-000037-20 (N.J. Superior Court).

42.     As of 12/31/2020, counsel's expenses total $39,619.05. They were incurred primarily for expert fees, filing fees, investigative work, copying costs, and Plaintiffs' share of the mediator's fees.

43.     We will post the motion and supporting materials on the Settlement Website so that they can be easily accessed by any interested Class Member.

44.     Attorneys' fees will not diminish the settlement funds available for the Class because any attorney fees and expense reimbursement awarded by the Court will be paid out of the separate $3.2 million fund that also will be used for litigation expenses, settlement administration fees, and service awards to the Class Representatives. The $3.2 million fund will be paid directly by Wawa, not taken from a common fund available to the class.

In accordance with 28 U.S.C. § 1746, we declare under penalty of perjury that the above is true and correct.

Executed this 17th day of February, 2021.

Sherrie R. Savett

Roberta D. Liebenberg

Benjamin F. Johns

Linda P. Nussbaum