# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION<br><br>*This document relates to: Consumer Track* | Case No. 19-6019-GEKP<br><br>Class Action |

### DECLARATION OF HON. DIANE M. WELSH (RET.) OF JAMS IN SUPPORT OF PROPOSED CLASS SETTLEMENT

I, Diane Welsh, hereby declare as follows:

1. I submit this Declaration in my capacity as the mediator of a proposed class settlement of the above-captioned class action brought by the Consumer Track Plaintiffs against Defendant Wawa, Inc. ("Wawa").

2. I have been asked to provide this Declaration in support of preliminary and final approval of the proposed class action settlement that was negotiated under my supervision between the Consumer Track Plaintiffs and Wawa. As will be described in more detail below, the negotiations between the parties were extensive, hard fought, conducted at arm's length, and were performed in good faith without collusion or other improper conduct.

3. I have personal knowledge of the facts stated herein from my role as the mediator of the settlement negotiations, and I am competent to testify to the matters set forth in this Declaration.

4. I served as a Magistrate Judge in the U.S. District Court for the Eastern District of Pennsylvania from 1994 to 2005. Thereafter, I became a mediator with JAMS. As a Magistrate Judge and JAMS neutral, I have successfully resolved over 5,000 matters covering virtually

every type of complex dispute. Most relevant here, I have substantial experience resolving class actions of all types, including consumer class actions and those involving data breaches.

5. I set forth my background to provide context for the statements that follow, and to demonstrate that my perspective on the settlement in this matter is based upon significant experience in the resolution of complex litigation of this type.

6. I was engaged in the fall of 2020 through JAMS to serve as a mediator in this case. Before the mediation session, I corresponded with the parties' counsel to discuss the general issues in the case and the logistics for the mediation.

7. At my request, the parties exchanged detailed mediation statements in advance of the mediation. Their submissions addressed the factual issues in the case, key legal issues including standing, damages, class certification, and overall data breach precedent in this Circuit and beyond, and the parties' settlement proposals. I closely reviewed the mediation statements and the Consolidated Complaint, and became familiar with the nature of the claims and defenses asserted.

8. The mediation session took place over almost twelve hours on September 15, 2020 via Zoom. The mediation was attended by all four Co-Lead Counsel for the class, other attorneys from their offices, Wawa's outside counsel, and Wawa's General Counsel. Throughout the day I conducted joint sessions with all participants, as well as breakout sessions with Plaintiffs and Wawa individually. During the sessions, counsel made multiple presentations regarding various factual and legal issues. There were extensive discussions of the strengths and weaknesses of the parties' respective positions concerning the merits, damages, and possible resolutions.

9. The negotiations also entailed considerable back-and-forth between the parties regarding numerous offers and demands. Throughout the mediation process, the parties engaged in extensive adversarial negotiations over all core issues in the case. The facilitated negotiations were lengthy, principled, exhaustive, informed, and sometimes contentious but always professional.

10. The negotiations involved highly qualified attorneys with extensive experience and expertise in complex class actions in general, and data breach litigation in particular. At all times, Class Counsel zealously represented the proposed class. They passionately expressed a desire for the settlement to provide meaningful benefits to the class while at the same time recognizing the significant risks they faced if they proceeded with the litigation, as well as the substantial costs to pursue the matter through discovery, class certification, trial, and appeal. Internal and external counsel for Wawa likewise zealously represented their client. They pushed back on many of the demands advanced by Class Counsel and presented the obstacles the Class would face in actual litigation, while at the same time recognizing the risks and burdens of such litigation.

11. As a result of the extensive negotiations that I mediated, the parties reached a compromise and settlement. Wawa has agreed to provide up to $9 million in cash and Wawa gift cards to approximately 22 million Consumer Track class members. The $9 million will be allocated to three tiers of class members. Tier One consists of consumers who used a payment card at Wawa during the breach period but did not experience a subsequent fraudulent charge on the card. Those consumers may receive a $5 Wawa gift card. Total claims in Tier One are subject to a $6 million cap and a $1 million floor. Tier Two consists of consumers who did experience a subsequent fraudulent charge on the card and the charge was reversed by their card-

issuing bank. Those consumers may receive a $15 Wawa gift card. Total claims in Tier Two are subject to a $2 million cap. Tier Three consists of consumers who incurred out-of-pocket losses from the Wawa breach, such as unreimbursed fraud charges or costs spent for card replacement fees, late fees from transactions with third parties that were delayed due to fraud or card replacements, credit freeze fees, and the like. Those consumers may receive up to $500 in cash for documented losses. Total claims in Tier Three are subject to a $1 million cap.

12. Throughout the negotiations, Wawa emphasized that Wawa customers are far more likely to be repeat customers and, thus, a class settlement involving gift cards would be a logical and effective way to compensate customers. Wawa agreed that the gift cards would be fully transferrable and good for at least one year. This was persuasive to me as a mediator.

13. In addition to this direct relief to the class, Wawa has also agreed to implement various injunctive measures aimed at strengthening its data security environment governing payment card transactions. Among other things, Wawa has agreed to operate a system that is designed to encrypt payment card information; operate a system that implements Europay, Mastercard, and Visa ("EMV") security procedures at the point of sale terminals at Wawa fuel pumps; retain a qualified security assessor on an annual basis to assess compliance with PCI-DSS requirements; conduct annual penetration testing; and maintain written information security programs, policies, and procedures. The settlement provides that these security enhancements will be in place for a period of two years, and will be the subject of informal discovery by Class Counsel. The value of these security enhancements are significant: I understand that the parties have agreed that Wawa's improvements to its data security posture brought about as a result of Plaintiffs' lawsuit is valued at no less than $35 million.

14. During the negotiations, the parties also specifically discussed notice. Wawa explained that it does not maintain email or mailing addresses for the customers who may have been affected by this data security incident, which would make email or direct mail notice impossible. As a result of back-and-forth extensive discussions, the parties agreed that in-store notice would be the most effective way to reach Wawa's customers, who are far more likely to be repeat customers, unlike many other retailers' customers. It was further agreed that Wawa would post signs concerning the Settlement at all of its stores and fuel dispensers for four weeks. It was agreed that such signs would include a QR code that customers could scan to obtain information with respect to the Settlement and how to submit a claim form. Wawa estimates that more than 40 million customers enter its stores or use its fuel pumps during an average four week period, even during the pandemic and quarantine. Wawa also agreed to place on its website a link to the Settlement Website as an additional effort to provide customers with notice of the settlement. Wawa also agreed to issue a press release about the Settlement that would be agreed upon by the parties.

15. Wawa has also agreed to make a separate $3.2 million lump sum payment to be used to pay Class Counsels' attorneys' fees and litigation expenses and the Settlement Administrator's fees. This lump sum payment was agreed to with my assistance, at the end of the mediation after the substantive terms for the class relief were already agreed upon.

16. In my opinion, the proposed settlement was the result of fair, thorough, and fully-informed arm's-length negotiations between highly capable, experienced, and informed parties and counsel. The settlement represents the parties' and counsel's best efforts and judgments after thoroughly investigating the case, considering the risks, strengths, and weaknesses of their

respective positions on substantive issues, the risks, burdens, delays and costs of continued litigation, and the best interests of their respective clients.

17. I believe that the proposed settlement reflects the risks and potential rewards of the claims being settled. Although the Court will need to make its own determination as to the proposed settlement's fairness under Fed. R. Civ. P. 23(e)(2), I can say that, from an experienced mediator's perspective, the negotiated settlement produced by the mediation process represents a thorough, deliberative, and comprehensive resolution that will benefit class members through meaningful relief, and avoids the considerable risks and costs inherent in class action litigation.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to be best of my knowledge.

Executed on January 14, 2021.

_Diane M. Welsh_
Hon. Diane M. Welsh (Ret.)