## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE :WAWA, INC. DATA SECURITY LITIGATION | Lead Case No. 2:19-cv-06019-GEKP CLASS ACTION<br><br>This filing relates to:<br>Employee and Consumer Tracks |

## MEMORANDUM OF LAW OF EMPLOYEE TRACK PLAINTIFFS IN OPPOSITION TO CONSUMER PLAINTIFFS' "UNOPPOSED" MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

Donald E. Haviland, Jr., Esquire
William Platt, Esquire
**Haviland Hughes**
201 South Maple Way, Suite 110
Ambler, PA 19002
(215) 609-4661 Telephone
(215) 392-4400 Facsimile

*Counsel for Plaintiffs, Shawn and Karen McGlade,*
*and Interim Class Counsel for the Class of Employee Plaintiffs*

## I.    INTRODUCTION

The Court should deny preliminary approval to the proposed "consumer" class settlement for several reasons, not the least of which is the lack of clarity as to whether the parties are seeking to compromise and extinguish the rights of Shawn and Karen McGlade, and the tens of thousands of other Employee Track Plaintiffs they seek to represent, by their proposed class settlement.[1]

As the Court well knows, undersigned counsel represent the McGlades and were appointed Interim Class Counsel for the proposed class of Employee Plaintiffs.  Dkt. No. 120.  Despite this, no representative of the Employee Plaintiff Class was invited to participate in the mediation conducted with the Honorable Diane M. Welsh (Ret.) of JAMS in September 2020.[2]  Only the Court-appointed Interim Co-Lead Counsel for the Consumer Track Plaintiffs participated.[3]  As discussed below, without such separate representation of Wawa employees, the proposed settlement cannot meet the requirements of adequacy and fairness in relation to the proposed compromise of employees' rights and interests, which far exceed those of consumers under Pennsylvania law.[4]

---

[1] By their introduction, "Plaintiffs" appear to confine themselves to "Plaintiffs **in the Consumer Track of this litigation**" who have "reached an agreement to resolve **this class action**" with Defendant Wawa, Inc. ("Wawa").  Memorandum of Law in Support of Consumer Plaintiffs' Unopposed Motion for an Order Preliminary Approving Class Action Settlement, Provisionally Certifying Settlement Class, and Directing Notice ("Mem. in Support"), Dkt. No. 180 at 1 (emphasis supplied).  However, the definition of the proposed "Settlement Class" in the Settlement Agreement is not so limited.  Dkt. No.181-1 at 7.

[2] *See* Joint Declaration of Interim Co-Lead Counsel in Support of Consumer Plaintiffs' Unopposed Motion for an Order Preliminary Approving Class Action Settlement, Provisionally Certifying Settlement Class, and Directing Notice ("Joint Declaration"), Dkt. No. 181, at ¶¶ 15-22 (describing mediation).

[3] *See* Joint Declaration at ¶ 21 ("Each of us, acting in our capacity as duly appointed Interim Co-Lead Counsel, actively and continuously represented the Settlement Class Members throughout the mediation and continued settlement negotiations.").

[4] *See* Dkt. No. 149 at 4-5, 18, 22 and Dkt. No. 166 at 4-7 (explaining the duties owed by Wawa to its employees under the Pennsylvania Supreme Court's decision in *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018)); *see also*, Nov. 12, 2020 Hrg. Tr. at 18:14-17 (wherein the Court pressed Wawa's counsel, "You don't think *Dittman* is exclusively an Employer/Employee case?  Mr. Parks: Your Honor, I think it can be read that way and certainly there are cases that are read that way….").

Even if employees had been separately represented, the resultant proposed settlement of their claims would not be fair, reasonable or adequate for several reasons.

First, the exclusive settlement consideration – Wawa Gift Cards – does not pass muster under Section 3 of the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (CAFA), governing such non-cash class action settlements.

Second, Wawa is not actually committed to paying the full, expressed amount of the settlement – "up to $9 million in cash and Gift Cards".[5]  Instead, it appears that Wawa requires Settlement Class members to provide email addresses for receipt of "electronic Wawa Gift Cards", thereby assuring that the Class settlement proceeds will be paid only on a claims-made basis (upon the surrender of one's personal email account), while the attorneys' fees will be paid all in cash up front.

Third, there is zero differentiation among the "three tiers of relief to Class Members"[6] between Wawa employees in the proposed Settlement Class (who presumably live and work only in the 6 states and the District of Columbia where Wawa's affected stores are located) (the "Wawa States") and the millions of Wawa consumers located in the 50 United States and the District of Columbia.  This is despite the variation of common law negligence standards and the statutory consumer fraud laws in those Wawa States versus the laws of the other states.[7]

Fourth, no additional consideration appears to have been offered to the members of the Employee Class whose stronger claims under Pennsylvania law are entitled to greater consideration in

---

[5] See Joint Declaration (Dkt. No. 181-1), Exhibit 1, Exhibit B (Class action notice).

[6] Mem. in Support at 1.

[7] It is noteworthy that the Consumer Plaintiffs' Consolidated Amended Class Action Complaint, Dkt. No. 132, established 7 separate sub-classes for consumers in Delaware, Florida, Maryland, New Jersey, Pennsylvania, Virginia and the District of Columbia, but the proposed settlement lumps all consumers and employees wherever located into one, undifferentiated "nationwide class".

light of Wawa's duty to its employees under the Pennsylvania Supreme Court's decision in *Dittman*[8].

Interim Class Counsel for the Employee Plaintiffs argued to this Court last year against Wawa's

Motion to Dismiss, even while the Consumer Class Plaintiffs were still negotiating the final terms of

their settlement and were arguing ***against*** the separate interests of the Employee Class members.[9]

Finally, the proposed "important injunctive relief designed to prevent unauthorized intrusion in

Wawa's data systems in the future"[10] fails to adequately protect employees from a future data breach

affecting their "personal identifiable information" (PII). Instead, the proposed changes to Wawa's data

security systems focus almost exclusively on upgrades to its "point of sale" (POS) systems and

payment card processing at its store locations.[11]  As Wawa well knows, the breaches of its data security

were not limited to its POS systems.  Knowing this, Wawa only shared with Consumer Plaintiffs a

***preliminary*** report on the Data Security Incident" from December 2019 – 9 months prior to the

mediation.[12]  The final report was not shared with settling Plaintiffs until ***three weeks after*** the

---

[8] *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018)

[9] *See* Nov. 10, 2020 Hrg. Tr. at 8:19-25 (The Court: "As I understand is, there has been a tentative settlement with respect to the Consumer Track cases, so although I see Ms. Savett here, I'm not guessing I'm going to be hearing much from you, is that right? Ms. Savett: Well, our only position today will be a joinder in a part of the Defendant's motion to dismiss or stay the Employee case in that is duplicates the consumer case."); 81:5- ("Ms. Savett: We believe [McGlade] misreads *Dittman* and it doesn't make Employees on a higher position than Consumers…".)  As discussed below, Consumer Class counsel's adversity to the Employee Class members' position completely disarmed them from seeking to represent them during the September mediation leading to the proposed settlement.

[10] Mem. in Support at 8.

[11] *Id*. ("Wawa agrees to: …Operate a system that encrypts payment card information and complies with Europay, Mastercard, and Visa ("EMV") security procedures at the point of sale terminals in Wawa stores [and] Operate a systems that implements EMV security procedures at the point of sale terminals at Wawa fuel pumps".)

[12] Joint Declaration at ¶ 11 ("As agreed during our meet and confer sessions, Wawa produced 3,596 pages of documents to Plaintiffs through a series of rolling productions.  The documents included a preliminary report on the Data Security Incident…").

mediation, and revealed details of a second, prior data breach.[13]

An even greater problem with the proposed settlement of the Employee Track claims is the plan for class notice. Current and former Wawa employees are not being provided the best practicable notice in the form of first class mail to their home addresses, as required.[14] Instead, settling Plaintiffs relied exclusively on Wawa's "represent[ation] that neither it nor its agents have contact information sufficient to provide direct mail or email notice to Settlement Class Members." Mem. in Support at 29 n.12 (citing Joint Declaration ¶ 31 and Settlement Agreement ¶ 54). This is patently false at it concerns Wawa employees, who are required by Wawa to provide their home addresses as a condition of their employment. Dkt. No. 131 at ¶ 13, 18. As a result, the Notice Plan is fatally infirm.[15]

Further, under the same CAFA analysis that applies to the proposed non-cash Class recovery, Consumer Class Counsel's fee request must be scrutinized at the preliminary approval stage. Given that the parties chose to settle for non-cash consideration only, as a matter of law, Consumer Class Counsel's requested attorney's fees may not be based on a percentage-of-recovery, but only on either the face value of the Wawa gift cards actually *redeemed* by Class members or a reasonable lodestar calculation. Because Consumer Class Counsel seek an award of $3.2 million for less than one year's worth of work, such fee request deserves greater scrutiny than the parties allow in their moving papers,

---

[13] Joint Declaration at ¶ 18 ("At the end of the mediation sessions, the Parties reach an agreement in principle to resolve this proposed class action (the 'Settlement')."); 20 ("During this period of post-mediation negotiations, Wawa received and produced to Plaintiffs **the final report** regarding the Data Security Incident and an Amended Report."); *see also*, Nov. 10, 2020 Hrg. Tr. at 66:13 ("Haviland: I didn't get the instant report which confirmed that the computer systems at Wawa, not just the POS systems, were compromised and, in fact, it talks about an HR system being compromised.")

[14] Curiously, the settling parties cite the Supreme Court decision in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950), but they completely ignore the High Court's requirement of first class mail notice to identifiable class members for whom addresses are known. Mem. in Support at 29.

[15] Other aspects of the proposed Notice Plan are materially deficient under the circumstances of this case, such as the exclusive in-store, placard notice (which fails to account for the decline in Wawa store traffic likely due to the pandemic and decline in Wawa customer loyalty after the data breach). *See* discussion below at Section E.

especially since the employees' claims are being compromised without adequate compensation.

For all these reasons, this Court should deny preliminary approval to the settling parties' proposed consumer class settlement, and the proposed certification of a sweeping settlement class that seeks to include current and former Wawa employees. The parties should be ordered back to the bargaining table to craft a narrower settlement that pertains only to the Consumer Class members the settling Plaintiffs were charged by this Court to represent. If Wawa would like to try to end the litigation between itself and its current and former employees, it should agree to negotiate separately with the Court-appointed Interim Class Counsel for the Employee Track Plaintiffs.

## II.    REQUIRED INFORMATION CONCERNING OBJECTORS

The Settlement Agreement calls for an objector to provide certain information with their objections. Dkt. 181-1 at 19-20. These requirements are obviously not yet binding because the Settlement Agreement has not been approved by the Court. Nevertheless, Employee Track Plaintiffs provide the following information:

a.  **Settlement Class Members'[16] full name**: Shawn and Karen McGlade

b.  **Settlement Class Members' signature**: See undersigned counsel's signature.

c.  **Information identifying the objector as a Settlement Class Member**: See footnote 5 below.

d.  **Grounds for Objection**: See Section III below.

e.  **Legal support for the Objection**: See Section III below.

f.  **Copies of any documents in support of the Objection**: See Exhibits attached to the Declaration of Donald E. Haviland, Jr. in Support of Opposition to Settlement ("Haviland

---

[16] While it is unclear whether the McGlades and other members of the Employee Track Class are included in the proposed settlement, if that is what the parties intend by their Settlement Agreement, then the McGlades have standing to object and hereby do so.

Declr.")

g. **Whether the Objection applies only to the objector, to a specific subset of the class, or the entire class**: The McGlades' objections are stated on behalf of themselves, and the entire Class of Employee Track Plaintiffs.

h. **Counsel representing the Objectors**: Haviland Hughes

i. **Whether the Objector and/or the Objector's counsel intend to appear at the Final Approval Hearing**: Counsel for the McGlades intend to appear at the any Final Approval Hearing. Whether the McGlades will appear will be determined when it closer to the

j. **A list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel to any proposed class action settlement in the past 5 years**: None.

## III.    SPECIFIC OBJECTIONS

The Employee Track Plaintiffs interpose specific objections to the proposed Consumer Class settlement largely because of the improper attempt by the settling parties to sweep into their privately negotiated deal – of which the Employee Track Plaintiffs were not a part -- the meritorious claims of all current and former Wawa employees represented by the McGlades in this litigation.

As the Court well knows, the McGlades sued on January 10, 2020 on behalf of themselves and a putative Class of all current and former Wawa employees for their separate injuries as a result of the Wawa data breach. *See generally* Case No. 2:20-cv-00248-GEKP, Complaint, Dkt. No. 1. These injuries were materially different from those of ordinary consumers insofar the confidential "personal identifiable information" ("PII") of Wawa employees was provided to Wawa and stored on its internal, corporate computers as a condition of employment by Wawa. *Id*. at ¶¶ 5-6. Unlike ordinary consumers, Wawa employees "entrusted this confidential information" to Wawa with the reasonable expectation that such PII would be safeguarded and protected. *Id*. at ¶¶ 6, 13. But Wawa betrayed that

trust when it allowed its internal corporate computers to be compromised by as-yet-unknown

perpetrators which we now know began in 2018 – not 2019, as publicly reported.  *Id*. at ¶¶ 6-7.[17]

As the McGlades declared in their initial filing:

[t]hrough this lawsuit, the thousands of affected Wawa employees have a voice in Shawn and Karen McGlade.  The McGlades are the much-needed "whistleblowers" in this fight against Wawa to expose its wrongdoing, beyond what Wawa has publicly admitted to date. Through their brave decision to step forward and sue Wawa, where no active employee could reasonably be expected to do so, Wawa's … egregious, gross negligence in allowing cybercriminals to steal the PII of Wawa employees, will be brought to light and properly adjudicated in the Court of law.

*Id*. at ¶ 14.  But through its settlement with Consumer Class counsel, Wawa seeks to silence that voice.

Why would they do this? The answer is plain: the McGlades alone have standing to raise concerns

about the security of Wawa's ***internal*** computer systems, not just the compromise of Wawa's POS

systems at its stores.

As discussed below, Wawa would like this Court to take at face value the "important injunctive

relief designed to prevent unauthorized intrusion in Wawa's data systems in the future", which the

settling parties tout as providing "no less than $35 million" in value to consumers.[18] In point of fact,

these "data systems" upgrades do not appear to address root cause of the initial data breach in 2018 –

the first of two data breaches -- which Wawa seeks to sweep under the rug.  Instead, the proposed

changes to Wawa's data security systems focus almost exclusively on upgrades to its "point of sale"

(POS) systems and payment card processing at its store locations which were compromised during the

second data breach in 2019.[19]  As Wawa well knows, the breaches of its data security were not limited

---

[17] *See* Nov. 10, 2020 Hrg. Tr. at 66:13 ("Mr. Haviland: I didn't get the instant report which confirmed that the computer systems at Wawa, not just the POS systems, were compromised and, in fact, it talks about an HR system being compromised.")

[18] Mem. in Support at 8.

[19] *Id*. ("Wawa agrees to: …Operate a system that encrypts payment card information and complies with Europay, Mastercard, and Visa ("EMV") security procedures at the point of sale terminals in Wawa

to its POS systems.  Knowing this, Wawa only shared with Consumer Plaintiffs a ***preliminary*** report on the Data Security Incident" from December 2019 – 9 months prior to the mediation.[20]  The final report was not shared with settling Plaintiffs until ***three weeks after*** the mediation, and revealed details of a second, prior data breach.[21]

This Court witnessed firsthand Wawa's attempt to conceal the truth about the compromise of its internal computer systems from the public.  At the hearing on Wawa's Motion to Dismiss, when Interim Class Counsel for the Employee Plaintiffs attempted to discuss with the Court the substance of Wawa's "incident" report to defend against Wawa's false accusations that the McGlades had no basis to allege the compromise of Wawa internal computer systems in their Complaint, Wawa's counsel immediately jumped up and declared:

> Objection.  We really can't get into the details.  That was blatantly wrong and incorrect, but we can't get into public detail here.

Nov. 10, 2018 Hrg. Tr. at 66:17-19.

If not now, then when?  Wawa cannot be permitted to skirt its obligations to protect the confidential employee PII entrusted to its care by throwing a $5 coupon at its employees and urging, "nothing to see here."  At some point, the truth must be revealed.  The public has a right to know.  Wawa employees have a right to know.  This Court has a duty to inquire that what Wawa is proposing in the way of "important injunctive relief" actually has value to the tens of thousands of affected Wawa

---

stores [and] Operate a systems that implements EMV security procedures at the point of sale terminals at Wawa fuel pumps".)

[20] Joint Declaration at ¶ 11 ("As agreed during our meet and confer sessions, Wawa produced 3,596 pages of documents to Plaintiffs through a series of rolling productions.  The documents included a preliminary report on the Data Security Incident…").

[21] Joint Declaration at ¶ 18 ("At the end of the mediation session, the Parties reach an agreement in principle to resolve this proposed class action (the 'Settlement').");  20 ("During this period of post-mediation negotiations, Wawa received and produced to Plaintiffs ***the final report*** regarding the Data Security Incident and an Amended Report.").

employees who work for Wawa.

Wawa claims its "Core Purpose" is to "value people" and to "do the right thing" and to "do things right". *Complaint,* Case No. 2:20-cv-00248-GEKP, Dkt. No. 1, at ¶ 47. The McGlades should be allowed to complete the task they undertook in filing this lawsuit to ensure that any proposed compromise of employee rights meets Wawa's stated goals.

**A. The Non-Cash Settlement Consideration Being Offered to Settlement Class Members – electronic Wawa Gift Cards – Must Be Examined Under the Provisions of the Class Action Fairness Act Governing "Coupon Settlements".**

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Proposed class settlements must be highly scrutinized because they mark the potential end of the litigation and the extinguishment of the rights of absent class members. *See In re GMC Pickup Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GMC Trucks*") ("Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. . . . The court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate.")[22] (citations omitted); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)(same); *See also, Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002)(holding district courts must "exercise the highest degree of vigilance in scrutinizing proposed

_____

[22] The Court in *GMC Trucks* set forth the oft-cited "nine-factor test" in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) "to help district courts structure their final decisions to approve settlement as fair, reasonable, and adequate as required by Rule 23(e)." 55 F.3d at 785. In addition to the "*Girsh* factors", the courts in this Circuit must also undertake "the *Prudential* considerations", involving "permissive inquiries which may be useful when analyzing a settlement", as well as the additional inquiries of *Baby Products*. 2016 U.S. Dist. LEXIS 99235 at *63-66 (E.D.Pa. July 29, 2016) (Kearney, J.) (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 322 (3d Cir. 1998) and *In re Baby Products*, 708 F.3d 163, 174 (3d Cir. 2013)).

settlements of class actions.");  Such heightened scrutiny is in addition to the "rigorous analysis" the Court must always bring to the decision whether to certify a class.[23]

 

    In reviewing proposed class action settlement agreements, this Court has observed on several occasions:

> The overall approval process for proposed class action settlement agreements generally proceeds in two steps. First, the court holds a preliminary approval hearing in order to (a) determine whether any obvious problems exist; (b) if necessary, determine whether the proposed class should be certified for settlement purposes; and (c) evaluate the parties' proposed plan for notifying class members of the settlement and their right to opt out or make claims against the settlement amount. Second, the court holds a final approval hearing, at which class members, having received notice of the proposed settlement, may voice any objections.
>
> The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." If, after consideration of those factors, a court concludes that the settlement should be preliminarily approved, "an initial presumption of fairness" is established.
>
> Because  no class settlement can exist without a class, if the reviewing court has not yet certified a class, it must determine whether the proposed settlement class should be certified for purposes of settlement, and the final certification decision is left for the final fairness hearing. The class must be "'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met.  The proposed class settlement must also satisfy the requirements of Federal Rule of Civil Procedure 23….

*Leap v. Yoshida*, 2015 U.S. Dist. LEXIS 17147 at *8-11 (E.D.Pa. Feb. 12, 2015)(citations omitted).

---

[23] *See generally, In re Hydrogen Peroxide Antitrust Litig*., 552 F. 3d 305 (3d Cir. 2008).  In the settlement context, however, the Court's otherwise "rigorous analysis" is even more exacting.  The Supreme Court, in its seminal decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), admonished that the discretion a district court has in certifying a class for settlement purposes does not permit a district court to ease the demands of Rule 23 of the Federal Rules of Civil Procedure.  To the contrary, a district court must apply "undiluted, even heightened attention to the requirements of Rule 23 in the settlement context." *Amchem*, 521 U.S. at 621; *See also Walker v. Liggett Group, Inc.*, 175 F.R.D. 226, 230 (S.D.W.V. 1997) ("*Amchem* decimated the notion of some circuits that Rule 23 requisites were relaxed in the settlement context").

While the settling parties "unopposed" Motion for Preliminary Approval provides a cursory review of these standards, several of the above prerequisites stand out in the context of the situation at bar.  First, as discussed herein, multiple "problems exist" in the manner in which the class settlement was reached, without regard to the rights of the separate Employee Track Plaintiffs and without involvement of their separate representation in this Court.  Second, the below discussion shows how fatally infirm the "parties' proposed plan for notifying class members" is due to its failure to employ either first class mail notice or publication notice modalities, the "best practicable" under the circumstances.  *See* Section E below.  Third, as to the Court's preliminary approval determination, there was insufficient discovery to enable the settling parties to reach the global compromise they seek to have the Court approve.  Indeed, as the necessarily limited discussion of the proposed injunctive relief reveals, at the time of the mediation when the final settlement was reached, the settling Plaintiffs did not have the final Wawa "Incident Report" by which to determine the full nature and scope of the data breach, and how it impacted Wawa employees.  Lacking such information, they had no basis to sign off on Wawa's proposed computer upgrades as adequate or complete.

The settling parties here also completely fail to address the standards governing their proposed non-cash settlement.  When settling parties in a class action choose to settle for no cash, but only coupons, vouchers or other non-cash equivalents, the settlement directly implicates requirements of the Class Action Fairness Act, 28 U.S.C. § 1712(e) (CAFA).

Section 1712 codifies Congress's effort to regulate coupon settlements.  That regulation takes two forms. The first invites increased judicial scrutiny of coupon settlements generally. § 1712(e); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653-54 (7th Cir. 2006); *True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010); S. Rep. No. 109-14, at 27 (stating that CAFA "requires greater scrutiny of coupon settlements"). The second involves a series of specific rules that govern the award of attorneys' fees in coupon class actions. § 1712(a)—(d); *see*

*also* Sarah S. Vance, <u>A Primer on the Class Action Fairness Act of 2005 ("Primer")</u>, 80 Tul. L. Rev. 1617, 1632-33 (2006) ("CAFA does not define 'coupon,' but it apparently envisions the award of something subject to redemption.").  Here, the settling parties fail to address either regulation, or the Court's required scrutiny of both the settlement consideration and the attendant request for attorneys' fees.[24]

Congress was passed CAFA in 2005 "primarily to curb perceived abuses of the class action device." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009).  One such perceived abuse is the "coupon settlement", where settling defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash.  *See generally* Vance, <u>Primer,</u> 80 Tul. L. Rev. at 1632-33; Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 Law & Contemp. Probs. 97, 102, 107-12 (1997).

As this Court well knows, the seminal decision in this Circuit pre-CAFA on the abuses of such "coupon settlements" is the well-reasoned decision of the late Chief Judge Becker in *GMC Trucks*.[25] Surprisingly, the settling parties make no mention of *GMC Trucks* or CAFA in their moving papers, as if avoiding mention can avoid appropriate judicial scrutiny.

In the wake of the passage of CAFA, the appellate courts have observed that "Congress was rightfully concerned with such settlements: by decoupling the interests of the class and its counsel,

---

[24] Due to the settling parties' failure, the Employee Track Plaintiffs object to the requested attorneys' fee award.  *See* Section F below.

[25] As the Third Circuit observed, there are "special difficulties the court encounters with its duties under Rule 23(e) in approving settlements where negotiations occur before the court has certified the class. Because of such difficulties, many courts have required the parties to make a higher showing of fairness to sustain these settlements." *Id*. at 805 (citations omitted).  The Court rejected the proposed "coupon" settlement because of, *inter alia*, "the different abilities (not inclinations) of class members to use the settlement." *Id*. at 808.  Indeed, relevant to the instant analysis, the Court observed "the certificate settlement might be little more than a sales promotion for GM, in just the way that the *Bloyed* Court characterized the settlement as a 'tremendous sales bonanza' for GM." *Id*. at 809 (quoting *Bloyed v. General Motors Corp*., 881 S.W.2d 422, 431 (Tex. Ct. App. 1994)).

13

coupon settlements may incentivize lawyers to 'negotiate settlements under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorney's fees.'" *Feder v. Frank (In re HP Inkjet Printer Litig.)*, 716 F.3d 1173, 1177-78 (9ᵗʰ Cir. 2013) (*quoting* S. Rep. 109-14, at 29-30 (2005) and *citing* Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. Rev. 991, 991 (2002) ("Because class counsel are paid in cash, the attorneys have insufficient interest in ensuring that the settlement coupons confer value on the class.")).

 As one court has observed, the Ninth Circuit has a "narrower definition of 'coupon'" than other Circuit courts for purposes of employing CAFA scrutiny. *See Tyler v. Michaels Stores, Inc.*, 150 F.Supp. 3d 53, 58 (D. Mass. 2015).  Indeed, the Court in *Michaels Stores* observed that "[t]he Seventh Circuit, in contrast, has adopted a broader definition of 'coupon' … [holding] that $10 vouchers to RadioShack, although capable of being applied to Radioshack's entire product line (which includes some less-than-$10 items), are nonetheless 'coupons' under CAFA."  *Id*. at 59 (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 635-36 (7th Cir. 2014) (Posner, J.), cert. denied sub nom., *Nicaj v. Shoe Carnival, Inc.,* 135 S.Ct. 1429, 1919 L. Ed. 366 (2015)).  The Court looked to the reasoning of Judge Posner in concluding that non-cash payments constitute "coupons" for purposes of CAFA:

> Judge Posner, writing for the Seventh Circuit, rejected class counsel's proposed definition of "coupons" as restricted to certificates providing mere discounts, reasoning that neither *CAFA* nor common sense provides a compelling reason "for distinguishing among coupons that offer 10 percent, 50 percent, 90 percent, or 100 percent cash savings." He explained that *CAFA* paid special attention to coupon settlements because their nominal value can be much higher than their actual economic value to class members, and thus using nominal values could lead to unreasonably large fees to class counsel. Coupon settlements thus make it more difficult for district courts to assess the size of the benefit to the class, and more difficult to detect collusion between defendants and class  counsel, to the detriment of class members; this is especially so when (like in the instant case) defendants do not oppose the settlement.

*Id*. (citations omitted).  The Court reasoned further:

> when class members must transact business with the defendant to obtain the benefit of the settlement, the settlement "provides for a recovery of coupons" under *section 1712*. In other

14

words, coupons must be redeemed; conversely, if an award must be redeemed, it is a coupon. This is consistent with various dictionaries' approach to defining "coupon": they generally include a broad definition that requires the coupon-bearer to go to a particular store to receive an entitlement. This Court's broad definition is also consistent with the Congressional Committee's report on CAFA and its discussion of coupons.

*Id*.

This Court has scrutinized previous non-cash settlements similarly.  In *Rougie v. Ascena Retail Group*, involving the same counsel for defendants as here, this Court held that CAFA applies to vouchers for future defendant-store purchases offered in settlement:

> Congress did not define 'coupon' in the Act.  Its legislative history, including from the Senate Judiciary Committee, confirm a concern when "class members receive nothing more than promotional coupons to purchase more products from the defendants." The Act, by any reading, seeks to address "in-kind compensation" which may act as marketing tool for defendant retailers. Further, reading the Act to exclude this case would render the Act meaningless when over 95% of the settlement is paid in vouchers which are required to be redeemed at Justice Stores in one year or less.

2016 U.S. Dist. LEXIS 99235 at *84 (E.D.Pa. July 29, 2016) (Kearney, J.).  Unlike here, the subject settlement in the *Rougie* case involved a cash option because "[t]he parties agreed some consumers outgrew Justice Stores and may prefer a cash award rather than a credit or voucher toward a future purchase. The parties [thus] agreed to permit every class member a choice of cash or a voucher…"." *Id*. at *16.

Here, remarkably, given the fact that the Employee Track Class is represented by a former Wawa General Manager who was terminated and therefore has no desire to ever return to a Wawa store, the same lawyers as in *Rougie* fail to offer a cash option to Settlement Class members.  As a result, the proposed settlement should not pass muster under the heightened standards imposed by CAFA for all the reasons set forth herein.

**B. The Actual Settlement "Value" Being Offered by Wawa to Settlement Class Members' Claims Is Illusory As Wawa is Not Committed to Actually Paying the Purported $9 Million to Settle Claims of Its Employees, All of Whom Are Readily Ascertainable and Known to Have Purchased within the Class Period.**

It is noteworthy that Wawa is not actually committed to paying the full, expressed amount of the settlement – "up to $9 million in cash and Gift Cards".[26]  Instead, Wawa requires Settlement Class members to provide email addresses for receipt of "electronic Wawa Gift Cards", thereby assuring that the Class settlement proceeds will be paid only on a claims-made basis (upon the surrender of one's personal email account), with monetary caps for each of the three settlement "tiers".  As a result, Wawa is only committed to paying "up to $9 million" if a sufficient number of Class Members are eligible to claim, and in fact claim, against the three "tiers".

Importantly, no additional separate "tier" is established for Wawa employees whose stronger claims under Pennsylvania law are entitled to greater consideration in light of Wawa's duty to its employees under the Pennsylvania Supreme Court's decision in *Dittman*[27].  Instead, employees are lumped together in the amorphous "nationwide class" without regard to who they are, where they live or what they purchased.  *See* discussion *infra*.

Why does this matter?

If Wawa was sincere in its effort to properly compensate its affected employees for the compromise of their PII it could easily fund their Wawa accounts with the proper amount of compensation without requiring protracted claims administration.  As alleged in the McGlades' Complaint, Wawa provides its employees with discounts off in-store purchases.  Amended Complaint, Dkt. No. 131, at ¶¶ 14-16.  As a result, Wawa plainly knows which of its employees made purchases within the Class period using debit or credit cards.  Thus, Wawa already knows which of its employees

---

[26] *See* Joint Declaration (Dkt. No. 181-1), Exhibit 1, Exhibit B (Class action notice).
[27] *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018).

in 2019 qualify to be paid a share of the settlement proceeds.  But, Wawa refuses to simply pay its 34,000 current employees the minimal settlement proceeds to which they are entitled, because doing so would commit the company to actually paying $170,000 (34,000 x $5). *Id*. at ¶ 199.

Such mistreatment of Employee Class members was not unexpected, since the Consumer Class counsel were adverse to the employees' rights during the hearing on dismissal.  When Interim Class Counsel for the Employee Plaintiffs argued to this Court against Wawa's Motion to Dismiss, even while the Consumer Class Plaintiffs were still negotiating the final terms of their settlement, Consumer Class counsel **joined with Wawa in seeking dismissal of the Employee Track Plaintiffs' case**.  The following colloquy took place:

> The Court: As I understand is, there has been a tentative settlement with respect to the Consumer Track cases, so although I see Ms. Savett here, I'm not guessing I'm going to be hearing much from you, is that right?
>
> Ms. Savett: Well, our only position today will be a **joinder in a part of the Defendant's motion to dismiss or stay the Employee case** in that is duplicates the consumer case.
>
> ***
>
> The Court: Okay. Now, I believe, Ms. Savett, are you the folks -- do you represent the folks who want to say a "me too" argument here on the motion to dismiss?
>
> Ms. Savett: Yes.
>
> The Court: Okay. Briefly.
>
> Ms. Savett: Slightly a little bit different. **The Consumer Track Plaintiffs support Wawa's motion to stay or dismiss the Employee Track case** to the extent it alleges theft of payment card data. The Employee Track case theory is, to that extent, duplicative of the Consumer Track case theory.
>
> ***
>
> The Court: Why does it matter to you?
>
> Ms. Savett: Why does it matter?
>
> The Court: Yes.

Ms. Savett: Because that part of the case is being settled and he's actually attacking the case right now, saying it should be dismissed because of the economic loss rule, which we think is totally wrong, and I'm getting to that, but he has a time later if he wants.

The Court: Who is the "he"?

Ms. Savett: McGlade.

The Court: Okay.

Ms. Savett: If he must make objection ultimately to the settlement, he can make that argument, but he is part of the Class. He's part of the Consumer Class. So that should be considered at an appropriate time and not in a separate case which is duplicative.

The Court: Well, but now I'm just going to return to my question. Why does it matter to you at this point? I mean what's your problem? …

Ms. Savett: He asserted that he should have a separate track.

The Court: Other than the argument of purity of legal theory, okay, I mean I can see that, you might want to argue about that as a sort of exercise, but I want to have a sense as to whose ox is getting gored here from your standpoint, from the representative of the Consumer Class standpoint. What does it mean?

Ms. Savett: A separate track was created for the Employee Class –

The Court: Yes.

MS. SAVETT: -- because he said that at that time social security information was stolen. That's not part of our case, but he is a Consumer. He's admitted he's a Consumer and you've just questioned him. He admitted that again, that to the extent any breach occurred because of a payment card theft, he was a Consumer. So that part of the case shouldn't be in a separate track. It should be part of our case. … **We believe [McGlade] misreads *Dittman* and it doesn't make Employees on a higher position than Consumers…**

\*\*\*

The Court: Could it not be read to say, All right, as to this area generally, here is what we hold, but then we're going to up the ante a bit in the context of the Employer/Employee relationship.

Ms. Savett: I guess that's possible… You know, they gave employees a discount. They didn't say they had to use the card.

The Court: But [Employee Track] counsel says, Okay, but they weren't given any time off to go down the street and buy a Coke or a Pepsi or an Orange Crush someplace else.

Ms. Savett: Well, they could have used cash and bought their hoagie. They didn't have to use the card. They chose to use it. They were consumers. To the extent the Employee Plaintiffs allege a data breach beyond the payment card situation, we're not taking a position.

The Court: So what will you say down the line when there are objections, I mean, this is almost a rhetorical question, of course, when they show up to be objectors?

Ms. Savett: Well, first of all, if they're objecting that our settlement wasn't good enough for the Consumers, because they are Consumers, we're going to justify our settlement. We have many ways to do that. Do you want me to get into that right now?

The Court: No, it's more, as I said, a rhetorical question.

Ms. Savett: I mean we're –

The Court: I still don't quite understand from the practical real world standpoint why the motion to dismiss matters to you now. You could sit back and just wait to see what happens, couldn't you?

Ms. Savett: We could. We could, but I don't think it's fair…

Nov. 10, 2020 Hrg. Tr. at 8:19-25; 79:12-80:25; 81:5; 83:14-18; 84:11-85:13.

Such direct adversity to the Employee Class members' position completely "disarmed" Consumer Class counsel from adequately representing the Employee Class during the September mediation leading to the proposed settlement. *See Amchem*, 521 U.S. at 621 ("if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed. Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer…") . Indeed, such direct adversity might rise to the level of an actual conflict of interest. *See Lazy Oil Co. v. Witco Corporation*, 166 F.3d 581, 590 (3d Cir. 1999) ("[O]nce some class representatives object to a settlement negotiated on their behalf, class counsel may continue to represent the remaining class representatives and the class, as long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their former counsel.").

19

It is this Court's fiduciary responsibility to ensure that "the class members' interests were represented adequately." *Int'l Un. of Electronic, Electrical, Salaried, Machine & Furn Workers, AFL-CIO v. Unisys Corp.*, 858 F. Supp. 1243,1264 (E.D.N.Y. 1994).  This duty does not allow the district court to acquiesce in the class representative's inadequate representation of class members.[28]  *Watson v. Ray*, 90 F.R.D. 143, 146 (S.D. Iowa 1981).  Here, the direct adversity of the Consumer Class counsel to the interests of the Employee Class render them inadequate to negotiate a fair, reasonable and adequate on behalf of employees.

### C.  The Proposed Settlement Fails to Properly Compensate Settlement Class Members Based Upon the Relative Strengths and Weaknesses of Their Claims, As Required.

Under the proposed settlement, there is zero differentiation among the "three tiers of relief to Class Members"[29] between Wawa employees in the proposed Settlement Class (who presumably live and work only in the 6 states and the District of Columbia where Wawa's affected stores are located) (the "Wawa States") and the millions of Wawa consumers located in the 50 United States and the District of Columbia.  This is despite the variation of common law negligence standards and the statutory consumer fraud laws in those Wawa States versus the laws of the other states.

The settling parties fail to explain why all Settlement Class members have been lumped into one, undifferentiated, putative "nationwide settlement class", when the Consumer Plaintiffs' Consolidated Amended Class Action Complaint, Dkt. No. 132, established 7 separate sub-classes for consumers in Delaware, Florida, Maryland, New Jersey, Pennsylvania, Virginia and the District of

---

[28] This fiduciary duty extends to both the Court and the lawyers in the case.  Indeed, the fiduciary duty lawyers owe their clients applies in all cases, not just class action cases.  *See, e.g, Huber v. Taylor*, 469 F.3d 67, 81 (3rd Cir. 2006)("It is well-settled law, regardless of jurisdiction, that attorneys owe their clients a fiduciary duty."); *see also*, *GMC Trucks,* 55 F.3d at 801; *Soskel v. Texaco, Inc.*  94 F.R.D. 201, 203 (D.C.N.Y., 1982); *Deadwyler v. Volkswagen of America, Inc,* 134 F.R.D. 128, 140 (W.D.N.C.,1991) (*"As a court-appointed "fiduciary's fiduciary," class counsel assumes a particularly heavy responsibility even beyond that owed by a lawyer to an individual client"*).

[29] Mem. in Support at 1.

20

Columbia.  This alone warrants rejection of the one-size-fits-all nationwide class settlement.  But, when one also factors in that consumers are not all the same, and Wawa employees have stronger claims than consumers, the proposed settlement falls under its weight due to the lack differentiation.

> 1. **Wawa Electronic Gift Cards fail to provide reasonable settlement value to Settlement Class members who no longer frequent Wawa stores and/or no longer live or work in the area where a Wawa store is located.**

Wawa proposes to provide only electronic Gift Cards, not cash, for use on future purchases at its Wawa stores located in 6 states and the District of Columbia.  Such settlement consideration provides little value, if any, to members of the Settlement Class who (1) do not live in proximity to any Wawa store, or (2) choose to no longer frequent a Wawa store.  As a result, a portion of the proposed Settlement Class is being provided no settlement value in return for release of their claims.  For employees, like Shawn McGlade and others like him, this is a critical flaw in the propose compromise of his rights against Wawa under *Dittman*.

The Court of Appeals for the Seventh Circuit has observed that non-cash settlements that "'require the claimant to return to the Defendant to do business with [it]', something at least some class members likely would prefer not to do," may be rejected as unfair and unreasonable to certain members of the proposed settlement class. *Synfuel Techs.,* 463 F.3d at 654 (quoting CAFA).[30]  Such settlements conditioned on requiring "forced future business with the defendant" warrants the sort of "heightened judicial scrutiny" called for by CAFA.  Nowhere do the settling parties provides this Court with such legal or factual analysis in the preliminary approval papers.  As a result, the Court should deny the Motion as unsupported.

---

[30] *See also*,  *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (holding that "compensation in kind is worth less than cash of the same nominal value").

Should the Court reach the merits of the argument in favor of the non-cash, electronic Gift Card settlement, it should be rejected for its failure to properly compensate those Settlement Class members who prefer to not do further business with Wawa. *Synfuel Techs*., 463 F.3d at 654 ("something at least some class members likely would prefer not to do"). Certainly former employees of Wawa, like Shawn McGlade, could not be reasonably expected to want to frequent a Wawa store going forward. The same is true of former Wawa customers who have chosen to take their business elsewhere.[31] Then, there are those patrons who simply cannot visit a Wawa store in the one year during which the electronic Gift Cards are operable, due to logistics (*ie*., living in a state other than where Wawa has a store), health concerns (*ie*., Covid-19 restrictions), or for other personal reasons.

Nowhere does Wawa address these issues. It simply points this Court to its past customer loyalty as a predicate to what amounts to a marketing campaign to cultivate greater foot traffic to its stores, which have seen declines greater than its competitors in the past year. *See* discussion *infra*. Such supposition fails to account for the negative impact of the data breach on Wawa customer loyalty and the impact of the pandemic on in-store traffic volumes. *See* charts *infra* under Notice. Glossing over these importance issues only undermines the claims of fairness and reasonableness of the proposed settlement for sprawling nationwide consumer class.

      **2.  The proposed settlement fails to properly compensate current and former Wawa employees based their unique harm inflicted upon them by Wawa's data breach.**

This Court is well aware of the position of the Wawa Employee Class as it pertains to their rights to sue Wawa in negligence under Pennsylvania law for causing the loss of the PII entrusted to

---

[31] All retail operations suffer from some customer backlash and consumer complaints. In the case of Wawa, internet websites reveal that patrons in the last year have developed negative opinions of Wawa. *See, e.g*., https://www.consumeraffairs.com/cameras/wawa.html (listing "Wawa reviews" since November 2019 at only 1-2 stars out of 5 stars); https://www.complaintsboard.com/wawa-b105953 (rating Wawa with 1 out of 5 stars based on 509 complaints).

Wawas care, custody and control.  Having read the employees' briefs in opposition to Wawa's Motion to Dismiss, and conducted a lengthy, in-person argument, the legal arguments are clear to this Court. While the Court has not yet ruled on the pending Motion to Dismiss, and despite the Consumer Class counsels' improvident "joinder" in Wawa's Motion seeking to dismiss the employees' claims, the Employee Track Plaintiffs respectfully submit that their rights under *Dittman* are unassailable, and are distinct from those of the consumers who have settled.  The above-cited class action rules compel that these rights be adequately represented in any settlement negotiation.  They were not.  Instead, Wawa joined with disarmed (even adverse) Consumer Class counsel to ensure that its employees were not adequately represented, and were unfairly treated in mediation as a result.  For this reason alone, this Court should reject the settlement proposal that seeks to sweep in tens of thousands of current and former Wawa employees to a $5 coupon settlement.

### D. The Proposed Injunctive Relief Fails to Remedy the Defects that Caused the Loss of Employee PII from the Wawa Corporate Computers.

As set forth herein, Wawa's counsel vehemently objects to Employee Track Counsel's reference to Wawa's "Incident Reports" revealing the truth about the two data breaches Wawa suffered in 2018 and 2019, respectively.  As a result, Employee Track Plaintiffs' can only interpose a broad objection to the proposed "injunctive relief" that seeks to focus on repairs to Wawa's POS systems while ignoring much-needed repairs to Wawa's corporate computer systems.  Perhaps between the time of this objection and the hearing on the Motion for Preliminary Approval, Wawa will agree to allow the public access to this information.  Certainly, the members of the Employee Class represented by the Court-appointed Interim Class Counsel seek broader relief than has been agreed to by the Consumer Class, and will continue to fight for such reforms to protect current and former Wawa employees going forward.  Employee Track Plaintiffs will be prepared to address the Court's questions on this subject at the appropriate time, including through expert testimony, as needed.

**E. The Proposed Plan of Notice Fails to Comport with Procedural Due Process.**

In amending Rule 23(e) in 2018, the Rules Committee noted that "[t]he decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval." Fed. R. Civ. Proc. 23(e). The amended rule therefore requires front-loaded scrutiny of potential class action settlements to identify deficiencies that should be addressed before notice is disseminated to members of the putative settlement class.

"Notice of a proposed settlement under Rule 23(e) must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 at 527 (D.N.J. 1997) (citing 2 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 8.32, at 8-103 (3rd ed. 1992).

There are several shortcomings in Plaintiffs' proposed notice plan.

First, the Notice Plan fails to provide first class mail notice to all current and former Wawa employees whose names and addresses are known by Wawa and easily accessible for purposes of such notice. As the Supreme Court held in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318, 70 S. Ct. 652, 659, 94 L.Ed. 865, 875 (1950), "[w]here the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."

Second, the Notice Plan fails to provide any publication notice to members of the settlement class – whether consumers or employees – despite the many deficiencies of in-store, placard notice. While the settling parties tout the traffic in Wawa stores, they fail to account for present circumstances. The six (6) states in which Wawa has its stores are all suffering the continuing affects of the Covid-19

24

pandemic.  This is no insignificant circumstance.  However, it is wholly ignored by the settling parties and their notice expert.  Beyond common sense, a simple Google search of retail sales traffic volumes reveals that retail traffic volumes are down.  As a result, publication notice is the next best modality for reaching Class members.

Third, the Notice Plan's lone means of notice -- in-store placard notice -- is of little use as a stand-alone means.  The McGlades, who are of the representatives of the Employee Class, no longer have any affiliation with allegiance to, or desire to visit any Wawa store.  They are not alone.  Such former employees and consumers will never see an in-store placard because they will never visit a Wawa store or gas station.

For these reasons, the Notice Plan should be rejected.

1. **Wawa Should Be Required to Give First Class Mail Notice to Its Current and Former Employees Before Seeking to Extinguish Their Rights Through the Consumer Class Settlement.**

When a class action is settled, the Court must direct notice to be given to all members of the class or proposed settlement class. Fed. R. Civ. P. 23(e). This includes "individual notice to all members who can be identified with reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[I]individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Eisen & Carlisle v. Jacquelin*, 417 U.S. 156, 176 (1974). Here, counsel reports that they will only *attempt* direct notice to about one-third of the class. (Dkt. 122-12, ¶ 18.) That is insufficient.

The best notice practicable here to Wawa employees is obvious: Direct notice mail to their home addresses.  Such direct mail notice is critical because the parties concede that Wawa "did not initially provide direct notification of the breach" to its employees, despite the fact that Wawa knows the addresses.  Mem. in Support at 10, n. 4.  Now, potentially thousands of employee class members are *former* employees, like McGlade and do not patronize Wawas for obvious reasons.  Therefore, placards

or signs at existing Wawa stores, alone, will never reach the members of the employee class like direct mail would.  *See Mullane v. Central Hanover Bank & Trust Co., supra*.; see also *Lanqing Lin, et al. v. Everyday Beauty Amore Inc., et al.,* 2018 U.S. Dist. LEXIS 207988, *19 (E.D.N.Y. December 9, 2018)("it is appropriate for notice to be provided both by first ***class*** mail and email to ensure that potential plaintiffs receive notice of this action.").

The settling Plaintiffs relied exclusively on Wawa "represent[ing] that neither it nor its agents have contact information sufficient to provide direct mail or email notice to Settlement Class Members."  Mem. in Support at 9 (citing Settlement Agreement ¶ 54).  As Wawa knows, this is patently false at it concerns Wawa employees, who are required to provide their addresses as condition of their employment.  Dkt. No. 131 at ¶ 13 ("as a condition of their employment, [Wawa] collected PII of the McGlades and others, including their names, the names of spouses and children, [and] their home addresses…"), 36 (same), 215 (same).  While Wawa chooses to ignore the facts in seeking to avoid direct notification of its present and former employees, neither the settling Plaintiffs nor this Court can do so.  As the McGlades alleged in the Amended Complaint:

> The names, addresses and affected purchases of all members of the Employee Class are reasonably ascertainable, because all such information is stored on Wawa's computer systems. In fact, it is believed that a simple comparison of Wawa's employee human resources information (identifying all current and former Wawa employees during the period of the Data Breach) with its POS payment data information for such time period will allow all members of the Employee Class to receive direct mail notice of the certification of the class claims in this case, should the Court so order at the appropriate time.

Dkt. No. 131 at ¶¶ 18, 201 (same).

The notice expert retained by the settling parties relies exclusively upon Wawa's representation that it "does not possess contact information such as mailing addresses or email address for the Class Members" in rejecting first class mail notice as a feasible option.  Mem. in Support at 10, n. 4; see also, id. at 29 n/ 12 ("Wawa has represented that neither it nor its agents have contact information sufficient to provide direct notice to Settlement Class Members.").  Wawa's notice expert erroneously contends

that she is not implementing a "traditional" "publication notice" because "the combination of in-store signs, notice on Wawa's website, and coverage resulting from the press release will be more effective in reaching Class Members." However, as addressed in more detail herein, the notice expert's proposed "Program" will not "provide virtually all Settlement Class Members with at least one opportunity to view a Notice during the claims period", as claimed.

> **2. The Proposed Notice Plan is Deficient Because it Fails to Provide Publication Notice when Such Notice is the Only Reasonable Means to Reach Class Members Who No Longer Frequent Wawa Stores.**

Publication notice, which is not the means by which Wawa proposes to notify employee class members, should be considered as a means of notice along with direct mail. *In re Freemarkets, Inc., Sec. Litig.*, No. 02: 01cv0746, 2005 U.S. Dist. LEXIS 29881, *5-6 (W.D. Pa. Nov. 1, 2005)(noting that publication notice along with first-class mail notice is adequate under Rule 23 and the due process clause of the United States Constitution).

The United States Court of Appeals for the Third Circuit has long held that first class mail, coupled with publication notice, was an adequate form of class action notice. *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 328 (3d Cir. 1998)("We agree with the district court that the notice provided all of the required information concerning the class members' right and obligations under the settlement.). "[T]hough ordinarily individual notice is considered the best practicable notice where, as here, the identities of the class members are known or reasonably ascertainable, supplemental publication notice provides sufficient and adequate notice to those class members who, though known, could not be reached individually." *Hall v. Best Buy Co*., 274 F.R.D. 154, 168 (E.D. Pa. 2011)(finding that while first class mail was "reasonable", first class mail supplemented by publication notice was sufficient and adequate).

Here, the Notice Plan ignore both the first-class mail and the publication notice in favor of a placard, "Store Notice" approach which likely will not reach many of the aggrieved employee class members, either because they no longer work at Wawa or do not shop there. Similarly, because Wawa does not tout 100% loyalty of consumers, its notice plan does not intend to reach transient, disgruntled, out-of-state or other non-recurring consumer customers.

Accordingly, the Motion should be denied until such time as Wawa agrees to include first-class, direct mail to its employees as well as publication notice for all consumers. Store Notices have a limited utility during a pandemic, as established below.

### 3. The Proposed Notice Plan is Deficient Because Its Store Notice Approach Is Insufficient When Other Means (Direct Mail and Publication) are Readily Available, Better Options.

The proposed Notice Plan providing for nearly exclusive "Store Notices" is materially deficient because it fails to provide adequate publication notice to those absent consumer class members whom Wawa intends to notify of the proposed settlement. The COVID-19 pandemic, while non-existent when the Wawa data breaches at issue began to occur, has had a substantial impact on the way consumers shop and go about their everyday lives. Certainly, Wawa has not been immune to the effects of the pandemic.[32] Customers visiting Wawa stores since March, 2020 (when the pandemic began) have declined. In fact, as shown in the graphs below, there was a drastic decrease in foot traffic between March and August 2020 with no indication that a complete recovery has occurred to date. Thus, the Store Notice proposed by Ms. Peak cannot possibly provide adequate notice to the millions of absent Settlement Class members in this case.

---

[32] Wawa admits on its website that there may be times when it has to restrict its store operating hours, or close stores in their entirely, due to the pandemic. https://www.wawa.com/alerts/covid-19-safety-readiness (conceding "[a]t times, we may need to temporarily close or limit the hours of operation for some of our stores to conduct contact tracing and/or due to staffing shortages. When we do, we will post a sign on the door to help alert customers and guide them to a nearby Wawa.")





Further evidence of the decline in store visits at Wawa stores in Pennsylvania proof is depicted in the following graphic:



The graphic shows that in Pennsylvania alone "Brand Visits" at Pennsylvania-based Wawa stores

---

[33] https://gravyanalytics.com/wp-content/uploads/2020/09/Convenience_Stores_-_Weekly_Foot_Traffic_-___Change-01-2-1024x444.png.webp

[34] https://gravyanalytics.com/covid-19-economic-activity-us-state/

decreased by 10% from the beginning of the pandemic (in March 2020) through the present.

The situation is even worse in Wawa stores outside Pennsylvania. "Brand Visits" at Wawa stores in six other states where Wawa has a presence decreased by 12% since the pandemic began (in March 2020) up to the present:



Given that the drastic decrease in both foot traffic and store visits to Wawa stores in all 6 locations, including Pennsylvania, it would seem impossible for all members of the proposed Settlement Class to receive adequate notice of the proposed Consumer Class settlement by means of in-store placard notice only.

Based on the class notice expert's report (and without any supporting documentation), "Wawa estimates that more than 64 million customers enter its stores or use its fuel pumps each month, ***even during the Covid-19 pandemic and quarantine***" *Peak Decl.*, at p. 5, paragraph 14. (emphasis added). Thus, based on the independent studies of convenience store traffic volumes throughout the pandemic

---

[35] https://gravyanalytics.com/covid-19-economic-activity-us-state/

(as depicted in the above graphs showing declines), prior to the Covid-19 pandemic and quarantine, between 10 and 12% *more* visits to Wawa occurred during the data breaches at issue in this case. The declines suggest that between 6-8 million Settlement Class members no longer visit Wawa for unknown reasons.

Further, since Wawa is not located in every state, it naturally receives visits from out-of-state residents who do not live in the Wawa-occupied states. As with any convenience store, Wawa likely benefits from transient consumers who are visiting Wawa states for a limited time and a limited purpose. The settling parties have presented no evidence that these Wawa customers – who are Class members by reason of their prior, transient visits to Wawa during the Class Period – will return to a Wawa store during the 4 weeks that the settlement notice will be displayed in stores. No evidence has been presented that such transient Wawa store visitors from out-of-state – such as travelers, truck drivers, vacationers, foreign visitors and untold others – are likely to receive the Class notice posted only in Wawa stores for a limited time. No evidence has been provided as to how the notice plan will reach disgruntled, former patrons of Wawa.[36] Therefore, the Class notice expert's declaration is devoid of any detail as to these circumstances, and how the notice plan will adequately address them. Instead, the notice expert's opinion appears to be that Wawa has had loyal customers in the past, and those loyal customers are likely to return to a Wawa store in the 4 weeks when notice is posted.

For these reasons, the McGlades object on behalf of themselves and the Employee Class Plaintiffs they seek to represent on grounds that the proposed class notice program is not reasonably designed to reach the vast majority of the Settlement Class members located throughout the United

---

[36] All retail operations suffer from some customer backlash and complaints. In the case of Wawa, internet websites reveal that certain patrons in the last year have developed negative opinions of Wawa. *See, e.g.*, https://www.consumeraffairs.com/cameras/wawa.html (listing "Wawa reviews" since November 2019 at only 1-2 stars out of 5 stars); https://www.complaintsboard.com/wawa-b105953 (rating Wawa with 1 out of 5 stars based on 509 complaints).

States.  Far from it, as none of the tens of thousands of current any former Wawa employees, or their spouses, will receive first class mail notice to their home addresses, between 6 and 8 million consumers will not see the in-store notices because of their changed habits (whether due to the Covid-19 pandemic, decline in customer loyalty or other factors), and transient or casual consumers are unlikely to visit a Wawa store within the limited time that placard notice is posted.

### F.  Consumer Class Counsel's Attorneys' Fee Request Should Tied to the Redemption Value of the Gift Cards They Negotiation for the Consumers.

Class counsel are duty bound to represent the best interests of class members during all phases of a class action case. *Staton v. Boeing Co*., 327 F.3d 938, 960 (9th Cir. 2003).  However, because the interests of class members and class counsel nearly always diverge at the time of settlement, courts must remain alert to the possibility that some class counsel may "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees."  *Weinberger v. Great N. Nekoosa Corp*., 925 F.2d 518, 524 (1st Cir. 1991).

Typically, courts try to ensure faithful representation by tying together the interests of class members and class counsel. That is, courts aim to tether the value of an attorneys' fees award to the value of the class recovery. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (explaining that "the most critical factor [in determining an appropriate attorneys' fee] is the degree of success obtained"); *McCown v. City of Fontana*, 565 F.3d 1097, 1103-05 (9th Cir. 2008). "Where both the class and its attorneys are paid in cash, this task is fairly effortless. The district court can assess the relative value of the attorneys' fees and the class relief simply by comparing the amount of cash paid to the attorneys with the amount of cash paid to the class. The more valuable the class recovery, the greater the fees award", "and vice versa".  *Feder v. Frank (In re HP Inkjet Printer Litig*.), 716 F.3d  at 1178-79 (citing *Hensley*, 461 U.S. at 436).

Problems arise, however, where the class counsel is paid in case – here $3.2 million in cash for less than one year's worth of work – while the members of the class are paid in some other way, with coupons, vouchers, discounts on future purchases, and, as here, gift cards.  Congress was acutely aware of these problems with it passed CAFA.  *See, e.g.*, S. Rep. 109-14, at 16-20 (listing dozens of examples of coupons settlements "in which most – if not all – of the monetary benefits went to the class counsel, rather than the class members those attorneys were supposed to be representing").  Among the examples cited by Congress were the following:

Where a reviewing court vacates or remits the amount of attorneys' fees provides under a settlement agreement, the settlement agreement which includes such negotiated fees also must be vacated.[37]  "When a settlement provides for coupon relief, either in whole or in part, any attorney's fee 'that is attributable to the award of coupons' must be calculated using the redemption value of the coupons."  § 1712(a); *Rougie v. Ascena Retail Group*, 2016 U.S. Dist. LEXIS at *83 ("[w]hen a proposed settlement provides an award of coupons and injunctive relief, Congress mandates we award attorneys' fees attributable to the award of coupons based on the value of the class members of the redeemed coupons.  We may apply a contingent fee to any portion of the class action settlement to redeemed coupons.")

 Here, the settling parties make no attempt to value the Wawa electronic gift cards in relation to their "redemption value" for purposes of calculation of their requested fee.  Instead, they simply seek a few award of $3.2 million, apparently based on the amount of time the team of consumer lawyers spent on this case.  Apart from any determination by this Court as to the reasonable of the request, in light of the fact that the consumers knew from the start they would be mediating with Wawa and conducting

---

[37] *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (holding that a class action settlement "must stand or fall in its entirety"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945-46 (9th Cir. 2011) (noting that vacatur of a fees award necessitates invalidation of a settlement approval order where the parties "expressly negotiated" a potentially unreasonable amount of fees).

precious little discovery, the lawyers cannot avoid this Court's detailed examination of their fee request in conjunction with their proposed coupon settlement.  This should come as no surprise to settling counsel, for as Judge Kearney wrote in *Rougie*, wherein the same lawyers for Wawa were the proponents of the coupon settlement, "Class Counsel knew, under its fiduciary duty, an agreement to settle [with Wawa] would result in the vast majority of the negotiated consideration paid in voucher." *Rougie v. Ascena Retail Group*, 2016 U.S. Dist. LEXIS 99235 at *89 (brackets added).

Wawa made its position clear from the start that it desired a coupon settlement.  When Consumer Class counsel agreed to Wawa's terms, they thereby impliedly agreed to tie their fees to the redemption value of their proposed settlement consideration to the Class.  Otherwise, the lawyers would impermissibly get cash up front, while forcing the Class to await electronic credits in the form of "gift cards", a patently unfair situation under CAFA.

## IV.    CONCLUSION

For the foregoing reasons, the Employee Track Plaintiffs' respectfully request that this Honorable Court deny the Consumer Plaintiffs' "Unopposed" Motion for an Order Preliminarily Approving Class Action Settlement.

Respectfully submitted,
*/s/Donald E. Haviland, Jr.*
Donald E. Haviland, Jr., Esq. (PA 66610)
William H Platt, II, Esq. (PA 83585)
**Haviland Hughes**
201 South Maple Avenue, Suite 110
Ambler, PA 19002
*Interim Class Counsel for*
*Employee Track Plaintiffs*