**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE WAWA, INC.** | : | |
| **DATA SECURITY LITIGATION** | : | **CIVIL ACTION** |
| | : | |
| | : | **This document applies to the** |
| | : | **Consumer Track** |
| | : | |
| | : | |
| | : | **No. 19-6019** |
| | : | **and all related cases** |
| | : | |

**CONSUMER TRACK PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Sherrie R. Savett (PA Bar No. 17646)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
ssavett@bm.net

Linda P. Nussbaum *(admitted pro hac vice)*
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036-8718
(917) 438-9102
lnussbaum@nussbaumpc.com

Roberta D. Liebenberg (PA Bar No. 31738)
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad St., 23rd Floor
Philadelphia, PA 19107
(215) 567-6565
rliebenberg@finekaplan.com

Benjamin F. Johns (PA Bar No. 201373)
Samantha E. Holbrook (PA Bar No. 311829)
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
361 W. Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com

*Interim Co-Lead Counsel for Consumer Track Plaintiffs*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................3

        A.      The Proposed Settlement Does Not Impact Claims
                that are Unique to the Employee Track ........................................................3

        B.      The Substantive Challenges to the Terms of the Settlement are Without Merit .....7

                1.      The Claims Procedure is a Well-Established Manner of
                        Distributing Settlement Funds in Data Breach Class Actions ...................7

                2.      Challenges to the Non-Cash Settlement Consideration
                        are Premature and Misplaced ........................................................9

                        i.      The Gift Cards Afforded by the Settlement
                                are not "Coupons" under CAFA ...................................10

                        ii.     Even if the Gift Cards are Considered "Coupons,"
                                the Settlement is Well-Designed and Provides Valuable
                                Consideration to the Class and The Redemption Value
                                Has No Impact on the Attorneys' Fees Requested .......................13

                3.      The Injunctive Relief Affords Significant Forward-Looking
                        Relief to the Class ...................................................................16

                4.      Common Sense Distinctions Among Class Members, as
                        Demonstrated by the Three-Tiered Approach Here, are Appropriate .......18

        C.      The Proposed Notice Plan Satisfies Due Process .................................19

                1.      In-Store Placards Will Effectively Notify
                        Wawa's Loyal Customer Base ................................................22

                2.      The Small Fraction of Class Members Who are Current or
                        Former Wawa Employees Will be Effectively Notified Without
                        First Class Mail .........................................................24

III.    CONCLUSION .................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Amig v. City of Juniata*,
   432 F. Supp. 3d 481 (M.D. Pa. 2020) ...................................................................6

*Baptiste v. Bethlehem Landfill Co.*,
   965 F.3d 214 (3d Cir. 2020) ...............................................................................6

*Bray v. GameStop Corp.*,
   No. 1:17-cv-01365-JEJ, 2018 U.S. Dist. LEXIS 226221 (D. Del. Dec. 19,
   2018) ...............................................................................................................8

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ..........................................................................20

*Chakejian v. Equifax Info. Servs.*,
   275 F.R.D. 201 (E.D. Pa. 2011) ........................................................................10

*Chand v. Merck & Co.*,
   No. 19-cv-0286, 2019 U.S. Dist. LEXIS 125867 (E.D. Pa. July 26, 2019) .............6

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) .............................................................19

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
   333 F.R.D. 364 (E.D. Pa. 2019) ........................................................................15

*Dalgic v. Misericordia Univ.*,
   No. 16-cv-0443, 2019 U.S. Dist. LEXIS 111203 (M.D. Pa. July 3, 2019) .............6

*Dittman v. UPMC*,
   196 A.3d 1036 (Pa. 2018) .............................................................................5, 6

*Edwards v. Nat'l Milk Producers Fed'n*,
   No. 11-cv-4766, 2017 U.S. Dist. LEXIS 145217 (N.D. Cal. June 26, 2017).........22

*Elias v. Ungar's Food Prods.*,
   No. 06-02448-KSH-PS, 2013 U.S. Dist. LEXIS 203851 (D.N.J. Jan. 28, 2013)...15

*In re Equifax Customer Data Sec. Breach Litig.*,
   2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020)..............................16, 22

*Feleccia v. Lackawanna College*,
   215 A.3d 3 (Pa. 2019) .......................................................................................6

*Fernandez v. Victoria Secret Stores, LLC*,
  No. 06-cv-04149, 2008 U.S. Dist. LEXIS 123546, 2008 WL 8150856 (C.D.
  Cal. Jul. 21, 2008) ...................................................................................................13

*Fulton-Green v. Accolade, Inc.*,
  No. 18-cv-274, 2019 U.S. Dist. LEXIS 164375 (E.D. Pa. Sep. 23, 2019) ..................... *passim*

*In re Google Referrer Header Priv. Litig.*,
  No. 10-cv-4809, 2014 U.S. Dist. LEXIS 41695 (N.D. Cal. Mar. 26, 2014) ...................21, 22

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec.
  16, 2019) ..................................................................................................................8

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
  877 F.3d 276 (7th Cir. 2017) ....................................................................................22

*Lanqing Lin v. Everyday Beauty Amore Inc.*,
  2018 U.S. Dist. LEXIS 207988 (E.D.N.Y. Dec. 9, 2018) ................................22, 23

*Martina v. L.A. Fitness Int'l, Inc.*,
  No. 2:12-cv-2063, 2013 U.S. Dist. LEXIS 145285 (D.N.J. Oct. 8, 2013) ...........................16

*McGlade v. Wawa, et al.*,
  No. 2:20-cv-00248-GEKP, ECF No. 1 ........................................................................1

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
  314 F.R.D. 580 (N.D. Ill. 2016) ................................................................................22

*In re Nexus 6P Prods. Liab. Litig.*,
  No. 17-cv-02185, 2019 U.S. Dist. LEXIS 197733 (N.D. Cal. Nov. 12, 2019) .....................18

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) .....................................................................................15

*Perdue v. Hy-Vee, Inc.*,
  No. 19-cv-1330 (C.D. Ill. Jan. 21, 2021), ECF No. 62 ..............................................8

*Reibstein v. Rite Aid Corp.*,
  761 F. Supp. 2d 241 (E.D. Pa. Jan. 18, 2011)................................................11, 12

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
  779 F.3d 934 (9th Cir. 2015) .................................................................10, 11, 13

*Rice v. Electrolux Home Products, Inc.*,
  No. 15-cv-00371, 2020 U.S. Dist. LEXIS 145822 (M.D. Pa. Aug. 13, 2020) .........................6

*Rougvie v. Ascena Retail Group*,
    No. 15-cv-724, 2016 U.S. Dist. LEXIS 99235 (E.D. Pa. July 29, 2016) ...................12, 13, 15

*In re Rutter's Inc. Data Security Breach Litig.*,
    No. 20-cv-382, 2021 U.S. Dist. LEXIS 761 (M.D. Pa. Jan. 5, 2021)........................................6

*Shames v. Hertz Corp.*,
    No. 07-CV-2174, 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ...........................8

*Shaw v. Toshiba Am. Info. Sys.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ...............................................................................13, 14

*Silva v. Rite Aid Corp.*,
    416 F. Supp. 3d (M.D. Pa. 2019) ..........................................................................................6

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011).....................................................................................................7

*Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*,
    307 F.R.D. 351 (E.D. Pa. 2015).............................................................................................9

*In re W. Union Money Transfer Litig.*,
    No. 01-cv-0335, 2004 U.S. Dist. LEXIS 29377 (E.D.N.Y. Oct. 18, 2004)............................14

*Walsh v. CorePower Yoga LLC*,
    No. 16-cv-05610, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb. 14, 2017) .........................11

*Welch v. Nationstar Mortgage, LLC*,
    No. 19-cv-2023, 2020 U.S. Dist. LEXIS 14374 (E.D. Pa. Jan. 29, 2020)...............................6

## OTHER AUTHORITIES

C. Hetrick, *Wawa would pay customers up to $9 million for hackers exposing*
    *credit card info, proposed settlement says*, PHILADELPHIA INQUIRER, Feb. 19,
    2021...........................................................................................................................................20

CONVENIENCE STORE NEWS, Feb. 24, 2021 (available at
    https://csnews.com/wawa-agrees-pay-customers-9-million-over-data-breach) .....................20

Fed. R. Civ. P. 11 ........................................................................................................................17

Fed. R. Civ. P. 23, *et seq.*...............................................................................................3, 15, 21, 25

## I.      INTRODUCTION

The Employee Track Plaintiffs' objection to the Consumer Track Plaintiffs' motion for preliminary approval of their Settlement is both procedurally improper and substantively flawed. Most significantly, the entire premise of the objection is that the Consumer Track settlement will extinguish all of the claims asserted by the Employee Track Plaintiffs. Not so—the release in the Settlement Agreement expressly carves out claims by any current or former Wawa employee "that a social security number or bank account used for payroll direct deposit…has been compromised." S.A. at ¶ 96.[1] In other words, the Employee Track Plaintiffs are free to pursue those claims in their own case. Wawa employees who used a credit or debit card at Wawa during the data breach period are class members here only in their consumer capacity. If a settlement is reached in the Employee Track based on the purported theft of social security numbers or banking information, Wawa employees can participate in that settlement as well. Incredibly, the Employee Track Plaintiffs' brief does not even acknowledge this exception from the release that would permit them to continue to pursue their unique claims.

This framework is entirely consistent with the distinct tracks initially established by the Court, one of which was to address the claims of Wawa customers whose payment card information was compromised by the Data Security Incident, and another to address the claims of Wawa employees who alleged that Wawa allowed their "personal identifying and financial information…including [their] social security number[s]," to be compromised. *See McGlade v. Wawa, et al.,* No. 2:20-cv-00248-GEKP, ECF No. 1 at ¶ 1.[2]

---

[1] The defined terms herein shall have the same meanings as in Consumer Plaintiffs' opening brief. *See* ECF No. 180.
[2] The operative complaint in the Employee Track also asserts claims under the Pennsylvania Minimum Wage Law and Fair Labor Standards Act, which are likewise not being released in the Consumer Track settlement. *See* ECF No. 131 at ¶¶ 265-304.

Setting aside the faulty foundation upon which the Employee Track Plaintiffs' objection rests, the substantive arguments advanced in it are both meritless and premature. Several other data breach class actions have been resolved with structures similar to the one the Parties propose here (with the assistance of Hon. Diane M. Welsh (ret.)): a claims process to afford injured consumers an opportunity to receive compensation (which could value up to $9 million), along with significantly enhanced security measures at Wawa which will benefit *all* class members, *regardless of whether they file a claim*. And, contrary to the Employee Track Plaintiffs' contentions, the Settlement Agreement appropriately makes common sense distinctions between Class Members who suffered varying degrees of harm from the Data Security Incident (e.g., those who actually experienced fraud, and those who did not).

Also, the proposed notice plan – which was developed here in consultation with both Judge Welsh at the mediation and a professional Claims Administrator – more than satisfies due process. Indeed, the Settlement has already garnered significant publicity, and it would be hard to imagine that there is any Wawa employee who is unaware of it or will not learn of it when in-store settlement notices are posted at Wawa's stores.

The remainder of the points advanced by the Employee Track Plaintiffs' objection focus on the Consumer Plaintiffs' request for attorneys' fees and expenses. Obviously, this is premature inasmuch as the Consumer Plaintiffs have not even filed this motion and its supporting materials yet, nor has there been an opportunity to gauge the reaction of Class Members to the Settlement. Regardless, the Employee Track Plaintiffs' contention that the Wawa Gift Cards should be considered "coupons" within the meaning of the Class Action Fairness Act is misguided under relevant precedent. The Wawa Gift Cards are the functional equivalent of cash given that (a) they can be used for virtually any of the thousands of items sold at Wawa, including gas, (b) they are

fully transferrable, (c) they do not require the expenditure of any money in order to use (and Wawa sells over 3,000 products that are priced less than $5), and (d) Wawa has represented that over 97% of the value loaded onto its gift cards has been fully exhausted in the past two years. *See* ECF No. 181 at ¶ 27. The Consumer Track Plaintiffs will address the issues related to their attorneys' fee request when they file that motion in accordance with whatever schedule the Court establishes.

Consistent with Fed. R. Civ. P. 23(c)(2), Mr. and Ms. McGlade, along with every other Settlement Class Member, will be afforded the opportunity to lodge an objection in due course, once notice of the Settlement has been disseminated and a process has been established by the Court for the filing of objections. And if Mr. and Ms. McGlade do not like the Settlement, they are also free to opt-out.

The Employee Track Plaintiffs' objection should be overruled, and preliminary approval should be granted.

## II.    ARGUMENT

### A.    The Proposed Settlement Does Not Impact Claims that are Unique to the Employee Track

Employee Track Plaintiffs acknowledge that they sued on behalf of current and former Wawa employees alleging "separate injuries" that "were materially different from those of ordinary consumers."  Employee Track Opposition, ECF No. 187 ("Opp." or "Opposition") at 7. Yet, their brief ignores the critical fact that these claims for "separate injuries" have not been settled or released in the Consumer Track.  As noted above, the Settlement Agreement's release explicitly excludes "any claims by any Wawa employee, former Wawa employee or dependent thereof that a social security number or bank account used for payroll direct deposit of the Wawa employee, former Wawa employee, or dependent thereof has been compromised."  S.A. at ¶ 96. Consequently, Employee Track Plaintiffs may proceed with their claims for overtime and for an

alleged compromise of employee Social Security numbers or bank account numbers. Their Opposition should be rejected for this reason alone.

Similarly, Employee Track Plaintiffs' argument that the Court should order the parties to negotiate a settlement that only pertains to "the Consumer Class members the settling Plaintiffs were charged by this Court to represent" is misplaced.  Opp. at 6.  This is exactly what happened already.  Only claims that the Consumer Plaintiffs were authorized to settle are part of the Settlement Agreement.

Beginning in December 2019, Consumer Plaintiffs brought cases on behalf of customers who used a debit or credit card at a Wawa location during the Period of the Data Security Incident. Thereafter, the McGlades sued alleging injuries relating to the submission by employees of personal identifiable information to Wawa which was "stored on its internal, corporate computers as a condition of employment by Wawa."  Opp. at 7.  On June 12, 2020, the Court entered Case Management Order No. 2, ECF No. 119 ("Order 2"), setting a schedule for each of the tracks in the case. The Order further stated that "Plaintiffs and Defendants in the Consumer Track intend to conduct an early mediation to attempt to resolve this matter."  Order 2 at 3.  Also, on June 12, 2020, the Court appointed Interim Co-Lead Counsel for the Consumer Track and provided them with responsibility to "explore, develop and pursue all settlement options."  Case Management Order No. 3 at 4 (ECF No. 120) (together with Order 2, "Orders").

Consistent with these Orders and on behalf of the Consumer Track Plaintiffs, Interim Co-Lead counsel held several meet-and-confer calls with Wawa's counsel to discuss the mediation and the exchange of documents, information and mediation statements. The parties agreed on Judge Diane M. Welsh (ret.) of JAMS as the mediator and on a mediation date of September 15, 2020. Although the Employee Track Plaintiffs now complain of not being invited to the mediation

(Opp. at 2), in the three months between the Court's mid-June Order and the mid-September mediation, Employee Track counsel never once asked to participate in the mediation, despite signing status reports to the Court that identified the September 15 mediation date. *See, e.g.,* ECF No. 141.

As explained in detail in Plaintiffs' Preliminary Approval Brief ("Preliminary Approval Br.") (ECF No. 180) and accompanying declaration of Judge Welsh, the Settlement was reached after extensive arms'-length negotiations and an all-day mediation facilitated by an experienced mediator, provides consumers with fair consideration when weighed against the risks of further litigation, and compares favorably to other data breach settlements that have received both preliminary and final approval. Despite all of that, the Employee Track Plaintiffs now attempt to discredit the hard-fought negotiations between counsel by misrepresenting the Settlement and the process.

Among the several baseless and premature objections to the mediated settlement that Employee Track Plaintiffs present is the argument, based on a misreading of *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018), that Wawa employees who made purchases with their credit and debit cards have stronger claims under Pennsylvania law than do Wawa's customers.  Opp. at 16, 23. This is incorrect.

In *Dittman*, the court held that the economic loss doctrine does not preclude all negligence claims "seeking solely economic damages." 196 A.3d at 1054. ("'Pennsylvania has long recognized that purely economic losses are recoverable in a variety of tort actions' and that 'a plaintiff is not barred from recovering economic losses simply because the action sounds in tort rather than contract law.'") (citations omitted).  Whether the economic loss doctrine applies depends on "the source of the duty plaintiff claims the defendant owed."  *Id.*

The *Dittman* court went to great lengths to clarify that it was *not* creating a duty based on an employer/employee relationship, but rather imposing the already-existing common law duty to the facts in that case, based on "defendant's affirmative, risk-causing conduct." *Dittman*, 196 A.3d at 513 (the common law duty "appropriately undergirds the vast expanse of tort claims in which a defendant's affirmative, risk-causing conduct is in issue") (citations omitted). Thus, courts have repeatedly applied *Dittman* outside the employer/employee context because the duty arises from the foreseeability of the conduct and is not dependent on any particular relationship between the parties.[3]

As in *Dittman*, Wawa's "affirmative, risk-causing conduct" in accepting payment cards without adequate security measures created a duty to *all consumers*, whether those consumers happen to be Wawa employees or not. That duty was foreseeable, independent of any contractual duty, and is owed by Wawa to all class members who entrusted their sensitive payment card information to it. It is not based on or dependent on an employer/employee relationship.[4]

---

[3] *See Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 228 n.11 (3d Cir. 2020); *Feleccia v. Lackawanna College*, 215 A.3d 3, 14 (Pa. 2019); *Dalgic v. Misericordia Univ.*, No. 16-cv-0443, 2019 U.S. Dist. LEXIS 111203, at *74, n.21 (M.D. Pa. July 3, 2019); *Chand v. Merck & Co.*, No. 19-cv-0286, 2019 U.S. Dist. LEXIS 125867, at *18-19 (E.D. Pa. July 26, 2019) (Pratter, J.); *Rice v. Electrolux Home Products, Inc.*, No. 15-cv-00371, 2020 U.S. Dist. LEXIS 145822, at *21-22 (M.D. Pa. Aug. 13, 2020); *Welch v. Nationstar Mortgage, LLC*, No. 19-cv-2023, 2020 U.S. Dist. LEXIS 14374, at *11 (E.D. Pa. Jan. 29, 2020); *Amig v. City of Juniata*, 432 F. Supp. 3d 481, 488 (M.D. Pa. 2020); *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d, 403 n.1 (M.D. Pa. 2019); *In re Rutter's Inc. Data Security Breach Litig.*, No. 20-cv-382, 2021 U.S. Dist. LEXIS 761, at *28-30 (M.D. Pa. Jan. 5, 2021). *See also* Consumer Track Plaintiffs' Reply in Support of Their Partial Joinder in Defendant's Motion to Dismiss Employee Track Plaintiffs' First Amended Complaint Or, In the Alternative, To Stay at 4 (ECF No. 154) (collecting and describing cases); Consumer Track Plaintiffs' Notice of Supplemental Authority (ECF No. 171).

[4] In any event, even if Employee Track Plaintiffs were correct that employees' consumer claims were stronger, the Third Circuit has explicitly rejected Employee Track Plaintiffs' argument that settlements must give greater compensation to class members with "stronger" claims. *Cf.* Opp. at 16, 23. "We can find no support in our case law for differentiating within a class based on the

Thus, as directed by the Court's June appointment Order, Consumer Track Plaintiffs' Interim Co-Lead Counsel mediated the claims of all consumers. Since Wawa owed the same duty to all of its consumers, the tiering system negotiated at the mediation and included in the Settlement Agreement relates to how all Class Members, including employees in their capacity as consumers, may have been harmed. The three Tiers in the Settlement are designed to account for differences in the alleged harm experienced by class members due to the Data Security Incident: those who did not experience fraud, those who did experience fraud, and those who incurred out of pocket expenses due to fraud (who will be eligible for up to $500 in cash). *See* Preliminary Approval Br. at 6-8 (ECF No. 180) (describing compensation to Class Members).

In sum, the settlement is fair, reasonable and adequate to Wawa customers, including Wawa employees in their capacity as Wawa customers; there is no basis to differentiate between employees and consumers for purposes of the settlement; and Employee Track Plaintiffs will not be releasing any claims that are unrelated to the Data Security Incident for which the Consumer Track Plaintiffs' counsel were appointed to lead.

**B.    The Substantive Challenges to the Terms of the Settlement are Without Merit**

**1.    The Claims Procedure is a Well-Established Manner of Distributing Settlement Funds in Data Breach Class Actions**

The Employee Track Plaintiffs criticize the claims-made nature of the settlement proceeds. Opp., at 14-15. "However, there is nothing inherently objectionable with a claims-submission

---

strength or weakness of the theories of recovery. Accordingly, we decline to require such an analysis [when evaluating the fairness of a settlement]." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011). As the court noted, "a district court's certification of a settlement simply recognizes the parties' deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of the underlying causes of action." *Id.* at 312-13.

process, as class action settlements often include this process, and courts routinely approve claims-made settlements." *Shames v. Hertz Corp.,* No. 07-CV-2174, 2012 U.S. Dist. LEXIS 158577, at *31 (S.D. Cal. Nov. 5, 2012) (collecting cases). Indeed, claims-made settlements are increasingly becoming the norm in payment card data breach cases. *See, e.g., Perdue v. Hy-Vee, Inc.*, No. 19-cv-1330 (C.D. Ill. Jan. 21, 2021), ECF No. 62 (granting preliminary approval of claims process in payment card data breach settlement); *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *2 (D. Colo. Dec. 16, 2019) (approving claims made settlement in a payment card data breach); *Bray v. GameStop Corp.,* No. 1:17-cv-01365-JEJ, 2018 U.S. Dist. LEXIS 226221, at *1 (D. Del. Dec. 19, 2018) (same).

This Court has also recognized that a claim filing component is appropriate and acceptable in the data breach settlement context. *See Fulton-Green v. Accolade, Inc.,* No. 18-cv-274, 2019 U.S. Dist. LEXIS 164375 (E.D. Pa. Sep. 23, 2019) (Pratter, J.). In *Fulton-Green*, class members were entitled to seek reimbursement for four claim categories, with an overall cap in the recovery of each class member. *Id*. at *3-7. There, as here, the settlement also provided for injunctive relief that benefitted all class members, regardless of whether they submitted a claim for monetary reimbursement. *Id.* at *6-7. This Court concluded that the proposed method for distributing relief was "quite straight-forward [ ] because of the easy to understand forms." *Id.* at *22. So too here, the Claim Forms require minimal class member information, and all but guarantee relief to any class member who submits a claim form. *Shames*, 2012 U.S. Dist. LEXIS 158577, at *38 ("Rather than including this feature with the intent to *minimize* claims, the actual intent of the claims process is to allow class members the opportunity to *choose* between several payment options.").

Moreover, contrary to the Employee Track Plaintiffs' contentions, the Wawa Gift Cards are not the "exclusive settlement consideration." Opp. at 2. There is a process by which those who

suffered unreimbursed, out-of-pocket losses can seek cash reimbursement up to $500 by submitting a claim form and reasonable supporting documentation. *See, e.g.*, *Fulton-Green*, 2019 U.S. Dist. LEXIS 164375, at *4 (requiring documentary proof to be submitted in connection with claims submissions); *Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 307 F.R.D. 351, 416 (E.D. Pa. 2015) (concluding that requiring the submission of records to support a claims submission "is reasonable as an initial screen to weed out fraudulent claims").

The Employee Track Plaintiffs ignore this well-established authority and instead raise straw man arguments that are readily refuted. For example, the fact that there may be a few class members who may not want to shop at Wawa anymore, or live far away from Wawa stores, does not dictate that the Settlement is fatally flawed. Indeed, the Wawa Gift Cards are fully transferrable and Class Members who have out-of-pocket losses are eligible for cash reimbursement under Tier 3. As will be discussed in more detail below, *all* class members will benefit from the injunctive relief. Similarly, the Employee Track Plaintiffs' argument that the fee request is inappropriate because of the claims-made nature of the settlement is misplaced. Plaintiffs' anticipated fee request (which, even if fully approved, is already well below the collective lodestar to date) will be based on a lodestar analysis, and not a percentage of a common fund. In any event, any challenge to the counsel fees is premature at the preliminary approval stage.

### 2. Challenges to the Non-Cash Settlement Consideration are Premature and Misplaced

The Employee Track Plaintiffs incorrectly label this as a "coupon settlement." It is not. The proposed Settlement provides tangible relief to the class in the form of cash-equivalent gift cards and monetary compensation to reimburse class members for out-of-pocket losses. As discussed below, this is not a "coupon" settlement within the meaning of CAFA. Even if it were, however, the non-cash compensation provides meaningful relief.

      **i.**        **The Gift Cards Afforded by the Settlement are not "Coupons" under CAFA**

The Employee Track Plaintiffs spill much ink on the history and legislative intent of CAFA, repeatedly classifying the Settlement as a "non-cash settlement." Opp. at 11. It is not. As discussed above, the Settlement offers class members three separate tiers of compensation dependent upon the harm suffered, one of which provides for cash payments. Class members who suffered out-of-pocket losses as a result of the Data Security Incident may submit a Claim Form for reimbursement of up to $500 for those out-of-pocket expenses, while class members who did not incur out-of-pocket losses, regardless of whether they had a fraudulent charge or had a fraudulent charge reversed, may submit a Claim Form to receive a Wawa Gift Card. Additionally, all Class Members receive the benefit of the injunctive relief in the form of enhanced security measures that Wawa has adopted or will adopt to address security concerns moving forward.

The Wawa Gift Cards made available under the Settlement do not bear the characteristics of "coupons" that have been subject to heightened scrutiny under CAFA. "Although Congress did not define the term 'coupon' in the statute, courts have generally considered a coupon settlement to be one that provides benefits to class members in the form of a discount towards the future purchase of a product or service offered by the defendant." *Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201, 215 n.17 (E.D. Pa. 2011) (concluding that class settlement that provided injunctive relief and eighteen months of credit monitoring services free of charge to class members was not a coupon settlement "as class members do not have to purchase a product in order to obtain a benefit").

Despite the Employee Track Plaintiffs' attempts at blurring the lines, "gift cards" are not synonymous with "coupons." *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 952 (9th Cir. 2015) (noting "gift cards are a fundamentally distinct concept in American

life from coupons") (citing 15 U.S.C. § 1693l-1 (regulating gift cards, under the 1978 Electronic

Fund Transfer Act and the Credit Card Accountability Responsibility and Disclosure Act of 2009,

as an electronic form of cash (i.e., similar to credit or debit cards))). "District courts that have

considered the issue have not classified gift cards as coupon settlements falling under CAFA." *Id.*

at 951 (citing *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa. Jan. 18, 2011); *Fernandez*

*v. Victoria Secret Stores, LLC*, No. 06-cv-04149, 2008 U.S. Dist. LEXIS 123546, 2008 WL

8150856, at *2, *4-16 (C.D. Cal. Jul. 21, 2008) (approving a settlement and attorneys' fees award,

outside the strictures of CAFA, that provides class members with gift cards to Victoria's

Secret); *Petersen v. Lowe's HIW, Inc*., Nos. C 11-01996 RS, C 11-03231 RS, C 11-02193 RS,

2012 U.S. Dist. LEXIS 123018 (N.D. Cal. Aug. 24, 2012) (approving a settlement and attorneys'

fees award, outside the strictures of CAFA, that provides class members with $9 gift cards to

Lowe's); *see also In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig*., MDL No.

1967, Master Case No. 08-1967, 2011 U.S. Dist. LEXIS 50139, 2011 WL 1790603, at *2-4 (W.D.

Mo. 2011) (holding that a settlement that provides class members with vouchers to obtain new

products was not a coupon settlement because the vouchers do not require class members to spend

their own money and do not require class members to purchase the same or similar products as

those that gave rise to the litigation)); *see also Walsh v. CorePower Yoga LLC*, No. 16-cv-05610,

2017 U.S. Dist. LEXIS 20974, at *8 (N.D. Cal. Feb. 14, 2017) (approving settlement with a gift

card component).

In *Reibstein v. Rite Aid Corp.*, for example, an action brought under FACTA, the court

approved a settlement that distributed $20 Rite Aid gift cards to class members. 761 F. Supp. 2d

at 246.  The court concluded that the gift cards were "more like cash than coupons," in that they

would be mailed directly to class members, had no expiration date, were freely transferrable, and

11

could be used for literally thousands of products that class members would need. *Id.* at 255-256. Further, because the class members were likely to shop at Rite Aid again, the court concluded "they may even prefer the $20 gift cards to the lesser value that would have been awarded had the parties opted to provide a cash award." *Id.* at 256.

Similar to the gift cards in these cases, the Wawa Gift Cards can be used for virtually any product at Wawa convenience stores (with the exception of tobacco products) and are freely transferrable. S.A., at ¶ 33. Class Members in Tiers 1 or 2 who are eligible for a Wawa Gift Card need not spend any money in order to fully realize those benefits. They are valid for one year and can be used multiple times if the initial transaction is less than the card's face value. Essentially, the Wawa Gift Cards are the functional equivalent of cash. Wawa Gift Cards have a 97.2% usage rate, and Wawa maintains an especially loyal base of repeat customers. Jt. Decl., at ¶ 27. Moreover, over 3,000 products sold in Wawa cost less than $5.00 and 78% of the products Wawa sells are below that threshold. *Id.*

The use of Wawa Gift Cards was thoroughly negotiated at the mediation. As Judge Welsh explained, "[t]hroughout the negotiations, Wawa emphasized that Wawa customers are far more likely to be repeat customers and, thus, a class settlement involving gift cards would be a logical and effective way to compensate customers. Wawa agreed that the gift cards would be fully transferrable and good for at least one year. This was persuasive to me as a mediator." Welsh Decl. at ¶ 12.

The Employee Track Plaintiffs' insistence that *Rougvie v. Ascena Retail Group*, No. 15-cv-724, 2016 U.S. Dist. LEXIS 99235, at *84 (E.D. Pa. July 29, 2016) (Opp. at 14; 32) counsels a different conclusion is misguided for several reasons. *First*, the non-cash compensation in *Rougvie*—a case involving allegedly deceptive pricing discount practices at Justice retail stores—

12

were discount vouchers that required the purchase of a product so the consumer could obtain the benefit of the voucher (i.e. a $10 credit toward a minimum $25 purchase). The Court explicitly noted that the voucher was "not a gift card." *Id.* at *91. To the contrary, here the Wawa Gift Cards do not require *any* out-of-pocket purchase to redeem 100% of the value of the cards.

*Second*, as Judge Kearney pointed out, the vouchers in *Rougvie* were non-transferrable—distinguishing them from the freely transferrable gift cards in *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015) or *Fernandez v. Victoria Secret Stores, LLC*, 2008 U.S. Dist. LEXIS 123546—and thus they could not be sold to someone else. *Id.* Here, by contrast, the gift cards are freely transferrable, and can be used multiple times until the full value is redeemed. *Third*, the defendant in *Rougvie* acknowledged knowing that only 2-4% of the class would actually redeem the vouchers; to the contrary, here, Wawa has supplied data that supports its expectation that 97% of the value of Wawa Gift Cards will be used.

In short, this Court's final approval opinion in *Rougvie* is readily distinguishable. The Wawa Gift Cards are not coupons, and this is not a "coupon settlement."

ii.      **Even if the Gift Cards are Considered "Coupons," the Settlement is Well-Designed and Provides Valuable Consideration to the Class and The Redemption Value Has No Impact on the Attorneys' Fees Requested**

Even if the Wawa Gift Cards were coupons—which they are not—the Settlement nonetheless offers valuable benefits to the Class. "A settlement should not be disapproved simply because it contains an in-kind benefit component if the benefits are of real, economic value to the class members." *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 960 (E.D. Tex. 2000). According to one scholar, "a well-designed coupon settlement, such as the one in the present case, can offer superior benefits to class members as compared with the best available cash settlement, because the defendant will typically be willing to provide more value in a coupon settlement than

13

it ever would have agreed to pay in a cash settlement." *In re W. Union Money Transfer Litig.*, No. 01-cv-0335, 2004 U.S. Dist. LEXIS 29377, at *38 (E.D.N.Y. Oct. 18, 2004). The attributes of a well-designed, valuable coupon settlement include:

> (1) that the coupons can be redeemed for a product or service that the class members are likely to purchase even without the coupon; (2) that the product or service for which the coupon can be redeemed is readily available and does not have idiosyncratic features that make it a poor substitute for products or services offered by others; (3) that the coupons can be used immediately upon receipt; (4) that there is a relatively lengthy redemption window; and (5) that the coupons are transferable.

*Id.*

The Wawa Gift Cards satisfy these criteria. Wawa has a loyal base of repeat customers who routinely return to its 900+ stores, so "no inducement will be necessary to encourage them to use defendant['s]" Wawa Gift Cards and class members are "not likely to have any difficulty in finding a[ Wawa] location at which to redeem their [Gift Cards.]" *See id.* at *39. The Wawa Gift Cards are immediately usable after issuance and remain valid for a comparatively long period as compared to most coupon settlements. *See, e.g. Shaw*, 91 F. Supp. 2d at 960-61, 983 (concluding that one-year discount coupons were a "model" for the design of non-cash class action settlements). Further, the Wawa Gift Cards are freely transferrable and can be used by any holder. "As a result, even those consumers who no longer use defendant['s] service will be able to sell their coupons or give them away." *In re W. Union*, 2004 U.S. Dist. LEXIS 29377, at *40-41. The transferability feature of the Wawa Gift Cards "essentially makes them cash equivalents" because a class member could stand inside a Wawa location and give or sell his Wawa Gift Card to the next person who approaches the counter. *Id.* (citation omitted). Accordingly, the Wawa Gift Cards, even if couched as "coupons," provide a substantial benefit to the Class and warrant approval.

Any challenge to counsel fees as it relates to the "coupon" component of the settlement is premature. Employee Track Plaintiffs will have the opportunity to object to any fee petition at the appropriate time after the Consumer Plaintiffs file their motion for a fee award. *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 444 (3d Cir. 2016) ("The petition for a fee award will be submitted to the Court at a later date. Objectors will then be able to present arguments as to why the requested award is improper, and the Court will have discretion to modify the award in whatever way it sees fit."). Under Rule 23(h), "a fee petition must be made by motion served on all parties and, when the motion is made by class counsel, notice must be "directed to class members in a reasonable manner." *Id.* at 445 (citing Fed. R. Civ. P. 23(h)(1)). Class members— such as the Employee Track Plaintiffs—may then object and the court may hold a hearing. *Id.*

That said, any contentions that tether Co-Lead Class Counsel's fee award to the redemption rate of the "coupons" are meritless, as Co-Lead Class Counsel have already indicated that they intend to move for fees reflecting a negative multiplier of counsel's aggregate lodestar. Joint Decl., at ¶ 41. *See, e.g.*, *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 389 (E.D. Pa. 2019) ("The negative multiplier suggests that Plaintiffs' fee request is reasonable."); *Rougvie*, 2016 U.S. Dist. LEXIS 99235, at *83 ("[i]f the requested attorneys' fees are not based on a portion of the redeemed coupons, we calculate the attorneys' fees through a lodestar with a multiplier method"); *Elias v. Ungar's Food Prods.*, No. 06-02448-KSH-PS, 2013 U.S. Dist. LEXIS 203851, at *21 (D.N.J. Jan. 28, 2013) (in a partial coupon settlement consisting of direct reimbursement or coupons for discounted products, the court found the lodestar method appropriate for calculating counsel fees because "the settlement agreement does not contemplate a common fund that would be depleted depending upon the size of the fee award"). The negative multiplier Co-Lead Class Counsel will seek is well below the multiplier range which the Third

Circuit has said is reasonable. *See Martina v. L.A. Fitness Int'l, Inc.*, No. 2:12-cv-2063, 2013 U.S. Dist. LEXIS 145285, at *26 (D.N.J. Oct. 8, 2013) (recognizing the multiplier range of 1.35 to 2.99 has been found to be "reasonable" within the Third Circuit).

**3.      The Injunctive Relief Affords Significant Forward-Looking Relief to the Class**

The Employee Track Plaintiffs are again wrong when they argue that the injunctive relief estimated to value approximately $35 million is insufficient.  S.A. at ¶ 39. The injunctive relief affords significant protective measures that benefit *all* Class Members, regardless of whether they receive Wawa Gift Cards or cash reimbursements. The enhanced security measures are appropriately tethered to the claims in this litigation, as they seek to strengthen Wawa's credit card data security to prevent such similar incidents in the future. *Fulton-Green*, 2019 U.S. Dist. LEXIS 164375, at *22 (citing approvingly the fact that the data breach settlement's "injunctive relief also includes new policies[ ], and training to prevent similar breaches in the future"); *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *256 (N.D. Ga. Mar. 17, 2020) ("The Court specifically finds that the injunctive relief class counsel obtained here is a valuable benefit to the class because it reduces the risk that their personal data will be compromised in a future breach."). The relief here is particularly meaningful given the size of Wawa's repeat customer base.

Further, there is no evidentiary support for the Employee Track Plaintiffs' contention that the proposed injunctive relief "fails to remedy the defects that caused the loss of Employee PII from the Wawa Corporate Computers." Opp. at 22. The Employee Track Plaintiffs argue that the breaches of Wawa's "data security were not limited to its POS systems" without support, aside

from Employee Track's counsel's citation to his own uncorroborated argument at the November 10, 2020 hearing. *Id.* at 3-4; n.13.[5]

Moreover, the Employee Track Plaintiffs' arguments about Wawa producing the Final PFI Report after the mediation are misplaced. *Id.* While the Parties reached an agreement *in principle* at the mediation, the details of the Settlement Agreement were ironed out over the next several months, during which time Co-Lead Class Counsel also reviewed and considered the Final PFI Report before finalizing the terms of the Settlement Agreement. *See* Joint Decl., at ¶¶ 19-22. Indeed, the agreement in principle that was reached at the mediation was subject to the settlement being verified by counsel as being fair, reasonable and adequate through confirmatory discovery. *See Fulton-Green*, 2019 U.S. Dist. LEXIS 164375, at *15 ("…although formal discovery has not yet occurred, the parties have exchanged a substantial amount of information through an 'informal process' and these disclosures provide enough information, given the discrete issues in this case, to weigh the terms of settlement against the risks of ongoing litigation") (citation omitted).

In any event, to the extent that Employee Track Plaintiffs believe that additional security enhancements or protections should be implemented to safeguard employee data (separate and apart from the protections afforded to consumers through Wawa's point-of-sale systems), they are free to seek those additional protections in the Employee Track case.

---

[5] This contention is further belied by the Rule 11 letter sent by Wawa to Mr. Haviland in advance of Wawa's motion to dismiss the Employee Track case, wherein Wawa's counsel emphasizes that "[a]ny allegations that employee information was involved and any allegations that Wawa knew the data security incident compromised data lack evidentiary support and will continue to lack evidentiary support even after a reasonable opportunity for discovery." *See* Ex. A to Wawa's Motion to Dismiss, or, In the Alternative, to Stay Plaintiffs' First Amended Complaint, ECF No. 143-3.

4.    **Common Sense Distinctions Among Class Members, as Demonstrated by the Three-Tiered Approach Here, are Appropriate**

The Employee Track Plaintiffs' argument that there is "zero differentiation" among the three tiers of relief to Class Members (Opp. at 2) is simply wrong. Here, the Settlement's three-tier compensation structure totaling up to $9 million in aggregate payments was the subject of intense arms'-length negotiation at the mediation. Judge Welsh described these "facilitated negotiations" as "lengthy, principled, exhaustive, informed, and sometimes contentious but always professional." Welsh Decl. at ¶ 9.

Since Wawa owed the same duty to all of its consumers, including employees, the tiering system negotiated at the mediation was based on Wawa's causation and damages arguments. Tier One claimants need not have experienced fraudulent purchases on their cards, and they will be entitled to a $5 Wawa Gift Card. Tier Two will consist of claimants who can submit reasonable proof of a subsequent fraudulent charge or attempted fraudulent charge, which will entitle them to a $15 Wawa Gift Card. Tier Three claimants will consist of claimants who can demonstrate out-of-pocket expenses or losses up to $500. S.A. at ¶ 36.

This type of tiered compensation structure, which compensates class members based on the type and extent of their injuries, is reasonable and appropriate, and courts routinely approve such relief. *See, e.g.*, *Fulton-Green*, 2019 U.S. Dist. LEXIS 164375, at *22 (approving settlement where "the settlement treats each class member individually" … "[e]ach and every class member can receive a reimbursement specific to their losses"); *In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-02185, 2019 U.S. Dist. LEXIS 197733, at *28-29 (N.D. Cal. Nov. 12, 2019) (approving settlement plan that "divides claimants into different groups based on the relative size of their potential claims and distributes funds based on these groups") (citing *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 U.S. Dist. LEXIS 213045, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18,

2018) (collecting cases approving distribution plans based on relative amount of damages suffered by class members)); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable.")).

The relief afforded to the Class also takes into consideration the risks in proceeding with litigation. As this Court has recognized, "[t]his is a complex case in a risky field of litigation because data breach class [act]ions are uncertain and class certification is rare." *Fulton-Green*, 2019 U.S. Dist. LEXIS 164375, at *21-22 (citing *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 3:08-1998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010 (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results")). In *Fulton-Green*, as here, "without a settlement, the plaintiffs would face an uphill battle in that they would need to survive a motion to dismiss, maintain certification, and, likely, motions for summary judgment." *Id.* at *22. "This would be a time consuming and expensive process that would delay relief for class members." *Id.* Compare that with the definite and timely relief afforded by the Settlement, the types of forms of relief provided here are appropriate and weigh in favor of approval. *See, e.g.,* Welsh Decl. at ¶ 17 ("I can say that, from a mediator's perspective, the negotiated settlement produced by the mediation process represents a thorough, deliberative, and comprehensive resolution that will benefit class members through meaningful relief, and avoids the considerable risks and costs inherent in class action litigation.").

### C.    The Proposed Notice Plan Satisfies Due Process

The Employee Track Plaintiffs' claim that the proposed plan of notice does not comport with due process is based on fundamental errors as to both the facts and the law.

As to the facts, the Employee Track Plaintiffs refer to in-store placard notice as the "lone means of notice." Opp. at 24. As the Consumer Track Plaintiffs' submission details, the notice plan further provides for a settlement website, a press release, and an announcement on Wawa's website, each with links to the settlement website. *See* Peak Decl. ¶¶ 13-20. More importantly, there has been—and will inevitably continue to be—substantial publicity surrounding the Settlement. The Settlement has already received coverage in prominent media outlets, including the *Philadelphia Inquirer* and the local ABC affiliate, as well as large media outlets in New Jersey and Delaware, and at least one national trade publication.[6] *See also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1115, 1127 (9th Cir. 2020), *cited in* Preliminary Approval Br., at 30. Significantly more media coverage will likely take place when the settlement press release is issued in connection with the notice plan.

As to the law, the Employee Track Plaintiffs cite ancient decisions to misleadingly argue that notice by first class mail is required in all cases. *See* Opp. at 23 (citing *Mullane v. Central*

---

[6] *See* C. Hetrick, *Wawa would pay customers up to $9 million for hackers exposing credit card info, proposed settlement says*, PHILADELPHIA INQUIRER, Feb. 19, 2021 (available at https://www.inquirer.com/business/wawa-data-breach-settlement-hackers-malware-credit-debit-cards-20210219.html); *Wawa would pay customers $9M in cash, gift cards in proposed settlement*, 6abc.com, Feb. 25, 2021 (available at https://6abc.com/wawa-data-breach-class-action-lawsuit-settlement-security/10369644/); J. Goldman, *Wawa would hand out $8M in gift cards under proposed settlement following data breach*, NJ.COM, Feb. 25, 2021 (available at https://www.nj.com/business/2021/02/wawa-would-hand-out-8m-in-gift-cards-under-proposed-settlement-following-data-breach.html); J. Neiburg, *Wawa might owe you money or gift card, according to proposed data breach settlement*, DELAWARE NEWS JOURNAL, Feb. 27, 2021 (available at https://www.delawareonline.com/story/news/2021/02/27/wawa-might-owe-you-money-according-proposed-data-breach-settlement-delaware-online-wawa-gift-card/6850206002/); *Wawa Agrees to Pay Customers Up to $9 Million Over Data Breach,* CONVENIENCE STORE NEWS, Feb. 24, 2021 (available at https://csnews.com/wawa-agrees-pay-customers-9-million-over-data-breach). *See also* K. Meyer, *Proposed settlement could give Wawa shoppers affected by data breach up to $500*, WHYY.ORG, Feb. 25, 2021 (available at https://whyy.org/articles/proposed-settlement-could-give-wawa-shoppers-affected-by-data-breach-up-to-500/).

*Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)), 24 (citing *Eisen & Carlisle v. Jacquelin*, 417 U.S. 156, 176 (1974)). This is not the law. Rule 23 was conformed to modern practice in 2018, and now provides that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). In effecting that change, the Advisory Committee observed that "[i]nstead of preferring any one means of notice, …the amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court. The court should exercise its discretion to select appropriate means of giving notice." Adv. Comm. Notes to 2018 Amendments. Other cases the Employee Track Plaintiffs cite—which likewise pre-date the amendment to Rule 23—provide only that mail notice is adequate, as opposed to mandatory. *See* Opp. at 26.

Even prior to the 2018 amendments to Rule 23, the judiciary recognized that the adequacy of a notice program is a function of its reach, rather than the means it employs to that end. As Consumer Plaintiffs previously explained, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, *quoted in* Peak Decl. ¶ 22. The Employee Track Plaintiffs do not even question that standard, much less attempt to show that the proposed notice plan will not satisfy it.

That standard is reflected in a series of decisions following its establishment. For example, the court in *In re Google Referrer Header Priv. Litig.*, No. 10-cv-4809, 2014 U.S. Dist. LEXIS 41695 (N.D. Cal. Mar. 26, 2014), approved a plan that provided for indirect notice only, exclusively by electronic means and unsolicited media coverage:

> Faced with similar circumstances, other courts have approved indirect notice to
> potential class members in a manner similar to notice by publication. … That is

what the parties propose here. The plan includes four media channels: (1) internet-based notice using paid banner ads targeted at potential class members (in English and in Spanish on Spanish-language websites); (2) notice via "earned media" or, in other words, through articles in the press; (3) a website decided solely to the settlement (in English and Spanish versions); and (4) a toll-free telephone number where class members can obtain additional information and request a class notice. There will also be a dedicated post office box for class members to correspond with the settlement administrator. *Plaintiffs approximate this advertising campaign will reach approximately 73.1% of likely class members.* In light of the size of the class, the court finds that this plan meets the goals Rule 23(c)(2)(B).

*Id.* at *24-25 (emphasis added) (citation omitted). *See also Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 287 (7th Cir. 2017) (approving notice plan that reached "approximately 70%" of millions of class members); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *225 (citing Federal Judicial Center standard); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-4766, 2017 U.S. Dist. LEXIS 145217, at *19, n.45 (N.D. Cal. June 26, 2017) (same); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016) (same).

### 1. In-Store Placards Will Effectively Notify Wawa's Loyal Customer Base

Aside from erroneously claiming that the Consumer Plaintiffs intend to rely strictly on in-store placards to notify the class, the Employee Track Plaintiffs ignore authority Consumer Plaintiffs cited allowing for in-store placards. *See* Preliminary Approval Br., at 30 (citing *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-02807-JSG (Dkt. 145), slip op. at 5-6 (N.D. Ohio Dec. 20, 2018); *Palamara v. Kings Family Rests.*, No. 07-cv-317, 2008 WL 1818453, at *1 (W.D. Pa. Apr. 22, 2008)). Moreover, the court in a case the Employee Track Plaintiffs do cite, *Lanqing Lin v. Everyday Beauty Amore Inc.*, 2018 U.S. Dist. LEXIS 207988, *19 (E.D.N.Y. Dec. 9, 2018), in fact endorsed the use of in-store notice. *Id.* at *21-22.[7]

---

[7] *Cf.* Opp. at 24. The Employee Track Plaintiffs quote only a portion of a sentence from *Lanqing Lin*. The full sentence is as follows: "*Because notice will not be posted in defendants' store*

Again, notice was thoroughly discussed and considered at the mediation. "As a result of back-and-forth discussions, the parties agreed that in-store notice would be the most effective way to reach Wawa's customers, who are far more likely to be repeat customers, unlike many other retailers' customers." Welsh Decl. at ¶ 14. Wawa estimates that more than 64 million customers would see signs posted during a four-week period that they would be posted. O'Brien Decl. at ¶ 5.

The Employee Track Plaintiffs misinterpret data they cite in support of their erroneous claim that "all members of the proposed Settlement Class [must] receive adequate notice of the proposed Consumer Class settlement by means of in-store placard notice only." Opp. at 29. The Employee Track Plaintiffs' chart purportedly reflecting a "drastic decrease" in Wawa's weekly foot traffic over the last year is cut off in early August of 2020. *Id.* at 28. A second chart reflecting an immaterial 10 percent decrease in Wawa "brand visits" is more current. But as it relates to Wawa in particular, that figure most likely reflects a decrease in the frequency of "brand visits" by Wawa's exceptionally loyal customer base. *See* Preliminary Approval Br., at 2, 12 (referencing Wawa's customer base). Conversely, Wawa's primary competitor, 7-Eleven, which does not maintain an unusual degree of loyalty from its customer base, suffered a 31 percent decline in "brand visits" during the same period.

---

*locations, however*, it is appropriate for notice to be provided both by first class mail and email to ensure that potential plaintiffs receive notice of this action." *Id.* at *8 (portion omitted by Employee Track Plaintiffs emphasized).



Finally, data upon which the Employee Track Plaintiffs rely for the premise that there are purportedly a meaningful number of "disgruntled, former patrons of Wawa" reflect nothing of the sort. The Consumer Affairs site Employee Track Plaintiffs reference (*see* Opp. at 30 n.36) contains a total of six reviews of Wawa submitted during the relevant period. And the Complaints Board site referenced in the same footnote is, as Employee Track Plaintiffs' reference reflects, strictly an attraction for a few hundred out of the tens of millions of potential class members.

### 2. The Small Fraction of Class Members Who are Current or Former Wawa Employees Will be Effectively Notified Without First Class Mail

Wawa estimates that over 22 million people were affected by the Data Security Incident that precipitated this case. *See* Preliminary Approval Br., at 23. As the Employee Track Plaintiffs acknowledge, Wawa currently employs 34,000 people. Opp. at 15. Even if Wawa employed an additional 10,000 people over the course of the proposed class period, and all of those employees were members of the class, they would comprise approximately 0.2 percent of the class. Moreover,

---

[8] *See* https://gravyanalytics.com/covid-19-economic-activity-us-state/.

the Employee Track Plaintiffs do not (and cannot) claim that all of those employees are members of the Consumer Track class. The Employee Track Plaintiffs thus would have the Court require a burdensome effort in part to afford individual notice to people who are not even members of the proposed class.

Moreover, current and former employees are far more likely to receive notice than other class members under the Consumer Track Plaintiffs' existing plan. Current employees are certain to see, and almost certain to discuss, the in-store placards that will appear in every Wawa store. And, presumably, former Wawa employees are more likely to maintain contact with current Wawa employees and maintain awareness of Wawa's business affairs than are class members who have never worked there.

For all of these reasons and those set forth in the Preliminary Approval Brief, the notice plan is appropriately tailored for this case and meets the requirements of Rule 23. Consumer Track Plaintiffs respectfully submit that the Employee Track Plaintiffs' opposition be rejected and the notice plan approved.

## III.    CONCLUSION

For the foregoing reasons, as well as those set forth in Consumer Plaintiffs' opening unopposed motion, the Court should reject the arguments raised by the Employee Track Plaintiffs and grant Consumer Plaintiffs' Motion for Preliminary Approval.

Dated: March 19, 2021                                 Respectfully submitted,

                                                      */s/ Benjamin F. Johns*
                                                      Benjamin F. Johns (PA Bar No. 201373)
                                                      Samantha E. Holbrook (PA Bar No. 311829)
                                                      CHIMICLES SCHWARTZ KRINER
                                                      & DONALDSON-SMITH LLP
                                                      361 W. Lancaster Avenue
                                                      Haverford, PA 19041
                                                      (610) 642-8500
                                                      bfj@chimicles.com

                                                      */s/ Sherrie R. Savett*
                                                      Sherrie R. Savett (PA Bar No. 17646)
                                                      BERGER MONTAGUE PC
                                                      1818 Market Street, Suite 3600
                                                      Philadelphia, PA 19103
                                                      (215) 875-3000
                                                      ssavett@bm.net

                                                      */s/ Roberta D. Liebenberg*
                                                      Roberta D. Liebenberg (PA Bar No. 31738)
                                                      FINE, KAPLAN AND BLACK, R.P.C.
                                                      One South Broad St., 23rd Floor
                                                      Philadelphia, PA 19107
                                                      (215) 567-6565
                                                      rliebenberg@finekaplan.com

                                                      */s/ Linda P. Nussbaum*
                                                      Linda P. Nussbaum *(admitted pro hac vice)*
                                                      NUSSBAUM LAW GROUP, P.C.
                                                      1211 Avenue of the Americas, 40th Fl.
                                                      New York, NY 10036-8718
                                                      (917) 438-9102
                                                      lnussbaum@nussbaumpc.com

                                                      *Interim Co-Lead Counsel for*
                                                      *  Consumer Track Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Benjamin F. Johns, hereby certifies that on March 19, 2021, a true and correct copy of CONSUMER TRACK PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT was served via this Court's ECF system.

*/s/ Benjamin F. Johns*
Benjamin F. Johns