IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: WAWA, INC. DATA SECURITY LITIGATION<br><br>*This Document Applies to the Consumer Track* | Case No. 2:19-cv-06019-GEKP<br><br>The Honorable Gene E.K. Pratter |

**<u>DEFENDANT WAWA, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CONSUMER TRACK SETTLEMENT AND IN RESPONSE TO OPPOSITION OF EMPLOYEE TRACK PLAINTIFFS</u>**

## TABLE OF CONTENTS

                                                                                                                                   **Page**

I.     The Consumer Settlement Excludes Non-Duplicative Employee Track Claims .............. 2

II.    The Consumer Settlement Notice Program Is the Best Practicable Under the Circumstances ................................................................................................................... 4

III.   CAFA Does Not Prohibit Gift Card Settlements ............................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
    No. 08-0309, 2011 WL 1790603 (W.D. Mo. May 10, 2011) .................................................. 10

*Carlough v. Amchem Prod., Inc.*,
    158 F.R.D. 314 (E.D. Pa. 1993) ............................................................................................... 8

*Hall v. Best Buy Co.*,
    274 F.R.D. 154 (E.D. Pa. 2011) ............................................................................................... 8

*Harris v. Pernsley*,
    654 F. Supp. 1042 (E.D. Pa. 1987) .......................................................................................... 7

*Johnson v. Ashley Furniture Indus., Inc.*,
    No. 13CV2445 BTM(DHB), 2016 WL 866957 (S.D. Cal. Mar. 7, 2016) ............................... 9

*Palamara v. Kings Fam. Restaurants*,
    No. CIV. A. 07-317, 2008 WL 1818453 (W.D. Pa. Apr. 22, 2008) ......................................... 5

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ................................................................................................ 7, 8

*Radosti v. Envision EMI, LLC*,
    717 F. Supp. 2d 37 (D.D.C. 2010) ......................................................................................... 11

*Reibstein v. Rite Aid Corp.*,
    761 F. Supp. 2d 241 (E.D. Pa. 2011) ....................................................................................... 9

*Torres v. Pet Extreme*,
    No. 1:13-CV-01778-LJO, 2015 WL 224752 (E.D. Cal. Jan. 15, 2015),
    *amended*, No. 1:13-CV-01778-LJO, 2015 WL 648241 (E.D. Cal. Feb. 5,
    2015), *report and recommendation adopted*, No. 113CV01778LJOSAB, 2015
    WL 13653878 (E.D. Cal. Feb. 24, 2015) ................................................................................. 8

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ..................................................................................................... 7

**STATUTES**

Class Action Fairness Act of 2005, 28 U.S.C. § 1712 .................................................... 2, 9, 10, 11

**RULES**

Federal Rule of Civil Procedure 23 ........................................................................... *passim*

Defendant Wawa, Inc. ("Wawa") submits this reply brief in support of the motion for preliminary approval of the Consumer Track Settlement (Dkt. 180, "Preliminary Approval Motion") and in response to Employee Track Plaintiffs' opposition thereto (Dkt. 187, "Opposition"). The Opposition lacks merit for at least three reasons, and the Court should grant preliminary approval.

First, and most fundamentally, Employee Track Plaintiffs misunderstand the scope of the release in the proposed Consumer Track settlement (the "Consumer Settlement"). The Consumer Settlement does **not** resolve or release any claim by any current or former Wawa employees or their dependents about alleged compromises of Social Security numbers or bank account information used for direct deposit. The Consumer Settlement therefore does not propose to extinguish the fanciful claim that Employee Track Plaintiffs want to make that the Wawa data security incident extended beyond payment card information and affected employee human relations ("HR") information, including Social Security numbers. They are factually wrong in asserting that claim, and Plaintiff Shawn McGlade is the only one of over 50,000 current or former Wawa employees during the relevant time to have asserted any such claim. But regardless of the merits, that claim will not be foreclosed by the Consumer Settlement.

Second, Employee Track Plaintiffs suggest that the Consumer Settlement does not afford the best notice practicable as required by Rule 23. That suggestion is contrary to the evidence. Employee Track Plaintiffs cite industry statistics about convenience store traffic from mid-2020—the height of the pandemic, when much of the public was subject to mandatory stay-at-home orders. They ignore better evidence from 2021 about store traffic at the time the notice will be provided. Similarly, they suggest that Wawa employees should be given special notice, but Wawa

employees will receive ample notice in stores, through internal Wawa communications, and through news coverage, among other avenues.

Third, Employee Track Plaintiffs suggest that the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1712, prohibits gift card settlements. Not so. Employee Track Plaintiffs point to CAFA provisions that apply to "coupon" settlements, but the case law makes clear that gift cards redeemable for merchandise without requiring the class member to pay more (like those involved here in the Consumer Settlement) are not "coupons." In any event, CAFA only restricts the way in which attorneys' fees are awarded in connection with any coupon settlement; it does not affect whether such settlements are fair, reasonable, and adequate such that they deserve preliminary approval.

The Court should grant preliminary approval of the Consumer Settlement.

## I. The Consumer Settlement Excludes Non-Duplicative Employee Track Claims.

The Opposition rests largely on a false premise, namely that the Consumer Settlement proposes a global release of all Employee Track data security claims against Wawa. The Opposition suggests that the Consumer Settlement threatens to "compromise and extinguish the rights of Shawn and Karen McGlade, and the tens of thousands of other Employee Track Plaintiffs." Opposition at 2; *see also, e.g.*, *id.* at 25 (suggesting the Consumer Settlement seeks to "[e]xtinguish" the rights of Wawa employees).

That is false. The Consumer Settlement does not resolve all Employee Track data security claims against Wawa. Specifically unaffected are claims based on allegations that employee HR information—*i.e.*, Social Security numbers and bank account information used for direct deposit purposes—that employees gave to Wawa in connection with their employment was compromised. Such claims are expressly excluded from the scope of the release in the Consumer Settlement, which provides as follows:

2

> Upon the Effective Date, each Releasor shall release, discharge, and covenant not to sue Wawa, its past or present parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, and purchasers of each of the foregoing) ("Released Parties") from all claims, demands, judgments, actions, suits and/or causes of action, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising in any way from or in any way related to the facts, activities, or circumstances alleged in the Consolidated Class Action Complaint or arising from or related in any way to the Data Security Incident, up to the Effective Date of the Settlement Agreement, **but excluding any claims by any Wawa employee, former Wawa employee or dependent thereof that a social security number or bank account used for payroll direct deposit of the Wawa employee, former Wawa employee, or dependent thereof has been compromised** (the "Release" or "Released Claims").

Settlement Agreement, Dkt. 181-1 ¶ 96 (emphasis added). To the extent Employee Track Plaintiffs seek to assert such claims against Wawa, nothing in the Consumer Settlement prevents them from doing so.

Insofar as Employee Track Plaintiffs seek redress for the injury suffered while "walking and talking like a consumer," Nov. 10, 2020 Oral Arg. Tr., Dkt. 162, 67:14-15, such claim **is** appropriately resolved through the Consumer Settlement. This is not surprising. The Court divided this litigation into separate tracks—one for data security claims on behalf of Wawa **customers** whose payment card information was allegedly compromised (the "Consumer Track") and another for Employee Track Plaintiffs' data security claims on behalf of Wawa **employees** whose HR information was allegedly compromised (the "Employee Track")—so that the injuries allegedly suffered by Wawa consumers could be resolved in one track and the unique injuries allegedly suffered by Wawa employees could be resolved in another. CMO No. 2, Dkt. 119, at Part II; *see also* Dkt. 78 at 21-22 (noting that the Employee Track lawsuit "allege[d] that hackers stole employee information, including Social Security numbers, whereas the consumer cases do not allege the theft of employee information"). It was always contemplated that Wawa employees

3

who were allegedly injured as consumers would be included in a settlement in the Consumer Track. Wawa employees who were allegedly injured as consumers were never carved out from the Consumer Track. And the relief Employee Track Plaintiffs and other Wawa employees may receive under the Consumer Settlement—including pecuniary relief and injunctive relief strengthening Wawa's point-of-sale payment card processing systems—redresses the harm they allegedly suffered as consumers, not any alleged injuries suffered as employees.

Wawa maintains that Employee Track Plaintiffs have not asserted a viable claim that their Social Security numbers or bank accounts used for direct deposit were compromised. They fail to say so clearly or plausibly in their most recent Amended Complaint. And Mr. McGlade is the only one of more than 50,000 current and former Wawa employees who worked during the time of the Wawa data security incident to make such a claim. Contrary to the suggestion in the Opposition, no forensic analysis has concluded that employee Social Security numbers or bank account information used for direct deposit were compromised. But, where the Opposition suggests that the Court should deny preliminary approval because such claims are foreclosed by the Consumer Settlement, the Opposition is wrong.

The Court should therefore grant preliminary approval of the Consumer Settlement, confident that any claims by current or former employees or their dependents about Social Security numbers or bank account information used for direct deposit are preserved for litigation in the Employee Track if and when they are appropriately presented there.

## II. The Consumer Settlement Notice Program Is the Best Practicable Under the Circumstances.

The Notice Program for the proposed Consumer Settlement fully satisfies the requirements of Rule 23. Pursuant to Rule 23(c)(2)(B), notice to class members must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be

4

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). What constitutes adequate notice will depend on the circumstances of each case. *Id.*

Employee Track Plaintiffs' objection to the use of in-store posters lacks merit. Employee Track Plaintiffs claim that in-store notice will be ineffective because "[t]he six (6) states in which Wawa has its stores are all suffering the continuing affects [sic] of the Covid-19 pandemic." Opposition at 24-25. In support, Employee Track Plaintiffs cite outdated statistics from the height of the pandemic in mid-2020. *Id.* at 28-30. In the months cited by Employee Track Plaintiffs—March through August 2020—retail stores across the country saw an unprecedented decline in in-person sales, as most jurisdictions either encouraged or mandated their residents to stay at home. Current statistics, on the other hand, demonstrate that over 64 million people will see the notices during the Notice Period. *See* Preliminary Approval Motion at 12; Dkt. 180-5 ¶¶ 2-5 (stating that, based on current statistics, if signs regarding the consumer settlement are posted during a four-week period in March or April 2021, more than 64 million people are likely to see them). This number is likely to be even higher in the coming weeks as vaccines become increasingly available and state and local governments continue to ease COVID-19 restrictions.

Moreover, Employee Track Plaintiffs repeatedly complain that in-store notice is the only means by which class members will learn of the settlement, Opposition at 25, 28-32, disregarding the fact that the Notice Program also includes notice in the form of signs at fuel pumps, information posted on Wawa's website, information posted on a comprehensive settlement website, a press release from Wawa, and resulting media coverage. *See* Dkt. 181-4 ¶¶ 13-20. As set forth in the Preliminary Approval Motion, the Notice Program is designed to efficiently and effectively reach a significant number of class members and represents the best notice practicable in these circumstances. Preliminary Approval Motion at 28-33; *see also Palamara v. Kings Fam. Rests.*,

5

No. CIV. A. 07-317, 2008 WL 1818453, at *6 (W.D. Pa. Apr. 22, 2008) (finding that restaurant's plan to post notice for class of consumers at restaurants, in newspapers, and on website was best notice practicable under the circumstances).

In particular, Employee Track Plaintiffs' assertion that the Notice Program will fail to reach "aggrieved" former employees who no longer visit Wawa, Opposition at 28, overlooks the significant media coverage that will result from the Notice Program. Indeed, class members have already likely become aware of the Settlement Agreement through extensive media coverage of the proposed settlement. *See* Decl. of L. Bruce, attached hereto as Exhibit A. During the week following the filing of the Preliminary Approval Motion, regional and national media sources including the Philadelphia Inquirer, NJ.com, Yahoo News, and Bloomberg Law published articles announcing the potential settlement, including the general terms of the agreement and the settlement amount. *Id.* ¶¶ 2-3. Additionally, television stations 6ABC and WHYY featured news stories regarding the potential settlement both on television and online. *Id.* ¶ 2. According to media impressions—a measurement of the number of times a news article or video is viewed online—online news reports regarding the potential settlement published during the week following the filing of the Preliminary Approval Motion were viewed ***over 99 million times***. *Id.* ¶¶ 1, 4. The news article published on Yahoo News alone was viewed more than 71 million times. *Id.* ¶ 4. The reach of news reports regarding the settlement is almost certainly even broader, given that the over 99 million media impressions do **not** include individuals who read news reports in physical newspapers or watched news reports on television. In sum, with over 99 million media impressions and 64 million visits to Wawa stores, information about the settlement will be directly communicated over 163 million times. That is more than seven times the estimated class size of

22 million.  It is certainly more notice than the "publication notice" that the Opposition suggests, which would go in the legal notices section of periodicals distributed in hard copy.

The parties expect similar news coverage regarding the settlement to continue throughout the settlement process, and such coverage will undoubtedly expand the reach of the notice in this case.  Courts have long recognized the impact of media coverage in providing notice to a settlement class.  *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 327 (3d Cir. 1998) (citing "unsolicited news coverage the settlement received" as a factor "greatly increas[ing] the possibility" that more class members would be compensated); *Harris v. Pernsley*, 654 F. Supp. 1042, 1047 (E.D. Pa. 1987) (finding notice of class action settlement resulting from "extensive publicity in the news media" to be best notice practicable) (citations omitted).

Employee Track Plaintiffs further object to the Notice Program as inadequate because it does not include first class mail notice to all current and former Wawa employees.  Opposition at 24.  However, it is neither necessary nor practicable for Wawa to mail notice to current and former employees who are class members.  The law is clear that individual notice need be provided only to individuals whose identities as class members can be ascertained through "reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) (where parties did not have access to names and addresses of the "multitude of people nationwide who purchased" the product at issue, a notice plan that did not include any individual direct mail notice was a "reasonable effort" to provide the "best notice practicable under the circumstances").

Employee Track Plaintiffs allege that Wawa has access to contact information that can be used to provide practicable notice to members of the proposed settlement class who are current or former employees.  Opposition at 5, 26.  That is inaccurate.  First, Wawa does not regularly collect

7

and maintain personal email addresses for its employees, and many of its store employees do not have Wawa.com email addresses. Wawa also does not have email addresses for former employees. Thus, Wawa does not have email addresses that would be usable to send notice to current or former employees. Second, to the extent Wawa has physical addresses for any current or former employees, the address may not be accurate, especially for former employees whose addresses may have changed since their employment at Wawa. The in-store and media notice planned here are therefore better methods of notice than a piece of mail that might go to the wrong address or be ignored. Third, and most importantly, Wawa has no knowledge of which employees made purchases at Wawa during the class period, let alone whether they did so with payment cards. *See* Opposition at 26. Because Wawa is unable to ascertain the identities of class members through "reasonable effort," individual notice is not required. *See* Fed. R. Civ. P. 23(c)(2)(B); *Carlough v. Amchem Prod., Inc.*, 158 F.R.D. 314, 327-28 (E.D. Pa. 1993) ("In striking the balance between protecting the rights of absent class members and making Rule 23 workable, courts have held that it is not necessary to send individual notices to an overinclusive group of people simply because that group contains some additional class members whose [identities] are unknown.") (collecting cases); *see also Torres v. Pet Extreme*, No. 1:13-CV-01778-LJO, 2015 WL 224752, at *2-3 (E.D. Cal. Jan. 15, 2015), *amended*, No. 1:13-CV-01778-LJO, 2015 WL 648241 (E.D. Cal. Feb. 5, 2015), *report and recommendation adopted*, No. 113CV01778LJOSAB, 2015 WL 13653878 (E.D. Cal. Feb. 24, 2015) (posting of notice in stores and on website satisfied requirements of Rule 23 where defendant lacked information to determine the identities of customers who made purchases during relevant period).[1]

---

[1] Employee Track Plaintiffs also claim that publication notice is "the only reasonable means to reach class members who no longer frequent Wawa stores" (without explaining how such notice would differ from the numerous news

Far from being in the dark about the settlement, Wawa employees will be among the most informed, having had ample opportunity to see and learn about it from in-store notices they see every day. In advance of the Notice Period, Wawa employees will receive communications and instructions regarding the signs so that they will be prepared to assist customers who may have questions about the signs, and, as noted above, former employees will have ample opportunity to learn about the settlement through signs in stores and at fuel pumps, information posted on Wawa's website, information posted on a comprehensive settlement website, a press release from Wawa, and extensive media publicity. *See* Preliminary Approval Motion at 10-13.

### III.    CAFA Does Not Prohibit Gift Card Settlements.

Employee Track Plaintiffs' assertion that CAFA requires heightened scrutiny of gift card settlements has been rejected by courts across the country, including in this district. Employee Track Plaintiffs claim that "[w]hen settling parties in a class action choose to settle for no cash, but only coupons, vouchers or other non-cash equivalents, the settlement directly implicates requirements of the Class Action Fairness Act[.]" Opposition at 12. This is false. As Employee Track Plaintiffs' own argument makes clear, CAFA applies to **coupon** settlements, not gift card settlements. *See id.* at 12-13 (stating that CAFA "invites increased judicial scrutiny of **coupon settlements** generally," "involves a series of specific rules that govern the award of attorneys' fees

---

stories covering the settlement), Opposition at 27, but they fail to cite a single case to support that proposition. Instead, the cases Employee Track Plaintiffs cite merely found that in circumstances distinct from those here, direct notice and publication notice satisfied the requirements of Rule 23. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d at 306 (where defendant insurance company had access to contact information for all class members, approving notice plan involving direct notice and publication notice and stating, "we note the provision of individual notice to each class member is by no means typical of the notice provided in most class actions"); *Hall v. Best Buy Co.*, 274 F.R.D. 154, 168 (E.D. Pa. 2011) (in FLSA action, finding that notice by mail and publication was performed "in a reasonable manner").

9

in **coupon class actions**," and "requires greater scrutiny of **coupon settlements**") (emphases added).

In the context of class settlements, the law treats gift cards differently than coupons. Indeed, multiple courts have rejected the argument Employee Track Plaintiffs makes here. *See, e.g.*, *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255-56 (E.D. Pa. 2011) (holding that Rite Aid gift cards denominated in dollar amounts that "can be used for literally thousands of products for which ordinary consumers . . . have need" are "more like 'cash' than 'coupons'" (citation omitted)); *see also Johnson v. Ashley Furniture Indus., Inc.*, No. 13CV2445 BTM(DHB), 2016 WL 866957, at *6 (S.D. Cal. Mar. 7, 2016) (holding settlement was "not a 'coupon' settlement within the meaning of CAFA" where class members had "choices as to what they may purchase with the voucher and may purchase an entire product as opposed to just reducing the purchase price"); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, MDL No. 1967, 2011 WL 1790603, at *3-4 (W.D. Mo. May 10, 2011) (holding settlement involving vouchers was not a coupon settlement where class members could use vouchers to buy products "without the expenditure of additional funds" and therefore did not "have to 'pay' to enjoy the benefits of the settlement").

Similar to the gift cards in these cases, the Wawa gift cards offered to consumers in Tier I and Tier II can be used for products or fuel at Wawa stores, are transferrable, and do not require that customers spend any money at Wawa to redeem the full value of the cards. *See* Preliminary Approval Motion at 6-7. Moreover, all of the class members have shopped at Wawa before, and they can easily use the full value of the gift cards for various purchases at Wawa, such as coffee, pastries, milk, and eggs. *See* Dkt. 181 ¶ 27 (stating that more than 3,000 products sold at Wawa cost less than $5.00 and 78% of products sold at Wawa cost well below $5.00). The gift cards

offered through this settlement are therefore not coupons, but rather are akin to cash. *See id.* (stating that 97.2% of the value of gift cards issued by Wawa in the last two years have been redeemed).

Even if this settlement involved coupons, which it does not, this fact would have no bearing on the Court's preliminary approval analysis. Under CAFA, even a class settlement involving coupons warrants approval if the Court finds that it is "fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). This is the same standard as Rule 23. *Compare* 28 U.S.C. § 1712(e) ("In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is **fair, reasonable, and adequate** for class members." (emphasis added)), *with* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is **fair, reasonable, and adequate** after considering" certain factors (emphasis added)); *see also Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 55 (D.D.C. 2010) (finding that "the judicial scrutiny called for by § 1712(e) is indistinct from the scrutiny required by Rule 23(e)"). Considering all of the relevant factors under Rule 23 and CAFA, this settlement is "fair, reasonable, and adequate."

At most, if this settlement involved coupons (and, again, it does not), CAFA would require only that class counsel's fee application—an application not currently before the Court—be "based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. § 1712(b)(1). As the only matter pending before the Court is the question of preliminary approval of the Consumer Settlement, CAFA's provisions regarding coupon settlements and their effects on a fee award simply are not relevant. This Court will have the opportunity to fully evaluate any fee award to class counsel at the time of final approval.

In sum, the Court should reject Employee Track Plaintiffs' opposition to the Preliminary Approval Motion and grant the relief requested in the Preliminary Approval Motion.

Dated:  March 19, 2021

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Gregory T. Parks*
  Gregory T. Parks (Pa. I.D. # 80620)
  Ezra D. Church (Pa. I.D. # 206072)
  Kristin M. Hadgis (Pa. I.D. # 209125)
  Terese M. Schireson (Pa. I.D. # 320999)
  1701 Market Street
  Philadelphia, PA 19103
  Tel: (215) 963-5000
  Fax: (215) 963-5001
  gregory.parks@morganlewis.com
  ezra.church@morganlewis.com
  kristin.hadgis@morganlewis.com
  terese.schireson@morganlewis.com

*Attorneys for Defendant Wawa, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on March 19, 2021 via the Court's ECF system upon all counsel of record.

*/s/ Gregory T. Parks*
Gregory T. Parks