UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE :WAWA, INC. DATA SECURITY LITIGATION | Lead Case No. 2:19-cv-06019-GEKP<br>CLASS ACTION<br><br>This filing relates to:<br>Employee and Consumer Tracks |

**SUR-REPLY IN SUPPORT OF THE MEMORANDUM OF LAW OF EMPLOYEE TRACK PLAINTIFFS IN OPPOSITION TO CONSUMER PLAINTIFFS' "UNOPPOSED" MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

Donald E. Haviland, Jr., Esquire
William Platt, Esquire
**Haviland Hughes**
201 South Maple Way, Suite 110
Ambler, PA 19002
(215) 609-4661 Telephone
(215) 392-4400 Facsimile

*Counsel for Plaintiffs, Shawn and Karen McGlade,
and Interim Class Counsel for the Class of Employee Plaintiffs*

**Table of Contents**

I. INTRODUCTION…………………………………………………………………..1

II. EMPLOYEE TRACK PLAINTIFFS' RESPONSE TO SETTLING PARTIES
REPLY TO OBJECTIONS…………………………………………………………..3

A. The Scope of the Proposed Release Includes Employee Track Plaintiffs' Separate
and Distinct Claims for Wawa's Data Breach Involving its Internal, Company Servers,
as well as Employees' Stronger Claims as Purported "Consumers" under *Dittman*……….3

B. The Notice Program Fails to Provide the Required Best Practicable Notice Under the
Circumstances through the use of First Class Mail and Electronic Mail to Last Known
Addresses, and the Wawa In-App Messaging Feature…………………………………..9

C. The Settlement Consideration in the Form of Wawa "Gift Cards" Fails to Meet the
Requisites of CAFA, and Fails to Provide Employee Track Class Members Fair,
Reasonable and Adequate Settlement Value for their Claims which Are Stronger
than those of Wawa Consumers……………………………………………………13

III. CONCLUSION…………………………………………………………….14

**Table of Authorities**

*Harris v. Pernsley,* 654 F.Supp. 1042 (E.D.Pa. 1987) ........................................................................ 11

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 7, 8

*Carlough v. Amchem Prod., Inc.*, 158 F.R.D. 314 (E.D.Pa. 1993) ...................................................... 12

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d 305 (3d Cir. 2008) ............................................... 7

*In re Prudential Inc. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3rd Cir. 1998) ....... 10, 11

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .................................................. 12

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L.Ed. 865 (1950) ....... 2

*Opperman v. Kong Techs., Inc.*, 2017 U.S.Dist. LEXIS 104507 at *19 (N.D.Cal. July 6, 2017) .......... 13

*Palamara v. Kings Fam. Rests., No. CIV A. 07-317*,

2008 U.S. Dist. LEXIS 33087 (W.D.Pa. Apr. 22, 2008) ................................................................ 11, 12

*Stuart v. State Farm Fire & Cas. Co.*, 322 F.R.D. 293 (W.D.Ark. 2019) ............................................ 13

**Rules**

Fed. Rule Civ. Proc. 11 ........................................................................................................................ 14

Fed. Rule Civ. Proc. 23 ..................................................................................................... 2, 5, 9, 10, 11

I.      INTRODUCTION

The purpose of this Sur-Reply is to address the discrete issues raised by Consumer Track Plaintiffs and Wawa in their respective Reply Briefs in Support of Motion for Preliminary Approval of Consumer Track Settlement.[1] Dkt No. 193 ("Consumer Reply"), Dkt. No. 194; ("Wawa Reply").

First, the replies argue that the proposed release will not "extinguish all of the claims asserted by the Employee Track Plaintiffs," when in point of fact the release seeks extinguish all employee rights to sue for the separate, 2018 breach of Wawa's internal, corporate computer systems that compromised Wawa human resources computers where employee PII is stored, as opposed to Wawa's point-of-sale (POS) systems that affected only consumers. Consumer Reply at 1.

Second, the replies concede that the proposed plan for notice of the Settlement to absent Settlement Class members does not employ any of the available means of direct, individual notification to Wawa Employees and Consumers. As Wawa well knows, it holds the mailing addresses of all of its current and former employees, along with their email addresses. Wawa does not deny this critical fact in its Reply. But perhaps even more important is the fact that Wawa holds this same contact information for tens of thousands of non-employee consumers by virtue of its expansive use of a Wawa mobile App. *See generally*, https://www.wawa.com/mobile-app . As the screen shots from the Wawa App attached hereto as Exhibit "A" demonstrate, Wawa collects the names, mailing addresses, and e-mail addresses of anyone who registers to use its App for purchases. The App also has an embedded "messaging" feature which Wawa uses for promotional purposes. But, the Settling Parties are not using any of these direct notification modalities, despite their availability and despite the mandates of

---

[1] The Wawa Reply raises other issues that either have been addressed in the Employee Track Plaintiffs' Opposition and/or can be addressed at the in-person hearing called for by the Court. In particular, Wawa's factual assertions about the "evidence" will require the Court to make evidentiary findings based upon documentary evidence and witness testimony at the hearing. E.g., Wawa Reply at 1 (arguing the Employees' objections about the notice program are "contrary to the evidence.")

1

Rule 23 and *Mullane*[2] for "individual notice to all members who can be identified with reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Third, the settlement consideration in the form of a Gift Card program fails to compensate Employee Track Plaintiffs for their stronger rights under Pennsylvania law and their distinct injuries and sources of injuries in this case. Instead, the coupon-like settlement presents a one-size-fits-all structure that treats all employees like consumers, despite the material differences in their claims, rights and injuries. By failing to account for such material differences, the proposed settlement of Employee Track claims – without adequate, unconflicted representation of their rights and interests in the settlement process – falls woefully short of what is required in class actions involving disparate interests. Employee Track Plaintiffs do not challenge whether the amount offered to settle Consumer Plaintiffs' claims is "fair, reasonable and adequate" **for them**; instead, Employee Track Plaintiffs' objections are limited to their interests in achieving the best result possible through litigation or settlement of their claims. Because Employee Plaintiff interests were not represented in the September 2020 mediation – and the Settling Parties do not claim otherwise[3] – the proposed settlement consideration – a nominal Wawa store credit, which cannot be used anywhere other than Wawa, as opposed to cash or fully-transferable cash equivalent usable at retail outlets other than Wawa stores, does not address the concerns of present or former Wawa Employees whose PII was impacted by the two, separate Wawa data breaches.

For these reasons, and those set forth in the prior Memorandum of Law of Employee Track

---

[2] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318, 70 S. Ct. 652, 659, 94 L.Ed. 865, 875 (1950) ("[w]here the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.")

[3] Nowhere in their settlement papers do the Settling Parties suggest that they had a Wawa Employee class representative or their counsel at the bargaining table on September 15, 2020, or at any time before or after the mediation.

Plaintiffs in Opposition to Consumer Plaintiffs' 'Unopposed' Motion for an Order Preliminarily Approving Class Action Settlement (Dkt. No. 188) ("Employee Opposition"), the Motion for Preliminary Approval should be denied, without prejudice, allowing the parties to address the Employee Track Plaintiffs' well-stated objections.

## II.    EMPLOYEE TRACK PLAINTIFFS' RESPONSE TO SETTLING PARTIES REPLY TO OBJECTIONS

### D. The Scope of the Proposed Release Includes Employee Track Plaintiffs' Separate and Distinct Claims for Wawa's Data Breach Involving its Internal, Company Servers, as well as Employees' Stronger Claims as Purported "Consumers" under *Dittman*.

The Settling Parties argue that the Employees have misapprehended the scope of their proposed release of claims under their proposed settlement. They urge that the settlement "does not resolve all Employee Track data security claims against Wawa." Wawa Reply at 2. However, that is not how the release reads. In view of the parties' dispute over the scope of the release language, the Employee Track Plaintiff should not be swept into a proposed class settlement without clarity as to what claims and rights are being extinguished, and what will be left of the Employee Track claims if the Court were to approve the proposed class settlement and release. Upon review of the language of the settlement instruments, Employees submit that this Court should conclude that the (1) current and former Wawa employees are included in the Settlement Class,[4] (2) the release includes all of the Employees' claims for the two Wawa data breaches affecting employees, and (3) the release extinguishes much broader claims than the Consumer Track Plaintiffs were permitted to settle. For these reasons, at a minimum, the scope of the release should be narrowed to include only Wawa consumers.

As an initial matter, the Settling Parties concede that Wawa employees within the definition of "Settlement Class", which includes "[a]ll residents of the United States who used a credit or debit card at a Wawa location at any time during the Period of the Data Security Incident of March 4, 2019 through

December 12, 2019." Consumer Reply at 6; Settlement Agreement, Dkt. No. 181-1 at ¶ 28 (defining "Settlement Class"). Current and former Wawa employees, like Shawn McGlade, who frequently availed themselves of the Wawa employee discounts on food and drinks, are included within this broad class definition.[5]

As members of the Settlement Class, Wawa employees are subject to the same release as the Wawa consumers. The release reads as follows:

> Upon the Effective Date, each Releasor shall release, discharge, and covenant not to sue Wawa, its past or present parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, and purchasers of each of the foregoing) ("Released Parties") **from all claims, demands, judgments, actions, suits and/or causes of action**, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, **arising in any way from or in any way related to the facts, activities, or circumstances alleged in the Consolidated Class Action Complaint or arising from or related in any way to the Data Security Incident, up to the Effective Date of the Settlement Agreement….**

Settlement Agreement, Dkt. No. 181-1 at ¶ 96 (emphasis added). Since all individual plaintiffs (not including the financial institutions) described the "Data Security Incident" in similar terms in their respective complaints, the release undoubtedly purports to include any claim by Wawa employees arising out of the events between March 4, 2019 and December 12, 2019. *Compare* Consumer Track Plaintiff Complaint (Dkt. No. 132) at ¶ 1 *with* Employee Track Plaintiff Amended Complaint (Dkt. No. 131) at ¶¶ 2-3 (describing the "**Data Breach**" from March 4, 2019 until December 12, 2019).

However, the Settlement Agreement expands the definition of the "**Data Security Incident**" beyond what was set forth in the Consumer Track Complaint. The "Incident" is defined to include not only the data security incident publicly disclosed by Wawa on December 19, 2019, but also "**the related underlying attack**" as well as "the malware that accessed information about credit and debit card

---

[5] Employees are also included in the definition of "Releasors", which includes "each and every Settlement Class Member". Settlement Agreement, Dkt. No. 181-1 at ¶ 25.

4

transactions at all or most of Wawa's more than 850 stores (including the outside fuel dispensers at such stores) from March 4, 2019 until December 12, 2019."[6] Settlement Agreement, Dkt. No. 181-1 at ¶ 8 (emphasis supplied). Nowhere does the Consumer Track complaint describe any **"related underlying attack"** beyond the "malware" attack on Wawa point-of-sales (POS) systems. Instead, only the Employee Track Plaintiffs have raised concerns about such "related attack" which involved a separate, earlier attack on Wawa's "internal computer systems … which we now know began in 2018 – not 2019, as publicly reported." Employee Objection, Dkt. No. 188 at 6-7. Because Employee PII is stored on such "internal corporate computers as a condition of employment by Wawa", the proposed release of "all claims … arising from or related in any way to the Data Security Incident" improperly seeks to sweep away the Employee Track Plaintiffs' claims for the 2018 attack in which their employee PII alone was exposed. *Id*. at 6. Since no discovery was conducted by the Consumers into the 2018 "Incident", and no additional consideration was bargained-for or paid to Employees under the settlement for such Incident, the scope of the release in the proposed settlement is overbroad as to the Employee claims.

The Settling Parties point this Court to their exclusion in the definition of "release" in support of their argument that Employee claims about the scope of the release are "false". Wawa Reply at 2. But, the exclusion only highlights the problem of the overbroad scope of the release as it pertains to Employee claims. The Settling Parties exclude only:

> **any claims** by any Wawa employee, former Wawa employee or dependent thereof **that a social security number or bank account used for payroll direct deposit** of the Wawa employee, former Wawa employee, or dependent thereof **has been compromised** (the "Release" or Released Claims").

Settlement Agreement, Dkt. No. 181-1 at ¶ 96 (emphasis added). The Employee claims are not so narrow. Nowhere does the Employee Track Amended Complaint limit Employee claims to the

---

[6] Curiously, the Joint Declaration of Interim Co-Lead Counsel in support of their proposed Settlement employs a different, narrower definition of "Data Security Incident" more in line with the narrow definition in the Consumer Track Plaintiffs' Complaint. *See* Dkt. No. 1818 at ¶ 3.

5

compromise of "a social security number or bank account number used for payroll direct deposit." Since the Employee claims against Wawa are not so narrowly circumscribed, in arguing that the such language "excludes non-duplicative Employee Track claims", Wawa Reply at 2, the Settling Parties concede that their "exception" is a hallow one.  Indeed, Wawa admits that any employee claim for injury while "walking and talking like a consumer … is appropriately resolved through the Consumer Settlement", thus conceding that regardless of the harm caused to Wawa Employees by the **two data breaches**, Wawa seeks to release all such claims except where the injury stems from the narrow instance of "a social security number or bank account used for payroll direct deposit … has been compromised."

Because the Employee Track claims for injuries as a result of the 2018 compromise of Wawa's internal computer systems involving human resources are not limited to the compromise of just social security and bank numbers – but all employee PII – there is no reasonable basis for Consumer Plaintiffs to seek to settle such claims without their involvement.  Where there was no client or lawyer representing the Employee Track Plaintiffs' interests in the mediation, there could have bene no adequate representation of Employee interests.

To try to avoid the stark reality of their choosing to settle Employee claims without the Employees or their counsel, the Settling Parties echo their constant refrain that this Court created two tracks – one for Consumers and one for Employees – to support the claim of right by the Consumer Track Plaintiffs to settle the separate claims of the Employee Track, even where they do not overlap in terms of the claimed injury. *See, e.g.*, Wawa Reply at 3.[7]  Employee Track Plaintiffs object to such

---

[7] Wawa argues for the first time that this Court "divided this litigation into separate tracks" based not on the class of plaintiff involved (ie., consumer versus employee), but on the basis of the alleged injury – "one for data security on behalf of Wawa customers whose payment card information was allegedly compromised (the 'Consumer Track') and another for Employee Track Plaintiffs' data security claims on behalf of Wawa employees whose HR information was allegedly compromised (the 'Employee Track')…". Wawa Reply at 3. Nowhere does the Court's Order designating the litigation for three "tracks", and appointing separate counsel for each track, say what Wawa now claims.  Even so, *Amchem*

contention, as it contravenes the dictates of *Hydrogen Peroxide*[8] and *Amchem*[9] that this Court's Case Management Order never intended or permitted.

    As this Court well knows, class actions require adequate representation at each stage of the litigation, but especially at the time of settlement when a proposed compromise of the rights of absent class members is at stake. The current and former employees of Wawa were assigned separate counsel for the litigation. From the time such appointment, Employee Track Plaintiffs' counsel have zealously represented the Employee class interests. Indeed, Employee Track counsel defended against Wawa's claims that the Pennsylvania Supreme Court's decision in *Dittman* did not reinforce the heightened duty on the part of Pennsylvania employers – like Wawa – to the employees – like Shawn McGlade – to protect their PII. Employee Track Plaintiffs' counsel even had to defend against a flanker attack by the Consumer Track Plaintiffs' counsel who joined with Wawa in seeking to undermine employee rights in this litigation. It is now clear that Wawa and the Consumer Plaintiffs had settled, and were fully aligned in defending their settlement. But, that provides greater reason for zealous advocacy of plaintiffs' rights, not spurious attacks that run counter to the express law of Pennsylvania as it concerns the rights of employees against their employers. If anything, by attacking the rights of plaintiffs they are seeking to sweep into their proposed Settlement Class, Consumer Plaintiff counsel showed how **inadequate** they are to represent, protect and advance the interests and rights of Wawa employees in this litigation.

    Remarkably, the Consumer Plaintiffs return to their attack on Employee Plaintiff rights under *Dittman* in their Reply. Consumer Reply at 5-6. As at the hearing on Wawa's Motion to Dismiss – in which the Consumer Plaintiffs joined – Consumer Plaintiffs argue that the Employee Plaintiffs "misread" *Dittman* that Wawa employees "have stronger claims under Pennsylvania law than do Wawa

---

requires that diverse interests of **plaintiffs** be separately represented to ensure adequacy of representation, especially at the time of settlement.
[8] *In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d 305 (3d Cir. 2008).
[9] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

customers." *Id*. at 5. Employee Plaintiffs deserve zealous advocacy of their rights in this litigation which the Consumer Plaintiff counsel are unable to provide.

The resultant settlement demonstrates how such conflicts of interest were not properly addressed. Knowing full well that a class of Wawa employees had sued Wawa for their own distinct harm, the settling parties did not differentiate employees from consumers in their settlement. Employees with heightened protection under *Dittman* are treated the same as the "average Joe" consumer who (1) may or may not have frequented a Wawa store during the Class Period, (2) may or may not have made a qualified purchase with a credit or debit card, (3) may or not have proof of purchase and (4) may or may not see the in-store notice or website information about the settlement to make a claim.

In contrast, Wawa employees who (1) worked at Wawa stores during the Class Period, (2) made qualifying purchases using the employee discount which incentivized their in-store purchases while on the job, (3) for which purchases Wawa has the proof of purchase, and (4) provided their mailing addresses and email to Wawa for purposes of being contacted, are treated like "average Joes". Wawa knows that the vast majority of its "over 50,000 current or former Wawa employees" made purchases within the Class Period. Wawa Reply at 1. Wawa likely knows which of those 50,000 employees availed themselves of the employee discount within the Class Period through its internal tracking systems and POS systems. Wawa also likely knows which of the 50,000 employees used credit or debit cards to make such purchases, by the same systems. In other words, unlike the millions of anonymous consumers who walk into Wawa stores in a given year, and may be part of the Settlement Class, Wawa likely knows the full measure of the employees who are included in their proposed Settlement Class definition. Yet, Wawa refuses to notify such employees using the direct access at their fingertips (*ie*. by mail, email or in-App messaging feature), and refuses to simply fund the same Wawa App with the "gift card" consideration which feature is already embedded in the App. *See* Exhibit "A" hereto. It is reasonable for this Court to query counsel: Why are you not simply paying people the nominal $5 or $15

8

settlement proceeds by crediting their Wawa App accounts which history reveals all the settlement eligibility criteria?

The answer is that such questions would have been asked by counsel for the employees who understand how Wawa works, and would have called Wawa on the carpet for not doing its best to "do the right thing" as their mantra claims. Employee Track counsel were kept out of the settlement negotiation for good reason: *this* settlement would not have been proposed.

As discussed in the Employee Objection, courts in this Circuit are required under *Hydrogen Peroxide* and *Amchem* to give "heightened attention to the requirements of Rule 23", especially the need for adequate, unconflicted representation of diverse interests in the putative settlement class. Because the Settling Parties chose to exclude Employee Track counsel from their settlement negotiation, it is their burden to demonstrate they satisfied both procedural and substantive due process in achieving a proposed settlement which compromises the rights of a class of plaintiffs for whom they had no class representative and had no separate, unconflicted counsel.

E. **The Notice Program Fails to Provide the Required Best Practicable Notice Under the Circumstances through the use of First Class Mail and Electronic Mail to Last Known Addresses, and the Wawa In-App Messaging Feature.**

The Consumer Plaintiffs argue that the "proposed notice plan … more than satisfies due process." Consumer Reply at 2. But, rather than address the Employee Plaintiffs' legitimate concerns about the lack of any direct communication – either by first class mail, electronic mail or Wawa in-App messaging, all of which are readily available methods for notice in this case – the Settling Parties point this Court to the purported "significant publicity" their proposed settlement case has garnered,[10] and

---

[10] The Settling Parties provide minimal support for their contention about the "significant publicity" they claim can serve as a proxy for direct notice. Wawa provides only the Declaration of Lori Bruce, a Wawa Media Relations Manager, who simply reports on the number of "media impressions" without identifying what information was conveyed and to whom such information was conveyed. *See* Dkt. No. 194-1. Importantly, nowhere do the Settling Parties point this Court to any media coverage of the material terms of the settlement, the right to opt out, or the means by which Settlement Class members

seek to excuse their lack of direct notice by urging, "it would be **hard to imagine** that there is any Wawa employee who is unaware" of the settlement.  Consumer Reply at 2; *see also*, Wawa Reply at 6 (arguing that "class members have already **likely** become aware of the Settlement Agreement through extensive media coverage.")

If media coverage of a class action settlement were alone sufficient to avoid using the "best practicable notice" under the circumstances, there would be little need for Rule 23 or the *Mullane* standards.  Relatedly, courts reviewing proposed class notice are not invited by Rule 23 to "imagine" what Settlement Class members may or may not know about proposed class settlements: they are required determine the best practicable means of reaching Settlement Class members and communicating the Settlement terms to them.

The cases cited by the Settling Parties do not support their claim that media coverage, in-store placards and a website posting suffice.  In fact, the cases state the opposite.

For instance, Wawa cites *In re Prudential Inc. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 327 (3rd Cir. 1998) (Wawa Reply at 7, 9 n.1) for the proposition that "unsolicited news coverage" suffices for notice.  Wawa Reply at 7.  However, the Third Circuit observed that the District Court "went further":

> The district court's October 28, 1996 order required the settling parties to mail individual notice to the last known address of the over 8 million present and former policyholders who comprised the putative class.  In addition, the Order required the parties to publish notice in the national editions of *The New York Times*, *The Wall Street Journal*, *USA Today* and *The Newark Star Ledger*.  Prudential went even further, publishing notice in the largest circulating newspaper in each of the fifty states and the District of Columbia. Fairness Opinion, 962 F. Supp. at 495. The notices were published over a three day period, from November 20, 1996 until November 22, 1996.

---

may recover, among other aspects of the proposed settlement.  Such incomplete media references do not suffice for notice under Rule 23.

10

*Id*. at 327.  In affirming the District Court, and holding that the "comprehensive notice program in this case far exceeded the requirements of Rule 23 and due process",[11] the Third Circuit actually ruled that "the combination of individual and publication notice, combined with the unsolicited news coverage the settlement received, greatly increased the possibility that Prudential will ultimately compensate a greater number of injured policyholders than would otherwise have been possible."  *Id*.

The Settling Parties' plan of notice fairs no better under the 1987 case of *Harris v. Pernsley* involving the non-monetary settlement civil rights claims on behalf of Philadelphia prisoners.  654 F.Supp. 1042 (E.D.Pa. 1987).  Due to the prior "publication of the notice of the hearing in *The Legal Intelligencer*, articles [that] appeared in the *Philadelphia Inquirer* and the *Philadelphia Daily News* and [the fact that] the proposed settlement, District Attorney's opposition, and the court proceedings were reported by numerous radio and television broadcasts on several occasions", this Court held:

> because this litigation received so much publicity in the months immediately preceding the settlement hearing, the court determined that due process did not require **any additional notice** to the class **before the equitable relief was approved**. While some form of post-settlement notice is mandatory under Fed.R.Civ.P. 23(e) before approval of a class action settlement, the trial court has broad discretion to determine the timing and manner of notice. The court determined that in order to approve the order providing class-based relief, a non-traditional form of notice was appropriate. **Because of the nature of the class and the actual class-based relief sought and obtained, the court considered it unfeasible and unnecessary to send personal notice to City prisoners from 1980 to date, impossible and unnecessary to identify or notify future prisoners and unlikely that notices posted in the Philadelphia prisons would reach class members not reached by the prison class representatives as well as the extensive media publicity. The court considers the notice given by the extensive publicity in the news media the best notice of the class-based relief in the circumstances**.

*Id*. at 1047 (citations omitted).  In other words, under the narrow circumstances of the case, posted notices were not appropriate, and first class mail notice was "unfeasible and unnecessary".

Similarly, Wawa's citation to the unreported decision in *Palamara v. Kings Fam. Rests*., No. CIV A. 07-317, 2008 U.S. Dist. LEXIS 33087 (W.D.Pa. Apr. 22, 2008) undermines its arguments here

---

[11] Consumers similarly claim their proposed notice plan "more than satisfies due process," without doing most of what the plaintiffs in *Prudential* accomplished.  Consumer Reply at 2.

11

because the Court there "directed" the parties "to submit a revised plan for notice" which included publication in local newspapers in community where the defendant restaurant was located. *Id*. at *4-5.

While Wawa cites other cases where direct notice was excused,[12] none of those cases involved the situation at bar where the settling defendant has possession of names, addresses, and emails of Settlement Class members as well as an in-App messaging feature to communicate directly with class members. Wawa tries to skirt the undeniable fact that it possesses mailing address and e-mail of its customers and employees, but simply because some such addresses "may not be accurate" or "may have changed" is no reason to avoid the best practicable notice. Wawa Reply at 8.

Curiously absent from the Settling Parties settlement papers is any mention of the Wawa App widely used by Wawa customers for in-store and gas purchases. *See generally*, https://www.wawa.com/mobile-app. Attached hereto as Exhibit "A" are screenshots from the Wawa Mobile App. Each page of Exhibit A includes a different screen within the "App" and are identified as follows:

> a. Page 1 is the homepage and includes a "Welcome Screen" with options such as "Pay any way", the account that the App is connected to, and, on the upper left of the homepage, there are three lines that bring the user to other options;
> b. Page 2 is the lower portion of the homepage demonstrating that Wawa uses its App to communicate to App users that the company is "Hiring", showing that the face page of the App can be uses to advertise the Settlement;
> c. Page 3 are the options that appear when the user "clicks" on the three lines on the homepage (referenced above) and includes, among other things, a "Messages" option. This message option provides the user with messages that come directly from Wawa to the App user.
> d. Page 4 appears on the App screen when the user clicks on "Messages". On this App screen, there are "no messages", but a Class Notice to the end user could appear here.
> e. Page 5 is an electronic "Gift Card" that the App User can use to make purchases at Wawa only. When the user's gift card is scanned, the purchase is subtracted from the balance, that on this particular app is $1.32. In order to replenish the Balance, the user connects the App to a bank account, a credit card or debit card for automated payment transfer to the "Gift Card' or the account. There is a "Reload Card" option

---

[12] *E.g., In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 536 (3d Cir. 2004)(Wawa Reply at 7); *Carlough v. Amchem Prod., Inc*., 158 F.R.D. 314, 327-28 (E.D.Pa. 1993).

> on the face of the screen.  As you can see, there is also an "Auto Reload" option where Wawa can reload the balance automatically if the User authorizes it.

There is no reason why Wawa could not use its mobile app to communicate the settlement notice to many of the putative Settlement Class members – Consumers and Employees alike.  It is believed that hundreds of thousands of Wawa customers already have the "App" which includes the "Messages" feature, a highly effective means of directly notifying putative Wawa Settlement Class members about the proposed class settlement.  *See, e.g.*, *Stuart v. State Farm Fire & Cas. Co.*, 322 F.R.D. 293, 296-298 (W.D.Ark. 2019) (approving class notice plan, over defendant's objections, requiring posting a "banner [] located at the top of the screen … accessible both via computer and on Defendant's mobile app."); *Opperman v. Kong Techs., Inc*., 2017 U.S.Dist. LEXIS 104507 at *19 (N.D.Cal. July 6, 2017) ("Because some of the App Defendants cannot identify the specific users who had their address book data uploaded, they will email notice to every user who downloaded and registered for the app during the relevant time period, thus resulting in over-inclusive notice.")

> **C. The Settlement Consideration in the Form of Wawa "Gift Cards" Fails to Meet the Requisites of CAFA, and Fails to Provide Employee Track Class Members Fair, Reasonable and Adequate Settlement Value for their Claims which Are Stronger than those of Wawa Consumers.**

The Settling Parties' replies simply try to shoehorn their proposed settlement into the construct provided in others cases which avoid CAFA's proscriptions about coupon settlements.  Labels notwithstanding, the proposed settlement is far worse than a coupon is not actually a "gift card" but a Wawa credit which, like a coupon, must be used for purchases at Wawa stores.  In that way, the settlement consideration requires Settlement Class members to make purchases at Wawa stores that they may not want to make, for whatever reason, including the demonstrated failure of Wawa to adequately secure their POS systems.  A settling defendant should be able to use a class settlement of its wrongful conduct as a marketing ploy to bring back lost customers.  Worse, a class settlement should not require former employees of the defendant to return to their former employer.

13

This issue was fully briefed by the Employee Plaintiffs in their Opposition, and in consideration of the cases cited by Employee Plaintiffs, this proposed Wawa "credit" is not a cash settlement, unlike the cash payments Wawa will make to pay legal fees and costs.

As for the proposed "injunctive relief", the parties simply disagree about the nature and scope of what happened at Wawa. In seeking to defend their claimed "value" of such relief at "$35 million", Consumer Plaintiffs choose to ignore what Wawa's own reports have shown about the prior compromise of its internal computer systems.[13] Indeed, the record is clear that Waw did not provide Consumer Plaintiffs with the reports needed to understand the breath of the computer compromise in order to address the same in their proposed "fix". Employee Plaintiffs believe that the evidence will show that Wawa's vendor was not paid to investigate the 2018 data breach, but only the 2019 malware situation that compromised POS systems. Once cannot fix what one does not investigate. This is why an evidentiary hearing is required so this Court can get to the bottom of these issues.

## III.   CONCLUSION

For the foregoing reasons, and these set forth in the Employee Track Plaintiffs' respectfully request that this Honorable Court deny the Consumer Plaintiffs' "Unopposed" Motion for an Order Preliminarily Approving Class Action Settlement.

        Respectfully submitted,
        */s/Donald E. Haviland, Jr.*
        Donald E. Haviland, Jr., Esq. (PA 66610)
        William H Platt, II, Esq. (PA 83585)
        **Haviland Hughes**
        201 South Maple Avenue, Suite 110
        Ambler, PA 19002
        *Interim Class Counsel for*
        *Employee Track Plaintiffs*

---

[13] Perhaps of greater significance is the fact that Wawa makes no mention of this second data breach in its Reply, leaving it to the Consumer Plaintiffs to make inappropriate reference to Wawa's frivolous Rule 11 letter. Consumer Reply at 17 n. 5. If Consumer Plaintiffs' counsel seek to assert their own Rule 11 accusations, they should do so directly, on penalty of their own Rule 11 obligations.