|  |  |  |
|---|---|---|
| | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **IN RE WAWA, INC.** | : | **This document applies to the** |
| **DATA SECURITY LITIGATION** | : | **Employee Track.** |
| | : | |
| | : | |
| | : | **No. 19-6019** |
| | : | **and all related cases.** |

## MEMORANDUM

PRATTER, J.                                                                                    MAY 12, 2021

Wawa, Inc. operates a chain of convenience stores and gas stations throughout the eastern

United States. Hackers accessed Wawa's point-of-sale systems and installed malware in March

2019 that targeted Wawa's in-store payment terminals and gas station fuel dispensers. The hackers

obtained customer payment card information over the next several months, making it available for

purchase on the "dark web." Wawa disclosed the data breach in December 2019. Lawsuits

followed. The Court's case management plan delineated three distinct tracks for the litigation: the

Consumer Track, the Employee Track, and the Financial Institution Track. This Memorandum

addresses the Employee Track Plaintiffs.

The named plaintiffs for the Employee Track are Shawn McGlade, a former Wawa

assistant general manager and general manager, and his wife, Karen McGlade. They bring seven

counts against Wawa in their amended class action complaint. The first five counts relate to the

data breach, asserting that Wawa negligently allowed payment card information and personally

identifiable information, such as social security numbers, of Wawa employees to be exposed.

The Employee Plaintiffs' remaining two counts allege overtime violations for all Wawa

assistant general managers from January 2017 through January 2020. Wawa moves to dismiss all

seven of the counts in the Amended Complaint. For the reasons that follow, the Court will grant in part and deny in part Wawa's motion to dismiss.

## BACKGROUND

The Employee Plaintiffs bring claims on behalf of current and former Wawa employees, their spouses, and also the current and former Wawa assistant general managers. The Employee Plaintiffs assert two sets of claims against Wawa: the first set of claims concerns the data breach and exposure of personally identifiable information, which, Employee Plaintiffs claim, included both employee payment card information and confidential employee information, such as social security numbers. The second set of claims concerns Wawa's alleged failure to pay its assistant general managers overtime wages.

As stated briefly above, in March 2019, hackers breached Wawa's point-of-sale systems and installed malware on payment terminals and fuel dispensers, which enabled them to steal payment card information for several months. This information was later posted for purchase on the "dark web." Wawa disclosed the data security incident in late December 2019.

The Employee Plaintiffs allege that Wawa required its employees to provide their personally identifiable information, including social security numbers, as a condition of employment, and subsequently failed to safeguard that data. Wawa employees can use an employee discount to purchase certain items at Wawa stores. As a result, the Employee Plaintiffs allege that Wawa knew its employees would use their own payment cards to purchase discounted food, beverages, and other essential items at Wawa stores during their work shifts.[1] Because Wawa employees, like named plaintiff Mr. McGlade, took advantage of the employee discount and used

---

[1]      The Employee Plaintiffs allege that Wawa "required" employees "to use their own payment cards" to make purchases. Presumably, they could have also paid for items with cash.

2

their own payment cards to purchase store items, the Employee Plaintiffs allege that Wawa owed them a duty to exercise reasonable care to protect the employees' payment card data.

Mr. McGlade served as an assistant general manager from September 2014 until March 2017, when he was promoted to the position of general manager. As part of his employment, Mr. McGlade alleges that he gave Wawa his confidential personally identifiable information and that of his family.[2] Mr. McGlade alleges that since September 2019, several new, unauthorized accounts were opened in his name, which led to a drop in his credit score and required his wife to spend a substantial amount of time and effort to cancel the unauthorized accounts. The McGlades allege that, despite Wawa's contention that the data breach was limited to payment card information, they believe that their personally identifiable information, including social security numbers, was also compromised.

The Employee Plaintiffs allege that on the day the data breach was publicly announced, neither Mr. McGlade nor any other Wawa general managers were advised that their information had been compromised. Instead, they claim that Wawa misrepresented the data theft situation as limited to only customer payment card information. Mr. McGlade's employment was terminated in January 2020, shortly after the data breach was disclosed.

Unrelated to the data breach, Mr. McGlade also alleges that, since December 2015, Wawa has failed to pay its assistant general managers for overtime hours worked. In December 2015, Wawa reclassified its assistant general managers as non-exempt employees under the Fair Labor Standards Act. Even after assistant general managers were reclassified as non-exempt, which entitled them to overtime pay, Mr. McGlade alleges that he was required to work "off the clock"

---

[2]       Mr. McGlade alleges that, "[a]s a condition of his employment by Wawa, [he] was required to provide his [personally identifiable information], including his social security number, home address, and the names of his wife and minor children, among other items of confidential [personally identifiable information]."

3

while he was an assistant general manager. Mr. McGlade claims that he was then fired for enforcing Wawa's policy of not allowing assistant general managers and other employees to work overtime. He alleges that Wawa's policy "ma[de] [assistant general managers] work off the clock." The Employee Plaintiffs rely on *Gervasio v. Wawa Inc.*, a District of New Jersey FLSA case, as support for their allegations that Wawa refused to pay its assistant general managers overtime both when Wawa had misclassified them as exempt and after they were reclassified as non-exempt.[3] *Gervasio* eventually settled through mediation, with over 300 plaintiffs opting in to the class, but Mr. McGlade states that he did not opt in to the *Gervasio* class out of fear of retaliation.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. The court must assess whether a complaint has "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when its factual allegations are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 555-56.

"The Third Circuit instructs the reviewing court to conduct a two-part analysis. First, any legal conclusions are separated from the well-pleaded factual allegations and disregarded. Second, the court determines whether the facts alleged establish a plausible claim for relief." *Satterfield v. Gov't Ins. Employees Co.*, No. 20-cv-1400, 2020 WL 7229763, at *1 (E.D. Pa. Dec. 8, 2020) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)). "A claim has facial

---

[3]     The case, *Gervasio v. Wawa Inc.*, No. 17-cv-245, 2018 WL 385189, at *1 (D.N.J. Jan. 11, 2018), is discussed in greater detail below. *See infra*, note 10 and accompanying text.

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Federal Rule of Civil Procedure 8(c) requires that a defendant plead an affirmative defense, such as a statute of limitations, in his answer." *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002). However, the Third Circuit Court of Appeals allows a defendant to raise an affirmative defense, including a statute of limitations defense, in a Rule 12(b)(6) motion when it is clear from the face of the complaint that the claim is time-barred. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Robinson*, 313 F.3d at 134-35) (discussing the "Third Circuit Rule" on this point).

## DISCUSSION

The Employee Plaintiffs' first five claims focus on the data breach. Count I alleges violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Stat. Ann.§§ 201 *et seq.* This claim is that Wawa required its employees to provide their personally identifiable information, including social security numbers, and that Wawa maintained this information in an insecure manner that allowed hackers to access it. Employee Plaintiffs also claim that Wawa collected and maintained employee payment card information, failed to secure it, and allowed it to be compromised by hackers. Count II alleges Wawa was negligent for failing to properly safeguard employee personally identifiable information. Count III alleges negligence *per se* related to Wawa's breach of various statutes, laws, and regulations. Count IV alleges negligent misrepresentation and/or fraud related to Wawa's disclosure, or rather non-disclosure, of the data breach to its employees. Count V alleges unjust enrichment, because, the Employee

5

Plaintiffs claim, Wawa has been enriched by not paying for the necessary level of security to protect employee information.

The remaining two claims relate to Wawa's alleged failure to pay overtime. Count VI alleges that Wawa violated the Fair Labor Standards Act, 29 U.S.C. § 216(b), by failing to pay Mr. McGlade and other Wawa assistant general managers overtime wages. Count VII alleges that Wawa violated the Pennsylvania Minimum Wage Act, 43 P.S. § 333.104(c), by failing to pay overtime wages.

Wawa urges the Court to dismiss, or stay, all seven counts in the Employee Plaintiffs' Amended Complaint.

As to the first five counts, the Court finds that the Employee Plaintiffs have sufficiently pled their allegations related to the data breach of employee personal information, including payment card information and confidential employee information, such as social security numbers. Thus, at this stage, these claims will be allowed to proceed.

The Employee Plaintiffs also seek to recover unpaid overtime wages for all Wawa assistant general managers for the three years between January 2017 until January 2020. The Court concludes that these claims are time-barred pursuant to the applicable statutes of limitations and, as a result, the Court dismisses these two counts.

## I.   Data Breach Claims

The Court will first address the claims related to payment card information and then those related to confidential employee information.

6

## A. Payment Card Information

Wawa argues that the Employee Plaintiffs' data security claims should be dismissed because they are duplicative of the data security claims in the Consumer Track. The Employee Plaintiffs allege that Wawa negligently allowed their payment card information to be accessed by hackers and that Wawa knew employees used their own payment cards while at work to purchase supplies to take advantage of their employee discount. Wawa contends that the Employee Plaintiffs' data security claims are in the same court, with the same defendants, and the same subject matter as the data security claims filed in the Consumer Track. Wawa points to the allegation in the Employee Plaintiffs' Amended Complaint that Wawa employees "are 'customers' too" because they had to use their own payment cards to purchase food and other items during break time.

The putative class defined in the Consumer Track Plaintiffs' Amended Complaint is defined as anyone in the United States "who used a credit or debit card at a Wawa location impacted by the Data Breach."[4] Wawa argues that the Employee Plaintiffs, in their original complaint, alleged that personally identifiable information of Wawa employees was compromised, but that these allegations no longer appear in their Amended Complaint. Wawa argues that the crux of the Employee Plaintiffs' data security claims in their Amended Complaint is that payment card information was compromised, not other employment-related personally identifiable information, such as social security numbers. Instead, Wawa asserts that the Amended Complaint "suggests artfully that information other than payment card data may have been compromised during the Wawa data security incident." As a result, Wawa contends that any claims made by the

---

[4]     The proposed Amended Settlement Agreement for the Consumer Track defines the Settlement Class as "All residents of the United States who used a credit or debit card at a Wawa location at any time during the Period of the Data Security Incident of March 4, 2019 through December 12, 2019. Excluded from the Settlement Class are Wawa's executive officers and the Judge to whom this case is assigned."

Employee Plaintiffs regarding the data security incident are substantially similar to those alleged by the Consumer Plaintiffs.[5]

"Parallel complaints need not be completely identical to fall under [case law], which proscribes '*substantially* identical complaints.'" *McKenna v. City of Phila.*, 304 F. App'x 89, 92 (3d Cir. 2008) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977)). Wawa argues that "[t]he benefits of consolidation would be lost if Plaintiff were permitted to amend his pleading and separately pursue data security claims that overlap with the Consumer Track data security claims." Wawa further argues that, as an alternative to dismissal, the Court should stay the Employee Plaintiffs' duplicative claims.[6]

The Consumer Plaintiffs support Wawa's motion to dismiss with respect to the payment card data breach claims. They argue that the Employee Plaintiffs' original data breach claims in their initial complaint differed from that of the Consumer Plaintiffs and this is why the Consumer Plaintiffs agreed at that point to proceed on separate tracks. The Consumer Plaintiffs now argue that there is no reason for the Employee Plaintiffs to further prosecute data breach claims related to payment card data, given the proposed settlement in the Consumer Track and the lack of differentiation between the Consumer Track claims and the claims in the Employee Plaintiffs' Amended Complaint. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001) ("[A] judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action."). Wawa and the Consumer Plaintiffs

---

[5]     Wawa attached to its motion to dismiss a June 30, 2020 letter that it sent to Employee Plaintiffs' counsel discussing what information was allegedly obtained during the data security incident. However, this letter is of no moment at the motion to dismiss stage where the Court must accept as true all well-pleaded allegations in the Employee Plaintiffs' Amended Complaint without consideration of advocacy among counsel.

[6]     The Court notes that Wawa's motion to dismiss the Employee Track Plaintiffs' Amended Complaint was filed before mediation had commenced and before Wawa and the Consumer Track Plaintiffs reached a tentative resolution.

argue that the Employee Plaintiffs' claims, as they pertain to stolen payment card information, are duplicative of the claims put forth by the Consumer Plaintiffs and, thus, should either be dismissed or stayed pending the completion of the Consumer Track settlement process.

The Employee Plaintiffs dispute that their data security claims duplicate the Consumer Track claims. They argue that dismissal is not required when there is only superficial factual overlap between one plaintiff group's case and another group's case simply because they involve the same operative event. Although they acknowledge that the causes of action are similar, the Employee Plaintiffs contend that their status as employees means they have different standing, a different theory of liability, and a stronger claim as compared to the Consumer Track Plaintiffs. The Employee Plaintiffs also argue that they, and their counsel, were excluded "from both the settlement negotiations [in the Consumer Track] and access to any information about the resultant settlement."

They further allege that Wawa, as a condition of employment, required employees to use their own payment cards to make purchases to utilize Wawa's employee discount, as outlined in the Wawa Employee Handbook. Thus, the Employee Plaintiffs claim that "Wawa knew, or should have known, that it was exposing its employees to [a] greater risk of harm due to its lax data security measures." They also claim that Wawa failed to timely admit that hackers accessed and stole Wawa employees' personally identifiable information, including social security numbers.

The Employee Plaintiffs argue that the Pennsylvania Supreme Court in *Dittman v. UPMC* held that Pennsylvania-based employers have a legal duty to exercise reasonable care to safeguard the personal information of their employees. *See* 196 A.3d 1036, 1048 (Pa. 2018) (holding that Pennsylvania employers owe a duty to their employees to "exercise reasonable care in collecting and storing [employees'] personal and financial information on" employer computer systems).

9

Accordingly, they contend that Wawa owes its Pennsylvania-based employees "a higher duty than it does the members of the general public." They also argue that the law in this Circuit does not require the "dismissal of one plaintiff groups' case in favor of another group's case simply because there is factual overlap due to the common nucleus of operative fact surrounding the 2019 Wawa data breach." They argue that although the causes of action among the different litigation tracks in this case are similar, they all involve different plaintiffs and theories of liability. They also argue that their complaint is firmly grounded in the duty established in *Dittman*, and is different from the Consumer Plaintiffs' allegation that Wawa's duty arose due to the "special relationship between Wawa and its customers."

At the motion to dismiss stage, the Court must accept as true any well-pleaded factual allegations in the Employee Plaintiffs' Amended Complaint. *Iqbal*, 556 U.S. at 678. All three tracks in this litigation are based on the Wawa data security breach incident, but each track alleges harms that are conceptually different because they were suffered by different plaintiffs. In particular, although counsel for the Employee Plaintiffs acknowledged during oral argument that a Wawa employee who makes a purchase with his or her own payment card is "walking and talking like a consumer," counsel qualified his answer and explained that employees are using their own cards to take advantage of the employee discount while "they're on the clock, . . . working for Wawa," unlike consumers. Hearing Tr. 67:14-16.

The Third Circuit Court of Appeals has held that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton*, 563 F.2d at 70. "*Walton* applies when two cases: (1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter." *McKenna*, 304 F. App'x at 92. But "a court abuses its discretion when it enjoins a party from proceeding in

another suit that is not truly duplicative of the suit before it." *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). For a case to be duplicative, then, it "must be materially on all fours with the other" and "the issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007) (cleaned up) (quoting *Smith*, 129 F.3d at 361).

The Court cannot conclude at this point that the Employee Plaintiffs' claims related to stolen payment card information are legally duplicative of those claims in the Consumer Track. The instant case involves separate lawsuits filed by different plaintiffs against the same defendant. Duplication generally involves a plaintiff filing multiple complaints that are substantially identical. Indeed, the Third Circuit Court of Appeals in *Walton*, the case which Wawa invokes, highlighted that courts "must insure that [a] plaintiff does not use the incorrect posture of filing duplicative complaints for the purpose of circumventing" the Federal Rules of Civil Procedure. 563 F.2d at 71. Here, the Court has separated the litigation into tracks based on three separate groups of plaintiffs who filed lawsuits pertaining to the Wawa data breach. Because the Court does not find the Employee Plaintiffs' claims related to payment card information to be legally duplicative of those in the Consumer Track at this time, it declines to dismiss or otherwise stay these claims.

## B. Personally Identifiable Information

In addition to alleging that payment card information was compromised, the Employee Plaintiffs also allege that Wawa allowed employee personally identifiable information to be exposed, including social security numbers. Wawa argues that the Employee Plaintiffs' Amended Complaint removed all claims related to such potentially exposed information that were initially included in their original complaint. Wawa contends that their Amended Complaint, unlike their

11

original complaint, no longer contains any allegations that personally identifiable information, or "HR information" as Wawa labels it, was compromised.

In their Amended Complaint, the Employee Plaintiffs first refer to personally identifiable information as "including at least credit and debit card numbers, expiration dates, and cardholder names," but later expand that definition to also include social security numbers. As explained by counsel for both parties during oral argument, personally identifiable information can be considered a term of art. Hearing Tr. 87:17-25, 92:20-22. Counsel for the Employee Plaintiffs emphasized during oral argument that the McGlades' "personal identifiable information" was compromised and that "it's not limited to credit card information." *Id.* at 92:24-25-93:1-16. Although it may not be the model of clarity in all respects, and the line between the two claims is at times somewhat unclear, the Court is satisfied that the Amended Complaint sufficiently sets out claims related to allegedly stolen employee payment card information *and* compromised personally identifiable information, including social security numbers.

Specifically, the Employee Plaintiffs allege that Wawa failed to protect the employees' personally identifiable information and, thus, breached the duty owed to them as described in *Dittman.* Mr. McGlade claims that someone other than he opened up accounts in his name using his social security number and other confidential information he had entrusted to Wawa. The Employee Plaintiffs allege that "unknown cyber-criminals" obtained employee personally identifiable information "by accessing the unsecured computers of Wawa." The Employee Plaintiffs allege that Wawa's payment card data breach led to, or occurred at the same time as, the alleged breach of Wawa employees' personally identifiable information stored on Wawa's computer systems. Mr. McGlade describes several recent incidents involving the theft of his identity and alleges that they "would not have happened had Wawa fulfilled its common law duty

12

to protect the [personally identifiable information] of its employees, including their payment card information, from the Data Breach."

At this point in the litigation, the Employee Plaintiffs' allegations that employee personally identifiable information stored on Wawa computers was improperly accessed survive. *Dittman* held that Pennsylvania employers owe a duty to their employees to "exercise reasonable care in collecting and storing [employees'] personal and financial information on" employer computer systems. 196 A.3d at 1048. Wawa argues that the employees' information was not compromised. Although a data breach involving payment card data may not ultimately be starkly different from a data breach involving a database that hosts confidential employee personally identifiable information, the Court must accept the Employee Plaintiffs' allegations as true at this time. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

The Court must "assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Because the Employee Plaintiffs have alleged that personally identifiable information, including social security numbers, was improperly accessed through insecure Wawa computer systems, those are "enough facts to raise a reasonable expectation that discovery will reveal evidence of" their claims. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Therefore, the Court will deny Wawa's motion to dismiss the Employee Plaintiffs' claims that employee

13

personally identifiable information, including social security numbers and other confidential information, was allegedly exposed and improperly accessed.

## II. Overtime Allegations

In Counts VI and VII of the Amended Complaint, the Employee Plaintiffs make unpaid overtime claims under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act. The basis for these claims appears to be (1) the misclassification of Wawa assistant general managers prior to 2015; and (2) unpaid wages for hours worked off the clock post-2015. The FLSA includes a three-year statute of limitations. 29 U.S.C. § 255(a). A three-year statute of limitations also applies to claims invoking the PMWA. 43 Pa. Stat. Ann. § 260.9a(g).

### A. Misclassification Claim

To the extent the Employee Plaintiffs allege that assistant general managers were misclassified as exempt from overtime prior to 2015, Wawa contends that such a misclassification claim is time-barred because Wawa reclassified its assistant general managers as non-exempt in late 2015, and any potential misclassification claims expired three years later, at the end of 2018. Because Mr. McGlade filed his original complaint on January 10, 2020, Wawa argues that he was over one year late with respect to any misclassification claim and should be precluded as falling outside of the statute of limitations. The Employee Plaintiffs did not address Wawa's contention regarding the timeliness of any misclassification claim in their opposition to Wawa's motion to dismiss.

The Employee Plaintiffs allege that "Wawa's decision to change the classification of [assistant general managers] in 2015 to non-exempt from exempt is an acknowledgment that [assistant general managers] had been misclassified up to that time." Mr. McGlade asserts that he

14

was eligible to be paid out of the *Gervasio* settlement, but that he did not opt in to participate out of fear of retaliation.

On the face of the Amended Complaint, the conclusion is inescapable that any possible claims for wage and hour violations based on the misclassification of assistant general managers necessarily ended in 2015 after Wawa reclassified them as non-exempt. A plaintiff seeking unpaid overtime wages as a result of being misclassified as exempt prior to December 2015 needed to file suit within three years of that date, with few exceptions not pertinent here.[7] Thus, any timely claims related to Wawa assistant general manager misclassification needed to be filed by the end of 2018. Because Mr. McGlade did not file his original complaint until January 2020, any misclassification claim for overtime pay while he was an exempt assistant general manager is barred by the statute of limitations. While the Court notes that the Employee Plaintiffs' counsel argued at oral argument that their claim is not one for misclassification but rather it is about being required to work off the clock, Hearing Tr. 75:16-18 ("It's not about misclassification. It's [about] not allowing him to clock the time."), to be clear, any potential misclassification claims are barred as untimely.

## B. Off-the-Clock Claim

Wawa contends that, because Mr. McGlade acknowledges that he was promoted from an assistant to general manager in March 2017, he needed to bring any off-the-clock overtime claims based on his time as an assistant by March 2020, three years after his promotion. Wawa argues that these claims were raised for the first time in the Amended Complaint on July 27, 2020, four

---

[7]     Neither side contests the application of the three-year statute of limitations period.

months after the statute of limitations expired. Thus, Wawa argues that Mr. McGlade's off-the-clock claim is time-barred.

Mr. McGlade agrees that he had until March 2020 to timely file any wage and hour claims within the respective three-year statutes of limitations under both the FLSA and PMWA. However, he maintains that his off-the-clock claim was originally pled in his initial January 2020 complaint and, thus, he argues it was timely made.

### 1.    Relation Back

Because Mr. McGlade's off-the-clock claim needed to brought by March 2020 to be timely under the three-year statute limitations, and because the Amended Complaint was not filed until July 2020, this claim would need to meet the rigors of Federal Rule of Civil Procedure 15(c) to "relate back" to the original complaint, which was filed in January 2020, in order to be timely.[8] An amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The "application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings. As such, the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004). An amended pleading "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleadings." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

---

[8]    *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) (noting that Rule 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations").

An amended complaint that asserts a different type of overtime claim, which occurred during a different time period, cannot relate back to the original complaint simply by invoking the words "overtime claim."[9]  In *Gordon v. Maxim Healthcare Services, Inc.*, a plaintiff initially alleged a failure to pay overtime wages in her original complaint.  No. 13-cv-7175, 2014 WL 3438007, at *5 (E.D. Pa. July 15, 2014).  When her employer provided proof of payment for overtime, she filed an amended complaint alleging a failure to pay for hours worked on the next regularly scheduled payday.  *Id.*  The court found that, even though the newly alleged conduct arose from the plaintiff's employment and her employer's failure to pay her earned wages, it was "based on factually and legally distinct circumstances" and her employer did not have fair notice in the original complaint of the new claims.  *Id.*  The court then dismissed any claims that arose more than three years before the amended complaint was filed.  *Id.*  That is also the case here.

### a.  Textual Analysis

Based on a plain reading of the original complaint, one would have to strain—ultimately unsuccessfully—to find where an off-the-clock claim is alleged in the original complaint, even liberally construing those allegations.  The 13 paragraphs in the original complaint that allege an FLSA claim never used the words "off the clock."  Similarly, the PMWA claim asserted in three paragraphs of the original complaint also failed to state that Mr. McGlade was alleging an off-the-clock claim.  Mr. McGlade alleged that Wawa failed to pay its assistant general managers overtime because it misclassified them.  Specifically, the claim was that Wawa knew "through its [General Managers] and Area Managers that the primary duties of Mr. McGlade (while working as [assistant general manager]) and other [assistants] were manual labor and non-exempt tasks."  Compl. ¶ 152.  Essentially, Mr. McGlade alleged that the assistant's position should not have been classified as

---

[9]     Counsel for Employee Plaintiffs stated during oral argument that they were "not looking to relate back" and their Amended Complaint was designed to "give [Wawa] a lot of detail."  Hearing Tr. 74:21-24.

exempt and he, and other Wawa assistant general managers, should have been compensated at the appropriate overtime rate for any time worked in excess of 40 hours per week. Nowhere in the original complaint does Mr. McGlade allege that he or other assistant general managers were required to work off the clock after they were reclassified as non-exempt at the end of 2015.

Mr. McGlade did allege in his original complaint that Wawa "had a policy and practice of refusing to pay overtime compensation to its [assistant general managers] and similarly situated employees in comparable positions but holding different titles, for hours worked in excess of 40 hours per workweek." *Id.* ¶ 148. He alleged that Wawa "engaged in a widespread pattern and practice of violating the [FLSA], as set forth" in the *Gervasio* complaint and, because Wawa settled the *Gervasio* case,[10] Mr. McGlade argued that Wawa was "conceding the merit of Mr. McGlade's claims for unpaid overtime wages while serving as a Wawa [assistant general manager]." *Id.* ¶¶ 143-44. He then alleged that Wawa "knew or recklessly disregarded the fact that Mr. McGlade and other [assistants] were primarily performing manual labor and non-exempt tasks" and that Wawa failed to perform a "person-by-person analysis" of assistant general managers' job duties and "institute[ed] a policy and practice that did not allow Mr. McGlade and other [assistant general managers] to record all hours worked, and [failed] to post or keep a notice explain[ing] minimum wage and overtime wage requirements." *Id.* ¶ 151-52.

Although this "policy and practice" was not specifically defined, a holistic review of the original complaint leads to the conclusion that Mr. McGlade was asserting a misclassification claim. Like *Gordon*, the factual and legal circumstances here regarding a misclassification claim

---

[10]     The *Gervasio* case dealt with Wawa's misclassification of its assistant general managers as exempt under the FLSA and Wawa's subsequent failure to pay them overtime. *Gervasio v. Wawa Inc.*, No. 17-cv-245, 2018 WL 385189, at *1 (D.N.J. Jan. 11, 2018) (conditionally certifying an FLSA class of former Wawa assistant general managers that worked at any time from January 10, 2015 through December 28, 2015). The court eventually approved a settlement between the parties in July 2019. *See Gervasio* (No. 17-cv-245), Doc. No. 112.

on the one hand and an off-the-clock claim on the other are distinct, even if both claims concern employment with the same company. The former, as the Employee Plaintiffs point out, concerns a plaintiff's job duties and the type of tasks performed, whereas the latter concerns whether a plaintiff worked without being compensated at all. Am. Compl. ¶¶ 123, 170-77, 297. The original complaint made no mention of Wawa's alleged practice of forcing assistant general managers to work "off the clock" but instead centered on misclassification.[11] Mr. McGlade alleged in his original complaint that Wawa failed to pay overtime to its assistants and incorporated by reference *Gervasio*, a misclassification case, arguing that the *Gervasio* settlement means he is "entitled to be paid." Compl. ¶ 144. The original complaint alleged that Wawa knew that "Mr. McGlade and other [assistant general managers] were primarily performing manual labor and *non-exempt* tasks." *Id.* ¶ 151. As should be clear, an analysis of the duties performed by employees is central to a misclassification claim, not an off-the-clock claim. *See, e.g.*, *Babin v. Stantec, Inc.*, No. 09-cv-1160, 2010 WL 3363920, at *4 (E.D. Pa. Aug. 25, 2010).

When compared to the allegations in the Amended Complaint, it becomes even clearer that the original complaint contained only a misclassification claim. At the very least, the allegations in the original complaint cannot be said to have put Wawa on notice that it was facing an overtime claim for a policy that required employees to work off the clock. Mr. McGlade alleges in the Amended Complaint that Wawa failed to pay its assistant general managers overtime *after* reclassifying them as non-exempt at the end of 2015. Am. Compl. ¶ 39. With those allegations, Mr. McGlade asserts a different claim, one that covers a different time period than that in the original complaint.

---

[11]     While Mr. McGlade is correct that the Amended Complaint is the operative pleading and supersedes the earlier complaint, for the purposes of relation back and whether Wawa was put on notice as to these new claims, it is necessary to consider the original complaint for this specific purpose.

Furthermore, Mr. McGlade asserts for the first time in the Amended Complaint that Wawa directed its general managers to require assistant general managers to work off the clock to achieve revenue and profit goals. *Id.* ¶ 48. He alleges that he was required to work off the clock, either before or after his normal shift, and that even after Wawa reclassified its assistant general managers as non-exempt, he was not allowed to log overtime hours. *Id.* ¶¶ 129, 138, 152. Mr. McGlade alleges that later, as a general manager, he witnessed firsthand these off-the-clock "policies, practices and procedures." *Id.* ¶ 49. He asserts that assistant general managers "were regularly required to work a substantial amount of time off the clock as part of their job duties." *Id.* ¶ 128. "[T]he [assistant] assigned to each store [was required to] work off the clock so as to avoid detection and avoid Wawa's obligations to pay overtime." *Id.* ¶¶ 132, 151, 169.

The Amended Complaint also refers to the *Gervasio* case and specifically states that that case dealt with misclassification. *Id.* ¶ 117 ("[B]ecause Wawa had misclassified [assistants] as exempt from coverage of the overtime provisions of the federal and state laws, Wawa refused to pay these employees overtime. So, the [assistants] sued to recover what was owed to them."). The Amended Complaint alleges that, despite Wawa's reclassification of its assistant general managers to non-exempt at the end of 2015, "Wawa senior management continued to enforce the old policies, practices and procedures of not allowing [them] to collect overtime." *Id.* ¶ 138. Thus, the Amended Complaint alleges that despite Plaintiffs' reclassification, Wawa willfully continued an unwritten policy of "having non-exempt [assistant general managers], like Mr. McGlade, continue to work overtime 'off the clock' and without legally mandated overtime compensation." *Id.* ¶ 144.

Perhaps acknowledging that no such off-the-clock claim was apparent on the face of the original complaint, counsel for Employee Plaintiffs stated during oral argument that he was "going to paraphrase" the original complaint and then he described how Wawa allegedly had "to keep

20

people off the clock" to meet profit goals. Hearing Tr. 75:3-7. Counsel asserted that Mr. McGlade was not actually bringing a misclassification claim and that misclassification was only referenced to "show that Wawa was underpaying people under both scenarios." *Id.* at 73:18-19. Counsel argued that Wawa stores were given a mandate not to exceed their budget, which meant that stores had "to keep people off-the-clock and [not] pay overtime." *Id.* at 75:3-7. Counsel also stated that the off-the-clock claim was present in the original complaint because it included the allegation that Wawa had a "policy and practice that did not allow Mr. McGlade and other [assistant general managers] to record all hours work .... They didn't let him clock the time." *Id.* at 75:12-16.

The Court posed to Wawa's counsel the question of whether the words "off the clock" were "magic words." *Id.* at 91:2-3. Wawa's counsel responded in the affirmative and stated that including such a description in the original complaint would have put Wawa "on notice that the allegation is that [Wawa was] forcing people to work without letting them clock in."[12] *Id.* at 91:4-13. Wawa's counsel also argued that the practice alleged in the original complaint, namely, that Wawa "did not allow Mr. McGlade and other [assistant general managers] to record all hours worked," was in fact describing the misclassification of assistants "because when [they were] classified as salaried people, they didn't have the opportunity to record their time." *Id.* at 91:14-20. In its post-oral argument brief, Wawa then also argued that the original complaint "failed to even attempt to plead an off-the-clock claim, [and] it did not put Wawa on 'fair notice' of such a claim for purposes of Rule 15(c)(1)(B)." Additionally, Wawa asserts that, after it argued to counsel for the Employee Plaintiffs that the misclassification claim was time-barred, the Amended

---

[12]     Wawa's counsel initially stated that Wawa was not specifically arguing that it did not receive notice but was instead arguing that "two different theories" that arise from the same employment and under the same basic statutory scheme do not relate back under Rule 15 "if they're two different theories." Hearing Tr. 59:1-4.

21

Complaint "swapped in an entirely new theory of liability based on different facts and a different time period."

When explaining to the Court that Plaintiffs were not arguing to relate the "off-the-clock" claim back, counsel for the Employee Plaintiffs stated that paragraph 152 of the original complaint "is the key." Hearing Tr. 74:25. But, as Wawa points out, the focus of that paragraph relates to Wawa's purported "failure to perform a person-by-person analysis of Mr. McGlade's and other [assistant general managers'] job duties," and such an analysis is only relevant for a misclassification claim—not a claim that Wawa had a policy which required employees to work off the clock. Compl. ¶ 152. Counsel for the Employee Plaintiffs stated in reply that the original complaint "doesn't say off the clock, it doesn't say misclassification. It says you haven't paid overtime since the time that Mr. McGlade became [an assistant] up until March of 2017 when he ceased to be one." Hearing Tr. 74:15-18. Counsel is indeed correct: the original complaint does not specifically state "misclassification" or "off the clock." However, based on the original complaint's allegations, overall context, and reliance on *Gervasio*, the overtime claims in the original complaint were entirely based on misclassification—not an allegation that Wawa required its assistant general managers to work off the clock. Thus, the Amended Complaint does not relate back to the original complaint.

Because these new off-the-clock allegations were not in the original complaint, Wawa was never put on notice as to those overtime claims, which are factually and legally different from misclassification claims.

As the Third Circuit Court of Appeals has held, "only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012)

(quoting *Bensel*, 387 F.3d at 310). Thus, the off-the-clock allegations in the Amended Complaint do not relate back to the original complaint, and, as a result, they fall outside of the three-year statute of limitations and are untimely.

## 2. Equitable Tolling

Certain otherwise time-barred claims may still be asserted when equitable tolling applies. This, however, is not one of those times.

"Equitable tolling 'can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016) (quoting *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). Our Court of Appeals has looked to three principal, but not exclusive, situations in which equitable tolling may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting [his or] her rights; or (3) where the plaintiff has timely asserted [his or] her rights mistakenly in the wrong forum." *D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (citation omitted).

Wawa argues that equitable tolling does not save Mr. McGlade's otherwise untimely claims because nothing he alleges meets the standard necessary for equitable tolling. The Employee Plaintiffs contend that they followed this Court's directive in filing their Amended Complaint by "bolstering the factual averments of both their claims for losses from the data breach and wage and hour violations." Be that as it may, this could not have been selectively heard to mean that Mr. McGlade was free to raise untimely, and entirely new, claims.

23

In terms of the standards for equitable tolling, Mr. McGlade does not assert that Wawa actively misled him, nor is there evidence for the Court to so find. Likewise, Mr. McGlade has not timely asserted his rights but in the wrong forum. And, there seems to be no extraordinary obstacle that has prevented Mr. McGlade from asserting his rights.[13]

Mr. McGlade chose not to address equitable tolling in his opposition to Wawa's motion to dismiss, despite Wawa raising it. During oral argument, counsel for the Employee Plaintiffs informed the Court that Plaintiffs were not arguing for equitable tolling because they "think the first Complaint encompasses the wage and hour claim." Hearing Tr. 76:23-25. Regardless, the Court finds that the Amended Complaint's untimely off-the-clock claim is not otherwise saved by equitable tolling, and Wawa's motion to dismiss Counts VI and VII is granted.

## CONCLUSION

For the reasons set forth in this Memorandum, the Court grants in part and denies in part Wawa's motion to dismiss. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[13] At best, as a final effort to invoke equitable tolling, Mr. McGlade explains his decision not to join the *Gervasio* class—which dealt with a misclassification claim, not an off-the-clock claim—for fear of retaliation. Notwithstanding the fact that over 300 other Wawa assistant general managers did join, such a reason is usually found to be an inappropriate ground for equitable tolling of the statute of limitations. *Arizmendi v. Lawson*, 914 F. Supp. 1157, 1162 (E.D. Pa. 1996) ("Plaintiff's purported fear of employer retaliation is not a ground for equitable tolling."). There is no compelling reason to find differently here, given that Mr. McGlade only alleges that "Wawa's oppressive environment" prevented him and others from pursuing their claims or opting in to the *Gervasio* class. Am. Compl. ¶ 298.