## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

.

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION | Case No. 19-6019-GEKP |
| | Class Action |
| *This Document Relates To: Consumer Track* | |

## CONSUMER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Sherrie R. Savett (PA Bar No. 17646)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
ssavett@bm.net

Linda P. Nussbaum (admitted pro hac vice)
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036-8718
(917) 438-9102
lnussbaum@nussbaumpc.com

Roberta D. Liebenberg (PA Bar No. 31738)
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad St., 23rd Floor
Philadelphia, PA 19107
(215) 567-6565
rliebenberg@finekaplan.com

Benjamin F. Johns (PA Bar No. 201373)
CHIMICLES SCHWARTZ KRINER
  & DONALDSON-SMITH LLP
361 W. Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com

*Co-Lead Counsel for Consumer Track Plaintiffs*

## **TABLE OF CONTENTS**

I.     INTRODUCTION ..........................................................................................................1

II.    FACTUAL BACKGROUND ........................................................................................3

     A.     Procedural Background........................................................................................3

     B.     Settlement Negotiations .....................................................................................4

          1.     The Proposed Settlement Class..................................................................5

          2.     Compensation to Class Members................................................................6

          3.     Injunctive Relief and Data Security Enhancements....................................7

          4.     Attorneys' Fees and Expenses, Class Representative Service Awards, and Costs of Settlement Administration ........................................................8

     C.     The Notice Program............................................................................................9

III.    LEGAL STANDARD ..................................................................................................11

IV.    ARGUMENT ...............................................................................................................12

     A.     The Proposed Settlement is "Fair, Reasonable, and Adequate" Under Fed. R. Civ. P. 23(e)(2).......................................................................12

          1.     Plaintiffs and Class Counsel Adequately Represented the Class...............12

          2.     The Settlement Was Negotiated at Arm's Length ....................................13

          3.     The Relief Provided for the Class is Adequate .........................................14

          4.     The Proposal Treats Class Members Equitably Relative to Each Other..................................................................................15

          5.     The Girsh Factors Favor Approval ..........................................................15

               a.     Complexity and Duration of the Litigation....................................15

              b.     Reaction of the Class to the Settlement .........................................16

               c.     The Stage of the Proceeding and Amount of Discovery Completed ...................................................18

d. Risks of Establishing Liability, Proving Damages, and Maintaining the Class Action Through Trial ..........................19

e. Defendant's Ability to Withstand a Greater Judgment.................21

f. Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.....................................22

B. The Notice Program Effectively Apprised Class Members of Their Rights .........23

1. Notice Reached Significant Numbers of Class Members.........................24

2. The Detailed Notice Form, In-Store Signs, Press Release, and Settlement Website Clearly and Concisely Informed Class Members About their Rights and Options.......................25

C. The Various Theodore Frank Objections are Without Merit and Present No Basis to Reduce the Proposed Attorneys' Fee Award.......................26

1. The Requested Fee and Expense Amounts are Entirely Appropriate and in Proportion to the Settlement ..........................................27

2. Mr. Frank's Reliance on Rule 23(e)(2)(C)(ii) is Misplaced ....................33

3. This is Not a Coupon Settlement .................................................33

4. The Meaningful Injunctive Relief Obtained in this Case Supports the Requested Fee ......................................................34

5. Mr. Frank's Concerns About Clear Sailing Provisions are Unfounded.....37

6. The Hourly Rates and Time Billed are Reasonable..................................38

D. The Court Should Confirm Certification of the Settlement Class ........................41

1. The Class Meets the Requirements of Rule 23(a) ....................................41

a. The Settlement Class is Numerous .................................42

b. There are Questions of Law or Fact Common to the Class ..........42

c. Plaintiffs' Claims are Typical of the Class ....................................43

d. Plaintiffs and Class Counsel Adequately Represented the Class...44

2.    The Class Meets the Requirements of Rule 23(b)(3)................................44

a.    Common Questions of Law or Fact Predominate........................45

b.    A Class Action is the Superior Method
of Adjudicating This Case ...............................................................46

V.    THE COURT SHOULD APPOINT SHERRIE SAVETT, BENJAMIN JOHNS,
ROBERTA LIEBENBERG AND LINDA NUSSBAUM AS CLASS COUNSEL..........47

VI.    CONCLUSION.............................................................................................................47

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*In re Aetna Inc. Sec. Litig.*,
  2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ...............................................................22

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997).............................................................................41, 45, 46

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018)................................................... *passim*

*In re Aremis Soft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002)..............................................................20

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007) ..............................................17

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994).....................................................................43

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013).......................................................29, 30, 31, 32

*Bell Atlantic Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993)....................................................................16

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...............................................................36

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).........................................................................32, 33

*Boone v. City of Phila.*,
  668 F. Supp. 2d 693 (E.D. Pa. 2009) .................................................17

*Brady v. Due North Holdings, LLC*,
  No. 17-cv-01313, at 2 (Dkt. 65) (S.D. Ind. Oct. 16, 2018)....................................23

*Briggs v. Hartford Fin. Servs. Grp., Inc.*,
  No. 07-cv-05190, 2009 WL 2370061 (E.D. Pa. July 31, 2009) ..............................39

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) .......................................................32, 37

*Browne v. US Fertility, LLC*,
  No. 21-367, 2021 U.S. Dist. LEXIS 115897 (E.D. Pa. June 22, 2021)...................21

*Calhoun v. Acme Cleveland Corp.*,
  801 F.2d 558 (1st Cir. 1986) ................................................................................40

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................17, 18, 21

*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) ...........................................................................20

*Charles v. Goodyear Tire & Rubber Co.*,
  976 F. Supp. 321 (D.N.J. 1997) ...........................................................................36

*In re Citrix Data Breach Litig.*,
  No. 19-61350, 2021 U.S. Dist. LEXIS 112272 (S.D. Fla. June 10, 2021) .............20

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
  333 F.R.D. 364 (E.D. Pa. 2019) ...............................................................29, 30, 38

*Dartell v. Tibet Pharms., Inc.*,
  No. 14-cv-03620, 2017 WL 2815073 (D.N.J. June 29, 2017) ...............................40

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ..........................................................................44

*In re Domestic Drywall Antitrust Litig.*,
  No. 13-MD-2437, 2019 WL 1258832 (E.D. Pa. Mar. 19, 2019) ...........................41

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) ..........................................................................32, 36

*In re Equifax Customer Data Sec. Breach Litig.*,
  2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020) ....................................34

*Fitzgerald v. Gann Law Books*,
  2014 WL 8773315, 2014 U.S. Dist. LEXIS 174567 (D.N.J. Dec. 17, 2014) ..........32

*Fulton-Green v. Accolade, Inc.*,
  No. 18-cv-00274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) (Pratter, J.) ................ *passim*

*Fulton-Green v. Accolade, Inc.*,
  No. 18-cv-00274, Dkt. Nos. 32-4, 32-5, 32-6 .......................................................39

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008) ...........................................................................13

*George v. Acad. Mortg. Corp.*,
  369 F. Supp. 3d 1356 (N.D. Ga. 2019) .................................................................17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)......................................................................... *passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...............................................................19, 30, 31

*Gray v. BMW of N. Am., LLC*,
    No. 13-cv-3417 (WJM), 2017 U.S. Dist. LEXIS 135593 (D.N.J. Aug. 24,
    2017) ...............................................................................................................29

*Grok Lines Inc. v. Paschall Truck Lines, Inc.*,
    No. 14-cv-08033, 2015 WL 5544504 (N.D. Ill. Sept. 18, 2015)...........................36

*Hanlon v. Aramark Sports, LLC*,
    No. 09-cv-00465, 2010 WL 374765 (W.D. Pa. Feb. 3, 2010)................................24

*In re Home Depot Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113 (N.D. Ga. Aug. 23,
    2016) ...............................................................................................18, 35, 38

*Hoxworth v. Blinder, Robinson & Co.*,
    980 F.2d 912 (3d Cir. 1992).........................................................................43

*In re HP Inkjet Printer Litig.*,
    716 F. 3d 1173 (9th Cir. 2013) .......................................................................36

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
    No. CV JKB-16-3025, 2019 WL 3183651 (D. Md. July 15, 2019) .......................34

*Jackson v. Wells Fargo Bank, N.A.*,
    136 F. Supp. 3d 687 (W.D. Pa. 2015)..............................................................32

*Johnson v. Cmty. Bank, N.A.*,
    No. 3:12-CV-01405, 2013 WL 6185607 (M.D. Pa. Nov. 25, 2013) ................36, 37

*Keenan v. City of Philadelphia*,
    983 F.2d 459 (3d Cir. 1992)...........................................................................40

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) .......................................................................40

*Koby v. ARS Nat'l Servs, Inc.*,
    846 F.3d 1071 (9th Cir. 2017) ......................................................................36

*Lazy Oil v. Witco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997)..........................................................21, 22

*Lenahan v. Sears, Roebuck & Co.*,
  2006 WL 2085282 (D.N.J. July 24, 2006), *aff'd*, 266 Fed. Appx. 114 (3d Cir.
  2008) ...........................................................................................................................15, 28

*Linnins v. Haeco Americas, Inc. (f/k/a Timco Aviation Services, Inc.)*,
  No. 16-cv-00486, 2018 WL 5312193 (M.D.N.C. Oct. 26, 2018)...........................................23

*Loughner v. Univ. of Pittsburgh*,
  260 F.3d 173 (3d Cir. 2001)...................................................................................................40

*McDonough v. Toys "R" Us, Inc.*,
  80 F. Supp. 626 (E.D. Pa. 2015) ............................................................................................21

*In re Meade Land & Dev. Co., Inc.*,
  527 F.2d 280 (3d Cir. 1975)...................................................................................................40

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) .................................................................................................40

*Messner v. Northshore Univ. Health Sys.*,
  669 F.3d 802 (7th Cir. 2012) .................................................................................................45

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)...............................................................................................................24

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  301 F.R.D. 191 (E.D. Pa. 2014).............................................................................................13

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016).......................................................................................... *passim*

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  No. 11-cv-02164, 2017 WL 2734714 (D.N.J. June 26, 2017)................................................40

*Palamara v. Kings Family Rests.*,
  2008 WL 1818453 (W.D. Pa. Apr. 22, 2008)...................................................................24, 25

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) .......................................................................................27, 28, 32

*Perdue v. Hy-Vee, Inc.*,
  No. 19-1330, 2021 U.S. Dist. LEXIS 135441 (C.D. Ill. July 21, 2021)............................28, 35

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005)..............................................................................................20

*Pfeifer v. Wawa, Inc.*,
  No. 16-cv-00497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ............................................40

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................................................................17

*In re Processed Egg Prod. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012) ...............................................................19, 42, 44, 46

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998).........................................................................16, 44

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ...............................................................27, 28, 40

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990).............................................................................40

*In re Rutter's Data Sec. Breach Litig.*,
    511 F. Supp. 3d 514 (M.D. Pa. 2021) ...............................................................21

*In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab.*
    *Litig.*,
    997 F.3d 1077 (10th Cir. 2021) .........................................................................32

*Schneider v. Chipotle Mexican Grill, Inc.*,
    336 F.R.D. 588 (N.D. Cal. 2020) .......................................................................18

*Schwartz v. Avis Rent a Car Sys., LLC*,
    No. 11-cv-04052, 2016 U.S. Dist. LEXIS 80387 (D.N.J. June 21, 2016).......................37, 38

*In re Sears, Roebuck and Co. Front-Loading Washer Prods. Liab. Litig.*,
    867 F.3d 791 (7th Cir. 2017) .............................................................................28

*In re Sonic Corp. Customer Data Breach Litig.*,
    No. 17-md-02807 (Dkt. 145), slip op. at 5-6 (N.D. Ohio Dec. 20, 2018) ..............................25

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12,
    2019) .....................................................................................................18

*In re Sony Gaming Networks and Customer Data Security Breach Litig.*,
    No. 11-md-02258 (Dkt. 211) (S.D. Cal. May 4, 2015).......................................................23

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................36

*Stewart v. Abraham*,
    275 F.3d. 220 (3d Cir. 2001).............................................................................42

*In re: Subway Footlong Sandwich Mktg. and Sales Pracs. Litig.*, Appeal of:
   *Theodore Frank, Objector*,
   869 F.3d 551 (7th Cir. 2017) ....................................................................................36

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)..............................................................................17, 22

*Sweda v. The Univ. of Penn.*,
   No. 16-cv-04329, 2021 WL 5907947 (E.D. Pa. Dec. 14, 2021) (Pratter, J.)..................16, 40

*Swinton v. SquareTrade, Inc.*,
   No. 18-cv-00144, 2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ...........................................15

*Taha v. Bucks Cty. Pa.*,
   No. 12-6867, 2020 U.S. Dist. LEXIS 222655 (E.D. Pa. Nov. 30, 2020) ...............................41

*Teh Shou Kao & T S Kao v. Cardconnect Corp.*,
   No. 16-cv-05707, 2021 U.S. Dist. LEXIS 33147 (E.D. Pa. Feb. 23, 2021) ..........................39

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)...............................................................................................45

*Vinh Du v. Blackford*,
   No. 17-cv-00194, 2018 WL 6604484 (D. Del. Dec. 17, 2018) .................................................14

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)....................................................................... *passim*

*In re Wawa, Inc. Data Security Litig.*,
   No. 19-cv-06019, 2021 WL 3276148 (E.D. Pa. July 30, 2021) ...................................... *passim*

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984)........................................................................................44

*Williams v. Reckitt Benckiser LLC*,
   No. 20-23564-CIV, 2021 U.S. Dist. LEXIS 186467 (S.D. Fla. Sep. 29, 2021) .....................16

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-cv-08020, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ................................................40

*In re Zappos Security Breach Litig.*,
   No. 12-cv-00325, 2019 WL 12026706 (D. Nev. Dec. 23, 2019) ...........................................23

*Zepeda v. PayPal, Inc.*,
   No. C 10-1668.............................................................................................................35

**STATUTES**

Class Action Fairness Act ........................................................................................17, 33


**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1) ....................................................................................42

Fed. R. Civ. P. 23(a)(2) ....................................................................................42

Fed. R. Civ. P. 23(a) and (b) ............................................................................32

Fed. R. Civ. P. 23(a) and (b)(3) ........................................................................41

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................23, 24

Fed. R. Civ. P. 23(e)(2) ............................................................................. *passim*

Fed. Rule Civ. Pro. 23(b)(3)(D) ........................................................................46

*Manual for Complex Litigation, Fourth* § 21.632 (2004) .............................................41

*Newberg on Class Actions* § 8:24 (5th ed. 2014) ......................................................40

Wright, Miller & Kane, *Fed. Practice & Procedure: Civil 2d* § 1754 .........................................46

## I.    INTRODUCTION

The Consumer Track Plaintiffs ("Plaintiffs") hereby seek final approval of the proposed settlement with Defendant Wawa, Inc. ("Wawa") in accordance with Fed. R. Civ. P. 23(e)(2). If approved, the settlement will provide $5 and $15 Wawa gift cards, and cash, to hundreds of thousands of consumers who used credit or debit cards at Wawa during the nine-month period of the data security incident. The settlement also ensures that meaningful security enhancements will be in place and subject to supervision by Consumer Track counsel for a period of at least two years, in addition to enhancements previously implemented by Wawa and attributed in part to the Consumer Track action. *See* Second Amended Settlement Agreement ("SA") at ¶¶ 38-41 (Dkt. 264-1).

Additionally, the Parties have carefully monitored the settlement administration process from beginning to end, and have agreed upon the following enhancements to the original settlement which have significantly increased both notice and class participation:

- Wawa has sent an email to approximately 575,162 customers who signed up for the Wawa mobile App before December 12, 2019 (the end of the data breach period) and will *automatically* provide them with a $5 gift card *without any documentary proof requirement*.[1]

- Wawa has agreed to waive its right to audit the Tier One and Tier Two claims submitted by claimants and has further agreed to pay the full amount claimed by each Tier Three claim approved by KCC to date.

- Wawa has agreed to forgo the one-year expiration date on all of the Tier One and Tier Two gift cards. They will no longer expire, and they remain fully transferrable and usable for any item, aside from tobacco and nicotine delivery products, sold by Wawa.

---

[1] The Parties' November 12, 2021 amendment to the Settlement Agreement (Dkt. 264), as approved by the Court (Dkt. 266), provided for Wawa to send this notification to the approximately 633,000 e-mail addresses Wawa had in its records, which were associated with customers who signed up for the Wawa App. A subsequent review performed by the Settlement Administrator, KCC, determined that approximately 575,162 of these e-mail addresses were valid. KCC sent the e-mail transmission to those 575,162 email addresses. *See* Declaration of Bernella Osterlund Re: Notice Procedures and Claims Filing ("KCC Decl.") filed contemporaneously herewith, at ¶ 2.

- Pursuant to ongoing discussions between the Parties, Wawa agreed to, and did, supplement the notice plan by, *inter alia*, (a) keeping the in-store signs up for several additional weeks beyond what was required by the Settlement Agreement; (b) issuing a second reminder press release; (c) placing a prominent link to the settlement webpage at the top of the Wawa homepage; and (d) running a video message about the settlement on all Wawa fuel pumps equipped with video screens. These steps were in addition to the notice steps previously approved by the Court – which resulted in millions of media impressions and the filing of thousands of claims.

Each of these enhancements was already implemented or was in an advanced stage of negotiation by the Parties before the objector filed his objection to the settlement on November 10, 2021.

In sum, the proposed settlement – particularly with these recent enhancements – meets the standard of being fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23(e)(2), and should receive final approval.

Only one class member out of approximately 22 million has filed an objection to the settlement: serial objector Theodore Frank through his organization, the Hamilton Lincoln Law Institute. Mr. Frank subsequently withdrew all objections other than those addressing Class Counsel's attorneys' fees. *See* Dkt. 269 pg. 2 ("Mr. Frank withdraws his Objection to approval of the Settlement Agreement, thereby leaving only his Objection to the request of counsel for the Consumer Track Plaintiffs for attorneys' fees and costs."). While Mr. Frank preemptively goes out of his way in his original objection to convince the Court that this objection is brought in good faith notwithstanding his track record of submitting dozens of prior objections in other class actions (*see* Dkt. 263-1), it was plainly just another part of his crusade to attack class action settlements and attorneys' fees. As discussed in more detail below, Mr. Frank's remaining objections lacks merit: the settlement will distribute meaningful benefits to class members, and the proposed fee award does not provide a windfall or disproportionate result to Class Counsel.

For the reasons that follow, the Frank objection should be overruled and the settlement should receive final approval.

2

## II.    FACTUAL BACKGROUND

### A.    Procedural Background

In December 2019, Wawa disclosed that cybercriminals conducted a massive cyber-attack on Wawa's payment card environment (the "Data Security Incident"). The Data Security Incident involved transactions at most of Wawa's nearly 900 convenience stores (including fuel dispensers) over a nine-month period from March 4, 2019 until December 12, 2019. Information compromised in the Data Security Incident included credit and debit card numbers, card expiration dates, and cardholder names.

Consumers whose payment card information was compromised as a result of the Data Security Incident filed twenty-five class actions shortly after the announcement. On January 8, 2020, Chief Judge Juan Sanchez entered an order consolidating those cases in this Court. Dkt. 9. On June 3, 2020, the Parties informed the Court of their intention to conduct an early mediation and reported on their progress to that end. Dkt. 114-1, at 3. On June 12, 2020, the Court appointed as Interim Co-Lead Counsel for the Plaintiffs in the Consumer Track: Sherrie Savett of Berger Montague PC; Roberta Liebenberg of Fine, Kaplan and Black, R.P.C.; Benjamin F. Johns of Chimicles Schwartz Kriner & Donaldson-Smith LLP; and Linda Nussbaum of Nussbaum Law Group, P.C. Dkt. 120.

On July 27, 2020, Interim Co-Lead Counsel filed the operative Consumer Plaintiffs' Consolidated Class Action Complaint (Dkt. 132) (the "Complaint"), asserting claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and violations of state consumer protection and data privacy statutes. The Complaint alleged, among other things, that despite the foreseeability of a data breach, Wawa failed to implement adequate measures to protect the payment card information entrusted to it by its customers. The Complaint further alleged that Class Members have experienced and will continue to experience fraudulent

transactions on their payment cards, have spent time responding to the security incident, may have spent money for protective measures, and are at an increased risk of future misuse of their payment card information. The Complaint sought reimbursement for Class Members' out-of-pocket losses, compensation for their time spent responding to the Data Security Incident, and injunctive relief directed at preventing similar incidents going forward.

### B.    Settlement Negotiations

Beginning in June 2020, the Parties held several conference calls to plan for the mediation and the exchange of documents, information, and mediation statements. Wawa ultimately produced nearly 3,600 pages of documents, and Plaintiffs produced over 200 pages of documents to Wawa. In addition to reviewing these documents produced by Wawa and exchanging other information in connection with the mediation, Plaintiffs' Counsel also gathered public information regarding the Data Security Incident and consulted with an expert witness regarding data security issues.

On September 15, 2020, Judge Diane M. Welsh (Ret.) of JAMS presided over a mediation, which lasted nearly 12 hours, consisting of joint sessions and numerous break-out sessions. The negotiations were hard fought and conducted at arms' length and in good faith by experienced counsel who were guided by both their experience and their extensive research of the relevant facts and applicable law. At the end of the mediation session, the Parties reached an agreement in principle. Over the course of the ensuing months, the Parties held multiple conference calls and exchanged drafts and emails to address additional details, all of which resulted in an executed Settlement Agreement dated February 9, 2021 (Dkt. 181-1).[2]

---

[2] The Parties subsequently filed an Amended Settlement Agreement on April 29, 2021, which clarified the terms of the Release (Dkt. No. 201-1). The Parties filed a Second Amended Settlement Agreement on November 12, 2021, which addressed sending email notice and Wawa gift cards to

In exchange for the consideration set forth in the Settlement Agreement, all Class Members who did not exclude themselves from (*i.e.*, opt out of) the Settlement will release their claims. If approved by the Court, the Settlement will result in the dismissal with prejudice of all consumer class actions filed against Wawa related to the Data Security Incident.

### 1. The Proposed Settlement Class

The Proposed Settlement Class is defined as:

> All residents of the United States who used a credit or debit card at a Wawa location at any time during the Period of the Data Security Incident of March 4, 2019 through December 12, 2019. Excluded from the Settlement Class are Wawa's executive officers and the Judge to whom this case is assigned.

SA ¶ 28. The Settlement Class is coextensive with the class definition in the Complaint. Wawa estimates that there are approximately 22 million Class Members.

On July 30, 2021, this Court granted preliminary approval of the Settlement over the objections of the Employee Track Plaintiffs, who sought, *inter alia*, to redefine the Settlement Class to carve out Wawa employees. The Court rejected those arguments, observing that any employees would maintain the option of objecting to the Settlement or opting out of the consumer class subsequent to preliminary approval of the Settlement. *In re Wawa, Inc. Data Security Litig.*, No. 19-cv-06019, 2021 WL 3276148, at *10 (E.D. Pa. July 30, 2021) ("Prelim. App. Op."). Notably, the Employee Track Plaintiffs have not filed any objections to final approval of the Settlement.

---

consumers who signed up for the Wawa mobile App (Dkt. No. 264-1). The Parties filed a Third Amendment to the Settlement Agreement on December 21, 2021, which addressed the re-allocation of attorneys' fees should the Court deny any portion of Class Counsel's fee request (Dkt. No. 269-1). The Third Amendment to the Settlement Agreement was an abbreviated document as opposed to a full version of the settlement agreement. References herein to the Settlement Agreement refer to the Second Amended Settlement Agreement as amended by the Third Amendment to the Settlement Agreement.

As of the November 12, 2021 opt-out and objection deadline, a total of six class members have excluded themselves from the settlement. A list of the names of all opt-outs is attached to the KCC Declaration as Exhibit B. As noted, Theodore Frank was the only class member to file an objection.

### 2.    Compensation to Class Members

Tier One consists of customers who made a Wawa purchase using a payment card during the data breach period. Significantly, Tier One claimants need not have experienced any fraudulent activity on their payment cards to be eligible for relief. As of the November 29, 2021 claim filing deadline, 6,744 claims have been submitted for Tier One. *See* KCC Decl., at ¶ 7. Additionally, the Parties' November 12 amendment to the Settlement provides that another 575,159 Wawa customers will automatically be placed into Tier One and will not need to submit a claim form to receive the $5 Wawa gift card.[3] *Id.* Given that the aggregate amount of these claims is below the $6 million cap (and in excess of the $1 million floor) for Tier One claims, all Tier One claimants will receive a $5 Wawa gift card without a *pro rata* adjustment. *See* SA § III.36.a.iv. This confers a direct benefit of approximately $2,909,515 to the class. *Cf.* Frank Brf. at 6 ("Because of the structures, burdens, and caps of the claims process, Frank would be very surprised if the total class recovery meaningfully exceeds the $1 million floor attendant to Tier 1 claims.").

Tier Two consists of claimants who made a Wawa purchase using a payment card during the data breach period and who submit proof of a subsequent fraudulent charge or attempted fraudulent charge. Tier Two claimants are entitled to a $15 Wawa gift card. As of the November

---

[3] The objector's counsel was on the November 19, 2021 call with the Court that preceded the Court's approval of this amendment (which had been in the works by the Parties for several weeks before the objection was filed). The objector's counsel did not object to or otherwise comment upon the amendment during the call.

29, 2021 claim filing deadline, 683 claims have been submitted for Tier Two. *See* KCC Decl., at ¶ 7. Wawa has agreed to not object to any Tier Two claims; this confers a direct benefit of approximately $10,245 to the class. *Id.*

Tier Three consists of claimants who have demonstrated out-of-pocket expenses or losses in connection with a fraudulent transaction incurred on a payment card used at Wawa during the data breach period. These losses include, but are not limited to, unreimbursed fraudulent charges, bank fees, replacement card fees, late fees related to payments to third parties that were delayed due to fraud or card replacements, credit freeze fees, parking expenses or other transportation expenses for trips to a financial institution to address fraudulent charges or receive a replacement payment card, or other expenses reasonably attributable to the Data Security Incident. Tier Three claimants will be entitled to cash payments equal to their out-of-pocket expenses or losses up to $500 for each claimant. As of the November 29 claim filing deadlines, 921 claims have been submitted for Tier Three. KCC Decl., at ¶ 8. Of these claims, 185 are valid for an estimated award total amount of $58,164.29. *Id.* Wawa is not objecting to any of these 185 approved Tier Three claims. The remaining 736 claims contain deficiencies, which KCC and the parties are continuing to gather information on to determine whether these claims are valid. *See id.*

Thus, the total amount of cash and gift card compensation being distributed directly to the class is, at least, $2,977,924.

### 3.    Injunctive Relief and Data Security Enhancements

The Settlement also includes important injunctive relief designed to minimize the likelihood of unauthorized intrusions into Wawa's payment card systems in the future. Specifically, for a period of at least two years, Wawa will:

- Retain a qualified security assessor on an annual basis to assess compliance with Payment Card Industry Data Security Standards ("PCI DSS") requirements and issue a Report on Compliance that evidences compliance with all such requirements;

- Conduct annual penetration testing and remediate any identified critical vulnerabilities or implement compensating controls where feasible;

- Operate a system that encrypts payment card information and complies with Europay, Mastercard, and Visa ("EMV") security procedures at the point-of-sale terminals in Wawa stores;

- Operate a system that implements EMV security procedures at the point-of-sale terminals at Wawa fuel pumps; and

- Maintain written information security programs, policies, and procedures.

SA ¶ 40.

These measures go beyond any statutory or regulatory legal requirements that apply to Wawa. *See* Decalaration of Gregory T. Parks ("Parks Decl."), submitted concurrently herewith, at ¶ 4. Additionally, most of these measures go beyond the requirements of the contractually-based PCI-DSS rules imposd on Wawa by the payment card industry and Wawa's contract with its payment processor. *Id.* The Parties estimate that these enhancements – which will be imposed on Wawa by Court order upon approval of the Settlement – along with other data security improvements made prior to the Settlement and due in part to the Consumer Track action, are worth at least $35 million. SA ¶¶ 38-39; Parks Decl. ¶ 5. These enhancements will benefit current and future Wawa payment card customers without any need to file a claim form.

### 4. Attorneys' Fees and Expenses, Class Representative Service Awards, and Costs of Settlement Administration

The Parties agreed that Wawa will pay – subject to Court approval – the aggregate amount of $3.2 million to cover attorneys' fees and expenses, class representative service awards, and the costs of settlement administration. Plaintiffs filed a motion for approval of this payment on October 28, 2021 (Dkt. 258) (the "Fee Petition"), which argued that the requested fee was justified in light of, *inter alia*, the benefits conferred by the Settlement, as well as Class Counsel's significant

negative lodestar. At the time of that filing, Class Counsel reported a self-imposed, reduced collective lodestar of $3,877,271. Dkt. 258 at 14. Since that time, (a) the lodestar has further increased to $4,105,049 as of November 30, 2021 (resulting in a negative multiplier of 0.74), and (b) the Parties have agreed to make significant enhancements to the Settlement, including providing additional notice, automatically qualifying 575,159 Wawa App users for a Tier One gift card, removing the expiration date for all Tier One and Tier Two gift cards, and waiving Wawa's right to audit Tier One and Tier Two claims that have been filed.

### C.    The Notice Program

In its Preliminary Approval Order, the Court appointed KCC to serve as the Settlement Administrator to oversee notice to the Class and to administer the claims process pursuant to the terms of the Settlement Agreement. The Court directed that notice be provided through signage displayed at all Wawa cash registers and fuel pumps for four consecutive weeks, an announcement on Wawa's website, a dedicated settlement website administrated by KCC, and a nationwide press release issued by Wawa. After the Notice Program began, in an effort to further maximize notice, the Parties took several steps to increase the reach of notice beyond what was required in the Settlement Agreement. Specifically, the Parties agreed that Wawa would: (i) keep the signs up at all in-store payment terminals and fuel pumps for several more weeks beyond the initial four week period; (ii) issue a second press release to remind Class Members about the Settlement, which was issued on September 30, 2021;[4] (iii) include a video message on all Wawa fuel pumps equipped with video screens to narrate the message of the in-store signs (the videos ran for several weeks beginning on September 28, 2021); (iv) send multiple reminders to Wawa's in-store employees to

---

[4]    *See*    https://www.prnewswire.com/news-releases/wawa-reminds-customers-how-to-submit-a-claim-to-receive-settlement-benefits-301388758.html.

ensure that the signs remain visible and unobstructed; and (v) increase the prominence of the settlement announcement on Wawa's homepage.[5]

In accordance with the Preliminary Approval Order, KCC and the Parties carried out the Court-approved notice program beginning on August 30, 2021. *See* KCC Decl. at ¶¶ 4-5. On August 30, 2021, KCC established the settlement website at www.wawaconsumerdatasettlement.com, which summarized the Settlement and contained links to each form of notice approved by the Court, the Claim Forms, and copies of relevant case filings. In addition, the settlement website included on its home page concise explanations as to qualifications for each of the three Tiers, and a means to file claims electronically.

As expected, the Settlement received considerable publicity, having been featured in the *Philadelphia Inquirer, NBC10, 6ABC, CBS Philly, Philly Voice* and *NJ.com*, among other sources.[6] That exposure persisted through the Court's issuance of the Preliminary Approval Order, and into the claims period.[7]

KCC timely updated the Settlement Website as relevant documents were filed with the Court, including the November 12 amendment and Plaintiffs' motion for attorneys' fees, costs, and service awards and supporting exhibits and declarations. *See* KCC Decl. at ¶ 4. As of

---

[5] Each of these additional steps took place before the objector filed his objection.

[6] *See, e.g.,* C. Hetrick, "Wawa would pay customers up to $9 million for hackers exposing credit card info, proposed settlement says," PHILADELPHIA INQUIRER, (Feb. 19, 2021); "Wawa would pay customers $9M in cash, gift cards in proposed settlement," 6ABC.COM (Feb. 25, 2021); J. Neiburg, "Wawa would pay customers $9M in cash, gift cards in proposed settlement," DEL. NEWS JOURNAL (Feb. 27, 2021).

[7] *See, e.g.,* C. Hetrick, "Judge preliminarily approves Wawa data breach settlement that would pay customers in gift cards," PHILADELPHIA INQUIRER (Aug. 2, 2021); C. Hetrick, "Affected by Wawa's data breach? Here's how to get a gift card or cash," PHILADELPHIA INQUIRER (Aug. 30, 2021).

December 21, 2021, the Settlement Website has received ] visits from 258,902 users. *Id.* at ¶ 5. The automated telephone line received 1,367 calls; KCC initially responded to 85 telephone calls. KCC Decl. at ¶ 5. Further, many Class Members and potential Class Members contacted Class Counsel with questions, through email and phone calls. KCC and Class Counsel responded to these inquiries to assist Class Members through the claims process or with other issues.

## III.    LEGAL STANDARD

The Court's preliminary approval order considered the factors set forth in Fed. R. Civ. P. 23(e)(2) and concluded that "at the final approval stage, the Court likely will be able to approve the Settlement under the criteria set forth in Federal Rule of Civil Procedure 23(e)(2) and certify the Settlement Class under the criteria set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure." Dkt. 234 at 2. Final approval requires an analysis of many of the same factors that the Court previously considered at the preliminary approval stage.

Under the federal rules, class action settlements must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making that determination, the court must "consider[] whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Class action settlements are presumptively fair where "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement

are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)). *Accord In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016); *Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 4677954, at *9 (E.D. Pa. Sept. 24, 2019) (Pratter, J.) (citing *Warfarin*).

In determining whether a settlement is fair, reasonable, and adequate, courts in the Third Circuit consider the nine *Girsh* factors:

> (1) [T]he complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Warfarin*, 391 F.3d at 534-35 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). Application of Rule 23(e)(2) and the *Girsh* factors demonstrates that the Settlement here meets the standards for final approval.

## IV. ARGUMENT

### A. The Proposed Settlement is "Fair, Reasonable, and Adequate" Under Fed. R. Civ. P. 23(e)(2)

#### 1. Plaintiffs and Class Counsel Adequately Represented the Class

Rule 23(e)(2)(A)'s requirement that "the class representatives and class counsel have adequately represented the class" is satisfied here. A detailed discussion of Class Counsel's efforts in the litigation and settlement negotiations is set forth in the Fee Petition. *See* Dkt. 258 at pg. 8-9 (Memo. of Law); Dkt. 259 at ¶¶ 31-58, 75-82 (Joint Decl. of Class Counsel). Class Counsel's work did not end upon the filing of the Settlement Agreement. To the contrary, the undersigned have

been in constant contact with KCC as well as counsel for Wawa for the duration of the notice program and, as reflected above, have agreed upon various improvements to the Settlement.

Each of the named Plaintiffs likewise vigorously pursued the Class's interests. They devoted significant time and effort assisting Class Counsel with prosecution of the Class's claims, collecting evidence, completing questionnaires, producing documents, and sharing other information to assist Class Counsel. *See* Dkt. 259 at ¶ 110 (Joint Decl. of Class Counsel).

### 2.    The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B)'s requirement that the proposal be "negotiated at arm's length" is also satisfied here. The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions, assisted by a neutral and highly experienced mediator. These circumstances weigh in favor of approval. Whether a settlement arises from arm's-length negotiations is a key factor in assessing settlement approval. *See In re Nat'l Football League Players' Concussion Injury Litig*., 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who served as a mediator); *Gates v. Rohm & Haas Co*., 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations and highlighting the fact that the negotiations included "two full days of mediation").

The Parties participated in settlement discussions mediated by Judge Welsh, during which they reached an agreement in principle after assessing several rounds of offers and counteroffers. Judge Welsh stated in her January 14, 2021 Declaration: "In my opinion, the proposed settlement was the result of fair, thorough, and fully-informed arm's-length negotiations between highly capable, experienced, and informed parties and counsel. . . . [F]rom an experienced mediator's perspective, the negotiated settlement produced by the mediation process represents a thorough, deliberative, and comprehensive resolution that will benefit class members through meaningful

relief." Dkt. 181-2 at ¶¶ 16-17 ("Welsh Decl."). Class Counsel who negotiated the Settlement are experienced and respected class action litigators with significant expertise in data breach cases. *Id.* at ¶ 10; *accord* Dkt. 259 at ¶¶ 3-28 (Joint Decl. of Class Counsel). Following the September 15, 2020 mediation, the Parties spent significant amounts of time revising drafts and negotiating details of the final written Settlement Agreement. At all times, these negotiations were at arm's length and – while courteous and professional – were intense and hard-fought on all sides.

### 3.    The Relief Provided for the Class is Adequate

This Rule 23(e)(2)(C) factor is largely analyzed within the *Girsh* factors below. *See Vinh Du v. Blackford*, No. 17-cv-00194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) (noting that the Rule 23(e)(2) factors largely overlap with the *Girsh* factors).

The Rule 23(e)(2)(C)(ii) sub-factor regarding the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" is met here. As discussed, the notice plan was comprehensive, the claims process was simple and straight-forward, the Parties' November 12 amendment ensures that approximately 575,159 Wawa App holders will receive $5 Wawa gift cards without needing to file a claim form, and the aggregate distribution process will ensure that nearly $3 million in gift cards and cash is actually distributed to Class Members.

With respect to the Rule 23(e)(2)(C)(iii) sub-factor regarding the "terms of any proposed award of attorney's fees," the proposed fee is reasonable for the reasons noted in the Fee Petition and further addressed in the objection section below.

With respect to the Rule 23(e)(2)(C)(iv) requirement of analyzing "any agreement required to be identified under Rule 23(e)(3)," the only such agreement is the Settlement Agreement. There are no other relevant agreements here.

### 4.    The Proposal Treats Class Members Equitably Relative to Each Other

The Rule 23(e)(2)(D) requirement that the settlement "treat[] class members equitably relative to each other" is also met. The plan of allocation makes common-sense distinctions between Class Members who experienced fraud on their payment cards and those who did not, with the latter group experiencing less damages and therefore receiving smaller individual settlement distributions. The plan of allocation also elevates Class Members who experienced out-of-pocket losses, allowing them to receive the largest individual settlement distributions. This is a sensible means by which to apportion the settlement benefits. *See, e.g., Swinton v. SquareTrade, Inc.*, No. 18-cv-00144, 2019 WL 617791, at *8 (S.D. Iowa Feb. 14, 2019) ("There is no requirement that all class members in a settlement be treated equally. And, indeed, class members are not treated equally here. Some are entitled to cash refunds and others only benefit from a coupon and injunctive relief.").

### 5.    The *Girsh* Factors Favor Approval

#### a.    Complexity and Duration of the Litigation

The first *Girsh* factor addresses the "probable costs, in both time and money, of continued litigation." *Nat'l Football League*, 821 F.3d at 437. A settlement is favored when "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *Warfarin*, 391 F.3d at 536. Where the complexity, expense, and likely duration of the litigation are significant, the court will view this factor as weighing in favor of settlement. *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *12 (D.N.J. July 24, 2006), *aff'd*, 266 Fed. Appx. 114 (3d Cir. 2008).

Here, continued litigation would entail a lengthy and expensive battle that could have resulted in no relief to the Class (or delayed relief for many years) and would have imposed further

burdens on judicial resources and the litigants. The proposed Settlement stands in stark contrast to the outcomes of numerous other class actions, in which courts denied class certification or dismissed the case on summary judgment due to plaintiffs' inability to allege viable damages theories or causation. It is reasonable to expect that the issues at hand would continue to be sharply disputed and contested, and that a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on class questions of proof, making the outcome of a trial uncertain for all parties. Moreover, even after a trial concluded, there would likely be lengthy appeals. This factor weighs in favor of approval. *See Fulton-Green*, 2019 WL 4677954, at *10.

### b.    Reaction of the Class to the Settlement

The second factor, the reaction of the class, "attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). Typically, the reaction of the class is reviewed by looking at the percentage of objections and opt-outs received in relation to the class as a whole. *See, e.g.*, *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected. This small proportion of objectors does not favor derailing settlement"); *Sweda v. The Univ. of Penn.*, No. 16-cv-04329, 2021 WL 5907947, at *4 (E.D. Pa. Dec. 14, 2021) ("The Court finds that the low number of objections [two] weighs in favor of final approval.") (Pratter, J.).

The fact that there has been only one objection filed (by someone who files objections for a living)[8] out of a class of 22 million people "'strongly militates a finding that the settlement is

---

[8] Mr. Frank objects to being labeled as a "professional" or "serial" objector, as well as the Settlement's "unduly burdensome requirement of providing objection history." Frank Brf. at 2; Dkt. 263-1 at ¶ 24. Notably, however, he recently complied with this objection history disclosure requirement in another case in which he objected. *See Williams v. Reckitt Benckiser LLC*, No. 20-23564-CIV, 2021 U.S. Dist. LEXIS 186467, at *10 (S.D. Fla. Sep. 29, 2021) ("Frank next listed,

fair and reasonable.'" *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 701 (M.D. Pa. 2008) (quoting *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004)). *See also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323-24 (3d Cir. 2011) (upholding district court's finding that twenty objections in a class of millions favored settlement); *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."); *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) ("A low number of objectors compared to the number of potential class members creates a strong presumption in favor of approving the settlement."); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements.").

In addition to the dearth of objections by class members, it is noteworthy that the Employee Track Plainifs have not objected. Similarly, none of the Attorneys General or federal officials who received notice of the Settlement pursuant to the Class Action Fairness Act ("CAFA") have sought to object, intervene, or otherwise comment upon the Settlement. *See George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1373 (N.D. Ga. 2019) (finding that fact that notice of settlement required by CAFA was provided to "the United States Department of Justice and all applicable state attorneys general and required government agency recipients" and yet "[n]ot one CAFA notice recipient objected to the settlement" weighed in favor of approval).

---

beyond the requirements of the Court's instructions to objectors…, all cases in which he or another CCAF attorney objected to a class action settlement... This list spans approximately 17 pages.").

The affirmatively positive response from class members also supports approval of the Settlement. Thousands of claims have been timely filed. And while Mr. Frank criticizes the level of participation in the Settlement, he ignores a number of comparable data breach settlements that have received final approval notwithstanding the presence of relatively low claims rates. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) ("[T]he response rate from the Class has been relatively low. Only about 1.8% of the Settlement Class Members have submitted claims…Plaintiffs represent that this percentage compares favorably to the claims rates of approximately 0.2% and 0.23% in the *In re Home Depot* and *In re Target* data-breach actions, respectively."); *Schneider v. Chipotle Mexican Grill, Inc*., 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate . . . is on par with other consumer cases, and does not otherwise weigh against approval."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *9 (N.D. Ohio Aug. 12, 2019) (granting final approval even though "the claims rate was somewhat low," and recognizing the challenges associated with "eliciting class member response where notice is not individually addressed, where the recovery amount is limited, and where class members may not recall a life event as insignificant as eating at Sonic").

### c.    The Stage of the Proceeding and Amount of Discovery Completed

The third *Girsh* factor analyzes the "'degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Cendant*, 264 F.3d at 235 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)).

The fact that the Parties have not engaged in formal discovery is not determinative. At an early stage, the Parties disclosed to the Court their intention to mediate after engaging in targeted

informal discovery, which the Court approved. *See* Case Mgmt. Ord. No. 2 (June 15, 2020) (Dkt. 119). That is consistent with a long line of cases in which courts—including this Court—have approved class action settlements in the early stages of litigation, where only informal discovery had occurred. *See, e.g., Fulton-Green*, 2019 WL 4677954, at *10 ("[E]ven at this early stage of the proceedings, a reasonable amount of informal discovery has been done - enough to give both sides a fairly accurate view of continued litigation."); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (granting final approval where "no formal discovery was conducted" prior to settlement but counsel conducted informal discovery including investigation prior to filing the complaint and reviewing records produced by co-defendant).

Here, the Parties exchanged discovery and other information in connection with settlement negotiations. Wawa produced 3,596 pages of documents including, *e.g.*, a report on the Data Security Incident, other evaluations of its data security, internal and external emails regarding the discovery and investigation of the data breach, Board presentations, and other relevant documents. Plaintiffs produced 212 pages of documents including, *e.g.*, evidence of Plaintiffs' payment card purchases at Wawa during the relevant period, subsequent fraudulent charges on those same cards, instances of further identity theft beyond payment card fraud, out of pocket costs incurred by Plaintiffs due to the Wawa data breach, and Plaintiffs' involvement in other data breaches beyond the Wawa breach. *See* Dkt. 259 at ¶¶ 40-41 (Joint Decl. of Class Counsel).

### d.    Risks of Establishing Liability, Proving Damages, and Maintaining the Class Action Through Trial

The fourth through sixth *Girsh* factors "examine what the potential rewards (or downside) of the litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC*, 55 F.3d at 814. The factors include: (4) the risks of establishing liability; (5) the risks

of establishing damages; and (6) the risks of maintaining the class action through trial. *Girsh*, 521

F.2d at 157. As one court explained:

> In examining [the risks of establishing liability], the Court need not delve into the intricacies of the merits of each side's arguments, but rather may "give credence to the estimation of the probability of the success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action."

*Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (quoting *Lachance v.*

*Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1991)); *see also In re Aremis Soft Corp. Sec. Litig.*,

210 F.R.D. 109, 124–25 (D.N.J. 2002) (noting that the "court should avoid conducting a mini-trial

and must, to a certain extent, give credence to the estimation of the probability of success proffered

by class counsel") (internal citation omitted).

Plaintiffs' claims are meritorious but subject to credible defenses and inherent risks. Were

the case to continue, Plaintiffs and the Class would face a number of delays and challenges,

including opposing a motion to dismiss, obtaining class certification, briefing motions for summary

judgment, defending expert opinions, and maintaining class certification through trial. *See In re*

*CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties

were to continue to litigate this case, further proceedings would be complex, expensive and lengthy,

with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses

and provide immediate benefit to the class militates in favor of approval."). Wawa previewed many

of its defenses regarding standing, damages, causation, and class certification at and before the

mediation. *See* Dkt. 259 at ¶¶ 48-51 (Joint Decl. of Class Counsel).

Notably, data breach cases are particularly risky given challenges relating to causation and

damages, among other issues. *See In re Citrix Data Breach Litig.*, No. 19-61350, 2021 U.S. Dist.

LEXIS 112272, at *7 (S.D. Fla. June 10, 2021) ("Data breach cases in particular present unique

challenges with respect to issues like causation, certification, and damages."); *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("[T]he dearth of precedent makes continued litigation more risky. The parties have pointed the Court to only one non-settlement data-breach class that has been certified in federal court to date.") (citation omitted). And several data breach cases, including cases in this Circuit, have failed even at the pleading stage. *See In re Rutter's Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 523-26 (M.D. Pa. 2021) (dismissing claims of certain plaintiffs who had not experienced fraud but alleged "only possible future injuries and prophylactic measures to avoid those potential injuries"); *Browne v. US Fertility, LLC*, No. 21-367, 2021 U.S. Dist. LEXIS 115897, at *6-7 (E.D. Pa. June 22, 2021) (same).

The risk of maintaining class certification through trial also favors approval of the Settlement. *See Fulton-Green*, 2019 WL 4677954, at *8 ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare.").

In sum, the risks of establishing liability and damages, maintaining a certified class through trial, and ultimately prevailing through appeals, strongly favor final approval.

### e.    Defendant's Ability to Withstand a Greater Judgment

The Third Circuit interprets the seventh *Girsh* factor to be "concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Cendant*, 264 F.3d at 240. "Even if solvency could be assured," the Third Circuit "regularly find[s] a settlement to be fair even though the defendant has the practical ability to pay greater amounts." *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 626, 645 (E.D. Pa. 2015) (collecting cases). For example, in *Lazy Oil v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997), the district court concluded that the fact that a settling defendant had the financial resources to pay a larger judgment

did not weigh against settlement "in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial." *Id.* at 318.

The fact that Wawa might have the financial resources to pay a larger judgment does not weigh against approval of the settlement when considered within the context of the various settlement benefits and risks of further litigation. In light of these facts, including the real possibility of recovering less or nothing at all, this factor weighs in favor of final approval.

> ### f.    Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The last two *Girsh* factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. "The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323-24 (3d Cir. 2011) (quoting *Prudential*, 148 F.3d at 322). "While the court is obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, it must also recognize that settlement typically represents a compromise and not hold counsel to an impossible standard." *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001); *see also Lazy Oil*, 95 F. Supp. 2d at 338-39 (a court "should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes'") (citation omitted). The relief offered by the Settlement is fair considering the risks

of continued litigation discussed above. Class Members reap meaningful benefits in the Settlement without having to face these further litigation risks.

Finally, a comparison with monetary recoveries in other data breach settlements demonstrates the strength of this Settlement. *See, e.g., Linnins v. Haeco Americas, Inc. (f/k/a Timco Aviation Services, Inc.*), No. 16-cv-00486, 2018 WL 5312193, at *1 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was accessed in data breach); *Brady v. Due North Holdings, LLC*, No. 17-cv-01313, at 2 (Dkt. 65) (S.D. Ind. Oct. 16, 2018) (settlement provided extension of identity theft protection services and reimbursement of out-of-pocket expenses of up to $150, $250, $350, or $500 depending on settlement tier) (judgment and relevant pages of Settlement Agreement previously filed here at Dkt. 180-1); *In re Zappos Security Breach Litig.*, No. 12-cv-00325, 2019 WL 12026706, at *2 (D. Nev. Dec. 23, 2019) (data breach settlement provided "10% coupon" for Zappos goods); *In re Sony Gaming Networks and Customer Data Security Breach Litig.,* No. 11-md-02258 (Dkt. 211) (S.D. Cal. May 4, 2015) (data breach involved payment card information and other PII; settlement provided reimbursement of actual identity theft losses with $1 million aggregate cap and choice of one or two items from mix of Sony games, online display themes, or 3-month subscription to Sony PlayStation service) (judgment and relevant pages of Settlement Agreement previously filed here at Dkt. 180-3).

### B. The Notice Program Effectively Apprised Class Members of Their Rights

Notice of the settlement must be the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that: (1) notice must be disseminated in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"; (2) the content of the notice must be of "such nature as reasonably to convey the required information"; and (3) the notice must

"afford a reasonable time for those interested to make their appearance" and exercise their options to file a claim, object, or opt out of the class. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (internal citations omitted); *see also Nat'l Football League Players Concussion Injury Litig.,* 775 F.3d 570, 583 (3d Cir. 2014) (principal purpose of notice provision of Rule 23(e)(1) is to "'ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement'") (quoting 2 MCLAUGHLIN ON CLASS ACTIONS § 6:17 (10th ed. 2013)). The Notice Program here achieved all of these objectives.

### 1.    Notice Reached Significant Numbers of Class Members

Rule 23, as amended in 2018, "does not specify any particular means" as the "preferred" means of notice, instead directing courts and counsel to "focus on the means or combination of means most likely to be effective in the case before the court." Advisory Committee Note, 2018 amendment to Fed. R. Civ. P. 23(c)(2)(B).

Where, as here, a settlement relates to the use of payment cards at a particular business, in-store signage and website postings alone can be a reasonable form of substitute notice. For example, the plaintiffs in *Hanlon v. Aramark Sports, LLC,* No. 09-cv-00465, 2010 WL 374765 (W.D. Pa. Feb. 3, 2010), alleged that a concessionaire at a sports stadium did not properly truncate payment card information on its receipts, in violation of federal law. The names and addresses of potential class members, as here, were only available in the records of the many individual banks that issued the payment cards. *Hanlon*, 2010 WL 374765 at *6. The court held that the best notice practicable under the circumstances consisted of a single notice in one local newspaper and a flyer in a store at the stadium announcing the settlement and directing class members to the settlement website. *Id.* Similarly, in *Palamara v. Kings Family Rests*., 2008 WL 1818453, at *1 (W.D. Pa.

Apr. 22, 2008), the court approved a notice plan that encompassed publication in local newspapers and signs in the defendant's restaurants announcing the settlement and directing customers to the restaurant's website or to a manager to obtain more information, including claim forms and a detailed notice about the settlement. *Palamara*, 2008 WL 1818453, at *1; *see also In re Sonic Corp. Customer Data Breach Litig.*, No. 17-md-02807 (Dkt. 145), slip op. at 5-6 (N.D. Ohio Dec. 20, 2018) (approving notice plan that included only signs in affected stores, a banner announcement on the defendant's website, and detailed notice on a settlement website) (copy previously filed here at Dkt. 180-4).

Media coverage can also be a part of an effective notice plan where, as here, the press has been covering the subject matter of the lawsuit. *See Wawa*, 2021 WL 3276148, at *12 (citing *Prudential*, 148 F.3d at 327; *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1115, 1128 (9th Cir. 2020)). As discussed above, media coverage of the Settlement has been extensive. Wawa also issued two press releases, posted notice at cash registers and fuel pumps at all of its stores, and created a prominent link to the Settlement Website on its homepage. More recently, the Parties' November 12 amendment caused notice to be directly emailed to 575,162 Wawa customers.

> **2.    The Detailed Notice Form, In-Store Signs, Press Release, and Settlement Website Clearly and Concisely Informed Class Members About their Rights and Options**

As required by Rule 23(2)(B), the Long Form Notice attached as Ex. A to the Preliminary Approval Order (Dkt. 234-1) "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." It also described the terms of the Settlement, including requests

for service awards for the Class Representatives and for an award of attorneys' fees and reimbursement of expenses; informs Class Members about their right to object to or opt out of the Settlement (and how to do so); provides the date, time, and place of the Final Approval Hearing and the procedures for appearing at the hearing; and provides contact information for Co-Lead Counsel and the Settlement Administrator. The signs posted at payment terminals in stores and at fuel pumps—which were left up longer than the required four consecutive week period—clearly and concisely informed Class Members about the Settlement and directed them to the Settlement Website for more information. The signs also contained a QR code that Class Members could scan with their smartphones to provide easy access to the Settlement Website.

In sum, the Notice Program was more than adequate: it was reasonable, was designed to reach Class Members broadly and efficiently, provided the information that Class Members needed to understand the Settlement and submit claims, and was the best notice practicable under the circumstances. *See Warfarin* 391 F.3d at 536-37 (where parties did not have access to names and addresses of the "multitude of people nationwide who purchased" the product at issue, a notice plan that did not include individual direct mail notice was a "reasonable effort" to provide the "best notice practicable under the circumstances").

### C.    The Various Theodore Frank Objections are Without Merit and Present No Basis to Reduce the Proposed Attorneys' Fee Award

Mr. Frank has withdrawn his objections to all settlement issues other than the proposed attorneys' fee award. Dkt. 269 pg. 2.

Aside from being the only one of 22 million class members to file an objection, Mr. Frank's fee objections are unpersuasive on the merits. Preliminarily, Mr. Frank's Monday morning quarterbacking completely ignores the risks and reality of this litigation – including the possibility that class members might have ended up with nothing had the case not settled. *See In re Anthem,*

26

*Inc. Data Breach Litig.,* 327 F.R.D. 299, 321-22 (N.D. Cal. 2018) ("In objecting to the relief provided under the Settlement, none of these Settlement Class Members adequately take into account the risks and delays involved in proceeding to summary judgment or trial.").

In any event, the majority of the objections lodged by Mr. Frank are premised on the faulty assumptions that: only $1 million would be paid to Tier One claimants (it will be nearly $3 million); claimants in Tier One will receive larger gift cards than Tier Two claimants (they won't); the gift cards will expire in one year (they no longer will have an expiration date); and there was no direct notice to Class Members (Wawa does not have a record of all Class Members, but has now emailed 575,162 people[9]). The remaining arguments that have not become moot essentially fall into three categories: (a) the attorneys' fee is disproportionate to the benefits actually distributed to the Class, (b) the non-monetary relief is illusory and should be ignored when assessing the fee, (c) the structure of the Settlement is flawed in that it is claims-made and contains a clear sailing provision, and (d) the rates and hours billed by Class Counsel are excessive. None of these arguments have merit.

### 1. The Requested Fee and Expense Amounts are Entirely Appropriate and in Proportion to the Settlement

As discussed above, the Settlement confers significant benefits on Class Members. It is estimated that approximately $3 million will be distributed to the Class in cash and valuable Wawa gift cards. The injunctive relief also confers millions of dollars of value to Class Members in the form of information security enhancements for which there is no claim filing requirement.

In support of his objection, Mr. Frank relies heavily on out-of-circuit opinions in *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) and *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th

---

[9] This of course is in addition to the in-store, press release and earned media program previously approved by the Court.

Cir. 2014), which stated that courts should review attorneys' fees in light of the amount actually distributed to the class and that fees that exceed the class recovery are disfavored. However, Mr. Frank ignores a subsequent Judge Posner opinion, *In re Sears, Roebuck and Co. Front-Loading Washer Prods. Liab. Litig.,* 867 F.3d 791 (7th Cir. 2017), that explains the limits of the principles set forth in *Pearson* and *Redman* and approved the requested attorneys' fees. Plaintiffs' counsel in *Sears* incurred a $2.7 million lodestar in a case where the district court found that the class stood to recover "no more than" $900,000 from the settlement. *Id.* at 792. While the issue on appeal was whether the circumstances of the case warranted an enhanced multiplier (the court held it did not), the Seventh Circuit specifically addressed the issue of whether a fee award could exceed the class recovery. In concluding that it could, and awarding class counsel their requested lodestar, Judge Posner stated:

> In two class action cases, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780-81 (7th Cir. 2014) and *Redman v. RadioShack Corp.*, 768 F.3d 622, 630-31 (7th Cir. 2014), we've said that a district court should compare attorney fees to what is actually recovered by the class and presume that fees that exceed the recovery to the class are unreasonable. *See Pearson*, 772 F.3d at 782. The presumption is not irrebuttable, however, and in this case the extensive time and effort that class counsel had devoted to a difficult case against a powerful corporation entitled them to a fee in excess of the benefits to the class… We therefore reverse the judgment of the district court [which awarded a 1.75 lodestar multiplier on the fee request] and remand with directions to award $2.7 million … in fees to the class counsel.

*Sears*, 867 F.3d at 793. So too here. Given the extensive time and effort devoted by Class Counsel on this risky case – and in light of the results obtained – the requested fee is reasonable and should be approved. *Accord Perdue v. Hy-Vee, Inc.,* No. 19-1330, 2021 U.S. Dist. LEXIS 135441, at *9 (C.D. Ill. July 21, 2021) ("[I]t appears there will not be an unreasonable difference between the amount that the class will receive and Counsel's fees. . . . [and] this Court agrees that Class Counsel's fees are appropriate, despite exceeding the cash payout that class members will receive,

28

particularly considering that Counsel already reduced their fees to approximately half of the hourly fees that they billed.") (citing *Sears,* 867 F.3d 791).

This rule is not limited to the Seventh Circuit. Judge Brody's final approval opinion in *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364 (E.D. Pa. 2019) – a case that Plaintiffs cited in the Fee Petition but the Frank objection ignored – is also instructive on this point. While that case involved a $15.5 million common fund created for the benefit of 3.5 million consumers, mechanically it was a "claims-made settlement," *id.* at 373, whereby any unclaimed funds would be retained by the defendant. *Id.* at 386. Ultimately, and "[d]espite efforts to notify potential Class Members, only 20,262 individuals filed claims for a total of $211,255.00 in cash payments plus an additional $286,986.50 in in-kind relief.*" Id.* at 385. In granting final approval to the settlement, the Court observed that the amount of this consideration "should not detract from the many factors that weigh in favor of approving the Settlement" and noted the reality that "if no Settlement Agreement had been reached, even fewer potential Class Members would have received any benefit from this litigation due to several significant hurdles in this case." *Id.* In approving the $1.1 million amount sought by class counsel for fees and expenses, which heavily exceeded the amount distributed to the class, Judge Brody relied on Supreme Court and Third Circuit precedent to determine fees "based on the entire" $15.5 million made available to the class – as opposed to the amounts ultimately claimed by class members – because, among other reasons, class counsel had "adequately prioritized the direct benefit to the Class." *Id.* at 387; *see also*, *Gray v. BMW of N. Am., LLC,* No. 13-cv-3417 (WJM), 2017 U.S. Dist. LEXIS 135593, at *12 (D.N.J. Aug. 24, 2017) ("As Plaintiffs argue, however, the relevant measure is the value of benefits made available to the class as a whole, not the portion of benefits ultimately claimed by class members.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163,

178 n.12 (3d Cir. 2013) ("[Objector represented by Mr. Frank] also asks us to hold that fee awards exceeding the amount directly distributed to class members are presumptively unreasonable…we do not adopt such a rule."). These cases directly undermine Mr. Frank's arguments in his original objection (Dkt. 263) and supplemental response (Dkt. 270-1) that the Court should base the fee award on only the amount actually distributed to the Class and that the fee should not exceed the amount distributed to the Class.

Although several hundred thousand more customers will receive payments here than in *Comcast*, and those payments will be more than triple the total received in *Comcast*, the *Comcast* case is still instructive. As in *Comcast*, Class Counsel here prioritized getting as much of the Settlement's monetary and non-monetary benefits to Class Members as possible. And the Court in *Comcast* approved the attorneys' fee request despite the fact that the fees were more than double the amount received in payments to the class. It follows *a fortiori* that the requested fee should be approved here where the payments to the Class and the attorneys' fees will each be approximately $3 million. This does not include the valuable injunctive relief, which will be addressed in more detail below.

Mr. Frank's heavy reliance on the Third Circuit's opinions in *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) and *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) is misplaced. *In re Baby Prods.* was a case where the defendants paid $35.5 million into a settlement fund, of which $14 million was to be allocated to attorneys' fees and expenses, and only $3 million was to be distributed to class members. *Id.* at 169. The parties proposed distributing the remaining $18.5 million to *cy pres* recipients. *Id.* The Third Circuit reversed the district court's approval of the settlement and remanded with instructions to consider whether the settlement "provides sufficient direct benefit to the class before giving its approval."

*Id.* at 170. The Third Circuit confirmed that courts should consider the "level of direct benefit provided to the class in calculating attorney's fees," a factor the district court could not determine at the time it approved the settlement because the claims filing period was still open at the time of the final approval hearing. *Id.* at 170-71. The Third Circuit did not establish a *per se* rule that district courts must base fee awards on the amount actually distributed to class. *Id.* at 178-79. The Third Circuit merely held that a court can consider the amount actually distributed to the class as a relevant circumstance in awarding attorneys' fees. The Court also noted that class counsel need not necessarily be penalized for low claims rates. *Id.* at 178 ("There are a variety of reasons that settlement funds may remain even after an exhaustive claims process – including if the class members' individual damages are simply too small to motivate them to submit claims. Class counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided.").

The Third Circuit's 1995 opinion in *In re GMC Pick-Up Truck* is also distinguishable because it involved a district court that granted final approval of a settlement without making any "Rule 23 findings" in a case where "the class had not yet been defined" and there were "significant questions" as to whether the class could have satisfied the Rule 23 requirements in light of potential intra-class conflicts. *GMC*, 55 F.3d at 777-78.

Unlike in *In re Baby Prods.*, the claims filing period here has concluded so the Court knows the amount of compensation going directly to class members in each of the three tiers. And in contrast to *In re GMC Pick-Up Truck,* the Court here has already thoroughly addressed the relevant

Fed. R. Civ. P. 23(a) and (b) elements in its Preliminary Approval Order,[10] and a further analysis of those elements follows below.

In sum, neither of these cases supports penalizing Class Counsel for the results they achieved. Notably, Third Circuit and Pennsylvania cases that arose after *In re Baby Prods.* allowed attorneys' fees to be calculated based on the amount made available to the class (versus actually distributed to the class) in claims-made or reversionary settlements. *See* Fee Petition at 19-21 (collecting cases). Mr. Frank cites no cases overruling those cases or the similar cases from other circuits cited in the Fee Petition.[11]

Mr. Frank also argues that Plaintiffs' cited cases applying *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) "misread *Boeing*" because *Boeing* should only apply to "traditional common

---

[10] *Wawa,* 2021 WL 3276148, at *5 ("The Court concludes that the Consumer Plaintiffs have established that their proposed class warrants preliminary class certification for the purposes of settlement having met the requirements of Rules 23(a) and 23(b)(3).").

[11] The cases Mr. Frank does cite are distinguishable or off the mark. (Frank Brf. at 9, 23.) Specifically, *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) does not establish a *per se* rule that attorneys' fees must be based on funds actually distributed to class. It merely held that a "disparity in distribution of funds between class members and their class counsel" requires "attention and scrutiny." *Id.* at 1026. The court even acknowledged that "[d]isproportionate fee awards . . . may be [an] element[] of a good deal." *Id.* at 1027. Similarly, *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1094 (10th Cir. 2021) does not establish a *per se* rule that fees must be based on funds actually distributed to class. It too merely held that district courts may consider the amount actually distributed to the class when analyzing a fee request. *Id.* at 1094. The *Pearson* case, discussed above, has been expressly rejected in Pennsylvania. *See Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 717 (W.D. Pa. 2015) ("[The objector] relies exclusively on non-binding authority from other circuits to support the proposition that . . . the value of unfiled class claims must be excluded from the evaluation of an attorneys' fee award for reasonableness. (Hung Objection, at p. 23, citing *Pearson*, 772 F.3d at 781 ('the ratio that is relevant ... is the ratio of (1) the fee to (2) the fee plus what the class members received') . . . )). This argument is not persuasive."). Two of Frank's other cases do not even address the issue of whether attorneys' fees can be based on funds made available to class versus actually distributed to the class. *Fitzgerald v. Gann Law Books*, 2014 WL 8773315, 2014 U.S. Dist. LEXIS 174567, at *41 (D.N.J. Dec. 17, 2014); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013).

fund" settlements. (Frank Brf. at 9 n.4). Mr. Frank's argument is meritless. Many courts in the Third Circuit, Pennsylvania, and beyond apply *Boeing* outside the context of traditional common fund cases and have applied *Boeing* in the context of reversionary settlements. *See* Fee Petition at 19-22 (collecting cases).

Moreover, Mr. Frank's objection is further diluted by the Parties' recently filed Third Amendment to the Settlement Agreement, which makes clear the Settlement's intention as to the use of any amount not awarded by the Court. *See* Dkt. 269-1. If the Court does not award the full $3,200,000 in attorneys' fees, costs, and service awards, any difference between $3,200,000 and the amount awarded will be distributed equally among and added to the total value of each of the Tier One and Tier Two Wawa Gift Cards. *See id.*, ¶ 1.

### 2.      Mr. Frank's Reliance on Rule 23(e)(2)(C)(ii) is Misplaced

Mr. Frank's objection to the fee request also relies heavily on Fed. R. Civ. P. 23(e)(2)(C)(ii), which states that courts should consider the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." (Frank Brf. at 4, 6, 9-10.) However, that statutory provision pertains to whether to grant final approval of the settlement, not whether to approve the fee award. Mr. Frank cites no cases applying that provision to the approval of a fee award.

### 3.      This is Not a Coupon Settlement

Mr. Frank's original objection asserted that the Wawa gift cards are "coupons" under the Class Action Fairness Act, which would require the Court to analyze the redemption rate of the gift cards when analyzing attorneys' fees. (Frank Brf. at 5-6, n.1.) Mr. Frank withdrew this argument when withdrawing his objection to final approval of the Settlement (Dkt. 269). For the avoidance of doubt, Class Counsel notes that this Court already held that the Wawa gift cards are

not coupons. *See Wawa*, 2021 WL 3276148, at *11 ("The Court disagrees that this is somehow a 'coupon settlement.' . . . '[D]istrict courts that have considered the issue have not classified gift cards as coupon settlements falling under CAFA.'"). Moreover, as discussed above, the expiration date of the gift cards has been removed, which further distances the gift cards from classification as coupons.

### 4. The Meaningful Injunctive Relief Obtained in this Case Supports the Requested Fee

Mr. Frank also questions the value of the settlement's injunctive relief. As set forth in the Parks Decl., the business changes undertaken by Wawa are designed to reduce the possibility of a similar data breach occurring again. It is beyond dispute that such measures inure to the benefit of consumer class members here. *See Fulton-Green*, 2019 WL 4677954, at *8 (recognizing that the injunctive relief, which "include[d] new policies, procedures, and training to prevent similar breaches in the future," contributed to the adequacy of the class relief, and considering the injunctive relief as contributing to the total potential value of the settlement); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB-16-3025, 2019 WL 3183651, at *7 (D. Md. July 15, 2019) (noting "the substantial but unquantifiable value" of the injunctive relief portion of a settlement, "which is designed to protect [class members'] personal information going forward"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (describing changes to a defendant's data security systems and policies as "nonmonetary relief [that] benefits millions of Settlement Class Members, including those who did not submit a claim form"); *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *237 (N.D. Ga. Mar. 17, 2020) (noting that cybersecurity enhancements and related efforts to "mitigate the risk of another data breach involving class members' personal data" and other "injunctive relief provides a substantial benefit to class members," and that "[i]n assessing a fee request, the Court may also

consider all of these [nonmonetary] benefits"); *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113, at *36 (N.D. Ga. Aug. 23, 2016) ("The Court finds that the injunctive components of the Settlement are of valuable benefit to the Class and especially important in the context of this case because Home Depot is bound for a period of two years following execution of the Settlement Agreement to implement and maintain enhanced security measures designed to detect and prevent this type of harm from occurring again.").

Mr. Frank's suggestion that Wawa "would have done this anyway" overlooks the fact that the injunctive measures go beyond any statutory or regulatory legal requirements that apply to Wawa, and most of these measures go beyond the requirements of the contractually-based PCI-DSS rules imposd on Wawa by the payment card industry and Wawa's contract with its payment processor. *See* Parks Decl. ¶ 4. Also, the Settlement Agreement and resulting order obligate Wawa to maintain these safeguards for at least two years, and to do so under the supervision of Class Counsel. *See* SA § 40. *See also Anthem,* 327 F.R.D. at 326 ("Even if Anthem would have independently improved its cybersecurity measures, the Settlement represents a binding contractual obligation for Anthem to implement specific cybersecurity measures recommended by Plaintiffs' expert."); *Hy-Vee*, 2021 U.S. Dist. LEXIS 135441, at *7 ("Class Counsel represented that they would follow up on the system upgrades to ensure that Defendant completed the promised upgrades and that this was an important benefit to class members."); *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *13 (N.D. Cal. Mar. 24, 2017) (rejecting argument that injunctive relief was "illusory" because PayPal implemented changes before settlement received final approval; settlement "will make the injunctive relief both binding and enforceable, ensuring that Defendants maintain such practices until two years following the date of the Preliminary Approval Order").

Mr. Frank also argues that injunctive relief that benefits class members, non-class members, and opt-outs "equally" cannot serve as consideration for the release of a class's damages claims. Frank Brf. at 14, citing *Koby v. ARS Nat'l Servs, Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017). This is not the law. To the contrary, courts often find that providing benefits to both class members and non-class members weighs in favor of approving a settlement. *See, e.g.*, *Johnson v. Cmty. Bank, N.A.*, No. 3:12-CV-01405, 2013 WL 6185607, at *7 (M.D. Pa. Nov. 25, 2013) (fact that settlement "confers certain nonmonetary benefits on both class members and non-class members as well" weighs in favor of approving settlement). Nothing in *Koby* supports Mr. Frank's position. There*,* the Ninth Circuit reversed the approval of a settlement that gave monetary compensation to the named plaintiffs but not to any absent class members, extinguished absent class members' right to file damages claims in any other class action, and provided injunctive "relief" that was worthless to class members but might only benefit those people who were *excluded* from the class definition. *Id.* Unsurprisingly, the court held that "[b]ecause the settlement gave the . . . class members nothing of value, they could not fairly or reasonably be required to give up anything in return." *Id.*[12] That

---

[12] None of the cases cited by Mr. Frank support his positions. For example, *Staton v. Boeing,* 327 F.3d 938, 974 (9th Cir. 2003) expressly held that courts should consider the value of injunctive relief as a "relevant circumstance" in setting a fee award. Also, *In re HP Inkjet Printer Litig.*, 716 F. 3d 1173, 1182 (9th Cir. 2013) noted the appropriateness of the lodestar method to calculate attorneys' fees in certain cases and acknowledged that courts can add a multiplier. In *Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 325 (D.N.J. 1997), the court awarded fees based on counsel's lodestar precisely because of "the difficulty in making some reasonable assessment of the settlement's value." In *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011), a statutory fee shifting case, the Ninth Circuit explicitly *declined* to find the disproportion between the fee award and the benefit to the class to be *per se* unreasonable and remanded for the district court to conduct a more detailed analysis of the award. Most of the other cases cited in Mr. Frank's objection involved settlements in which the proposed injunctive relief provided very little or no benefit to class members. *See, e.g., In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) (no benefit); *Grok Lines Inc. v. Paschall Truck Lines, Inc.*, No. 14-cv-08033, 2015 WL 5544504, at *1-3 (N.D. Ill. Sept. 18, 2015) (same); *In re: Subway Footlong Sandwich Mktg. and Sales Pracs. Litig., Appeal of: Theodore Frank, Objector,* 869 F.3d 551, 557-

is not the case here, where many Wawa customers are loyal repeat-customers who will return to Wawa and benefit from the ongoing injunctive measures.

In light of the significant benefits this injunctive relief creates for the Class, Mr. Frank's continued insistence that the "concrete settlement value" should ignore the injunctive relief (Dkt. 270-1 at 2) – and his related contention that Class Counsel are seeking "50% of the gross recovery" (*id*. at 2) – is unavailing.

### 5.    Mr. Frank's Concerns About Clear Sailing Provisions are Unfounded

Mr. Frank next criticizes Class Counsel for "negotiat[ing] the red-carpet treatment of a clear-sailing clause," Frank Brf. at 14, which he contends "'deprives the court of the advantages of the adversary process.'" *Id.* at 15 (citation omitted). Wawa's agreement to not file an opposition to Plaintiffs' fee request here does no such thing; it is already the subject of judicial scrutiny because, as Mr. Frank correctly notes, the Court is a fiduciary of the class and must ensure that the terms of the fee award are fair and reasonable to Class Members. *See id.* at 2-4.

Clear sailing provisions are common in class actions. Courts in this circuit have rejected similar attacks on clear sailing provisions where the settlement is otherwise non-collusive and reasonable. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 447 (3d Cir. 2016) (finding district court did not abuse its discretion in upholding clear sailing provision where the "issue of fees was not discussed until after the principal terms of the settlement were agreed to, [and] the fee award will not diminish [the] class recovery"); *Schwartz v. Avis Rent a Car Sys., LLC*, No. 11-cv-04052, 2016 U.S. Dist. LEXIS 80387, at *41 (D.N.J. June 21, 2016) (finding class member's objection to clear sailing clause to be "undermined by recent Third Circuit precedent

---

58 (7th Cir. 2017) ("worthless" injunctive relief); *Briseño v. Henderson*, 998 F.3d 1014, 1028 (9th Cir. 2021) ("virtually worthless" injunctive relief).

holding that such clauses are permissible so long as the district court 'review[s] the process and substance of the settlement and satisf[ies] itself that the agreement does not indicate collusion or otherwise pose a problem.") (quoting *In re NFL Players*, *supra*). Indeed, Mr. Frank concedes that the "Third Circuit has eschewed a *per se* rule prohibiting clear-sailing clauses." (Frank Brf. at 15.) Also of note, the vast majority of Mr. Frank's clear sailing cases are outside the Third Circuit. *Id.* at 14-15.

Given that the Settlement was negotiated with an independent mediator, attorneys' fees were only discussed after all other terms were agreed to, and there was no collusion, the presence of a clear sailing clause does not provide a basis for withholding approval of the fee request. *See Comcast,* 333 F.R.D. at 385 n.12 (approving fee paid pursuant to "clear sailing" agreement where "the Settlement Agreement was negotiated at arm's length and there is no indication of collusion or any other problem").

### 6.    The Hourly Rates and Time Billed are Reasonable

As detailed in Plaintiffs' Fee Petition, nearly 6,000 contingency hours had been billed by Plaintiffs' counsel for their work on this case from inception through September 30, 2021. *See* Fee Petition at 7. These amounts are reasonable considering the amount of work undertaken to achieve the settlement benefits here (*see id.* at 8-9) and when viewed in comparison to the amount of time spent in comparable data breach settlements. *Id.* at 10-11 (noting that 10,186 hours, 20,482 hours, and 7,400 hours were billed by class counsel in three other payment card breach cases in which an early settlement was reached: *Home Depot*, *Target*, and *TJX*, respectively).

Mr. Frank's request to have the Court review the thousands of pages of underlying time records is unnecessary. Class Counsel already submitted detailed descriptions of their time. They submitted charts identifying each individual attorney or paralegal who billed time to the case, the

individul's hourly rate, and their total hours incurred.[13] Class Counsel also submitted lengthy

bulleted lists of the work performed throughout the case.[14] Cumbersome line-by-line billing

records would not provide meaningful additional insight and would needlessly complicate the

record. Notably, class counsel in *Fulton-Green* did not submit line-by-line billing records where,

as here, the fee was calculated on a lodestar basis with a percentage-of-recovery cross check.[15]

Other courts in this District have recognized that detailed billing records are not required where

sufficient summaries have been provided. *See, e.g., Briggs v. Hartford Fin. Servs. Grp., Inc.*, No.

07-cv-05190, 2009 WL 2370061, at *16 (E.D. Pa. July 31, 2009) ("It is appropriate to consider

summaries of hours worked as opposed to detailed billing records."); *Teh Shou Kao & T S Kao v.*

*Cardconnect Corp.*, No. 16-cv-05707, 2021 U.S. Dist. LEXIS 33147, at *30 (E.D. Pa. Feb. 23,

2021) ("'The lodestar cross-check calculation need entail neither mathematical precision nor bean-

counting. The district courts may rely on summaries submitted by the attorneys and need not

review actual billing records.'") (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302 (3d

Cir. 2005)).

Many of Mr. Frank's cited cases do not expressly require line-by-line billing records. They

require reasonable detail of the hours and work performed, but not necessarily in the form of line-

---

[13] *See* Joint Decl. at ¶¶ 90, 93, 96, 99 (Dkt. 259) and Exhibits 1-24 thereto (Dkt. 259).

[14] *See* Fee Petition at 8-9; Joint Decl. at ¶¶ 36, 81 (Dkt. 259).

[15] *See Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, Dkt. Nos. 32-4, 32-5, 32-6 (Declarations of class counsel in support of attorney's fee request).

by-line billing records.[16] (Frank Brf. at 20-21.) Further, many of Mr. Frank's cases are statutory

fee-shifting cases, which is not the case here.[17] (Frank Brf. at 20-22.)

Mr. Frank's contention that Class Counsel's billable rates are "astronomical" and "too

high" likewise misses the mark. (Frank Brf. at 24.) Class Counsel's hourly rates have been

approved in many other cases in Pennsylvania and beyond,[18] and are consistent with hourly rates

this Court approved in several of its prior cases.[19] Mr. Frank's criticism of Class Counsel's

"blended" hourly rate of $652 is likewise misguided. Many courts within the Third Circuit,

including this Court, have accepted blended hourly rates in that range.[20] Indeed, the blended hourly

---

[16] *See Keil v. Lopez*, 862 F.3d 685, 705 (8th Cir. 2017) (requiring "information of what that work was [and] how much time it consumed"); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (requiring "information of what that work was [and] how much time it consumed"); *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) (requiring "details of class counsel's hours); *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 446 (3d Cir. 2016) (class members should be provided with the "particulars of counsel's fee request"); *Newberg on Class Actions* § 8:24 (5th ed. 2014) ("the full fee petition . . . ought to provide . . . detail about counsel's time and efforts").

[17] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (statutory fee-shifting case); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 175 (3d Cir. 2001) (same); *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1992) (same); *In re Meade Land & Dev. Co., Inc.*, 527 F.2d 280, 283 (3d Cir. 1975) (same); *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986) (same).

[18] *See* Fee Petition at 13 (citing Jt. Decl. ¶¶ 92, 95, 98, 101) (collecting cases).

[19] *See* Fee Petition at 12 (collecting cases).

[20] *See Univ. of Penn.*, 2021 WL 5907947, at *7 (approving class action fee award with blended hourly rate of $755) (Pratter, J.); *Pfeifer v. Wawa, Inc.*, No. 16-cv-00497, 2018 WL 4203880, at *14 (E.D. Pa. Aug. 31, 2018) (approving class action fee award with "blended hourly rate of approximately $685"); *Dartell v. Tibet Pharms., Inc.*, No. 14-cv-03620, 2017 WL 2815073, at *11 (D.N.J. June 29, 2017) (approving class action fee award with "blended hourly rate of $670"); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-cv-02164, 2017 WL 2734714, at *13 (D.N.J. June 26, 2017) (approving class action fee award with "blended hourly rate of $644"); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-cv-08020, 2016 WL 6661336, at *18 (D.N.J. Nov. 10, 2016) (approving class action fee award with "blended hourly rate of $610").

rate in *Fulton-Green* was $844, much higher than the blended rate here. *See Fulton-Green*, 2019 WL 4677954, at \*11 ($472,707 lodestar based on 560 hours). Mr. Frank cites *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2019 WL 1258832, at \*2 (E.D. Pa. Mar. 19, 2019) for the proposition that a reasonable blended rate would be $350 per hour. (Frank Brf. at 24.) But *Domestic Drywall* is distinguishable because the court reduced the blended hourly rate on grounds that "counsel have not supported their request for hourly rates with any information about the attorney's seniority, or experience." *Drywall*, 2019 WL 1258832, at \*2. Here, Class Counsel provided that level of detail.

Class Counsel's hours and hourly rates are particularly reasonable given that Class Counsel has already self-reduced their reported time by 30% and 25%, and are asking for a fee award that will represent a considerable negative multiplier. *See Taha v. Bucks Cty. Pa.*, No. 12-6867, 2020 U.S. Dist. LEXIS 222655, at \*26 (E.D. Pa. Nov. 30, 2020) (negative multiplier "'provides additional support for the requested attorneys' fees'") (quoting *Blofstein v. Michael's Family Rest., Inc.*, 2019 U.S. Dist. LEXIS 121527, 2019 WL 3288048, at \*11 (E.D. Pa. July 19, 2019). If additional hours are trimmed or the hourly rates are reduced, the multiplier would be even lower.

In sum, Mr. Frank's objections to the fee request should be denied in full.

**D.    The Court Should Confirm Certification of the Settlement Class**

**1.    The Class Meets the Requirements of Rule 23(a)**

The Court is required at the final approval stage to evaluate whether the underlying settlement class meets the requirements of class certification under Fed. R. Civ. P. 23(a) and (b)(3). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation, Fourth* § 21.632 (2004). The prerequisites for class certification under Rule 23(a) and (b)(3) are numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. The Court already held that a sufficient showing of these class certification requirements had been

made for purposes of preliminary settlement approval. *See Wawa*, 2021 WL 3276148, at *5 ("The Court concludes that the Consumer Plaintiffs have established that their proposed class warrants preliminary class certification for the purposes of settlement having met the requirements of Rules 23(a) and 23(b)(3)."). Nothing has changed since then that would disturb the Court's prior conclusion. Plaintiffs nevertheless analyze the class certification factors below, as they must.

### a.    The Settlement Class is Numerous

The Settlement Class consists of approximately 22 million Wawa customers. This readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1); *Eggs*, 284 F.R.D. at 260 (generally numerosity is met if the number of class members exceeds 40).

### b.    There are Questions of Law or Fact Common to the Class

The proposed class also satisfies the commonality requirement, which requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims." *Warfarin*, 391 F.3d at 530. The commonality requirement requires only that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *Id*. at 527-28; *Stewart v. Abraham*, 275 F.3d. 220, 227 (3d Cir. 2001). Here, the central issues posed by this litigation are: (1) whether unauthorized individuals accessed payment card information from Wawa's server; (2) whether Wawa had a duty to protect that payment card information from unauthorized access; and (3) whether Plaintiffs were injured by Wawa's failure to safeguard their payment card information. These are common questions subject to common proof that can be answered on a class-wide basis. Rule 23(a)(2)'s

requirements for the existence of common questions of fact or law are easily met. *See Wawa*, 2021 WL 3276148, at *3; *Fulton-Green*, 2019 WL 4677954, at *4.

### c.      Plaintiffs' Claims are Typical of the Class

The proposed class likewise satisfies Rule 23(a)'s typicality requirement. As the Third Circuit has explained:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

*Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994); *see also Wawa*, 2021 WL 3276148, at *3; *In re Warfarin*, 391 F.3d at 532 (finding typicality prong met where the "claims of representative plaintiffs arise from the same alleged wrongful conduct"); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and if based on the same legal theory.").

Here, Plaintiffs' claims are not only similar, but virtually identical to those of the members of the Settlement Class. Indeed, the claims of Plaintiffs and each Class Member are predicated on the same alleged conduct by Wawa: failure to safeguard their payment card information, which was stolen by cyber criminals. Wawa's liability for the data breach does not depend on the individualized circumstances of Class Members. Plaintiffs and all Class Members seek to hold Wawa "liable for damages related to the breach and share common questions of law and fact with all other class members. [T]heir claims are typical of the class delineated for the proposed settlement." *Wawa*, 2021 WL 3276148, at *3 (quoting *Fulton-Green*, 2019 WL 316722, at *4).

       **d.**     **Plaintiffs and Class Counsel Adequately Represented the Class**

Plaintiffs and the proposed class also satisfy Rule 23(a)(4), which requires that the "representative parties will fairly and adequately protect the interests of the class." The Third Circuit has consistently ruled that:

> Adequate representation depends on two factors: (a) the Plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiffs must not have interests antagonistic to those of the class.

*Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984) (citation omitted); *see also Wawa*, 2021 WL 3276148, at *3-4; *Prudential*, 148 F.3d at 312; *Eggs*, 284 F.R.D. at 261 (explaining that adequacy inquiry examines whether the "named plaintiff has the ability and the incentive to represent the claims of the class vigorously, . . . has obtained adequate counsel, and . . . there is no conflict between the individual's claims and those asserted on behalf of the class").

Plaintiffs have retained experienced counsel to represent them and the Class. Class Counsel have extensive experience litigating and resolving data breach and data disclosure class actions and have developed a strong understanding of the strengths and weaknesses of such cases and whether such settlements are fair, reasonable, and adequate under the circumstances. *See* Dkt. 259 at ¶¶ 3-30 (Joint Decl. of Class Counsel).

There is nothing to suggest that Plaintiffs' interests are antagonistic to those of other Class Members. *See Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("[G]auging the adequacy of representation requires an assessment whether the class representative have interests antagonistic to those of the class they seek to represent.").

Adequacy of representation is discussed in further detail *supra*.

       **2.**     **The Class Meets the Requirements of Rule 23(b)(3)**

Class certification is appropriate under Rule 23(b)(3) when: (i) common questions of law or fact "predominate" over any individual questions, and (ii) a class action is "superior" to other

available means of adjudication. Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 591-94. Both of these requirements are satisfied here, as the Court previously held for purposes of preliminary approval. *Wawa*, 2021 WL 3276148, at *5.

### a.    Common Questions of Law or Fact Predominate

Predominance is satisfied when "'common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication.'" *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1778 (3d ed. 2011)). Questions common to all Class Members predominate here. Several case-dispositive questions could be resolved identically for all members of the Class, such as whether Wawa had a duty to exercise reasonable care in safeguarding Class Members' payment card information, and whether Wawa's failure to protect such payment card information constitutes a breach of that duty. This case involves a single data security incident that impacted all Class Members whose data was stolen, giving rise to claims under state law that all share the same common nucleus of facts and law pertaining to the duty of care and whether Defendant breached it. Those questions can be resolved using the same evidence for all Class Members, and thus are the precise type of predominant questions that make a class-wide adjudication worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted). *See also Fulton-Green*, 2019 WL 4677954, at *6 ("Because Accolade's role in the data breach is at the heart of all of the plaintiffs' claims, the plaintiffs have met their burden to show predominance for

the purposes of conditional class certification."); *Wawa*, 2021 WL 3276148, at *4 (finding predominance met for purposes of preliminary approval).

**b.**   **A Class Action is the Superior Method of Adjudicating This Case**

Under Rule 23(b)(3), class certification is appropriate if a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "'The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Eggs*, 284 F.R.D. at 264 (quoting *In re Prudential Ins.*, 148 F.3d at 316). Considerations of judicial economy and prompt resolution of claims underscore the superiority of a class action here. Individual lawsuits by Class Members would be impracticable considering the substantial costs of litigation balanced against the quantum of—and difficulty in proving— damages. This case presents a paradigmatic example of a dispute resolution that effectuates the goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. Wright, Miller & Kane, *Fed. Practice & Procedure: Civil 2d* § 1754. *See also Wawa*, 2021 WL 3276148, at *4-5.

As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that might have otherwise arisen in this case are precluded by the Settlement.

As a final note, certification of settlement classes is routine in data breach cases and has been granted in dozens of prior settlements.

46

## V.    THE COURT SHOULD APPOINT SHERRIE SAVETT, BENJAMIN JOHNS, ROBERTA LIEBENBERG AND LINDA NUSSBAUM AS CLASS COUNSEL

The Court should also reaffirm the appointment, set forth in its Preliminary Approval Order (Dkt. 234), of Sherrie Savett of Berger Montague PC, Benjamin F. Johns of Chimicles Schwartz Kriner & Donaldson-Smith LLP, Roberta Liebenberg of Fine, Kaplan and Black, R.P.C., and Linda Nussbaum of Nussbaum Law Group, P.C. as Class Counsel.

Under Rule 23(g), the Court previously considered:

(i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

The Court previously held that Class Counsel met these criteria for purposes of Interim Co-Lead Counsel appointments and Preliminary Approval of the Settlement. Dkt. 120, 234. Accordingly, the Rule 23(g) factors weigh in favor of reaffirming the appointment of Class Counsel.

Class Counsel devoted substantial time, effort, and expense investigating and prosecuting the claims in this action. Moreover, Class Counsel have considerable experience in litigating complex class actions, as discussed above. Class Counsel have also devoted considerable resources to pursuing and settling the action and achieved an excellent result for the Class. These factors weigh in favor of the Court reaffirming their appointment.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and enter the proposed Final Order and Judgment submitted herewith.

Dated: December 27, 2021                    Respectfully submitted,

                                            */s/ Benjamin F. Johns*
                                            Benjamin F. Johns (PA Bar No. 201373)
                                            Samantha E. Holbrook (PA Bar No. 311829)
                                            CHIMICLES SCHWARTZ KRINER
                                              & DONALDSON-SMITH LLP
                                            361 W. Lancaster Avenue
                                            Haverford, PA 19041
                                            Tel: (610) 642-8500
                                            Email: bfj@chimicles.com

                                            */s/ Sherrie R. Savett*
                                            Sherrie R. Savett (PA Bar No. 17646)
                                            BERGER MONTAGUE PC
                                            1818 Market Street, Suite 3600
                                            Philadelphia, PA 19103
                                            Tel: (215) 875-3000
                                            Email: ssavett@bm.net

                                            */s/ Roberta D. Liebenberg*
                                            Roberta D. Liebenberg (PA Bar No. 31738)
                                            FINE, KAPLAN AND BLACK, R.P.C.
                                            One South Broad St., 23rd Floor
                                            Philadelphia, PA 19107
                                            Tel: (215) 567-6565
                                            Email: rliebenberg@finekaplan.com

                                            */s/ Linda P. Nussbaum*
                                            Linda P. Nussbaum *(admitted pro hac vice)*
                                            NUSSBAUM LAW GROUP, P.C.
                                            1211 Avenue of the Americas, 40th Fl.
                                            New York, NY 10036-8718
                                            Tel: (917) 438-9102
                                            Email: lnussbaum@nussbaumpc.com

                                            *Co-Lead Class Counsel for Consumer
                                            Track Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2021, a true and correct copy of the accompanying document was filed via the Court's CM/ECF system for electronic service on all counsel of record and is available for viewing and downloading from the ECF system.

Dated: December 27, 2021                    By:  */s/  Benjamin F. Johns*
                                                     Benjamin F. Johns