IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: WAWA, INC. DATA SECURITY LITIGATION<br><br>*This Document Applies to the Consumer Track* | Case No. 2:19-cv-06019-GEKP<br><br>The Honorable Gene E.K. Pratter |

**WAWA, INC.'S MEMORANDUM IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Federal Rule of Civil Procedure 23(e), Defendant Wawa, Inc. ("Wawa"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of the Consumer Plaintiffs' Motion for Final Approval of the Class Action Settlement between Wawa and the Consumer Plaintiffs (Dkt. 271). Wawa supports final approval of the Settlement as fair, adequate and reasonable. Wawa notes that out of an estimated class of 22 million consumers, only one objected—Mr. Theodore Frank. *See* Objection of Theodore H. Frank (the "Objection") (Dkt. 263). Pursuant to a Joint Stipulation between Mr. Frank and Wawa (Dkt. 269), Mr. Frank agreed to withdraw his objections to the fairness of the settlement and limit his objection to Class Counsel's request for attorneys' fees. But, in case the Court had any lingering concerns about Mr. Frank's original objections to the fairness of the settlement, Wawa submits this Memorandum to emphasize three points in response to the Objection.

**I. THE SETTLEMENT IS FAIR AND REASONABLE BECAUSE HARM TO THE CLASS IS MINIMAL OR NON-EXISTENT.**

Mr. Frank's original objection speculated that the claims rate in this settlement will be low. Objection at 10-11. Although the claims rate is not as low as Mr. Frank anticipated, the claims

rate is reflective of the fact that the vast majority of this class suffered no harm. If a few class members actually experienced some harm, it was minimal. Wawa's quick action upon discovering the data security incident, coupled with the fact that very few of the compromised cards were actually sold on the "dark web" when offered for sale, allowed credit card companies to engage fraud detection to block fraudulent charges from occurring, meaning that credit or debit card fraud resulting from the incident was very unlikely. Indeed, investigations and discovery conducted since December 2019 have consistently revealed a lack of widespread credit and debit card fraud. *See* Memorandum Preliminarily Certifying the Class and Preliminarily Approving the Parties' Settlement Agreement ("Memorandum Preliminarily Approving Settlement") (Dkt. 233) at 19 (noting that at mediation, "[e]ach side presented additional information concerning damages and other details surrounding the incident, including a relative lack of widespread credit and debit card fraud after the data breach").

In general, about one to three percent of all credit and debit card transactions are reported to card issuers to be fraudulent. Had there been widespread fraud on cards used at Wawa in excess of these everyday fraud levels, the card brands would have detected the fraud and notified Wawa. This did not occur. The lack of credit and debit card fraud reported on payment cards used at Wawa is therefore consistent with the background fraud levels that exist in everyday transactions. This means that 97% or more of the Settlement Class experienced no harm—that is, the vast majority of the class did not experience a fraudulent or attempted charge, spend time monitoring accounts, or have to pay out-of-pocket expenses or losses as a result of the data security incident. In fact, all but a few of the class members experienced no results caused by the Wawa data security incident and many were likely completely unaware that it even happened at the time. For the few

individuals who may have experienced fraudulent charges or out of pocket expenses, it is likely that the data security incident at Wawa was not the cause.

Nevertheless, the Settlement provides fair, adequate, and valuable compensation for any class member who actually may have experienced harm. In particular, any customer who made purchases with a credit or debit card at Wawa during the relevant period and suffered any harm was allowed to submit a claim for compensation. The Settlement provides for three separate tiers of relief to fairly compensate those individuals who experienced actual harm. Tier One consists of claimants who can show that they made a Wawa purchase using a credit or debit card during the relevant period and attest that they spent at least some time monitoring their accounts as a result of the Data Security Incident. Settlement Agreement (Dkt. 181-1) ¶ 36.a. Tier One claimants are entitled to a $5 Wawa Gift Card and need not have experienced fraudulent purchases on their payment cards. *Id.* Tier Two consists of claimants who can show that they made a Wawa purchase using a credit or debit card during the relevant period and submit reasonable proof of a subsequent fraudulent charge or attempted fraudulent charge. *Id.* ¶ 36.b. Tier Two claimants are entitled to a $15 Wawa Gift Card and must attest that they spent at least some time addressing the fraudulent transaction or monitoring their account as a result of the Data Security Incident. *Id.* The Wawa Gift Cards provided as compensation to Tier One and Tier Two claimants will be fully transferable, will not expire, can be used multiple times, and will be usable toward the purchase of any item sold in a Wawa convenience store, excluding tobacco or nicotine products. *Id.* ¶ 33.

Tier Three consists of claimants who can demonstrate out-of-pocket expenses or losses—such as unreimbursed fraudulent charges, bank fees, replacement card fees, or transportation expenses incurred addressing fraudulent charges—in connection with a fraudulent transaction incurred on a payment card used at Wawa during the relevant period. *Id.* ¶ 36.c. Tier Three

claimants are entitled to cash payments equal to their out-of-pocket expenses or losses up to $500 for each claimant. *Id.*

This compensation is more than fair for the minimal harm suffered by the few class members that experienced any. Accordingly, the relief to the class is fair and reasonable.

## II. THE WAWA GIFT CARDS ARE NOT COUPONS.

Contrary to Mr. Frank's suggestion, this Settlement does not involve coupons. *See* Objection at 5 (characterizing Settlement as "coupon-adjacent"). Mr. Frank notes that he has litigated the issue of coupon settlements in various courts across the country, but he neglects to explain how this settlement involves coupons rather than gift cards. Mr. Frank states: "[a]s the Court has already addressed, there is an issue of whether [the Wawa Gift Cards] constitute 'coupons' for purposes of the limitations of the Class Action Fairness Act[.]" Objection at 5 n.1. The Court did not merely address the issue of whether the Wawa Gift Cards constitute coupons: it plainly held that they do not constitute coupons. Memorandum Preliminarily Approving Settlement at 21 ("The Court disagrees that this is somehow a 'coupon settlement.'").

In the context of class settlements, the law treats gift cards differently than coupons. Courts across the country have routinely held that the Class Action Fairness Act ("CAFA") applies to coupon settlements, and they have distinguished coupon settlements from gift card settlements. *See, e.g.*, *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255-56 (E.D. Pa. 2011) (holding that Rite Aid gift cards denominated in dollar amounts that "can be used for literally thousands of products for which ordinary consumers . . . have need" are "more like 'cash' than 'coupons'" (citation omitted)); *see also Johnson v. Ashley Furniture Indus., Inc.*, No. 13CV2445 BTM(DHB), 2016 WL 866957, at *6 (S.D. Cal. Mar. 7, 2016) (holding settlement was "not a 'coupon' settlement within the meaning of CAFA" where class members had "choices as to what they may

4

purchase with the voucher and may purchase an entire product as opposed to just reducing the purchase price"). Indeed, courts have reached this same conclusion in cases in which Mr. Frank has objected to class settlements. For example, in *In re Online DVD-Rental Antitrust Litigation*, a case involving a settlement to which Mr. Frank objected, the Ninth Circuit Court of Appeals explained that "gift cards are a fundamentally distinct concept in American life from coupons." 779 F.3d 934, 952 (9th Cir. 2015). The court further observed that "[d]istrict courts that have considered the issue have not classified gift cards as coupon settlements falling under CAFA." *Id.* Likewise, in *McKinney-Drobnis v. Oreshack*, another recent case involving a settlement to which Mr. Frank objected, the court distinguished between gift card settlements and coupon settlements, noting that the gift cards in *Online DVD* were not coupons because, as here, the store where the gift cards could be redeemed had an "extensive inventory of low-cost products," the gift cards did not expire, and the gift cards were freely transferable. 16 F.4th 594, 602 (9th Cir. 2021).

As noted, the Court already concluded that this Settlement does not involve coupons. Memorandum Preliminarily Approving Settlement at 21. The Court analyzed this Settlement in light of other decisions involving challenges to settlements under CAFA in this district. *Id.* (citing *Reibstein*, 761 F. Supp. at 255-56; *Rougvie v. Ascena Retail Grp., Inc.*, No. 15-cv-724, 2016 WL 4111320, at *29 (E.D. Pa. July 29, 2016)). The Court concluded that the Wawa Gift Cards offered to consumers in Tier I and Tier II were not coupons because they "can be used to purchase virtually any item Wawa sells," "there is no minimum purchase to obtain the value on the card," and the Wawa Gift Cards are fully transferable. *Id.* Moreover, As Wawa has previously stated, all of the class members have shopped at Wawa before, and they can easily use the full value of the gift cards for various purchases at Wawa, such as coffee, pastries, milk, and eggs. *See* Joint Decl. of Interim Co-Lead Counsel (Dkt. 181) ¶ 27. This is because more than 3,000 products sold at Wawa

cost less than $5.00. *Id.* In addition, 97.2% of the value of gift cards issued by Wawa in the last two years have been redeemed. *Id.* This makes the gift cards akin to cash and not coupons.

At most, even if this settlement involved coupons under CAFA—which it does not—that conclusion would only change the way the Court has to approach the question of attorneys' fees. In that instance, class counsel's fee application must be "based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. § 1712(b)(1). CAFA's provisions regarding coupon settlements are not relevant to the fairness of the Settlement.

**III.   THE ONLY REMAINING OBJECTION IS TO THE REQUESTED FEE AWARD.**

Pursuant to the Joint Stipulation filed on December 21, 2021 (Dkt. 269), Mr. Frank has agreed to withdraw his Objection to approval of the Settlement, thereby leaving only his Objection to the request of Class Counsel for attorneys' fees and costs. *See.* Objection at 19. Wawa does not object to Class Counsel's request for an award of $3,200,000 to cover payment of attorneys' fees and expenses, class representative service awards, and the costs of settlement administration. However, should the Court determine that a lesser award of attorneys' fees and costs is appropriate, such modification of the fee award will not jeopardize the Settlement because any award of attorneys' fees and costs is severable from the Settlement itself.

Moreover, pursuant to the Third Amendment to Settlement Agreement executed by Wawa and the Consumer Class Plaintiffs on December 20, 2021 (Dkt. 269-1), Wawa and the Consumer Class Plaintiffs agreed that if the Court does not award the full $3,200,000 to Class Counsel as set forth in the Settlement Agreement or otherwise award attorneys' fees and costs in that full amount, any difference between the $3,200,000 requested and the amount awarded will be distributed equally among and added to the total value of each of the Tier One and Tier Two Wawa Gift Cards. By way of example, if the Court awards $3,100,000 in total attorneys' fees, costs and service

awards, then the difference will be $100,000. If there are 100,000 Tier One and Tier Two gift cards to be distributed collectively, each such gift card will have $1.00 added to it (such that the Tier One Gift Cards will have a $6.00 value and the Tier Two Gift Cards will have a $16.00 value).

Accordingly, while Wawa does not object to an award of attorneys' fees and costs in the full amount contemplated by the Settlement Agreement, Wawa recognizes that it is in the Court's discretion to modify the award of fees and costs and, should the Court reduce the award of attorneys' fees and costs, the parties have agreed that any difference will be distributed equally among each of the Tier One and Tier Two Wawa Gift Cards.

## IV. CONCLUSION

Based on the foregoing, Wawa respectfully requests that the Court grant the relief requested in the Consumer Plaintiffs' Motion for Final Approval of the Class Action Settlement.

Dated:  December 27, 2021         Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Gregory T. Parks*
  Gregory T. Parks (Pa. I.D. # 80620)
  Ezra D. Church (Pa. I.D. # 206072)
  Kristin M. Hadgis (Pa. I.D. # 209125)
  Terese M. Schireson (Pa. I.D. # 320999)
  1701 Market Street
  Philadelphia, PA 19103
  Tel: (215) 963-5000
  Fax: (215) 963-5001
  gregory.parks@morganlewis.com
  ezra.church@morganlewis.com
  kristin.hadgis@morganlewis.com
  terese.schireson@morganlewis.com

  *Attorneys for Defendant Wawa, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on December 27, 2021 via the Court's ECF system upon all counsel of record.

*/s/ Gregory T. Parks*
Gregory T. Parks
