# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION | Case No. 19-6019-GEKP |
| | Class Action |
| *This document relates to: Consumer Track* | |

### ~~SECOND~~THIRD AMENDED SETTLEMENT AGREEMENT

This ~~Second~~Third Amended Settlement Agreement ("Agreement") is entered into this ~~8th~~4th day of ~~November, 2021~~February, 2022, by and between the Consumer Track Plaintiffs in the above-captioned class action and the Kasan Laster New Jersey state court class action described below (collectively the "Consumer Track Action"), individually and on behalf of the Settlement Class (as defined in Paragraph 28 below), by and through Interim Co-Lead Counsel for the Consumer Track, and Defendant Wawa, Inc. ~~("Wawa"). The Amended Settlement Agreement (Dkt. 201-1) dated April 27, 2021 amended the original Settlement Agreement executed on February 9, 2021 (Dkt. 181-1) to clarify the scope of the Release at paragraph 96. The Second Amended Settlement Agreement further amends the Settlement Agreement to streamline the claims process as outlined in paragraph 36. The Settlement Administrator will post a copy of this Second Amended Settlement Agreement and the [Proposed] Stipulated Order Relating to Claims Process on the settlement website.~~ ("Wawa"). By way of history, the original Settlement Agreement was filed with the Court on February 19, 2021 (Dkt. 181-1) in connection with Plaintiffs' motion for preliminary approval of the Settlement. The Parties filed the Amended Settlement Agreement on April 27, 2021 (Dkt. 201-1) to clarify the scope of the Release at paragraph 96. The Parties filed the Second Amended Settlement Agreement on

H0108894.

November 12, 2021 (Dkt. 264-1) to streamline the claims process for Tier One claims as outlined in paragraph 36(a).  The Parties filed the "Third Amendment to Settlement Agreement" on December 21, 2021 (Dkt. 269-1) to provide for allocation to the Class of any reduction in the amount of attorneys' fees, costs, and service awards awarded by the Court below the $3,200,000 figure agreed to by the Parties.  The Third Amendment to Settlement Agreement was a two-page document as opposed to a full amended settlement agreement.  At a January 22, 2022 telephonic conference with the Court, the Court requested that the Parties revise the Release language in the operative settlement agreement to add parentheses to certain text in the last sentence of paragraph 96 to improve its clarity.  At the Final Approval Hearing on January 26, 2022, the Court requested that the parties submit a "final" amended Settlement Agreement consolidating all of the revisions into a single document.  This Third Amended Settlement Agreement hereby achieves that purpose and further amends the Second Amended Settlement Agreement to: (i) add the clause regarding allocation to the Class of any reduction in the amount of attorneys' fees, costs, and service awards awarded by the Court; (ii) insert the parentheses in the Release as requested by the Court; (iii) insert other minor clarifying revisions to the Release; and (iv) consolidate all of the revisions and changes to the Settlement Agreement in one single document for approval by the Court.

**WHEREAS**, on December 19, 2019, Wawa disclosed a data security incident involving Wawa's computer systems and payment card transactions at Wawa's stores and fuel dispensers from March 4, 2019 until December 12, 2019 that allowed malware to access payment card information, including credit and debit card numbers, card expiration dates, and cardholder names used at Wawa stores and fuel dispensers during that time frame (the "Data Security Incident");

H0108894.                                        2

**WHEREAS,** Wawa customers filed several separate class actions against Wawa on behalf of themselves and other Wawa customers relating to the Data Security Incident announced by Wawa;

**WHEREAS,** on January 8, 2020, Chief Judge Juan Sanchez entered an order consolidating cases filed by consumers alleging harm resulting from the Wawa Data Security Incident in the Eastern District of Pennsylvania (Dkt. 9), and Judge Gene E.K. Pratter presides over the consolidated actions, captioned as *In re Wawa, Inc. Data Security Litigation*, Case No. 19-6019-GEKP;

**WHEREAS,** on June 12, 2020, Judge Pratter entered orders appointing Interim Co-Lead Class Counsel for the proposed class of Consumer Plaintiffs (Dkt. 120) and setting a schedule for the case, including for the filing of a Consolidated Complaint in the Consumer Track Action (Dkt. 119);

**WHEREAS,** on July 27, 2020, Plaintiffs (as defined in Paragraph 18 below) filed a Consumer Plaintiffs' Consolidated Class Action Complaint (Dkt. 132) (hereinafter "Complaint") that alleges, among other things, that Wawa failed to implement adequate data security measures to protect the sensitive, non-public payment card information of its customers;

**WHEREAS,** the Complaint further alleges that, as a result of the Data Security Incident (as defined in Paragraph 8 below), class members have experienced harm and will continue to experience harm including fraudulent credit and debit card transactions and other fraud related to their accounts, and Plaintiffs sought to remedy those harms by seeking, among other things, reimbursement of out-of-pocket losses and compensation for time spent in response to the Data Security Incident, as well as injunctive relief entailing substantial improvements to Wawa's data security systems;

**WHEREAS**, Plaintiffs and Wawa (collectively the "Settling Parties") have engaged in substantial arm's-length negotiations in an effort to resolve all claims that have been, or could have been, asserted in the Complaint, including through mediation with the Honorable Diane M. Welsh (Ret.) of JAMS as well as through numerous telephone conferences and exchanges of information, including a substantial production of documents from Wawa, which negotiations resulted in this Settlement Agreement;

**WHEREAS**, Wawa has denied and continues to deny that it engaged in any wrongdoing of any kind, or that it violated or breached any law, regulation, or duty owed to the proposed Settlement Class defined in Paragraph 28, and further denies that the Plaintiffs or any class members have suffered damages sufficient to support a cause of action, and denies that Wawa has any liability as a result of any and all allegations in the Complaint, and denies that it would be possible or feasible to certify a class for litigation purposes as opposed to for settlement purposes;

**WHEREAS**, Wawa has entered into this Agreement solely to reach a settlement with its valued customers and to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to thereby finally resolve this dispute with Plaintiffs and the Settlement Class;

**WHEREAS,** Wawa has provided to Plaintiffs' Counsel sufficient information and documents to confirm that the terms herein are fair, reasonable, and adequate to Plaintiffs and Class Members; and

**WHEREAS**, Plaintiffs and Class Counsel (as defined in Paragraph 19) have concluded that it is in the interest of all members of the proposed Settlement Class to finally resolve their claims against Wawa, and that the terms of this Agreement are in the best interest of the

H0108894.                                         4

proposed Settlement Class and are fair, reasonable, and adequate;

  **NOW, THEREFORE,** in consideration of the promises, agreement, covenants, representations, and warranties set forth herein, and other good and valuable consideration provided for herein, the Settling Parties agree to a full, final and complete settlement of the Consumer Track Action on the following terms and conditions.

## I. DEFINITIONS

  The following terms, as used in this Agreement, have the following meanings:

  1. "Agreement" or "Settlement Agreement" means this Agreement.

  2. "Claims Administration" means the processing of claims received from Settlement Class Members by the Settlement Administrator.

  3. "Claims Filing Deadline" means 90 days from the Notice Issuance Date.

  4. "Claim Form" means the applicable claim form for Tier One, Tier Two, or Tier Three attached hereto as Exhibit "A" that shall require a Settlement Class Member submitting a claim to provide their name, mailing address, and email address to receive a Wawa Gift Card or, if the Settlement Class Member certifies that he or she does not have an email account to receive a Wawa Gift Card, an email address where a Wawa Gift Card can be sent by email and printed for the Settlement Class Member.

  5. "Consolidated Class Action Complaint" or "Complaint" means the Consolidated Class Action Complaint filed in the Consumer Track Action on July 27, 2020 (Dkt. 132).

  6. "Consumer Track Action" means the Consumer Track of the consolidated lawsuit captioned *In re: Wawa, Inc. Data Security Litigation*, Case No. 19-6019-GEKP, in the United States District Court for the Eastern District of Pennsylvania.

  7. "Court" means the United States District Court for the Eastern District of

Pennsylvania.

8.      "Data Security Incident" means the data security incident publicly disclosed by

Wawa on December 19, 2019, the related underlying attack and the malware that accessed

information about credit and debit card transactions at all or most of Wawa's more than 850

stores (including the outside fuel dispensers at such stores) from March 4, 2019 until December

12, 2019.

9.      "Effective Date" means the date by which all of the following events and

conditions have occurred: (a) the Settlement Agreement is fully executed; (b) the Court has

granted Preliminary Approval of the Settlement; (c) notice of the Settlement and the process to

allow exclusions or objections have been provided in a manner approved by the Court; (d) the

Court has granted Final Approval of the settlement and enters a Final Judgment; and (e) either (i)

no appeal has been taken from the Final Approval or Final Judgment as of the date on which all

times to appeal or seek permission to appeal therefrom have expired, or (ii) an appeal or other

review proceeding of the Final Approval or Final Judgment having been commenced, such

appeal or other review is finally concluded and no longer is subject to further review by any

court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing *en banc*,

petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally

resolved in a manner that affirms the Final Approval and Final Judgment in all material respects.

Notwithstanding the above, any appeal or other proceeding seeking the modification or reversal

of any service award to Plaintiffs or award of attorneys' fees, costs, or expenses shall not affect

whether a judgment in this matter is final or any other aspects of the Final Approval order for

purposes of satisfying the Effective Date defined herein.

10.     "Final Approval" means the Order of the Court granting final approval of the

H0108894.                                          6

Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e).

11.     "Final Approval Hearing" or "Fairness Hearing" means the hearing at which the Court will consider final approval of the Settlement, to be set on a date after the Objection and Opt-Out Deadlines.

12.     "Final Judgment" has the meaning specified in Paragraph 90.

13.     "Notice Program" means the notice program described in Section V.

14.     "Notice Issuance Date" means the date on which the Notice Program commences, which shall be within thirty days of Preliminary Approval.

15.     "Objection Deadline" means 75 days from the Notice Issuance Date.

16.     "Opt-Out Deadline" means 75 days from the Notice Issuance Date.

17.     "Parties" means Wawa and Plaintiffs.

18.     "Plaintiffs" or "Named Plaintiffs" or "Class Representatives" means Kenneth Brulinski, Kelly Donnelly Bruno, Amanda Garthwaite, Marisa Graziano, Tracey Lucas, Marcus McDaniel, Joseph Muller, April Pierce, Nicole Portnoy, Nakia Rolling, Eric Russell, Michael Sussman, and Charmissha Tingle.  For purposes of this Agreement only, these terms also include Kasan Laster, the Plaintiff who filed a proposed class action related to the Data Security Incident on January 6, 2020 in the Superior Court of New Jersey in Burlington County, captioned as *Laster v. Wawa, Inc.,* No. BUR-L-000037-20.

19.     "Plaintiffs' Counsel" or "Class Counsel" or "Co-Lead Counsel" or "Interim Co-Lead Counsel" means the law firms of Berger Montague, PC; Chimicles Schwartz Kriner & Donaldson-Smith LLP; Fine, Kaplan and Black, R.P.C.; and Nussbaum Law Group, P.C.

20.     "Period of the Data Security Incident" means the time period between March 4, 2019 and December 12, 2019 inclusive of the beginning and ending dates.

21.     "Preliminary Approval" means the Court's Order preliminarily approving the Settlement.

22.     "Reasonable Proof of a Transaction" means reasonable proof of a transaction on a credit or debit card at a Wawa store or fuel pump during the Period of the Data Security Incident, as reflected in a receipt issued by Wawa, bank statement or other document, including a printed bank statement or credit card statement, screen shot from a banking or credit card company website or mobile app, or other document that verifies the date of the transaction, and the fact that it occurred at a Wawa store or fuel pump.

23.     "Released Claims" has the meaning specified in Paragraph 96.

24.     "Released Parties" has the meaning specified in Paragraph 96.

25.     "Releasor" means the Class Representatives and each and every Settlement Class Member; each of their respective current and former heirs, executors, administrators, and assigns; and anyone claiming by or through any of the foregoing.

26.     "Settlement" means the negotiated settlement memorialized in this Settlement Agreement.

27.     "Settlement Administrator" means KCC LLC, a company experienced in administering class action settlements generally and processing claims like those contemplated in this Agreement.

28.     "Settlement Class" means: All residents of the United States who used a credit or debit card at a Wawa location at any time during the Period of the Data Security Incident of March 4, 2019 through December 12, 2019.  Excluded from the Settlement Class are Wawa's executive officers and the Judge to whom this case is assigned.

29.     "Settlement Class Member" or "Class Member" means any person or entity who

H0108894.                                                      8

falls within the "Settlement Class" definition above and does not timely and properly opt out of the Settlement Class.

30.     "Settlement Website" means a dedicated website created and maintained by the Settlement Administrator that will contain relevant documents and information about the Settlement, including this Settlement Agreement, the Long Form Notice of the Settlement, and the Claim Form, among other things.

31.     "Wawa" or "Defendant" shall mean Wawa, Inc., a privately held company incorporated in New Jersey with its principal place of business in Wawa, Pennsylvania.

32.     "Wawa's Counsel" means the law firm of Morgan, Lewis & Bockius LLP.

33.     "Wawa Gift Card" means, for purposes of this Agreement, an e-gift card distributed electronically via email through which the consideration being made available to members of Tier One and Tier Two, defined below, shall receive their direct settlement benefits from Wawa.  The Wawa Gift Cards shall be fully transferable, shall be usable by printing or by display on a phone through a mobile app or otherwise, shall not expire in less than one year, and shall be usable toward the purchase of any item (including fuel if the fuel purchase is completed inside a Wawa store) sold at Wawa stores, excluding cigarettes and other tobacco or nicotine delivery products.  Wawa Gift Cards shall be usable multiple times if the initial transaction is less than their full face value.

## II.     CERTIFICATION OF SETTLEMENT CLASS AND COOPERATION

34.     Wawa hereby agrees not to object to or oppose any motion by Plaintiffs consistent with this Settlement Agreement to certify for purposes of settlement only that the Settlement Class meets the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, and, subject to Court approval, that the Settlement Class set forth in Paragraph 28

H0108894.                                9

shall be certified for settlement purposes.  By agreeing not to object to or oppose any such

motion, Wawa does not agree that the Settlement Class meets the Rule 23 requirements for

purposes of a litigation class, and reserves all rights to oppose the certification of any class in the

event this Settlement is not finally approved.

35.     Wawa shall cooperate to the extent reasonably necessary in connection with

Plaintiffs' Counsel's motions for Preliminary Approval and Final Approval of the Settlement and

related matters, including with respect to objections and appeals if necessary, to effectuate and

implement the terms and conditions of this Agreement.

**III.     BENEFITS TO SETTLEMENT CLASS MEMBERS**

36.     **Compensation to Settlement Class Members and Plan of Allocation**.  Subject

to the terms of this Settlement Agreement, Wawa shall provide the following compensation to

Settlement Class Members who submit a valid Claim Form as properly determined by the

process described herein.  Each Class Member is entitled to compensation in one Tier only and

will be required to select a Tier when a claim is submitted.  If a Class Member submits multiple

Claim Forms for more than one Tier, the higher tier Claim Form will determine the amount of

benefit the Class Member receives. Each Class Member will be entitled to one payment in their

respective Tier, regardless of the number of payment cards they used at Wawa during the Period

of the Data Security Incident, and regardless of the number of transactions that occurred within

that time period.

    a.  **Tier One**

        i.  Tier One will consist of Settlement Class Members who made a credit or debit
           card transaction at any Wawa convenience store or gas pump location between
           March 4, 2019 and December 12, 2019.

        ii.  Tier One claimants must complete the Tier One Claim Form attached hereto as
           Exhibit "A" and as required by the Claim Form: (a) submit with the Claim Form

Reasonable Proof of a Transaction at Wawa; and (b) attest under penalty of perjury on the Claim Form that they spent some amount of time after March 4, 2019 monitoring their accounts as a result of the Data Security Incident.

iii. Class Members may sufficiently attest to spending time monitoring their accounts by checking a box on the Claim Form and signing the Claim Form under penalty of perjury.

iv. Tier One claimants need not have experienced an actual or attempted fraudulent transaction to be eligible for Tier One relief.

v. Any claimant who submits a Tier One Claim Form that does not contain sufficient requisite proof will be notified by the Claims Administrator of any deficiencies and given a reasonable opportunity to cure those deficiencies.

vi. Tier One claimants will be entitled to a **$5 Wawa Gift Card**. Total claims in Tier One are subject to a **$6 million cap** and a **$1 million floor**. If the total value of Tier One claims does not reach the $1 million floor, the value of Wawa Gift Cards distributed to Tier One claimants will be increased on a *pro rata* basis such that the $1 million floor is reached. If the total value of valid claims in Tier One exceeds $6 million, the value of Wawa Gift Cards distributed to Tier One claimants will be decreased on a *pro rata* basis such that the aggregate of all Wawa Gift Cards in Tier One totals $6 million.

vii. Wawa has been able to determine from its internal records, the email addresses of approximately 633,000 people who signed up for the Wawa mobile app before December 2019. Although purchases through the Wawa mobile app were not involved in the Data Security Incident, the Parties agree that this group of people are more likely to have been Wawa customers and also more likely to have also used a debit or credit card purchase at Wawa during the Data Security Incident. As part of continuing discussions about streamling the claims process, the Parties have therefore agreed that these individuals need not submit a proof of purchase to make an eligible Tier One claim.

viii. The Settlement Administrator will send an email substantially in the form attached hereto as Exhibit "G" to the email address of the approximately 633,000 people who Wawa has identified as having signed up for the Wawa mobile app before December 2019.

ix. Without needing to submit a Claim Form pursuant to subsections ii and iii above, the recipients of this email will automatically be qualified for Tier One and will be included on the distribution list described in paragraph 50, unless they: (a) affirmatively decide to decline this offer in response to the email; (b) have already submitted a valid claim for Tier Two or Tier Three, in which case they will receive the Tier Two or Tier Three amount; (c) have already timely opted out of the Settlement Class pursuant to paragraphs 56-66; or (d) in the

H0108894.

future timely opt out of the Settlement Agreement pursuant to paragraphs 56-66.

b. **Tier Two**

    i.   Tier Two will consist of Settlement Class Members who experienced an actual or attempted fraudulent transaction after March 4, 2019 on a credit or debit card they used at any Wawa convenience store or gas pump location between March 4, 2019 and December 12, 2019.

    ii.   Tier Two claimants must complete the Tier Two Claim Form attached hereto as Exhibit "A" and as required by the Claim Form: (a) submit with the Claim Form Reasonable Proof of a Transaction at Wawa; (b) submit reasonable proof of an actual or attempted fraudulent transaction on the same card account post-dating the Wawa purchase, or a reversal of a fraudulent transaction that occurred after the date of purchase; and (c) attest under penalty of perjury by check box and signing the Claim Form that they spent time to monitor their accounts or spent time otherwise associated with the fraudulent transaction.

    iii.   Reasonable forms of proof of an actual or attempted fraudulent transaction or reversal of a fraudulent transaction may include a bank statement, credit card statement or a screen shot from a bank account or credit card account on a website or mobile app showing a reversal of a fraudulent transaction, police report of a reported fraudulent transaction, email or other correspondence to or from a bank or credit card company about a disputed or fraudulent transaction, or any other reasonable documentation that demonstrates a transaction was fraudulent or reversed after having been recognized, or identified by the customer or a bank or credit card company as potentially fraudulent.

    iv.   Tier Two claimants will be entitled to a **$15 Wawa Gift Card**. Total claims in Tier Two are subject to a **$2 million cap** and no floor.  If the total value of valid claims in Tier Two exceeds $2 million, the value of Wawa Gift Cards distributed to Tier Two claimants will be decreased on a pro rata basis such that the aggregate of all Wawa Gift Cards in Tier Two totals $2 million.

    v.   Any claimant who submits a Tier Two claim that does not contain all of the requisite proof for Tier Two will be notified by the Claims Administrator and given a reasonable opportunity to cure the deficiencies.  A claimant who, after a reasonable opportunity to cure, can only demonstrate their eligibility for membership in Tier One, will be automatically eligible for the $5 Wawa Gift Card being made available to Tier One members, subject to the potential adjustment in Section 36(a)(vi).

c. **Tier Three**

    i.   Tier Three will consist of Settlement Class Members who have actual out-of-pocket monetary damages in connection with an actual or attempted fraudulent

transaction reasonably attributable to the Data Security Incident.

ii.   Tier Three claimants must complete the Tier Three Claim Form attached hereto as Exhibit "A" and as required by the Claim Form: (a) submit with the Claim Form Reasonable Proof of a Transaction at Wawa during the Period of the Data Security Incident; (b) submit reasonable proof of an actual or attempted fraudulent transaction on the same card account post-dating the Wawa purchase, or a reversal of a fraudulent transaction that occurred after the date of purchase; and (c) submit reasonable proof of the resulting actually incurred out-of-pocket expense(s).

iii.  Out-of-pocket expenses may include, but are not limited to, actual money spent or lost because of unreimbursed fraud charges, bank fees, replacement card fees, late fees from transactions with third parties that were delayed due to fraud or card replacements, credit freeze fees, parking expenses or transportation expenses for trips to a financial institution to address fraudulent charges or receive a replacement payment card, and other expenses reasonably attributable to the Data Security Incident.

iv.   Reasonable proof of an actual or attempted fraudulent transaction is as described in Tier Two above.

v.    Reasonable proof of actually incurred out-of-pocket damages may include a receipt, bank statement or credit card statement, screen shot from a bank account or credit card account, email or other correspondence with a merchant or vendor, or any other reasonable form of documentary proof that establishes the existence, date and amount of actual out-of-pocket monetary damages reasonably attributable to the Data Security Incident.

vi.   Tier Three claimants will be entitled to a cash payment (not a Wawa Gift Card) equal to their actually incurred out-of-pocket expenses up to **$500**.  Total claims in Tier Three are subject to a **$1 million cap** and no floor.  If the total value of valid claims in Tier Three exceeds $1 million, the amount of individual distributions to Tier Three claimants will be decreased on a pro rata basis such that the aggregate of all Tier Three claims totals $1 million.

vii.  Any claimant who submits a Tier Three claim that does not contain all of the requisite proof for Tier Three and who, after a reasonable opportunity to cure, can only demonstrate their eligibility for membership in Tier One or Tier Two, will be automatically eligible for the Wawa Gift Card being made available to members of the Tier in which the claimant can demonstrate membership.

37.    In order to be timely, Settlement Class Members must submit their claims by the Claims Filing Deadline.

38.    **Injunctive Relief.**  Wawa acknowledges that providing benefits to its valued customers, including those in the Settlement Class, was a factor in Wawa's decision to strengthen its data security systems to minimize the likelihood of future data security incidents which could affect Wawa customers.  By point of reference, at a Board meeting in February 2020 addressing the Data Security Incident, the Wawa Board authorized $25 million to improve Wawa's data security posture.  To date, more than $20 million has been committed or spent. Wawa further acknowledges that it would not have agreed to have the actions reflected in this Settlement Agreement imposed as a court order in the absence of the filing of the Consumer Track Action (including the pre-consolidation Complaints).

39.    The Parties agree that the injunctive relief set forth below and Wawa's improvements to its data security posture is valued at no less than $35 million.

40.    For a period of two years following the Effective Date of the Settlement, Wawa agrees to:

     a.  Retain a qualified security assessor on an annual basis to assess compliance with PCI-DSS requirements and issue a Report on Compliance that evidences compliance with all such requirements;

     b.  Conduct annual penetration testing and remediate critical vulnerabilities or implement compensating controls where feasible;

     c.  Operate a system that is designed to encrypt payment card information and complies with Europay, Mastercard, and Visa ("EMV") security procedures at the point of sale terminals in Wawa stores;

     d.  Operate a system that implements EMV security procedures at the point of sale terminals at Wawa fuel pumps; and

     e.  Maintain written information security programs, policies, and procedures.

41.    The foregoing measures will be the subject of informal discovery conducted by Class Counsel, which may be by offers of proof from Wawa's Counsel.  Wawa's Counsel shall

provide Class Counsel with semi-annual updates (or less frequently if agreed upon by Class

Counsel) during the two-year period in which it will implement these measures in accordance

with this Agreement.

## IV. SETTLEMENT ADMINISTRATION

42.     The Parties have agreed to request that the Court appoint KCC LLC as the

Settlement Administrator.

43.     The Settlement Administrator will cooperate with and assist Wawa and Class

Counsel with the Notice Program to be implemented in accordance with the terms of this

Settlement Agreement and any orders of the Court.

44.     The Settlement Administrator will administer and update the Settlement Website

in accordance with the terms of this Settlement Agreement.  Class Counsel and Wawa's Counsel

will agree on the format and content of the Settlement Website, and may agree to add

information to the Settlement Website, so that it provides Class Members with accurate and

timely information.

45.     The Settlement Administrator will conduct Claims Administration services in

accordance with the terms of the Settlement Agreement and as is typical in a settlement of this

nature.  The Settlement Administrator shall also conduct any additional processes jointly agreed

to by Class Counsel and Wawa's Counsel, subject to the Court's supervision and direction as

circumstances may require.

46.     The Settlement Administrator shall, among other things: administer the claims

submission and review process; document the number and type of claims submitted by

Settlement Class Members; provide an automated call center that may include an option to

request to be put in contact with one of the Interim Lead Counsel firms for more information and

that will give callers the Wawa customer service number to call with any non-settlement related inquiries to Wawa's customer service center; identify and follow up on deficient claims to give class members an opportunity to provide the necessary information; reject claims that appear to be duplicative based on the name, address, email address, and documentation provided; report to the Parties as requested regarding claims administration; permit the Parties to review and obtain supporting documentation as needed; update the Settlement Website and otherwise communicate with Class Members regarding claims administration procedures and deadlines; and prepare reports of its proposed and final determinations as to each claim in each settlement tier.

47.     The Settlement Administrator may, at any time, request from each claimant, in writing, additional information as the Settlement Administrator may reasonably require in order to evaluate the claim, e.g., documentation requested on the Claim Form, and information regarding the claimed fraudulent transactions.  For all claims, the Settlement Administrator's initial review will be limited to a determination of whether the claim is duplicative of another claim.

48.     Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid, the Settlement Administrator shall request additional information from the claimant and give the claimant thirty (30) days to cure the defect before rejecting the claim.  The Settlement Administrator shall request any Claim Form supplementation within thirty (30) days of receipt of such Claim Form.  In the event of unusual circumstances interfering with compliance with the 30-day cure period, the claimant may request and, for good cause shown (illness, military service, absence from the United States, delivery failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day

deadline in which to comply.  However, in no event shall the deadline be extended to later than three months after the Claims Filing Deadline without express approval from the Parties.  If the defect is not cured within the required period, then the claim will be deemed invalid and Wawa shall have no obligation to pay the claim.

49.     On a bi-weekly basis, the Settlement Administrator shall make the claims it has accepted and that are not duplicative available electronically to Class Counsel and Wawa's Counsel.  Within one month of the Claims Filing Deadline, the Settlement Administrator shall make all such claims available to Class Counsel and Wawa's Counsel.  Class Counsel shall undertake a reasonable review of each claim to determine whether it meets the requirements of this Settlement Agreement, contains all of the required information on the Claim Form, and provides what appears to be the required documentation.  Class Counsel may reject as invalid any claim that does not meet the foregoing requirements by notifying the Settlement Administrator and Wawa's Counsel.  Within 30 days of the Claims Filing Deadline, Class Counsel shall then certify to Wawa's Counsel that any claims not rejected meet the requirements of this paragraph.  Wawa's Counsel may audit any or all of the claims so certified and may, within 30 days after Class Counsel's certification, raise issues with any claims for discussion with Class Counsel.  The parties shall meet and confer in good faith to resolve any disputed claims and shall, within 75 days after the Claims Filing Deadline either:  (a) inform the Settlement Administrator of which accepted claims should be rejected; or (b) seek a ruling from the Court on any remaining disputed claims.  The accepted claims not rejected by this process shall be the "Approved Claims."  The Parties mutually agree to extend these deadlines if the circumstances dictate that a reasonable extension is warranted.

50.     Within one month after Class Counsel and Wawa's Counsel complete the process

H0108894.                                             17

above, the Settlement Administrator shall provide Class Counsel and Wawa's Counsel with a final list of the Approved Claims for each Tier together with each approved claimant's name, address, email address, and access to the Claim Form and related documentation submitted by the claimant. Wawa, the Settlement Administrator, and the third-party vendor assisting Wawa with distribution of the Wawa Gift Cards at Wawa's expense shall work together to facilitate a commercially reasonable format for the transmission of this data. The Parties may mutually agree to extend this deadline if the circumstances dictate that a reasonable extension is warranted.

51.     Within thirty (30) days of receiving the final report of approved claims for Tier One and Tier Two, Wawa will: (a) at its expense cause the Wawa Gift Cards to be distributed by email to those Settlement Class Members in Tier One and Tier Two on the final report of approved claims; and (b) make a payment as directed by the Settlement Administrator in the aggregate total amount of the accepted and approved Tier Three claims.

52.     The Settlement Administrator will mail checks to Settlement Class Members in Tier Three within thirty (30) days of receiving payment from Wawa.

**V.     NOTICE TO SETTLEMENT CLASS MEMBERS**

53.     Subject to Court approval, the Parties agree that the following Notice Program provides reasonable notice to the Settlement Class.

54.     Wawa represents that neither it nor its agents have information sufficient to identify and provide mail or email notice to Settlement Class Members.

55.     As part of the Notice Program, the following events shall occur on or before the Notice Issuance Date:

   a. Long Form Notice as set forth in Exhibit "B," as approved or modified by the Court, will be posted on the Settlement Website. The Long Form Notice shall

H0108894.                                    18

contain links to the Claim Forms and other information about how Settlement Class Members can submit claims. In addition to being linked in the Long Form Notice, the Claim Form and all Settlement documents will additionally be posted as standalone documents on the Settlement Website. Wawa will also post a link to the Settlement Website on its website during the claims process period.

b.   Wawa will post signs announcing the Settlement at all Wawa store locations, both in-store (at or near the Point of Sale payment card machines) and at or near the payment card equipment on all fuel dispensers, for a period of four consecutive weeks. The content and layout of the signs shall be as attached in Exhibit "C" (the "Store Notice"). The Store Notice will include a QR or other code that can be scanned and will direct customers to the Settlement Website and Long Form Notice, which will contain hyperlinks to the Claim Forms, when scanned using a smartphone or other device that recognizes QR codes.

c.   Wawa will issue a press release, to, at minimum, reach the geographic region of all states in which Wawa has locations, at its expense, on behalf of Wawa, the Plaintiffs and the Settlement Administrator, announcing the Settlement and directing Settlement Class Members to the Settlement Website, complete with a link to the Settlement Website. The content of the press release will be as set forth in Exhibit "D," as approved or modified by the Court (the "Press Release").

## VI.   OPT-OUT PROCEDURE

56.   Any person or entity in the Settlement Class shall have the right to opt out of the Settlement Class and not participate in the Settlement, as provided for in the Preliminary Approval Order. Requests to opt out of the Settlement Class ("Opt-Out Requests") can only be made on behalf of a single person or entity who is in the Settlement Class; mass exclusion requests shall not be valid.

57.   In order to be timely, Opt-Out Requests must be postmarked on or before the Opt-Out Deadline and addressed to the Settlement Administrator. Opt-Out Requests postmarked or otherwise submitted after the Opt-Out Deadline will not be valid.

58.   The Long Form Notice shall inform each person in the Settlement Class of the right to opt out of the Settlement Class and not to be bound by this Settlement Agreement if, by the Opt-Out Deadline, the individual completes, signs, and timely submits an Opt-Out Request to

H0108894.                                          19

the Settlement Administrator at the address set forth in the Notice.

    59.    For an Opt-Out Request to be valid, it must:

        a.    State the full name, address, telephone number, and email address (if any) of the person or entity who is opting out;

        b.    Contain the personal and original signature of the person or entity opting out (or the original signature of a person previously authorized by law, such as a trustee, guardian or person acting under a power of attorney, to act on behalf of the person or entity who is opting out); and

        c.    Clearly state the person's or entity's intent to be excluded from the Settlement Class and to waive all rights to the benefits of the Settlement.

    60.    The Settlement Administrator shall promptly inform Class Counsel and Wawa of all Opt-Out Requests received and provide a copy of each Opt-Out Request to Class Counsel and Wawa's Counsel.

    61.    If a person or entity submits both a Claim Form and a request to opt out, the person or entity will be deemed to have waived and withdrawn the request to opt out and shall be treated as a Settlement Class Member for all purposes.  The Settlement Administrator will notify the Settlement Class Member.

    62.    All persons and entities in the Settlement Class who submit timely and valid Opt-Out Requests in the manner set forth in Paragraph 59 above, referred to herein as "Opt-Outs," shall receive no compensation under the Settlement, shall gain no rights from the Settlement, shall not be bound by the Settlement and the Release, and shall have no right to object to the Settlement.

    63.    All Settlement Class Members who do not request to opt out of the Settlement Class in the manner set forth in Paragraph 59 above shall be bound by the terms of this Settlement Agreement, including the Release contained below in Section XIII, and any judgment entered thereon, regardless of whether the Settlement Class Member files a Claim Form or

receives any benefits from the Settlement.

64.     An Opt-Out Request that does not fully comply with the requirements set forth in Paragraph 59 above, or that is not timely submitted or postmarked, shall be invalid and the person submitting such request shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Release contained herein, and any judgment entered thereon.  The Settlement Administrator will notify the Settlement Class Member.

65.     Within ten (10) days after the Opt-Out Deadline, the Settlement Administrator shall furnish to Class Counsel and to Wawa's Counsel a complete list of all timely and valid Opt-Out Requests (the "Opt-Out List").

66.     The Opt-Out List shall be filed with the Court in connection with Plaintiffs' motion for Final Approval of the Settlement and shall be referenced in the Final Judgment.

VII.    OBJECTIONS TO THE SETTLEMENT

67.     Any Settlement Class Member who wishes to object to the proposed Settlement must submit a timely written and valid notice that complies with the requirements of this Agreement (an "Objection") by the Objection Deadline.

68.     To be deemed valid, the Objection must meet the following requirements:

    a.  Contain the objecting Settlement Class Member's full name, address, telephone number, and email address (if any);

    b.  Contain the objecting Settlement Class Member's signature;

    c.  Set forth information identifying the objector as a Settlement Class Member, including proof that the objector is within the definition of the Settlement Class;

    d.  In accordance with Fed. R. Civ. P. 23(e)(5)(A), the Objection must "state with specificity the grounds for the objection";

    e.  Set forth any legal support for the Objection that the objector believes is applicable;

    f.   Include copies of any documents the objector wishes to submit in support of the Objection;

    g.   In accordance with Fed. R. Civ. P. 23(e)(5)(A), the Objection "must state whether it applies only to the objector, to a specific subset of the class, or to the entire class";

    h.   Identify all counsel representing the objector (if any);

    i.   State whether the objector and/or the objector's counsel intend to appear at the Final Approval Hearing; and

    j.   Include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past five (5) years.

69.    A Settlement Class Member seeking to object must send the objection as described in paragraph 68 above to: (a) the Court; and (b) the Settlement Administrator.  The Settlement Administrator shall promptly provide copies of all objections received to Class Counsel and Counsel for Wawa.  If Counsel for Wawa or Class Counsel receive an objection that does not appear to have been sent to the other or the Settlement Administrator, said counsel shall send it to the other counsel and to the Settlement Administrator.

70.    In order to be timely, objections must be postmarked on or before the Objection Deadline.

71.    The Parties will have the same right to seek discovery from any objecting Settlement Class Member as they would if the objector was a party in the Consumer Track Action, including the right to take the objector's deposition.

72.    If a person in the Settlement Class who objects to the settlement also submits a request to opt out, either before or after the objection, the objection will be deemed withdrawn and void.  The Settlement Administrator will notify the person.

73.    Any Settlement Class Member who fails to comply in full with the requirements

H0108894.               22

for objecting set forth in this Settlement Agreement, the Notice, and any applicable orders of the

Court shall waive any rights he or she may have to raise any objection to the Settlement, shall

not be permitted to object to the Settlement at the Final Approval Hearing, shall be foreclosed

from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or

other means, and shall be bound by the Settlement Agreement and by all proceedings, orders,

and judgments in the Consumer Track Action.

74.    The exclusive means for any challenge to the Settlement shall be through the

objection provisions set forth in this section.  Without limiting the foregoing, any challenge to

the Settlement, the order preliminarily approving the Settlement, the order granting Final

Approval of the Settlement, or the Final Judgment to be entered upon Final Approval shall be

pursuant to appeal under the Federal Rules of Appellate Procedure and not through any other

form of challenge.

## VIII.   ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A.    Service Awards

75.    Class Counsel will petition the Court for a $1,000 service award ("Service

Award") for each of the thirteen Class Representatives named in the Consolidated Class Action

Complaint.  The Service Awards are intended to recognize the Class Representatives for their

time and efforts in the litigation and commitment on behalf of the Settlement Class.

76.    Class Counsel will also petition for a $1,000 Service Award for plaintiff Kasan

Laster, who was the proposed Class Representative in the consumer action relating to the Data

Security Incident brought against Wawa in the Superior Court of New Jersey Law Division –

Burlington County.  *See Laster v. Wawa, Inc.,* No. BUR-L-000037-20.  The *Laster* Action was

stayed pending the resolution of this federal case.  Upon entry of a Final Judgment in this case,

the parties in the *Laster* Action will jointly seek dismissal of that case with prejudice.

    **B.**    **Attorneys' Fees and Costs**

77.    Class Counsel will petition the Court for an award of attorneys' fees, litigation expenses, Service Awards, and Settlement Administration costs, not to exceed $3,200,000 in the aggregate (the Order granting such award or any portion thereof is herein referred to as the "Fees and Costs Award."). If the Court does not award the full $3,200,000 in attorneys' fees, costs, and service awards, any difference between $3,200,000 and the amount awarded (the "Difference") will be distributed equally among and added to the total value of each of the Tier One and Tier Two Wawa Gift Cards. By way of example only, if the Court awards $3,100,000 in total attorneys' fees, costs and service awards, then the Difference will be $100,000. If there are 100,000 Tier One and Tier Two gift cards to be distributed collectively, each such gift card will have $1.00 added to it (such that the Tier One Gift Cards will be $6.00 and the Tier Two Gift Cards will be $16.00).

78.    Wawa shall cooperate with Class Counsel, if and as necessary, in providing information Class Counsel may reasonably request from Wawa in connection with preparing the petition.

79.    If approved by the Court, the $3,200,000 amount will be paid by Wawa as directed by the Court and set forth in Section IX below.

80.    Class Counsel shall have the discretion to allocate any Court-approved attorneys' fees and expenses among themselves and the other Plaintiffs' firms that performed common benefit work in the Consumer Track.

81.    Wawa will also be responsible for all costs associated with its obligations to: (i) distribute Wawa Gift Cards to claimants as described in Paragraph 36; (ii) create signs and QR

codes and post them at all Wawa locations as described in Paragraph 55; (iii) issue a press

release as described in Paragraph 55; and (iv) cooperate with Class Counsel and the Settlement

Administrator in implementing the terms of this Agreement, including, but not limited to,

cooperating with regard to notice to Settlement Class Members in compliance with the Notice

Program.

82.     The Parties agree that Wawa will not in any event or circumstance be required to

pay any amounts to Plaintiffs or Class Counsel for Service Awards and attorneys' fees, costs,

and expenses in excess of the amounts identified above in Paragraphs 36 and 77.

83.     The Parties further agree that the amount(s) of the Service Awards, and of any

award of attorneys' fees, costs, or expenses, are intended to be considered by the Court

separately from the Court's consideration of the fairness, reasonableness, and adequacy of the

Settlement.  No order of the Court, or modification, reversal, or appeal of any order of the Court,

concerning the amount(s) of the service awards or any attorneys' fees, costs, or expenses,

ordered by the Court to be paid to Class Counsel or Plaintiffs, shall affect whether the Final

Judgment is final, or constitute grounds for cancellation or termination of the Settlement.

## IX.     PAYMENTS BY WAWA

84.     Within ten (10) business days of entry of an order by the Court granting

Preliminary Approval of the Settlement and in the manner directed by Plaintiffs' Counsel, Wawa

shall pay the sum of $73,885.00 (the "First Deposit") to the Settlement Administrator to cover

Settlement Administration costs as may be approved by the Court.

85.     Within twenty (20) days of the Effective Date or twenty (20) days of the Fees and

Costs Award, whichever is later, Wawa shall wire-transfer the difference between the First

Deposit and the amount approved by the Fees and Costs Award, but in no event more than $3.2

25

million minus First Deposit (the "Final Fees and Costs Payment") to an account as directed by Interim Co-Lead Counsel.  The Second Deposit will be used to pay up to a total of $3,200,000 (inclusive of the $73,885.00 in the paragraph above) in Service Awards, attorneys' fees, costs, expenses and Settlement Administration costs as may be approved by the Court.

86.     Within twenty (20) business days of receiving the final report from the Settlement Administrator of valid Tier Three claims as described in Paragraph 50, Wawa will wire-transfer the total amount to be paid to Tier Three claimants to an account as directed by Interim Lead Counsel.  The funds will be distributed to the Settlement Administrator to valid Tier Three Claimants.

## X.     SETTLEMENT APPROVAL PROCESS

87.     As soon as practicable after execution of this Settlement Agreement, Plaintiffs shall file a motion requesting entry of a Preliminary Approval Order in the form attached as Exhibit "E" that:

a.  Preliminarily approves the Settlement;

b.  Preliminarily certifies the Settlement Class for settlement purposes only, pursuant to Paragraph 34;

c.  Appoints Class Counsel;

d.  Appoints Plaintiffs as the Class Representatives;

e.  Finds that the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant providing notice to Settlement Class Members;

f.  Appoints the Settlement Administrator in accordance with the provisions of Section IV and directs it to conduct Claims Administration services in accordance with the provisions of this Settlement Agreement;

g.  Approves and directs the Notice Program to inform Settlement Class Members of the Settlement;

h.  Approves the Opt-Out and Objection procedures as detailed in this Settlement

H0108894.                                26

Agreement;

i. Schedules a Final Approval Hearing at least 150 days after the Notice Date to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court; and

j. Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement.

88.   Within ten (10) days of the filing of the Motion for Preliminary Approval, or such earlier time as this Settlement Agreement is filed with the Court, Wawa shall provide notice to state Attorneys General or others as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

## XI.   FINAL APPROVAL HEARING AND FINAL JUDGMENT

89.   Plaintiffs shall request that a Final Approval Hearing be scheduled to consider the Settlement, which shall be at least 150 days from the Notice Issuance Date.

90.   Plaintiffs shall, following entry by the Court of an order granting Preliminary Approval of this Settlement and implementation of the Notice Program, file a motion for Final Approval of the Settlement seeking entry of an order granting Final Approval and entering Final Judgment in a form substantially similar to the form attached hereto as Exhibit "F".  The proposed order granting Final Approval and the Final Judgment shall:

a. Approve finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and direct its consummation according to its terms and conditions;

b. Determine that the Notice Program constituted, under the circumstances, the most effective and best practicable notice of this Settlement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all persons entitled to receive notice;

c. Confirm the appointment of Plaintiffs as Class Representatives and Class Counsel as Co-Lead Class Counsel;

H0108894.                               27

    d.   Direct that the Consumer Track Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

    e.   Order the Release by all Releasors of all Released Claims against all Released Parties;

    f.   Permanently enjoin all Releasors from pursuing any Released Claims against any Released Parties in any litigation or other forum;

    g.   Reserve to the United States District Court for the Eastern District of Pennsylvania exclusive jurisdiction over the Settlement, this Agreement, enforcement of Court orders relating to the Settlement and this Agreement, and the administration and consummation of this Settlement; and

    h.   Determine under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and direct that the final judgment of dismissal as to Wawa shall be entered.

## XII.  TERMINATION OF THIS SETTLEMENT AGREEMENT

91.    Each Party shall have the right (but not the obligation) to terminate this Settlement Agreement if: (a) the Court denies preliminary approval of the Settlement; (b) the Court denies Final Approval of the Settlement; (c) the Court denies entry of the Final Judgment or enters Final Judgment that differs materially from the Final Judgment contemplated by this Settlement Agreement; or (d) the Final Judgment does not become final and the Effective Date does not occur because a higher court reverses final approval by the Court.

92.    Wawa shall have the right (but not the obligation) to terminate this Settlement if the total number of Opt-Outs exceeds 2,000 members of the Settlement Class.  The date for purposes of calculating the occurrence of the condition permitting termination under this paragraph shall be ten (10) days after the Opt-Out Deadline or ten (10) days after any opt-outs are allowed by the Court or agreed upon by the parties even though they were submitted after the Opt-Out Deadline.

93.    If a Party elects to terminate this Settlement under this Section, that Party must

provide written notice to the other Party's counsel, by email within twenty (20) days of the occurrence of the condition(s) permitting termination or at any time when the condition(s) permitting termination continues to exist.

94.     Nothing shall prevent Plaintiffs or Wawa from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement.  In the event such appellate proceedings result, by order of the appellate court or by an order after remand or combination thereof, in the entry of an order(s) whereby the Settlement is approved in a manner substantially consistent with the substantive terms and intent of this Settlement Agreement, and dismissing all claims in the Consumer Track Action with prejudice, and otherwise meeting the substantive criteria of the Settlement Agreement for approval of the Settlement, such order shall be treated as a Final Approval Order.

95.     If the Settlement Agreement is terminated or disapproved, or if the Effective Date does not occur for any reason, then: (i) this Settlement Agreement and all orders entered in connection therewith shall be rendered null and void; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Consumer Track Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and (iii) all Parties shall be deemed to have reverted to their respective positions and status in the Consumer Track Action as of September 14, 2020 (the day before the settlement in principle was reached at the parties' mediation) and shall jointly request that a new case schedule be entered by the Court.

## XIII.  RELEASE

96.     Upon the Effective Date, each Releasor shall release, discharge, and covenant not

H0108894.                                        29

to sue Wawa, its past or present parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, and purchasers of each of the foregoing) ("Released Parties") from all claims, demands, judgments, actions, suits and/or causes of action, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising in any way from or in any way related to the facts, activities, or circumstances of the theft of payment card data from Wawa alleged in the Consolidated Class Action Complaint or arising from or related in any way to the theft of payment card data from Wawa in the Data Security Incident, up to the Effective Date of the Settlement Agreement (the "Release" or "Released Claims"). This Release does not bar claims by any Wawa employee, former Wawa employee or dependent thereof for ~~theft or~~ compromise of: (i) a ~~social security~~Social Security number; (ii) a bank account number used for payroll direct deposit; or (iii) any personal information (other than payment card information) submitted to Wawa by an employee or dependent in a capacity as an employee or dependent, rather than as a customer making a purchase.

97.    Each Releasor hereby expressly waives and releases, upon this Settlement Agreement becoming final, any and all provisions, rights, or benefits conferred by Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Each Releasor shall further be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Section 1542 of the

California Civil Code.  Each Named Plaintiff and Settlement Class Member may hereafter discover facts other than or different from those that it, he, or she knows or believes to be true with respect to the Released Claims.  Nevertheless, each Named Plaintiff and Settlement Class Member hereby expressly waives and fully, finally, and forever settles and releases, upon this Settlement becoming final, the Released Claims, whether any Released Claim is known or unknown, suspected or unsuspected, contingent or non-contingent, concealed or hidden, and also forever waives and relinquishes any and all rights and benefits existing under any law or principle of law in any jurisdiction that would limit or restrict the effect or scope of the provisions of the Release set forth above without regard to the subsequent discovery or existence of other different facts.

98.     The Release set forth herein shall not release any claims, whether pending or not, whether known or unknown, for product liability, personal injury, breach of warranty, violation of the Uniform Commercial Code, civil rights, or any other claims whatsoever that were not or could not have been alleged in the Consumer Track Action that are not related to the subject matter of the Consumer Track Action.  Nor shall the Release constitute a release of claims arising out of any breach of the terms of this Settlement Agreement by Wawa.

99.     Upon the Effective Date, Wawa shall release Plaintiffs, Settlement Class Members, and their counsel from any claims relating to the institution, prosecution, or settlement of the Consumer Track Action, except for claims arising out of breach or enforcement of this Agreement.

IV.     **MISCELLANEOUS PROVISIONS**

100.    The Parties acknowledge that this Settlement Agreement is entered into and will be consummated as contemplated herein at a time of unprecedented uncertainty arising from the

global COVID-19 pandemic.  The pandemic has had a dramatic impact on Wawa and the Class

Members.  The Parties acknowledge that the future course of the pandemic is unknown and

could present challenges to the procedures contemplated by this Settlement Agreement.  In the

event an obligation or process contemplated by this Settlement Agreement cannot feasibly be

performed because of the pandemic and its related effects, the Parties shall discuss it as

contemplated below regarding dispute resolution, with both Wawa and the Consumer Plaintiffs

having the right to seek relief from the Court.

101.    The Parties agree that any dispute relating to this Settlement Agreement will be

presented to and discussed between the Parties and their counsel in the first instance.  If the

Parties and their counsel reach an impasse, the matter shall be presented to and discussed with

the Honorable Diane M. Welsh (Ret.) of JAMS.  In the event an impasse remains after such

discussions, any disputes will be resolved by the Court.

102.    The United States District Court for the Eastern District of Pennsylvania shall

retain jurisdiction over the implementation, enforcement, and performance of this Agreement,

and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or

regarding the applicability of this Agreement, subject to the dispute resolution provision set forth

in Paragraph 101.

103.    This Agreement shall be governed by and interpreted according to the substantive

laws of Pennsylvania, without regard to its choice of law or conflict of laws principles.

104.    Nothing in this Settlement Agreement shall be construed as an admission of

liability in any action or proceeding, of any kind whatsoever, civil, criminal, or otherwise, before

any court, administrative agency, regulatory body, or any other body or authority, present or

future, by Wawa or any Released Party.

H0108894.                            32

105.    This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and Wawa (and the other Released Parties) pertaining to the settlement of the Consumer Track Action against Wawa (and the other Released Parties) only, and supersedes any and all prior contemporaneous understandings of Plaintiffs and Wawa in connection herewith.  In entering into this Agreement, Plaintiffs and Wawa have not relied upon any representation or promise made by Plaintiffs or Wawa not contained in this Agreement.

106.    This Agreement may be modified or amended only by a writing executed by Plaintiffs and Wawa, subject to Court approval where required.

107.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasors and Released Parties.  Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Plaintiffs' Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by the Released Parties shall be binding upon all Released Parties.

108.    This Agreement may be executed in counterparts by Plaintiffs' Counsel and Wawa's Counsel, and an electronically-scanned (in either .pdf or .tiff format) signature will be considered an original signature for purposes of execution of this Agreement.

109.    To the extent that any time period set out in this Settlement Agreement is ambiguous, said ambiguity shall be resolved by applying the conventions contained in Rule 6 of the Federal Rules of Civil Procedure.

110.    The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

111.    Neither Wawa nor Plaintiffs, nor any of them, shall be considered to be the drafter

H0108894.

of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

112. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Wawa, and Released Parties any right or remedy under or by reason of this Agreement.

113. Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by electronic mail or overnight delivery to:

For the Settlement Class:

Sherrie R. Savett
Berger Montague, PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
ssavett@bm.net

Roberta D. Liebenberg
Fine, Kaplan and Black, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
rliebenberg@finekaplan.com

Benjamin F. Johns
Chimicles Schwartz Kriner & Donaldson-Smith LLP
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
bfj@chimicles.com

Linda P. Nussbaum
Nussbaum Law Group, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
lnussbaum@nussbaumpc.com

For Wawa:

**Formatted:** Widow/Orphan control, Keep with next

Gregory T. Parks
Ezra D. Church
Kristin M. Hadgis
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
gregory.parks@morganlewis.com
ezra.church@morganlewis.com
kristin.hadgis@moganlewis.com

with a copy to:

Wawa, Inc.
General Counsel
260 West Baltimore Pike
Wawa, PA 19063
Michael.Eckhardt@wawa.com

114.    Each of the undersigned signatories represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to

be executed, by their duly authorized attorneys.

**ACCEPTED AND AGREED:**

_____
Sherrie R. Savett
Berger Montague, PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
ssavett@bm.net

_____
Roberta D. Liebenberg
Fine, Kaplan and Black, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
rliebenberg@finekaplan.com

_____
Benjamin F. Johns
Chimicles Schwartz Kriner & Donaldson-Smith LLP
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
bfj@chimicles.com

_____
Linda P. Nussbaum
Nussbaum Law Group, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
lnussbaum@nussbaumpc.com

**COUNSEL FOR PLAINTIFFS AND THE SETTLEMENT CLASS**

H0108894.                              36

_____
Kenneth Brulinski


_____
Kelly Donnelly Bruno


_____
Amanda Garthwaite


_____
Marisa Graziano


_____
Tracey Lucas


_____
Marcus McDaniel


_____
Joseph Muller


_____
April Pierce

H0108894.                                        37

_____

Nicole Portnoy


_____

Nakia Rolling


_____

Eric Russell


_____

Michael Sussman


_____

Charmissha Tingle


**Formatted:** Indent: Left:  0.5", Line spacing:  single

_____

Kasan Laster


**PLAINTIFFS**


Wawa, Inc., by:

H0108894.                     38

_____

**DEFENDANT**


_____

Gregory T. Parks
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
gregory.parks@morganlewis.com


**COUNSEL FOR DEFENDANT WAWA, INC.**