IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE WAWA, INC.<br>DATA SECURITY LITIGATION | CIVIL ACTION<br><br>This document applies to the<br>Consumer and Employee Tracks.<br><br>No. 19-6019<br>and all related cases. |

## MEMORANDUM

PRATTER, J.                                                                              JULY ___, 2022

Three groups of plaintiffs have spent years in litigation over a data breach of Wawa's systems. One of those groups, the Consumer Track Plaintiffs, reached a settlement with Wawa and obtained the Court's approval. At the May 5, 2021 preliminary approval hearing and the January 26, 2022 final approval hearing, two sets of objectors appeared: Shawn and Karen McGlade, on behalf of the proposed class of Employee Track Plaintiffs, and Theodore Frank.

The Court granted final settlement approval to the Consumer Track Plaintiffs on April 20, 2022, and Mr. and Mrs. McGlade filed a notice of appeal the next day. The Consumer Track Plaintiffs now ask the Court to impose an appeal bond requirement of $50,000 to ensure that Mr. and Mrs. McGlade pay the costs of the appeal if they are unsuccessful. The Court will grant the request for an appeal bond, but only in the amount of $10,000 based on the supporting documentation provided.

### BACKGROUND

**I. The Consumer Track Settlement**

The Consumer Track Settlement Class is estimated to include 22 million class members, with 6 class members who opted out. The Settlement Agreement was negotiated with the

1

considerable assistance of an experienced mediator, Hon. Diane M. Welsh (Ret.) of JAMS. The Settlement Agreement provides for three tiers of relief based on the extent of fraudulent activity the customers experienced, as well as injunctive relief, such as enhancements to Wawa's payment processing procedures and terminals. The monetary relief ranges from a $5 gift card for those who spent at least some time monitoring their credit card after the data breach to cash payments of up to $500 for those who incurred costs resulting from the data breach.

The Consumer Track settlement was widely publicized after preliminary approval. Wawa posted notices of the settlement at its stores, which reportedly hosted more than 130,312,639 transactions during the notice period. Wawa also issued press releases with features in the *Philadelphia Inquirer*, *Philly Voice*, *NJ.com*, and local news stations. Wawa asserts that the press release received over 136 million views, which grew to 235 million media impressions from overall press coverage of the settlement. The settlement administrator (KCC) reported that the Settlement Website received visits from 258,902 users and the toll-free phone number received 1,367 calls.

Based on the final claim submission numbers, there are 563,955 Wawa consumers who are slated to receive payments from the Consumer Track settlement, for a total claims payout of nearly $3 million. The Settlement Agreement sets an Effective Date after the time to file an appeal expires or, if an appeal is filed, after the appeal concludes. *See* Doc. No. 301-1 ¶ 9. This provision contains a carve-out for appeals of attorneys' fees, costs, and service awards so that appeals specific to this portion of final approval do not delay the Effective Date, meaning any such appeals would not affect the timing of payouts to the individual consumers. *Id.*

## II. Pending Appeals

Mr. and Mrs. McGlade seek to represent the Employee Track Plaintiffs.[1] They object to the settlement because they do not believe that the Consumer Track Plaintiffs adequately represented the interests of *employees* who also used their credit cards at Wawa as *consumers*. Mr. and Mrs. McGlade did not timely file their objections to final approval, *see* Doc. No. 234 ¶ 18, but appeared at the final approval hearing with a PowerPoint presentation reiterating their arguments from the preliminary approval stage. They then filed their notice of appeal the day after the Court granted final approval.

Mr. Frank also filed a notice of appeal, after narrowing his settlement objections to only the award of attorneys' fees, costs, and service awards. Mr. Frank's appeal does not delay the Effective Date of the Settlement Agreement because his remaining objections are specific to the carve-out topics of attorneys' fees, costs, and service awards.

## III. Bond Request

The Consumer Track Plaintiffs ask the Court to require an appeal bond of $50,000 from Mr. and Mrs. McGlade for the costs of their appeal. They argue that Mr. and Mrs. McGlade's appeal will delay the disbursement of settlement payments to the 563,955 eligible Wawa consumers.[2] According to the Consumer Track Plaintiffs, the delay in settlement disbursement has already resulted in calls from class members inquiring why they have not yet received

---

[1] The Court denied the Employee Track Plaintiffs' Motion for Conditional Class Certification on May 24, 2021. Doc. No. 212. Mr. McGlade is no longer employed by Wawa and Mrs. McGlade has never been employed by Wawa. Doc. No. 323-1 ¶ 5.

[2] The Consumer Track Plaintiffs do not ask the Court for an appeal bond as to Mr. Frank's objections. Doc. No. 326. This is because, as explained above, appeals as to the portion of the settlement regarding attorneys' fees, costs, and service awards has a carve-out, meaning that any appeal of that portion of the settlement will not delay the Effective Date of the Settlement Agreement or the payout to the consumer plaintiffs. *Id.*

3

payments. *See* Moore Aff. ¶ 5.b, Doc. No. 319-4 (noting that the settlement phone line had already received 96 calls since the final approval order).

Mr. and Mrs. McGlade oppose the bond request. Mrs. McGlade submitted an affidavit in which she asserts that she and Mr. McGlade "cannot afford to post a $50,000 bond, or anything close to that amount of money." Doc. No. 323-1 ¶ 8. In their supplemental briefing, they argue that, although there is a bond market for civil bonds such that they would not need to post the bond amount themselves, the requirement to post collateral in order to secure such a bond renders an appeal bond in *any* amount "too expensive and unaffordable" for them. Doc. No. 333, at 2.

The Court held a hearing on the bond motion on June 30, 2022. The Court invited supplemental post-hearing briefing, which the parties have now submitted.

## LEGAL STANDARD

The imposition of an appeal bond and the amount of the bond are within the Court's discretion, and the parties so agree. *See* Fed. R. App. P. 7 & advisory committee's note to 1979 amendment. The purpose of an appeal bond under Federal Rule of Appellate Procedure 7 "is to ensure against nonpayment by the appellant of the costs of the appeal should the appeal prove unsuccessful." *Glaberson v. Comcast Corp.*, No. 03-cv-6604, 2015 WL 7887788, at *1 (E.D. Pa. Dec. 3, 2015). Courts analyzing a motion for an appeal bond consider these factors:

> (1) The risk that the appellant will not pay the costs if [the appellant] loses the appeal;
> (2) The appellant's financial ability to post the bond; and
> (3) Whether the bond requirement will effectively preclude pursuit of the appeal.

*Id.* at *6 (collecting cases); *see also* Newberg on Class Actions § 14:15.

Some courts in the Third Circuit also consider the merits or frivolity of the appeal, but others reject this consideration.[3]

---

[3] *See Glaberson*, 2015 WL 7887788, at *6 n.3 ("While the Third Circuit [Court of Appeals] has implied that the issue of whether an appeal is frivolous may be considered when deciding whether to require an

4

#### DISCUSSION

### I. An Appeal Bond is Appropriate

The Court finds that an appeal bond is appropriate for Mr. and Mrs. McGlade's appeal. As the Consumer Track Plaintiffs emphasize, Mrs. McGlade's own affidavit "raises serious concerns about whether the McGlades will pay costs if they lose their appeal." Doc. No. 325, at 5. Mr. and Mrs. McGlade have not argued that they can pay the appeal costs and certainly have not provided any support for this factor.

Rather, Mr. and Mrs. McGlade represent that that *any* bond would effectively preclude their appeal. But, at the hearing on this issue, counsel for Mr. and Mrs. McGlade conceded that they had not even looked into how such a bond would or could be financed. This seriously calls into question the validity of Mr. and Mrs. McGlade's blanket assertion that any bond requirement would be overly burdensome. *See Rougvie v. Ascena Retail Grp., Inc.*, No. 15-cv-724, 2016 WL 6069968, at *4 (E.D. Pa. Oct. 14, 2016) (rejecting "bare assertion" that a bond would preclude pursuit of appeal); *In re CertainTeed Fiber Cement Siding Litig.*, No. mdl-2270, 2014 WL 2194513, at *2 (E.D. Pa. May 27, 2014) (finding an "unsupported assertion regarding [the appellants'] claimed inability to pay is not sufficient to dissuade [the court] from finding that an appeal bond is warranted").

Based on the Court's prompting, Mr. and Mrs. McGlade confirmed that a civil appeal bond can be obtained for a small premium, albeit, with a requirement that they post collateral. Also at

---

appeal bond, courts are split on the question."); *compare In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) ("To the extent that the plaintiffs move for a cost bond based on the alleged frivolousness of [an objector's] appeal, the Court will deny the plaintiffs' motion. Although the Court has already held in its final order that [this objector's] objections lack merit, it finds that the Court of Appeals is the best forum to litigate the merits of the appeal and to account for any frivolity that harms the plaintiffs."), *with Stevens v. Westmoreland Equity Fund*, No. 18-cv-692, 2019 WL 8685841, at *1 (E.D. Pa. Feb. 13, 2019) ("The Third Circuit has also endorsed the consideration of whether the appellant's case is meritless.").

5

the Court's prompting, Mr. and Mrs. McGlade provided a joint tax return for *in camera* review. This tax return reflects the McGlades' modest income, but does not suggest dire financial circumstances. Mr. and Mrs. McGlade have not represented that they have any outstanding liabilities that would render them unable "to afford a bond in *some* amount." *In re New Jersey Tax Sales Certificates Antitrust Litig.*, No. 12-cv-1893, 2017 WL 2831167, at *2 (D.N.J. June 30, 2017) (emphasis in original), *aff'd*, 750 F. App'x 73 (3d Cir. 2018).

Mr. and Mrs. McGlade also argue that the bond motion is unfairly directed at them and not Mr. Frank. By their logic, the bond request is intended to deter Mr. and Mrs. McGlade from pursuing this appeal (but not Mr. Frank). However, the Settlement Agreement explicitly provides that appeals of fee and cost awards, like Mr. Frank's appeal, do not delay the settlement disbursement to the consumers, while the McGlades' appeal does. Hence the distinction by the Consumer Track Plaintiffs on this point. The Court agrees that the exclusion of Mr. Frank from the appeal bond request is reasonable.

Balancing the risk of nonpayment with considerations of the McGlades' ability to post the bond and whether a bond would effectively preclude appeal, the Court finds that a bond is warranted. Mr. and Mrs. McGlade have filed an appeal that delays payments to over 500,000 people and they have, by their own filings, called into serious question their ability to pay the costs of such an appeal. *See In re New Jersey Tax Sales Certificates Antitrust Litig.*, 2017 WL 2831167, at *2. Thus, the Court finds that an appeal bond is necessary and appropriate.[4]

---

[4] The Court does not consider the merits of the appeal because that is not necessary here. The Court notes, however, that considering the merits of the appeal would only increase the need for an appeal bond in this unique case involving parallel groups of plaintiffs at odds with each other. Mr. and Mrs. McGlade have stated that their goal in lodging their objections is to force the Consumer Track Plaintiffs "back to the bargaining table," to which they would like to be invited. Doc. No. 187, at 6. While they assert that they represent "the entire Class of Employee Track Plaintiffs," Doc. No. 187, at 7, they have not, in fact, obtained class certification and neither Mr. McGlade nor Mrs. McGlade is a current employee of Wawa. They also failed to timely file objections to final approval, instead arriving at the final approval hearing with a

## II. The Court Will Reduce the Amount of the Consumer Track Plaintiffs' Bond Request

Although a bond is appropriate, the Court will not require the full $50,000 requested. Instead, the Court finds that a $10,000 bond is appropriate.

"The question of whether to impose an appeal bond is distinct from the issue of what costs the bond can and should cover." *In re Certainteed*, 2014 WL 2194513, at *2 (internal quotation marks omitted). "A district court may not impose a bond in an amount beyond what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal." *Id.* (internal quotation marks omitted).

In support of their request for a bond in the amount of $50,000, the Consumer Track Plaintiffs introduce only an affidavit from Jeff Moore, a project manager for the claims administrator, KCC. Mr. Moore estimates that the cost of administering the settlement pending appeal is approximately $8,000 annually and he includes a detailed breakdown of these costs. Moore Aff. ¶ 4, Doc. No. 319-4.

Although the Third Circuit Court of Appeals has not ruled conclusively on whether appeal bonds should include costs of continued administration of a settlement, the two nonprecedential Third Circuit Court of Appeals opinions to address this issue have both found that the district court properly included such costs in the bond amount. *See In re New Jersey Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 83–84 (3d Cir. 2018) ("[A]lthough we have not yet formally held that administrative expenses may be included in Rule 7 appeal bonds, we have previously permitted their inclusion."); *In re Nutella Mktg. & Sales Pracs. Litig.*, 589 F. App'x 53, 57, 60 (3d

---

PowerPoint presentation that raised scattershot unsupported arguments. *See, e.g.*, Jan. 26, 2022 H'rng Tr. at 85:1–86:4, Doc. No. 302 (conceding that their only support for an inflammatory notice-related accusation is an allegation from their own complaint). To the extent other courts have considered the importance of deterring meritless appeals, *see, e.g., Roughvie*, 2016 WL 6069968, at *6, this factor would also weigh in favor of imposing an appeal bond here.

7

Cir. 2014).[5] In *Nutella*, the Third Circuit Court of Appeals affirmed the district court's inclusion of one year's worth of administrative expenses where the movants had requested two years' worth of such costs. *In re Nutella*, 589 F. App'x at 57. Other courts have similarly included estimates of administrative expenses for one year of delay pending appeal. *See, e.g., Glaberson*, 2015 WL 7887788, at *1 & n.1.

Here, the Consumer Track Plaintiffs do not specify how many years' worth of administrative expenses the appeal bond should include or specify whether their $50,000 request even corresponds to a certain number of years of such expenses. Therefore, the Court will require $8,000 for one year of estimated administrative expenses.

In addition, the Court includes a small amount for the costs associated with the reproduction costs required to defend the appeal.[6] Generally, litigants include an estimate of such costs. Here, however, the Consumer Track Plaintiffs have provided no such estimate of these expenses. Under the default reproduction rates set forth in Local Appellate Rule 39.3, such costs "may run into the thousands of dollars" for large cases. *In re Diet Drugs Prod. Liab. Litig.*, No. 99-cv-20593, 2000 WL 1665134, at *6 (E.D. Pa. Nov. 6, 2000). But, absent specific estimates of these additional costs from the Consumer Track Plaintiffs, the Court will include $2,000 as a rough, though somewhat educated, estimate of potential reproduction costs, for a total bond amount of

---

[5] District courts in the Third Circuit have reached different conclusions regarding whether settlement administration expenses pending appeal should be included in an appeal bond. *Compare In re CertainTeed*, 2014 WL 2194513, at *4 (excluding settlement administration expenses), *with Glaberson*, 2015 WL 7887788, at *3 (including settlement administration expenses), *and Rougvie*, 2016 WL 6069968, at *4–7 (noting that settlement administration expenses may be included, but finding that the movants did not provide sufficient support). The Court more closely follows the two nonprecedential opinions in *Nutella* and *In re New Jersey Sales Tax Certificates* from the Third Circuit Court of Appeals to address this issue. Additionally, the Court notes that the *In re CertainTeed* opinion excluding settlement administration expenses predates the *Nutella* and *In re New Jersey Sales Tax Certificates* opinions and interpreted case law regarding attorneys' fees in the absence of a Court of Appeals opinion. In this case, the Court has the benefit of the two subsequent opinions.

[6] The Consumer Track Plaintiffs do not seek attorneys' fees as part of the appeal bond and they are not at issue here.

8

$10,000. *See, e.g.*, *In re Nutella*, 589 F. App'x at 57 (affirming district court's inclusion of an additional $2,500 in bond amount for briefing expenses); *Rougvie*, 2016 WL 6069968, at *4 (setting a $1,235.52 bond for reproduction costs where movants failed to establish settlement administration expenses with sufficient specificity).

The Court also considers whether a bond amount of $10,000 would effectively preclude Mr. and Mrs. McGlade from pursuing their appeal. The parties submitted documentation from local surety companies with quotes of 1% premiums for civil appeal bonds. *See* Doc. No. 333-1, at 2; Doc. No. 334, at 3. Based on these premiums and the Court's *in camera* review of Mr. and Mrs. McGlade's 2021 tax return, the Court concludes that a bond amount of $10,000 is unlikely to preclude pursuit of the appeal. *In re Certainteed*, 2014 WL 2194513, at *2.[7] Therefore, a bond in the amount of $10,000 provides necessary security in the event the appeal is unsuccessful without realistically threatening to preclude the appeal.[8]

---

[7] Although Mr. and Mrs. McGlade object to posting any collateral to obtain such a bond, they do not explain where on the spectrum between $1 and $50,000 it would become burdensome for them to post collateral. Based on the Court's review of the only financial documentation provided (the McGlades' 2021 tax return), the Court finds that it is not unreasonable to impose a $10,000 bond even assuming a 120% (*i.e.*, $12,000) collateral requirement in exchange for a 1% annual premium. *See* Doc. No. 334, at 3.

[8] The Consumer Track Plaintiffs also argue that any bond amount should be doubled under Federal Rule of Appellate Procedure 38, in the event the appeal is found frivolous. But they "cite[] no binding legal authority suggesting that a district court may step into the shoes of an appellate court to decide whether an appeal is frivolous under Federal Rule of Appellate Procedure 38." *Rossi v. Proctor & Gamble Co.*, No. 11-cv-7238, 2014 WL 1050658, at *3 (D.N.J. Mar. 17, 2014). Absent such authority, the Court declines to double the bond amount.

CONCLUSION

For the foregoing reasons, the Court grants in part the Consumer Plaintiffs' request to require an appeal bond. Mr. and Mrs. McGlade must post a bond in the amount of $10,000. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE