**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE WAWA, INC. DATA SECURITY LITIGATION** | **Case No. 2:19-cv-06019** |
| | **The Honorable Gene E.K. Pratter** |
| *This Document Applies to the Financial Institutions Track* | |

**FINANCIAL INSTITUTION PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF UNOPPOSED MOTION FOR AN**
**ORDER AUTHORIZING NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.  INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND .................................................................................. 2

  A.  The Litigation.................................................................................................. 2

  B.  Settlement Negotiations ................................................................................. 5

III. THE PROPOSED SETTLEMENT ......................................................................... 7

  A.  The Proposed Settlement Class....................................................................... 8

  B.  Compensation to Class Members.................................................................... 8

  C.  Attorneys' Fees and Expenses, Class Representative Service Awards,
      and Costs of Settlement Administration ........................................................ 9

  D.  Notice Plan and Settlement Administration.................................................. 10

IV. ARGUMENT........................................................................................................ 13

  A.  The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the
      Rule 23(e)(2) Factors for Preliminary Approval. .......................................... 14

    1.  The Proposal was Negotiated at Arm's Length. .......................................... 15

    2.  The Relief Provided for the Class Is Adequate............................................ 16

    3.  The Settlement Treats Class Members Equitably Relative to Each Other. ................. 24

  B.  The Proposed Settlement Class Satisfies the Criteria of Rule 23(a).............. 25

    1.  The Class Is Sufficiently Numerous. .......................................................... 26

    2.  There Are Questions of Law or Fact Common to the Class. ........................ 26

    3.  The Class Representatives' Claims Are Typical of the Claims of the Class. ............... 27

    4.  The Class Representatives and FI Counsel Will Fairly and
        Adequately Represent the Class........................................................................ 28

    5.  Common Issues Predominate over any Individual Issues and a Class Action
        Is Superior to Other Available Methods of Adjudicating the Controversy. ................. 29

  C.  The Notice Plan Provides Class Members with the Best Notice Practicable
      Under the Circumstances. ................................................................................ 31

V.  FI PLAINTIFFS SHOULD BE APPOINTED AS CLASS REPRESENTATIVES
    AND FI COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL
    AND LIAISON COUNSEL ...................................................................................... 33

VI. PROPOSED SCHEDULE ...................................................................................... 35

VII. CONCLUSION........................................................................................................ 36

**TABLE OF AUTHORITIES**

**Cases**                                                                          **Page(s)**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................ 25, 28, 31

*Carlough v. Amchem Prods., Inc.*,
   158 F.R.D. 314 (E.D. Pa. 1993) ............................................................ 32

*Dittman v. UPMC*,
   196 A.3d 1036 (Pa. 2018) ..................................................................... 4

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) .................................................................. 13

*Fulton-Green v. Accolade, Inc.*,
   No. 18-cv-00274, 2019 WL 316722 (E.D. Pa. Jan. 23, 2019) ........................... passim

*Fulton-Green v. Accolade, Inc.*,
   No. 18-cv-00274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ....................... 19, 20

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008) ............................................................ 16, 26

*Geis v. Walgreen Co.*,
   No. 07-cv-4238 (KSH), 2010 WL 11570447 (D.N.J. Sept. 30, 2010).................... 21

*Girsh v. Jepson*,
   521 F.3d 153 (3d Cir. 1975)................................................................... 15, 24

*Hall v. Accolade, Inc.*,
   No. 2:17-cv-03423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) ..................... 13, 27

*Horizon Blue Cross Blue Shield of New Jersey*,
   No. 08-cv-6160 (KM), 2018 WL 10133574 (D.N.J. June 29, 2018)...................... 17

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................... 20

*In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*,
   269 F.R.D. 468 (E.D. Pa. 2010) ............................................................ 24

*In re CertainTeed Fiber Cement Siding Litig.*,
   303 F.R.D. 199 (E.D. Pa. 2014) ............................................................ 18, 34

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) .............................................................. 20

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*,
 55 F.3d 768 (3d Cir. 1995) ................................................................................ 24

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liab. Litig.*,
 No. 11-md-02284, 2013 WL 504857 (E.D. Pa. Feb. 12, 2013) ............................... 14

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*,
 296 F.R.D. 351 (E.D. Pa. 2013) .......................................................................... 28

*In re Nat'l Football League Players' Concussion Injury Litig.*,
 301 F.R.D. 191 (E.D. Pa. 2014) .......................................................................... 16

*In re Nat'l Football League Players Concussion Injury Litig.*,
 775 F.3d 570 (3d Cir. 2014) ................................................................................ 31

*In re Nat'l Football League Players Concussion Injury Litig.*,
 821 F.3d 410 (3d Cir. 2016) .......................................................................... 27, 30

*In re Pet Food Products Liability Litig.*,
 629 F.3d 333 (3d Cir. 2010) ................................................................................ 34

*In re Processed Egg Prods. Antitrust Litig.*,
 284 F.R.D. 249 (E.D. Pa. 2012) ................................................................ 16, 30, 31

*In re Processed Egg Prods. Antitrust Litig.*,
 No. 08-md-2002, 2014 WL 12614451 (E.D. Pa. Dec. 19, 2014) ............................. 14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
 148 F.3d 283 (3d Cir. 1998) ................................................................................ 33

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
 177 F.R.D. 216 (D.N.J. 1997) ............................................................................. 32

*In re Ravisent Techs., Inc. Sec. Litig.*,
 No. 00-cv-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ................................. 23

*In re Sonic Corp. Customer Data Breach Litig.*,
 No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .......................... 19

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
 535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................... 19

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ........................................................................ 13, 26, 30

*In re Wawa, Inc. Data Sec. Litig.*,
 No. 19-cv-6019, 2021 WL 1818494 (E.D. Pa. May 6, 2021) ................................ 2, 5

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-cv-6019, 2021 WL 3276148, n.4 (E.D. Pa. July 30, 2021)..........................................17

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
No. 16-md-02752, 2020 WL 4212811 (LHK) ..........................................................................20

*Mack Trucks, Inc. v. Int'l Union, UAW*,
No. 07-cv-03737, 2011 WL 1833108 (E.D. Pa. May 12, 2011)..............................................15

*Mehling v. New York Life Ins. Co.*,
246 F.R.D 467 (E.D. Pa. 2007)..............................................................................................15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)..........................................................................................................11, 31

*Myers v. Jani-King of Philadelphia, Inc.*,
No. CV 09-1738, 2019 WL 2077719 (E.D. Pa. May 10, 2019)..............................................14

*Nat'l Ass'n of the Deaf*,
No. 3:15-cv-30024 (KAR), 2020 WL 1495903 (D. Mass. Mar. 27, 2020) .............................12

*Reibstein v. Rite Aid Corp.*,
761 F. Supp. 2d 241 (E.D. Pa. 2011) .................................................................................23, 24

*Shapiro v. Alliance MMA, Inc.*, No. 17-cv-2583,
2018 WL 3158812 (D.N.J. June 28, 2018) .........................................................................33, 34

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)...............................................................................................24, 31

*Swinton v. SquareTrade, Inc.*,
No. 18-cv-00144, 2019 WL 617791 (S.D. Iowa Feb. 14, 2019)............................................25

*Tumpa v. IOC-PA, LLC*,
No. 3:18-cv-112, 2021 WL 62144 (W.D. Pa. Jan. 7, 2021)...................................................23

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ..............................................................................................................29

*Vinh Du v. Blackford*,
No. 17-cv-194, 2018 WL 6604484 (D. Del. Dec. 17, 2018)............................................15, 22

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..............................................................................................................26

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
726 F.2d 956 (3d Cir. 1983)....................................................................................................24

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ passim

**Other Authorities**

2 McLaughlin on Class Actions § 6:17 (10th ed. 2013) ............................................. 32

I.    **INTRODUCTION**

Financial Institution Plaintiffs Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union ("FI Plaintiffs") initiated the financial institution track actions against Defendant Wawa, Inc. ("Wawa" or "Defendant") (collectively the "Parties"), beginning in January 2020, shortly after the company announced a data beach had compromised its payment card environment (the "Data Security Incident"), exposing more than 30 million payment cards. *See* Financial Institution Plaintiffs' Consolidated Amended Class Action Complaint ("CACAC" or "Amended Complaint"), ECF No. 128, ¶ 3. After three years of litigation, the FI Plaintiffs now seek authorization of class notice of a settlement with Wawa that will resolve the action on behalf of themselves and other payment card issuers.

This settlement is the product of more than a year of hard-fought negotiations among the Parties supervised by the Honorable Diane M. Welsh, U.S.M.J. (Ret.), and reflects a comprehensive plan to compensate Settlement Class Members for the harms resulting from Wawa's Data Security Incident. As explained below and in the attached Settlement Agreement ("Settlement Agreement" or "S.A."), Wawa has committed a total of up to $28.5 million to compensate Settlement Class Members that submit valid claims, including: (1) up to $18.5 million to cover costs associated with cancelling and replacing payment cards in response to the Data Security Incident, (2) up to $8 million for losses resulting from payment card fraud, and (3) up to $2 million to be distributed to Settlement Class Members that attest to incurring other costs, in the alternative to filing another form of claim. In addition to this direct compensation to Settlement Class Members, Wawa will pay up to $9 million towards the costs of notice and administration, attorneys' fees and expense reimbursements, and service awards to the FI Plaintiffs for their service as class representatives.

The Settlement, which is tailored to address the harms financial institutions suffered, compares favorably with settlements in similar financial institution data breach litigations both in terms of the total settlement amount and amount of compensation made available for each kind of harm. *See* Part III.C, below. Significantly, the relief obtained for the Settlement Class in this settlement is also *in addition* to any compensation Class Members may receive as part of the card brand assessment process, a separate process Visa and Mastercard operate.

Given these factors, and those more fully discussed below, the Settlement meets Rule 23(e)'s requirements for the issuance of notice. Accordingly, the FI Plaintiffs respectfully request that the Court grant their motion so that the notice process can commence and Settlement Class Members can begin filing claims for compensation.

## II.    FACTUAL BACKGROUND

### A.  The Litigation

In March 2019, hackers breached Wawa's point-of-sale systems and installed malware on payment terminals and fuel dispensers, which enabled them to steal payment card data for the next nine months. *See In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 1818494, at *1 (E.D. Pa. May 6, 2021). This data was later posted for sale on the "dark web." *See id.* Wawa publicly acknowledged the data security incident on December 19, 2019. Beginning on December 20, 2019, numerous consumer and financial institution class actions were filed in this District and elsewhere as the result of the Data Security Incident. *See Rapak v. Wawa, Inc.*, Case No. 19-cv-6019 (E.D. Pa.) (first filed action). The resulting Data Security Incident involved transactions at most of Wawa's nearly 900 convenience stores (including fuel dispensers) over a nine-month period from March 4, 2019, until December 12, 2019 (the "Period of the Security

Incident"). Information compromised in the Data Security Incident included credit and debit card numbers, card expiration dates, and cardholder names.

On January 3, 2020, First Choice Federal Credit Union filed the first financial institution class action in the Western District of Pennsylvania.[1] On January 8, 2020, Chief Judge Juan Sanchez entered an order consolidating the cases filed by customers relating to the Data Security Incident. *See* ECF No. 9. On January 4, 2020, the Court entered an order that any and all cases related to Civil Action No. 19-6019, the Lead Case (including financial institution cases), filed before, on the same date of, or after the docketing of the Court's January 8th Consolidation Order, were to be consolidated pursuant to Local Rule 40.l(c). *See* ECF No. 14.

Plaintiff Inspire Federal Credit Union filed its complaint on January 29, 2020,[2] Plaintiff Greater Cincinnati Credit Union filed its complaint on February 7, 2020,[3] Greater Chautauqua Federal Credit Union filed its complaint on February 18, 2020,[4] and Plaintiff Insight Credit Union filed its complaint on February 19, 2020.[5]

The Court appointed Gary F. Lynch (Lynch Carpenter, LLP f/k/a/ Carlson Lynch, LLP) Christian Levis (Lowey Dannenberg P.C.) and Jeannine M. Kenney (Hausfeld LLP) Interim Co-Lead Counsel and Mindee J. Reuben (Lite DePalma Greenberg & Afanador, LLC) as Interim Liaison Counsel for the Financial Institution Track on June 12, 2020 (collectively referred to herein as "FI Counsel"). *See* ECF No. 120.

---

[1] *See First Choice Federal Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00011 (W.D. Pa.). First Choice Federal Credit Union later voluntarily dismissed the Western District of Pennsylvania action on January 15, 2020, in order to refile in the Eastern District of Pennsylvania, which it did later that same day. *See First Choice Federal Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00263 (E.D. Pa.).

[2] *See Inspire Federal Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00503 (E.D. Pa.).

[3] *See Greater Cincinnati Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00722 (E.D. Pa.).

[4] *See Greater Chautauqua Federal Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00895 (E.D. Pa.).

[5] *See Insight Credit Union v. Wawa, Inc.*, Case No. 2:20-cv-00930 (E.D. Pa.).

On July 13, 2020, FI Counsel filed their operative Consolidated Amended Class Action Complaint ("CACAC") on behalf of named FI Plaintiffs Greater Cincinnati Credit Union, Insight Credit Union, and Inspire Federal Credit Union. *See* ECF No. 128. The CACAC brought claims for negligence, negligence *per se*, and declaratory and injunctive relief on behalf of a proposed class of financial institutions that issue payment cards and that suffered, and continue to suffer, financial losses as a direct result of Wawa's failure to take adequate and reasonable measures to protect its point-of-sale ("POS") payment terminals, fuel dispensers, and payment processing servers. *See* CACAC ¶ 1. The CACAC further alleged that FI Plaintiffs have and will continue to incur significant damages as a result of the Data Security Incident including, *inter alia*, costs to cancel and reissue the payment cards compromised in the Data Security Incident, costs to refund fraudulent charges which occur on the compromised payment cards prior to their cancellation and reissuance, costs to investigate such fraudulent charges, costs to monitor the compromised card accounts, and loss of revenue (e.g., interest and transaction fees) resulting from decreased card usage. *See id.* ¶ 6.

Wawa filed a motion to dismiss on August 12, 2020 (ECF No. 135), FI Plaintiffs responded on September 2, 2020 (ECF No. 140), and Wawa replied on September 16, 2020 (ECF No. 146). The Court held oral argument on November 10, 2020. *See* ECF No. 157. On May 6, 2021, the Court issued its opinion sustaining FI Plaintiffs' negligence and declaratory and injunctive relief claims. *See* ECF Nos. 204–205. Significantly, the Court rejected Wawa's argument that the parties were bound by contract under the card brands' "Payment Card Rules," and the economic loss doctrine bars recovery in tort for negligence claims because no duty independent of contract existed. The Court held that Pennsylvania law, under the Pennsylvania Supreme Court decision in *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018), "imparts on companies

an independent duty to reasonably secure their payment systems." *In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 1818494, *5 (E.D. Pa. May 6, 2021). Furthermore, the Court found that, "Wawa's affirmative conduct, in collecting payment card information and storing it in an insecure manner, created a risk of foreseeable harm from third parties and led to a data breach that proximately caused the Institutions' alleged injuries." *Id.* at *7.

While Wawa's motion was pending, the Parties engaged in discovery relating to the facts underlying the data breach in accordance with the Court's case management orders. *E.g.*, ECF No. 219. This began with the production of documents relating to the forensic investigation conducted in the wake of the data breach, in addition to those given to law enforcement and regulatory agencies, including state attorneys general. FI Plaintiffs used these documents to inform their discovery requests and subsequent discussions with Wawa about the scope of discovery in the case, including appropriate systems, custodians, and search terms used for identifying relevant information. In light of the highly technical nature of the documents and information at issue, the Parties spent months negotiating thousands of search strings and eventually agreed to a search window encompassing more than four years of data and 16 custodians in Wawa's systems. Decl. of Gary F. Lynch ("Lynch Decl.") ¶ 5. FI Plaintiffs, as institutions, also spent considerable time and effort responding to Wawa's 51 document requests. This included the collection of hundreds of documents from FI Plaintiffs' ten custodians in accordance with the search term protocol agreed to by the Parties. *Id.*

### B. Settlement Negotiations

The parties began discussing their options for resolving this action in or around November 2021. Lynch Decl. ¶ 7. After meeting-and-conferring, the Parties agreed that attempting mediation would be productive and retained Judge Welsh to assist in this process. *Id.*

The Parties held their first mediation session on December 15, 2021. *Id*. Prior to meeting with Judge Welsh, the Parties exchanged substantive memoranda outlining their positions on the strengths and weaknesses of the claims and defenses in the actions based on their current understanding of the ongoing discovery and law associated with the case. *Id*. Unfortunately, the initial mediation was unsuccessful and the Parties remained at an impasse following a full day of arm's-length discussions. *Id*. However, given the progress made on certain issues, the Parties agreed that continuing their negotiations would be productive while they continued to litigate the case in parallel.

The Parties held their second mediation session with Judge Welsh on January 4, 2022. *Id*. ¶ 8. In advance of this meeting, each side worked through the holidays to submit supplemental memoranda addressing issues raised during their first meeting. *Id*. Although the Parties made significant progress during this session, they remained at an impasse on several key issues and ended after dedicating a full day to discussions without a deal.

In the ensuing months after the second mediation session, the Parties continued to engage with each other in good faith discussions, both with Judge Welsh's assistance and directly through email and telephone, in an effort to resolve the matter while simultaneously engaging in the discovery process and litigating the case. *Id*. This eventually led the parties to schedule a third mediation session with Judge Welsh for April 29, 2022. *Id*. ¶ 9. As with the prior sessions, the Parties both made additional submissions briefing their positions on the outstanding issues. *Id*. Despite making more progress in this third attempt, the Parties remained unable to reach agreement and ended their discussion after another full day of negotiations. *Id*.

The Parties reengaged in June 2022 and resumed their discussion regarding a potential resolution of the action. *Id.* ¶ 10.  These discussions continued for approximately two months

until the Parties were finally able to reach an agreement in principle to settle the matter in August 2022. *Id.* After finalizing a term sheet on August 26, 2022, the parties worked to craft a comprehensive settlement agreement, solicit proposals from settlement administrators, draft the proposed notices, claim form, and proposed orders, and negotiate terms for the contemplated escrow accounts, work which resulted in Wawa's final execution of the Settlement Agreement on March 3, 2023. *Id.*

The Parties' settlement discussions throughout the mediation and negotiation processes were hard-fought, conducted at arm's length and in good faith by counsel who were guided by both their experience in these specific types of cases and their extensive research of the facts and the law relating to this case. *Id.* ¶ 11.

## III.    THE PROPOSED SETTLEMENT

The Settlement provides for up to $28.5 million in direct monetary compensation for Settlement Class Members that file claims. The relief, as more fully described below, is comprised of: (i) up to $18.5 million in payments to financial institutions to cover card cancellation and replacement costs at rate of $5.00 per replaced card; (ii) up to $8 million in compensation for fraudulent charges incurred on compromised cards, with each financial institution eligible to receive up to $4,000; and (iii) an alternative option for Class Members to elect a fixed payment (based on a *pro rata* division of $2 million by the number of Class Members), if the financial institution attests that it incurred *some cost* in dealing with the Data Security Incident, but prefers not to submit a claim under the other two options. In exchange for the consideration set forth in the Settlement Agreement, all Class Members who do not exclude themselves from the Settlement release their breach-related claims against Wawa. S.A. §§ 8.1–8.7.

**A. The Proposed Settlement Class**

The proposed Settlement Class is defined as:

> All financial institutions in the United States (including its Territories and the District of Columbia) that issued payment cards (other than American Express) that either: (a) were Alerted On Payment Cards; or (b) were used at Wawa during the period of the incident March 4, 2019–December 12, 2019.[6]

S.A. § 3.1.

**B. Compensation to Class Members**

The compensation made available to Settlement Class Members is broken down in to three categories designed to address the specific types of harm resulting from the breach.

*Tier 1* compensation consists of $5.00 per replaced payment card to those financial institutions who attest, under penalty of perjury, to having cancelled and replaced the Impacted Cards in response to the Data Security Incident, if replaced between December 12, 2019, and May 1, 2020. Wawa has committed a minimum of $3 million and maximum of $18.5 million for Settlement Class Members that file claims in this tier, and the Settlement Administrator will make *pro rata* adjustments to the per-card compensation rate, upward or downward, if the total value of approved claims is below or above the minimum and maximum, respectively. S.A. § 4.6(a)(i).

*Tier 2* provides up to $4,000 per financial institution to compensate for fraudulent charges reflected in reasonable documentation submitted by the financial institution. The financial institution must provide a statement made under penalty of perjury that those costs

---

[6] The term "Alerted On Payment Card" is further defined in the Settlement Agreement. S.A. § 2.1. Excluded from the Settlement Class are: the judge of this Court presiding over this Litigation and its staff and the judges of any other court that preside, or have jurisdiction, over this Litigation or Settlement and their staff; directors, officers, and employees of Wawa; parents and subsidiaries of Wawa, and any entity in which Wawa has a controlling interest; and financial institutions that fall within the Settlement class definition that timely and validly request exclusion from the Settlement Class. S.A. § 3.1.

reflect unreimbursed out of pocket absorption or reimbursement to a card holder of fraudulent charges on the Impacted Cards when such fraudulent charges resulted from a transaction that was either: (1) card not present non-CVV submitted; or (2) non-EMV processed, if those charges occurred between December 12, 2019 and May 1, 2020. Payments under Tier 2 have a total cap of $8 million, with a downward *pro rata* adjustment to meet that cap if necessary. S.A. § 4.6(a)(ii).

*Tier 3* provides Class Members an option, in the alternative to Tiers 1 and 2, to make a claim without documentation. The claim value will be a fixed amount for all claiming Class Members, calculated by dividing $2 million by the final number of Class Members (to be confirmed during the notice period). S.A. § 4.6(a)(iii). The Class Member must submit a claim and attest that the Class Member incurred *some cost* in dealing with the Data Security Incident to receive the Tier 3 amount. *Id.*

The Tier 3 fixed value will also be used as a minimum claim value, such that if a Class Member submits a claim under Tier 1 and/or Tier 2, and the value of that claim does not exceed the Tier 3 fixed value per Class Member, then the Class Member will receive the Tier 3 (higher) claim value instead. S.A. § 4.6(b)–(c).

## C. Attorneys' Fees and Expenses, Class Representative Service Awards, and Costs of Settlement Administration

Separate and apart from the compensation to Class Members, Wawa has agreed to pay up to $9 million to cover attorneys' fees and expenses, Class Representative service awards, and the costs of settlement administration, subject to Court approval. S.A. § 4.7. This amount was negotiated with Judge Welsh's supervision after the Parties substantially reached agreements on the structural Class Member relief terms and other components of the settlement. Lynch Decl. ¶ 10. Plaintiffs will be applying for service awards of $10,000 for each of the three Class

Representatives named in the CACAC. The proposed Service Awards are intended to recognize the Class Representatives for their time, effort, and commitment on behalf of the Settlement Class, including in producing documents and information throughout the litigation and consulting regularly with FI Counsel on behalf of the Class. Lynch Decl. ¶¶ 5, 17.

FI Counsel also will apply to the Court for approval of reimbursement of expenses incurred by the Financial Institution Track Plaintiffs' counsel. As of December 31, 2022, those expenses totaled $79,877.24 and were incurred primarily for filing fees, expert fees, discovery-related costs such as document processing and storage, and FI Plaintiffs' share of the mediator's fees. Lynch Decl. ¶ 20.

At least 14 days before Class Members' deadline to file objections, FI Counsel will apply to the Court for reimbursement of their expenses and attorneys' fees to compensate them for their work in this case. Lynch Decl. ¶ 20. FI Counsel currently expect to request roughly $8.8 million in attorneys' fees and will provide updated and more detailed information regarding their expenses and lodestar when they file their motion. *Id.* This information will also be made available on the Settlement Website. *Id.*

### D. Notice Plan and Settlement Administration

The Parties have jointly developed a proposed notice program that comports with the requirements of both Fed. R. Civ. P. 23(c)(2) and 23(e)(1). S.A. §§ 5.1–5.6 & Exs. 1–3 (hereinafter referred to as "Notice Plan"). The Notice Plan aims to inform Class Members of the Settlement and ensure that they will be able to review the Long Form Notice, Settlement Agreement, and other materials, understand their rights and options – including their right to object to the Settlement or opt out of the Settlement Class – and file a claim before the Court makes a final decision on approving the Settlement and certifying the Settlement Class. *See*

Advisory Committee Notes on 2018 Amendment to Rule 23(c)(2) ("The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make claims.").

Prior to commencing the Notice Plan, FI Plaintiffs will conduct limited discovery with Visa, Mastercard, Discover, and any other necessary third parties to determine names and addresses for Class Members, and to confirm the ultimate number of Class Members. S.A. § 3.3. FI Counsel and the proposed Settlement Administrator, Analytics Consulting LLC, have significant prior experience obtaining this information from the card brands, and are confident the card brands will provide this information following preliminary approval. Lynch Decl. ¶ 14, Decl. of Richard Simmons ("Simmons Decl."), ¶ 1.

The Class Notice will be sent to inform Class Members of the Settlement's substantive terms as well as: (i) the nature of the action; (ii) the definition of the Class certified; (iii) the Class's claims, issues, or defenses; (iv) that a Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Class any Member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a Class judgment on members under Rule 23(c)(3).

The proposed Notice Plan and related forms of notice (*see* S.A. at §§ 5.1–5.6 & Exhibits 1–3) are "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The proposed Notice Plan contemplated in the Settlement Agreement involves, at a minimum, the following three components:

1.      Direct notice via U.S. First-Class mail to all financial institutions identified in discovery, with a subsequent reminder postcard;

2.      Published notice in banking or other financial institution publications/online publications; and

3.      Published notice on a dedicated settlement website.

S.A. § 5.4, Simmons Decl. ¶¶ 15–23.

The direct notice sent by U.S. First-Class mail will contain a link to the Settlement Website (www.WawaFinancialInstitutionSettlement.com), which will make available to Class Members the Settlement Agreement, Summary Notice, Long Form Class Notice, Proof of Claim and Release Form, and other information and materials relevant to the Settlement. S.A. § 5.4.

Published notice in banking or other financial institution publications/online publications will provide information on the Settlement to industry professionals at financial institutions who keep apprised on industry updates and developments. The dedicated website will serve as a one-stop source by which Class Members can access relevant documents relating to the proposed Settlement.[7] On the website, Class Members will be able to review and obtain: (i) a blank Proof of Claim and Release form for the Settlement; (ii) the Long Form and Summary Notice; (iii) the Settlement Agreement; (iv) key Court filings, (v) updates and developments about the case; and (vi) and online portal for Class Members to submit their claims. S.A. § 5.4, Simmons Decl.  ¶¶ 19, 22–23. The Settlement Administrator will also operate a toll-free number. *See* S.A. at Exs. 1 & 2, Simmons Decl. ¶ 21.

FI Counsel recommends that Analytics Consulting, LLC ("Analytics") be appointed to serve as the Settlement Administrator to oversee the Notice Plan to the Class and to administer the claims process pursuant to the terms of the Settlement Agreement. S.A. § 2.30; Lynch Decl. ¶

---

[7] *See Nat'l Ass'n of the Deaf*, No. 3:15-cv-30024 (KAR), 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) ("Online publication of the notice is particularly appropriate here because the class [. . .] consists of individuals who access online content and have at least some familiarity with the Internet.").

13.  Analytics was selected by FI Counsel (and approved by Wawa's counsel) after a competitive request for proposal process of other vendors and a thorough review of Analytics' capabilities and experience. Lynch Decl. ¶ 13. Analytics has performed administration services in several other payment card data breach actions brought by financial institutions and has worked directly with FI Counsel in those previous settlements. *Id.*

## IV.   <u>ARGUMENT</u>

Federal Rule of Civil Procedure 23(e), as amended in 2018, "explicitly discusses the requirements for class settlements." *Hall v. Accolade, Inc.*, No. 2:17-cv-03423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019) (Pratter, J.). First, the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The court then decides whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

In conducting their preliminary review, courts are cognizant that there is a "strong public policy . . . which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); *accord In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

At this "preliminary approval" stage, a district court may provisionally certify a class, "leaving the final certification decision for the subsequent fairness hearing." *Hall,* 2019 WL 3996621, at *2; *accord Fulton-Green v. Accolade, Inc*., No. 18-cv-00274, 2019 WL 316722, at

*1 (E.D. Pa. Jan. 23, 2019) (Pratter, J.); *Myers v. Jani-King of Philadelphia, Inc.*, No. CV 09-1738, 2019 WL 2077719, at *2 (E.D. Pa. May 10, 2019) (preliminary approval is not a commitment to grant final approval but "establishes an initial presumption of fairness.").

If the District Court determines that it will "likely be able to" approve the Settlement and certify the Settlement Class, it should direct notice in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The notice is usually sent under both Rule 23(e)(1) (regarding settlement) and Fed. R. Civ. P. 23(c)(2)(B) (regarding class certification). *See* 2018 Advisory Committee Notes on Rule 23(c); *Fulton-Green,* 2019 WL 316722, at *1, *5 (granting motion for preliminary approval of data breach settlement "because it is within the range of possible approval, the requirements of conditional class certification are met, and the notice plan is reasonably designed to notify class members of the settlement agreement"); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2014 WL 12614451, at *2-4 (E.D. Pa. Dec. 19, 2014) (Pratter, J.) (conditionally certifying class, preliminarily approving settlement, and directing notice to proposed class); *In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liab. Litig.*, No. 11-md-02284, 2013 WL 504857, at *1 (E.D. Pa. Feb. 12, 2013) (Pratter, J.) (same).

## A. The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) Factors for Preliminary Approval.

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. The factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed

award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[8]

In determining whether preliminary approval is warranted, the Court should consider whether the "proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mehling v. New York Life Ins. Co.*, 246 F.R.D 467, 472 (E.D. Pa. 2007) (citations omitted); *see also Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-cv-03737, 2011 WL 1833108, at *2 (E.D. Pa. May 12, 2011) (same). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy and reasonableness—will be satisfied. *See Mehling*, 246 F.R.D. at 472. The Settlement here, as explained below, exceeds the preliminary approval threshold. FI Plaintiffs, without opposition from Defendant, respectfully request that this Court preliminarily approve the proposed Settlement.

### 1. The Proposal was Negotiated at Arm's Length.

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this

---

[8] As the court in *Vinh Du v. Blackford*, No. 17-cv-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) explains, the Rule 23(3)(2) factors largely overlap with the nine factors the Third Circuit directed courts to consider when determining the fairness of a proposed settlement in *Girsh v. Jepson*. Those factors are: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Blackford*, 2018 WL 6604484, at *6 (*Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975)). These factors are likely to weigh in favor of the Settlement's approval.

litigation, assisted by a neutral and highly experienced mediator. *See* Part II.B above. These circumstances weigh in favor of approval. Whether a settlement arises from arm's-length negotiations is a key factor in assessing preliminary approval. *See, e.g., In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who served as a mediator); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations and highlighting the fact that the negotiations included "two full days of mediation").

The Parties participated in settlement discussions mediated by Judge Welsh during three separate full-day mediation sessions, and even then only achieved an agreement in principle after several months of additional negotiation. Lynch Decl. ¶¶ 7–10. FI Counsel who negotiated the Settlement are experienced and respected class action litigators with significant experience in data breach cases, and have been involved in resolving some of the largest data breach cases in history, including at least half a dozen previous payment card breach actions brought by financial institution plaintiffs. *Id.* at ¶¶ 12, 15–16. After reaching an agreement in principle, the Parties spent significant time drafting a term sheet, revising drafts of the full Settlement Agreement, proposed notices, and proposed orders, and selecting the Settlement Administrator and Escrow Agent. Lynch Decl. ¶ 10. At all times, these negotiations were at arm's length, courteous, professional, intense and hard-fought on all sides. *Id.* ¶ 11.

### 2. The Relief Provided for the Class Is Adequate.

This case and the proposed Settlement are the product of significant investigation of FI Plaintiffs' and Class Members' claims.[9] FI Counsel conducted extensive and lengthy interviews

---

[9] The fact that the Parties have not yet completed full discovery is not determinative. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (Pratter, J.) (preliminarily approving class action settlement

of FI Plaintiffs and other Class Members, reviewed the FI Plaintiffs' documentation and all documents that Wawa produced, consulted extensively with experts, and analyzed the applicable legal precedents and previous settlements in similar cases. Lynch Decl. ¶ 11.

While the Parties did not finish all discovery, the information uncovered and reviewed by FI Counsel, including informal discovery produced via the mediation process, provided the information needed for FI Counsel to objectively evaluate the strengths and weaknesses of Plaintiffs' and Settlement Class Members' claims. *Id.*

Based on the information obtained from this discovery, FI Counsel's independent investigation of the relevant facts and applicable law, consultation with banking and cybersecurity experts, and FI Counsel's broad experience with other payment card and data breach cases, FI Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. *Id.* ¶ 12.

### a. *The Settlement accounts for the costs, risks, and delay of trial and appeal.*

To determine whether a settlement provides adequate relief to the Class, the Court must evaluate "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), which involves considering the "complexity, expense, and likely duration of the litigation," were this case to proceed to trial, in relation to the FI Plaintiffs' "likelihood of success" on the merits. *Edwards v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-cv-6160 (KM), 2018 WL 10133574, at *3 (D.N.J. June 29, 2018). The likelihood of success on the merits necessarily

---

when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement"); *see also Fulton-Green,* 2019 WL 316722, at *3 (preliminarily approving class action settlement where "[e]ven though formal discovery has not started . . . the parties exchanged a substantial amount of information regarding the discrete issues in this case"); *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *9, n.4 (E.D. Pa. July 30, 2021) (it "is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important *informal* discovery.") (emphasis added).

implicates certain *Girsh* factors as well, including the concerns about the maturity of the substantive issue, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through the trial. Therefore, it is appropriate to address Rule 23(e)(2)(C)(i) in conjunction with the *Girsh* factors.

The immediate benefits that the Settlement provides stand in contrast to the risks, uncertainties, and delays of continued litigation. FI Counsel thoroughly assessed those contingencies in considering the terms of the Settlement. Lynch Decl. ¶ 11. If the litigation were to continue, FI Plaintiffs and Class Members would need to overcome a number of issues, including obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining certification through trial. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL84928, at *9 (M.D. Pa. Jan. 7, 2013) (preliminarily approving settlement where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources."). Although FI Counsel are confident in their ability to overcome these challenges, they create risk for the Class that must be weighed against value of any potential recovery.

The strength of the settlement here is demonstrated, in part, by comparison with monetary recoveries in other data breach settlements involving financial institutions. For example, in *Target* and *Home Depot*, the settlements provided financial institutions with $1.50 and $2.00 in compensation per compromised card, respectively, without documentation of loss,

and the option to obtain a percentage of documented losses if they chose to submit a claim. *See In re Target Customer Data Sec. Breach Litig.*, No. 0:14-md-02522 ("*Target*"), ECF No. 747-1, Ex. A at 4-5 (D. Minn. Apr. 11, 2016); *In re Home Depot Customer Data Sec. Breach Litig.*, No. 1:14-md-02583 ("*Home Depot*"), ECF No. 336-1 at 25 (N.D. Ga. Aug. 23, 2017). On dollar-per-card basis, this Settlement is at least comparable to—and potentially greater than—other financial institution data breach settlements that have been finally approved. *See also In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-0514, ECF No. 316 (N.D. Ga. Nov. 20, 2020) (approving a similar claims-made settlement).

Further distinguishing this case from other financial institution settlements, the relief obtained here is *in addition* to what Class Members can expect to receive as reimbursement as part of the card brand assessment process.

There are several risks in this case that could pose obstacles to achieving a favorable outcome for FI Plaintiffs and the Settlement Class. If not for the Settlement, FI Plaintiffs would be faced with the task of moving for class certification and/or opposing Wawa's motion for summary judgment, which could have resulted in dismissal of this case.  While FI Plaintiffs believe they would have prevailed, there are risks involved in data breach litigation—a relatively new area of law—including proving standing and causation that may continue even after the motion to dismiss phase. *See Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval); *see also In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-2807,

2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."). Given that the case law is still developing, there is uncertainty whether FI Plaintiffs would likely to prevail on the merits had the case gone to trial.

FI Plaintiffs likely would have incurred significant costs to prove their case through fact and expert discovery. *See, e.g.*, *Fulton-Green*, 2019 WL 4677954, at *8 (recognizing that continued litigation of a data breach case "would be a time consuming and expensive process that would delay relief for class members"); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-md-02752, 2020 WL 4212811 (LHK), at *8 (N.D. Cal. July 22, 2020) (approving settlement in data breach litigation after finding, among other things "[l]itigation costs would be quite high, given that the case involves complex technical issues and requires substantial expert testimony"), *appeal dismissed*, No. 20-cv-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (explaining that, absent settlement, "[m]ore experts will have to be hired at great expense"), *judgment entered*, No. MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003). Given the highly technical nature of the alleged misconduct, this Action would necessarily involve a battle of experts with respect to negligence, damages and other issues. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (explaining that the first *Girsh* factor favors approval of a settlement when the case involves "complex and protracted discovery, extensive trial preparation, and difficult legal and factual issues"); *see also In re Yahoo!*, 2020 WL 4212811, at *9, 13 (noting that prior to settlement of data breach class action, plaintiffs produced four different expert reports, and defendants deposed four experts and filed three *Daubert* motions to exclude plaintiffs' experts).

The costs and risks would only further increase as the Parties contest class certification, file motions *in limine*, and proceed through to trial and any related appeals. The proposed Settlement, if approved, exchanges the extensive costs and a lengthy litigation timeline with prompt financial recovery and certainty for the Class, finality as to the Parties, and the preservation of the Court's time and resources that can be redirected elsewhere.

The Settlement appropriately balances the strength of FI Plaintiffs' case against the risks and potential outcomes of continued litigation. *See Geis v. Walgreen Co.*, No. 07-cv-4238 (KSH), 2010 WL 11570447, at *12 (D.N.J. Sept. 30, 2010) (finding that several obstacles at trial meant that "the risks of continued litigation and the benefits of immediate settlement favor settlement"). Because of the substantial costs, risks and delay in recovery associated with continued litigation, the first, fourth, fifth, and sixth *Girsh* factors and Rule 23(e)(2)(C)(i) support approval of the Settlement.

### b. The settlement provides for an effective method of distributing relief to the Class, including through a simplified claims process.

The Settlement creates a straight-forward claims procedure for Class Members to claim under the three available Tiers. S.A. § 4.6 & Exhibit 3. It also provides for effective notice to Class Members using Direct U.S. Mail, and FI Counsel is confident that the addresses of nearly all Class Members will be ascertained by the time Notice is issued. S.A. § 5.4; Lynch Decl. ¶ 14, Simmons Decl. ¶¶ 14, 26. Further, this particular Class is comprised of financial institutions, most of which will have received similar notices and claim forms in connection with other recent payment card data breach settlements that utilized similar processes. *Id.* For this reason, Class Members are likely to have familiarity with their available options.

### c. The proposed attorneys' fee award is reasonable.

FI Counsel has devoted significant time and financial resources to the litigation despite the uncertainty of prevailing at class certification and on the merits, and of establishing damages. FI Counsel and Wawa negotiated the attorneys' fees and expense reimbursements with the supervision of Judge Welsh, after the parties had substantially negotiated the structural terms of Class Member relief and other components of the settlement. Lynch Decl. ¶ 10. The Parties agreed that any attorneys' fees awarded by the Court would be paid out of a separate $9 million fund that also will be used for litigation expenses, settlement administration fees, and service awards to the Class Representatives. For this reason, attorneys' fees will not diminish the settlement funds available for the Class. S.A. § 4.7. This factor favors preliminary approval of the Settlement. *See, e.g.*, *Blackford*, 2018 WL 6604484, at *6 (holding that the "attorney's fees sought are reasonable and do not impact the class[] relief"). FI Plaintiffs will file a motion and supporting materials supporting these requests at least 14 days in advance of the objection deadline and will post them on the settlement website so that they can be easily accessed by Class Members.

### d. Additional agreements required to be identified under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider any agreement among the parties outside of the settlement agreement. *See also* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."). Other than the Settlement Agreement itself, there are only three additional agreements involving the parties related to this Settlement. The first is a supplemental agreement regarding the threshold number of exclusions required to trigger Wawa's right to terminate the agreement under S.A. § 10.2. The other two agreements are between the Parties and the Escrow Agent, Huntington National Bank,

regarding the terms governing the Escrow Accounts. Copies of these three agreements will be submitted to the Court for *in camera* review. Lynch Decl. ¶ 19.

> ### e.  The remaining *Girsh* factors also support approval of the Settlement.

Given the present posture of the Action, it is too early to evaluate the second *Girsh* factor concerning the reaction of the proposed Settlement Class. If the Court grants preliminary approval of this Settlement, Class Notice will be issued to Settlement Class Members, advising them of their opportunities to voice their reaction to the Settlement. Notably, FI Plaintiffs, whose interests are aligned with the Settlement Class, support the Settlement and have been closely involved in its negotiation. Lynch Decl. ¶ 17.

The third *Girsh* factor asks whether sufficient discovery has been completed to provide the parties with a "clear view of the strengths and weaknesses of their cases." *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-cv-1014, 2005 WL 906361, at *8 (E.D. Pa. Apr. 18, 2005) (internal citations omitted). This does not require the parties to complete discovery. *See Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021) (approving a settlement where the "limited discovery" was sufficient to provide the parties "with an appreciation of the merits of the case"). *See also* footnote 9, supra. As described in Part IV.A.2 above, FI Counsel had more than sufficient information to assess the Settlement in light of the strengths of the case and determined that the Settlement is fair, reasonable and adequate.

The seventh *Girsh* factor, the ability to withstand a greater judgment, is relevant if "a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). This factor is not dispositive, and courts apply a flexible standard as to

how much weight it is given based on the unique circumstances of a given case.[10] When "the Court has not been presented with any reason to believe that [defendant] faces any financial instability . . . this [*Girsh*] factor is largely irrelevant for the purpose of resolving the instant motion." *Id.* at 254.

Finally, the Settlement should also be approved under the eighth and ninth *Girsh* factors because it is reasonable "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157. The reasonableness inquiry compares "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, [against] the amount of the proposed settlement." *In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)). Given that data breach litigation is an emerging area of law, the risk of continued litigation is significant, making the settlement here, which provides significant relief to the class, even more reasonable.

### 3. The Settlement Treats Class Members Equitably Relative to Each Other.

Finally, as discussed *supra,* the Settlement treats all Class Members equitably and provides all Class Members with the same convenient means to recover under the Settlement, using Tiers that correspond to the potential forms of damages suffered by the class. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d

---

[10] *See Reibstein*, 761 F. Supp. 2d at 254-55 ("[T]his factor does not necessarily militate against approval of the settlement. Some courts, for example, have accorded this factor little weight based on the unique circumstances of a given case. Others have concluded a settlement is fair under this *Girsh* factor because financial stability today does not ensure financial stability tomorrow.")

956, 964 (3d Cir. 1983)). The proposed Settlement's three-tiered categories of relief are available to all Class Members and thus satisfy this standard. *See, e.g., Swinton v. SquareTrade, Inc.*, No. 18-cv-00144, 2019 WL 617791, at *8 (S.D. Iowa Feb. 14, 2019) ("There is no requirement that all class members in a settlement be treated equally. And, indeed, class members are not treated equally here. Some are entitled to cash refunds and others only benefit from a coupon and injunctive relief.") (citation omitted).

Moreover, the Settlement treats all Class Members fairly and equally in relation to the strengths of their claims. For purposes of setting recovery amounts, the Settlement: (1) makes common-sense distinctions between Class Members who (1) cancelled and replaced the Impacted Cards in response to the Data Security Incident (*i.e.*, Tier 1) and those that did not (*i.e.*, Tier 3) but still incurred some cost in dealing with the Data Security Incident; and (2) fairly protects the interests of all parties in targeting cash compensation to Class Members with the greatest injuries. It should be approved as fair, reasonable, and adequate.

The *Girsh* factors and Rule 23(e)(2)(C)(i) support approval of the Settlement

## B. The Proposed Settlement Class Satisfies the Criteria of Rule 23(a).

Courts may certify settlement classes that satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22 (1997); *Fulton-Green*, 2019 WL 316722, at *2. The proposed Settlement Class satisfies all requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Further, as required by Rule 23(b)(3), "questions of law or fact common to class members predominate over any questions affecting only individual

members," and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Thus, the Settlement Class should be preliminarily certified, pending a final certification order after the Fairness Hearing.

### 1. The Class Is Sufficiently Numerous.

The Parties estimate that there were at least 30 million cards compromised by breach and that these cards were issued by approximately 5,000 financial institutions. S.A. § 1.2; Lynch Decl. ¶ 6. Thus, the Class easily satisfies the Rule 23(a)(1) requirement that the class be "so numerous that joinder of all members is impracticable." *See Fulton-Green*, 2019 WL 316722, at *3 (proposed class of 973 people "easily meet[s] the numerosity requirement"); *Gates*, 248 F.R.D. at 439-40 (class of more than 40 potential plaintiffs generally meets numerosity requirement). Accordingly, the Settlement Class satisfies numerosity.

### 2. There Are Questions of Law or Fact Common to the Class.

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *Warfarin*, 391 F.3d at 527-28. The commonality threshold is low and does not require an "identity of claims or facts among class members." *Gates*, 248 F.R.D. at 440. "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation and alterations omitted). Here, the facts relating to the Data Security Incident are the key issues in the case. There are multiple common questions, including:

      a.    whether Wawa owed a duty to the Financial Institution Plaintiffs and Settlement Class Members to protect payment card data;

      b.    whether the Data Security Incident was caused by specific negligent acts or omissions on the part of Wawa;

c.      whether the Data Security Incident could have been prevented or mitigated if Wawa had acted with reasonable care; and

d.      whether the acts of third-party criminals are, as a matter of law, intervening or superseding causes of Financial Institution Plaintiffs' damages.

The answers to these questions would drive the litigation forward and resolve issues as to all Class Members, either favorably or unfavorably. Accordingly, the Settlement Class satisfies commonality.

### 3.  The Class Representatives' Claims Are Typical of the Claims of the Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Hall*, 2019 WL 3996621, at *7. Typicality is satisfied where there is a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (hereinafter "*NFL Players II*") (internal citation omitted). Here, the claims of the Class Representatives are "not only similar to those of other class members but are virtually identical." *Fulton-Green*, 2019 WL 316722, at *4.

Here, the claims of FI Plaintiffs and Settlement Class Members arise from the same conduct. Specifically, FI Plaintiffs' and Settlement Class Members' claims arise from Wawa's alleged implementation of data security measures that were unreasonable and inadequate to protect FI Plaintiffs' and Settlement Class Members' payment card data. There are no unique facts or circumstances that would render FI Plaintiffs atypical from the Settlement Class.

Wawa's alleged conduct caused the same type of alleged injury to Settlement Class Members. Every Settlement Class Member suffered the same varieties and types of risks and losses as a result of the Data Security Incident, and the only notable variation among Settlement Class Members is the amount of damages each one suffered. Accordingly, the Settlement Class satisfies typicality.

### 4. The Class Representatives and FI Counsel Will Fairly and Adequately Represent the Class.

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class."

> Essentially, the inquiry into the adequacy of the representative parties examines whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*, 296 F.R.D. 351, 361 (E.D. Pa. 2013) (Pratter, J.) (citations and internal quotation marks omitted); *see also Amchem,* 521 U.S. at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

Here, the named FI Plaintiffs have been actively involved in the litigation of this case, and each has produced documents and reviewed and approved the proposed Settlement. Lynch Decl. ¶ 17. Their interests and those of the other Class Members are aligned: all are equally interested in proving the factual averments in the Amended Complaint, establishing Wawa's liability, and obtaining compensation from Wawa. As described below, the Class Representatives have retained knowledgeable and well-qualified counsel who have successfully prosecuted many class actions, including many actions arising from data breaches. FI Counsel have vigorously

28

prosecuted the action since even before their appointment and have devoted substantial effort and resources on behalf of the Class. *Id.*, *passim*. Accordingly, the Settlement Class satisfies adequacy.

> **5. Common Issues Predominate over any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy.**

In addition to satisfying the criteria under Rule 23(a), the proposed Settlement Class must meet one of the criteria under Rule 23(b). Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets both requirements.

### a. *Common issues predominate*

As the Supreme Court has explained:

> The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (citations and quotation marks omitted). The predominate legal and factual issues in this litigation concern the nature of the Data Security Incident and Wawa's degree of responsibility under Pennsylvania negligence law. The most significant remaining issues to be litigated or tried with respect to liability were whether: Wawa had a legal duty to FI Plaintiffs to protect payment card data; Wawa's breached a duty of reasonable care; and Wawa's acts or omissions were the proximate cause of FI Plaintiffs'

injuries. All of these issues could have been resolved on a class wide basis, with little to no emphasis on unique circumstances of any individual FI Plaintiff. *See, e.g., NFL Players II,* 821 F.3d at 427 (though plaintiffs may have unique injuries, "their negligence and fraud claims still depend on the same common questions regarding the [defendant's] conduct"); *Warfarin,* 391 F.3d at 528 (finding commonality where liability depended on the defendant's conduct, not on conduct of individual class members, and proof of liability "depends on evidence which is common to the class members"). Therefore, common issues predominate and the Settlement proposed by FI Plaintiffs ensure that individualized damage calculations do not pose a problem.

### b. *A class action is superior to other means of adjudication.*

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 264 (E.D. Pa. 2012). Rule 23(b)(3) suggests that courts consider the following non-exhaustive list of factors when making a superiority determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, all four considerations weigh in favor of certifying the Settlement Class. There is no indication that Class Members would be interested in litigating individually or that the litigation should proceed in a non-class forum. Indeed, all of the financial institution actions filed against Wawa in federal courts were styled as class actions, all of the federal actions have been consolidated in this Court. In addition, the cost and complexity of litigation would preclude the

vast majority of Class Members from filing suit individually.[11] The Settlement, in contrast, provides Class Members with an immediate monetary benefit.

### C. The Notice Plan Provides Class Members with the Best Notice Practicable Under the Circumstances.

If the parties show that the "court will likely be able to: (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal," then the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Pursuant to Rule 23(c)(2)(B), the notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

There are three aspects to notice requirements under Rule 23 and fundamental due process: (1) notice must be disseminated in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"; (2) the content must be of "such nature as reasonably to convey the required information"; and (3) the notice must "afford a reasonable time for those interested to make their appearance" and exercise their options to file a claim, object, or opt out of the class. *Mullane*, 339 U.S. at 314 (internal citations omitted); *see also In re Nat'l Football League Players Concussion Injury Litig.,* 775 F.3d 570, 583 (3d Cir. 2014) (principal purpose of notice provision of Rule 23(e)(1) is to "ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the

---

[11] Because the Parties request certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . [because] the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *accord Sullivan,* 667 F.3d at 322 n.56; *Processed Egg Prods.*, 284 F.R.D. at 264.

court approves or rejects the settlement") (quoting 2 McLaughlin on Class Actions § 6:17 (10th ed. 2013)). The Notice Plan achieves all of these objectives.

When determining what constitutes the best notice practicable under the circumstances, courts consider the individual facts in the case. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 232 (D.N.J. 1997) (quoting *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993)) ("In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable."); *see also* Fed. R. Civ. P. 23(c)(2) advisory committee's note to 2018 amendment ("[T]he amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court.").

Here, Settlement Class Members are financial institutions that vary in size and sophistication. Therefore, in consultation with their proposed Settlement Administrator, the Parties designed a multi-pronged Notice Plan to ensure adequate dissemination of notice that, as detailed above, includes: individualized direct mail; publication notice to media outlets; and a dedicated telephone line and settlement website.

For purposes of effectuating individualized direct mail notice, FI Counsel will work with the card brands and Analytics to ascertain or obtain the legal address of each financial institution that issued an Alerted on Payment Card. Lynch Decl. ¶ 14. Despite the likely comprehensive reach of the direct mail notice, the Settlement Administrator also will disseminate a summary notice through several digital publications. S.A. § 5.4, Simmons Decl. ¶ 19. The settlement website and toll-free telephone line will further support Settlement Class Members and facilitate resolving any questions Settlement Class Members may have. *See* Exs. 1–2 (listing website and phone number); Simmons Decl. ¶¶ 21–23. Courts routinely find that individual direct mail

notice, along with publication notice, is "ideal" and "the best possible" method of notice and fully satisfies the requirements of Rule 23(c) and due process. *See First Choice Fed. Credit Union v. Wendy's Co.*, No. 2:16-cv-00506, ECF No. 183 (W.D. Pa. February 26, 2019) (preliminarily approving a similar notice plan for financial institutions in a data breach settlement). The Parties' proposed Notice Plan is therefore the best notice practicable under the circumstances.

## V.    FI PLAINTIFFS SHOULD BE APPOINTED AS CLASS REPRESENTATIVES AND FI COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL AND LIAISON COUNSEL.

FI Plaintiffs have adequately represented the Class. From the start, they have been active participants in this litigation, engaged in activities including but not limited to: (i) keeping up to date on the status of the case as well as discussing case strategy with counsel, (ii) reviewing pleadings and briefs, (iii) searching for and responding to numerous document discovery requests, (iv) assisting Interim Co-Lead Class Counsel and Interim Liaison Counsel with their preparation for numerous rounds of mediation; and (v) providing input and feedback on the terms of the Settlement. Lynch Decl. ¶ 17. Thus, FI Plaintiffs request that the Court appoint Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union as Class Representatives.

When approving a settlement, the court must also inquire "whether Plaintiffs' counsel is qualified, experienced, and able to conduct the litigation." *Shapiro v. Alliance MMA, Inc.*, No. 17-cv-2583 (RBK/AMD), 2018 WL 3158812, at *4 (D.N.J. June 28, 2018) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998)). FI Counsel's extensive class action experience, combined with their extensive efforts in this litigation, provides direct evidence of FI Counsel's adequacy. Thus, FI Plaintiffs request that the

Court appoint the current Interim Co-Lead Class Counsel and Interim Liaison Counsel team as Class Counsel and Liaison Counsel respectively for the Settlement Class.

Rule 23(g) sets forth the criteria for evaluating the adequacy of plaintiffs' counsel:

i.      the work counsel has done in identifying or investigating potential claims in the action;

ii.     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

iii.    counsel's knowledge of the applicable law; and

iv.     the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court previously held that Interim Co-Lead Class Counsel and Interim Liaison Counsel met the necessary criteria for purposes of their respective appointments in June 2020. *See* ECF No. 120; *see also* ECF Nos. 79, 83, 105.

The duty of adequate representation also requires counsel to "competently, responsibly, and vigorously prosecute the suit." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. at 212. FI Plaintiffs satisfy this requirement when their attorneys demonstrate that they can "fairly and adequately protect the interests of the class." *Shapiro v. Alliance MMA, Inc.*, 2018 WL 3158812, at *4 (quoting *In re Pet Food Products Liability Litig.*, 629 F.3d 333, 341 (3d Cir. 2010)); *accord* Fed. R. Civ. P. 23(g).

FI Counsel has prosecuted this Action from its inception and negotiated the proposed Settlement. The firms representing FI Plaintiffs have vigorously represented the interests of FI Plaintiffs and Class Members at all times since their appointment. Each firm has decades of experience leading some of the most complex class actions, including data breach class actions on behalf of financial institutions. *See* Lynch Decl. ¶ 16, ECF Nos. 83-1, 83-3, 79-4, 79-5 (firm

resumes of Lynch Carpenter, LLP, Lowery Dannenberg P.C., Hausfeld LLP, and Lite DePalma Greenberg & Afanador, LLC). FI Plaintiffs request that the Court appoint the current Interim Co-Lead Class Counsel and Interim Liaison team as Class Counsel and Liaison Counsel respectively for the Settlement Class.

## VI.    **PROPOSED SCHEDULE**

FI Plaintiffs request that the Court establish dates for disseminating notice to the Settlement Class, deadlines for requests for filing claims, exclusion or objections, dates for filing papers relating to final settlement approval and attorneys' fees, and a date for setting the Final Approval Hearing. FI Plaintiffs propose the following schedule based on the Settlement Agreement and as set forth in the [Proposed] Preliminary Approval Order:

| Event | Date Calculation |
|---|---|
| Class Notice Conclusion Deadline<br><br>Last Day for Settlement Administrator to Effectuate Initial Mail and Publication Notice<br><br>Last Day for Establishment of Settlement Website | No Later Than Thirty (30) Days After Entry of the Preliminary Approval Order (the "Notice Date") |
| Deadline to File Settlement Administrator's Declaration Regarding Implementation of Notice Plan | No Later Than Ninety (90) Days After Entry of the Preliminary Approval Order |
| Deadline for Postmark/Email Deadline for Requests for Exclusion (i.e., Opt-Outs) (the "Exclusion Bar Date")<br><br>Deadline for Filing and Service Deadline for Objections (the "Objection Deadline") | No Later Than One Hundred (100) Days After Entry of the Preliminary Approval Order |
| Deadline to File Opt-Out List and Settlement Administrator Declaration | No Later Than Ten (10) Days After Exclusion Bar Date |
| Deadline to File Oppositions to Objections | No Later Than Ten (10) Days After the Objection Deadline |

| | |
|---|---|
| Deadline For Settlement Administrator to Send Reminder U.S. Mail Post Card Notice to Settlement Class Members | No Later Than Thirty (30) Days Prior to the Claim Filing Deadline |
| Claim Filing Deadline | No Later Than One Hundred Fifty (150) Days After Entry of the Preliminary Approval Order |
| Deadline to File Motion for Final Approval of the Settlement | No Later Than Fourteen (14) Days Prior to the Objection Deadline |
| Deadline to File Motion for Attorneys' Fees Reimbursement of Costs and Expenses, and Service Awards | No Later Than Fourteen (14) Days Prior to the Objection Deadline |
| Final Approval Hearing | No Earlier Than One Hundred and Twenty (120) Days After Entry of the Preliminary Approval Order |

## VII.  **CONCLUSION**

Based on the foregoing, FI Plaintiffs and FI Counsel respectfully request that the Court: (1) find it is "likely" to grant approval to the Settlement; (2) find it is "likely" to certify the proposed Settlement Class for settlement purposes, pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure; (3) appoint Analytics Consulting LLC as the Settlement Administrator; (4) approve the proposed Notice Plan and authorize the Parties to begin conducting it; (5) conditionally appoint Financial Institution Plaintiffs Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union as Class Representatives; (6) conditionally appoint Gary F. Lynch of Lynch Carpenter, LLP; Christian Levis of Lowey Dannenberg P.C.; and Jeannine M. Kenney of Hausfeld LLP as Class Counsel, and Mindee J. Reuben of Lite DePalma Greenberg & Afanador, LLC as Liaison Counsel; (7) schedule a Final Approval Hearing in accordance with the proposed schedule set forth above; and (8) and enter the proposed schedule. A [Proposed] Preliminary Approval Order is being filed herewith.

Dated: March 10, 2023                    Respectfully submitted,

                                         */s/ Gary F. Lynch*
                                         Gary F. Lynch (PA ID 56887)
                                         Jamisen A. Etzel
                                         Elizabeth Pollock Avery
                                         **LYNCH CARPENTER, LLP**
                                         1133 Penn Avenue, 5th Floor
                                         Pittsburgh, PA 15222
                                         Telephone: (412) 322-9243
                                         Email: gary@lcllp.com
                                         Email: jamisen@lcllp.com
                                         Email: Elizabeth@lcllp.com

                                         Christian Levis (*pro hac vice*)
                                         Amanda G. Fiorilla (*pro hac vice*)
                                         **LOWEY DANNENBERG, P.C.**
                                         44 South Broadway, Suite 1100
                                         White Plains, NY 10601
                                         Telephone: (914) 997-0500
                                         Email: clevis@lowey.com
                                         Email: afiorilla@lowey.com

                                         Anthony M. Christina (PA ID 322528)
                                         **LOWEY DANNENBERG, P.C.**
                                         One Tower Bridge
                                         100 Front Street, Suite 520
                                         West Conshohocken, PA 19428
                                         Telephone: (215) 399-4770
                                         Email: achristina@lowey.com

                                         Jeannine M. Kenney (PA ID 307635)
                                         **HAUSFELD LLP**
                                         325 Chestnut St #900
                                         Philadelphia, PA 19106
                                         Telephone: (215) 985-3270
                                         Email: jkenney@hausfeld.com

                                         *Interim Co-Lead Class Counsel for Financial Institution*
                                         *Plaintiffs*

                                         Mindee J. Reuben (PA ID 75308)
                                         **LITE DEPALMA GREENBERG & AFANADOR, LLC**
                                         1835 Market Street
                                         Suite 2700

Philadelphia, PA 19103
Telephone: (267) 314-7980
Email: mreuben@litedepalma.com

*Interim Liaison Counsel for Financial Institution Plaintiffs*

Amy E. Keller (*pro hac vice*)
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Email: akeller@dicellolevitt.com

Richard Golomb (PA ID 42845)
Kenneth J. Grunfeld (PA ID 84121)
**GOLOMB SPIRT GRUNFELD, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Email: rgolomb@golomblegal.com
Email: kgrunfeld@golomblegal.com

Karen H. Riebel (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Email: khriebel@locklaw.com

Bryan L. Bleichner (*pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Email: bbleichner@chestnutcambronne.com

Charles E. Schaffer (PA ID 76259)
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street – Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Email: cschaffer@lfsblaw.com

Richard L. Coffman (*pro hac vice*)
**THE COFFMAN LAW FIRM**
Edison Plaza

350 Pine Street, Suite 700
Beaumont, TX 77701
Telephone: (409) 833-7700
Email: rcoffman@coffmanlawfirm.com

Brian C. Gudmundson (*pro hac vice*)
Michael J. Laird (*pro hac vice*)
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Email: brian.gudmundson@zimmreed.com
Email: michael.laird@zimmreed.com

*Additional Counsel for Financial Institution Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Gary F. Lynch, hereby certify that on March 10, 2023, I filed and served through the Court's ECF system a true and correct copy of the foregoing document. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of this Court's electronic filing system.

/s/ Gary F. Lynch
Gary F. Lynch (PA ID 56887)