UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION | Case No. 2:19-cv-06019 <br><br> The Honorable Gene E.K. Pratter |
| *This Document Applies to the Financial Institutions Track* | |

**DECLARATION OF GARY F. LYNCH
IN SUPPORT OF FI PLAINTIFFS' UNOPPOSED MOTION FOR AN
ORDER AUTHORIZING NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

I, Gary F. Lynch, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am Interim Co-Lead Class Counsel for the Financial Institution Plaintiffs ("FI Plaintiffs") and the proposed Settlement Class in the above-captioned action against Defendant Wawa, Inc. ("Wawa"). I have been involved in all aspects of this litigation since inception. I submit this Declaration in support of FI Plaintiffs' Unopposed Motion for an Order Authorizing Notice of Proposed Class Settlement. The information set forth in this Declaration is based upon my personal knowledge and I could testify competently to such information if called upon to do so.

2.  I am an attorney licensed in Pennsylvania and New York, and have been admitted to practice before the Supreme Court of the United States and numerous federal appellate and district courts, including this Court. I have been practicing law for more than 33 years and represent plaintiffs in complex matters, including many national class actions. I am a founding member of

1

the law firm of Lynch Carpenter, LLP (and before that, Carlson Lynch, LLP). I was appointed Co-Lead Class Counsel by the Court on June 12, 2020 (ECF No. 120).[1]

3. A true and accurate copy of the proposed Settlement Agreement and its attachments is being filed with the motion for preliminary approval as **Exhibit A**.

4. Co-Lead and Liaison Counsel for FI Plaintiffs aggressively litigated this action from the outset. After we filed a thorough and detailed consolidated amended complaint (ECF No. 128), we opposed Wawa's motion to dismiss and obtained a favorable ruling on numerous counts. (ECF Nos. 204–205).

5. We continued pressing the action forward by initiating discovery, negotiating initial agreements, protocols, and orders with Wawa, and serving document requests. The parties engaged in highly detailed discussions over the course of eight months regarding the planned custodians and search strings Wawa would perform on its databases, negotiating over thousands of search strings and ultimately reaching agreements on a four-year search period, and 16 custodians, not long before we reached a settlement. We also served discovery requests on third parties, including the major card brands, and engaged in discussions with them regarding the production we would require if litigation continued. The Plaintiffs also responded to 51 document requests served by Wawa, producing hundreds of documents from ten custodians.

6. Based on our review of discovery obtained in this case, including information from the card brands regarding the number of Alerted-On Cards and their issuers, I am certain that the

---

[1] The attorneys appointed Co-Lead and Liaison Counsel submitted our resumes to this Court in support of our applications for appointment as co-lead counsel (ECF Nos. 83-1, 83-3, 79-4, 79-5), and we will provide updated resumes in conjunction with our motion for final approval of the settlement and for awards of attorneys' fees and expenses.

2

proposed settlement class includes thousands of financial institutions, and I estimate that the affected payment cards were issued by approximately 5,000 Class Members.

7. The proposed Settlement Agreement was reached between the parties after extensive arms-length negotiations, including three full-day mediation sessions with Hon. Diane M. Welsh, U.S.M.J. (Ret.) on December 15, 2021, January 4, 2022, and April 29, 2022. The parties first discussed exploring a potential resolution to this action in or around November 2021, and soon after that agreed to engage Judge Welsh. Prior to the first mediation, the parties exchanged, and provided to the mediator, comprehensive memoranda outlining the strengths and weaknesses of their claims and defenses in view of their understandings of the underlying legal issues and the factual record being developed in the discovery process. Although the first meeting was unsuccessful in reaching resolution, the parties agreed to formally continue their mediation.

8. Prior to the second meeting on January 4, 2022, the parties' counsel worked during the holiday season to submit supplemental memoranda addressing issues raised during the first session. Although the parties made further progress, they ended the second session still at an impasse with regard to several issues. The parties then worked on making progress in discovery while continuing to engage in settlement discussions, both directly and with Judge Welsh's involvement.

9. The parties' third formal mediation session with Judge Welsh occurred on April 29, 2022, and once again, the parties submitted pre-mediation memoranda. The third session did not result in an agreement, but the parties exchanged draft term sheets and made progress towards narrowing the scope of issues remaining to be resolved.

10. Direct negotiations resumed between the parties in June 2022 and culminated in the parties' execution of a term sheet outlining the key material features of the settlement, on August

26, 2022. The parties then worked to craft a comprehensive settlement agreement, solicit proposals from settlement administrators, draft the proposed notices, claim form, and proposed orders, and negotiate terms for the contemplated escrow accounts. The complete Settlement Agreement and its attachments were executed by the parties on March 3, 2023. The Parties' agreement that Wawa will pay $9 million towards notice and administration costs, attorneys' fees and expenses, and service awards to the Class Representatives was negotiated with Judge Welsh's oversight after the Parties substantially reached agreements on the structural Class Member relief terms and other components of the settlement.

11.  Throughout the litigation and these mediation and negotiation processes, the Parties' settlement discussions were hard-fought and conducted at arms' length and in good faith by counsel experienced in these specific types of cases, and who were guided by both their experience and their extensive research of the facts and the law relating to this case. Class Counsel also engaged in frequent communications and discussions with the Class Representatives, other financial institution Class Members, and experts knowledgeable in data security and the payment card industry to confirm the reasonableness and acceptability of the settlement terms. Throughout the life of this case, Class Counsel carefully reviewed a variety of information sources, including documents produced in discovery, expert consultations, public information, and precedential opinions and settlements in similar cases. The information uncovered through these processes allowed Class Counsel to objectively evaluate the strengths and weaknesses of the claims and assess the potential risks and upsides of continuing litigation versus reaching this settlement.

12.  Based on the efforts in this case and my experience litigating numerous complex class actions, including at least half a dozen previous payment card breach cases on behalf of financial institution plaintiffs, it is my opinion that the proposed settlement in this case is fair,

adequate, and reasonable so as to satisfy the requirements for preliminary approval pursuant to Fed. R. Civ. P. 23(e). The memorandum in support of FI Plaintiffs' motion details the terms of the agreement and the reasons why it satisfies the standards for preliminary approval and authorization of notice under Rule 23.

13. The parties propose the appointment of Analytics Consulting LLC ("Analytics") as Settlement Administrator. Analytics was selected by Class Counsel and approved by Wawa after a competitive request for proposal process of other vendors and a thorough review of Analytics' qualifications. I have worked with Analytics on several data breach settlements involving financial institution plaintiffs in the recent past, and I believe it is well-qualified to administer the notice program and settlement. Additional details regarding Analytics' qualifications are provided in the Declaration of Richard W. Simmons, also being filed with the motion.

14. Based on my prior experience in these types of cases and settlements, and working with Analytics on other recent data breach settlements involving financial institution plaintiffs, I believe that the identities and addresses of nearly all of the individual Settlement Class Members are either already known to Analytics or are readily ascertainable from the records of Visa, MasterCard, and the other Card Brands. I and my co-counsel have experience obtaining this information from the Card Brands, and we have confidence that all required information will be obtained from the Card Brands following preliminary approval. From these prior cases, I can also predict that the Class Members will likely be familiar with the claim process and claim form, having received similar documents in recent years.

15. The lawyers who were appointed by the Court to leadership positions on behalf of FI Plaintiffs are abundantly qualified and experienced to represent the class, including, specifically, Co-Lead Class Counsel Gary F. Lynch, Christian Levis, and Jeannine M. Kenney,

and Liaison Counsel Mindee J. Reuben. In this case, we, along with our respective law firms, Lynch Carpenter LLP, Lowey Dannenberg P.C., Hausfeld LLP, and Lite DePalma Greenberg & Afandor, LLC, and our additional co-counsel, have done substantial work in vigorously pursuing the interests of our clients and the class they represent throughout the litigation. We were assisted in this effort by several additional law firms representing the Plaintiffs which, together with our firms, have extensive experience litigating complex and class actions and have demonstrated particular success in litigating data security breach class actions on behalf of financial institutions.

16. Our deep backgrounds in these types of cases, our extensive factual investigation, our efficient management of the discovery process with Wawa and third parties, our hard-fought victory over the motion to dismiss, and our drafting of comprehensive mediation statements assessing the legal and factual strengths and weaknesses of the case, gave us adequate information on which to negotiate and evaluate this Settlement while armed with a strong understanding of the benefits, risks, and compromises involved. The group of lawyers and law firms representing Plaintiffs in this matter are national leaders in data breach law and litigation and have been involved in litigating and resolving some of the largest data breach cases to date. Had the action not settled, counsel for Plaintiffs were prepared to devote substantial additional time and effort pressing Plaintiffs' claims through class certification, trial and any subsequent appeal.

17. The Settlement Class Representatives have demonstrated their adequacy in selecting well-qualified Class Counsel, monitoring the litigation, cooperating with the discovery process and producing relevant documents, and participating closely in the negotiation of the settlement. Additionally, each Settlement Class Member actively communicated with Class Counsel for purposes of advising and consulting with regard to the consequences of the Data Breach and their resulting damages. These communications were crucial to drafting of detailed

factual allegations in the consolidated amended complaint and the development of an acceptable settlement proposal. I am aware of no conflicts of interests between the Settlement Class Representatives and the members of the proposed Settlement Class.

18. Based on my experience and expertise, I believe that the Settlement is fair, adequate, reasonable, an excellent result for the class, and represents a desirable resolution of this litigation. Generally speaking, in the still developing area of data breach litigation, there are many impediments to victory for a plaintiff suffering harm in a data breach, as well as significant impediments to class certification. The complex contractual relationships surrounding the payment card networks add additional layers of factual and legal complexity, as was demonstrated to the Court in the motion to dismiss briefing. Given these litigation risks, this Settlement is a good one for the Settlement Class Members and provides an opportunity for the recoupment of a significant percentage of the losses resulting from the Data Breach.

19. Other than the Settlement Agreement itself, there are only three additional agreements involving the parties related to this Settlement. The first is a supplemental agreement regarding the threshold number of exclusions required to trigger Wawa's right to terminate the agreement under Section 10.2. The other two agreements are between the parties and the Escrow Agent, Huntington Bank, regarding the terms governing the Escrow Accounts. Copies of these three agreements will be submitted to the Court for in-camera review.

20. As of December 31, 2022, FI Plaintiffs' counsel have incurred $79,877.24 in expenses attributable to this litigation, primarily in the forms of filing fees, expert fees, discovery-related costs such as document processing and storage, and FI Plaintiffs' share of the mediator's fees. Class Counsel anticipates requesting an attorney fee award of roughly $8.8 million for their work in this case. In connection with their motion for an award of attorneys' fees and expense

reimbursements (to be filed at least 14 days before the deadline for Class Members to file any objections), Class Counsel will submit updated and more detailed information regarding the expenses and lodestar incurred in this case. We will also upload these filings to the Settlement Website.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of March, in Pittsburgh, Pennsylvania.

<u>*/s/ Gary F. Lynch*</u>
Gary F. Lynch