<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF PENNSYLVANIA
 2

 3   ─────────────────────────────

     IN RE: WAWA, INC.                  CIVIL ACTION NUMBER:
 4   DATA SECURITY LITIGATION

                                        2:19-06019-GEKP
 5                                      And all related cases

 6   ─────────────────────────────

                                        STATUS CONFERENCE HEARING
 7

          JAMES A. BYRNE, U.S. COURTHOUSE
 8        601 Market Street
          Philadelphia, PA 19106
 9        September 14, 2023
          Commencing at 4:00 p.m.
10

     B E F O R E:           THE HONORABLE GENE E.K. PRATTER
11                          UNITED STATES DISTRICT JUDGE

12   A P P E A R A N C E S:

13        HAVILAND HUGHES, LLC
          BY:  DONALD E. HAVILAND, ESQUIRE
14        BY:  WILLIAM H. PLATT, ESQUIRE
          201 S. Maple Avenue, Suite 110
15        Ambler, PA 19002
          For the Plaintiffs McGlade
16

17        MORGAN, LEWIS & BOCKIUS
          BY:  GREGORY T. PARKS, ESQUIRE
18        BY:  KRISTIN M. HADGIS, ESQUIRE
          BY:  YUNICA JIANG, ESQUIRE
19        1701 Market Street
          Philadelphia, PA  19103
20        For the Defendant Wawa, Inc.

21

22

23             Maureen McHugh, Official Court Reporter
                  maureen_mchugh@paed.uscourts.gov
24

25      Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.
</pre>

1             THE COURTROOM DEPUTY:  All rise.

2             (In open court at 4:19 p.m.)

3             THE COURT:  Hello counsel, why don't you have a seat.

4    So we've got a status conference here, in the Wawa data breach

5    litigation, 19-6019.  Just for the record, let's get you all to

6    identify yourselves.

7             MR. PLATT:  Good afternoon, Your Honor, this is

8    William Platt for the plaintiff, McGlades.

9             MR. HAVILAND:  Good afternoon, Your Honor, Don

10   Haviland from Haviland Hughes also for McGlades.

11            THE COURT:  Good to see you both.

12            MR. HAVILAND:  Good to see you.

13            MR. PARKS:  Good afternoon, Your Honor, Gregory Parks

14   of Morgan, Lewis, and Bockius for the defendant, Wawa, Inc.

15            MS. HADGIS:  Good afternoon, Your Honor, Kristin

16   Hadgis for defendant, Wawa.

17            MS. JIANG:  Good afternoon, Your Honor, Yunica Jiang

18   also on behalf of Morgan Lewis for defendant, Wawa, Inc.

19            THE COURT:  Okay, well, it's full employment here

20   today.  What can I do for you all?

21            MR. HAVILAND:  Well, Your Honor, from the notice that

22   we got, I know the initial notice was in chambers, now we're in

23   the courtroom.  Happy to speak to the Court at any time we

24   asked for a conference.  We have filed an opposition to the

25   summary judgment motion.  I was pleased to see that the court

1   was able to release the under seal transcript because I had

2   forgotten that conversation a year ago in September, and I

3   remember saying to the Court, Boy, I don't want to have to do a

4   56(d) affidavit, I hope we're going to get to all that

5   discovery.  And Your Honor may remember we were talking about

6   the schedule, can we compress it, and it was pretty well laid

7   out there that we had framed our request and they went to the

8   issues of other data breaches.  In fact, we reigned the time in

9   to just the 26 days so clearly encompassed the two that caused

10  the 56(d) affidavit.  And we were told by Wawa, and you said

11  don't be cagey, you're lawyers, let's get this done.  We did

12  get some discovery in November.  It was around that time when

13  my partner who did the affidavit was more familiar with the

14  timeline, but we didn't have all the documents and that's

15  really the point I want to make.  And so as we discussed with

16  the Court, we noticed the depositions because we did take that

17  list that I said was 10 to 20, and we went down to nine.  So we

18  noticed those depositions, and then we spoke with Morgan Lewis

19  and they said, well, why don't you just wait until you get the

20  documents, which was never unreasonable.  When do we get the

21  documents and they said probably March.  Well, of course, that

22  went a month past Your Honor's deadline.

23          THE COURT:  Well, yeah, I mean, yeah.  I'm constantly

24  reminding people that the discovery-related deadlines are

25  really, I don't really care about them, speaking of things I do

1   care about.

2           Have a seat.

3           MR. HAVILAND:  Yes.

4           THE COURT:  I wanted to make sure that particularly

5   plaintiff's counsel was aware of the fact that since this is

6   the new year, September -- speaking of which, by the way, I

7   know this is the start of a holiday, Rash Hashanah, at least

8   starting tonight, so I'm not going to keep anybody that might

9   be interested in that.  But it's the start of the new year,

10  which means a new clerkship year, which means that I have new

11  law clerks.  And I wanted to introduce you to the new law

12  clerk, who, in fact, worked at Morgan Lewis before he came

13  here.  But never worked on this case.  So I'm just making that

14  disclosure.  I don't think it should be a problem, but if it

15  is, I'm sure you can let us all know at some point.  But I

16  don't believe anybody would be able to -- I don't think there

17  was ever any interaction.  And last time I checked I was told

18  that there are shockingly a thousand lawyers at ML&B.

19          No, no, no, 2,000 lawyers?

20          MR. PARKS:  Correct, Your Honor.

21          THE COURT:  How many employees all together?

22          MR. PARKS:  Over 5,000, Your Honor.

23          THE COURT:  Well, I don't know how Jaime keeps you

24  all --

25          MR. PARKS:  She doesn't sleep much, Your Honor.

```
 1          THE COURT:  She sounded pretty good.  She and I are
 2    programmed together on something else.  And the idea of having
 3    to keep track of 2,000 lawyers is just horrifying, but at least
 4    now there's one less.
 5          (Laughter.)
 6          THE COURT:  The thing is, Michael is here with me.
 7    But again, if there is an issue, you just let me know.  Okay?
 8    I didn't mean to interrupt.  So we've got this -- as far as I
 9    can tell, you want to file an amended complaint?
10          MR. HAVILAND:  Well, that's a separate issue, Judge,
11    but that's really dovetail to the discovery that we've got that
12    we want to complete, so just a bottom line.
13          THE COURT:  Well, does the discovery relate to the
14    idea of an amended complaint?
15          MR. PLATT:  Yes, Your Honor, it does.
16          THE COURT:  You may sit down during this conversation.
17          MR. PLATT:  Your Honor, the discovery identified that
18    there were more than one -- so this case has all been about a
19    single data breach.  The data breach of 2019 that they say
20    didn't affect our clients, the plaintiff employee class.  We
21    have discovered through the discovery process, from documents
22    that came after the discovery deadline in March, that there was
23    in fact -- there were two other malware outbreaks at Wawa in
24    2016.  Now our clients had their Social Security numbers
25    stolen.  It wasn't a credit card case.  It was a Social
```

1    Security number theft, which explains why there was Nordstom
2    credit cards taken out in their name, there was a Verizon
3    account opened in their name.  So we were never able to piece
4    that together, if it was just the 929 team data breach that
5    were skimming at gas pumps or credit card cases.  We've now
6    come to learn after the close of discovery that there were two
7    non-remediated malware outbreaks.  These are Wawa's words that
8    come from a gentleman by the name of Bruce who works for Wawa.
9    He acknowledges in the email, and I have the email with me,
10   that there were breaches.  There were two of these outbreaks in
11   2016.  That is what we want to add to our complaint because
12   given the posture of this case so far, it's always been about
13   2019.  Our complaint was all about 2019 because in 2019 when
14   the data breach occurred, Wawa communicated to its employees
15   that there was a data breach.  They never told about the 2016
16   breaches.  They never told about 2018 breach.  So my client
17   didn't even know about it when he explained the facts to us.
18   We had to read the paper.  The paper told us there was a 2019
19   breach.  Wawa admitted to a 2019 breach.  They never told
20   anybody about the 2016 breach as far as we can tell until we
21   received the email.  All we want to do is add the 2016 date.  I
22   don't want to add any claims.  I don't want to add any
23   additional parties.  I don't want to add any additional counts.
24   I don't even want to add any facts outside of that.
25            THE COURT:  So what's the point of adding 2016, if I

1    could be so ignorant?

2            MR. PLATT:  Because I suspect that our adversary is

3    going to argue that the 2016 data breach incidents are not

4    relevant to this case because they've already made that

5    argument.

6            THE COURT:  Again, why do you want to add them?

7            MR. PLATT:  So we don't know enough about the 2016

8    breaches.  We just know they existed.  So we need to know what

9    they were, was it involving HR, which we believe it was.  And

10   why didn't Wawa do anything about them or notify its employees

11   of the data breach as they are obligated to do.  They have a

12   duty to their employees to protect their PII.  They never told

13   anybody about it.  So they were aware of the fact that they

14   were susceptible to attack as early as 2016, maybe earlier, we

15   don't know.  But at least by 2016 they knew that they were

16   susceptible to attack.  So like I said, the complaint as it's

17   drafted right now, as it's filed in its current form, deals

18   only with a 2019 credit card.

19           THE COURT:  All I was asking was why do you want to

20   amend the complaint if you are saying that you don't know that

21   there's been any loss associated with 2016.  I mean your --

22           MR. PLATT:  Well, I guess it's because of this, Your

23   Honor --

24           THE COURT:  You can always use it in discovery.  Why

25   does it have to be -- or in your argument later if there were

1   to be a claim of ignorance or if somebody from Wawa gets on the

2   stand and says, oh, this is the first time it ever happened.

3   How could we possibly done anything to guard against it, bah,

4   bah, bah, bah, and then you get to do this.  Makes the

5   cross-examination.  But that's all putting the cart before the

6   horse.  My question is what was the motion to amend the

7   complaint?  Why do you need to amend?  What is the point of

8   amending to include facts?  I mean, everybody knows it's so

9   lovely that federal pleadings are supposed to be...

10          MR. PLATT:  So, Your Honor, the reason why we wanted

11   to amend is if you look at the chronology of what happened in

12   this case, from the point where they refused to bring these

13   witnesses for depositions.

14          THE COURT:  That's a different issue.

15          MR. PLATT:  It's a related issue for the -- the reason

16   why we filed the amendment is because if it's not in the

17   complaint, they are already not producing the witnesses.  If

18   they are not producing or if they are ordered to produce the

19   witnesses for deposition, they could certainly argue whether

20   there's merit to it -- I don't think there is -- that 2016 is

21   outside the scope of the complaint.  Now if the Court would

22   allow us to take these depositions, which we hope you will, I

23   want it to be clear to the defendants to Wawa, that we can ask

24   questions about this 2016 malware outbreak.  There are two

25   events in one month in the Summer of 2016.  I just want to be

1   able to ask questions about --

2          THE COURT:  Maybe what I should have done here is

3   start out with trying to figure out what's been going on in

4   discovery because it may be that that informs a little bit

5   about what's the idea behind the motion to amend the complaint.

6   So what I want to know from both of you all is there are three

7   related discovery issues, as far as I am concerned.  As I read

8   the motion for relief under 56(b), that sounds an awful lot

9   like saying you want discovery to be quote, reopened, and so

10  that's kind of what seems to be all about.  So I want to know

11  what's the employee responsiveness history for scheduling

12  depositions, number one.

13         Number two, what's the level of Wawa's cooperation or

14  not, of making its employees available for deposition?  Have

15  there been -- is there any stridency or difficulty with

16  objections or instructions not to answer, et cetera.

17         And third, why was there a summary judgment motion

18  filed when the case management order seems to me at least to be

19  fairly clear that the parties have to meet and confer on

20  summary judgment after certification has been decided?

21         MR. HAVILAND:  I'm happy to go to the last point, but

22  first, the employee response in this, Judge, is as follows:  In

23  September 2022, we told the Court we'd like to have the

24  documents and there was a commitment to have those documents by

25  November, and the Court said why don't you schedule around

1   Christmas, we did that.  We spoke to Wawa's counsel in January
2   about scheduling.  It was at that point that they indicated
3   that they were not complete, the documents, didn't have a sense
4   of what it was going to be other than it would be March.  So we
5   set dates, Judge, and we have a practice in our office that we
6   don't adjourn a date until we get a date.  Well, that was
7   honored in the breach here because we weren't getting new dates
8   because the documents didn't come until March 24th, a full
9   five weeks after the cut-off.  And then it became a problem of
10  just getting a commitment from Wawa's counsel to re-up those
11  dates and get those depositions.  And of course, we got the
12  summary judgment motion, which added another whole layer.
13  There were 15 declarations added, 14 of which were employees,
14  most of whom have never been disclosed.  So we then promptly
15  sent notices of those folks and it's at that point we were told
16  no.  The discovery cut-off was February 17th, you get no
17  depositions.  Not the December ones and not the April ones.  No
18  deps, we're done, we're going to summary judgment.  So we filed
19  56(d), Judge, because that's the only alternative.  We can't
20  file a motion to compel.  We're beyond the time period.  And I
21  don't know how we got there to be frank with you, Judge, I
22  honestly don't.  We thought we were talking in good faith about
23  getting to a point where we could schedule deps.  So Wawa was
24  cooperative to a point until they told us we're filing summary
25  judgment and that's the way it's going to be.  You won't get to

1    ask these folks questions.  Take it or leave it.  Why they

2    didn't meet and confer?  I don't know.  We were surprised as

3    anyone when we were briefing class to get a summary judgment

4    motion, and then given 14-days to respond, which is a really

5    short window of time when you are busy.  But that's the answer

6    to your three questions, Judge.

7              THE COURT:  Okay.

8              MR. PARKS:  Not surprisingly we have a very different

9    view of that.  We start, I think, in the same place, which is

10   in January we agreed that there was still documents to be

11   produced and so the agreement was we would produce those

12   documents, we would give them a date by which we were going to

13   produce the documents.  We did that.  We said we'll produce the

14   documents by March 24, and then after that date, we would then

15   have the depositions of Wawa people and the employee

16   plaintiffs.  We did that.  We met that deadline.  We produced

17   the documents by March 24.  Then on March 27, we sent

18   plaintiffs an email saying, okay, we've produced the documents,

19   I imagine it might take you a couple of weeks to read them and

20   figure out what you want to do.  Let us know when you want to

21   take the depositions.  And that was Exhibit 2 to our response

22   to the motion for relief at docket 385.3.  We said when would

23   you like to take the depositions?  We didn't hear back.  We

24   never, ever got a response to that email.  Never got an email

25   after that until the end of May saying anything about

1   depositions.  And then shortly after, about a week after, we're

2   putting together the joint status report for the Court that was

3   due on April 3rd, and the employee plaintiffs took the position

4   that the only deposition and the only discovery left to be done

5   was their discovery of Wawa.  They took the view that suddenly

6   they were not going to allow the depositions of the named

7   plaintiff employees and that's clearly stated in the April 3rd

8   letter that Your Honor received from the parties that that was

9   their position.  Then, later in April, we sent Mr. Haviland an

10  email asking him to complete some things for discovery that we

11  wanted related to that particular depositions.  And

12  Mr. Haviland wrote back, and in the email that is Exhibit 5 to

13  our response, Mr. Haviland took the very clear position that

14  discovery was over.  So it was not Wawa who said the discovery

15  was over first.  It was the plaintiffs who first reneged on the

16  deal that said there were going to be depositions of both

17  parties.  They said nope, you don't get depositions of our

18  plaintiffs.  So they reneged on the deal.  And then secondly

19  they said on an email from Mr. Haviland, April 26, 2023, at

20  6:53 a.m. in the morning he says, discovery is over, the Court

21  has not ruled on our motion to extend the discovery deadline

22  and so you, Wawa, must cease and desist from all -- used those

23  words -- cease and desist from discovery in this case.  And so

24  we did.  And we took the position then, okay, fine.  If you're

25  taking the position that discovery is over, we're ready to file

1  our motion for summary judgment, which we were.

2         In terms of what was in the case management order

3  about meeting and conferring, Your Honor made it very clear at

4  the September 2022 conference that that was a deadline past

5  which summary judgment could not be filed, but it was not

6  preventing us from filing anything.  And Your Honor very

7  clearly said to my colleagues, Mr. Church and Ms. Hadgis,

8  because I wasn't there at that particular conference, but Your

9  Honor very clearly said in September of 2022, "Nobody is

10  keeping you from filing anything as to a motion for summary

11  judgment.  I don't like setting dates for when summary

12  judgments are due because it's human nature, you might just

13  want to file it tomorrow.  If you got a legal issue that you

14  could tee up, I'm not going to handcuff or delay you on that."

15         And then Your Honor also said, "It remains to be seen

16  later if there has to be a date for a cut-off, after which

17  there could not be a summary judgement motion filed."  So that

18  date in CMO-10, Your Honor very clearly told us that September

19  of 2022 was a deadline beyond which it couldn't be filed, but

20  there was no reason why it couldn't be filed earlier, and we

21  did take Your Honor up on the offer to file it earlier.

22         THE COURT:  Fair enough.  Just so that nobody is

23  unnecessarily agitated on the summary judgment, it is my

24  practice, sadly, that whenever summary judgment is filed in any

25  care, whether it's because of a hard deadline or a soft

1   deadline or it's just been filed, when some case lives beyond
2   the time period of a filing of a motion, I always allow
3   supplemental material either by the movant or whatever.  If
4   there were to be a request from the plaintiffs for relief from
5   having to file a response at this moment to the summary
6   judgment motion, I would be inclined to grant it because I
7   would be inclined to at some point there will be an end to
8   discovery, whether it's an end that you would agree to or
9   because I just, I don't think you're having fun anymore.  Then
10  no one will be allowed to supplement to bring things to the
11  most current basis with summary judgement and the facts on the
12  record, and then there will be a deadline and due date for the
13  plaintiff to respond.  So don't get yourselves in a swivet
14  about the status of summary judgment.  With one exception and
15  that is, I don't know what the declarants have said or what the
16  affidavits might say that were submitted in support of the
17  motion.  One might think that they, that the declarants are the
18  type of people whose names should have been disclosed as part
19  of self-executing discovery as being knowledgeable about
20  something, in which a, the opponent then typically knows enough
21  to say, "I better depose these people."  And if they don't,
22  then that's on them, okay?  But if they were never previously
23  identified as knowledgeable, then it becomes a little tougher
24  to say that the plaintiff doesn't get some opportunity to
25  question these folks who now presumably know something because

1    otherwise they wouldn't be declarants on summary judgment.

2         MR. PARKS:  Your Honor, the people who were not

3    previously disclosed -- let me back up.  The fact witness, the

4    one witness who in our summary judgment motion said here's the

5    way our system works and here's the evidence, all of that, who

6    was the technical person.  That person was disclosed in our

7    self-executing disclosures.  Everybody else who put in

8    declarations were members of the class.  They were rank and

9    filed Wawa employees who work at stores and who said, "I wasn't

10   hurt by this data breach."  And so those are the people that,

11   you know, it's not surprising to the plaintiffs that those

12   people existed.  They are class members.  They are the people

13   they claim to represent.  So the notion that those people are

14   out there and exist is not a surprise, and they weren't really

15   coming forward with facts about the merits of the case or about

16   the data breach or what they call multiple breaches or anything

17   else.  They were just saying, "Look, I'm in a different

18   position than that person is," and they were perfectly aware

19   that those people existed and were out there.

20        THE COURT:  Well, if they are class members, then

21   what's the basis on which one might, from a defense standpoint,

22   object to them being deposed or meeting with counsel?

23        MR. PARKS:  No objection to them meeting with anybody

24   as to those people.  The depositions would just be that, again,

25   the plaintiffs' lawyers reneged on the deal to extend the

1   discovery deadline to do depositions and then took the position

2   that discovery was over.  And having taken the position that

3   discovery was over, it was our position that, okay, if

4   discovery is over, then it's over for everybody.  You can't

5   have one way discovery.

6           THE COURT:  As I may have expressed to you all in the

7   past, I'm a huge fan of the goosey gander rule.

8           MR. PARKS:  I agree.

9           THE COURT:  If it's good for the goose, it's good for

10  the gander.  So if there's more discovery, then there's more

11  discovery for everybody.

12          MR. HAVILAND:  I want to say Mr. Parks ended with

13  there was an effort to communicate to the Court before the

14  close of discovery that we wanted more time.  It was a joint

15  motion and that's well set out in the papers.

16          THE COURT:  Yes, but guess what?  If you both want

17  something and it's discovery, you do not have to come to the

18  Court.

19          MR. HAVILAND:  Understood.

20          THE COURT:  I don't know how many ways there are to

21  say that.

22          MR. HAVILAND:  We were proceeding on that view in

23  February, Judge.  Where it's five weeks later we get documents

24  and then weeks later we get the privilege log, which I actually

25  tried to print just the portion that relates to the Verizon

1  folks.  So they have something called a Verizon privilege, and
2  I had to go and check because I've been out of law school for a
3  while, I didn't know there was one.  But I do know that the
4  Middle District of Pennsylvania ruled in the Rutter's case that
5  if you have a forensic somebody and you're going to get them to
6  go find answers, then you'd better produce the report and the
7  backup to it.

8       Well, counsel for Wawa constantly told us the Verizon
9  report gives you all you need.  Well, we want to see the backup
10  to what the engagement, the communications, and all that the
11  case law gives us and we didn't get that.  So we didn't get off
12  the dime, if you will, on the documents when all this was given
13  to us in April.  And where we fell apart, I believe, is because
14  Wawa started saying, well, the McGlades have to produce stuff.
15  And let me just make a quick point.  They never asked for the
16  deposition of McGlades.  There was never a notice.  We expected
17  one but we didn't get one.  So I just want to point that out.
18  But they kept saying the McGlades haven't produced enough.  And
19  my partner, who would like to speak to it, but I said I'll
20  handle it.

21       The McGlades only have what the McGlades have.  They
22  want to do a forensic investigation of this couple and their
23  home commuter.  And we resisted that.  And that was the motion
24  to compel Your Honor ruled upon.  So I agree with one thing.
25  We fell apart in April because we weren't getting dates.  It's

1    not for us to propose dates, Judge.  We asked, we asked, we

2    asked.  And Wawa rightly said, especially as to the former

3    employees that we discussed with Your Honor last year, I can't

4    go out and subpoena Mr. Caramenico when Wawa says they

5    represent him and they will produce him.  So the obligation to

6    say okay, this executive is available here and now, will you

7    take them; was on them.  And here we are now because they filed

8    summary judgment and I, too, have the transcript where I said

9    Judge, I would hate to say 56(d) because they didn't put these

10   witnesses up and then I get 15 more declarations of folks who

11   are not under Rule 26 who are apparently not my clients that I

12   can speak to.  Well, I wish I had known that before Mr. Parks

13   said that because I would have called them up.  But they do

14   take positions about the merits in the case.  They say the

15   McGlades are wrong.  They say the position is stayed in the

16   case is wrong.  And yeah, they say they weren't harmed but they

17   didn't know about 2016 or did they.  They are the questions

18   that I would like to ask them in less than an hour.  And we

19   would like to take those depositions very serially over the

20   course of a couple of days so that we don't have the issue

21   of --

22              THE COURT:  Have you asked about setting them up?

23              MR. HAVILAND:  We have, Judge.

24              THE COURT:  And the answer was what?

25              MR. HAVILAND:  We are not getting any deposition

1    dates, period.  Period.

2          MR. PARKS:  To be clear, that was after the sauce rule

3    was violated.  That was after Mr. Haviland said to me,

4    discovery is over, no, we're not doing discovery with the court

5    having not ruled.  So that was the position that Mr. Haviland

6    took.  I was willing to continue to do discovery even though

7    Your Honor hadn't ruled on that yet, consistent with what Your

8    Honor said today, discovery deadlines, the parties can agree,

9    we're going to continue doing discovery.  Mr. Haviland flatly

10   refused, said we're not doing discovery anymore.  And as a

11   result, when he comes to me and asks, hey, can I depose these

12   employees, of course the answer is no because he's already

13   taken the position that discovery was over.

14         MR. HAVILAND:  I understand the sauce rule, the sauce

15   is if they wanted the McGlades, asked for the McGlades and I

16   would have given them the McGlades.  They never asked.  What

17   they did say is the McGlades have not done enough, we could not

18   come to an agreement on that and they filed a motion.  And so

19   as far as documents go, that's the status of the record, file a

20   motion.  And that only came after many mean confers between our

21   firms say, you can't get blood from the stone from this couple.

22   They've given you what they have on this.  They went out and

23   subpoenaed the vendors so they got -- but I can't give what

24   they don't have.  And there was no sauce on a refusal to give

25   deposition because they didn't ask.  I did ask many times

1   starting in December, can I have these nine executives?  Can I

2   have these declarants?  And it was no.  No date.  I'm willing

3   today, Judge, to give them a date for McGlade.  We'll go out

4   and call them.  I just want to get the depositions.  We've

5   gotten no depositions and we talked last September about, maybe

6   about 12.  And we got it to nine.  We weren't even within the

7   rule limit of 10.  But you know, December went to January, went

8   to February.

9          THE COURT:  The rule is guidance.

10          MR. HAVILAND:  And I understand Your Honor's comment.

11   I think you said it was your rule.  It's a guide rule.

12          THE COURT:  It's not my rule.  I didn't get it from

13   the start.  The minute you put numbers in there then you

14   develop a cottage industry and everybody is going to have a

15   fight on how you count to ten.  If you got fingers and toes how

16   do you count to ten.  I really find them sort of -- these rules

17   give the vibe to the notion that you all are professionals.

18          MR. HAVILAND:  So I think, Judge, getting to the

19   bottom line, as I'm sure you want to do on this late hour here,

20   we'd just like to get a discovery dep.  We're a year past the

21   time where we thought --

22          THE COURT:  Have you thought about this?  Have you

23   actually thought about writing on one piece of paper -- I'm

24   very fond of using one piece of paper -- what it is you want

25   and put it in a type sized, legible, no footnotes, no first --

1  one side of the paper, just normal-sized margins.  And then

2  what you both want and then you exchange it and then you say

3  well, okay, I'll give you one, three, and five but not two,

4  four, and seven, and here's why.  And then we'll go from there.

5  I can't really deal with this in a squishy sort of way.

6          MR. HAVILAND:  Sure.  Judge, docket 37417 in our

7  proposed order and it has five things in it.  And it says can

8  we get these documents?  Can we get the Verizon documents

9  without a privilege of Verizon?  Can we get the depositions

10  including the declarants?  1, 2, 3, 4, 5.  It goes to page two.

11          THE COURT:  Just to be fair does it say the declarants

12  in line 9 and 5 is really how many people?  How many

13  declarants?

14          MR. HAVILAND:  There's probably 12 of the 14 because

15  two have already been -- 11 or 12 declarants.

16          Judge, there are employees who filed a two-page

17  affidavit saying all the things that they knew but not the

18  things they didn't know.  That's a 20 to 30-minute deposition

19  to understand what they didn't know.  It's a form of affidavit

20  seems to be put together by counsel.  There's people that

21  didn't sign it right, there are people that didn't date it

22  right.  It doesn't even look like they understood it sometimes.

23          THE COURT:  Well then, by all means what you want to

24  do is bring them in so they can correct all of that.

25          MR. HAVILAND:  I just want to know who's showing up,

1  Judge.  If they are going to show up.  Because if this case

2  goes to trial, and it likely will if we don't go any further in

3  our discussions, it's going to have to be who's showing up.

4  And if you're going to bring class members who happen to be

5  employed by the defendant, I just want to know about it, that's

6  all.  I can cross-examine at trial, but I want to know if these

7  are the folks that are coming, then I'll probably want to take

8  their deposition before trial because they weren't in the 26th

9  disclosure.

10        THE COURT:  Well, they are part of your class, I

11  guess.

12        MR. HAVILAND:  Well, it's punitive class, Judge, they

13  haven't stipulated, but yeah, I guess that's right.

14        THE COURT:  I mean, they were part of your proposed

15  class.

16        MR. HAVILAND:  That's right.  And I'm happy to contact

17  them now that I know that I can, if they are not represented by

18  Wawa.

19        THE COURT:  Well, you might want to have a discussion

20  on that.

21        MR. HAVILAND:  I certainly will, Judge.

22        THE COURT:  Just so it doesn't turn into another

23  fight.

24        MR. HAVILAND:  Absolutely.

25        MR. PARKS:  Your Honor, I think the problem with the

1  list of things they want is it includes they want production of

2  privileged documents that we objected to producing.  As early

3  as November of 2020 we asserted that objection.  We gave

4  privileged logs in 2022 and again in early 2023, and the

5  plaintiffs' lawyers never did anything with that.  They never

6  met and conferred with us.  They never filed a motion to

7  compel.  They didn't do anything else.  I think it's too late

8  on the documents.  If we want to get somewhere on depositions,

9  I understand that, maybe that's a place we can go.  But I think

10  at this point we bent over backwards, did everything we could

11  in relation to production of documents.  We spent a lot of time

12  and money doing it, and then afterwards we find out in June, by

13  the way, they want these additional things when we believe we

14  finished our document production in March and really finished

15  most of it in November.

16        MR. PLATT:  Judge, at that hearing last year --

17        THE COURT:  I'm going to cut through all of this.  My

18  addition to you all for you to think about is that, as far as I

19  am concerned, you all should agree to reopen discovery as to

20  anything that cannot be connected to some previous disclosure

21  that is specific, okay?  If there was -- so if there was a

22  non-disclosure of identifying a witness as being knowledgeable

23  before sometime as the quote, close of discovery or the date

24  that we had originally, then you ought to reopen and allow that

25  deposition.  If a document is -- if there's a follow-up demand

1  for documents, but it's key to something that was already

2  disclosed by the defendant, then I don't quite understand why

3  that shouldn't have been requested long ago.  And why should

4  that be a renewed item?  So what I'm trying to --

5              MR. HAVILAND:  Judge, the concern I have with that is

6  Mr. Reuss, who my partner just spoke to, who is one of the

7  critical folks, has now filed two declarations.  The one in

8  support of summary judgment takes very strong positions about

9  whether or not there was a compromise.  The late-produced

10  documents that didn't come prior to the deposition schedule

11  that we had scheduled and we didn't get a date on --

12              THE COURT:  Well, that means that you can just, just

13  by your request.

14              MR. HAVILAND:  I'm just being clear that I don't --

15              THE COURT:  I am not going to spend the rest of this

16  afternoon talking about these things in a vacuum.  If

17  there's -- what I really want you to do is step back and say is

18  this particular dispute worth a candle?  By this dispute,

19  meaning this squabble about a particular item of discovery.  If

20  it is, great, but give me the chapter and verse as to why it

21  should have been asked for before or why it wasn't.  Whatever

22  your justification is, if it passes your personal laugh test,

23  then you can give it to me as your explanation to the discovery

24  issue.  But what I want you to do is step back, shorten your

25  list or expand your list, whatever, so that you're really down

1  to what you need because there's going to be a class

2  certification hearing here, and it's going to be sooner than

3  later.  As I said, don't get all hot and bothered about the

4  summary judgment because I'm going to handle that the way I

5  did.  But I think there's been -- I'm still not sure, except

6  for the notion of wanting to avoid unnecessary fights about

7  discovery.  I'm still not feeling a compulsion on amending the

8  complaint.  Although I do understand what you are saying about

9  if you were to ask a witness, was there ever any earlier data

10  breach at Wawa that you're aware of and the answer is, don't

11  answer that because nothing before 2000-and, you know, whatever

12  is pertinent, I get that.  That, I think, is a fair question on

13  the notion of is there something that Wawa could and should

14  have done to protect against what happened.  And a way of

15  making that argument is to show that Wawa had, you know, its IT

16  department was in a swivet about something a couple years

17  earlier.  You're entitled to find out that but not beat that

18  horse to death.  But if they are not going to interfere with

19  that question, then I don't get what amending the complaint is

20  all about.

21        MR. HAVILAND:  I think you just resolved it, Judge, by

22  your colloquy there.  We just don't want to be put in that

23  situation.

24        THE COURT:  That was a rational explanation.

25        MR. HAVILAND:  My answer is 19.  Now we know it's

1   broader and we just want to ask the questions.

2       THE COURT:  You may or may not know it's broader and I

3   don't know how you know this.  But I'm just giving some

4   off-the-cuff guidance here so that everybody knows where it

5   might be or where it might end up.  But there's going to be an

6   end to this.  You ever watch -- what's the movie where Rex

7   Harrison plays the part of the Pope and Charlton Heston is

8   Michelangelo, who comes into the Sistine Chapel and says when

9   are you going to be done and Michelangelo says, "When I'm

10  done".  I'm getting to feel a little Rex Harrison-ish.  There

11  must be an end to this.

12      MR. PARKS:  I certainly agree with that, Your Honor.

13  I think the rule the Court has laid out of perhaps there should

14  be a reopening of discovery as to anything that was disclosed

15  after the original discovery deadline of February 17, 2023,

16  makes some sense.

17      THE COURT:  I mean, like, don't tell me that something

18  was -- a truckload backed up on the day before discovery was

19  done.  You know what I'm saying?

20      MR. PARKS:  Absolutely, Your Honor.

21      MR. PLATT:  Your Honor, can I just ask for a point of

22  clarification?

23      THE COURT:  Yeah.

24      MR. PLATT:  So the history of this discovery

25  dispute -- and I'm only asking because I am really trying hard

1   to avoid discovery disputes in front of the Court.  I really,

2   really do.  I'm very successful at it.  Frankly, until this

3   week, when I had another one in Illinois on Tuesday, and then

4   it fell apart and it worked out well for us, and now this.  And

5   I don't have anything negative to say about opposing counsel;

6   it's been a very friendly and professional back-and-forth, but

7   it's critical to note that the plaintiffs noticed these

8   depositions in December, three months, two months before the

9   original discovery deadline closed.  The defendants never

10  asked, never noticed.  We didn't just ask for a deposition, we

11  noticed them under the rules.  We didn't receive a notice of

12  deposition for either one of the McGlades, ever, to date.

13          THE COURT:  Maybe they don't care what your people are

14  going to say.

15          MR. PLATT:  I don't know if that's the case or not,

16  but I just want to be clear that I don't want to be punished

17  because we made a deal that the depositions were going to be

18  scheduled after the discovery deadline when they didn't give us

19  dates.  That's all I'm saying.  We properly noticed them.

20          THE COURT:  Do you really want to fall on that sword?

21  That if you agreed that you were going to produce your people

22  and it didn't matter when, I mean, what's the point of saying,

23  "you didn't give me a date."

24          MR. PLATT:  No, no, no.  We asked for dates.  And we

25  asked for dates after we asked for dates.  And then we asked

1  for dates again and then counsel indicated to the Court that we

2  didn't respond to an invitation for dates, that's not accurate.

3          MR. PARKS:  That's a hundred percent accurate.

4  March 27th email was absolutely never responded to.

5          And if you have it, I would love to see it.

6          MR. PLATT:  I will email it to you.

7          MR. HAVILAND:  Judge, in the interest of closing, I

8  want to --

9          THE COURT:  See this lady up there?  How many hands

10 does she have?

11         MR. HAVILAND:  I'm watching her.

12         THE COURT:  And how many transcripts is she creating?

13         THE COURT REPORTER:  Thank you, Judge.

14         THE COURT:  One of the reasons we're in the courtroom

15 with a court reporter is because it does, it's supposed to give

16 you the visual of speaking one at a time.  But let me, I'm

17 going to just give you, I'm going to confess something to you.

18 I do not keep track of who struck John and when, unless I'm the

19 John who got struck.  So the fact that somebody wrote an email

20 and you did or didn't answer or it wasn't an answer or it was

21 sent at 11:59 before the strike of midnight, I don't keep track

22 of that too much, especially when it's back and forth like

23 this.  I get a sense of, you know, the acrimony or whatever,

24 but I don't really keep track of it.  My life is too short for

25 that.  And I don't get to put it on a time sheet anymore.

1          MR. HAVILAND:  The one thing we'd like to see closed

2    out on, Judge, on the paper record is when there was a

3    commitment to produce, Your Honor said let's not hide the ball,

4    let's not be cagey.  You said and I'm glad you said it because

5    it's something that we always look for as plaintiffs to end it.

6    Have somebody sign off in an enforceable way that there's

7    nothing more.  And that's on page 18 at line 20.  And I said,

8    Judge, I don't want to do a 56(d) so I appreciate what you just

9    said.  I just want to know there's no "there" there, because at

10   the end of the day they are going to come before the Court and

11   say it didn't happen.  What the McGlades say happened.

12         THE COURT:  What is the issue we're talking about on

13   this?

14         MR. HAVILAND:  I want the document production to be

15   certified that they have completely produced as the requests

16   we've asked.  That's all.  That's what we thought we walked out

17   in September with.

18         THE COURT:  Excuse me for interrupting.  I thought

19   there was an issue that there was no more requests and when is

20   that going to end?

21         MR. HAVILAND:  So we did propound class requests in

22   January, but the requests that we discussed last year, and they

23   are Exhibits A and B to Mr. Platt's declaration, were served in

24   March and August of '22 so we met with the Court in September.

25   The request about other data breaches, they were in March.

 1  They were already six months old.  So we were waiting.  And in

 2  fairness, Judge, we had another party; the banks were involved

 3  at that time.  Obviously, they were in discussions and came

 4  forward with the settlement in March of this year, so there was

 5  that overlay which obviously adds some complexity to our

 6  getting clarity about whether we're getting what we want.

 7          THE COURT:  Okay.  I am sure that there's something

 8  important in what you just told me, but I'm not sure I

 9  understand what it is.

10          MR. HAVILAND:  We had asked for all the information

11  about these prior breaches in '16 and '18 and I just want to

12  know that we got it.

13          THE COURT:  What I'm going to say is and therefore

14  what?

15          MR. HAVILAND:  We have a production, okay?  And in

16  this interest of not making an issue, if the production is

17  complete, then we're done.  And you can go and ask questions

18  and be done and that will be that.

19          MR. PARKS:  It is complete, Your Honor.  We said that

20  in our March 27, 2023 email, "Don and Bill, we are writing to

21  let you know that our production is now complete."  That's the

22  very first sentence of Mr. Hadgis' email.

23          MR. HAVILAND:  So I take that as the enforceable

24  writing.

25          THE COURT:  As an officer of the court, he is

1   representing his client.  We now have a court reporter who's

2   got it on the record.  How many other bows and bells do you

3   want?

4           MR. HAVILAND:  It's bowed up.

5           THE COURT:  Anything else we can talk about?

6           MR. HAVILAND:  Talk about the Eagles up and down the

7   city.

8           THE COURT:  Oh, please.

9           MR. HAVILAND:  It was very hard to get down here.

10          THE COURT:  Oh, is it already getting crowded?

11          MR. HAVILAND:  Your Honor, I had a meeting in the

12  great Northeast where I grew up and there was only one lane and

13  it was an hour and a half just getting off of Girard.

14          THE COURT:  How many people can get into this city?

15          MR. HAVILAND:  Apparently 70,000 from 2:00.  It's

16  quite a parking lot out there.

17          THE COURT:  Okay, we're done.

18          (Discussion held off the record.)

19          (Matter adjourned at 5:05 p.m.)

20          - - - - - - - - - - - - - - - - -

21  I certify that the foregoing is a correct transcript from the

22  record of proceedings in the above-entitled matter.

23  */S/ Maureen McHugh, RPR*
    *Official Court Reporter*

24

25  *October 10, 2023*
        *Date*

**'**

'16 [1] - 30:11
'18 [1] - 30:11
'22 [1] - 29:24

**/**

/S [1] - 31:23

**1**

1 [1] - 21:10
10 [3] - 3:17, 20:7, 31:25
11 [1] - 21:15
110 [1] - 1:14
11:59 [1] - 28:21
12 [3] - 20:6, 21:14, 21:15
14 [3] - 1:9, 10:13, 21:14
14-days [1] - 11:4
15 [2] - 10:13, 18:10
17 [1] - 26:15
1701 [1] - 1:19
17th [1] - 10:16
18 [1] - 29:7
19 [1] - 25:25
19-6019 [1] - 2:5
19002 [1] - 1:15
19103 [1] - 1:19
19106 [1] - 1:8

**2**

2 [2] - 11:21, 21:10
2,000 [2] - 4:19, 5:3
20 [3] - 3:17, 21:18, 29:7
2000-and [1] - 25:11
201 [1] - 1:14
2016 [15] - 5:24, 6:11, 6:15, 6:20, 6:21, 6:25, 7:3, 7:7, 7:14, 7:15, 7:21, 8:20, 8:24, 8:25, 18:17
2018 [1] - 6:16
2019 [7] - 5:19, 6:13, 6:18, 6:19, 7:18
2020 [1] - 23:3
2022 [5] - 9:23, 13:4, 13:9, 13:19, 23:4
2023 [6] - 1:9, 12:19, 23:4, 26:15, 30:20, 31:25
24 [2] - 11:14, 11:17
24th [1] - 10:8
26 [3] - 3:9, 12:19, 18:11

26th [1] - 22:8
27 [2] - 11:17, 30:20
27th [1] - 28:4
2:00 [1] - 31:15
2:19-06019-GEKP [1] - 1:4

**3**

3 [1] - 21:10
30-minute [1] - 21:18
37417 [1] - 21:6
385.3 [1] - 11:22
3rd [2] - 12:3, 12:7

**4**

4 [1] - 21:10
4:00 [1] - 1:9
4:19 [1] - 2:2

**5**

5 [3] - 12:12, 21:10, 21:12
5,000 [2] - 4:22
56(b [1] - 9:8
56(d [5] - 3:4, 3:10, 10:19, 18:9, 29:8
5:05 [1] - 31:19

**6**

601 [1] - 1:8
6:53 [1] - 12:20

**7**

70,000 [1] - 31:15

**9**

9 [1] - 21:12
929 [1] - 6:4

**A**

a.m [1] - 12:20
able [4] - 3:1, 4:16, 6:3, 9:1
above-entitled [1] - 31:22
absolutely [3] - 22:24, 26:20, 28:4
account [1] - 6:3
accurate [2] - 28:2, 28:3
acknowledges [1] - 6:9
acrimony [1] - 28:23
ACTION [1] - 1:3

add [7] - 6:11, 6:21, 6:22, 6:23, 6:24, 7:6
added [2] - 10:12, 10:13
adding [1] - 6:25
addition [1] - 23:18
additional [3] - 6:23, 23:13
adds [1] - 30:5
adjourn [1] - 10:6
adjourned [1] - 31:19
admitted [1] - 6:19
adversary [1] - 7:2
affect [1] - 5:20
affidavit [5] - 3:4, 3:10, 3:13, 21:17, 21:19
affidavits [1] - 14:16
afternoon [6] - 2:7, 2:9, 2:13, 2:15, 2:17, 24:16
afterwards [1] - 23:12
agitated [1] - 13:23
ago [2] - 3:2, 24:3
agree [6] - 14:8, 16:8, 17:24, 19:8, 23:19, 26:12
agreed [2] - 11:10, 27:21
agreement [2] - 11:11, 19:18
aided [1] - 1:25
allow [4] - 8:22, 12:6, 14:2, 23:24
allowed [1] - 14:10
alternative [1] - 10:19
Ambler [1] - 1:15
amend [5] - 7:20, 8:6, 8:7, 8:11, 9:5
amended [2] - 5:9, 5:14
amending [3] - 8:8, 25:7, 25:19
amendment [1] - 8:16
answer [9] - 9:16, 11:5, 18:24, 19:12, 25:10, 25:11, 25:25, 28:20
answers [1] - 17:6
apart [3] - 17:13, 17:25, 27:4
appreciate [1] - 29:8
April [7] - 10:17, 12:3, 12:7, 12:9, 12:19, 17:13, 17:25
argue [2] - 7:3, 8:19
argument [3] - 7:5, 7:25, 25:15
asserted [1] - 23:3
associated [1] - 7:21

attack [2] - 7:14, 7:16
August [1] - 29:24
available [2] - 9:14, 18:6
Avenue [1] - 1:14
avoid [2] - 25:6, 27:1
aware [4] - 4:5, 7:13, 15:18, 25:10
awful [1] - 9:8

**B**

back-and-forth [1] - 27:6
backed [1] - 26:18
backup [2] - 17:7, 17:9
backwards [1] - 23:10
bah [1] - 8:3, 8:4
ball [1] - 29:3
banks [1] - 30:2
basis [2] - 14:11, 15:21
be. [1] - 8:9
beat [1] - 25:17
became [1] - 10:9
becomes [1] - 14:23
behalf [1] - 2:18
behind [1] - 9:5
bells [1] - 31:2
bent [1] - 23:10
better [2] - 14:21, 17:6
between [1] - 19:20
beyond [3] - 10:20, 13:19, 14:1
Bill [1] - 30:20
bit [1] - 9:4
blood [1] - 19:21
BOCKIUS [1] - 1:17
Bockius [1] - 2:14
bothered [1] - 25:3
bottom [2] - 5:12, 20:19
bowed [1] - 31:4
bows [1] - 31:2
Boy [1] - 3:3
breach [16] - 2:4, 5:19, 6:4, 6:14, 6:15, 6:16, 6:19, 6:20, 7:3, 7:11, 10:7, 15:10, 15:16, 25:10
breaches [7] - 3:8, 6:10, 6:16, 7:8, 15:16, 29:25, 30:11
briefing [1] - 11:3
bring [4] - 8:12, 14:10, 21:24, 22:4
broader [2] - 26:1, 26:2
Bruce [1] - 6:8

busy [1] - 11:5
BY [3] - 1:13, 1:17, 1:18
BYRNE [1] - 1:7

**C**

cagey [2] - 3:11, 29:4
candle [1] - 24:18
cannot [1] - 23:20
Caramenico [1] - 18:4
card [3] - 5:25, 6:5, 7:18
cards [1] - 6:2
care [4] - 3:25, 4:1, 13:25, 27:13
cart [1] - 8:5
case [17] - 4:13, 5:18, 5:25, 6:12, 7:4, 8:12, 9:18, 12:23, 13:2, 14:1, 15:15, 17:4, 17:11, 18:14, 18:16, 22:1, 27:15
cases [1] - 6:5
caused [1] - 3:9
cease [2] - 12:22, 12:23
certainly [1] - 8:19, 22:21, 26:12
certification [2] - 9:20, 25:2
certified [1] - 29:15
certify [1] - 31:21
cetera [1] - 9:16
chambers [1] - 2:22
Chapel [1] - 26:8
chapter [1] - 24:20
Charlton [1] - 26:7
check [1] - 17:2
checked [1] - 4:17
Christmas [1] - 10:1
chronology [1] - 8:11
church [1] - 13:7
city [2] - 31:7, 31:14
CIVIL [1] - 1:3
claim [2] - 8:1, 15:13
claims [1] - 6:22
clarification [1] - 26:22
clarity [1] - 30:6
class [11] - 5:20, 11:3, 15:8, 15:12, 15:20, 22:4, 22:10, 22:12, 22:15, 25:1, 29:21
clear [7] - 8:23, 9:19, 12:13, 13:3, 19:2, 24:14, 27:16
clearly [5] - 3:9, 12:7, 13:7, 13:9, 13:18
clerk [1] - 4:12

**clerks** [1] - 4:11
**clerkship** [1] - 4:10
**client** [2] - 6:16, 31:1
**clients** [3] - 5:20, 5:24, 18:11
**close** [3] - 6:6, 16:14, 23:23
**closed** [2] - 27:9, 29:1
**closing** [1] - 28:7
**CMO-10** [1] - 13:18
**colleagues** [1] - 13:7
**colloquy** [1] - 25:22
**coming** [2] - 15:15, 22:7
**Commencing** [1] - 1:9
**comment** [1] - 20:10
**commitment** [3] - 9:24, 10:10, 29:3
**communicate** [1] - 16:13
**communicated** [1] - 6:14
**communications** [1] - 17:10
**commuter** [1] - 17:23
**compel** [3] - 10:20, 17:24, 23:7
**complaint** [12] - 5:9, 5:14, 6:11, 6:13, 7:16, 7:20, 8:7, 8:17, 8:21, 9:5, 25:8, 25:19
**complete** [6] - 5:12, 10:3, 12:10, 30:17, 30:19, 30:21
**completely** [1] - 29:15
**complexity** [1] - 30:5
**compress** [1] - 3:6
**compromise** [1] - 24:9
**compulsion** [1] - 25:7
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concern** [1] - 24:5
**concerned** [2] - 9:7, 23:19
**confer** [2] - 9:19, 11:2
**conference** [4] - 2:4, 2:24, 13:4, 13:8
**conferred** [1] - 23:6
**conferring** [1] - 13:3
**confers** [1] - 19:20
**confess** [1] - 28:17
**connected** [1] - 23:20
**consistent** [1] - 19:7
**constantly** [1] - 3:23, 17:8
**contact** [1] - 22:16
**continue** [2] - 19:6, 19:9

**conversation** [2] - 3:2, 5:16
**cooperation** [1] - 9:13
**cooperative** [1] - 10:24
**correct** [3] - 4:20, 21:24, 31:21
**cottage** [1] - 20:14
**counsel** [9] - 2:3, 4:5, 10:1, 10:10, 15:22, 17:8, 21:20, 27:5, 28:1
**count** [2] - 20:15, 20:16
**counts** [1] - 6:23
**couple** [5] - 11:19, 17:22, 18:20, 19:21, 25:16
**course** [4] - 3:21, 10:11, 18:20, 19:12
**COURT** [59] - 1:1, 2:3, 2:11, 2:19, 3:23, 4:4, 4:21, 4:23, 5:1, 5:6, 5:13, 5:16, 6:25, 7:6, 7:19, 7:24, 8:14, 9:2, 11:7, 13:22, 15:20, 16:6, 16:9, 16:16, 16:20, 18:22, 18:24, 20:9, 20:12, 20:22, 21:11, 21:23, 22:10, 22:14, 22:19, 22:22, 23:17, 24:12, 24:15, 25:24, 26:2, 26:17, 26:23, 27:13, 27:20, 28:9, 28:12, 28:13, 28:14, 29:12, 29:18, 30:7, 30:13, 30:25, 31:5, 31:8, 31:10, 31:14, 31:17
**Court** [17] - 1:23, 2:23, 3:3, 3:16, 8:21, 9:23, 9:25, 12:2, 12:20, 16:13, 16:18, 26:13, 27:1, 28:1, 29:10, 29:24, 31:23
**court** [6] - 2:2, 2:25, 19:4, 28:15, 30:25, 31:1
**COURTHOUSE** [1] - 1:7
**COURTROOM** [1] - 2:1
**courtroom** [2] - 2:23, 28:14
**creating** [1] - 28:12
**credit** [4] - 5:25, 6:2, 6:5, 7:18
**critical** [2] - 24:7, 27:7
**cross** [2] - 8:5, 22:6
**cross-examination** [1]

- 8:5
**cross-examine** [1] - 22:6
**crowded** [1] - 31:10
**cuff** [1] - 26:4
**current** [2] - 7:17, 14:11
**cut** [4] - 10:9, 10:16, 13:16, 23:17
**cut-off** [3] - 10:9, 10:16, 13:16

**D**

**DATA** [1] - 1:4
**data** [13] - 2:4, 3:8, 5:19, 6:4, 6:14, 6:15, 7:3, 7:11, 15:10, 15:16, 25:9, 29:25
**date** [15] - 6:21, 10:6, 11:12, 11:14, 13:16, 13:18, 14:12, 20:2, 20:3, 21:21, 23:23, 24:11, 27:12, 27:23
**Date** [1] - 31:25
**dates** [13] - 10:5, 10:7, 10:11, 13:11, 17:25, 18:1, 19:1, 27:19, 27:24, 27:25, 28:1, 28:2
**days** [2] - 3:9, 18:20
**deadline** [13] - 3:22, 5:22, 11:16, 12:21, 13:4, 13:19, 13:25, 14:1, 14:12, 16:1, 16:15, 27:9, 27:18
**deadlines** [2] - 3:24, 19:8
**deal** [5] - 12:16, 12:18, 15:25, 21:5, 27:17
**deals** [1] - 7:17
**death** [1] - 25:18
**December** [4] - 10:17, 20:1, 20:7, 27:8
**decided** [1] - 9:20
**declarants** [8] - 14:15, 14:17, 15:1, 20:2, 21:10, 21:11, 21:13, 21:15
**declaration** [1] - 29:23
**declarations** [4] - 10:13, 15:8, 18:10, 24:7
**Defendant** [1] - 1:20
**defendant** [5] - 2:14, 2:16, 2:18, 22:5, 24:2
**defendants** [2] - 8:23, 27:9
**defense** [1] - 15:21

**delay** [1] - 13:14
**demand** [1] - 23:25
**dep** [1] - 20:20
**department** [1] - 25:16
**depose** [2] - 14:21, 19:11
**deposed** [1] - 15:22
**deposition** [12] - 8:19, 9:14, 12:4, 17:16, 18:25, 19:25, 21:18, 22:8, 23:25, 24:10, 27:10, 27:12
**depositions** [24] - 3:16, 3:18, 8:13, 8:22, 9:12, 10:11, 10:17, 11:15, 11:21, 11:23, 12:1, 12:6, 12:11, 12:16, 12:17, 15:24, 16:1, 18:19, 20:4, 20:5, 21:9, 23:8, 27:8, 27:17
**deps** [2] - 10:18, 10:23
**DEPUTY** [1] - 2:1
**desist** [2] - 12:22, 12:23
**develop** [1] - 20:14
**different** [3] - 8:14, 11:8, 15:17
**difficulty** [1] - 9:15
**dime** [1] - 17:12
**disclosed** [6] - 10:14, 14:18, 15:3, 15:6, 24:2, 26:14
**disclosure** [4] - 4:14, 22:9, 23:20, 23:22
**disclosures** [1] - 15:7
**discovered** [1] - 5:21
**discovery** [54] - 3:5, 3:12, 3:24, 5:11, 5:13, 5:17, 5:21, 5:22, 6:6, 7:24, 9:4, 9:7, 9:9, 10:16, 12:4, 12:5, 12:10, 12:14, 12:20, 12:21, 12:23, 12:25, 14:8, 14:19, 16:1, 16:2, 16:3, 16:4, 16:5, 16:10, 16:11, 16:14, 16:17, 19:4, 19:6, 19:8, 19:9, 19:10, 19:13, 20:20, 23:19, 23:23, 24:19, 24:23, 25:7, 26:14, 26:15, 26:18, 26:24, 27:1, 27:9, 27:18
**discovery-related** [1] - 3:24
**discussed** [3] - 3:15, 18:3, 29:22
**Discussion** [1] - 31:18

**discussion** [1] - 22:19
**discussions** [2] - 22:3, 30:3
**dispute** [3] - 24:18, 26:25
**disputes** [1] - 27:1
**District** [1] - 17:4
**DISTRICT** [3] - 1:1, 1:1, 1:11
**docket** [2] - 11:22, 21:6
**document** [3] - 23:14, 23:25, 29:14
**documents** [24] - 3:14, 3:20, 3:21, 5:21, 9:24, 10:3, 10:8, 11:10, 11:12, 11:13, 11:14, 11:17, 11:18, 16:23, 17:12, 19:19, 21:8, 23:2, 23:8, 23:11, 24:1, 24:10
**Don** [2] - 2:9, 30:20
**DONALD** [1] - 1:13
**done** [12] - 3:11, 8:3, 9:2, 10:18, 12:4, 19:17, 25:14, 26:9, 26:19, 30:17, 30:18, 31:17
**done"** [1] - 26:10
**dovetail** [1] - 5:11
**down** [5] - 3:17, 5:16, 24:25, 31:6, 31:9
**drafted** [1] - 7:17
**due** [3] - 12:3, 13:12, 14:12
**during** [1] - 5:16
**duty** [1] - 7:12

**E**

**E.K** [1] - 1:10
**Eagles** [1] - 31:6
**early** [3] - 7:14, 23:2, 23:4
**EASTERN** [1] - 1:1
**effort** [1] - 16:13
**either** [2] - 14:3, 27:12
**email** [14] - 6:9, 6:21, 11:18, 11:24, 12:10, 12:12, 12:19, 28:4, 28:6, 28:19, 30:20, 30:22
**employed** [1] - 22:5
**employee** [5] - 5:20, 9:11, 9:22, 11:15, 12:3
**employees** [11] - 4:21, 6:14, 7:10, 7:12, 9:14, 10:13, 12:7,

*United States District Court*

15:9, 18:3, 19:12, 21:16
**employment** [1] - 2:19
**encompassed** [1] - 3:9
**end** [9] - 11:25, 14:7, 14:8, 26:5, 26:6, 26:11, 29:5, 29:10, 29:20
**ended** [1] - 16:12
**enforceable** [2] - 29:6, 30:23
**engagement** [1] - 17:10
**entitled** [2] - 25:17, 31:22
**especially** [2] - 18:2, 28:22
**ESQUIRE** [5] - 1:13, 1:14, 1:17, 1:18, 1:18
**et** [1] - 9:16
**events** [1] - 8:25
**evidence** [1] - 15:5
**examination** [1] - 8:5
**examine** [1] - 22:6
**except** [1] - 25:5
**exception** [1] - 14:14
**exchange** [1] - 21:2
**excuse** [1] - 29:18
**executing** [2] - 14:19, 15:7
**executive** [1] - 18:6
**executives** [1] - 20:1
**Exhibit** [2] - 11:21, 12:12
**Exhibits** [1] - 29:23
**exist** [1] - 15:14
**existed** [3] - 7:8, 15:12, 15:19
**expand** [1] - 24:25
**expected** [1] - 17:16
**explained** [1] - 6:17
**explains** [1] - 6:1
**explanation** [2] - 24:23, 25:24
**expressed** [1] - 16:6
**extend** [2] - 12:21, 15:25

### F

**fact** [7] - 3:8, 4:5, 4:12, 5:23, 7:13, 15:3, 28:19
**facts** [5] - 6:17, 6:24, 8:8, 14:11, 15:15
**fair** [3] - 13:22, 21:11, 25:12
**fairly** [1] - 9:19

**fairness** [1] - 30:2
**faith** [1] - 10:22
**fall** [1] - 27:20
**familiar** [1] - 3:13
**fan** [1] - 16:7
**far** [6] - 5:8, 6:12, 6:20, 9:7, 19:19, 23:18
**February** [4] - 10:16, 16:23, 20:8, 26:15
**federal** [1] - 8:9
**fell** [3] - 17:13, 17:25, 27:4
**fight** [2] - 20:15, 22:23
**fights** [1] - 25:6
**figure** [2] - 9:3, 11:20
**file** [7] - 5:9, 10:20, 12:25, 13:13, 13:21, 14:5, 19:19
**filed** [17] - 2:24, 7:17, 8:16, 9:18, 10:18, 13:5, 13:17, 13:19, 13:20, 13:24, 14:1, 15:9, 18:7, 19:18, 21:16, 23:6, 24:7
**filing** [4] - 10:24, 13:6, 13:10, 14:2
**fine** [1] - 12:24
**fingers** [1] - 20:15
**finished** [2] - 23:14
**firms** [1] - 19:21
**first** [6] - 8:2, 9:22, 12:15, 20:25, 30:22
**five** [4] - 10:9, 16:23, 21:3, 21:7
**flatly** [1] - 19:9
**folks** [7] - 10:15, 11:1, 14:25, 17:1, 18:10, 22:7, 24:7
**follow** [1] - 23:25
**follow-up** [1] - 23:25
**follows** [1] - 9:22
**fond** [1] - 20:24
**footnotes** [1] - 20:25
**foregoing** [1] - 31:21
**forensic** [2] - 17:5, 17:22
**forgotten** [1] - 3:2
**form** [2] - 7:17, 21:19
**former** [1] - 18:2
**forth** [2] - 27:6, 28:22
**forward** [2] - 15:15, 30:4
**four** [1] - 21:4
**framed** [1] - 3:7
**frank** [1] - 10:21
**frankly** [1] - 27:2
**friendly** [1] - 27:6
**front** [1] - 27:1
**full** [2] - 2:19, 10:8

**fun** [1] - 14:9

### G

**gander** [2] - 16:7, 16:10
**gas** [1] - 6:5
**GENE** [1] - 1:10
**gentleman** [1] - 6:8
**Girard** [1] - 31:13
**given** [5] - 6:12, 11:4, 17:12, 19:16, 19:22
**glad** [1] - 29:4
**goose** [1] - 16:9
**goosey** [1] - 16:7
**grant** [1] - 14:6
**great** [2] - 24:20, 31:12
**GREGORY** [1] - 1:17
**Gregory** [1] - 2:13
**grew** [1] - 31:12
**guard** [1] - 8:3
**guess** [4] - 7:22, 16:16, 22:11, 22:13
**guidance** [2] - 20:9, 26:4
**guide** [1] - 20:11

### H

**HADGIS** [2] - 1:18, 2:15
**Hadgis** [2] - 2:16, 13:7
**Hadgis'** [1] - 30:22
**half** [1] - 31:13
**handcuff** [1] - 13:14
**handle** [2] - 17:20, 25:4
**hands** [1] - 28:9
**happy** [3] - 2:23, 9:21, 22:16
**hard** [3] - 13:25, 26:25, 31:9
**harmed** [1] - 18:16
**Harrison** [2] - 26:7, 26:10
**Harrison-ish** [1] - 26:10
**Hashanah** [1] - 4:7
**hate** [1] - 18:9
**Haviland** [9] - 2:10, 12:9, 12:12, 12:13, 12:19, 19:3, 19:5, 19:9
**HAVILAND** [40] - 1:13, 1:13, 2:9, 2:12, 2:21, 4:3, 5:10, 9:21, 16:12, 16:19, 16:22, 18:23, 18:25, 19:14, 20:10, 20:18, 21:6,

21:14, 21:25, 22:12, 22:16, 22:21, 22:24, 24:5, 24:14, 25:21, 25:25, 28:7, 28:11, 29:1, 29:14, 29:21, 30:10, 30:15, 30:23, 31:4, 31:6, 31:9, 31:11, 31:15
**hear** [1] - 11:23
**hearing** [2] - 23:16, 25:2
**HEARING** [1] - 1:6
**held** [1] - 31:18
**hello** [1] - 2:3
**Heston** [1] - 26:7
**hide** [1] - 29:3
**history** [2] - 9:11, 26:24
**holiday** [1] - 4:7
**home** [1] - 17:23
**honestly** [1] - 10:22
**Honor** [33] - 2:7, 2:9, 2:13, 2:15, 2:17, 2:21, 3:5, 4:20, 4:22, 4:25, 5:15, 5:17, 7:23, 8:10, 12:8, 13:3, 13:6, 13:9, 13:15, 13:18, 13:21, 15:2, 17:24, 18:3, 19:7, 19:8, 22:25, 26:12, 26:20, 26:21, 29:3, 30:19, 31:11
**Honor's** [2] - 3:22, 20:10
**HONORABLE** [1] - 1:10
**honored** [1] - 10:7
**hope** [2] - 3:4, 8:22
**horrifying** [1] - 5:3
**horse** [2] - 8:6, 25:18
**hot** [1] - 25:3
**hour** [3] - 18:18, 20:19, 31:13
**HR** [1] - 7:9
**huge** [1] - 16:7
**Hughes** [1] - 2:10
**HUGHES** [1] - 1:13
**human** [1] - 13:12
**hundred** [1] - 28:3
**hurt** [1] - 15:10

### I

**idea** [3] - 5:2, 5:14, 9:5
**identified** [2] - 5:17, 14:23
**identify** [1] - 2:6
**identifying** [1] - 23:22
**ignorance** [1] - 8:1
**ignorant** [1] - 7:1

**Illinois** [1] - 27:3
**imagine** [1] - 11:19
**important** [1] - 30:8
**IN** [1] - 1:3
**Inc** [3] - 1:20, 2:14, 2:18
**INC** [1] - 1:3
**incidents** [1] - 7:3
**inclined** [2] - 14:6, 14:7
**include** [1] - 8:8
**includes** [1] - 23:1
**including** [1] - 21:10
**indicated** [2] - 10:2, 28:1
**industry** [1] - 20:14
**information** [1] - 30:10
**informs** [1] - 9:4
**initial** [1] - 2:22
**instructions** [1] - 9:16
**interaction** [1] - 4:17
**interest** [2] - 28:7, 30:16
**interested** [1] - 4:9
**interfere** [1] - 25:18
**interrupt** [1] - 5:8
**interrupting** [1] - 29:18
**introduce** [1] - 4:11
**investigation** [1] - 17:22
**invitation** [1] - 28:2
**involved** [1] - 30:2
**involving** [1] - 7:9
**ish** [1] - 26:10
**issue** [10] - 5:7, 5:10, 8:14, 8:15, 13:13, 18:20, 24:24, 29:12, 29:19, 30:16
**issues** [2] - 3:8, 9:7
**IT** [1] - 25:15
**item** [2] - 24:4, 24:19

### J

**Jaime** [1] - 4:23
**JAMES** [1] - 1:7
**January** [4] - 10:1, 11:10, 20:7, 29:22
**Jiang** [1] - 2:17
**JIANG** [2] - 1:18, 2:17
**John** [2] - 28:18, 28:19
**joint** [2] - 12:2, 16:14
**Judge** [22] - 5:10, 9:22, 10:5, 10:19, 10:21, 11:6, 16:23, 18:1, 18:9, 18:23, 20:3, 20:18, 21:6,

*22*:1, 22:12, 22:21, 23:16, 25:21, 28:13, 29:2, 29:8, 30:2
*judge* [3] - 21:16, 24:5, 28:7
*JUDGE* [1] - 1:11
*judgement* [2] - 13:17, 14:11
*judgment* [19] - 2:25, 9:17, 9:20, 10:12, 10:18, 10:25, 11:3, 13:1, 13:5, 13:11, 13:23, 13:24, 14:6, 14:14, 15:1, 15:4, 18:8, 24:8, 25:4
*judgments* [1] - 13:12
*June* [1] - 23:12
*justification* [1] - 24:22

## K

*keep* [5] - 4:8, 5:3, 28:18, 28:21, 28:24
*keeping* [1] - 13:10
*keeps* [1] - 4:23
*kept* [1] - 17:18
*key* [1] - 24:1
*kind* [1] - 9:10
*knowledgeable* [3] - 14:19, 14:23, 23:22
*known* [1] - 18:12
*knows* [3] - 8:8, 14:20, 26:4
*KRISTIN* [1] - 1:18
*Kristin* [1] - 2:15

## L

*lady* [1] - 28:9
*laid* [2] - 3:6, 26:13
*lane* [1] - 31:12
*last* [6] - 4:17, 9:21, 18:3, 20:5, 23:16, 29:22
*late* [3] - 20:19, 23:7, 24:9
*late-produced* [1] - 24:9
*laugh* [1] - 24:22
*Laughter* [1] - 5:5
*law* [4] - 4:11, 17:2, 17:11
*lawyers* [6] - 3:11, 4:18, 4:19, 5:3, 15:25, 23:5
*layer* [1] - 10:12
*learn* [1] - 6:6
*least* [4] - 4:7, 5:3, 7:15, 9:18

*leave* [1] - 11:1
*left* [1] - 12:4
*legal* [1] - 13:13
*legible* [1] - 20:25
*less* [2] - 5:4, 18:18
*letter* [1] - 12:8
*level* [1] - 9:13
*LEWIS* [1] - 1:17
*Lewis* [4] - 2:14, 2:18, 3:18, 4:12
*life* [1] - 28:24
*likely* [1] - 22:2
*limit* [1] - 20:7
*line* [4] - 5:12, 20:19, 21:12, 29:7
*list* [4] - 3:17, 23:1, 24:25
*litigation* [1] - 2:5
*LITIGATION* [1] - 1:4
*lives* [1] - 14:1
*LLC* [1] - 1:13
*log* [1] - 16:24
*logs* [1] - 23:4
*look* [3] - 8:11, 21:22, 29:5
*Look* [1] - 15:17
*loss* [1] - 7:21
*love* [1] - 28:5
*lovely* [1] - 8:9

## M

*malware* [3] - 5:23, 6:7, 8:24
*management* [2] - 9:18, 13:2
*Maple* [1] - 1:14
*March* [13] - 3:21, 5:22, 10:4, 10:8, 11:14, 11:17, 23:14, 28:4, 29:24, 29:25, 30:4, 30:20
*margins* [1] - 21:1
*Market* [2] - 1:8, 1:19
*material* [1] - 14:3
*matter* [2] - 27:22, 31:22
*Matter* [1] - 31:19
*maureen* [1] - 1:23
*Maureen* [1] - 31:23
*maureen_mchugh@ paed.uscourts.gov* [1] - 1:23
*McGlade* [2] - 1:15, 20:3
*McGlades* [14] - 2:8, 2:10, 17:14, 17:16, 17:18, 17:21, 18:15, 19:15, 19:16, 19:17, 27:12, 29:11

*McHugh* [2] - 1:23, 31:23
*mean* [8] - 3:23, 5:8, 7:21, 8:8, 19:20, 22:14, 26:17, 27:22
*meaning* [1] - 24:19
*means* [4] - 4:10, 21:23, 24:12
*mechanical* [1] - 1:25
*meet* [2] - 9:19, 11:2
*meeting* [4] - 13:3, 15:22, 15:23, 31:11
*members* [4] - 15:8, 15:12, 15:20, 22:4
*merit* [1] - 8:20
*merits* [2] - 15:15, 18:14
*met* [3] - 11:16, 23:6, 29:24
*Michael* [1] - 5:6
*Michelangelo* [2] - 26:8, 26:9
*Middle* [1] - 17:4
*midnight* [1] - 28:21
*might* [9] - 4:8, 11:19, 13:12, 14:16, 14:17, 15:21, 22:19, 26:5
*minute* [1] - 20:13
*ML&B* [1] - 4:18
*moment* [1] - 14:5
*money* [1] - 23:12
*month* [2] - 3:22, 8:25
*months* [3] - 27:8, 30:1
*MORGAN* [1] - 1:17
*Morgan* [4] - 2:14, 2:18, 3:18, 4:12
*morning* [1] - 12:20
*most* [3] - 10:14, 14:11, 23:15
*MOTION* [1] - 1:6
*motion* [22] - 2:25, 8:6, 9:5, 9:8, 9:17, 10:12, 10:20, 11:4, 11:22, 12:21, 13:1, 13:10, 13:17, 14:2, 14:6, 14:17, 15:4, 16:15, 17:23, 19:18, 19:20, 23:6
*movant* [1] - 14:3
*movie* [1] - 26:6
*MR* [66] - 2:7, 2:9, 2:12, 2:13, 2:21, 4:3, 4:20, 4:22, 4:25, 5:10, 5:15, 5:17, 7:2, 7:7, 7:22, 8:10, 8:15, 9:21, 11:8, 15:2, 15:23, 16:8, 16:12, 16:19, 16:22, 18:23, 18:25, 19:2, 19:14,

20:10, 20:18, 21:6, 21:14, 21:25, 22:12, 22:16, 22:21, 22:24, 22:25, 23:16, 24:5, 24:14, 25:21, 25:25, 26:12, 26:20, 26:21, 26:24, 27:15, 27:24, 28:3, 28:6, 28:7, 28:11, 29:1, 29:14, 29:21, 30:10, 30:15, 30:19, 30:23, 31:4, 31:6, 31:9, 31:11, 31:15
*MS* [2] - 2:15, 2:17
*multiple* [1] - 15:16
*must* [2] - 12:22, 26:11

## N

*name* [3] - 6:2, 6:3, 6:8
*named* [1] - 12:6
*names* [1] - 14:18
*nature* [1] - 13:12
*need* [4] - 7:8, 8:7, 17:9, 25:1
*negative* [1] - 27:5
*never* [20] - 3:20, 4:13, 6:3, 6:15, 6:16, 6:19, 7:12, 10:14, 11:24, 14:22, 17:15, 17:16, 19:16, 23:5, 23:6, 27:9, 27:10, 28:4
*new* [6] - 4:6, 4:9, 4:10, 4:11, 10:7
*nine* [3] - 3:17, 20:1, 20:6
*Nobody* [1] - 13:9
*nobody* [1] - 13:22
*non* [2] - 6:7, 23:22
*non-disclosure* [1] - 23:22
*non-remediated* [1] - 6:7
*Nordstrom* [1] - 6:1
*normal* [1] - 21:1
*normal-sized* [1] - 21:1
*Northeast* [1] - 31:12
*note* [1] - 27:7
*nothing* [2] - 25:11, 29:7
*notice* [4] - 2:21, 2:22, 17:16, 27:11
*noticed* [5] - 3:16, 3:18, 27:7, 27:10, 27:11, 27:19
*notices* [1] - 10:15
*notify* [1] - 7:10
*notion* [4] - 15:13,

20:17, 25:6, 25:13
*November* [4] - 3:12, 9:25, 23:3, 23:15
*Number* [1] - 9:13
*NUMBER* [1] - 1:3
*number* [2] - 6:1, 9:12
*numbers* [2] - 5:24, 20:13

## O

*object* [1] - 15:22
*objected* [1] - 23:2
*objection* [2] - 15:23, 23:3
*objections* [1] - 9:16
*obligated* [1] - 7:11
*obligation* [1] - 18:5
*obviously* [2] - 30:3, 30:5
*occurred* [1] - 6:14
*October* [1] - 31:25
*OF* [1] - 1:1
*off-the-cuff* [1] - 26:4
*offer* [1] - 13:21
*office* [1] - 10:5
*officer* [1] - 30:25
*Official* [2] - 1:23, 31:23
*old* [1] - 30:1
*one* [26] - 5:4, 5:18, 8:25, 9:12, 14:10, 14:14, 14:17, 15:4, 15:21, 16:5, 17:3, 17:17, 17:24, 20:23, 20:24, 21:1, 21:3, 24:6, 24:7, 27:3, 27:12, 28:14, 28:16, 29:1, 31:12
*ones* [2] - 10:17
*open* [1] - 2:2
*opened* [1] - 6:3
*opponent* [1] - 14:20
*opportunity* [1] - 14:24
*opposing* [1] - 27:5
*opposition* [1] - 2:24
*order* [3] - 9:18, 13:2, 21:7
*ordered* [1] - 8:18
*original* [2] - 26:15, 27:9
*originally* [1] - 23:24
*otherwise* [1] - 15:1
*ought* [1] - 23:24
*outbreak* [1] - 8:24
*outbreaks* [3] - 5:23, 6:7, 6:10
*outside* [2] - 6:24, 8:21

*overlay* [1] - 30:5

**P**

*p.m* [3] - 1:9, 2:2, 31:19
*PA* [3] - 1:8, 1:15, 1:19
*page* [3] - 21:10, 21:16, 29:7
*paper* [6] - 6:18, 20:23, 20:24, 21:1, 29:2
*papers* [1] - 16:15
*parking* [1] - 31:16
*Parks* [1] - 2:13
*parks* [2] - 16:12, 18:12
*PARKS* [15] - 1:17, 2:13, 4:20, 4:22, 4:25, 11:8, 15:2, 15:23, 16:8, 19:2, 22:25, 26:12, 26:20, 28:3, 30:19
*part* [4] - 14:18, 22:10, 22:14, 26:7
*particular* [4] - 12:11, 13:8, 24:18, 24:19
*particularly* [1] - 4:4
*parties* [5] - 6:23, 9:19, 12:8, 12:17, 19:8
*partner* [3] - 3:13, 17:19, 24:6
*party* [1] - 30:2
*passes* [1] - 24:22
*past* [4] - 3:22, 13:4, 16:7, 20:20
*PENNSYLVANIA* [1] - 1:1
*Pennsylvania* [1] - 17:4
*people* [17] - 3:24, 11:15, 14:18, 14:21, 15:2, 15:10, 15:12, 15:13, 15:19, 15:24, 21:12, 21:20, 21:21, 27:13, 27:21, 31:14
*percent* [1] - 28:3
*perfectly* [1] - 15:18
*perhaps* [1] - 26:13
*period* [4] - 10:20, 14:2, 19:1
*person* [3] - 15:6, 15:18
*personal* [1] - 24:22
*pertinent* [1] - 25:12
*Philadelphia* [2] - 1:8, 1:19
*piece* [3] - 6:3, 20:23, 20:24

*Pll* [1] - 7:12
*place* [2] - 11:9, 23:9
*plaintiff* [5] - 2:8, 5:20, 12:7, 14:13, 14:24
*plaintiff's* [1] - 4:5
*Plaintiffs* [1] - 1:15
*plaintiffs* [9] - 11:16, 11:18, 12:3, 12:15, 12:18, 14:4, 15:11, 27:7, 29:5
*plaintiffs'* [2] - 15:25, 23:5
*PLATT* [15] - 1:14, 2:7, 5:15, 5:17, 7:2, 7:7, 7:22, 8:10, 8:15, 23:16, 26:21, 26:24, 27:15, 27:24, 28:6
*Platt* [1] - 2:8
*Platt's* [1] - 29:23
*plays* [1] - 26:7
*pleadings* [1] - 8:9
*pleased* [1] - 2:25
*point* [16] - 3:15, 4:15, 6:25, 8:7, 8:12, 9:21, 10:2, 10:15, 10:23, 10:24, 14:7, 17:15, 17:17, 23:10, 26:21, 27:22
*Pope* [1] - 26:7
*portion* [1] - 16:25
*position* [12] - 12:3, 12:9, 12:13, 12:24, 12:25, 15:18, 16:1, 16:2, 16:3, 18:15, 19:5, 19:13
*positions* [2] - 18:14, 24:8
*possibly* [1] - 8:3
*posture* [1] - 6:12
*practice* [2] - 10:5, 13:24
*PRATTER* [1] - 1:10
*presumably* [1] - 14:25
*pretty* [2] - 3:6, 5:1
*preventing* [1] - 13:6
*previous* [1] - 23:20
*previously* [2] - 14:22, 15:3
*print* [1] - 16:25
*privilege* [3] - 16:24, 17:1, 21:9
*privileged* [2] - 23:2, 23:4
*problem* [3] - 4:14, 10:9, 22:25
*proceeding* [1] - 16:22
*Proceedings* [1] - 1:25
*proceedings* [1] -

31:22
*process* [1] - 5:21
*produce* [9] - 8:18, 11:11, 11:13, 17:6, 17:14, 18:5, 27:21, 29:3
*produced* [7] - 1:25, 11:11, 11:16, 11:18, 17:18, 24:9, 29:15
*producing* [3] - 8:17, 8:18, 23:2
*production* [7] - 23:1, 23:11, 23:14, 29:14, 30:15, 30:16, 30:21
*professional* [1] - 27:6
*professionals* [1] - 20:17
*programmed* [1] - 5:2
*promptly* [1] - 10:14
*properly* [1] - 27:19
*propose* [1] - 4:18
*proposed* [2] - 21:7, 22:14
*propound* [1] - 29:21
*protect* [2] - 7:12, 25:14
*pumps* [1] - 6:5
*punished* [1] - 27:16
*punitive* [1] - 22:12
*put* [7] - 15:7, 18:9, 20:13, 20:25, 21:20, 25:22, 28:25
*putting* [2] - 8:5, 12:2

**Q**

*questions* [7] - 8:24, 9:1, 11:1, 11:6, 18:17, 26:1, 30:17
*quick* [1] - 17:15
*quite* [2] - 24:2, 31:16
*quote* [2] - 9:9, 23:23

**R**

*rank* [1] - 15:8
*Rash* [1] - 4:7
*rational* [1] - 25:24
*RE* [1] - 1:3
*re* [1] - 10:10
*re-up* [1] - 10:10
*read* [3] - 6:18, 9:7, 11:19
*ready* [1] - 12:25
*really* [17] - 3:15, 3:25, 5:11, 11:4, 15:14, 20:16, 21:5, 21:12, 23:14, 24:17, 24:25, 26:25, 27:1, 27:2, 27:20, 28:24

*reason* [3] - 8:10, 8:15, 13:20
*reasons* [1] - 28:14
*receive* [1] - 27:11
*received* [2] - 6:21, 12:8
*record* [7] - 2:5, 14:12, 19:19, 29:2, 31:2, 31:18, 31:22
*recorded* [1] - 1:25
*refusal* [1] - 19:24
*refused* [2] - 8:12, 19:10
*reigned* [1] - 3:8
*relate* [1] - 5:13
*related* [4] - 3:24, 8:15, 9:7, 12:11
*relates* [1] - 16:25
*relation* [1] - 23:11
*release* [1] - 3:1
*relevant* [1] - 7:4
*relief* [3] - 9:8, 11:22, 14:4
*remains* [1] - 13:15
*remediated* [1] - 6:7
*remember* [2] - 3:3, 3:5
*reminding* [1] - 3:24
*reneged* [3] - 12:15, 12:18, 15:25
*renewed* [1] - 24:4
*reopen* [2] - 23:19, 23:24
*reopened* [1] - 9:9
*reopening* [1] - 26:14
*report* [3] - 12:2, 17:6, 17:9
*Reporter* [2] - 1:23, 31:23
*REPORTER* [1] - 28:13
*reporter* [2] - 28:15, 31:1
*represent* [2] - 15:13, 18:5
*represented* [1] - 22:17
*representing* [1] - 31:1
*request* [4] - 3:7, 14:4, 24:13, 29:25
*requested* [1] - 24:3
*requests* [4] - 29:15, 29:19, 29:21, 29:22
*resisted* [1] - 17:23
*resolved* [1] - 25:21
*respond* [3] - 11:4, 14:13, 28:2
*responded* [1] - 28:4
*response* [5] - 9:22,

11:21, 11:24, 12:13, 14:5
*responsiveness* [1] - 9:11
*rest* [1] - 24:15
*result* [1] - 19:11
*Reuss* [1] - 24:6
*Rex* [2] - 26:6, 26:10
*rightly* [1] - 18:2
*rise* [1] - 2:1
*RPR* [1] - 31:23
*rule* [9] - 16:7, 19:2, 19:14, 20:7, 20:9, 20:11, 20:12, 26:13
*Rule* [1] - 18:11
*ruled* [5] - 12:21, 17:4, 17:24, 19:5, 19:7
*rules* [2] - 20:16, 27:11
*Rutter's* [1] - 17:4

**S**

*sadly* [1] - 13:24
*sauce* [4] - 19:2, 19:14, 19:24
*schedule* [4] - 3:6, 9:25, 10:23, 24:10
*scheduled* [2] - 24:11, 27:18
*scheduling* [2] - 9:11, 10:2
*school* [1] - 17:2
*scope* [1] - 8:21
*seal* [1] - 3:1
*seat* [2] - 2:3, 4:2
*secondly* [1] - 12:18
*Security* [2] - 5:24, 6:1
*SECURITY* [1] - 1:4
*See* [1] - 28:9
*see* [6] - 2:11, 2:12, 2:25, 17:9, 28:5, 29:1
*self* [2] - 14:19, 15:7
*self-executing* [2] - 14:19, 15:7
*sense* [3] - 10:3, 26:16, 28:23
*sent* [4] - 10:15, 11:17, 12:9, 28:21
*sentence* [1] - 30:22
*separate* [1] - 5:10
*September* [10] - 1:9, 3:2, 4:6, 9:23, 13:4, 13:9, 13:18, 20:5, 29:17, 29:24
*serially* [1] - 18:19
*served* [1] - 29:23
*set* [2] - 10:5, 16:15
*setting* [2] - 13:11,

18:22
**settlement** [1] - 30:4
**seven** [1] - 21:4
**sheet** [1] - 28:25
**shockingly** [1] - 4:18
**short** [2] - 11:5, 28:24
**shorten** [1] - 24:24
**shortly** [1] - 12:1
**show** [2] - 22:1, 25:15
**showing** [2] - 21:25, 22:3
**side** [1] - 21:1
**sign** [2] - 21:21, 29:6
**single** [1] - 5:19
**Sistine** [1] - 26:8
**sit** [1] - 5:16
**situation** [1] - 25:23
**six** [1] - 30:1
**sized** [2] - 20:25, 21:1
**skimming** [1] - 6:5
**sleep** [1] - 4:25
**Social** [2] - 5:24, 5:25
**soft** [1] - 13:25
**sometime** [1] - 23:23
**sometimes** [1] - 21:22
**somewhere** [1] - 23:8
**sooner** [1] - 25:2
**sort** [2] - 20:16, 21:15
**sounded** [1] - 5:1
**sounds** [1] - 9:8
**speaking** [3] - 3:25, 4:6, 28:16
**specific** [1] - 23:21
**spend** [1] - 24:15
**spent** [1] - 23:11
**squabble** [1] - 24:19
**squishy** [1] - 21:5
**stand** [1] - 8:2
**standpoint** [1] - 15:21
**start** [5] - 4:7, 4:9, 9:3, 11:9, 20:13
**started** [1] - 17:14
**starting** [2] - 4:8, 20:1
**STATES** [2] - 1:1, 1:11
**status** [4] - 2:4, 12:2, 14:14, 19:19
**stayed** [1] - 18:15
**stenography** [1] - 1:25
**step** [2] - 24:17, 24:24
**still** [3] - 11:10, 25:5, 25:7
**stipulated** [1] - 22:13
**stolen** [1] - 5:25
**stone** [1] - 19:21
**stores** [1] - 15:9
**Street** [2] - 1:8, 1:19
**stridency** [1] - 9:15
**strike** [1] - 28:21
**strong** [1] - 24:8

**struck** [2] - 28:18, 28:19
**stuff** [1] - 17:14
**submitted** [1] - 14:16
**subpoena** [1] - 18:4
**subpoenaed** [1] - 19:23
**successful** [1] - 27:2
**suddenly** [1] - 12:5
**Suite** [1] - 1:14
**summary** [22] - 2:25, 9:17, 9:20, 10:12, 10:18, 10:24, 11:3, 13:1, 13:5, 13:10, 13:11, 13:17, 13:23, 13:24, 14:5, 14:11, 14:14, 15:1, 15:4, 18:8, 24:8, 25:4
**Summer** [1] - 8:25
**supplement** [1] - 14:10
**supplemental** [1] - 14:3
**support** [2] - 14:16, 24:8
**supposed** [2] - 8:9, 28:15
**surprise** [1] - 15:14
**surprised** [1] - 11:2
**surprising** [1] - 15:11
**surprisingly** [1] - 11:8
**susceptible** [2] - 7:14, 7:16
**suspect** [1] - 7:2
**swivet** [2] - 14:13, 25:16
**sword** [1] - 27:20
**system** [1] - 15:5

**T**

**team** [1] - 6:4
**technical** [1] - 15:6
**tee** [1] - 13:14
**ten** [2] - 20:15, 20:16
**terms** [1] - 13:2
**test** [1] - 24:22
**THE** [60] - 1:10, 2:1, 2:3, 2:11, 2:19, 3:23, 4:4, 4:21, 4:23, 5:1, 5:6, 5:13, 5:16, 6:25, 7:6, 7:19, 7:24, 8:14, 9:2, 11:7, 13:22, 15:20, 16:6, 16:9, 16:16, 16:20, 18:22, 18:24, 20:9, 20:12, 20:22, 21:11, 21:23, 22:10, 22:14, 22:19, 22:22, 23:17, 24:12, 24:15, 25:24, 26:2,

26:17, 26:23, 27:13, 27:20, 28:9, 28:12, 28:13, 28:14, 29:12, 29:18, 30:7, 30:13, 30:25, 31:5, 31:8, 31:10, 31:14, 31:17
**theft** [1] - 6:1
**therefore** [1] - 30:13
**they've** [2] - 7:4, 19:22
**third** [1] - 9:17
**thousand** [1] - 4:18
**three** [4] - 9:6, 11:6, 21:3, 27:8
**timeline** [1] - 3:14
**today** [3] - 2:20, 19:8, 20:3
**toes** [1] - 20:15
**together** [5] - 4:21, 5:2, 6:4, 12:2, 21:20
**tomorrow** [1] - 13:13
**tonight** [1] - 4:8
**took** [6] - 12:3, 12:5, 12:13, 12:24, 16:1, 19:6
**tougher** [1] - 14:23
**track** [4] - 5:3, 28:18, 28:21, 28:24
**transcript** [4] - 1:25, 3:1, 18:8, 31:21
**transcription** [1] - 1:25
**transcripts** [1] - 28:12
**trial** [3] - 22:2, 22:6, 22:8
**tried** [1] - 16:25
**truckload** [1] - 26:18
**trying** [3] - 9:3, 24:4, 26:25
**Tuesday** [1] - 27:3
**turn** [1] - 22:22
**two** [12] - 3:9, 5:23, 6:6, 6:10, 8:24, 9:13, 21:3, 21:10, 21:15, 21:16, 24:7, 27:8
**two-page** [1] - 21:16
**type** [2] - 14:18, 20:25
**typically** [1] - 14:20

**U**

**U.S** [1] - 1:7
**under** [4] - 3:1, 9:8, 18:11, 27:11
**Understood** [1] - 16:19
**understood** [1] - 21:22
**UNITED** [2] - 1:1, 1:11
**unless** [1] - 28:18
**unnecessarily** [1] -

13:23
**unnecessary** [1] - 25:6
**unreasonable** [1] - 3:20
**up** [17] - 10:10, 13:14, 13:21, 15:3, 18:10, 18:13, 18:22, 21:25, 22:1, 22:3, 23:25, 26:5, 26:18, 28:9, 31:4, 31:6, 31:12

**V**

**vacuum** [1] - 24:16
**vendors** [1] - 19:23
**Verizon** [6] - 6:2, 16:25, 17:1, 17:8, 21:8, 21:9
**verse** [1] - 24:20
**vibe** [1] - 20:17
**view** [3] - 11:9, 12:5, 16:22
**violated** [1] - 19:3
**visual** [1] - 28:16

**W**

**wait** [1] - 3:19
**waiting** [1] - 30:1
**walked** [1] - 29:16
**watch** [1] - 26:6
**watching** [1] - 28:11
**WAWA** [1] - 1:3
**Wawa** [27] - 1:20, 2:4, 2:14, 2:16, 2:18, 3:10, 5:23, 6:8, 6:14, 6:19, 7:10, 8:1, 8:23, 10:23, 11:15, 12:5, 12:14, 12:22, 15:9, 17:8, 17:14, 18:2, 18:4, 22:18, 25:10, 25:13, 25:15
**Wawa's** [4] - 6:7, 9:13, 10:1, 10:10
**ways** [1] - 16:20
**week** [2] - 12:1, 27:3
**weeks** [4] - 10:9, 11:19, 16:23, 16:24
**whole** [1] - 10:12
**William** [1] - 2:8
**WILLIAM** [1] - 1:14
**willing** [2] - 19:6, 20:2
**window** [1] - 11:5
**wish** [1] - 18:12
**witness** [4] - 15:3, 15:4, 23:22, 25:9
**witnesses** [4] - 8:13, 8:17, 8:19, 18:10
**words** [2] - 6:7, 12:23

**works** [2] - 6:8, 15:5
**worth** [1] - 24:18
**writing** [3] - 20:23, 30:20, 30:24
**wrote** [2] - 12:12, 28:19

**Y**

**year** [9] - 3:2, 4:6, 4:9, 4:10, 18:3, 20:20, 23:16, 29:22, 30:4
**years** [1] - 25:16
**yourselves** [2] - 2:6, 14:13
**YUNICA** [1] - 1:18
**Yunica** [1] - 2:17