```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2                            -  -  -

 3   IN RE:                       :  CIVIL ACTION NO.
                                  :  19-6019
 4   WAWA, INC. DATA SECURITY     :
     LITIGATION                   :  STATUS CONFERENCE
 5                                :
                                  :
 6                                :

 7   _____

                                  James A. Byrne U.S. Courthouse
 8                                601 Market Street
                                  Philadelphia, PA 19106
 9                                December 5, 2023
                                  Commencing at 3:06 p.m.
10   _____

11            BEFORE THE HONORABLE GENE E.K. PRATTER

12   _____

13   APPEARANCES:

14   FOR THE CONSUMER       BERGER MONTAGUE, PC
     PLAINTIFFS:            BY:  SHERRIE R. SAVETT, ESQUIRE
15                          1818 Market Street, Suite 3600
                            Philadelphia, PA 19103
16                          (215) 875-3000
                            ssavett@bm.net
17
                                  -  -  -
18
                  Cherilyn M. McCollum, CCR-NJ, RPR
19                     Official Court Reporter
                 Cherilyn_McCollum@paed.uscourts.gov
20

21

22

23

24
     Proceedings taken stenographically and prepared utilizing
25   computer-aided transcription
```

*United States District Court*

```
 1    APPEARANCES CONTINUED:

 2
      FOR THE CONSUMER          FINE, KAPLAN AND BLACK, RPC
 3    PLAINTIFFS:              BY:  ROBERTA D. LIEBENBERG, ESQUIRE
                               BY:  GERARD A. DEVER, ESQUIRE
 4                             One South Broad Street, Suite 2300
                               Philadelphia, PA 19107
 5                             (215) 567-5872
                               rliebenberger@finekaplan.com
 6                             gdever@finekaplan.com

 7
      FOR THE CONSUMER          NUSSBAUM LAW GROUP, PC
 8    PLAINTIFFS:              BY:  LINDA P. NUSSBAUM, ESQUIRE
                               1133 Avenue of the Americas, 31st Floor
 9                             New York, NY 10036-6710
                               (917) 438-9189
10                             lnussbaum@nussbaumpc.com

11
      FOR THE CONSUMER          SHUB & JOHNS, LLC
12    PLAINTIFFS:              BY:  BENJAMIN F. JOHNS, ESQUIRE
                               Four Tower Bridge
13                             200 Barr Harbor Drive, Suite 400
                               West Conshohocken, PA 19428
14                             (610) 477-8380
                               bjohns@shublawyers.com
15

16    FOR THE DEFENDANT         MORGAN LEWIS & BOCKIUS, LLP
      WAWA, INC.:              BY:  GREGORY T. PARKS, ESQUIRE
17                             2222 Market Street
                               Philadelphia, PA 19103
18                             (215) 963-5000
                               gparks@morganlewis.com
19

20
      FOR THE OBJECTOR          HAMILTON LINCOLN LAW INSTITUTE
21    THEODORE H. FRANK:       CENTER FOR CLASS ACTION FAIRNESS
                               BY:  ADAM E. SCHULMAN, ESQUIRE
22                             1629 K Street, NW, Suite 300
                               Washington, DC 20006
23                             (610) 457-0856
                               adam.schulman@hlli.org
24

25
```

*United States District Court*

```
1    ALSO PRESENT:

2         CHRISTIAN LEVIS, ESQUIRE
          LOWEY DANNENBERG, PC
3
          GARY F. LYNCH, ESQUIRE
4         LYNCH CARPENTER, LLP

5         JEANNINE M. KENNEY, ESQUIRE
          HAUSFELD, LLP
6
          MINDEE J. REUBEN, ESQUIRE
7         LITE DePALMA GREENBERG & AFANADOR, LLC

8         THEODORE F. FRANK, OBJECTOR

9

10                              -   -   -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Call to order of the court.)
 2         THE COURT:  Hi, everybody.  Take your seats.  Good
 3    afternoon.
 4         All right.  This is a gathering in the consumer track
 5    case in the In Re Wawa Data Security Litigation docketed
 6    19-6019.  Let's start out by taking attendance.
 7         MR. JOHNS:  Good afternoon, Your Honor.  Ben Johns for
 8    the consumer plaintiffs.
 9         MS. NUSSBAUM:  Good afternoon, Your Honor.  Linda
10    Nussbaum for the consumer plaintiffs.
11         MS. LIEBENBERG:  Good afternoon, Your Honor.  Bobbi
12    Liebenberg for the consumer plaintiffs.
13         MS. SAVETT:  Good afternoon, Your Honor.  Sherrie
14    Savett for the consumer plaintiffs.
15         MR. PARKS:  Hello, Your Honor.  Greg Parks, Morgan
16    Lewis, for defendant Wawa, Inc.
17         MR. SCHULMAN:  Good afternoon.  Adam Schulman for
18    objector Theodore Frank, and, per the Court's instructions, I
19    have Mr. Frank with me.
20         THE COURT:  Great.  Welcome.
21         Anybody else want to get their presence noted here?
22         MR. LYNCH:  Hi, Your Honor.  Gary Lynch for the
23    financial institution plaintiffs.  It sounds like you called
24    the consumer case first.
25         THE COURT:  Everybody is welcome.
```

*United States District Court*

1          MR. LYNCH:  We're here.

2          MS. REUBEN:  Good afternoon, Your Honor.  Mindee

3 Reuben for the financial institutions.

4          THE COURT:  Nice to see you.

5          MS. REUBEN:  Nice to see you, Your Honor.

6          THE COURT:  It's nice to see everybody.  I haven't

7 seen Ms. Reuben for a while.

8          MS. KENNEY:  Hello, Your Honor.  Jeannine Kenney for

9 the financial institutions.

10          MR. LEVIS:  And Christian Levis for the financial

11 institutions.

12          THE COURT:  Anybody else?

13      Anybody here from the Third Circuit?  Just want to know.

14 Anybody willing to disclose themselves?

15      I thought over and over again about what we're going to

16 do here today, and I frankly don't know that I've come up with

17 anything particularly insightful, so I think I will start out

18 by asking Mr. Frank's attorney what he believes is accomplished

19 and what do you think we need to do.

20          MR. SCHULMAN:  Your Honor, would you like me to --

21          THE COURT:  Whatever you think is appropriate.

22          MR. SCHULMAN:  I'm happy to approach the podium.

23          THE COURT:  If you are happy, I'll be happy.

24          MR. SCHULMAN:  Well, we think that with the vacation

25 of the fee award, under the terms of the settlement, the

1  settlement for the consumer track is still in place.  Because

2  of the third amendment, we withdrew our objection to the

3  settlement itself.  The Third Circuit vacated this Court's fee

4  award for reconsideration of the reasonableness in light of the

5  amounts actually claimed by the class.  That's how we read the

6  opinion.

7       We're happy to brief further for Your Honor if you wish

8  to do that.  We had a call last week with the class counsel

9  and --

10      THE COURT:  Do you think they are standing too far

11 apart or too close together?

12      MR. SCHULMAN:  The class counsel?

13      THE COURT:  And the defense counsel.

14      MR. SCHULMAN:  In terms of --

15      THE COURT:  We don't want any collusion here, do we?

16      MR. SCHULMAN:  We didn't use the word "collusion" in

17 our briefing.  It's public record.  We never used the word

18 "collusion."  It's conflict of interest.

19      THE COURT:  What do you think the conflict is?  I

20 really am serious when I say I want to know what it is, because

21 I truly think all of the appropriate considerations were

22 addressed, some that didn't even make it into the Third Circuit

23 opinion, and so I'm curious to know what it is we next ought to

24 do from your perspective.

25      MR. SCHULMAN:  Well, I think there's two main

—————— *United States District Court* ——————

1    considerations.  I would put them in two large buckets first.

2    The Third Circuit obviously was somewhat concerned with the

3    fact that this Court --

4              THE COURT:  The panel.

5              MR. SCHULMAN:  The Third Circuit panel, right, was

6    somewhat concerned with the fact that this Court had concluded

7    that the constructive common fund was the full amount made

8    available even though less than that was claimed.  That's

9    number one.  Number two, it seemed concerned about the clear

10   sailing and kicker provisions of the settlement.  And as we

11   argued before, Your Honor ruled that the fact that they removed

12   the kicker provision was, in fact, a welcome change, as the

13   Third Circuit said, but it did go to the quality and efficiency

14   of the representation.

15             THE COURT:  Let me ask.  This is part of the practical

16   issue that I see.  How many things that are discussed in

17   negotiating a settlement must either be disclosed or confessed?

18   Those of you who might have experienced confession in your

19   youth might recognize this concept.  But there are things that

20   are negotiated that are then negotiated out of a deal, and yet

21   what I read in this opinion is all of that must be confessed in

22   order to know what the net result is.  I don't quite understand

23   how that works.

24             How do you envision that?

25             MR. SCHULMAN:  Well, I think part of it is the

1    attorney fee award is a fundamental component of the class

2    action settlement proceeding.  That's why you see the

3    paragraphs that the panel spent walking through the history of

4    23(h) and the equitable practice before that.

5         THE COURT:  For example, let's say in negotiating any

6    case, it doesn't matter whether it's a rear-end collision or

7    something like this or, you know, price fixing of eggs, just to

8    give some acknowledgement, there are many things discussed and

9    rejected in negotiating, and yet, according this opinion, all

10   of that has to be flyspecked in order to see what has

11   legitimately been negotiated out of a deal.  How does that

12   work?

13        MR. SCHULMAN:  Well, I don't think that that is the

14   best interpretation of the opinion.  I don't think that it's --

15   I think that the opinion, as long as there is arm's length

16   negotiation, you can trust the parties to get to the right --

17        THE COURT:  I can't trust the parties with anything

18   here according to this.

19        By the way, I meant to mention Judge Welsh says hello to

20   everybody.

21        MR. SCHULMAN:  Well, I don't think that the decision

22   casts doubt on the total amount that was reached.  The arm's

23   length negotiation ensures that the total sum, the 6.2 million

24   constructive common fund, is an adequate amount, but the

25   inherent conflict of interest is why the Court needs to look

*United States District Court*

```
 1    into the allegation --
 2              THE COURT:  What's the conflict of interest?
 3              MR. SCHULMAN:  It's the principal agent conflict
 4    between class counsel and their clients, the class members.
 5    Because every dollar the defendant is willing to put up has to
 6    go --
 7              THE COURT:  How do you know that?
 8              MR. SCHULMAN:  That's just an -- you know, it's the
 9    economic reality that Judge Becker has talked about in --
10              THE COURT:  You are speaking of the dollars as
11    fungible.
12              MR. SCHULMAN:  Right.
13              THE COURT:  Maybe the dollars are not fungible.  Maybe
14    when there is principle involved, l-e, not everything is
15    principal, a-l.  Or the reverse, perhaps.
16              MR. SCHULMAN:  Well, here I would say that's not the
17    case because Wawa agreed to get rid of fee segregation.  We
18    showed that every dollar made available they were willing to
19    give to the class when they removed the reversion in our Third
20    Amended Settlement.
21              THE COURT:  How do you know that?
22              MR. SCHULMAN:  I mean, that's just -- because they
23    were willing to do it.
24              THE COURT:  How do you know that?
25              MR. SCHULMAN:  I mean, what do you mean how do I know
```

1    that?  They agreed to it.  We stipulated to it.  It's on the

2    docket, Your Honor, that they, you know, settled.  So for them

3    the amount, you know, that's -- if Your Honor wants to make a

4    finding otherwise --

5         THE COURT:  No, no.  What I truly want is what you

6    think is the roadmap now.

7         MR. SCHULMAN:  Oh, what we do now.  Well, we can

8    submit further briefs if Your Honor --

9         THE COURT:  The last thing I need is further briefs.

10        MR. SCHULMAN:  I mean, we have had some

11   correspondence --

12        THE COURT:  I want a practical roadmap.

13        MR. SCHULMAN:  We've had some correspondence about

14   whether there could be a negotiated resolution between what we

15   think is the reasonable fee -- we suggested in our last filing

16   of 25 percent -- and what they suggested of the full 3 million,

17   3-point-some-odd million.

18        THE COURT:  What do you do with the value of the

19   injunctive relief, which, of course, there is no reference to

20   in this Third Circuit opinion?  Which astonishes me, frankly.

21        MR. SCHULMAN:  So the value of the injunctive relief,

22   under precedent, can go to award 30 percent rather than

23   25 percent.

24        THE COURT:  Where is that formula?

25        MR. SCHULMAN:  *Staton v. Boeing* is the case that --

*United States District Court*

```
 1              THE COURT:  And therefore what?

 2              MR. SCHULMAN:  Well, I don't want to reveal our

 3    settlement negotiations with chance counsel --

 4              THE COURT:  Everybody is supposed to reveal their

 5    negotiations according to this.  Nothing is off-limits anymore,

 6    is it?  I need a full list of everything you all have discussed

 7    and the resolution of it in order to be satisfied that there is

 8    no collusion.  How do I know there's no collusion with you?

 9              MR. SCHULMAN:  So I think they used the word

10    "collusion," but I think that was shorthand for this

11    conflict-of-interest problem.

12              THE COURT:  It's fairly short shrift, is it not?

13              MR. SCHULMAN:  Yeah, it's really a semantic problem.

14    We've seen other courts use the word "collusion" when I don't

15    really think that they are talking about --

16              THE COURT:  Not in my cases.  I went through a very

17    thorough review here, and I want to now what do we do.

18              MR. SCHULMAN:  Well, we are not asking for discovery

19    into those negotiations, if that's what you are getting at.

20              THE COURT:  I'm not getting at anything.  I want to

21    know what you are getting at.

22              MR. SCHULMAN:  I mean, maybe it would help you to hear

23    where the plaintiffs' stand on the question of -- because we've

24    proposed them an offer what we think would be a fair

25    resolution, and I haven't heard back from them.
```

1          But we're happy to brief the question further.  We

2    didn't ask for discovery of the negotiations.  We take --

3          THE COURT:  If you were going to brief something, what

4    is it, pray tell, would you be briefing?

5          MR. SCHULMAN:  The impact of the Third Circuit's

6    decision --

7          THE COURT:  That's why we're here today.

8          MR. SCHULMAN:  -- on the award of fees.

9          THE COURT:  That's why we are here.

10    I think your client is speaking to you.

11          MR. SCHULMAN:  Do you want to ask the Court?

12    He's more than competent for you to address him.

13          THE COURT:  No.  I literally want to know what you and

14    the other lawyers have discerned we're supposed to do now.

15    Because for sure I have every confidence that this was a

16    properly negotiated result.  I have every confidence that the

17    lawyers involved in this case have to a person been honorable,

18    forthcoming, and respectful of their clients' interests.

19          I want to know, in truth and in good faith, what it is

20    that you actually think is supposed to be done.  Am I supposed

21    to bring everybody up here and make them swear that they didn't

22    collude?

23          MR. SCHULMAN:  No.  I really do think that was just

24    semantic shorthand for the issue of considering these conflict

25    of interests, the fact --

—— *United States District Court* ——

1           THE COURT:  What are the conflicts?  I still don't

2   know.

3           MR. SCHULMAN:  The inclusion of the clear sailing and

4   kicker provision in the initial settlement.  Those serve class

5   counsels' interests --

6           THE COURT:  If those words were ever used, how can

7   they be taken back?  That's what's so difficult.

8           MR. SCHULMAN:  You mean the "collusion" word, Your

9   Honor?

10          THE COURT:  The clear sailing.  Okay, talk about

11  shorthand, that is a shorthand term.  And if that was ever

12  used, that can't be returned from the atmosphere, can it?  So

13  now what I do with that?

14          MR. SCHULMAN:  In our view, that bears on the quality

15  of the representation.  The efficiency of the representation

16  needs to be taken into account at the fee-setting stage.

17          THE COURT:  How do I do that, that I haven't already

18  done, or that Judge Welsh hasn't already done?

19          MR. SCHULMAN:  I don't know if Judge Welsh considered

20  what was a reasonable fee.  I don't recall Judge Welsh stating

21  that she did.

22          THE COURT:  Well, I'm pretty sure she was involved in

23  the overall negotiating of the settlement.

24          MR. SCHULMAN:  That's fair.  And our position would be

25  that --

1          THE COURT:  I'm glad that's fair.

2          MR. SCHULMAN:  -- it's a nondelegable duty of this

3    Court to review fees.  I think that Third Circuit opinion is

4    clear at least on that much.

5          THE COURT:  So other than you briefing something, what

6    else do you think needs to be done?

7          MR. SCHULMAN:  Well, like I said, we had

8    correspondence with class counsel.

9          THE COURT:  Well, you don't need me for you to talk to

10   them about what you want them to respond to.

11         MR. SCHULMAN:  I agree with that, and I didn't ask for

12   you to hold this hearing, so we're here and I brought my client

13   per the Court's request.

14         THE COURT:  Well, you are the operating party here.

15   It's his appeal and you are his spokesperson.

16         MR. SCHULMAN:  Yes.

17         THE COURT:  So as I understand it, given the fact that

18   we're in football season, you are lateraling to the plaintiffs'

19   lawyers.  You want me to talk to them now.

20         MR. SCHULMAN:  Well, you can ask them what their

21   position is.  We did correspond with them about a potential

22   briefing schedule, if Your Honor wants briefing.

23         THE COURT:  How many times have I said I wanted

24   briefing?

25         MR. SCHULMAN:  None.  We were not -- nobody was aware

─────────────── *United States District Court* ───────────────

1   of what you were going to ask for, so we were just being

2   prepared.

3            THE COURT:  All right.  Why don't you take a seat.

4        Anybody else want to offer any perspectives?

5            MS. SAVETT:  May I, Your Honor?

6            THE COURT:  Sure.

7        What do you think I should be doing?

8            MS. SAVETT:  We think that Mr. Schulman has completely

9   misconstrued what the Third Circuit said.  The Third Circuit

10  instructed the Court to consider two issues on remand.  The

11  first one is --

12           THE COURT:  Reasonableness of the fee award and

13  apportionment of the benefit and the presence of side

14  agreements.  Those are two things.

15           MS. SAVETT:  That's right.  Thank you.

16           THE COURT:  I thought I had done both of those things,

17  so what am I supposed to do now?

18           MS. SAVETT:  We thought so, too.  But the Third

19  Circuit remanded it for a more fully developed factual record

20  with respect to the alleged or purported clear sailing and

21  reverter issues, and we can provide that, but we want to give

22  you a short outline of what we're going to say.

23       Our proposal is to submit declarations dealing with the

24  purported clear sailing and reverter issues, which we think

25  neither was present.

────────── *United States District Court* ──────────

```
 1              THE COURT:  This is the confessional part.
 2              MS. SAVETT:  The Court of Appeals -- and another
 3  misconstruction, we believe, of Mr. Schulman is that the Court
 4  of Appeals repeatedly emphasized that the determination of
 5  reasonableness of the fee award is within the Trial Court's
 6  discretion.  They said it at least four times:  on pages 10,
 7  16, 21, and 19.  And the Court rejected objector's argument for
 8  the adoption of a per se rule for the reasonableness of a fee
 9  award that it should be based solely on the amounts claimed by
10  class members.  And, in fact, it was briefed greatly, and Your
11  Honor considered it all, but the Third Circuit law is very
12  clear that the opposite is usually accepted in the Third
13  Circuit, which is that you look at what was offered to the
14  class, not just what was claimed.  But he beliefs that -- he
15  stated that the Court made a per se rule that you can only look
16  at the claims that were actually made, and that's just not what
17  the Court said at all.  The Court said that -- and I'm quoting
18  from the opinion of the Third Circuit -- Courts can evaluate
19  the reasonableness of a percentage-based award by reference to
20  either amounts paid or amounts made available.
21              So this Court has discretion to decide what is the
22  proper way to look at reasonableness, between those two
23  options.  And the offers that have been made to us are only
24  based on the option of counting the claims that were made, and
25  they are not acceptable to us.
```

```
 1          The Court also stressed the determination of which
 2   approach to use remains with the District Court, at page 19.
 3   And as Your Honor just pointed out, the injunctive relief is
 4   particularly valuable here because many of Wawa's customers are
 5   repeat loyal customers --
 6          THE COURT:  One of the things I find -- well, I guess
 7   the Third Circuit's words were they found things bewildering.
 8   One of the things that I am bewildered by, having spent many
 9   years, actually, working on the rules committee where we talked
10   about revising Rule 23, both to deal with objectors and what to
11   do with objectors and the so-called holdups there, but also
12   valuing the concept of settlement classes and valuing
13   injunctive relief.  There are many, and I know I'm not telling
14   you now, but I am telling somebody, that there are many class
15   actions that focus principally on injunctive relief, many, and
16   they are valuable, and they only come about as a result of hard
17   work by lawyers on both sides.
18          MS. SAVETT:  Well, we appreciate that so much that you
19   said it, Your Honor.
20          THE COURT:  That's what bewilders me.
21          MS. SAVETT:  We hired an expert to help us to analyze
22   what was wrong with their system, how they could improve it,
23   how it could be supervised in the future.  This was a major
24   benefit.  And you said it better than I can say it.  I want to
25   just read your words from the preliminary approval decision on
```

*United States District Court*

1   this point.  You said:  The settlement provides class members

2   with an immediate tangible benefit in the form of a Wawa gift

3   card and, in addition, to improve security when using a payment

4   card at Wawa.  I mean, that was one of the most significant

5   parts of the settlement.

6           THE COURT:  In fairness, I do understand why gift

7   cards are a little bit of a --

8           MS. SAVETT:  They are not exactly cash, but they --

9           THE COURT:  People get excited by gift cards.  I

10  understand that.  I'm really focused on the practices that were

11  put into place.

12          MS. SAVETT:  And also the fact that we had it as a

13  mandate in the settlement that there were going to be audits

14  and that they had to be enforced for two years.

15          THE COURT:  If I were to go through this -- these

16  machinations and create a formula, what would you be giving me

17  in the terms of what you or Wawa's counsel are giving me to

18  plug into the formula to value the injunctive relief?

19          MS. SAVETT:  Not everything can be done by a

20  mathematical formula.  And the idea that every single Wawa

21  customer, and mostly repeat customers who are in our class, is

22  going to go to the gas station or buy their goods and not be

23  afraid that their card will be stolen, it clearly has a value.

24          And then you have to look at it in light of all of the

25  other reasonableness factors, which you did look at.  I mean,

1   you looked at the percentage, you looked at what was offered,

2   you looked at what was the claims rate compared to other data

3   breach cases.  You did a very, very thorough analysis of

4   reasonableness.

5         THE COURT:  So what am I supposed to do now?

6         MS. SAVETT:  Well, I think, for one thing, you have

7   the discretion.  And that's clear.  And you have your choice of

8   what you think is the better way to look at the benefit here.

9   Is it by what was offered to the class or what was claimed?

10        And then on the last point, Bobbi Liebenberg is going to

11  address these purported side agreements and reverters which

12  don't even exist and never did, but just putting --

13        THE COURT:  But now you got to pretend they did, so

14  now you have to confess them.

15        MS. SAVETT:  I don't have anything to confess, because

16  the agreement was absolutely silent -- I don't want to take

17  away Bobbi's argument, but it didn't say anything about a

18  reverter to the defendant's counsel, at all.  And so I will let

19  Bobbi handle those issues.

20        But I want to get back to your question about what

21  should be the formula and what should we do now.  So, first of

22  all, you have to clear away the dust about the so-called side

23  agreements and reverters.  But then, looking at the valuation

24  of the settlement, you look at all the reasonableness factors,

25  most of which you already looked at.  But one of them that the

1    courts didn't even consider in the Third Circuit is any value

2    to the injunctive relief.

3         THE COURT:  That's why I asked.  How do I value that?

4    How do I plug that into the formula?

5         MS. SAVETT:  I think you plug it in just by common

6    sense.  That there were hundreds of thousands of Wawa customers

7    in that class -- there were 22 million, actually -- and most of

8    them go back to Wawa all the time and they don't have to worry

9    about their card experiencing a fraud because Wawa really,

10   really had to make major changes, $35 million of changes.  And

11   the other factor that is really important about our settlement

12   is we made it enforceable by the Court.  For two years there

13   will be audits and they have to ensure in writing that they

14   complied and that they test their procedures and it's still

15   working well to protect consumers.

16        Now, I can't give you a number how you evaluate that,

17   but it's clearly a benefit.

18        THE COURT:  Maybe Wawa could tell me what it cost them

19   to put all this in place.

20        MS. SAVETT:  Well, we know that.  That's in the

21   record.  $35 million.

22        THE COURT:  Well, it is apparently not in the record

23   clear enough.

24        MS. SAVETT:  Well, we can certainly put in some

25   further declarations on that.

1          THE COURT:  I thought it was clear, but --

2          MS. SAVETT:  I thought that it was actually in the

3    papers about the 35 million.  But we can put in factual

4    declarations that would support all the benefits of the

5    injunctive relief.  That's one step that I think that we could

6    take concretely.

7          THE COURT:  Well, it occurs to me, although this may

8    sound facetious, but one of the things I was thinking of is

9    assigning you each a different century to research.

10         MS. SAVETT:  Please don't do that.

11         THE COURT:  Well, I was going to ask you, which

12   century would you like, the 12th century or the 14th or the

13   18th?

14         MS. SAVETT:  I don't think you expect an answer to

15   that.

16         THE COURT:  Well, it seems to be an interesting topic

17   to consider.

18         MS. SAVETT:  By the way, one other factor when you did

19   your reasonableness analysis, and I think you already did it so

20   thoroughly, is the fact that we, as lead counsel, who worked

21   very hard on this case, gave up 25 percent of our time when we

22   even made the application, and we were still negative by

23   point -- negative 78 percent, and now with two more years since

24   the settlement and appeal and everything else, it's super

25   negative, probably down to minus 50 percent.

```
 1              THE COURT:  That part I don't know.
 2              MS. SAVETT:  But those are facts that we can say.
 3         And I do think it's important for my colleague Bobbi
 4    Liebenberg to go through each one of these two accusations
 5    about a purported side agreement and a reverter, or more
 6    nefariously, as Mr. Schulman puts it, a kicker, none of which
 7    existed.  So I would like to yield to my colleague Bobbi.
 8         Thank you.
 9              THE COURT:  Not to suggest anything -- I mean, I
10    understand, I respect the notion that everybody has got an axe
11    to grind here, but I am earnest in saying that I truly do not
12    know what is missing from the evaluation of this record,
13    because of my routine.  I mean, not to mean that I'm only a
14    routine follower, but this is pretty straightforward as an
15    evaluation, and I don't think there was anything material that
16    was missed.  And so I am earnestly asking what anybody thinks
17    needs to be done now.  Not make work, not, you know, just for
18    fun, not looking for evilness that doesn't exist.  I have seen
19    nothing in this case to make me think that this wasn't an
20    honorable, hard-fought resolution of a case.  Perhaps you
21    should have been fighting longer, perhaps we shouldn't have
22    ended this as quickly as we did, perhaps it should not have
23    been as economical as it was, perhaps it should not have been
24    as efficient, and then perhaps it wouldn't have been -- the
25    result wouldn't have been vacated.  I honestly don't know.  So
```

1  I want to know your best efforts, all counsel, of what needs to

2  be done now.

3          MS. LIEBENBERG:  I absolutely agree, Your Honor.  One

4  thing we would want, I will tell you, is that we need a

5  finding --

6          THE COURT:  That is probably the safest thing, to tell

7  me you agree with me.  I do really want to know.

8          MS. LIEBENBERG:  I can tell you in terms of what we

9  know, and that is a finding that there was no side agreements,

10  that there was no collusion, because there was none.  This

11  negotiation of the settlement was hard-fought, it was in good

12  faith, it was done under the auspices of Magistrate Judge

13  Welsh.  We were glad to hear Mr. Schulman say they are not

14  arguing that there was no collusion, but with respect --

15          THE COURT:  They are not arguing there wasn't

16  collusion.

17          MS. LIEBENBERG:  Yes, that they are arguing there was

18  collusion.

19          With respect to the purported clear sailing agreement,

20  we think it's important to really look at the paragraph 78 of

21  that agreement, because, in fact, it is not a clear sailing

22  agreement if you look at the language.  All paragraph 78

23  required was that Wawa shall cooperate with class counsel, if

24  and as necessary, in providing information class counsel may

25  reasonably request from Wawa in connection with preparing the

1    petition.  There is no language in paragraph 78 where Wawa

2    agrees that it would not contest the fee, that it would not

3    object to the fee, and it's not even within the definition of a

4    clear sailing agreement as defined by the Third Circuit in its

5    own opinion at pages 7 to 8 at Note 3 where it says:  A clear

6    sailing agreement in a class action settlement means defendants

7    agree not to contest class counsel's request for attorney's

8    fees up to an agreed amount.

9              THE COURT:  Where did that come from?

10             MS. LIEBENBERG:  I'm not sure, Your Honor.  If you

11   look at that paragraph, and we can do findings of fact that

12   make that very clear, paragraph 78 was merely a cooperation

13   provision that was intended to require Wawa to provide

14   information concerning the scope and the value of the relief,

15   including the value of the injunctive relief.

16             THE COURT:  One of the things that I find bewildering

17   about what to do now is -- and lawyers who work with me fairly

18   frequently know that I am by no means a, you know, a devoted --

19   a devotee of settlements.  I'd rather have trial, frankly.  But

20   the idea -- those people who do like settlements want there to

21   be cooperation.  They want to eliminate controversy.  They want

22   to eliminate more fighting.  So I find there to be some

23   disconnect, and that's why I'm befuddled and bewildered --

24   sounds like a song, an old song.

25             Are we supposed to reserve more acrimony as part of a,

1  quote, settlement?  It's a peculiar irony.

2          MS. LIEBENBERG:  I agree, Your Honor.  But what's

3  interesting, if you look at what happened in this case, counsel

4  for Wawa did provide cooperation in terms of giving us

5  information that was relevant to the reasonableness of the fee.

6  Mr. Parks provided a declaration with respect to the injunction

7  component, which is what Ms. Savett was referring to, in terms

8  of why these enhanced security features were particularly

9  important for a repeat customer base, and that was additional

10  information that counsel for Wawa provided with respect to,

11  yes, the value of the gift cards, the fact that within the last

12  two years gift cards had a 97 percent usage rate, the number of

13  products that could be purchased for five dollars or less.

14  That was information that all went to the reasonableness of the

15  fee, and that was consistent with paragraph 78, which, as I

16  said, was a cooperation provision.  It was not -- you can

17  search.  There is no language in paragraph 78 where Wawa said

18  it would not object or that it would not contest the fee.

19          And then turning to the so-called kicker, I think this

20  is another area where we would like a strong finding, because

21  it is important to emphasize that the parties did not intend,

22  we didn't discuss, we didn't agree that there would be a

23  reversion of the fees if the Court didn't award the full

24  amount.

25          THE COURT:  The weird thing here is, I'm trying to

1   envision a settlement, either a preliminary hearing or a final

2   settlement approval, where I have a laundry list to go through

3   and force people to say they did not discuss everything.

4           MS. LIEBENBERG:  Right.

5           THE COURT:  It's a peculiar vision that seems to be

6   out there.  That's why I say earnestly I want to know what you

7   all think needs to be done now in order to have a settlement

8   that is -- where the filigree is acrimony.

9           MS. LIEBENBERG:  I'm not sure, Your Honor, to respond

10  to the Third Circuit analysis, but it seems to me that it is

11  clear, that, you know, we can provide these types of findings

12  that would, if, in fact -- hopefully there is never another

13  appeal -- it went up again, that the Third Circuit would have

14  record to show, yes, there were no side agreements.

15          THE COURT:  It seems to me that the issue here is the

16  only way you all will know -- it doesn't matter to me whether

17  there's an appeal or not.  I've got work to do one way or

18  another -- but the only way you are all going to know that is

19  if you reduce your fee.  I mean, that -- that -- not to be too

20  practical about it, but that seems to be where the rubber meets

21  the road.

22          MS. LIEBENBERG:  Well, Your Honor, we believe you

23  still have the discretion to go back and review this, and we

24  believe those factors still support the original fee and

25  certainly not what is contemplated by Mr. Frank.

1              THE COURT:  I mean, he's entitled.  He's a class

2    member.  He can object, you know, as long as it's within the

3    rules and Rule 23 and whatever additions, changes that have

4    been made to that.  Although it is, just as a matter of

5    interest, it was the attention of a very large collection of

6    people to evaluate -- I don't want to be pejorative about

7    this -- to evaluate demands being made by objectors as a way of

8    pacifying objectors to allow for settlements to go forward in

9    class actions.  That is another irony.  It doesn't belong in

10   this case, of course.  I'm not suggesting that's what happened

11   here, nor am I suggesting there was any collusion among counsel

12   in this case.  I think everybody is as clean as the driven snow

13   here, should we have snow here this winter.

14             All right.  So what you are suggesting, Ms. Liebenberg,

15   is that each of the lawyers would sign an oath that they did

16   not engage in any untoward discussion with each other, that you

17   harbored no evil thoughts, that you had no discussions, that

18   you didn't exchange tit for tat or whatever.  I have no formula

19   for --

20             MS. LIEBENBERG:  I think that's important.  And I

21   think it's also important, as Ms. Savett alluded to, paragraph

22   77 of the earlier version of the settlement agreement was

23   merely a factual recitation that we were going to put in a fee

24   petition, we were going to ask for service awards, we were

25   going to ask for expenses.  It never addressed what would

1  happen if the Court awarded less.  The agreement was silent.

2  And so because the agreement was silent, it was later -- it was

3  later clarified in the Third Amended Settlement Agreement to

4  explicitly provide that if the Court awarded less than the

5  3.2 million those funds would go to Tier 1, Tier 2 class

6  members who were getting gift cards.

7          THE COURT:  What you're saying is there is no

8  assurance that that's what would happen at all.

9          MS. LIEBENBERG:  It was silent prior, in the earlier

10  version.  But I think it's also important that in the

11  objector's two briefs in the Third Circuit and in the brief

12  before this Court, after the Third Amended Settlement Agreement

13  was executed, there was no argument made that the Third Amended

14  Settlement Agreement was a product of collusion because in a

15  prior version the prior paragraph 77 existed.  You know, there

16  is -- somehow the Third Circuit wanted, as you said, to look

17  back and see whether or not that somehow tainted the agreement.

18          THE COURT:  Well, to think about how to do that.

19          MS. LIEBENBERG:  Yes.  Well, there was none and

20  they've never raised it.  It was never raised on appeal.

21          So we do think that there are some issues that can be

22  clarified by declarations, and we do believe the Court has

23  discretion to review the fee and I think, again, amplifying the

24  record, you know, all of the factors that the Court considered

25  properly in determining that fee.

```
 1          THE COURT:  Have you and the objector's counsel

 2   discussed the substance or the topics that should be addressed?

 3   I don't want to hear about dollar amounts.  That's frankly too

 4   crass, because I don't know what the right dollar amount is.  I

 5   know what the right material terms are.  I know what the right

 6   qualitative, but I haven't heard from anybody here how I turn

 7   qualitative into quantitative.

 8          MS. LIEBENBERG:  No, we have not discussed what the

 9   formula would be to look at that.  We did discuss some of these

10   issues with respect to our sort of anger about this issue about

11   that there were -- you know, that it's been characterized as

12   side agreements, to tell you the truth.

13          THE COURT:  Well, according to Mr. Schulman, those

14   were just the Court of Appeals' unfortunate use of terms.

15          MS. LIEBENBERG:  We took it pretty personally.

16          THE COURT:  Well, yes.  I can't speak for them.

17          MS. LIEBENBERG:  Thank you, Your Honor.

18          THE COURT:  All right.  Let me hear from Wawa's

19   counsel.  I don't want to keep you from enjoying this.

20          MR. PARKS:  Good afternoon, Your Honor.  Greg Parks

21   for Wawa.

22          Wawa actually does not have an axe to grind here.  We

23   don't have a lot at stake on this because the award of

24   attorney's fees comes out of our pocket, those dollars don't

25   come back -- I'm sorry.  What's that?
```

1          THE COURT:  You were not a colluder?

2          MR. PARKS:  We were definitely not a colluder, Your

3     Honor, and happy to put in some facts to that effect, but I am

4     counsel of record in this case and do have an interest in

5     moving it forward.

6          So, like you, I have read and reread the Third Circuit's

7     opinion to try to figure out exactly the question you've asked,

8     which is, now what?  And I think from my perspective the "now

9     what" is two pieces, as we've all kind of acknowledged.  The

10    first piece is looking at the amount of the fee award relative

11    to either the amount claimed or the amount made available and

12    to make it clearer, although I think your original opinion was

13    pretty clear on this point, but I think the Third Circuit

14    disagreed and felt like you thought you were constrained to

15    only look at the amount made available and you didn't think you

16    were allowed to look at the amount claimed.  And I think a

17    revised opinion from this Court could make it clear that there

18    were a number of factors that caused Your Honor to decide --

19         THE COURT:  I always have to say -- I'm not normally

20    accused of being sheepish.

21         MR. PARKS:  No, I wouldn't have thought.

22         So but I think you could say there are a number of

23    factors that caused Your Honor to decide to look at the amount

24    made available, and those factors could include things like the

25    injunctive relief.  So I think as you struggle with how do I

```
1    value that $35 million --

2            THE COURT:  This is my frustration.  The injunctive

3    relief was considered initially and it appears nowhere in the

4    circuit opinion.

5            MR. PARKS:  I agree.  It should have gotten more

6    weight in the analysis.

7            THE COURT:  It has value.  It has tremendous value.

8            MR. PARKS:  And Wawa agrees and Wawa believed that was

9    an important thing to do for our customers and an important

10   part of the settlement.  And I will vouch for the plaintiffs'

11   lawyers, especially Mr. Ben Johns there, has hounded Wawa and

12   me about getting all of the reports and the audits and the

13   compliance statements and the affidavits and everything else

14   that are called for in that settlement agreement.  I can set my

15   watch to the fact that Ben Johns will send me a reminder to get

16   those things to him on time.  So they've been very vigorous

17   about that, and I think that's part of the reason why Your

18   Honor can say, "I looked at the amounts made available."

19           In addition, I think it's appropriate, and the Third

20   Circuit opinion sort of hints at this, that in exercising your

21   discretion you can look at facts that are specific to this

22   case.  And the facts that are specific to this case is this is

23   a data breach case, meaning that information got out.  And for

24   some people that might have meant something bad happened, a

25   fraudulent charge appeared on their credit card --
```

*United States District Court*

1                THE COURT:  This is why you have tiers.

2                MR. PARKS:  This is why there are tiers.  But I think

3     it's also a factor in determining that because so many people

4     were not harmed, the class counsel, what they really need to do

5     was protect against the possibility that way more people that

6     Wawa said were harmed were in fact harmed, and so they made

7     available a larger amount of money in case that's the fact.

8     And having done that, I think they deserve the credit for

9     having made available that larger sum of money to kind of force

10    Wawa to put its money where its mouth is.  That we said, look,

11    we don't think a lot of people were hurt here, but we are

12    willing to put that forward and say if more people were hurt,

13    it's going to cost us more money, we're going to have to send

14    out more gift cards, we're going to have to do more things, and

15    they put us to our paces on that.  So I think that's where it's

16    fair to consider the amounts made available rather than just

17    the amounts claimed.  And I think if Your Honor were to say on

18    remand, "in my discretion, that's what I've decided to do," I

19    think that would make it fairly unappealable, bulletproof,

20    which I think is all in our best interest.

21             The second issue is then these so-called side

22    agreements, which I agree with plaintiffs' lawyers that they

23    were not side agreements.  The Third Circuit characterized them

24    that way, so we'll live with that.  But I think if you then set

25    that aside for a second and say, all right --

1          THE COURT:  The practical question I have, this is not

2     the last settlement that's ever going to happen either for you

3     lawyers or for me or the Eastern District of Pennsylvania or

4     the Third Circuit or Mr. Frank.  What do you do with the next

5     one?  How do you guard against -- how do you prove a negative?

6          MR. PARKS:  And you are right.  You'd have to have a

7     check list of 47 or many more things.  But I think the way I

8     read the panel's opinion here is when you have a case where an

9     objector has pointed to a thing and said that's a clear sailing

10    provision or that's a reverter or kicker, whatever label they

11    want to call it, the Court has an obligation to go look at that

12    and say, all right, let me scratch beneath the surface and peel

13    the onion back a little bit and get at that.  I think Your

14    Honor's initial opinion did that, because you did talk about

15    the reverter and it's gone now, and you did talk about the

16    so-called clear sailing provision.  But what I think the Third

17    Circuit has said now is explore how those things arrived, what

18    purpose they served, and whether their presence, even

19    temporary, suggests coordinated rather than zealous advocacy.

20    That's the language the Third Circuit closes with.

21         THE COURT:  That's the part that I find a bit

22    puzzling.  Do I have to find out if -- how does one find out,

23    how does a district court judge find out whether somebody's got

24    a piece of dust in their eye or they are winking?

25         MR. PARKS:  Right.  I think those are the challenges

1    district court judges have all the time, right, is making

2    factual findings.

3            THE COURT:  Precisely.  And is there yet another test

4    for that?

5            MR. PARKS:  No.  I think if the Court were to take

6    declarations, on which would could do a little bit more to help

7    you with those questions, the exact things that the Third

8    Circuit suggested you want to look into, you can then make

9    findings, very similar to what you've said in this courtroom

10   today, that you believe this was honest, hardworking,

11   clean-as-the-driven-snow people on both sides not colluding and

12   working hard to come to a settlement zealously advocating for

13   their clients, I think you'll find that to be the case.  And I

14   think we can put in front of you things like when we were

15   negotiating this settlement and the plaintiffs' lawyers had

16   gotten us to agree to the amount that we were going to make

17   available to the class and to agree to the injunctive relief

18   and to agree to the evaluation of the injunctive relief at

19   $35 million.  So I'm looking at $35 million plus another

20   $9 million.  I'm looking at possibly $44 million that the

21   plaintiffs' lawyers could say this is the value we created for

22   the class.  And when we were negotiating attorney's fees, I was

23   frankly really worried they were going to ask for much more.  I

24   was worried that they were going to ask for $10 million on a

25   $44 million total fund.  So when we negotiated them down and

1   they agreed to a cap of 3.2, I thought we had done a really

2   good job, we had gotten a good result for Wawa, a good result

3   for the class, and I thought 3.2 was actually a really low

4   number.  And then they actually told us as part of the

5   negotiations that that was almost a negative lodestar, that

6   they were pretty much at that dollar amount in the time and

7   effort that they had into the case, and then I was really

8   worried.  So I really felt like the 3.2 was a good number.

9        I will tell you honestly, I didn't think for a second

10  there was a chance that the amount awarded would be less than

11  3.2, so that's why we didn't put a provision in to that effect.

12  We didn't address what would happen if the Court decided some

13  number less than 3.2 was appropriate.  And those are the sort

14  of things we can put in declarations.

15       How we deal with that in future settlements, I think you

16  have to kind of look at what an objector brings to the table.

17  If an objector brings to the table, hey, here is a clear

18  sailing, here is a reverter, here's a kicker, then there are

19  certain kind of buzz words that the District Court has to say,

20  all right, I guess I got to ask look into that, I got to ask

21  for declarations, I got to ask for, you know, how did that

22  little thing arrive or what did you negotiate, and I think

23  that's not too abnormal.  I think class counsel negotiating

24  settlement agreements often find themselves in front of the

25  Court on preliminary approval and final approval explaining

1    exactly those kind of things:  Here was the negotiation.  Here

2    was the back-and-forth.  Here is why we settled on a

3    five-dollar gift card.  That was product of back-and-forth

4    negotiation.

5            THE COURT:  Again, my frustration here is I have some

6    distinct recollection of doing all this.

7            MR. PARKS:  Absolutely, Your Honor.  I agree, and

8    sometimes you just need to do it again to show the teacher your

9    homework, I guess.

10           Happy to address anything else, Your Honor.

11           THE COURT:  No.  I would like -- I still am in search

12   of a roadmap.  Maybe Mr. Frank's counsel has come up with

13   something of what it is you all are supposed to now put on

14   paper.

15           MR. PARKS:  Yeah, I think what we had discussed

16   amongst ourselves, and subject to the Court's approval, and

17   I've heard Your Honor very clearly that you are not

18   particularly excited about getting more briefs, but I think --

19           THE COURT:  What would you brief?

20           MR. PARKS:  I think we would say, all right, in light

21   of the Third Circuit's opinion, you can now either consider the

22   amounts claimed or the amounts made available, and here is how

23   you ought to exercise that discretion, and here is what we

24   think about that.  I think we can brief that, and we can also

25   put in declarations that address these -- explore how the

1  reversion and the kicker and the clear sailing, how those

2  provisions arrived, what purpose they served, and whether the

3  presence, even temporary, suggests coordinated rather than

4  zealous advocacy, we can put in declarations that can make that

5  easier for Your Honor than we have made that in the past.  And

6  I think we were talking about doing that in about two weeks and

7  then exchanging responses to those things about a month later

8  was our thought and proposal what we talked about amongst

9  counsel, but of course --

10          THE COURT:  Philosophically, though, I have two minds

11  in this particular case.  Number one, I would like you all to

12  be able to put a lid on this case and finish it.  I'm sure

13  that's in everybody's interest.  But I have also a

14  philosophical concern about going forward and -- I don't like

15  unnecessary -- I think it's bad for the profession, I think

16  it's bad for the community to force acrimony, and that's one of

17  my big problems here is when I look at this from the

18  30,000-foot angle or height, that what I walk away with is the

19  notion that there has got to be more fighting and more evidence

20  of fighting, and I don't see how we get around that and have a

21  civilized judicial system.

22          MR. PARKS:  I agree with that, Your Honor, especially

23  in a settlement context where the theory --

24          THE COURT:  I don't even like settlements.

25          MR. PARKS:  But the theory behind the settlement is

_____ *United States District Court* _____

1    parties go at each other pretty hard for a long period of time,

2    and we sure did.  In advance of the mediation, we had a lot of

3    discussions, some of them got heated, and then we had a

4    mediation session that started at nine in the morning, went to

5    about ten at night at which it was very adversarial.  But once

6    you reach that agreement, the theory ought to be we're all now

7    working together for the best interest of the class to get this

8    settlement done, get it approved, and get the benefits out to

9    the class and do everything that we're supposed to do.  And

10   that's hard if you are still sniping with each other.  I

11   strongly agree with that.

12          THE COURT:  The notion is you got to walk away still

13   embittered.

14          MR. PARKS:  That's right.

15          THE COURT:  I don't quite get that.

16          MR. PARKS:  And I would have to still be standing here

17   complaining about the plaintiffs' lawyers and the amounts of

18   time they spend on different things.  I agree that that's not

19   productive at this juncture or any juncture after you've

20   reached a settlement.

21          THE COURT:  It's not civilized.

22          MR. PARKS:  I agree.

23          THE COURT:  I mean, I'd much rather have a trial.

24          MR. PARKS:  I'd love to try this case, Your Honor.

25   Let's do it.

```
 1          THE COURT:  Except that that means that the litigants
 2   are no longer the captains of their ships, and that I think is
 3   philosophically the counterpoint.
 4          MR. PARKS:  Correct, Your Honor.
 5          THE COURT:  And so what I'm looking for is the -- as
 6   the harbormaster, if I may, I'm going to stick with the
 7   maritime metaphor a little bit, how do I guide the ship without
 8   it being, you know, the waves and the shoals and all of that
 9   stuff?  You ought to be able to come to a conclusion on your
10   own, but you also have to know under what terms will you
11   actually be able to achieve that, and that's what I'm searching
12   for here, help from you guys.
13          MR. PARKS:  I agree.  And I think as the harbormaster
14   in this scenario, Rule 23 settlement some people would say you
15   have the benefit of objectors who come forward and say there
16   are shoals or there is a rock and there is this thing, and
17   that's what Your Honor and the District Court ought to be
18   focused on is those things that get raised to your attention by
19   objectors --
20          THE COURT:  Well, one would say you don't need
21   objectors, the Court has the duty to the class.
22          MR. PARKS:  That's correct.  That's correct.  But I
23   think, like I said, the way I read the Third Circuit's opinion
24   is, having received the suggestion that there was a reverter or
25   that there was a clear sailing provision, it's the District
```

1    Court's duty to then look into that.  And I think that's the

2    thing that we can do now.

3         THE COURT:  The other pejorative is to call whatever

4    it is you all are doing a gimmick.

5         MR. PARKS:  I agree.  That was unfortunate.  In Roman

6    times they didn't do that.

7         THE COURT:  Roman times it was just lions.

8         MR. PARKS:  Correct.  And lawyers all worked for free.

9         THE COURT:  I was only going back to the 11th century.

10        MR. PARKS:  Well, you'd have to go back further.

11   Roman times you'd have to go back a whole lot more centuries.

12        THE COURT:  Bad news.  We're not going to do that.

13        MR. PARKS:  I appreciate that.

14        THE COURT:  I could pass out, you know, some sort of

15   pieces of paper and you'd all have to draw what century.  It

16   would be fun, though.  Write a good article.

17        MR. PARKS:  I have 16-year-old twins who are studying

18   world history this year.  So we could assign them.  They could

19   use some more homework.

20        THE COURT:  Then you have to read it to them or write

21   it yourself.

22        MR. PARKS:  Never.

23        THE COURT:  Okay.  All right.  Let me go back to where

24   I started.  Anybody else have observations before I start

25   again?  No.  Okay.

```
 1            MR. SCHULMAN:  I had a few comments.

 2            THE COURT:  Good.  I'm sure you do.

 3            MR. SCHULMAN:  So I guess I'll begin with this idea of

 4    forced acrimony that Your Honor is resistant to.  And of course

 5    we wouldn't call it forced acrimony.  We call it reintroducing

 6    adversarialness.  The clear sailing and kicker package together

 7    are bad because it deprives the Court of any adversarial

 8    process on the question of attorney's fees.  Which in regular

 9    litigation maybe that's fine, that's good.  You don't need a

10    second major litigation if it was just bilateral litigation,

11    but here you --

12            THE COURT:  I don't mean to be sharp about this, but

13    every case is special.  This case is no more special than a

14    rear-end collision.  It still requires a proof of a fact.  It

15    still requires persuasion.  I know that the lawyers who get

16    involved in this kind of litigation seem to want to carve out

17    specialness for themselves, but as far as I am concerned, the

18    lesson I learned from a number of judges who came before me,

19    ones there on the wall, is that every case is important to

20    everybody.  It doesn't matter.

21            MR. SCHULMAN:  I certainly don't mean to disparage any

22    individual case saying they're not important.  All I am saying

23    is that fees in a class action are different because there are

24    absentees that are not in a bilateral litigation.  Like in the

25    rear-end collision, the plaintiff should be supervising their
```

*United States District Court*

1    own attorney.  They can.  They have a contract.

2          THE COURT:  Unless they are a minor or an invalid or

3    incompetent, in which case the Court is involved.

4          MR. SCHULMAN:  Exactly.  And in those situations clear

5    sailing provisions should sound the alarm bell because it's

6    depriving the Court of -- so in this case, obviously, we came

7    in.  We're an objector.  We are not objecting in every case.

8    There is not good objectors to come in in every case.  The

9    clear sailing provision deprives the Court of the adversarial

10   process, the defendant's commentary on criticism of the field,

11   the request, and I think that's exactly what the case law

12   suggests the problem is.  And so, you know, we wouldn't call it

13   forced acrimony as much as reintroducing adversarialness.  So

14   that's point number one.

15         Number two is we agree with Mr. Parks in his

16   interpretation of the Third Circuit opinion.  The Third Circuit

17   panel didn't seem to believe this Court understood that it has

18   the ability -- that it thought that it was required to look to

19   the amount made available rather than having the discretion to

20   look to the amounts claimed.  But the Third Circuit wasn't

21   agnostic on that question either.  There is lines in that

22   opinion that strongly suggest this Court should look to the

23   amounts claimed as the starting point.  It said that it was the

24   sensible starting line to begin with the award analysis.  And

25   the factors that Mr. Parks mentioned, for example, that there

1   wasn't harm to the class members and so you should look to the

2   amounts made available, that's completely backward.  That's

3   going to give the attorneys a higher fee when they are bringing

4   a weaker case.  It makes zero sense from a policy perspective

5   why that factor should -- counseling in favor of looking to the

6   amount made available.

7        As far as the injunctive relief, the reason the Third

8   Circuit didn't mention that is that wasn't the defense, that

9   wasn't the -- that wasn't the formula that class counsel

10  suggested, and that's why Your Honor had it only in a footnote.

11  They specifically suggested they were being modest by not

12  including that.  They asked for the calculation based on the

13  amounts claimed -- the amounts that were available but not

14  claimed.  They thought that was --

15       THE COURT:  Did you mention the injunctive relief in

16  your briefing to the Third Circuit?

17       MR. SCHULMAN:  We did mention injunctive relief.

18       THE COURT:  You did?

19       MR. SCHULMAN:  We did mention generally the concept of

20  injunctive relief settlements, which we agree can be valuable,

21  but an injunctive relief --

22       THE COURT:  How about in this case?

23       MR. SCHULMAN:  In this case we do not agree that the

24  conclusion of that footnote was correct in terms of saying

25  that -- so Wawa in early 2020, and Mr. Parks can correct me if

1    I'm incorrect on the record, but in early 2020 their board had

2    approved the $35 million expenditure.  It didn't come from the

3    settlement, so the settlement makes -- puts some requirements

4    that are enforceable, but it doesn't obligate Wawa to do

5    anything that it wasn't already doing in terms of its data

6    security practices.  Those were voluntary decisions so that

7    they don't --

8            THE COURT:  So what you are suggesting is that

9    entities, whether it's an individual or a company or, you know,

10   an association, should be obdurate as long as possible until

11   hauled into court and made to sign on the dotted line?  There

12   is very little difference from somebody who is obdurate and

13   somebody who is adversarial and is fighting for fighting sake.

14   If somebody sees, the scales dropped from their eyes, you know,

15   and they say, you know, we've got this problem, let's meet it,

16   you know, before it turns into a huge problem, you're saying

17   that's stupid.

18           MR. SCHULMAN:  I don't think that's stupid.  I think

19   that's a smart way and there is reasons that they would want to

20   do that for -- to potentially reduce damages, to create a

21   voluntary remedial scheme instead of making that the

22   superior --

23           THE COURT:  I've had a number of class action

24   settlements where -- I can think of one right off the bat where

25   there was insecticides being used and there was a very

─── *United States District Court* ───

1   proactive plan in place to make corrective action way before

2   the litigants got down and dirty to talk about dollars and

3   cents.  There already was work being done by DuPont to correct

4   it.  You're saying that DuPont should get no benefits from

5   having anticipated and reduced damages and save the

6   environment, save the trees.

7           MR. SCHULMAN:  Well, that can lay the foundation

8   for --

9           THE COURT:  But you're saying they don't get any

10  benefit from it because they did it too early.

11          MR. SCHULMAN:  I don't think the settlement gets

12  credit for it, but DuPont might use that to prevent

13  certification of the class, that that might be a superior

14  remedial measure.

15          THE COURT:  All right.  This is not going to be a

16  productive avenue to discuss.  I'm going back to my plaintive

17  reply.  What am I supposed to do, do you think, now?

18          MR. SCHULMAN:  Well, they can submit declarations.  We

19  don't think that gets to the fundamental -- we think that the

20  Third Circuit opinion is best read to have the Court reconsider

21  its conclusion that it's better to look at the amount made

22  available rather than the amount claimed.  We think there is

23  strong suggestion in that opinion that that's the more sensible

24  approach.

25          THE COURT:  How do I figure that out?

1          MR. SCHULMAN:  Just a fair reading of -- so the Third

2    Circuit itself laid out certain factors why it might consider

3    it.  For example, it suggested that the fact that the relief

4    was gift cards rather than cash could counsel in favor of

5    looking at the amounts claimed rather than the amounts

6    redeemed.  So we didn't argue the -- there is a federal law,

7    the Class Action Fairness Act, that actually governs coupons.

8    We felt like the --

9          THE COURT:  Gift cards are not coupons.

10          MR. SCHULMAN:  Right.  We felt that the declaration --

11          THE COURT:  Trust me.  I've spent a lot of years on

12    this issue.  The standing committee on the rules and the

13    advisory committee on the civil rules and Judge Dow, Bob Dow,

14    from the Northern District of Illinois spent a great deal of

15    time working on Rule 23.  And I know precisely what he worked

16    on, so I'm not a neophyte on this.

17          MR. SCHULMAN:  Sure.  And we haven't raised the CAFA

18    coupon issue before Your Honor, but we do think it's a factor

19    that should be weighted in the analysis for whether Your Honor

20    is going to look to the amounts claimed or the amounts made

21    available.  The fact is, when they get the coupon, there is

22    another step -- the gift card rather, the electronic gift card,

23    there is another step that needs to be taken before they can

24    realize the value.

25          THE COURT:  When the class is an indefinite class like

1  this, there is no way to identify this class of people --

2        MR. SCHULMAN:  Well, they've tried to do that with the

3  loyalty system.

4        THE COURT:  But it cannot be done.  You cannot know

5  for certain who could be within these classes.

6        MR. SCHULMAN:  Without them stepping forward.

7        THE COURT:  Well, and then do what?  I mean, how do

8  you know?  Would you -- like you want the plaintiffs' lawyers

9  here to sign an oath.  Would you have every customer of Wawa

10  come in and sign an oath?

11        MR. SCHULMAN:  When they submitted claims, they had

12  to.  There was an averment on that claim form.  Now, I guess

13  they don't require that of the loyalty members that they are

14  sending out.

15        THE COURT:  My point here is that there is a

16  practicality quotient, and I'm going to just return to this

17  melody:  What is it that you think needs to be done?

18        MR. SCHULMAN:  We think the fee award needs to be

19  assessed --

20        THE COURT:  How do I do that?  Let's try it that way.

21        MR. SCHULMAN:  In light of the amounts made available

22  is the fundamental focus the Third Circuit decision cites --

23        THE COURT:  When you say "the amount made

24  available" --

25        MR. SCHULMAN:  No, no, I'm sorry.  If I said the

1  amounts made available, I misspoke and meant the amount

2  claimed.  I apologize.  It's been a long day.  A long trip up.

3       THE COURT:  What point is it for the amount claimed?

4  What's the point?

5       MR. SCHULMAN:  The point in time?  At the end of the

6  claims process, which now is complete.  And that's why the

7  Third Circuit has language about deferring the fee award

8  pending the results of that claims process.  That's what the

9  Beatty Products [ph] decision was as well.

10      There is a few more things I wanted to mention, just two

11  more.  Ms. Savett tried to characterize the third amendment as

12  a clarification.  I don't think Your Honor actually agrees with

13  that, that the Third Amended Agreement was only a

14  clarification, that it wasn't doing something new.  I don't

15  think Your Honor agrees with that and the Third Circuit

16  certainly did not find that, so it's precluded by the Third

17  Circuit's mandate in the panel opinion.

18      And lastly, if Your Honor would like, we'd be able to

19  draft a proposed order and submit it to the Court.

20      THE COURT:  You are going to draft one?  You are going

21  to do one in a group?  I don't want competing draft orders,

22  frankly.  I don't find that to be helpful.  And I don't know

23  that it would be productive for me to encourage you all to work

24  together since you're supposed to all be at each other's

25  throats.  Which way do you want to go?

1          MR. SCHULMAN:  Well, we're happy to continue our

2    dialogue with them.  I don't know where they are right now.

3          THE COURT:  Right there.

4          MR. SCHULMAN:  Yes.  Literally there, right there.

5          THE COURT:  Literally what you want is you want them

6    to take less money.  Isn't that it?

7          MR. SCHULMAN:  We think that a fair --

8          THE COURT:  What happens to the money?  Goes back to

9    Wawa?

10          MR. SCHULMAN:  No.  It goes to the class members so

11    that they get larger gift cards.  That's the Third Amended

12    Settlement.  That's why we withdraw our objection to the

13    settlement.

14          THE COURT:  How much of a haircut do you want then?  I

15    want this out on the table.

16          MR. SCHULMAN:  Okay.

17          THE COURT:  I'm tired of all this hiding behind

18    verbiage.

19          MR. SCHULMAN:  So our last position in the papers is

20    25 percent of the amounts claimed, which is 1.55 million.

21    We've made an offer to them.  Would you like to know that

22    amount?

23          THE COURT:  Do they know that?

24          MR. SCHULMAN:  They know that.

25          THE COURT:  Have you guys responded?

```
 1            MS. LIEBENBERG:  No.

 2            THE COURT:  When can you respond to them?

 3            MS. SAVETT:  We rejected it.

 4            THE COURT:  I guess you have the time.

 5            MS. LIEBENBERG:  We haven't told them that.

 6            MS. SAVETT:  But I think it is important while you're

 7    questioning that the amounts be put on the table so you

 8    understand what kind of cut he's speaking about.

 9            THE COURT:  Well, what I want to know is -- I'm back

10    to my use of the two principals, one is l-e and one is a-l.

11    I'm more interested in principles, l-e, and I'm hearing that

12    the objectors -- the objector is more interested in a-l, which

13    I imagine.

14            MR. SCHULMAN:  I would disagree with that

15    characterization.  The only offer we've made -- our principal

16    is that the fee should be based on the amounts claimed.  It

17    shouldn't be based on fictional amounts made available.  Our

18    offer is consistent with that.

19            THE COURT:  You are making a demand, not an offer.

20            MR. SCHULMAN:  It's not a demand.  It was an offer.

21    It was an offer.  It wasn't a demand.  It wasn't a

22    take-it-or-leave-it.  It was an offer.

23            THE COURT:  We'll compromise on suggestion.  How is

24    that?

25            MR. SCHULMAN:  Fair enough.
```

1          Well, our suggestion would put the ratio back into

2     proportion.  That was the problem.  Under the fee award it was

3     going to be the class counsel was going to get 3 million and

4     the class was going to get less than that.  Our suggestion

5     would put the ratio back into harmony.

6          THE COURT:  Does anybody think you're able to work

7     together to come up with a proposed agenda for my asking you

8     all to give me more information on which I can then make

9     additional findings?

10          MS. SAVETT:  I think we could do that.  We could

11     prepare -- we could each say what factual points we want to

12     make in a declaration.

13          I just want to take issue with his statement that the

14     money available to the class was fictional.  It was not

15     fictional.  It was there for the class to claim.  And there is

16     quite a lot of law talking about why it's more important to

17     accept the approach of money available, because a lot of times

18     class members won't bother to make small claims, but you have

19     to give them the ability to.  And also, it's just discouraging

20     class actions in general.  One of the main points of class

21     actions is to be able to represent people who do have small

22     claims because they couldn't otherwise be represented.

23          So I think Your Honor -- we know Your Honor, if you were

24     to get some additional facts from each side, could pick which

25     approach you think makes the most sense in this case, the

1    actual claims made or the money available, and you could come

2    up with some valuation of the benefit of the injunctive relief,

3    and you could lay out your reasonableness factors which, quite

4    frankly, we, on our side, thought you did a really good,

5    thorough job the first time, but you would have more facts this

6    time, and you can decide whether you think there was actually a

7    kicker or whether it was all very innocent and done honestly

8    and not collusively, and I think you could write a new opinion.

9          I don't see how we are going to agree with him.  He

10   wants us to take a drastic cut to an amount that already is

11   quite negative for us in a case we worked hard and we got a

12   significant benefit.  And more than anything we want the class

13   to get this benefit, because two years have gone by and they

14   still didn't get their gift cards, and we can't get the money

15   out to the class.  And there is one objector, one objector out

16   of 22 million people, that objected to this fee.  And, of

17   course, I think that's at least one of 20 reasonableness

18   factors that the Court might consider.

19         But I don't really think that we can work this out right

20   now.  He's been steady that he thinks the Court makes a per se

21   rule that you have to accept in this case the actual claims

22   made, and we think the Court of Appeals, that's one thing they

23   gave you complete discretion on.  They said either way could

24   work, just come up with a reasonableness analysis.

25              THE COURT:  So here is what we're going to do.  To be

1    true to my own view of what you lawyers should be doing, I

2    don't want to force you to try and work together because that

3    seems to be not in keeping with what somebody wants to

4    establish here.  So you can each have two weeks to submit to me

5    whatever additional factual information you think the Court

6    needs or must have pursuant to the Third Circuit's opinion or

7    any gaps that you find in the original approval papers that I

8    issued.  And then I will invite you probably in January to come

9    if there is going to be any very brief oral argument.  I would

10   like to have there be no more oral argument, however, and I

11   really do not need more legal briefs telling me what some other

12   circuit someplace else may have established.  I believe every

13   case is unique.  I'm not in the cookie cutter business.  I

14   don't care what kind of a case it is.  Every case is unique.

15   This one is unique.  It is special.  Everybody is special.

16   Every snowflake is special.

17        And you all have done a fine job, as has the circuit, in

18   trying to be a conscientious gatekeeper or teacher, whatever,

19   and I appreciate all of the input from the circuit and from all

20   of you lawyers.  And I will appreciate in two weeks getting

21   whatever additional material you think the Court needs in order

22   to address again the settlement, as all will describe it.  And

23   if there are gaps as a result of what you send to me, then I'll

24   get back to you.

25        I mean, right now my sense is I would rather not have

1    more argument, but depending on what you give me.  To the

2    extent you can affirm that you've discussed any of this with

3    each other, that would be helpful, but I'm not requiring that.

4    And I am, frankly, dubious about there being any secret sauce

5    anywhere or secret formula that would work magically here, and

6    that's because I do think each case is separate.

7         But to put this in simple terms, I would actually, you

8    know, show your work -- going back to homework -- where you say

9    this is what the settlement is, this is what the component

10   parts are, you know, this was the time line, this is what we

11   did, this is who we worked on the settlement, this is how many

12   hours we spent with the mediator, you know.  Just go back and

13   do it in words of one syllable.  And I'll work with that.  But

14   I want there to be inclusion of injunctive relief and

15   nonmonetary relief.

16        I also want somebody to -- and I know there are people

17   who do this sort of thing, but I always want a computation of

18   the time value of the money, how much has the class lost as a

19   result of this process.  I'm going to plug that into the

20   decision of showing the net result of this concern.  Because

21   that's part of the practical feature of what's happened.

22        Anybody else have anything to offer?

23          MR. PARKS:  Your Honor, again, Greg Parks for Wawa.

24   Separate from the consumer track, there is the financial

25   institutions track on which we had a settlement.  We were

*United States District Court*

1    poised to send out notice about that settlement when the Third

2    Circuit panel opinion came down, and we came to Your Honor and

3    said we think we should stay that.  I don't know if Your Honor

4    wants to wait until after we've concluded this briefing to then

5    address --

6         THE COURT:  I frankly think it's a very different

7    kettle of fish.  Do you think that that cannot go forward on

8    its own?

9         MR. PARKS:  I think there are a few changes we'd have

10   to make.  Because it's clear from the Third Circuit's opinion

11   that Your Honor at least has to have the information about the

12   claims made in order to make the final determination, and I

13   think the way we had that structured the claims deadline was

14   after the final approval hearing, so we've got to change that,

15   and that requires a change to the notice, which was one of the

16   exhibits that Your Honor previously approved that we would have

17   to now get reapproved.

18        We can do that now -- and I've talked with the leaders

19   of the financial institution track -- and we're prepared to do

20   that in two or three weeks, as Your Honor suggested.  Or if

21   Your Honor wanted to wait to sort out the consumer track first

22   and then get the financial track, we can probably do that as

23   well.

24        THE COURT:  Well, let's see if you can do it on its

25   own in a few weeks.  I think you probably can do that.  Is that

1   okay?

2          MR. PARKS:  Yes.

3          THE COURT:  I would just assume let that have its own

4   life.

5          MR. PARKS:  All right.

6          THE COURT:  Because I think it can have its own life.

7          MR. PARKS:  Strongly agree with that.  I know

8   financial institution counsel agrees with that as well.

9          THE COURT:  Where are we on the employee track?

10         MR. PARKS:  We have settled, Your Honor, on an

11  individual basis.  The stipulation of dismissal has been

12  submitted.  That case is over and done, done, done I am

13  ecstatic to say.

14         THE COURT:  Done, done.  D-U-N or D-O-N-E?

15         MR. PARKS:  Both, Your Honor.  All of the above.

16  Done, done, done, done.  Mr. Haviland is not here today.

17         THE COURT:  Well, send him a card.

18         MR. PARKS:  I sure will.

19         THE COURT:  All right.  Anything else from anybody?

20         MS. SAVETT:  No, Your Honor.

21         MS. LIEBENBERG:  Thank you, Your Honor.

22         MR. PARKS:  No, Your Honor.

23         THE COURT:  Fine.  Adjourned.  Bye.

24         (Proceeding concluded at 4:28 p.m.)

25                                -  -  -

────────────────── *United States District Court* ──────────────────

1          I certify that the foregoing is a correct transcript

2     from the record of proceedings in the above-entitled matter.

3

4     /s/ Cherilyn M. McCollum

5     Cherilyn M. McCollum, CCR, RPR
      Official Court Reporter

6
      Date:   7th day of December, 2023

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

────────────── *United States District Court* ──────────────

## $

**$10** [1] - 34:24
**$35** [6] - 20:10, 20:21, 31:1, 34:19, 44:2
**$44** [2] - 34:20, 34:25

## /

**/s** [1] - 57:4

## 1

**1** [1] - 28:5
**1.55** [1] - 49:20
**10** [1] - 16:6
**10036-6710** [1] - 2:9
**1133** [1] - 2:8
**11th** [1] - 40:9
**12th** [1] - 21:12
**14th** [1] - 21:12
**16** [1] - 16:7
**16-year-old** [1] - 40:17
**1629** [1] - 2:22
**1818** [1] - 1:15
**18th** [1] - 21:13
**19** [2] - 16:7, 17:2
**19-6019** [2] - 1:3, 4:6
**19103** [2] - 1:15, 2:17
**19106** [1] - 1:8
**19107** [1] - 2:4
**19428** [1] - 2:13

## 2

**2** [1] - 28:5
**20** [1] - 52:17
**200** [1] - 2:13
**20006** [1] - 2:22
**2020** [2] - 43:25, 44:1
**2023** [2] - 1:9, 57:6
**21** [1] - 16:7
**215** [3] - 1:16, 2:5, 2:18
**22** [2] - 20:7, 52:16
**2222** [1] - 2:17
**23** [4] - 17:10, 27:3, 39:14, 46:15
**23(h** [1] - 8:4
**2300** [1] - 2:4
**25** [4] - 10:16, 10:23, 21:21, 49:20

## 3

**3** [3] - 10:16, 24:5, 51:3
**3-point-some-odd**

**[1]** - 10:17
**3.2** [6] - 28:5, 35:1, 35:3, 35:8, 35:11, 35:13
**30** [1] - 10:22
**30,000-foot** [1] - 37:18
**300** [1] - 2:22
**31st** [1] - 2:8
**35** [1] - 21:3
**3600** [1] - 1:15
**3:06** [1] - 1:9

## 4

**400** [1] - 2:13
**438-9189** [1] - 2:9
**457-0856** [1] - 2:23
**47** [1] - 33:7
**477-8380** [1] - 2:14
**4:28** [1] - 56:24

## 5

**5** [1] - 1:9
**50** [1] - 21:25
**567-5872** [1] - 2:5

## 6

**6.2** [1] - 8:23
**601** [1] - 1:8
**610** [2] - 2:14, 2:23

## 7

**7** [1] - 24:5
**77** [2] - 27:22, 28:15
**78** [7] - 21:23, 23:20, 23:22, 24:1, 24:12, 25:15, 25:17
**7th** [1] - 57:6

## 8

**8** [1] - 24:5
**875-3000** [1] - 1:16

## 9

**9** [1] - 34:20
**917** [1] - 2:9
**963-5000** [1] - 2:18
**97** [1] - 25:12

## A

**a-l** [2] - 9:15, 50:10
**ability** [2] - 42:18, 51:19

**able** [6] - 37:12, 39:9, 39:11, 48:18, 51:6, 51:21
**abnormal** [1] - 35:23
**above-entitled** [1] - 57:2
**absentees** [1] - 41:24
**absolutely** [3] - 19:16, 23:3, 36:7
**accept** [2] - 51:17, 52:21
**acceptable** [1] - 16:25
**accepted** [1] - 16:12
**accomplished** [1] - 5:18
**according** [4] - 8:9, 8:18, 11:5, 29:13
**account** [1] - 13:16
**accusations** [1] - 22:4
**accused** [1] - 30:20
**achieve** [1] - 39:11
**acknowledged** [1] - 30:9
**acknowledgement** [1] - 8:8
**acrimony** [6] - 24:25, 26:8, 37:16, 41:4, 41:5, 42:13
**Act** [1] - 46:7
**action** [5] - 8:2, 24:6, 41:23, 44:23, 45:1
**Action** [1] - 46:7
**ACTION** [2] - 1:3, 2:21
**actions** [4] - 17:15, 27:9, 51:20, 51:21
**actual** [2] - 52:1, 52:21
**Adam** [1] - 4:17
**ADAM** [1] - 2:21
**adam.schulman@ hlli.org** [1] - 2:23
**addition** [2] - 18:3, 31:19
**additional** [5] - 25:9, 51:9, 51:24, 53:5, 53:21
**additions** [1] - 27:3
**address** [7] - 12:12, 19:11, 35:12, 36:10, 36:25, 53:22, 55:5
**addressed** [3] - 6:22, 27:25, 29:2
**adequate** [1] - 8:24
**adjourned** [1] - 56:23
**adoption** [1] - 16:8

**advance** [1] - 38:2
**adversarial** [4] - 38:5, 41:7, 42:9, 44:13
**adversarialness** [2] - 41:6, 42:13
**advisory** [1] - 46:13
**advocacy** [2] - 33:19, 37:4
**advocating** [1] - 34:12
**AFANADOR** [1] - 3:7
**affidavits** [1] - 31:12
**affirm** [1] - 54:2
**afraid** [1] - 18:23
**afternoon** [8] - 4:3, 4:7, 4:9, 4:11, 4:13, 4:17, 5:2, 29:20
**agenda** [1] - 51:7
**agent** [1] - 9:3
**agnostic** [1] - 42:21
**agree** [23] - 14:11, 23:3, 23:7, 24:7, 25:2, 25:22, 31:5, 32:22, 34:16, 34:17, 34:18, 36:7, 37:22, 38:11, 38:18, 38:22, 39:13, 40:5, 42:15, 43:20, 43:23, 52:9, 56:7
**agreed** [4] - 9:17, 10:1, 24:8, 35:1
**Agreement** [4] - 28:3, 28:12, 28:14, 48:13
**agreement** [13] - 19:16, 22:5, 23:19, 23:21, 23:22, 24:4, 24:6, 27:22, 28:1, 28:2, 28:17, 31:14, 38:6
**agreements** [9] - 15:14, 19:11, 19:23, 23:9, 26:14, 29:12, 32:22, 32:23, 35:24
**agrees** [5] - 24:2, 31:8, 48:12, 48:15, 56:8
**aided** [1] - 1:25
**AL** [2] - 1:14, 50:12
**alarm** [1] - 42:5
**allegation** [1] - 9:1
**alleged** [1] - 15:20
**allow** [1] - 27:8
**allowed** [1] - 30:16
**alluded** [1] - 27:21
**almost** [1] - 35:5
**ALSO** [1] - 3:1
**Amended** [6] - 9:20, 28:3, 28:12, 28:13, 48:13, 49:11

**amendment** [2] - 6:2, 48:11
**Americas** [1] - 2:8
**amount** [26] - 7:7, 8:22, 8:24, 10:3, 24:8, 25:24, 29:4, 30:10, 30:11, 30:15, 30:16, 30:23, 32:7, 34:16, 35:6, 35:10, 42:19, 43:6, 45:21, 45:22, 47:23, 48:1, 48:3, 49:22, 52:10
**amounts** [26] - 6:5, 16:9, 16:20, 29:3, 31:18, 32:16, 32:17, 36:22, 38:17, 42:20, 42:23, 43:2, 43:13, 46:5, 46:20, 47:21, 48:1, 49:20, 50:7, 50:16, 50:17
**amplifying** [1] - 28:23
**analysis** [7] - 19:3, 21:19, 26:10, 31:6, 42:24, 46:19, 52:24
**analyze** [1] - 17:21
**AND** [1] - 2:2
**anger** [1] - 29:10
**angle** [1] - 37:18
**answer** [1] - 21:14
**anticipated** [1] - 45:5
**apart** [1] - 6:11
**apologize** [1] - 48:2
**appeal** [5] - 14:15, 21:24, 26:13, 26:17, 28:20
**Appeals** [3] - 16:2, 16:4, 52:22
**Appeals'** [1] - 29:14
**APPEARANCES** [2] - 1:13, 2:1
**appeared** [1] - 31:25
**application** [1] - 21:22
**apportionment** [1] - 15:13
**appreciate** [4] - 17:18, 40:13, 53:19, 53:20
**approach** [5] - 5:22, 17:2, 45:24, 51:17, 51:25
**appropriate** [4] - 5:21, 6:21, 31:19, 35:13
**approval** [7] - 17:25, 26:2, 35:25, 36:16, 53:7, 55:14
**approved** [3] - 38:8, 44:2, 55:16

*United States District Court*

area [1] - 25:20
argue [1] - 46:6
argued [1] - 7:11
arguing [3] - 23:14, 23:15, 23:17
argument [6] - 16:7, 19:17, 28:13, 53:9, 53:10, 54:1
arm's [2] - 8:15, 8:22
arrive [1] - 35:22
arrived [2] - 33:17, 37:2
article [1] - 40:16
aside [1] - 32:25
assessed [1] - 47:19
assign [1] - 40:18
assigning [1] - 21:9
association [1] - 44:10
assume [1] - 56:3
assurance [1] - 28:8
astonishes [1] - 10:20
atmosphere [1] - 13:12
attendance [1] - 4:6
attention [2] - 27:5, 39:18
attorney [3] - 5:18, 8:1, 42:1
attorney's [4] - 24:7, 29:24, 34:22, 41:8
attorneys [1] - 43:3
audits [3] - 18:13, 20:13, 31:12
auspices [1] - 23:12
available [25] - 7:8, 9:18, 16:20, 30:11, 30:15, 30:24, 31:18, 32:7, 32:9, 32:16, 34:17, 36:22, 42:19, 43:2, 43:6, 43:13, 45:22, 46:21, 47:21, 47:24, 48:1, 50:17, 51:14, 51:17, 52:1
avenue [1] - 45:16
Avenue [1] - 2:8
averment [1] - 47:12
award [16] - 5:25, 6:4, 8:1, 10:22, 12:8, 15:12, 16:5, 16:9, 16:19, 25:23, 29:23, 30:10, 42:24, 47:18, 48:7, 51:2
awarded [3] - 28:1, 28:4, 35:10
awards [1] - 27:24
aware [1] - 14:25
axe [2] - 22:10, 29:22

**B**

back-and-forth [2] - 36:2, 36:3
backward [1] - 43:2
bad [5] - 31:24, 37:15, 37:16, 40:12, 41:7
Barr [1] - 2:13
base [1] - 25:9
based [6] - 16:9, 16:19, 16:24, 43:12, 50:16, 50:17
basis [1] - 56:11
bat [1] - 44:24
bears [1] - 13:14
Beatty [1] - 48:9
Becker [1] - 9:9
BEFORE [1] - 1:11
befuddled [1] - 24:23
begin [2] - 41:3, 42:24
behind [2] - 37:25, 49:17
beliefs [1] - 16:14
believes [1] - 5:18
bell [1] - 42:5
belong [1] - 27:9
ben [1] - 31:11
Ben [2] - 4:7, 31:15
beneath [1] - 33:12
benefit [10] - 15:13, 17:24, 18:2, 19:8, 20:17, 39:15, 45:10, 52:2, 52:12, 52:13
benefits [3] - 21:4, 38:8, 45:4
BENJAMIN [1] - 2:12
BERGER [1] - 1:14
best [5] - 8:14, 23:1, 32:20, 38:7, 45:20
better [3] - 17:24, 19:8, 45:21
between [3] - 9:4, 10:14, 16:22
bewildered [2] - 17:8, 24:23
bewildering [2] - 17:7, 24:16
bewilders [1] - 17:20
big [1] - 37:17
bilateral [2] - 41:10, 41:24
bit [5] - 18:7, 33:13, 33:21, 34:6, 39:7
bjohns@
shublawyers.com [1] - 2:14
BLACK [1] - 2:2

board [1] - 44:1
Bob [1] - 46:13
Bobbi [5] - 4:11, 19:10, 19:19, 22:3, 22:7
Bobbi's [1] - 19:17
BOCKIUS [1] - 2:16
Boeing [1] - 10:25
bother [1] - 51:18
breach [2] - 19:3, 31:23
Bridge [1] - 2:12
brief [7] - 6:7, 12:1, 12:3, 28:11, 36:19, 36:24, 53:9
briefed [1] - 16:10
briefing [8] - 6:17, 12:4, 14:5, 14:22, 14:24, 43:16, 55:4
briefs [5] - 10:8, 10:9, 28:11, 36:18, 53:11
bring [1] - 12:21
bringing [1] - 43:3
brings [2] - 35:16, 35:17
Broad [1] - 2:4
brought [1] - 14:12
buckets [1] - 7:1
bulletproof [1] - 32:19
business [1] - 53:13
buy [1] - 18:22
buzz [1] - 35:19
BY [7] - 1:14, 2:3, 2:3, 2:8, 2:12, 2:16, 2:21
bye [1] - 56:23
Byrne [1] - 1:7

**C**

CAFA [1] - 46:17
calculation [1] - 43:12
cannot [3] - 47:4, 55:7
cap [1] - 35:1
captains [1] - 39:2
card [9] - 18:3, 18:4, 18:23, 20:9, 31:25, 36:3, 46:22, 56:17
cards [10] - 18:7, 18:9, 25:11, 25:12, 28:6, 32:14, 46:4, 46:9, 49:11, 52:14
care [1] - 53:14
CARPENTER [1] - 3:4
carve [1] - 41:16

case [43] - 4:5, 4:24, 8:6, 9:17, 10:25, 12:17, 21:21, 22:19, 22:20, 25:3, 27:10, 27:12, 30:4, 31:22, 31:23, 32:7, 33:8, 34:13, 35:7, 37:11, 37:12, 38:24, 41:13, 41:19, 41:22, 42:3, 42:6, 42:7, 42:8, 42:11, 43:4, 43:22, 43:23, 51:25, 52:11, 52:21, 53:13, 53:14, 54:6, 56:12
cases [2] - 11:16, 19:3
cash [2] - 18:8, 46:4
casts [1] - 8:22
caused [2] - 30:18, 30:23
CCR [2] - 1:18, 57:5
CCR-NJ [1] - 1:18
CENTER [1] - 2:21
cents [1] - 45:3
centuries [1] - 40:11
century [5] - 21:9, 21:12, 40:9, 40:15
certain [3] - 35:19, 46:2, 47:5
certainly [4] - 20:24, 26:25, 41:21, 48:16
certification [1] - 45:13
certify [1] - 57:1
challenges [1] - 33:25
chance [2] - 11:3, 35:10
change [3] - 7:12, 55:14, 55:15
changes [4] - 20:10, 27:3, 55:9
characterization [1] - 50:15
characterize [1] - 48:11
characterized [2] - 29:11, 32:23
charge [1] - 31:25
check [1] - 33:7
Cherilyn [3] - 1:18, 57:4, 57:5
Cherilyn.
McCollum@paed.
uscourts.gov [1] - 1:19
choice [1] - 19:7
Christian [1] - 5:10
CHRISTIAN [1] - 3:2
circuit [4] - 31:4,

53:12, 53:17, 53:19
Circuit [38] - 5:13, 6:3, 6:22, 7:2, 7:5, 7:13, 10:20, 14:3, 15:9, 15:19, 16:11, 16:13, 16:18, 20:1, 24:4, 26:10, 26:13, 28:11, 28:16, 30:13, 31:20, 32:23, 33:4, 33:17, 33:20, 34:8, 42:16, 42:20, 43:8, 43:16, 45:20, 46:2, 47:22, 48:7, 48:15, 55:2
Circuit's [8] - 12:5, 17:7, 30:6, 36:21, 39:23, 48:17, 53:6, 55:10
cites [1] - 47:22
CIVIL [1] - 1:3
civil [1] - 46:13
civilized [2] - 37:21, 38:21
claim [1] - 47:12, 51:15
claimed [20] - 6:5, 7:8, 16:9, 16:14, 19:9, 30:11, 30:16, 32:17, 36:22, 42:20, 42:23, 43:13, 43:14, 45:22, 46:5, 46:20, 48:2, 48:3, 49:20, 50:16
claims [12] - 16:16, 16:24, 19:2, 47:11, 48:6, 48:8, 51:18, 51:22, 52:1, 52:21, 55:12, 55:13
clarification [2] - 48:12, 48:14
clarified [2] - 28:3, 28:22
CLASS [1] - 2:21
class [50] - 6:5, 6:8, 6:12, 8:1, 9:4, 9:19, 13:4, 14:8, 16:10, 16:14, 17:14, 18:1, 18:21, 19:9, 20:7, 23:23, 23:24, 24:6, 24:7, 27:1, 27:9, 28:5, 32:4, 34:17, 34:22, 35:3, 35:23, 38:7, 38:9, 39:21, 41:23, 43:1, 43:9, 44:23, 45:13, 46:25, 47:1, 49:10, 51:3, 51:4, 51:14, 51:15, 51:18, 51:20, 52:12, 52:15, 54:18
Class [1] - 46:7
classes [2] - 17:12,

47:5

**clean** [2] - 27:12, 34:11

**clean-as-the-driven -snow** [1] - 34:11

**clear** [28] - 7:9, 13:3, 13:10, 14:4, 15:20, 15:24, 16:12, 19:7, 19:22, 20:23, 21:1, 23:19, 23:21, 24:4, 24:5, 24:12, 26:11, 30:13, 30:17, 33:9, 33:16, 35:17, 37:1, 39:25, 41:6, 42:4, 42:9, 55:10

**clearer** [1] - 30:12

**clearly** [3] - 18:23, 20:17, 36:17

**client** [2] - 12:10, 14:12

**clients** [2] - 9:4, 34:13

**clients'** [1] - 12:18

**close** [1] - 6:11

**closes** [1] - 33:20

**colleague** [2] - 22:3, 22:7

**collection** [1] - 27:5

**collision** [3] - 8:6, 41:14, 41:25

**collude** [1] - 12:22

**colluder** [2] - 30:1, 30:2

**colluding** [1] - 34:11

**collusion** [14] - 6:15, 6:16, 6:18, 11:8, 11:10, 11:14, 13:8, 23:10, 23:14, 23:16, 23:18, 27:11, 28:14

**collusively** [1] - 52:8

**Commencing** [1] - 1:9

**commentary** [1] - 42:10

**comments** [1] - 41:1

**committee** [3] - 17:9, 46:12, 46:13

**common** [3] - 7:7, 8:24, 20:5

**community** [1] - 37:16

**company** [1] - 44:9

**compared** [1] - 19:2

**competent** [1] - 12:12

**competing** [1] - 48:21

**complaining** [1] - 38:17

**complete** [2] - 48:6,

52:23

**completely** [2] - 15:8, 43:2

**compliance** [1] - 31:13

**complied** [1] - 20:14

**component** [3] - 8:1, 25:7, 54:9

**compromise** [1] - 50:23

**computation** [1] - 54:17

**computer** [1] - 1:25

**computer-aided** [1] - 1:25

**concept** [3] - 7:19, 17:12, 43:19

**concern** [2] - 37:14, 54:20

**concerned** [4] - 7:2, 7:6, 7:9, 41:17

**concerning** [1] - 24:14

**concluded** [3] - 7:6, 55:4, 56:24

**conclusion** [3] - 39:9, 43:24, 45:21

**concretely** [1] - 21:6

**CONFERENCE** [1] - 1:4

**confess** [2] - 19:14, 19:15

**confessed** [2] - 7:17, 7:21

**confession** [1] - 7:18

**confessional** [1] - 16:1

**confidence** [2] - 12:15, 12:16

**conflict** [7] - 6:18, 6:19, 8:25, 9:2, 9:3, 11:11, 12:24

**conflict-of-interest** [1] - 11:11

**conflicts** [1] - 13:1

**connection** [1] - 23:25

**conscientious** [1] - 53:18

**Conshohocken** [1] - 2:3

**consider** [7] - 15:10, 20:1, 21:17, 32:16, 36:21, 46:2, 52:18

**considerations** [2] - 6:21, 7:1

**considered** [4] - 13:19, 16:11, 28:24, 31:3

**considering** [1] -

12:24

**consistent** [2] - 25:15, 50:18

**constrained** [1] - 30:14

**constructive** [2] - 7:7, 8:24

**consumer** [9] - 4:4, 4:8, 4:10, 4:12, 4:14, 4:24, 6:1, 54:24, 55:21

**CONSUMER** [3] - 2:2, 2:7, 2:11

**consumers** [1] - 20:15

**contemplated** [1] - 26:25

**contest** [3] - 24:2, 24:7, 25:18

**context** [1] - 37:23

**continue** [1] - 49:1

**CONTINUED** [1] - 2:1

**contract** [1] - 42:1

**controversy** [1] - 24:21

**cookie** [1] - 53:13

**cooperate** [1] - 23:23

**cooperation** [4] - 24:12, 24:21, 25:4, 25:16

**coordinated** [2] - 33:19, 37:3

**correct** [8] - 39:4, 39:22, 40:8, 43:24, 43:25, 45:3, 57:1

**corrective** [1] - 45:1

**correspond** [1] - 14:21

**correspondence** [3] - 10:11, 10:13, 14:8

**cost** [2] - 20:18, 32:13

**counsel** [26] - 6:8, 6:12, 6:13, 9:4, 11:3, 14:8, 18:17, 19:18, 21:20, 23:1, 23:23, 23:24, 25:3, 25:10, 27:11, 29:1, 29:19, 30:4, 32:4, 35:23, 36:12, 37:9, 43:9, 46:4, 51:3, 56:8

**counsel's** [1] - 24:7

**counseling** [1] - 43:5

**counsels'** [1] - 13:5

**counterpoint** [1] - 39:3

**counting** [1] - 16:24

**coupon** [2] - 46:18, 46:21

**coupons** [2] - 46:7, 46:9

**course** [5] - 10:19, 27:10, 37:9, 41:4, 52:17

**COURT** [154] - 1:1, 4:2, 4:20, 4:25, 5:4, 5:6, 5:12, 5:21, 5:23, 6:10, 6:13, 6:15, 6:19, 7:4, 7:15, 8:5, 8:17, 9:2, 9:7, 9:10, 9:13, 9:21, 9:24, 10:5, 10:9, 10:12, 10:18, 10:24, 11:1, 11:4, 11:12, 11:16, 11:20, 12:3, 12:7, 12:9, 12:13, 13:1, 13:6, 13:10, 13:17, 13:22, 14:1, 14:5, 14:9, 14:14, 14:17, 14:23, 15:3, 15:6, 15:12, 15:16, 16:1, 17:6, 17:20, 18:6, 18:9, 18:15, 19:5, 19:13, 20:3, 20:18, 20:22, 21:1, 21:7, 21:11, 21:16, 22:1, 22:9, 23:6, 23:15, 24:9, 24:16, 25:25, 26:5, 26:15, 27:1, 28:7, 28:18, 29:1, 29:13, 29:16, 29:18, 30:1, 30:19, 31:2, 31:7, 32:1, 33:1, 33:21, 34:3, 36:5, 36:11, 36:19, 37:10, 37:24, 38:12, 38:15, 38:21, 38:23, 39:1, 39:5, 39:20, 40:3, 40:7, 40:9, 40:12, 40:14, 40:20, 40:23, 41:2, 41:12, 42:2, 43:15, 43:18, 43:22, 44:8, 44:23, 45:9, 45:15, 45:25, 46:9, 46:11, 46:25, 47:4, 47:7, 47:15, 47:20, 47:23, 48:3, 48:20, 49:3, 49:5, 49:8, 49:14, 49:17, 49:23, 49:25, 50:2, 50:4, 50:9, 50:19, 50:23, 51:6, 52:25, 55:6, 55:24, 56:3, 56:6, 56:9, 56:14, 56:17, 56:19, 56:23

**Court** [46] - 1:19, 7:3, 7:6, 8:25, 12:11, 14:3, 15:10, 16:2, 16:3, 16:7, 16:15, 16:17, 16:21, 17:1, 17:2, 20:12, 25:23, 28:1,

28:4, 28:12, 28:22, 28:24, 29:14, 30:17, 33:11, 34:5, 35:12, 35:19, 35:25, 39:17, 39:21, 41:7, 42:3, 42:6, 42:9, 42:17, 42:22, 45:20, 48:19, 52:18, 52:20, 52:22, 53:5, 53:21, 57:5

**court** [4] - 4:1, 33:23, 34:1, 44:11

**Court's** [6] - 4:18, 6:3, 14:13, 16:5, 36:16, 40:1

**Courthouse** [1] - 1:7

**courtroom** [1] - 34:9

**courts** [2] - 11:14, 20:1

**Courts** [1] - 16:18

**crass** [1] - 29:4

**create** [2] - 18:16, 44:20

**created** [1] - 34:21

**credit** [3] - 31:25, 32:8, 45:12

**criticism** [1] - 42:10

**curious** [1] - 6:23

**customer** [3] - 18:21, 25:9, 47:9

**customers** [5] - 17:4, 17:5, 18:21, 20:6, 31:9

**cut** [2] - 48:8, 52:10

**cutter** [1] - 53:13

## D

**damages** [2] - 44:20, 45:5

**DANNENBERG** [1] - 3:2

**Data** [1] - 4:5

**DATA** [1] - 1:4

**data** [3] - 19:2, 31:23, 44:5

**Date** [1] - 57:6

**DC** [1] - 2:22

**deadline** [1] - 55:13

**deal** [5] - 7:20, 8:11, 17:10, 35:15, 46:14

**dealing** [1] - 15:23

**December** [2] - 1:9, 57:6

**decide** [4] - 16:21, 30:18, 30:23, 52:6

**decided** [2] - 32:18, 35:12

**decision** [6] - 8:21, 12:6, 17:25, 47:22, 48:9, 54:20

decisions [1] - 44:6
declaration [3] - 25:6, 46:10, 51:12
declarations [10] - 15:23, 20:25, 21:4, 28:22, 34:6, 35:14, 35:21, 36:25, 37:4, 45:18
defendant [2] - 4:16, 9:5
DEFENDANT [1] - 2:16
defendant's [2] - 19:18, 42:10
defendants [1] - 24:6
defense [2] - 6:13, 43:8
deferring [1] - 48:7
defined [1] - 24:4
definitely [1] - 30:2
definition [1] - 24:3
demand [3] - 50:19, 50:20, 50:21
demands [1] - 27:7
DePALMA [1] - 3:7
deprives [2] - 41:7, 42:9
depriving [1] - 42:6
describe [1] - 53:22
deserve [1] - 32:8
determination [3] - 16:4, 17:1, 55:12
determining [2] - 28:25, 32:3
developed [1] - 15:19
DEVER [1] - 2:3
devoted [1] - 24:18
devotee [1] - 24:19
dialogue [1] - 49:2
difference [1] - 44:12
different [4] - 21:9, 38:18, 41:23, 55:6
difficult [1] - 13:7
dirty [1] - 45:2
disagree [1] - 50:14
disagreed [1] - 30:14
discerned [1] - 12:14
disclose [1] - 5:14
disclosed [1] - 7:17
disconnect [1] - 24:23
discouraging [1] - 51:19
discovery [2] - 11:18, 12:2
discretion [10] - 16:6, 16:21, 19:7, 26:23, 28:23, 31:21, 32:18, 36:23, 42:19,

52:23
discuss [4] - 25:22, 26:3, 29:9, 45:16
discussed [7] - 7:16, 8:8, 11:6, 29:2, 29:8, 36:15, 54:2
discussion [1] - 27:16
discussions [2] - 27:17, 38:3
dismissal [1] - 56:11
disparage [1] - 41:21
distinct [1] - 36:6
District [6] - 17:2, 33:3, 35:19, 39:17, 39:25, 46:14
district [1] - 33:23, 34:1
DISTRICT [2] - 1:1, 1:1
docket [1] - 10:2
docketed [1] - 4:5
dollar [6] - 9:5, 9:18, 29:3, 29:4, 35:6, 36:3
dollars [5] - 9:10, 9:13, 25:13, 29:24, 45:2
done [27] - 12:20, 13:18, 14:6, 15:16, 18:19, 22:17, 23:2, 23:12, 26:7, 32:8, 35:1, 38:8, 45:3, 47:4, 47:17, 52:7, 53:17, 56:12, 56:14, 56:16
DONE [1] - 56:14
dotted [1] - 44:11
doubt [1] - 8:22
Dow [2] - 46:13
down [4] - 21:25, 34:25, 45:2, 55:2
draft [3] - 48:19, 48:20, 48:21
drastic [1] - 52:10
draw [1] - 40:15
Drive [1] - 2:13
driven [2] - 27:12, 34:11
dropped [1] - 44:14
dubious [1] - 54:4
DUN [1] - 56:14
DuPont [3] - 45:3, 45:4, 45:12
dust [2] - 19:22, 33:24
duty [3] - 14:2, 39:21, 40:1

E

E.K [1] - 1:11

early [3] - 43:25, 44:1, 45:10
earnest [1] - 22:11
earnestly [2] - 22:16, 26:6
easier [1] - 37:5
EASTERN [1] - 1:1
Eastern [1] - 33:3
economic [1] - 9:9
economical [1] - 22:23
ecstatic [1] - 56:13
effect [2] - 30:3, 35:11
efficiency [2] - 7:13, 13:15
efficient [1] - 22:24
effort [1] - 35:7
efforts [1] - 23:1
eggs [1] - 8:7
either [8] - 7:17, 16:20, 26:1, 30:11, 33:2, 36:21, 42:21, 52:23
electronic [1] - 46:22
eliminate [1] - 24:21, 24:22
embittered [1] - 38:13
emphasize [1] - 25:21
emphasized [1] - 16:4
employee [1] - 56:9
encourage [1] - 48:23
end [4] - 8:6, 41:14, 41:25, 48:5
ended [1] - 22:22
enforceable [2] - 20:12, 44:4
enforced [1] - 18:14
engage [1] - 27:16
enhanced [1] - 25:8
enjoying [1] - 29:19
ensure [1] - 20:13
ensures [1] - 8:23
entities [1] - 44:9
entitled [2] - 27:1, 57:2
environment [1] - 45:6
envision [2] - 7:24, 26:1
equitable [1] - 8:4
especially [2] - 31:11, 37:22
ESQUIRE [11] - 1:14, 2:3, 2:3, 2:8, 2:12, 2:16, 2:21, 3:2, 3:3,

3:5, 3:6
establish [1] - 53:4
established [1] - 53:12
ET [1] - 1:14
evaluate [4] - 16:18, 20:16, 27:6, 27:7
evaluation [3] - 22:12, 22:15, 34:18
evidence [1] - 37:19
evil [1] - 27:17
evilness [1] - 22:18
exact [1] - 34:7
exactly [5] - 18:8, 30:7, 36:1, 42:4, 42:11
example [3] - 8:5, 42:25, 46:3
except [1] - 39:1
exchange [1] - 27:18
exchanging [1] - 37:7
excited [2] - 18:9, 36:18
executed [1] - 28:13
exercise [1] - 36:23
exercising [1] - 31:20
exhibits [1] - 55:16
exist [2] - 19:12, 22:18
existed [2] - 22:7, 28:15
expect [1] - 21:14
expenditure [1] - 44:2
expenses [1] - 27:25
experienced [1] - 7:18
experiencing [1] - 20:9
expert [1] - 17:21
explaining [1] - 35:25
explicitly [1] - 28:4
explore [2] - 33:17, 36:25
extent [1] - 54:2
eye [1] - 33:24
eyes [1] - 44:14

F

facetious [1] - 21:8
fact [19] - 7:3, 7:6, 7:11, 7:12, 12:25, 14:17, 16:10, 18:12, 21:20, 23:21, 24:11, 25:11, 26:12, 31:15, 32:6, 32:7, 41:14,

46:3, 46:21
factor [5] - 20:11, 21:18, 32:3, 43:5, 46:18
factors [11] - 18:25, 19:24, 26:24, 28:24, 30:18, 30:23, 30:24, 42:25, 46:2, 52:3, 52:18
facts [6] - 22:2, 30:3, 31:21, 31:22, 51:24, 52:5
factual [6] - 15:19, 21:3, 27:23, 34:2, 51:11, 53:5
fair [7] - 11:24, 13:24, 14:1, 32:16, 46:1, 49:7, 50:25
fairly [3] - 11:12, 24:17, 32:19
fairness [1] - 18:6
Fairness [1] - 46:7
FAIRNESS [1] - 2:21
faith [2] - 12:19, 23:12
far [3] - 6:10, 41:17, 43:7
favor [2] - 43:5, 46:4
feature [1] - 54:21
features [1] - 25:8
federal [1] - 46:6
fee [27] - 5:25, 6:3, 8:1, 9:17, 10:15, 13:16, 13:20, 15:12, 16:5, 16:8, 24:2, 24:3, 25:5, 25:15, 25:18, 26:19, 26:24, 27:23, 28:23, 28:25, 30:10, 43:3, 47:18, 48:7, 50:16, 51:2, 52:16
fee-setting [1] - 13:16
fees [8] - 12:8, 14:3, 24:8, 25:23, 29:24, 34:22, 41:8, 41:23
felt [4] - 30:14, 35:8, 46:8, 46:10
few [4] - 41:1, 48:10, 55:9, 55:25
fictional [3] - 50:17, 51:14, 51:15
field [1] - 42:10
fighting [6] - 22:21, 24:22, 37:19, 37:20, 44:13
figure [2] - 30:7, 45:25
filigree [1] - 26:8
filing [1] - 10:15
final [4] - 26:1,

*United States District Court*

35:25, 55:12, 55:14
**financial** [8] - 4:23,
5:3, 5:9, 5:10, 54:24,
55:19, 55:22, 56:8
**findings** [5] - 24:11,
26:11, 34:2, 34:9,
51:9
**fine** [3] - 41:9, 53:17,
56:23
**FINE** [1] - 2:2
**finish** [1] - 37:12
**first** [7] - 4:24, 7:1,
15:11, 19:21, 30:10,
52:5, 55:21
**fish** [1] - 55:7
**five** [2] - 25:13, 36:3
**five-dollar** [1] - 36:3
**fixing** [1] - 8:7
**Floor** [1] - 2:8
**flyspecked** [1] - 8:10
**focus** [2] - 17:15,
47:22
**focused** [2] - 18:10,
39:18
**follower** [1] - 22:14
**football** [1] - 14:18
**footnote** [2] - 43:10,
43:24
**FOR** [8] - 1:1, 1:14,
2:2, 2:7, 2:11, 2:16,
2:20, 2:21
**force** [4] - 26:3, 32:9,
37:16, 53:2
**forced** [3] - 41:4,
41:5, 42:13
**foregoing** [1] - 57:1
**form** [2] - 18:2, 47:12
**formula** [10] - 10:24,
18:16, 18:18, 18:20,
19:21, 20:4, 27:18,
29:9, 43:9, 54:5
**forth** [2] - 36:2, 36:3
**forthcoming** [1] -
12:18
**forward** [7] - 27:8,
30:5, 32:12, 37:14,
39:15, 47:6, 55:7
**fought** [2] - 22:20,
23:11
**foundation** [1] - 45:7
**four** [1] - 16:6
**Four** [1] - 2:12
**FRANK** [2] - 2:21,
3:8
**Frank** [4] - 4:18,
4:19, 26:25, 33:4
**Frank's** [2] - 5:18,
36:12
**frankly** [9] - 5:16,
10:20, 24:19, 29:3,

34:23, 48:22, 52:4,
54:4, 55:6
**fraud** [1] - 20:9
**fraudulent** [1] -
31:25
**free** [1] - 40:8
**frequently** [1] -
24:18
**front** [2] - 34:14,
35:24
**frustration** [2] - 31:2,
36:5
**full** [4] - 7:7, 10:16,
11:6, 25:23
**fully** [1] - 15:19
**fun** [2] - 22:18, 40:16
**fund** [3] - 7:7, 8:24,
34:25
**fundamental** [3] -
8:1, 45:19, 47:22
**funds** [1] - 28:5
**fungible** [2] - 9:11,
9:13
**future** [2] - 17:23,
35:15

## G

**gaps** [2] - 53:7,
53:23
**Gary** [1] - 4:22
**GARY** [1] - 3:3
**gas** [1] - 18:22
**gatekeeper** [1] -
53:18
**gathering** [1] - 4:4
**gdever@finekaplan
.com** [1] - 2:6
**GENE** [1] - 1:11
**general** [1] - 51:20
**generally** [1] - 43:19
**GERARD** [1] - 2:3
**gift** [14] - 18:2, 18:6,
18:9, 25:11, 25:12,
28:6, 32:14, 36:3,
46:4, 46:9, 46:22,
49:11, 52:14
**gimmick** [1] - 40:4
**given** [1] - 14:17
**glad** [2] - 14:1, 23:13
**goods** [1] - 18:22
**governs** [1] - 46:7
**gparks@
morganlewis.com** [1]
- 2:18
**great** [2] - 4:20,
46:14
**greatly** [1] - 16:10
**GREENBERG** [1] -
3:7

**Greg** [3] - 4:15,
29:20, 54:23
**GREGORY** [1] - 2:16
**grind** [2] - 22:11,
29:22
**GROUP** [1] - 2:7
**group** [1] - 48:21
**guard** [1] - 33:5
**guess** [6] - 17:6,
35:20, 36:9, 41:3,
47:12, 50:4
**guide** [1] - 39:7
**guys** [2] - 39:12,
49:25

## H

**haircut** [1] - 49:14
**HAMILTON** [1] - 2:20
**handle** [1] - 19:19
**happy** [8] - 5:22,
5:23, 6:7, 12:1, 30:3,
36:10, 49:1
**Harbor** [1] - 2:13
**harbored** [1] - 27:17
**harbormaster** [2] -
39:6, 39:13
**hard** [8] - 17:16,
21:21, 22:20, 23:11,
34:12, 38:1, 38:10,
52:11
**hard-fought** [2] -
22:20, 23:11
**hardworking** [1] -
34:10
**harm** [1] - 43:1
**harmed** [3] - 32:4,
32:6
**harmony** [1] - 51:5
**hauled** [1] - 44:11
**HAUSFELD** [1] - 3:5
**Haviland** [1] - 56:16
**hear** [4] - 11:22,
23:13, 29:3, 29:18
**heard** [3] - 11:25,
29:6, 36:17
**hearing** [4] - 14:12,
26:1, 50:11, 55:14
**heated** [1] - 38:3
**height** [1] - 37:18
**Hello** [2] - 4:15, 5:8
**hello** [1] - 8:19
**help** [4] - 11:22,
17:21, 34:6, 39:12
**helpful** [2] - 48:22,
54:3
**Hi** [1] - 4:22
**hi** [1] - 4:2
**hiding** [1] - 49:17
**higher** [1] - 43:3

**hints** [1] - 31:20
**hired** [1] - 17:21
**history** [2] - 8:3,
40:18
**hold** [1] - 14:12
**holdups** [1] - 17:11
**homework** [3] - 36:9,
40:19, 54:8
**honest** [1] - 34:10
**honestly** [3] - 22:25,
35:9, 52:7
**Honor** [62] - 4:7, 4:9,
4:11, 4:13, 4:15, 4:22,
5:2, 5:5, 5:8, 5:20,
6:7, 7:11, 10:2, 10:3,
10:8, 13:9, 14:22,
15:5, 16:11, 17:3,
17:19, 23:3, 24:10,
25:2, 26:9, 26:22,
29:17, 29:20, 30:3,
30:18, 30:23, 31:18,
32:17, 36:7, 36:10,
36:17, 37:5, 37:22,
38:24, 39:4, 39:17,
41:4, 43:10, 46:18,
46:19, 48:12, 48:15,
48:18, 51:23, 54:23,
55:2, 55:3, 55:11,
55:16, 55:20, 55:21,
56:10, 56:15, 56:20,
56:21, 56:22
**Honor's** [1] - 33:14
**HONORABLE** [1] -
1:11
**honorable** [2] -
12:17, 22:20
**hopefully** [1] - 26:12
**hounded** [1] - 31:11
**hours** [1] - 54:12
**huge** [1] - 44:16
**hundreds** [1] - 20:6
**hurt** [2] - 32:11,
32:12

## I

**idea** [3] - 18:20,
24:20, 41:3
**identify** [1] - 47:1
**Illinois** [1] - 46:14
**imagine** [1] - 50:13
**immediate** [1] - 18:2
**impact** [1] - 12:5
**important** [14] -
20:11, 22:3, 23:20,
25:9, 25:21, 27:20,
27:21, 28:10, 31:9,
41:19, 41:22, 50:6,
51:16
**improve** [1] - 17:22,

18:3
**IN** [2] - 1:1, 1:3
**Inc** [1] - 4:16
**INC** [2] - 1:4, 2:16
**include** [1] - 30:24
**including** [2] - 24:15,
43:12
**inclusion** [2] - 13:3,
54:14
**incompetent** [1] -
42:3
**incorrect** [1] - 44:1
**indefinite** [1] - 46:25
**individual** [3] -
41:22, 44:9, 56:11
**information** [9] -
23:24, 24:14, 25:5,
25:10, 25:14, 31:23,
51:8, 53:5, 55:11
**inherent** [1] - 8:25
**initial** [2] - 13:4,
33:14
**injunction** [1] - 25:6
**injunctive** [20] -
10:19, 10:21, 17:3,
17:13, 17:15, 18:18,
20:2, 21:5, 24:15,
30:25, 31:2, 34:17,
34:18, 43:7, 43:15,
43:17, 43:20, 43:21,
52:2, 54:14
**innocent** [1] - 52:7
**input** [1] - 53:19
**insecticides** [1] -
44:25
**insightful** [1] - 5:17
**instead** [1] - 44:21
**INSTITUTE** [1] - 2:20
**institution** [4] - 4:23,
55:19, 56:8
**institutions** [4] - 5:3,
5:9, 5:11, 54:25
**instructed** [1] -
15:10
**instructions** [1] -
4:18
**intend** [1] - 25:21
**intended** [1] - 24:13
**interest** [9] - 6:18,
8:25, 9:2, 11:11, 27:5,
30:4, 32:20, 37:13,
38:7
**interested** [2] -
50:11, 50:12
**interesting** [2] -
21:16, 25:3
**interests** [3] - 12:18,
12:25, 13:5
**interpretation** [2] -
8:14, 42:16

**invalid** [1] - 42:2
**invite** [1] - 53:8
**involved** [5] - 9:14, 12:17, 13:22, 41:16, 42:3
**irony** [2] - 25:1, 27:9
**issue** [8] - 7:16, 12:24, 26:15, 29:10, 32:21, 46:12, 46:18, 51:13
**issued** [1] - 53:8
**issues** [6] - 15:10, 15:21, 15:24, 19:19, 28:21, 29:10
**itself** [2] - 6:3, 46:2

**J**

**James** [1] - 1:7
**January** [1] - 53:8
**Jeannine** [1] - 5:8
**JEANNINE** [1] - 3:5
**job** [3] - 35:2, 52:5, 53:17
**JOHNS** [3] - 2:11, 2:12, 4:7
**Johns** [3] - 4:7, 31:11, 31:15
**JOSEPH** [1] - 1:14
**judge** [1] - 33:23
**Judge** [7] - 8:19, 9:9, 13:18, 13:19, 13:20, 23:12, 46:13
**judges** [2] - 34:1, 41:18
**judicial** [1] - 37:21
**juncture** [2] - 38:19

**K**

**KAPLAN** [1] - 2:2
**keep** [1] - 29:19
**keeping** [1] - 53:3
**KENNEY** [2] - 3:5, 5:8
**Kenney** [1] - 5:8
**kettle** [1] - 55:7
**kicker** [10] - 7:10, 7:12, 13:4, 22:6, 25:19, 33:10, 35:18, 37:1, 41:6, 52:7
**kind** [8] - 30:9, 32:9, 35:16, 35:19, 36:1, 41:16, 50:8, 53:14

**L**

**label** [1] - 33:10
**laid** [1] - 46:2
**language** [5] - 23:22,

24:1, 25:17, 33:20, 48:7
**large** [2] - 7:1, 27:5
**larger** [3] - 32:7, 32:9, 49:11
**last** [7] - 6:8, 10:9, 10:15, 19:10, 25:11, 33:2, 49:19
**lastly** [1] - 48:18
**lateraling** [1] - 14:18
**laundry** [1] - 26:2
**law** [4] - 16:11, 42:11, 46:6, 51:16
**LAW** [2] - 2:7, 2:20
**lawyers** [17] - 12:14, 12:17, 14:19, 17:17, 24:17, 27:15, 31:11, 32:22, 33:3, 34:15, 34:21, 38:17, 40:8, 41:15, 47:8, 53:1, 53:20
**lay** [2] - 45:7, 52:3
**LE** [5] - 9:14, 50:10, 50:11
**lead** [1] - 21:20
**leaders** [1] - 55:18
**learned** [1] - 41:18
**least** [14] - 14:4, 16:6, 52:17, 55:11
**leave** [1] - 50:22
**legal** [1] - 53:11
**legitimately** [1] - 8:11
**length** [2] - 8:15, 8:23
**less** [8] - 7:8, 25:13, 28:1, 28:4, 35:10, 35:13, 49:6, 51:4
**lesson** [1] - 41:18
**Levis** [1] - 5:10
**LEVIS** [2] - 3:2, 5:10
**Lewis** [1] - 4:16
**LEWIS** [1] - 2:16
**lid** [1] - 37:12
**LIEBENBERG** [19] - 2:3, 4:11, 23:3, 23:8, 23:17, 24:10, 25:2, 26:4, 26:9, 26:22, 27:20, 28:9, 28:19, 29:8, 29:15, 29:17, 50:1, 50:5, 56:21
**Liebenberg** [4] - 4:12, 19:10, 22:4, 27:14
**life** [2] - 56:4, 56:6
**light** [4] - 6:4, 18:24, 36:20, 47:21
**limits** [1] - 11:5
**LINCOLN** [1] - 2:20
**Linda** [1] - 4:9

**LINDA** [1] - 2:8
**line** [3] - 42:24, 44:11, 54:10
**lines** [1] - 42:21
**lions** [1] - 40:7
**list** [3] - 11:6, 26:2, 33:7
**LITE** [1] - 3:7
**literally** [3] - 12:13, 49:4, 49:5
**litigants** [2] - 39:1, 45:2
**LITIGATION** [1] - 1:4
**litigation** [5] - 41:9, 41:10, 41:16, 41:24
**Litigation** [1] - 4:5
**live** [1] - 32:24
**LLC** [2] - 2:11, 3:7
**LLP** [3] - 2:16, 3:4, 3:5
**lnussbaum@ nussbaumpc.com** [1] - 2:10
**lodestar** [1] - 35:5
**look** [31] - 8:25, 16:13, 16:15, 16:22, 18:24, 18:25, 19:8, 19:24, 23:20, 23:22, 24:11, 25:3, 28:16, 29:9, 30:15, 30:16, 30:23, 31:21, 32:10, 33:11, 34:8, 35:16, 35:20, 37:17, 40:1, 42:18, 42:20, 42:22, 43:1, 45:21, 46:20
**looked** [5] - 19:1, 19:2, 19:25, 31:18
**looking** [6] - 19:23, 22:18, 30:10, 34:19, 34:20, 39:5, 43:5, 46:5
**lost** [1] - 54:18
**love** [1] - 38:24
**low** [1] - 35:3
**LOWEY** [1] - 3:2
**loyal** [1] - 17:5
**loyalty** [2] - 47:3, 47:13
**Lynch** [1] - 4:22
**LYNCH** [4] - 3:3, 3:4, 4:22, 5:1

**M**

**machinations** [1] - 18:16
**magically** [1] - 54:5
**Magistrate** [1] - 23:12
**main** [2] - 6:25,

51:20
**major** [3] - 17:23, 20:10, 41:10
**mandate** [2] - 18:13, 48:17
**maritime** [1] - 39:7
**Market** [3] - 1:8, 1:15, 2:17
**material** [3] - 22:15, 29:5, 53:21
**mathematical** [1] - 18:20
**matter** [8] - 8:6, 26:16, 27:4, 41:20, 57:2
**McCollum** [3] - 1:18, 57:4, 57:5
**mean** [18] - 9:22, 9:25, 10:10, 11:22, 13:8, 18:4, 18:25, 22:9, 22:13, 26:19, 27:1, 38:23, 41:12, 41:21, 47:7, 53:25
**meaning** [1] - 31:23
**means** [3] - 24:6, 24:18, 39:1
**meant** [3] - 8:19, 31:24, 48:1
**measure** [1] - 45:14
**mediation** [2] - 38:2, 38:4
**mediator** [1] - 54:12
**meet** [1] - 44:15
**meets** [1] - 26:20
**melody** [1] - 47:17
**member** [1] - 27:2
**members** [8] - 9:4, 16:10, 18:1, 28:6, 43:1, 47:13, 49:10, 51:18
**mention** [6] - 8:19, 43:8, 43:15, 43:17, 43:19, 48:10
**mentioned** [1] - 42:25
**merely** [2] - 24:12, 27:23
**metaphor** [1] - 39:7
**might** [7] - 7:18, 7:19, 31:24, 45:12, 45:13, 46:2, 52:18
**million** [19] - 8:23, 10:16, 10:17, 20:7, 20:10, 20:21, 21:3, 28:5, 31:1, 34:19, 34:20, 34:24, 34:25, 44:2, 49:20, 51:3, 52:16
**MINDEE** [1] - 3:6
**mindee** [1] - 5:2

**minds** [1] - 37:10
**minor** [1] - 42:2
**minus** [1] - 21:25
**misconstruction** [1] - 16:3
**misconstrued** [1] - 15:9
**missed** [1] - 22:16
**missing** [1] - 22:12
**misspoke** [1] - 48:1
**modest** [1] - 43:11
**money** [7] - 32:7, 32:9, 32:10, 32:13, 49:6, 49:8, 51:14, 51:17, 52:1, 52:14, 54:18
**MONTAGUE** [1] - 1:14
**month** [1] - 37:7
**Morgan** [1] - 4:15
**MORGAN** [1] - 2:16
**morning** [1] - 38:4
**most** [4] - 18:4, 19:25, 20:7, 51:25
**mostly** [1] - 18:21
**mouth** [1] - 32:10
**moving** [1] - 30:5
**MR** [116] - 4:7, 4:15, 4:17, 4:22, 5:1, 5:10, 5:20, 5:22, 5:24, 6:12, 6:14, 6:16, 6:25, 7:5, 7:25, 8:13, 8:21, 9:3, 9:8, 9:12, 9:16, 9:22, 9:25, 10:7, 10:10, 10:13, 10:21, 10:25, 11:2, 11:9, 11:13, 11:18, 11:22, 12:5, 12:8, 12:11, 12:23, 13:3, 13:8, 13:14, 13:19, 13:24, 14:2, 14:7, 14:11, 14:16, 14:20, 14:25, 19:6, 29:20, 30:2, 30:21, 31:5, 31:8, 32:2, 33:6, 33:25, 34:5, 36:7, 36:15, 36:20, 37:22, 37:25, 38:14, 38:16, 38:22, 38:24, 39:4, 39:13, 39:22, 40:5, 40:8, 40:10, 40:13, 40:17, 40:22, 41:1, 41:3, 41:21, 42:4, 43:17, 43:19, 43:23, 44:18, 45:7, 45:11, 45:18, 46:1, 46:10, 46:17, 47:2, 47:6, 47:11, 47:18, 47:21, 47:25, 48:5, 49:1, 49:4, 49:7, 49:10, 49:16, 49:19, 49:24,

*United States District Court*

50:14, 50:20, 50:25, 54:23, 55:9, 56:2, 56:5, 56:7, 56:10, 56:15, 56:18, 56:22
**MS** [46] - 4:9, 4:11, 4:13, 5:2, 5:5, 5:8, 15:5, 15:8, 15:15, 15:18, 16:2, 17:18, 17:21, 18:8, 18:12, 18:19, 19:15, 20:5, 20:20, 20:24, 21:2, 21:10, 21:14, 21:18, 22:2, 23:3, 23:8, 23:17, 24:10, 25:2, 26:4, 26:9, 26:22, 27:20, 28:9, 28:19, 29:8, 29:15, 29:17, 50:1, 50:3, 50:5, 50:6, 51:10, 56:20, 56:21
**MULLER** [1] - 1:14
**must** [3] - 7:17, 7:21, 53:6

## N

**necessary** [1] - 23:24
**need** [10] - 5:19, 10:9, 11:6, 14:9, 23:4, 32:4, 36:8, 39:20, 41:9, 53:11
**needs** [11] - 8:25, 13:16, 14:6, 22:17, 23:1, 26:7, 46:23, 47:17, 47:18, 53:6, 53:21
**nefariously** [1] - 22:6
**negative** [6] - 21:22, 21:23, 21:25, 33:5, 35:5, 52:11
**negotiate** [1] - 35:22
**negotiated** [6] - 7:20, 8:11, 10:14, 12:16, 34:25
**negotiating** [7] - 7:17, 8:5, 8:9, 13:23, 34:15, 34:22, 35:23
**negotiation** [5] - 8:16, 8:23, 23:11, 36:1, 36:4
**negotiations** [5] - 11:3, 11:5, 11:19, 12:2, 35:5
**neophyte** [1] - 46:16
**net** [2] - 7:22, 54:20
**never** [7] - 6:17, 19:12, 26:12, 27:25, 28:20, 40:22
**New** [1] - 2:9
**new** [2] - 48:14, 52:8

**news** [1] - 40:12
**next** [2] - 6:23, 33:4
**Nice** [2] - 5:4, 5:5
**nice** [1] - 5:6
**night** [1] - 38:5
**nine** [1] - 38:4
**NJ** [1] - 1:18
**NO** [1] - 1:3
**nobody** [1] - 14:25
**nondelegable** [1] - 14:2
**none** [4] - 14:25, 22:6, 23:10, 28:19
**nonmonetary** [1] - 54:15
**normally** [1] - 30:19
**Northern** [1] - 46:14
**Note** [1] - 24:5
**noted** [1] - 4:21
**nothing** [2] - 11:5, 22:19
**notice** [2] - 55:1, 55:15
**notion** [3] - 22:10, 37:19, 38:12
**nowhere** [1] - 31:3
**number** [14] - 7:9, 20:16, 25:12, 30:18, 30:22, 35:4, 35:8, 35:13, 37:11, 41:18, 42:14, 42:15, 44:23
**NUSSBAUM** [3] - 2:7, 2:8, 4:9
**Nussbaum** [1] - 4:10
**NW** [1] - 2:22
**NY** [1] - 2:9

## O

**oath** [3] - 27:15, 47:9, 47:10
**obdurate** [2] - 44:10, 44:12
**object** [3] - 24:3, 25:18, 27:2
**objected** [1] - 52:16
**objecting** [1] - 42:7
**objection** [2] - 6:2, 49:12
**OBJECTOR** [2] - 2:20, 3:8
**objector** [8] - 4:18, 33:9, 35:16, 35:17, 42:7, 50:12, 52:15
**objector's** [3] - 16:7, 28:11, 29:1
**objectors** [9] - 17:10, 17:11, 27:7, 27:8, 39:15, 39:19, 39:21, 42:8, 50:12

**obligate** [1] - 44:4
**obligation** [1] - 33:11
**observations** [1] - 40:24
**obviously** [2] - 7:2, 42:6
**occurs** [1] - 21:7
**OF** [1] - 1:1
**off-limits** [1] - 11:5
**offer** [10] - 11:24, 15:4, 49:21, 50:15, 50:18, 50:19, 50:20, 50:21, 50:22, 54:22
**offered** [3] - 16:13, 19:1, 19:9
**offers** [1] - 16:23
**Official** [1] - 1:19, 57:5
**often** [1] - 35:24
**old** [1] - 24:24
**once** [1] - 38:5
**one** [33] - 7:9, 15:11, 17:6, 17:8, 18:4, 19:6, 19:25, 21:5, 21:8, 21:18, 22:4, 23:3, 24:16, 26:17, 33:5, 33:22, 37:11, 37:16, 39:20, 42:14, 44:24, 48:20, 48:21, 50:10, 51:20, 52:15, 52:17, 52:22, 53:15, 54:13, 55:15
**One** [1] - 2:4
**ones** [1] - 41:19
**onion** [1] - 33:13
**operating** [1] - 14:14
**opinion** [28] - 6:6, 6:23, 7:21, 8:9, 8:14, 8:15, 10:20, 14:3, 16:18, 24:5, 30:7, 30:12, 30:17, 31:4, 31:20, 33:8, 33:14, 36:21, 39:23, 42:16, 42:22, 45:20, 45:23, 48:17, 52:8, 53:6, 55:2, 55:10
**opposite** [1] - 16:12
**option** [1] - 16:24
**options** [1] - 16:23
**oral** [2] - 53:9, 53:10
**order** [8] - 4:1, 7:22, 8:10, 11:7, 26:7, 48:19, 53:21, 55:12
**orders** [1] - 48:21
**original** [3] - 26:24, 30:12, 53:7
**otherwise** [2] - 10:4, 51:22
**ought** [5] - 6:23, 36:23, 38:6, 39:9,

39:17
**ourselves** [1] - 36:16
**outline** [1] - 15:22
**overall** [1] - 13:23
**own** [8] - 24:5, 39:10, 42:1, 53:1, 55:8, 55:25, 56:3, 56:6

## P

**p.m** [2] - 1:9, 56:24
**PA** [5] - 1:8, 1:15, 2:4, 2:13, 2:17
**paces** [1] - 32:15
**pacifying** [1] - 27:8
**package** [1] - 41:6
**page** [1] - 17:2
**pages** [2] - 16:6, 24:5
**paid** [1] - 16:20
**panel** [6] - 7:7, 7:5, 8:3, 42:17, 48:17, 55:2
**panel's** [1] - 33:8
**paper** [2] - 36:14, 40:15
**papers** [3] - 21:3, 49:19, 53:7
**paragraph** [9] - 23:20, 23:22, 24:1, 24:11, 24:12, 25:15, 25:17, 27:21, 28:15
**paragraphs** [1] - 8:3
**Parks** [4] - 4:15, 25:6, 29:20, 42:15, 42:25, 54:23
**PARKS** [38] - 2:16, 4:15, 29:20, 30:2, 30:21, 31:5, 31:8, 32:2, 33:6, 33:25, 34:5, 36:7, 36:15, 36:20, 37:22, 37:25, 38:14, 38:16, 38:22, 38:24, 39:4, 39:13, 39:22, 40:5, 40:8, 40:10, 40:13, 40:17, 40:22, 54:23, 55:9, 56:2, 56:5, 56:7, 56:10, 56:15, 56:18, 56:22
**parks** [1] - 43:25
**part** [10] - 7:15, 7:25, 16:1, 22:1, 24:25, 31:10, 31:17, 33:21, 35:4, 54:21
**particular** [1] - 37:11
**particularly** [4] - 5:17, 17:4, 25:8, 36:18
**parties** [4] - 8:16,

8:17, 25:21, 38:1
**parts** [2] - 18:5, 54:10
**party** [1] - 14:14
**pass** [1] - 40:14
**past** [1] - 37:5
**payment** [1] - 18:3
**PC** [3] - 1:14, 2:7, 3:2
**peculiar** [2] - 25:1, 26:5
**peel** [1] - 33:12
**pejorative** [2] - 27:6, 40:3
**pending** [1] - 48:8
**PENNSYLVANIA** [1] - 1:1
**Pennsylvania** [1] - 33:3
**people** [15] - 18:9, 14:20, 26:3, 27:6, 31:24, 32:3, 32:5, 32:11, 32:12, 34:11, 39:14, 47:1, 51:21, 52:16, 54:16
**per** [5] - 4:18, 14:13, 16:8, 16:15, 52:20
**percent** [8] - 10:16, 10:22, 10:23, 21:21, 21:23, 21:25, 25:12, 49:20
**percentage** [2] - 16:19, 19:1
**percentage-based** [1] - 16:19
**perhaps** [6] - 9:15, 22:20, 22:21, 22:22, 22:23, 22:24
**period** [1] - 38:1
**person** [1] - 12:17
**personally** [1] - 29:15
**perspective** [3] - 6:24, 30:8, 43:4
**perspectives** [1] - 15:4
**persuasion** [1] - 41:15
**petition** [2] - 24:1, 27:24
**ph** [1] - 48:9
**Philadelphia** [4] - 1:8, 1:15, 2:4, 2:17
**philosophical** [1] - 37:14
**philosophically** [2] - 37:10, 39:3
**pick** [1] - 51:24
**piece** [2] - 30:10, 33:24
**pieces** [2] - 30:9,

40:15
**place** [4] - 6:1, 18:11, 20:19, 45:1
**plaintiff** [1] - 41:25
**PLAINTIFF** [1] - 1:14
**plaintiffs** [5] - 4:8, 4:10, 4:12, 4:14, 4:23
**PLAINTIFFS** [3] - 2:3, 2:8, 2:12
**plaintiffs'** [8] - 11:23, 14:18, 31:10, 32:22, 34:15, 34:21, 38:17, 47:8
**plaintive** [1] - 45:16
**plan** [1] - 45:1
**plug** [4] - 18:18, 20:4, 20:5, 54:19
**plus** [1] - 34:19
**pocket** [1] - 29:24
**podium** [1] - 5:22
**point** [10] - 18:1, 19:10, 21:23, 30:13, 42:14, 42:23, 47:15, 48:3, 48:4, 48:5
**pointed** [2] - 17:3, 33:9
**points** [2] - 51:11, 51:20
**poised** [1] - 55:1
**policy** [1] - 43:4
**position** [3] - 13:24, 14:21, 49:19
**possibility** [1] - 32:5
**possible** [1] - 44:10
**possibly** [1] - 34:20
**potential** [1] - 14:21
**potentially** [1] - 44:20
**practical** [5] - 7:15, 10:12, 26:20, 33:1, 54:21
**practicality** [1] - 47:16
**practice** [1] - 8:4
**practices** [2] - 18:10, 44:6
**PRATTER** [1] - 1:11
**pray** [1] - 12:4
**precedent** [1] - 10:22
**precisely** [2] - 34:3, 46:15
**precluded** [1] - 48:16
**preliminary** [3] - 17:25, 26:1, 35:25
**prepare** [1] - 51:11
**prepared** [3] - 1:24, 15:2, 55:19
**preparing** [1] - 23:25
**presence** [4] - 4:21, 15:13, 33:18, 37:3

**PRESENT** [1] - 3:1
**present** [1] - 15:25
**pretend** [1] - 19:13
**pretty** [6] - 13:22, 22:14, 29:15, 30:13, 35:6, 38:1
**prevent** [1] - 45:12
**previously** [1] - 55:16
**price** [1] - 8:7
**principal** [2] - 9:3, 9:15, 50:15
**principally** [1] - 17:15
**principals** [1] - 50:10
**principle** [1] - 9:14
**principles** [1] - 50:11
**proactive** [1] - 45:1
**problem** [6] - 11:11, 11:13, 42:12, 44:15, 44:16, 51:2
**problems** [1] - 37:17
**procedures** [1] - 20:14
**Proceeding** [1] - 56:24
**proceeding** [1] - 8:2
**Proceedings** [1] - 1:24
**proceedings** [1] - 57:2
**process** [5] - 41:8, 42:10, 48:6, 48:8, 54:19
**product** [2] - 28:14, 36:3
**productive** [3] - 38:19, 45:16, 48:23
**products** [1] - 25:13
**Products** [1] - 48:9
**profession** [1] - 37:15
**proof** [1] - 41:14
**proper** [1] - 16:22
**properly** [2] - 12:16, 28:25
**proportion** [1] - 51:2
**proposal** [2] - 15:23, 37:8
**proposed** [3] - 11:24, 48:19, 51:7
**protect** [2] - 20:15, 32:5
**prove** [1] - 33:5
**provide** [5] - 15:21, 24:13, 25:4, 26:11, 28:4
**provided** [2] - 25:6, 25:10
**provides** [1] - 18:1

**providing** [1] - 23:24
**provision** [9] - 7:12, 13:4, 24:13, 25:16, 33:10, 33:16, 35:11, 39:25, 42:9
**provisions** [3] - 7:10, 37:2, 42:5
**public** [1] - 6:17
**purchased** [1] - 25:13
**purported** [5] - 15:20, 15:24, 19:11, 22:5, 23:19
**purpose** [2] - 33:18, 37:2
**pursuant** [1] - 53:6
**put** [22] - 7:1, 9:5, 18:11, 20:19, 20:24, 21:3, 27:23, 30:3, 32:10, 32:12, 32:15, 34:14, 35:11, 35:14, 36:13, 36:25, 37:4, 37:12, 50:7, 51:1, 51:5, 54:7
**puts** [2] - 22:6, 44:3
**putting** [1] - 19:12
**puzzling** [1] - 33:22

## Q

**qualitative** [2] - 29:6, 29:7
**quality** [2] - 7:13, 13:14
**quantitative** [1] - 29:7
**questioning** [1] - 50:7
**questions** [1] - 34:7
**quickly** [1] - 22:22
**quite** [5] - 7:22, 38:15, 51:16, 52:3, 52:11
**quote** [1] - 25:1
**quotient** [1] - 47:16
**quoting** [1] - 16:17

## R

**raised** [4] - 28:20, 39:18, 46:17
**rate** [2] - 19:2, 25:12
**rather** [12] - 10:22, 24:19, 32:16, 33:19, 37:3, 38:23, 42:19, 45:22, 46:4, 46:5, 46:22, 53:25
**ratio** [2] - 51:1, 51:5
**RE** [1] - 1:3
**Re** [1] - 4:5

**reach** [1] - 38:6
**reached** [2] - 8:22, 38:20
**read** [8] - 6:5, 7:21, 17:25, 30:6, 33:8, 39:23, 40:20, 45:20
**reading** [1] - 46:1
**reality** [1] - 9:9
**realize** [1] - 46:24
**really** [19] - 6:20, 11:13, 11:15, 12:23, 18:10, 20:9, 20:10, 20:11, 23:7, 23:20, 32:4, 34:23, 35:1, 35:3, 35:7, 35:8, 52:4, 52:19, 53:11
**reapproved** [1] - 55:17
**rear** [3] - 8:6, 41:14, 41:25
**rear-end** [3] - 8:6, 41:14, 41:25
**reason** [2] - 31:17, 43:7
**reasonable** [2] - 10:15, 13:20
**reasonableness** [15] - 6:4, 15:12, 16:5, 16:8, 16:19, 16:22, 18:25, 19:4, 19:24, 21:19, 25:5, 25:14, 52:3, 52:17, 52:24
**reasonably** [1] - 23:25
**reasons** [1] - 44:19
**received** [1] - 39:24
**recitation** [1] - 27:23
**recognize** [1] - 7:19
**recollection** [1] - 36:6
**reconsider** [1] - 45:20
**reconsideration** [1] - 6:4
**record** [10] - 6:17, 15:19, 20:21, 20:22, 22:12, 26:14, 28:24, 30:4, 44:1, 57:2
**redeemed** [1] - 46:6
**reduce** [1] - 26:19, 44:20
**reduced** [1] - 45:5
**reference** [2] - 10:19, 16:19
**referring** [1] - 25:7
**regular** [1] - 41:8
**reintroducing** [2] - 41:5, 42:13
**rejected** [3] - 8:9, 16:7, 50:3

**relative** [1] - 30:10
**relevant** [1] - 25:5
**relief** [23] - 10:19, 10:21, 17:3, 17:13, 17:15, 18:18, 20:2, 21:5, 24:14, 24:15, 30:25, 31:3, 34:17, 34:18, 43:7, 43:15, 43:17, 43:20, 43:21, 46:3, 52:2, 54:14, 54:15
**remains** [1] - 17:2
**remand** [2] - 15:10, 32:18
**remanded** [1] - 15:19
**remedial** [2] - 44:21, 45:14
**reminder** [1] - 31:15
**removed** [2] - 7:11, 9:19
**repeat** [3] - 17:5, 18:21, 25:9
**repeatedly** [1] - 16:4
**reply** [1] - 45:17
**Reporter** [2] - 1:19, 57:5
**reports** [1] - 31:12
**represent** [1] - 51:21
**representation** [3] - 7:14, 13:15
**represented** [1] - 51:22
**request** [4] - 14:13, 23:25, 24:7, 42:11
**require** [2] - 24:13, 47:13
**required** [2] - 23:23, 42:18
**requirements** [1] - 44:3
**requires** [3] - 41:14, 41:15, 55:15
**requiring** [1] - 54:3
**reread** [1] - 30:6
**research** [1] - 21:9
**reserve** [1] - 24:25
**resistant** [1] - 41:4
**resolution** [4] - 10:14, 11:7, 11:25, 22:20
**respect** [7] - 15:20, 22:10, 23:14, 23:19, 25:6, 25:10, 29:10
**respectful** [1] - 12:18
**respond** [3] - 14:10, 26:9, 50:2
**responded** [1] - 49:25
**responses** [1] - 37:7
**result** [9] - 7:22,

12:16, 17:16, 22:25, 35:2, 53:23, 54:19, 54:20
**results** [1] - 48:8
**return** [1] - 47:16
**returned** [1] - 13:12
**REUBEN** [3] - 3:6, 5:2, 5:5
**Reuben** [2] - 5:3, 5:7
**reveal** [2] - 11:2, 11:4
**reverse** [1] - 9:15
**reversion** [3] - 9:19, 25:23, 37:1
**reverter** [8] - 15:21, 15:24, 19:18, 22:5, 33:10, 33:15, 35:18, 39:24
**reverters** [2] - 19:11, 19:23
**review** [4] - 11:17, 14:3, 26:23, 28:23
**revised** [1] - 30:17
**revising** [1] - 17:10
**rid** [1] - 9:17
rliebenberger@ finekaplan.com [1] - 2:5
**road** [1] - 26:21
**roadmap** [3] - 10:6, 10:12, 36:12
**ROBERTA** [1] - 2:3
**rock** [1] - 39:16
**Roman** [3] - 40:5, 40:7, 40:11
**routine** [2] - 22:13, 22:14
**RPC** [1] - 2:2
**RPR** [2] - 1:18, 57:5
**rubber** [1] - 26:20
**Rule** [4] - 17:10, 27:3, 39:14, 46:15
**rule** [3] - 16:8, 16:15, 52:21
**ruled** [1] - 7:11
**rules** [4] - 17:9, 27:3, 46:12, 46:13

**S**

**safest** [1] - 23:6
**sailing** [17] - 7:10, 13:3, 13:10, 15:20, 15:24, 23:19, 23:21, 24:4, 24:6, 33:9, 33:16, 35:18, 37:1, 39:25, 41:6, 42:5, 42:9
**sake** [1] - 44:13
**satisfied** [1] - 11:7

**sauce** [1] - 54:4
**save** [2] - 45:5, 45:6
**Savett** [4] - 4:14, 25:7, 27:21, 48:11
**SAVETT** [25] - 1:14, 4:13, 15:5, 15:8, 15:15, 15:18, 16:2, 17:18, 17:21, 18:8, 18:12, 18:19, 19:15, 20:5, 20:20, 20:24, 21:2, 21:10, 21:14, 21:18, 22:2, 50:3, 50:6, 51:10, 56:20
**scales** [1] - 44:14
**scenario** [1] - 39:14
**schedule** [1] - 14:22
**scheme** [1] - 44:21
**SCHULMAN** [76] - 2:21, 4:17, 5:20, 5:22, 5:24, 6:12, 6:14, 6:16, 6:25, 7:5, 7:25, 8:13, 8:21, 9:3, 9:8, 9:12, 9:16, 9:22, 9:25, 10:7, 10:10, 10:13, 10:21, 10:25, 11:2, 11:9, 11:13, 11:18, 11:22, 12:5, 12:8, 12:11, 12:23, 13:3, 13:8, 13:14, 13:19, 13:24, 14:2, 14:7, 14:11, 14:16, 14:20, 14:25, 19:6, 41:1, 41:3, 41:21, 42:4, 43:17, 43:19, 43:23, 44:18, 45:7, 45:11, 45:18, 46:1, 46:10, 46:17, 47:2, 47:6, 47:11, 47:18, 47:21, 47:25, 48:5, 49:1, 49:4, 49:7, 49:10, 49:16, 49:19, 49:24, 50:14, 50:20, 50:25
**Schulman** [6] - 4:17, 15:8, 16:3, 22:6, 23:13, 29:13
**scope** [1] - 24:14
**scratch** [1] - 33:12
**se** [3] - 16:8, 16:15, 52:20
**search** [2] - 25:17, 36:11
**searching** [1] - 39:11
**season** [1] - 14:18
**seat** [1] - 15:3
**seats** [1] - 4:2
**second** [4] - 32:21, 32:25, 35:9, 41:10
**secret** [2] - 54:4, 54:5
**security** [3] - 18:3,

25:8, 44:6
**SECURITY** [1] - 1:4
**Security** [1] - 4:5
**see** [10] - 5:4, 5:5, 5:6, 7:16, 8:2, 8:10, 28:17, 37:20, 52:9, 55:24
**seem** [2] - 41:16, 42:17
**sees** [1] - 44:14
**segregation** [1] - 9:17
**semantic** [2] - 11:13, 12:24
**send** [5] - 31:15, 32:13, 53:23, 55:1, 56:17
**sending** [1] - 47:14
**sense** [4] - 20:6, 43:4, 51:25, 53:25
**sensible** [2] - 42:24, 45:23
**separate** [2] - 54:6, 54:24
**serious** [1] - 6:20
**serve** [1] - 13:4
**served** [2] - 33:18, 37:2
**service** [1] - 27:24
**session** [1] - 38:4
**set** [2] - 31:14, 32:24
**setting** [1] - 13:16
**settled** [3] - 10:2, 36:2, 56:10
**Settlement** [5] - 9:20, 28:3, 28:12, 28:14, 49:12
**settlement** [43] - 5:25, 6:1, 6:3, 7:10, 7:17, 8:2, 11:3, 13:4, 13:23, 17:12, 18:1, 18:5, 18:13, 19:24, 20:11, 21:24, 23:11, 24:6, 25:1, 26:1, 26:2, 26:7, 27:22, 31:10, 31:14, 33:2, 34:12, 34:15, 35:24, 37:23, 37:25, 38:8, 38:20, 39:14, 44:3, 45:11, 49:13, 53:22, 54:9, 54:11, 54:25, 55:1
**settlements** [7] - 24:19, 24:20, 27:8, 35:15, 37:24, 43:20, 44:24
**shall** [1] - 23:23
**sharp** [1] - 41:12
**sheepish** [1] - 30:20
**Sherrie** [1] - 4:13
**SHERRIE** [1] - 1:14

**ship** [1] - 39:7
**ships** [1] - 39:2
**shoals** [2] - 39:8, 39:16
**short** [2] - 11:12, 15:22
**shorthand** [4] - 11:10, 12:24, 13:11
**show** [3] - 26:14, 36:8, 54:8
**showed** [1] - 9:18
**showing** [1] - 54:20
**shrift** [1] - 11:12
**SHUB** [1] - 2:11
**side** [11] - 15:13, 19:11, 19:22, 22:5, 23:9, 26:14, 29:12, 32:21, 32:23, 51:24, 52:4
**sides** [2] - 17:17, 34:11
**sign** [4] - 27:15, 44:11, 47:9, 47:10
**significant** [2] - 18:4, 52:12
**silent** [4] - 19:16, 28:1, 28:2, 28:9
**similar** [1] - 34:9
**simple** [1] - 54:7
**single** [1] - 18:20
**situations** [1] - 42:4
**small** [2] - 51:18, 51:21
**smart** [1] - 44:19
**sniping** [1] - 38:10
**snow** [3] - 27:12, 27:13, 34:11
**snowflake** [1] - 53:16
**so-called** [5] - 17:11, 19:22, 25:19, 32:21, 33:16
**solely** [1] - 16:9
**someplace** [1] - 53:12
**sometimes** [1] - 36:8
**somewhat** [2] - 7:2, 7:6
**song** [1] - 24:24
**sorry** [2] - 29:25, 47:25
**sort** [6] - 29:10, 31:20, 35:13, 40:14, 54:17, 55:21
**sound** [2] - 21:8, 42:5
**sounds** [2] - 4:23, 24:24
**South** [1] - 2:4
**speaking** [3] - 9:10,

12:10, 50:8
**special** [5] - 41:13, 53:15, 53:16
**specialness** [1] - 41:17
**specific** [2] - 31:21, 31:22
**specifically** [1] - 43:11
**spend** [1] - 38:18
**spent** [5] - 8:3, 17:8, 46:11, 46:14, 54:12
**spokesperson** [1] - 14:15
ssavett@bm.net [1] - 1:16
**stage** [1] - 13:16
**stake** [1] - 29:23
**stand** [1] - 11:23
**standing** [3] - 6:10, 38:16, 46:12
**start** [3] - 4:6, 5:17, 40:24
**started** [2] - 38:4, 40:24
**starting** [2] - 42:23, 42:24
**statement** [1] - 51:13
**statements** [1] - 31:13
**STATES** [1] - 1:1
**stating** [1] - 13:20
**station** [1] - 18:22
**Staton** [1] - 10:25
**STATUS** [1] - 1:4
**stay** [1] - 55:3
**steady** [1] - 52:20
**stenographically** [1] - 1:24
**step** [3] - 21:5, 46:22, 46:23
**stepping** [1] - 47:6
**stick** [1] - 39:6
**still** [13] - 6:1, 13:1, 20:14, 21:22, 26:23, 26:24, 36:11, 38:10, 38:12, 38:16, 41:14, 41:15, 52:14
**stipulated** [1] - 10:1
**stipulation** [1] - 56:11
**stolen** [1] - 18:23
**straightforward** [1] - 22:14
**Street** [5] - 1:8, 1:15, 2:4, 2:17, 2:22
**stressed** [1] - 17:1
**strong** [2] - 25:20, 45:23
**strongly** [3] - 38:11,

*United States District Court*

42:22, 56:7
**structured** [1] - 55:13
**struggle** [1] - 30:25
**studying** [1] - 40:17
**stuff** [1] - 39:9
**stupid** [2] - 44:17, 44:18
**subject** [1] - 36:16
**submit** [5] - 10:8, 15:23, 45:18, 48:19, 53:4
**submitted** [2] - 47:11, 56:12
**substance** [1] - 29:2
**suggest** [2] - 22:9, 42:22
**suggested** [7] - 10:15, 10:16, 34:8, 43:10, 43:11, 46:3, 55:20
**suggesting** [4] - 27:10, 27:11, 27:14, 44:8
**suggestion** [5] - 39:24, 45:23, 50:23, 51:1, 51:4
**suggests** [3] - 33:19, 37:3, 42:12
**Suite** [4] - 1:15, 2:4, 2:13, 2:22
**sum** [2] - 8:23, 32:9
**super** [1] - 21:24
**superior** [2] - 44:22, 45:13
**supervised** [1] - 17:23
**supervising** [1] - 41:25
**support** [2] - 21:4, 26:24
**supposed** [11] - 11:4, 12:14, 12:20, 15:17, 19:5, 24:25, 36:13, 38:9, 45:17, 48:24
**surface** [1] - 33:12
**swear** [1] - 12:21
**syllable** [1] - 54:13
**system** [3] - 17:22, 37:21, 47:3

## T

**table** [4] - 35:16, 35:17, 49:15, 50:7
**tainted** [1] - 28:17
**take-it-or-leave-it** [1] - 50:22
**tangible** [1] - 18:2

**tat** [1] - 27:18
**teacher** [2] - 36:8, 53:18
**temporary** [2] - 33:19, 37:3
**ten** [1] - 38:5
**term** [1] - 13:11
**terms** [12] - 5:25, 6:14, 18:17, 23:8, 25:4, 25:7, 29:5, 29:14, 39:10, 43:24, 44:5, 54:7
**test** [2] - 20:14, 34:3
**THE** [162] - 1:1, 1:1, 1:11, 1:14, 2:2, 2:7, 2:11, 2:16, 2:20, 4:2, 4:20, 4:25, 5:4, 5:6, 5:12, 5:21, 5:23, 6:10, 6:13, 6:15, 6:19, 7:4, 7:15, 8:5, 8:17, 9:2, 9:7, 9:10, 9:13, 9:21, 9:24, 10:5, 10:9, 10:12, 10:18, 10:24, 11:1, 11:4, 11:12, 11:16, 11:20, 12:3, 12:7, 12:9, 12:13, 13:1, 13:6, 13:10, 13:17, 13:22, 14:1, 14:5, 14:9, 14:14, 14:17, 14:23, 15:3, 15:6, 15:12, 15:16, 16:1, 17:6, 17:20, 18:6, 18:9, 18:15, 19:5, 19:13, 20:3, 20:18, 20:22, 21:1, 21:7, 21:11, 21:16, 22:1, 22:9, 23:6, 23:15, 24:9, 24:16, 25:25, 26:5, 26:15, 27:1, 28:7, 28:18, 29:1, 29:13, 29:16, 29:18, 30:1, 30:19, 31:2, 31:7, 32:1, 33:1, 33:21, 34:3, 36:5, 36:11, 36:19, 37:10, 37:24, 38:12, 38:15, 38:21, 38:23, 39:1, 39:5, 39:20, 40:3, 40:7, 40:9, 40:12, 40:14, 40:20, 40:23, 41:2, 41:12, 42:2, 43:15, 43:18, 43:22, 44:8, 44:23, 45:9, 45:15, 45:25, 46:9, 46:11, 46:25, 47:4, 47:7, 47:15, 47:20, 47:23, 48:3, 48:20, 49:3, 49:5, 49:8, 49:14, 49:17, 49:23, 49:25, 50:2, 50:4,

50:9, 50:19, 50:23, 51:6, 52:25, 55:6, 55:24, 56:3, 56:6, 56:9, 56:14, 56:17, 56:19, 56:23
**themselves** [3] - 5:14, 35:24, 41:17
**THEODORE** [2] - 2:21, 3:8
**Theodore** [1] - 4:18
**theory** [3] - 37:23, 37:25, 38:6
**therefore** [1] - 11:1
**they've** [3] - 28:20, 31:16, 47:2
**thinking** [1] - 21:8
**thinks** [2] - 22:16, 52:20
**third** [2] - 6:2, 48:11
**Third** [52] - 5:13, 6:3, 6:22, 7:2, 7:5, 7:13, 9:19, 10:20, 12:5, 14:3, 15:9, 15:18, 16:11, 16:12, 16:18, 17:7, 20:1, 24:4, 26:10, 26:13, 28:3, 28:11, 28:12, 28:13, 28:16, 30:6, 30:13, 31:19, 32:23, 33:4, 33:16, 33:20, 34:7, 36:21, 39:23, 42:16, 42:20, 43:7, 43:16, 45:20, 46:1, 47:22, 48:7, 48:13, 48:15, 48:16, 49:11, 53:6, 55:1, 55:10
**thorough** [3] - 11:17, 19:3, 52:5
**thoroughly** [1] - 21:20
**thoughts** [1] - 27:17
**thousands** [1] - 20:6
**three** [1] - 55:20
**throats** [1] - 48:25
**Tier** [2] - 28:5
**tiers** [2] - 32:1, 32:2
**tired** [1] - 49:17
**tit** [1] - 27:18
**today** [4] - 5:16, 12:7, 34:10, 56:16
**together** [6] - 6:11, 38:7, 41:6, 48:24, 51:7, 53:2
**took** [1] - 29:15
**topic** [1] - 21:16
**topics** [1] - 29:2
**total** [3] - 8:22, 8:23, 34:25
**Tower** [1] - 2:12
**track** [8] - 4:4, 6:1,

54:24, 54:25, 55:19, 55:21, 55:22, 56:9
**transcript** [1] - 57:1
**transcription** [1] - 1:25
**trees** [1] - 45:6
**tremendous** [1] - 31:7
**trial** [2] - 24:19, 38:23
**Trial** [1] - 16:5
**tried** [2] - 47:2, 48:11
**trip** [1] - 48:2
**true** [1] - 53:1
**truly** [3] - 6:21, 10:5, 22:11
**trust** [3] - 8:16, 8:17, 46:11
**truth** [2] - 12:19, 29:12
**try** [4] - 30:7, 38:24, 47:20, 53:2
**trying** [2] - 25:25, 53:18
**turn** [1] - 29:6
**turning** [1] - 25:19
**turns** [1] - 44:16
**twins** [1] - 40:17
**two** [22] - 6:25, 7:1, 7:9, 15:10, 15:14, 16:22, 18:14, 20:12, 21:23, 22:4, 25:12, 28:11, 30:9, 37:6, 37:10, 42:15, 48:10, 50:10, 52:13, 53:4, 53:20, 55:20
**types** [1] - 26:11

## U

**U.S** [1] - 1:7
**unappealable** [1] - 32:19
**under** [5] - 5:25, 10:22, 23:12, 39:10, 51:2
**understood** [1] - 42:17
**unfortunate** [2] - 29:14, 40:5
**unique** [3] - 53:13, 53:14, 53:15
**UNITED** [1] - 1:1
**unless** [1] - 42:2
**unnecessary** [1] - 37:15
**untoward** [1] - 27:16
**up** [5] - 5:16, 9:5, 12:21, 21:21, 24:8, 26:13, 36:12, 48:2,

51:7, 52:2, 52:24
**usage** [2] - 25:12
**utilizing** [1] - 1:24

## V

**vacated** [2] - 6:3, 22:25
**vacation** [1] - 5:24
**valuable** [3] - 17:4, 17:16, 43:20
**valuation** [2] - 19:23, 52:2
**value** [15] - 10:18, 10:21, 18:18, 18:23, 20:1, 20:3, 24:14, 24:15, 25:11, 31:1, 31:7, 34:21, 46:24, 54:18
**valuing** [2] - 17:12
**verbiage** [1] - 49:18
**version** [3] - 27:22, 28:10, 28:15
**view** [2] - 13:14, 53:1
**vigorous** [1] - 31:16
**vision** [1] - 26:5
**voluntary** [2] - 44:6, 44:21
**vouch** [1] - 31:10

## W

**wait** [2] - 55:4, 55:21
**walk** [2] - 37:18, 38:12
**walking** [1] - 8:3
**wall** [1] - 41:19
**wants** [5] - 10:3, 14:22, 52:10, 53:3, 55:4
**Washington** [1] - 2:22
**watch** [1] - 31:15
**waves** [1] - 39:8
**WAWA** [2] - 1:4, 2:16
**Wawa** [30] - 4:5, 4:16, 9:17, 18:2, 18:4, 18:20, 20:6, 20:8, 20:9, 20:18, 23:23, 23:25, 24:1, 24:13, 25:4, 25:10, 25:17, 29:21, 29:22, 31:8, 31:11, 32:6, 32:10, 35:2, 43:25, 44:4, 47:9, 49:9, 54:23
**Wawa's** [3] - 17:4, 18:17, 29:18
**weaker** [1] - 43:4
**week** [1] - 6:8
**weeks** [5] - 37:6,

53:4, 53:20, 55:20, 55:25

**weight** [1] - 31:6
**weighted** [1] - 46:19
**weird** [1] - 25:25
**welcome** [3] - 4:20, 4:25, 7:12
**Welsh** [5] - 8:19, 13:18, 13:19, 13:20, 23:13
**West** [1] - 2:13
**whole** [1] - 40:11
**willing** [5] - 5:14, 9:5, 9:18, 9:23, 32:12
**winking** [1] - 33:24
**winter** [1] - 27:13
**wish** [1] - 6:7
**withdraw** [1] - 49:12
**withdrew** [1] - 6:2
**word** [5] - 6:16, 6:17, 11:9, 11:14, 13:8
**words** [5] - 13:6, 17:7, 17:25, 35:19, 54:13
**works** [1] - 7:23
**world** [1] - 40:18
**worried** [3] - 34:23, 34:24, 35:8
**worry** [1] - 20:8
**write** [3] - 40:16, 40:20, 52:8
**writing** [1] - 20:13

## Y

**year** [1] - 40:18
**years** [7] - 17:9, 18:14, 20:12, 21:23, 25:12, 46:11, 52:13
**yield** [1] - 22:7
**York** [1] - 2:9
**yourself** [1] - 40:21
**youth** [1] - 7:19

## Z

**zealous** [2] - 33:19, 37:4
**zealously** [1] - 34:12
**zero** [1] - 43:4

*United States District Court*