# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: WAWA, INC. DATA SECURITY LITIGATION<br><br>*This Document Applies to the Consumer Track* | Case No. 2:19-cv-06019-GEKP<br><br>The Honorable Gene E.K. Pratter |

## DECLARATION OF GREGORY T. PARKS ON SETTLEMENT NEGOTIATIONS

I, Gregory T. Parks, declare as follows:

1. I am a Partner at the law firm of Morgan, Lewis & Bockius LLP ("Morgan Lewis"), and am lead counsel for Defendant Wawa, Inc. ("Wawa") in the above-captioned litigation. I was also the lead outside counsel for Wawa in the negotiations of the settlement of the Consumer Track claims in this case (the "Settlement"). In these capacities, I have personal knowledge of the information stated in this declaration and, if called as a witness, I could and would testify competently thereto.

2. I submit this declaration to the District Court following the Opinion of the Panel of the United States Circuit Court of Appeals for the Third Circuit in this action on November 2, 2023 ("Panel Opinion"). The Panel Opinion remanded this action to the District Court for further consideration of the attorney's fee award related to the Settlement. It suggested "closer scrutiny" of the negotiations concerning two aspects of the Settlement that it characterized as: (a) a "clear sailing" provision; and (b) a "fee reversion." (ECF 58, at 28, 30). In particular, the Panel Opinion directed the District Court to consider "how [it] arrived, what purpose it served,

and whether its presence, even temporary, suggests coordinated rather than zealous advocacy." (*Id.* at 30).

3. At a hearing to address the Panel Opinion on December 5, 2023, the District Court allowed the parties to submit declarations with additional factual information for the District Court's consideration in applying the Panel Opinion.

4. The negotiations that led to the Settlement of this case were characterized by aggressive and zealous advocacy on both sides. There was no "coordinated" advocacy, no collusion, and nothing other than honest hard-fought negotiations throughout a long process of discussing, negotiating, and executing this sophisticated Settlement of a large matter.

5. The negotiations began in January of 2020, shortly after the complaints in the action were filed, with some initial and informal discussions with several counsel for a number of the named Plaintiffs. All counsel agreed that although there was general interest in exploring the possibility of a settlement, further discussions should await the Court's appointment of interim lead counsel.

6. Negotiations accelerated after the Court appointed Interim Co-Lead Class Counsel for the proposed class of Consumer Plaintiffs ("Lead Counsel") on June 12, 2020 (ECF 120) and accelerated again after the filing of the Consumer Plaintiffs' Consolidated Class Action Complaint on July 27, 2020 (ECF 132).

7. In July and August of 2020, I had multiple conference calls with Lead Counsel. These calls started with information that Lead Counsel requested from Wawa, included the discussion of an informal set of requests for information, and involved some preliminary discussions about the possible structures of a settlement. Importantly, Lead Counsel made it clear at the outset that a condition of the negotiation would be that the discussion of any

attorney's fees for them would have to be deferred until **after** relief to the class had been negotiated. Wawa respected this condition.

8. On September 2, 2020, Wawa produced to Lead Counsel a set of responses to their information requests, including a production of documents and information.

9. On September 15, 2020, there was an all-day mediation session with Magistrate Judge Diane M. Welsh (Ret.) that went close to 12 hours. The mediation session began at 10:00 am and lasted until after 9:30 pm.

10. Consistent with the pre-condition from Lead Counsel, Judge Welsh rigorously enforced the separation of the negotiation of class relief and attorney's fees. Class relief was addressed first. Once the substance of the class relief was agreed upon, only then did the negotiations turn to the question of attorney's fees.

11. Judge Welsh participated in all discussions between the parties. She mostly engaged in shuttle diplomacy – taking one side's message to the other. In a few circumstances early in the day, Judge Welsh supervised a direct discussion between me and Lead Counsel about the nature of the relief to the class. One such discussion was about the value of Wawa gift cards and the nature of Wawa's loyal and repeat customer base. None of these discussions touched on attorney's fees.

12. Through a series of back and forth discussions throughout the day and into the early evening, the parties exchanged many proposals about the relief to the class and came to a tentative agreement on that subject in the early evening hours.

13. The class relief included $5 gift cards for class members who suffered no economic harm but spent time monitoring the situation, $15 gift cards for class members who experienced but did not have to pay a fraudulent charge, and full cash reimbursement of up to

$500 for any class member that experienced any actual economic harm. The total amount to be made available to the class was $9 million.

14. Wawa believed that there was likely little or no harm to the class arising from the data security incident that is the subject of this action. But from the outset of the incident, Wawa had committed that it would make its customers (who are members of the class) whole for any actual harm they might have sustained. Accordingly, Wawa was committed to funding up to the full $9 million that was made available if it would be necessary to compensate the class for any harm. As it turns out, harm was little or none as Wawa expected and less than that amount was claimed. Wawa believes this is another indication of a fair settlement that generated appropriate value for the class.

15. The class relief agreed upon prior to the negotiation of attorney's fees also included injunctive relief. The injunctive relief was discussed early and often in the negotiations. It was heavily negotiated and detailed. Prior to the mediation, Wawa had committed to improve its data security. Lead Counsel insisted that Wawa's commitment be reduced to a court order mandating specific efforts that Wawa would undertake to fulfil that commitment. In the absence of litigation, and in the absence of Lead Counsel pushing the issue, Wawa would not have agreed to have these requirements made part of a Court Order.

16. As reflected in the Settlement Agreement, the value of the injunctive relief was agreed at $35 million, which was a portion of the costs the Wawa committed to spend (and since has spent) to improve its data security. As of the declaration I submitted on December 21, 2021 (ECF 274), Wawa had already spent more than that amount. Since that time, Wawa has continued to invest in its information security and spent more than double the $35 million in that effort.

17.     In summary, before the issue of attorney's fees was negotiated, Lead Counsel had compelled Wawa to tentatively agree to $9 million in amounts to be made available to the class and $35 million in injunctive relief – a total of $44 million in value to the class.

18.     When the negotiations turned to attorney's fees, Judge Welsh handled all of the negotiations and discussions between the parties. She communicated each demand from the Plaintiffs and each of Wawa's responses through shuttle diplomacy – speaking to each side separately. Neither I nor any other Wawa representative ever had any negotiation directly with Lead Counsel or any other lawyer for Plaintiffs relating to attorney's fees. All such negotiations occurred through Judge Welsh with Judge Welsh as the sole communicator between the parties.

19.     There was never any collusion or "coordinated advocacy" about the relief to the class and the attorney's fees. There was no effort by Lead Counsel or Wawa to exchange value to the class for amounts of attorney's fees. Through Judge Welsh, there was an intentional negotiation procedure that first established a fair and generous settlement for the class. Only then did negotiations separately address a reasonable amount of attorney's fees. There was never any discussion of any tradeoff, such as reducing the recovery to the class in order to increase the amount of attorney's fees.

20.     In a class settlement like this, one alternative is for the parties not to agree to the amount of attorney's fees and to leave that as a contested matter to be resolved by the Court. As the lead negotiator for Wawa, I believed that would not be in the best interests of Wawa or the class. I was very concerned that approach could lead to an award of a very large amount. As set forth above, Wawa had agreed to $44 million in value to the class. I was afraid that Lead Counsel would point to that $44 million and ask the Court for 25% of that amount, or approximately $11 million.

21. In addition, after the settlement negotiations turned to attorney's fees during the evening of the mediation on September 15, 2020, Lead Counsel disclosed to Wawa through Judge Welsh that they had already incurred fees of about $3 million just considering the time they had invested at their established regular rates. I was also concerned that Lead Counsel would argue that a two to three times multiplier on this lodestar would justify an award of $6 million to $9 million.

22. Against these benchmarks of $9 million to $11 million, it was in Wawa's best interest, and the best interests of the class, to reach an arrangement where the amount of attorney's fees and related costs would be capped at $3.2 million. That cap: (a) prevented Lead Counsel from seeking more than that amount – up to $11 million or more; (b) limited Lead Counsel to that amount regardless of how long or detailed the class notice, objection, approval, and appeal process may take; and (c) established certainty about the amount of the fees. As a defense lawyer, I know that flat fees or capped fees can provide a lot of value to clients, especially when proceedings proliferate beyond expectations.

23. In the course of negotiating the attorney's fees, the discussions were entirely about a cap on the attorney's fees. There was no discussion of Wawa not opposing the attorney's fees and no discussion of Wawa supporting the attorney's fees amount.

24. Similarly, in the course of the settlement discussions, there was never any discussion of what would happen if the Court approved less than the $3.2 million in attorney's fees that was agreed upon as a cap.

25. Frankly, given the value of the settlement to the class -- $9 million in amounts made available plus $35 million in injunctive relief for a total of $44 million, and given Lead Counsel's lodestar position at $3 million as of the mediation date, I did not anticipate any

6

possibility that the District Court would not approve a $3.2 million attorney's fee award. There was therefore no discussion of what would happen in that event.

26. Similarly, the Settlement Agreement did not expressly address what would happen with an attorney's fee award that was less than $3.2 million.

27. Paragraph 78 of the Settlement Agreement contemplated that Wawa would "co-operate" with Lead Counsel "in providing information Class Counsel may reasonably request from Wawa in connection with preparing the petition [for attorney's fees]." The intent of this provision was that Wawa would need to provide certain information about the value of the gift cards involved in the settlement, including things like the high redemption rate of Wawa gift cards and the number of items at Wawa that could be purchased for less than the $5. Wawa in fact provided this information to Class Counsel for them to use in their petition for attorney's fees. Nothing about that provision restricted any position Wawa could take about the attorney's fees.

28. After the District Court granted preliminary approval of the settlement on July 30, 2021 (ECF 233), notice went out to the class.

29. In October and November of 2021, I had a series of discussions with Adam Schulman, counsel for Objector Ted Frank about the Settlement.

30. In my initial call with Mr. Schulman on October 12, 2021, he raised with me for the first time his view that the Settlement Agreement contained a "reverter" because it did not specify what would happen if the District Court awarded less than the full $3.2 million in attorneys fees. I advised him that Wawa and I fully expected that the Court would award the full $3.2 million, but we would be willing to address the issue he was raising.

31. After discussions with Wawa and Lead Counsel, I sent an email to Mr. Schulman on November 16, 2021 in which I said:

> As I advised you in our first discussion, Wawa fully expects to pay the full $3.2 million in attorneys' fees and costs. I understand from class counsel's submissions to the Court that they are at a negative lodestar multiplier for the hours they have actually spent on this case. But, in the event that the Court determines that a lower amount is appropriate, Wawa is willing discuss being flexible about the difference, or some significant portion thereof, being used for the benefit of the class in some way that furthers the interests in the settlement.

32. This email accurately reflects that the parties to the Settlement never anticipated an amount less than $3.2 million being awarded. But once the prospect was raised, the parties were willing to discuss addressing that possibility in a way that benefited the class.

33. The parties to the Settlement submitted a Third Amended Settlement Agreement which provided that if the Court awarded less than $3.2 million in attorney's fees, the difference would be used to increase the amount of the gift cards issued to the class.

34. Accordingly, to answer the questions posed by the Panel Opinion with respect to matters that require "greater scrutiny":

| **How it arrived?** | The parties never anticipated that an attorney's fees amount less than $3.2 million would be awarded, so made no provision for that possibility. |
|---|---|
| **What purpose it served?** | None, there was no intended purpose. When the issue was raised, the parties addressed it in a way that allowed any amounts less than $3.2 million would to go to the class in the form of gift cards. |
| **Whether its presence, even temporary, suggests coordinated rather than zealous advocacy?** | No, its presence was really an absence of contemplating a possibility that never came to pass. All evidence points to zealous advocacy by all parties throughout the process. |

8

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 19, 2023

>                                    */s/ Gregory T. Parks*
>                                    Gregory T. Parks

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on December 19, 2023 via the Court's ECF system upon all counsel of record.

*/s/ Gregory T. Parks*
Gregory T. Parks
