**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

.

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION | Case No. 2:19-cv-6019 |
| | Class Action |
| *This Document Relates To: Financial Institution Track* | |

**FINANCIAL INSTITUTION PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

THE SETTLEMENT ........................................................................................................... 3

ARGUMENT ...................................................................................................................... 5

   I.   The Court Should Grant Final Approval of the Settlement ................................. 5

      A.   The Settlement Is Procedurally Fair Under FED. R. CIV. P. 23(e)(2)(A)-(B) .................. 7

      B.   The Settlement is Substantively Fair Under FED. R. CIV. P. 23(e)(2)(C)-(D), *Girsh*, and *Prudential* ................................................................................................. 9

      C.   Class Counsel Strongly Supports This Settlement ....................................... 18

   II.   The Proposed Class Should be Certified for Final Approval of the Proposed Settlement 19

   III.   The Proposed Notice Program Satisfied Rule 23 and Due Process by Providing Class Members with Adequate Notice of Settlement ............................................. 19

CONCLUSION.................................................................................................................. 21

1010370.1

## TABLE OF AUTHORITIES

**Cases**

*Austin v. Pennsylvania Dep't of Corr.*,
    876 F. Supp. 1437 (E.D. Pa. 1995) ............................................................................. 18

*Detroit v. Grinnell Corp*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................................ 6

*Fulton-Green v. Accolade, Inc.*,
    No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...........................10, 11

*Fulton-Green v. Accolade, Inc.*,
    No. 18-cv-00274, 2019 WL 316722 (E.D. Pa. Jan. 23, 2019) ................................ 16

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434, 439 (E.D. Pa. 2008) ......................................................................... 9

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ................................................................................. 6, 14

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)............................. 10

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ..................................................................................... 16

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..................................................................................... 12

*In re CertainTeed Fiber Cement Siding Litig.*,
    303 F.R.D. 199 (E.D. Pa. 2014) ................................................................................. 7

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003)...................................................................................11

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
    92 F. App'x 890 (3d Cir. 2004) ............................................................................... 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2800 (TWT), 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded*, 999 F.3d 1247 (11th Cir. 2021) ............................................................... 21

ii

*In re Nat'l Football League Players' Concussion Injury Litig.*,
301 F.R.D. 191 (E.D. Pa. 2014) ............................................................................ 9

*In re New Jersey Tax Sales Certificates Antitrust Litig.*,
No. 12-cv-1893 (MAS) (TJB), 2016 WL 5844319 (D.N.J. Oct. 3, 2016) ................................ 7

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ............................................................................ 21

*In re Pet Food Prod. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010) ............................................................................ 7

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012) ............................................................... 16, 17, 21

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ........................................................................ 6, 10, 12

*In re Sonic Corp. Customer Data Breach Litig.*,
No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ........................................ 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
No. 14-md-2522 (PAM) (JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015), *rev'd and remanded on other grounds*, 847 F.3d 608 (8th Cir. 2017), *amended*, 855 F.3d 913 (8th Cir. 2017), *and aff'd*, 892 F.3d 968 (8th Cir. 2018) ........................................................... 10, 11

*In re Tronox Inc.*,
No. 14-cv-5495 (KBF), 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) .................................... 18

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-cv-6019, 2022 WL 1173179 (E.D. Pa. Apr. 20, 2022) ...................................... 6, 15, 16

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-cv-6019, 2023 WL 6690705 (E.D. Pa. Oct. 12, 2023) .................................. 2, 9, 19, 20

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
No. 16-md-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................... 11

*Linnins v. HAECO Ams., Inc.*, No. 1:16-cv486,
2018 WL 5312193 (M.D.N.C. Oct. 26, 2018) ............................................................. 11

1010370.1

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ................................................................... 21

*Reibstein v. Rite Aid Corp.*,
    761 F. Supp. 2d 241 (E.D. Pa. 2011) ..................................................................... 17

*Tumpa v. IOC-PA, LLC*,
    No. 3:18-cv-112, 2021 WL 62144 (W.D. Pa. Jan. 7, 2021) .................................... 17

*Vinh Du v. Blackford*,
    No. 17-cv-194, 2018 WL 6604484 (D. Del. Dec. 17, 2018) .................................... 14

**Rules**

FED. R. CIV. P. 23 ................................................................................................................. 5
FED. R. CIV. P. 23(c)(2)(B) ................................................................................................. 19
FED. R. CIV. P. 23(e)(1)(B) ................................................................................................. 19
FED. R. CIV. P. 23(e)(2) ........................................................................................................ 5
FED. R. CIV. P. 23(e)(2)(A)-(B) ........................................................................................ 5, 7
FED. R. CIV. P. 23(e)(2)(C) ................................................................................................... 5
FED. R. CIV. P. 23(e)(2)(C)-(D) ........................................................................................... 9
FED. R. CIV. P. 23(e)(2)(C)(i) ............................................................................................. 10
FED. R. CIV. P. 23(e)(2)(C)(ii) ........................................................................................... 12
Fed. R. Civ. P. 23(e)(2)(C)(iii) .......................................................................................... 12
FED. R. CIV. P. 23(e)(2)(D) ............................................................................................ 5, 12
FED. R. CIV. P. 23(g) ............................................................................................................. 7

**Treatises**

William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) .............. 13

iv

## INTRODUCTION

Financial Institution Plaintiffs Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union ("FI Plaintiffs"), by and through their undersigned counsel, respectfully move for final approval of the settlement (the "Settlement") with Defendant Wawa, Inc. ("Wawa" or "Defendant") and entry of the proposed Final Approval Order and Judgment,[1] pursuant to Rule 23 of the Federal Rules of Civil Procedure.

After nearly five years of litigation, the FI Plaintiffs now seek final approval of this Settlement with Wawa, which will resolve the action on behalf of themselves and other payment card issuers. This Settlement is the product of more than a year of hard-fought negotiations among the Parties, supervised by the Honorable Diane M. Welsh, U.S.M.J. (Ret.) of JAMS ("Judge Welsh"), and reflects a comprehensive plan to compensate Settlement Class Members for the harms resulting from the Data Security Incident.

As detailed in the March 3, 2023 Settlement Agreement and Release ("Settlement Agreement" or "S.A.") ECF No. 360-4,[2] Wawa has committed a total of up to $28.5 million to compensate Class Members that submit valid claims, including: (1) up to $18.5 million to cover costs associated with cancelling and replacing payment cards in response to the Data Security Incident, (2) up to $8 million for losses resulting from payment card fraud, and (3) up to $2 million to be distributed to Settlement Class Members that attest to incurring other costs, in the alternative to filing another form of claim. In addition to this direct compensation to Class Members, Wawa will pay up to $9 million towards the costs of notice and administration,

---

[1] The [Proposed] Final Approval Order and Judgment has been filed with the Court as part of this motion.

[2] Unless otherwise noted, capitalized terms not defined herein have the same meaning as in the Settlement Agreement. Unless otherwise noted, internal citations and quotation marks are omitted and ECF citations are to the docket in this Action.

attorneys' fees and expense reimbursements, and service awards to the FI Plaintiffs for their service as class representatives.

To date, FI Plaintiffs have achieved an impressive claims rate of approximately 15% resulting in an expected total of $9,948,673.24 in Settlement benefits to be paid out to Class Members—a substantial recovery for the many small to medium size credit unions and community banks impacted by the Wawa Data Security Incident.

On October 12, 2023, the Court granted preliminary approval of the Settlement, and in doing so found that it will likely be able to approve the Settlement and certify the Settlement Class. *See* Prelim. Approval Memorandum and Order, ECF Nos. 411-412; *see also In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2023 WL 6690705 (E.D. Pa. Oct. 12, 2023). The factors that supported preliminary approval of the Settlement have only been bolstered by subsequent events.

On April 12, 2024, initial notice was mailed out *via* USPS First-Class Mail directly to 4,913 affected Class Members, with reminder postcards sent on July 22, 2024;[3] 729 timely total claims have now been verified. *See* Declaration of Kari L. Schmidt in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Analytics Decl.") ¶ 16.[4] Only two Class Members have chosen to opt-out, and no objections have been made. *Id.* ¶¶ 15-15. *see also* Joint Declaration of Gary F. Lynch, Christian Levis, Jeannine M. Kenney, and Mindee J. Reuben in Support of Financial Institution Plaintiffs' (1) Motion for Final Approval of Proposed Class Action Settlement and (2) Motion for Award of Attorneys' Fees, Expenses, Service Awards &

---

[3] Additional notice and reminder efforts by the Claims Administrator and Class Counsel are outlined in the Analytics Decl. ¶¶ 3-13 and Joint Decl. ¶¶ 72-87.

[4] There still remain 71 claims that the Claims Administrator has identified as deficient. Analytics Decl. ¶¶ 17 n.5. The Claims Administrator has given Class Member until October 21, 2024, to resolve any deficiencies. *Id.*

Costs of Settlement Administration ("Joint Decl.") ¶ 89, filed herewith. For the reasons articulated below and in FI Plaintiffs' memorandum in support of preliminary approval of the settlement (ECF No. 360-1) (the "Prelim. Approval Mem."),[5] the Settlement is a superior result for the Class, and the Court should grant final approval.

## THE SETTLEMENT

The proposed Settlement Class is defined as:

> All financial institutions in the United States (including its Territories and the District of Columbia) that issued payment cards (other than American Express) that either: (a) were Alerted On Payment Cards; or (b) were used at Wawa during the period of the incident March 4, 2019–December 12, 2019.[6]

S.A. § 3.1. The Settlement provides for up to $28.5 million in direct monetary compensation for Settlement Class Members that file claims. The compensation made available to Settlement Class Members is broken down in to three categories designed to address the specific types of harm resulting from the breach.

*Tier 1* compensation consists of $5.00 per replaced payment card to those financial institutions who attest, under penalty of perjury, to having cancelled and replaced the Impacted Cards in response to the Data Security Incident, if replaced between December 12, 2019, and May 1, 2020. Wawa has committed a minimum of $3 million and maximum of $18.5 million for Settlement Class Members that file claims in this tier. S.A. § 4.6(a)(i). 152 validated claims were for a total of $7,921,860.00 in *Tier 1* benefits. Analytics Decl. ¶ 18.

---

[5] FI Plaintiffs incorporate by reference the arguments presented in their Prelim. Approval Mem.

[6] The term "Alerted On Payment Card" is further defined in the Settlement Agreement. S.A. § 2.1. Excluded from the Settlement Class are: the judge of this Court presiding over this Litigation and its staff and the judges of any other court that preside, or have jurisdiction, over this Litigation or Settlement and their staff; directors, officers, and employees of Wawa; parents and subsidiaries of Wawa, and any entity in which Wawa has a controlling interest; and financial institutions that fall within the Settlement class definition that timely and validly request exclusion from the Settlement Class. S.A. § 3.1.

1010370.1

*Tier 2* provides up to $4,000 per financial institution to compensate for fraudulent charges reflected in reasonable documentation submitted by the financial institution. The financial institution must provide a statement made under penalty of perjury that those costs reflect unreimbursed out of pocket absorption or reimbursement to a card holder of fraudulent charges on the Impacted Cards when such fraudulent charges resulted from a transaction that was either: (1) card not present non-CVV submitted; or (2) non-EMV processed, if those charges occurred between December 12, 2019 and May 1, 2020. Payments under Tier 2 have a total cap of $8 million. S.A. § 4.6(a)(ii). Eight validated *Tier 2* claims were filed for $26,813.56, to compensate Class Members for out of pocket fraudulent charges. Analytics Decl. ¶ 19.

*Tier 3* provides Class Members an option, in the alternative to Tiers 1 and 2, to make a claim without documentation of unreimbursed out of pocket absorption or reimbursement to a card holder of fraudulent charges or an attestation as to the cancellation and replacement of Impacted Cards. The claim value will be a fixed amount for all claiming Class Members, calculated by dividing $2 million by the final number of Class Members (to be confirmed during the notice period). S.A. § 4.6(a)(iii). The Class Member must submit a claim and attest that the Class Member incurred *some cost* in dealing with the Data Security Incident to receive the Tier 3 amount. *Id.* 574 claims have been deemed valid for a total of $1,999,999.68 in *Tier 3* benefits. Analytics Decl. ¶ 20 and n.6-7.[7]

---

[7] The Tier 3 fixed value will also be used as a minimum claim value, such that if a Class Member submits a claim under Tier 1 and/or Tier 2, and the value of that claim does not exceed the Tier 3 fixed value per Class Member, then the Class Member will receive the Tier 3 (higher) claim value instead. S.A. § 4.6(b)–(c).

4

**ARGUMENT**

**I.     The Court Should Grant Final Approval of the Settlement[8]**

A district court may approve a class action settlement if it finds it to be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23 sets out factors to guide the Court's analysis, with Rule 23(e)(2)(A) and (B) focusing on the procedural fairness of a settlement and Rule 23(e)(2)(C) and (D) focusing on substantive fairness. *See* FED. R. CIV. P. 23 advisory committee's notes to 2018 amendment (stating Rule 23 focuses on the "core concerns of procedure and substance" when deciding whether to finally approve a settlement).

To approve a class action settlement as procedurally fair, Rule 23 requires the Court to find in part that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)-(B). A settlement is substantively fair when "the relief provided for the class is adequate," accounting for the following factors:

> (i) the costs, risks, and delay of trial and appeal; (ii) the
> effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including
> timing of payment; and (iv) any agreement required to be
> identified under Rule 23(e)(3)[.]

FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Rule 23(e)(2)(C) and

---

[8] The Joint Decl. (Sections II – III); Prelim. Approval Mem. (at 2-7); Declaration of Gary F. Lynch in Support of FI Plaintiffs' Unopposed Motion for an Order Authorizing Notice of Proposed Class Action Settlement ("Prelim. Approval Decl.") (ECF No. 360-2) (¶¶ 4-11), describe the procedural and factual history of this Action. The Declaration of The Honorable Diane M. Welsh, U.S.M.J. (Ret.) of JAMS ("Welsh Decl.") (¶¶ 7-16), filed herewith, also describes the Parties' arms' length settlement negotiations.

1010370.1

(D) requirements overlap with the *Girsh*[9] and *Prudential*[10] factors that courts in this Circuit

consider when approving class action settlements. In *Girsh*, the Third Circuit outlined nine

factors that must be assessed when evaluating the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *Detroit v. Grinnell Corp*, 495 F.2d 448, 463 (2d Cir. 1974)). In

*Prudential*, the Third Circuit described additional considerations that may (but are not required

to) be evaluated in the context of reviewing a settlement:

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*See In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2022 WL 1173179, at *3-4 (E.D. Pa. Apr.

20, 2022) (quoting *Prudential*, 148 F.3d at 323)). A court "must make findings as to each of the

---

[9] *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ("*Girsh*").
[10] *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998) ("*Prudential*").

nine *Girsh* factors" to approve a settlement, but the *Prudential* factors can be "illustrative" in supporting the reasonableness of the settlement. *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).

Under both the Rule 23(e)(2) factors and Third Circuit precedent, this Settlement is suitable for final approval.

**A.  The Settlement Is Procedurally Fair Under FED. R. CIV. P. 23(e)(2)(A)-(B)**

**1.  FI Plaintiffs and Class Counsel Have Adequately Represented the Interests of the Settlement Class**

As described in FI Plaintiffs' Prelim. Approval Mem., FI Plaintiffs are adequate Class Representatives. Their interests completely align with the interests of the Class. FI Plaintiffs, like the members of the Settlement Class, are all payment card issuers that issued cards compromised in the Wawa Data Security Incident. This Action furthers the FI Plaintiffs' and Class Members' common interests in obtaining relief from Wawa for the same injury. *See In re New Jersey Tax Sales Certificates Antitrust Litig.*, No. 12-cv-1893 (MAS) (TJB), 2016 WL 5844319, at *5 (D.N.J. Oct. 3, 2016) (holding plaintiff was an adequate class representative despite certain factual differences between plaintiff and class members because each sought the same relief).

The duty of adequate representation also requires counsel to "competently, responsibly, and vigorously prosecute the suit." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 212 (E.D. Pa. 2014). This requirement is satisfied when counsel demonstrates that it can "fairly and adequately protect the interests of the class." *In re Pet Food Prod. Liab. Litig.*, 629 F.3d at 342 (internal citations and quotations omitted); *accord* FED. R. CIV. P. 23(g). Class Counsel's extensive class action and data breach litigation experience, and their efforts during the Action, confirms their adequacy to serve on behalf of the Class. *See* Prelim. Approval Decl. ¶¶ 15-16; Joint Decl. ¶¶ 91-123; *see also* Exhibits B – E to the Joint Decl. (firm resumes and

7

individual biographies of Class Counsel). Prior to filing suit, Class Counsel gained insights into the strengths and weaknesses of FI Plaintiffs' claims while reviewing public disclosures and reports concerning the Data Breach. Joint Decl. ¶¶ 6, 33, 42, 45. Class Counsel aggressively litigated this action from the outset. *Id.* ¶ 25. After Class Counsel filed a thorough and detailed consolidated amended complaint (ECF No. 128), Class Counsel opposed Wawa's motion to dismiss and obtained a favorable ruling on numerous counts. ECF Nos. 204-205. *Id.* ¶¶ 24-25. Class Counsel continued pressing the action forward by initiating discovery, negotiating initial agreements, protocols, and orders with Wawa, and serving document requests. *Id.* ¶¶ 25-30. Class Counsel and Wawa engaged in highly detailed discussions over the course of eight months regarding the planned custodians and search strings Wawa would perform on its databases, negotiating over thousands of search strings and ultimately reaching agreements on a four-year search period, and 16 custodians, not long before the parties reached a settlement. *Id.* ¶ 27. Class Counsel also served discovery requests on third parties, including the major card brands, and engaged in discussions with them regarding the production the FI Plaintiffs would require if litigation continued. *Id.* ¶¶ 29-30, 68. The FI Plaintiffs also responded to 51 document requests served by Wawa, producing hundreds of documents from ten custodians. *Id.* ¶¶ 28. Using this information, Class Counsel developed a better understanding of the potential strengths and risks of FI Plaintiffs' claims and formulated a settlement strategy that successfully obtained relief for the Class.

### 2.   The Settlement is the Product of Arm's Length Negotiations

There is a strong presumption that a proposed class action settlement is fair, reasonable, and adequate when the settlement is the result of arm's length negotiations. The Settlement here was the result of numerous hard-fought negotiations, including three mediation conferences

before Judge Welsh, as well as one-on-one discussions between the Parties' counsel. *See* Welsh Decl. ¶¶ 9-18; Joint Decl. ¶¶ 6, 31-38, 41, 35; Prelim. Approval Decl. ¶¶ 7-11. A strong presumption of fairness exists where there is a well, respected, third-party neutral mediating settlement negotiations. *See In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705, at *5 ("the parties negotiated the proposed settlement agreement at arm's length, facilitated by a highly respected and successful mediator"); *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who served as a mediator); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations and highlighting the fact that the negotiations included "two full days of mediation"). After evaluating FI Plaintiffs' and Class Counsel's involvement in achieving this Settlement and the nature of the settlement negotiations with Wawa, the Court should conclude that the Settlement is a procedurally fair result for the Class and satisfies the requirements of Rule 23(e)(2)(A) and (B).

### B.  The Settlement is Substantively Fair Under FED. R. CIV. P. 23(e)(2)(C)-(D), *Girsh*, and *Prudential*

While Class Counsel believes that FI Plaintiffs' claims would have prevailed had the Action advanced, there was nevertheless considerable risk of a less favorable result (including no recovery at all) if the litigation continued through a motion to dismiss, class certification, summary judgment, trial, post-trial motions, and appeal. Given the risks of litigation compared to the benefits achieved for the Class, the Settlement achieves a substantial recovery for the Class and unquestionably satisfies the factors for approval under Rule 23(e)(2)(C)-(D), as well as the *Girsh* and *Prudential* factors.

9

1.  **The Settlement Relief is Adequate in Light of the Costs and Risks of Continued Litigation**

Under the Federal Rules of Civil Procedure, courts must weigh the settlement against the costs, risks, and delay of trial and appeal, consideration of which overlaps with the first, fourth, fifth and sixth *Girsh* factors, and the first *Prudential* factor. *See* FED. R. CIV. P. 23(e)(2)(C)(i); *Girsh*, 521 F.2d at 157 (*Girsh* factors relating to the complexity, expense and likely duration of the litigation, and the risks of establishing liability, damages, and maintaining the class through the trial); *Prudential*, 148 F.3d 283 at 323 (considering the maturity of the substantive issues in evaluating a settlement). Data breach cases are complicated class action cases that involve novel and highly technical subject areas. *See, e.g., Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (recognizing that continued litigation of a data breach case "would be a time consuming and expensive process that would delay relief for class members"); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("[D]ata breach cases… are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522 (PAM) (JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *rev'd and remanded on other grounds*, 847 F.3d 608 (8th Cir. 2017), *amended*, 855 F.3d 913 (8th Cir. 2017), *and aff'd*, 892 F.3d 968 (8th Cir. 2018).

The "cutting edge and unsettled" nature of data breach litigation amplifies the other risks in prosecuting this case as a class action. Conducting litigation discovery would have been wide-

reaching, challenging and expensive. *See, e.g.*, *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-md-02752, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (noting that discovery is one of the significant expenses for continuing a data breach litigation). Experts would almost certainly be engaged by both FI Plaintiffs and Wawa, raising important issues that would have to be explored relating to the underlying claims and likely further driving up discovery costs. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (finding that, in the absence of the settlement, the case would likely require "significant and expensive additional discovery; [and] hiring more experts and opposing the defendants' experts").

After investing a significant amount of time and resources in discovery, FI Plaintiffs would then be immediately faced with the possibility that the Court could decline to certify a litigation class in the Action. *See, e.g., Fulton-Green*, 2019 WL 4677954, at *8 ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."); *In re Target Corp.*, 2015 WL 7253765, at *2 (noting the legal complexity of certifying a litigation class in a data breach action); *Linnins v. HAECO Ams., Inc.*, No. 1:16-cv486, 2018 WL 5312193, at *2 (M.D.N.C. Oct. 26, 2018) (describing mixed results for plaintiffs in data breach and data disclosure cases). Even if the Court certified a litigation class, Wawa could continue to challenge the certification, either upon immediate appeal to the Third Circuit or during litigation; and there is no guarantee that a litigation class would be maintained until the completion of trial and any appeals.

If, as expected, FI Plaintiffs had been able to marshal the fact and expert discovery obtained to certify a litigation, FI Plaintiffs would then have been faced with a new series of risks, including challenges at summary judgment, the burden of proving liability and damages at

trial, and the necessity of overcoming any appeals. The Settlement exchanges the uncertainty of litigation for an immediate, substantial, and tangible recovery for the Class. In light of the risks of litigation, this factor supports approval of the Settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (explaining that the first *Girsh* factor favors approval of a settlement when the case involves "complex and protracted discovery, extensive trial preparation, and difficult legal and factual issues").

> ### 2. The Settlement Equitably Distributes Relief Among Class Members and Provides for a Reasonable Attorneys' Fee Award Without Diminishing the Settlement Relief

Both Rule 23(e)(2) and *Prudential* assess the adequacy of a settlement by considering the effectiveness of and equity in distributing relief to Class Members and the impact of any proposed attorney's fee award and any other agreements on the settlement relief ultimately provided to Class Members. *See* FED. R. CIV. P. 23(e)(2)(C)(ii), 23(e)(2)(C)(iii), 23(e)(2)(D); *Prudential*, 148 F.3d at 323. Each of these considerations also support approval of the Settlement with Wawa.

The distribution method is both fair and equitable. Three categories of settlement relief are available to all Class Members, with recovery under Tier 2 only subject to certain modest documentation requirements to obtain cash benefits intended to compensate for fraudulent charges. Moreover, the Settlement treats all Class Members fairly and equitably in relation to the strengths of their claims, targeting cash compensation to Class Members with the greatest injuries. Common-sense distinctions are made between Class Members who cancelled and replaced the Impacted Cards in response to the Data Security Incident (Tier 1), those Class Members who experienced documented additional losses in paying for the impacts of the Data Security Incident (Tier 2), and those that incurred some cost in dealing with the Data Security

Incident but, for their own business reasons, choose not to seek the payments available under Tiers 1 and 2.  Accordingly, the Settlement and its distribution method should be approved.

The claim process has also been designed to encourage Class Member participation. *See* William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2020) ("[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."). The Settlement creates a straight-forward claims procedure for Class Members to claim under the three available Tiers. S.A. § 4.6. It also provides for effective notice to Class Members using direct U.S. Mail to advise Class Members of their options and encourage participation; Class Counsel is confident that the addresses of nearly all Class Members were ascertained by the time Notice was issued. S.A. § 5.4; Prelim. Approval Decl. ¶ 14, Declaration of Richard Simmons, ECF No. 360-3, Simmons Decl. ¶¶ 14, 26. Further, this Class is comprised of financial institutions, most of which will have received similar notices and claim forms in connection with other payment card data breach settlements that utilized similar processes. *Id.* For this reason, Class Members are likely to have familiarity with their available options.

Other than the Settlement Agreement itself, there are only three additional agreements involving the parties related to this Settlement. The first is a supplemental agreement regarding the threshold number of exclusions required to trigger Wawa's right to terminate the agreement under S.A. § 10.2, a provision that is common in class action cases. The other two agreements are between the Parties and the Escrow Agent, Huntington National Bank, regarding the terms governing the Escrow Accounts. Copies of these three agreements were submitted to the Court for *in camera* review. Prelim Approval Decl. ¶ 19. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 92 F. App'x 890, 894 (3d Cir.

13

2004). As further described in Class Counsel's Fee and Expense Application, Wawa has agreed, subject to Court approval, to pay Class Counsel up to $9 million to pay attorneys' fees and costs, service awards, and the cost of settlement administration, as authorized by the Court. Class Counsel's application for attorneys' fees and expenses and FI Plaintiffs' application for an service award is the subject of a separate motion concurrently filed. To the extent these awards are granted, these payments are separate, and therefore will not diminish the settlement relief Wawa provide will provide to the Settlement Class. S.A. § 4.7. This factor favors preliminary approval of the Settlement. *See Vinh Du v. Blackford*, No. 17-cv-194, 2018 WL 6604484, at *6 (D. Del. Dec. 17, 2018) (holding that the "attorney's fees sought are reasonable and do not impact the class[] relief"). The negotiation of these separate payments reinforces the adequacy of the proposed Settlement.

### 3.   The Remaining *Girsh* Factors Also Support Approval of the Settlement

#### a.   The Settlement Amount Falls Within a Range of Reasonableness that Supports Granting Final Approval

The Settlement satisfies the eighth and ninth *Girsh* factors analyzing whether the Settlement is reasonable "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157. The results of comparable data breach settlements provide helpful benchmarks to evaluate the reasonableness of the recovery in this Action. For example, in *Target* and *Home Depot*, the settlements provided financial institutions with $1.50 and $2.00 in compensation per compromised card, respectively, without documentation of loss, and the option to obtain a percentage of documented losses if they chose to submit a claim. *See In re Target Customer Data Sec. Breach Litig.*, No. 0:14-md-02522 ("*Target*"), ECF No. 747-1, Ex. A at 4-5 (D. Minn. Apr. 11, 2016); *In re Home Depot Customer Data Sec. Breach Litig.*, No. 1:14-md-02583 ("*Home Depot*"), ECF No. 336-1 at 25 (N.D. Ga. Aug. 23, 2017). On dollar-per-

14

card basis, this Settlement is at least comparable to—and potentially greater than—other financial institution data breach settlements that have been finally approved. *See also In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-0514, ECF No. 316 (N.D. Ga. Nov. 20, 2020) (approving a similar claims-made settlement).

Further distinguishing this case from other financial institution settlements, the relief obtained here is ***in addition to*** what Class Members can expect to receive as reimbursement as part of the Visa and Mastercard card brand assessment process. The similarity of the settlement relief in this Action to benefits provided in other cases strongly supports the reasonableness of the recovery.

### b.  The Reaction of the Settlement Class Weighs in Favor of Approval

The Class overwhelmingly supports the Settlement. The claims/opt-out/objection deadline has now passed, and the results provide this Court ample evidence of the Settlement Class's positive reaction. To date, only two Class Members have opted out, and none have objected to the Settlement. Analytics Decl. ¶¶ 14-15; *see also In re Wawa, Inc. Data Sec. Litig.*, 2022 WL 1173179, at *5 ("The Court finds that the low number of objections and the lack of strong arguments regarding a negative reaction weigh in favor of final approval."). A total of 729 Class Members have filed timely and validated claims. Analytics Decl. ¶ 17.  The present claims rate of approximately 15% is well above the claims rates of other financial institution data breach settlements as well as the Wawa consumer settlement which was granted final approval by this Court. *See, e.g., In re Wawa, Inc. Data Sec. Litig.*, 2022 WL 1173179, at *5 ("[A]s an indicator of class member enthusiasm, the range of 0.035 percent (without the expansion) to 2.6 percent (with the expansion) actually compares favorably with other data breach settlements…the claim rate is in the range of other data breach cases. Thus, this factor, too, weighs in favor of approving

1010370.1

the Settlement Agreement."); *Greater Chautauqua Federal Credit Union v. Kmart Corp.*, No 1:15-cv-02228 (N.D. Ill.), ECF No. 148 at 2 n.1, ECF No. 133 at ¶ 4 (337 claims of out of 5,052 class members, for a claims rate of 6.7% of class members); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-0514 (N.D. Ga.), ECF No. 307-3 ¶¶ 5, 11, ECF No. 312 at 26:10-11 (381 claims out of 4,379 class members, for a claims rate of 8.7% of class members); *Arkansas Federal Credit Union v. Hudson's Bay Co.*, No. 19-cv-4492 (S.D.N.Y.), ECF No. 96 at ¶ 4, ECF No. 106 ¶ 4 (241 claims out of 4,736 class members, for a claims rate of 5% of class members).[11] The Settlement Class's reaction weighs in favor of this Settlement's approval.

### c. The Stage of the Proceeding and Amount of Discovery Completed Favor Approval

As to the third *Girsh* factor, courts regularly approve settlements where negotiations are informed by even informal discovery through which parties "exchange[] a substantial amount of information regarding the discrete issues in [their] case." *Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 316722, at *3 (E.D. Pa. Jan. 23, 2019); *accord In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (finding a presumption of fairness because "although no formal discovery was conducted… [class counsel] conducted informal discovery, including, *inter alia*, . . . exercising opportunities to review records provided by [defendant]"); *see also In re Wawa, Inc. Data Sec. Litig.*, 2022 WL 1173179, at *5 ("the parties here reached the Settlement Agreement after engaging in targeted informal discovery. . . . Considering the importance of promoting efficiency through early settlement, this factor weighs in favor of

---

[11] Further, as the Third Circuit noted, "[t]here are a variety of reasons that settlement funds may remain even after an exhaustive claims process – including if the class members' individual damages are simply too small to motivate them to submit claims. Class Counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013).

approval."); *Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021) (approving a settlement where the "limited discovery" was sufficient to provide the parties "with an appreciation of the merits of the case").[12]

Here Class Counsel had more than sufficient information to assess the Settlement. Joint Decl. ¶ 42. Class Counsel reviewed significant document productions from Wawa, including the forensic investigation, in order to ascertain the strengths of the case. *Id.* ¶ 25. In light of this information, Class Counsel has determined that the Settlement is fair, reasonable and adequate. *Id.* ¶¶ 44, 58.

### d. The Ability of the Defendant to Withstand a Greater Judgment Did Not Negatively Impact Settlement Negotiations

The seventh *Girsh* factor, the ability to withstand a greater judgment, is relevant if "a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). This factor is not dispositive, and courts apply a flexible standard as to how much weight it is given based on the unique circumstances of a given case. "Some courts, for example, have accorded this factor little weight based on the unique circumstances of a given case. Others have concluded a settlement is fair under this *Girsh* factor because financial stability today does not ensure financial stability tomorrow." *Reibstein*, 761 F. Supp. 2d at 254-55. When "the Court has not been presented with any reason to believe that [defendant] faces any financial

---

[12] *See also In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. at 267 (preliminarily approving class action settlement when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement"); *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *9, n.4 (E.D. Pa. July 30, 2021) (it "is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important *informal* discovery.") (emphasis added).

1010370.1

instability . . . this [*Girsh*] factor is largely irrelevant for the purpose of resolving the instant motion." *Id.* at 254.

Wawa is a privately held company that does business in approximately nine states and the District of Columbia. Based on the information Class Counsel has gathered and reviewed, as well Class Counsel's negotiations with Wawa, the Settlement reflects adequate value for Class Members that Wawa is presently able to support.  Moreover, while it is possible Wawa could pay more, "[t]he law does not require a defendant to completely empty its pockets before a settlement may be approved–indeed, if it did, it is hard to imagine why a defendant would ever settle a case." *In re Tronox Inc.*, No. 14-cv-5495 (KBF), 2014 WL 5825308, at *6 (S.D.N.Y. Nov. 10, 2014). Here, after reviewing the information developed, Class Counsel has determined that the Settlement is reasonable in light of scope of the claims and Wawa's ability to pay.

### C.  Class Counsel Strongly Supports This Settlement

In addition to the *Girsh* factors, courts in this District traditionally attribute "significant weight to the belief of experienced counsel that settlement is in the best interests of the class." *Austin v. Pennsylvania Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995). In weighing counsel's opinion, a court will consider counsel's experience litigating similar claims, their efforts, and their depth of knowledge and observations about the claims and issues in the action at bar. *Id*. As described *supra*, and in their firm resumes (Joint Decl., Exs. B – E), Class Counsel have extensive experience litigating complex class actions, including data breach cases, and based on that experience, strongly support the approval of this Settlement.

## II.     The Proposed Class Should be Certified for Final Approval of the Proposed Settlement

For all of the reasons detailed in the Prelim. Approval Mem. and the Court's October 12, 2023 Preliminary Approval Memorandum and Order,[13] the Settlement Class satisfies all requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as the predominance and superiority requirements of and Rule 23(b)(3). The conditionally certified Settlement Class, defined as:

> All financial institutions in the United States (including its Territories and the District of Columbia) that issued payment cards (other than American Express) that either: (a) were Alerted On Payment Cards; or (b) were used at Wawa during the period of the incident March 4, 2019-December 12, 2019.

(*see* ECF No. 412) should be granted final certification for settlement purposes. Further, Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union should be appointed as the class representatives, and Gary F. Lynch of Lynch Carpenter LLP; Christian Levis of Lowey Dannenberg, P.C.; Jeannine M. Kenney of Hausfeld LLP; and Mindee J. Reuben of Lite DePalma Greenberg & Afanador, LLP should be appointed as Class Counsel.

## III.    The Proposed Notice Program Satisfied Rule 23 and Due Process by Providing Class Members with Adequate Notice of Settlement

Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). In addition, "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The Notice Plan meets these requirements. *See generally* Analytics Decl.

---

[13] *See In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705.

1010370.1

The Notice Plan leveraged the available resources and the technological competence and business sophistication of Class Members—financial institutions that included credit unions and banks—to efficiently deliver notice directly to Class Members by the Claims Administrator. Class Counsel also conducted discovery with card networks such as Visa and Mastercard to glean relevant information and to determine the ultimate number of class members. Joint Decl. ¶¶ 28, 30, 68. Consistent with the Notice Plan, the Claims Administrator employed the use of direct mail (both First-Class and postcard), in some instances email notice, publication in the ABA Banking Journal Digital Edition, co-branded emails deployed by the Credit Union Times, a dedicated telephone line, and a settlement website.[14] Analytics Decl. ¶¶ 3-13; Joint Decl. ¶¶ 70, 73, 75, 77, 82. *See In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705, at *6 ("The Court is also satisfied with the intended means of providing notice. The proposed Settlement Administrator, Analytics Consulting, will provide notice through USPS First Class Mail to all identified financial institutions, publish notice in banking publications with which the financial institution class members should be familiar, and publish notice on the dedicated settlement website. Similar methods of notice have been found adequate.") (internal citations omitted).

Courts routinely find that individual direct mail notice, along with publication notice, is "ideal" and "the best possible" method of notice and fully satisfies the requirements of Rule 23(c) and due process. *See First Choice Fed. Credit Union v. Wendy's Co.*, No. 2:16-cv-00506, ECF No. 183 (W.D. Pa. February 26, 2019) (preliminarily approving a similar notice plan for financial institutions in a data breach settlement). Courts have also recognized that email notices and online publication of notice not only satisfy due process but are especially appropriate in

---

[14] In certain instances follow up reminder notice was sent to Class Members by Class Counsel. Joint Decl. ¶¶ 77-86.

cases where the class consists of individual who access online content and have at least some familiarity with the internet. *See, e.g., In re Processed Egg Prods.*, 284 F.R.D. at 266 (finding that publication of notice "in several appropriate publications" was adequate); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800 (TWT), 2020 WL 256132, at *28 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded*, 999 F.3d 1247 (11th Cir. 2021) ("courts have increasingly approved utilizing email to notify class members of proposed class settlements"); *Morgan v. Pub. Storag*e, 301 F. Supp. 3d 1237, 1262 (S.D. Fla. 2016) ("Courts consistently approve notice programs where notice is provided primarily through email because email is an inexpensive and appropriate means of delivering notice to class members."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (notice provided "in both mail and email form" sufficient under due process and Rule 23). Here the Claims Administrator (and Class Counsel) implemented a robust Notice Plan that has achieved a remarkable 15% claims rate.[15] The Notice Plan as executed provided the best notice practicable under the circumstances to the Settlement Class.

## CONCLUSION

For the foregoing reasons, FI Plaintiffs respectfully request that the Court enter the proposed Final Approval Order and Judgment, (i) granting Final Approval of the Settlement; (ii) finally certifying the Settlement Class; and (iii) providing other such relief required to effectuate the Settlement.

---

[15] The claims deadline was extended by Order of the Court on Date, from August 12, 2024, to September 12, 2024. ECF No. 455.

Dated: October 9, 2024

/s/ Mindee J. Reuben
Mindee J. Reuben (PA ID 75308)
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (215) 854-4060
Email: mreuben@litedepalma.com

Gary F. Lynch (PA ID 56887)
Jamisen A. Etzel
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Email: gary@lcllp.com
Email: jamisen@lcllp.com

Jeannine M. Kenney (PA ID 307635)
**HAUSFELD LLP**
325 Chestnut Street, #900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Email: jkenney@hausfeld.com

Christian Levis (*pro hac vice*)
Amanda G. Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Email: clevis@lowey.com
Email: afiorilla@lowey.com

Anthony M. Christina (PA ID 322528)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Email: achristina@lowey.com

*Class Counsel for Financial Institution Plaintiffs*

22