# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE WAWA, INC. DATA SECURITY LITIGATION** | **Case No. 2:19-cv-06019** |
| | **Hon. Kelley Brisbon Hodge** |
| *This Document Applies to the Financial Institutions Track* | |

**AMENDED JOINT DECLARATION OF GARY F. LYNCH, CHRISTIAN LEVIS, JEANNINE M. KENNEY, AND MINDEE J. REUBEN IN SUPPORT OF FINANCIAL INSTITUTION PLAINTIFFS' (1) AMENDED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND (2) AMENDED MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, SERVICE AWARDS & COSTS OF SETTLEMENT ADMINISTRATION**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..........................................................................................2

II.     PRE-CONSOLIDATION, AMENDED COMPLAINT, AND DISCOVERY .............3

III.    SETTLEMENT NEGOTIATIONS AND THE PROPOSED SETTLEMENT.............7

IV.     STRUCTURE OF THE SETTLEMENT...................................................11

V.      PRELIMINARY APPROVAL ...................................................................14

VI.     NOTICE PROGRAM AND EFFORTS BY THE CLAIMS ADMINISTRATOR
        AND CLASS COUNSEL ...........................................................................16

VII.    CLASS COUNSEL'S EXPERIENCE ......................................................20

VIII.   FEES AND EXPENSES ............................................................................28

IX.     FINANCIAL INSTITUTION PLAINTIFFS' EFFORTS IN THE ACTION &
        SERVICE AWARDS.................................................................................36

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Settlement Agreement |
| B | Lynch Carpenter & Gary Lynch – Firm Resume & Individual Bio |
| C | Lowey Dannenberg & Christian Levis – Firm Resume & Individual Bio |
| D | Hausfeld & Jeannine Kenney – Firm Resume & Individual Bio |
| E | Lite DePalma Greenberg & Afanador & Mindee Reuben – Firm Resume & Individual Bio |
| F | Time & Expense Template |
| G | Time & Expense Protocol |
| H | Class Counsel – Time by Category |
| I | FI Counsel – Comprehensive Chart of Hours & Fees |
| J | Lynch Carpenter – Hours & Fees by Individual Timekeeper |
| K | Lowey Dannenberg – Hours & Fees by Individual Timekeeper |
| L | Hausfeld – Hours & Fees by Individual Timekeeper |
| M | LDGA – Hours & Fees by Individual Timekeeper |
| N | FI Counsel – Comprehensive Chart of Unadjusted Expenses by Firm |
| O | FI Counsel – Comprehensive Chart of Adjusted Expenses by Category |
| P | Litigation Fund Ledger |
| Q | JND eDiscovery Invoice |

1011240.2

Class Counsel for Financial Institution Plaintiffs Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union ("FI Plaintiffs") Gary F. Lynch, Christian Levis, Jeannine M. Kenney, and Mindee J. Reuben ("Class Counsel") hereby jointly declare as follows:

1.      By Order dated October 12, 2022 preliminarily approving the Settlement Agreement between Financial Institution Plaintiffs and Wawa, Inc., the Court appointed Gary F. Lynch, Christian Levis, Jeannine M. Kenney, Mindee J. Reuben as Class Counsel for the Settlement Class. ECF No. 412 ¶ 13.[1]

2.      It is in that capacity that the undersigned submit this Joint Declaration in Support of FI Plaintiffs' Motion for Final Approval and Plaintiffs' Motion for Attorneys' Fees, Expenses & Service Awards, filed this same day.

3.      The undersigned make this declaration pursuant to 28 U.S.C. § 1746. The facts contained herein are true based on upon Class Counsel's personal knowledge, books and records, communications by and among Class Counsel and the Court-appointed Claims Administrator, Analytics Consulting, LLC ("Analytics" or the "Claims Administrator"), and information received from FI Counsel's attorneys and staff.  Class Counsel have been actively involved in prosecuting and resolving this Action on behalf of FI Plaintiffs, are familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as a witness(es), Class Counsel are able to competently testify thereto.

4.      Unless otherwise defined herein, all capitalized terms have the same meanings ascribed to them in the March 3, 2023 Settlement Agreement and Release ("Settlement

---

[1] "FI Counsel" refers to all counsel that have worked on behalf of Financial Institution Plaintiffs in this litigation.  "Class Counsel" refers to counsel appointed by the Court to represent the Settlement Class.

Agreement" or "S.A.") between FI Plaintiffs and Defendant Wawa Inc. ("Defendant" or "Wawa") filed as ECF No. 360-4, and attached as Exhibit A.

## I. __INTRODUCTION__

5.      If finally approved, the proposed Settlement would fully resolve the Action. The combined value of the Settlement, including the settlement relief for Class Members (up to $28.5 million in cash payments) and the separate payment by Wawa for settlement notice and administration costs, attorneys' fees and expenses, and any service award (up to $9 million), is $37.5 million. In addition to providing relief to the Settlement Class now, the Settlement avoids the substantial risk, expense, and delay of taking this Action to trial, including the risk that the Settlement Class would recover less at trial, or nothing at all, after additional years of litigation.

6.      The Settlement was the product of nine-months of arm's length negotiations among experienced counsel and involved three all-day mediation sessions with the Honorable Diane M. Welsh, U.S.M.J. (Ret.) of JAMS ("Judge Welsh") among other discussions.  Both FI Plaintiffs and Class Counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action at the time they reached the Settlement.  A separate declaration is provided by Judge Welsh and filed with the Motions.

7.      The Settlement provides significant cash payments to the Settlement Class, garnered no objections and only two exclusions, and resulted in a 15% claims rate.[2]

8.      For each of these reasons, and those set forth below, Class Counsel believes that the Settlement constitutes an excellent result for the Settlement Class in light of the substantial litigation risks, and that it should be approved by the Court.

---

[2] The claims validation process is not complete.

1011240.2

9.      The Class Notice informed the Settlement Class that Class Counsel would apply for an award of attorneys' fees, litigation expenses, and notice and settlement administration costs of no more than $9 million and that Notice of such application would be available on the Settlement website. The Class Notice also advised the Class that the named FI Plaintiffs may each seek Service Awards, to also be paid out of the $9 million.

10.      Consistent with the Class Notice, Class Counsel moves for an award of $8.5 million in attorneys' fees, $82,993.06 in expenses and $3,460.75 in costs incurred ($86,453.81 total), exclusive of notice and settlement administration costs which are not yet final.  The attorneys' fees represent a multiplier of 1.49 on FI Counsel's lodestar in the case from inception through September 30, 2024.  FI Plaintiffs also move for a Service Award of $5,000.00 for each of the three named Class Representatives. Unless otherwise stated, this Declaration focuses on the same period.

11.      Class Counsel believes the requested attorneys' fee award sought in the Fee and Expense Application is reasonable based on FI Counsel's efforts, the risk they undertook, and the results they achieved. The requested payment for litigation expenses and costs should similarly be approved because the expenses and costs were reasonably and necessarily incurred in the prosecution of the Action.

12.      Further, the requested Service Awards are appropriate and reasonable in light of efforts of the Settlement Class Representatives in the Action and are consistent with precedent within this Circuit and in other data breach cases.

## II.      PRE-CONSOLIDATION, AMENDED COMPLAINT, AND DISCOVERY

13.      FI Plaintiffs litigated this action for more than 2 years before executing the Settlement Agreement.

1011240.2

14.    In March 2019, hackers breached Wawa's point-of-sale systems and installed malware on payment terminals and fuel dispensers, which enabled them to steal payment card data for the next nine months. *See In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 1818494, at *1 (E.D. Pa. May 6, 2021).

15.    This data was later posted for sale on the "dark web." *See id.* Wawa publicly acknowledged the data security incident on December 19, 2019.

16.    Beginning on December 20, 2019, numerous consumer and financial institution track class actions were filed in this District and elsewhere as the result of the Data Security Incident. *See, e.g.*, *Rapak v. Wawa, Inc.*, Case No. 19-cv-6019 (E.D. Pa.) (first filed action).

17.    The resulting Data Security Incident involved transactions at most of Wawa's nearly 900 convenience stores (including fuel dispensers) over a nine-month period from March 4, 2019, until December 12, 2019 (the "Period of the Security Incident"). Information compromised in the Data Security Incident included credit and debit card numbers, card expiration dates, and cardholder names.

18.    On January 8, 2020, Chief Judge Juan Sanchez for the Eastern District of Pennsylvania entered an order consolidating the cases filed by customers relating to the Data Security Incident. *See* ECF No. 9. On January 14, 2020, the Court entered an order that any and all cases related to Civil Action No. 19-6019, the Lead Case (including financial institution cases), filed before, on the same date of, or after the docketing of the Court's January 8th Consolidation Order, were to be consolidated pursuant to Local Rule 40.l(c). *See* ECF No. 15.

19.    On January 3, 2020, First Choice Federal Credit Union filed the first financial institution class action in the Western District of Pennsylvania, later voluntarily dismissing it and

refiling it in this Court.[3]  Plaintiff Inspire Federal Credit Union filed its complaint on January 29, 2020,[4] Plaintiff Greater Cincinnati Credit Union filed its complaint on February 7, 2020,[5] and Plaintiff Insight Credit Union filed its complaint on February 19, 2020.[6]

20.     On June 12, 2020, the Court appointed Gary F. Lynch (Lynch Carpenter, LLP f/k/a/ Carlson Lynch, LLP), Christian Levis (Lowey Dannenberg P.C.), and Jeannine M. Kenney (Hausfeld LLP) Interim Co-Lead Counsel and Mindee J. Reuben (Lite DePalma Greenberg & Afanador, LLC) as Interim Liaison Counsel for the Financial Institution Track. *See* ECF No. 120.

21.     On July 13, 2020, FI Counsel filed their operative Consolidated Amended Class Action Complaint ("CACAC") on behalf of named FI Plaintiffs Greater Cincinnati Credit Union, Insight Credit Union, and Inspire Federal Credit Union. *See* ECF No. 128.

22.     The CACAC brought claims for negligence, negligence *per se*, and declaratory and injunctive relief on behalf of a proposed class of financial institutions that issue payment cards and that suffered, and continue to suffer, financial losses as a direct result of Wawa's failure to take adequate and reasonable measures to protect its point-of-sale ("POS") payment terminals, fuel dispensers, and payment processing servers. *See* CACAC ¶ 1.

23.     The CACAC further alleged that FI Plaintiffs have and will continue to incur significant damages as a result of the Data Security Incident including, *inter alia*, costs to cancel and reissue the payment cards compromised in the Data Security Incident, costs to refund fraudulent charges which occur on the compromised payment cards prior to their cancellation and reissuance, costs to investigate such fraudulent charges, costs to monitor the compromised card

---

[3] *See First Choice Federal Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00011 (W.D. Pa.).; *First Choice Federal Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00263 (E.D. Pa.).
[4] *See Inspire Federal Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00503 (E.D. Pa.).
[5] *See Greater Cincinnati Credit Union v. Wawa, Inc., et al.*, Case No. 2:20-cv-00722 (E.D. Pa.).
[6] *See Insight Credit Union v. Wawa, Inc.*, Case No. 2:20-cv-00930 (E.D. Pa.).

accounts, and loss of revenue (e.g., interest and transaction fees) resulting from decreased card usage. *See id.* ¶ 6.

24.     Wawa filed a motion to dismiss on August 12, 2020 (ECF No. 135); FI Plaintiffs responded on September 2, 2020 (ECF No. 140), and Wawa replied on September 16, 2020 (ECF No. 146). The Court held oral argument on November 10, 2020. *See* ECF No. 157. On May 6, 2021, the Court issued its opinion sustaining FI Plaintiffs' negligence and declaratory and injunctive relief claims. *See* ECF Nos. 204-205; *see also In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 1818494, *5 (E.D. Pa. May 6, 2021). Furthermore, the Court found that, "Wawa's affirmative conduct, in collecting payment card information and storing it in an insecure manner, created a risk of foreseeable harm from third parties and led to a data breach that proximately caused the Institutions' alleged injuries." *Id.* at *7.

25.     FI Counsel aggressively litigated this action from the outset. While Wawa's motion to dismiss was pending, the Parties engaged in discovery relating to the underlying facts in accordance with the Court's case management orders. *See* ECF No. 219. First, Plaintiffs obtained a negotiated set of early document productions. Wawa also produced documents relating to the forensic investigation conducted in the wake of the Data Security Incident, in addition to those given to law enforcement and regulatory agencies, including state attorneys general. FI Plaintiffs used these documents to inform their discovery requests and subsequent discussions with Wawa about the scope of discovery in the case, including appropriate systems, custodians, and search terms used for identifying relevant information.

26.     Additionally, the Parties exchanged Rule 26(a)(1) disclosures, negotiated a detailed ESI protocol, negotiated a protective order, served and negotiated requests for production of

documents, negotiated document custodians and data sources from which documents would be produced and negotiated search protocols.

27.    During and after resolution of the motion to dismiss, and over the course of many months, the Parties also negotiated a complex set of searches that Wawa would perform on its databases, negotiating thousands of search strings and ultimately reaching agreements on a four-year search period involving 16 custodians, each with differing search periods, as well as a validation methodology to evaluate the success of the search strings

28.    FI Plaintiffs also served discovery requests on third parties, including the major card brands, and engaged in discussions with them regarding the production FI Plaintiffs would require if the litigation had continued. The FI Plaintiffs also responded to 51 document requests served by Wawa, producing hundreds of documents from ten custodians.

29.    In addition, FI Plaintiffs filed a motion to compel production of documents and for an extension of the preservation period and, after obtaining partial relief, conducted further discovery ordered by the Court, including a third-party deposition.

30.    Based on Class Counsel's review of discovery obtained in this case, including information from the card brands regarding the number of Alerted-On Cards and their issuers, Class Counsel was certain that the proposed settlement class includes thousands of financial institutions, which was later confirmed by discovery with the card brands to be approximately 4,913.

III.    **SETTLEMENT NEGOTIATIONS AND THE PROPOSED SETTLEMENT**

31.    The proposed Settlement Agreement was reached between the Parties after extensive arm's length negotiations, including three full-day mediation sessions via Zoom with Judge Welsh on December 15, 2021, January 4, 2022, and April 29, 2022.

1011240.2

32.    In or around November 2021, while the Parties were in the midst of discovery, they first discussed exploring a potential resolution to this action, and soon after that agreed to engage Judge Welsh.

33.    Prior to the first mediation, the Parties provided Judge Welsh and each other comprehensive memoranda outlining the strengths and weaknesses of their claims and defenses in view of their understandings of the underlying legal issues and the factual record being developed in the discovery process.

34.    On December 15, 2021, the parties participated in an all-day mediation session with Judge Welsh via Zoom. The mediation involved numerous one-on-one sessions with Judge Welsh, as well as discussions with Wawa. Although the first meeting was unsuccessful in reaching resolution, with the Parties far apart on even the structure of the settlement, the Parties agreed to formally continue their mediation.

35.    On January 4, 2022, the parties participated in a second all-day mediation session with Judge Welsh via Zoom. Prior to the second mediation, the Parties' counsel worked during the holiday season to submit supplemental memoranda addressing issues raised during the first session. Although the Parties made further progress at the second mediation, they ended the second session still at an impasse with regard to several issues. The Parties then worked on making progress in discovery while continuing to engage in settlement discussions, both directly and with Judge Welsh's involvement.

36.    On April 29, 2022, the Parties participated in a third all-day mediation session with Judge Welsh via Zoom. Prior to the third mediation, the Parties' counsel submitted pre-mediation memoranda. The third session was productive, but did not result in an agreement, but the Parties

exchanged draft term sheets and made progress towards narrowing the scope of issues remaining to be resolved.

37.    The Parties scheduled a fourth all-day mediation session for May 18, 2022, which was ultimately canceled by the Parties because they believed they were too far apart on the compensation levels for the class for an additional mediation to be productive at that time.

38.    Direct negotiations resumed between the Parties in June 2022 and culminated in the Parties' execution of a term sheet outlining the key material features of the settlement on August 26, 2022.

39.    The Parties then worked for more than five months to negotiate the specific terms of the settlement agreement, solicit proposals from settlement administrators, draft the proposed notices, claim form, and proposed orders, and negotiate terms for the contemplated escrow accounts. The complete Settlement Agreement and its attachments were executed by the Parties on March 3, 2023.  *See* Exhibit A.

40.    In addition to obtaining up to $28.5 million in direct monetary compensation for Settlement Class Members that file claims, the Settlement provides that Wawa will pay up to $9 million towards notice and administration costs, attorneys' fees and expenses, and service awards to the Class Representatives.  The attorneys' fee and expense application will not reduce any settlement benefits available to the Class. These provisions of the Settlement were negotiated with Judge Welsh's oversight after the Parties substantially reached agreements on the structural relief terms and other components of the settlement.

41.    Throughout the litigation and these mediation and negotiation processes, the Parties' settlement discussions were hard-fought and conducted at arm's length and in good faith

9

by counsel experienced in these specific types of cases, and who were guided by both their experience and their extensive research of the facts and the law relating to this case.

42.     Class Counsel also engaged in frequent communications and discussions with the Class Representatives, other financial institution Class Members, and experts knowledgeable in data security and the payment card industry to confirm the reasonableness and acceptability of the settlement terms. Throughout the life of this case, Class Counsel carefully reviewed a variety of information sources, including documents produced in discovery, expert consultations, public information, and precedential opinions and settlements in similar cases. The information uncovered through these processes allowed Class Counsel to objectively evaluate the strengths and weaknesses of the claims and assess the potential risks and upsides of continuing litigation versus reaching this settlement.

43.     Prior to executing the Settlement, FI Plaintiffs also had the benefit of the Court's motion to dismiss opinion as well as party and non-party discovery to inform their knowledge of the Action. This further supplemented the information Class Counsel developed from their own investigation and analysis.

44.     Based on the efforts in this case and our experience litigating numerous complex class actions, including at least half a dozen previous payment card breach cases on behalf of financial institution plaintiffs, it is Class Counsel's opinion that the proposed settlement in this case is fair, adequate, and reasonable so as to satisfy the requirements for final approval pursuant to Fed. R. Civ. P. 23(e). The memorandum in support of FI Plaintiffs' motion details the terms of the agreement and the reasons why it satisfies the standards for preliminary approval and authorization of notice under Rule 23.

45.    Negotiations leading to the Settlement were entirely non-collusive and strictly conducted at arm's length. Class Counsel was involved in all aspects of the settlement negotiations on behalf of FI Plaintiffs and was well informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses of the claims against Wawa.

46.    Class Counsel also litigated against experienced defense counsel for Wawa, who routinely advises clients in connection with cyber and data security incidents, compliance with state and federal breach notification, data security, and privacy laws, and litigation arising out of data security and privacy events, including data breach class actions.

## IV.    STRUCTURE OF THE SETTLEMENT

47.    The Settlement involves a structure and terms that are common in class action settlements, including financial institution data breach cases, and provides Wawa with a qualified right to terminate the Settlement if the number of Settlement Class Members who timely exercise their right to request exclusion from the Settlement Class exceeds a certain amount. Such a provision is common in large class action cases.

48.    Class Counsel has strong reason to believe, based on discovery about the scope of the Data Security Incident provided during the course of the litigation and settlement negotiations and confirmation from the card brands and Claims Administrator, that there are approximately 4,913 Class Members that fall within the Settlement Class definition.

49.    The proposed Settlement Class is defined as:
All financial institutions in the United States (including its Territories and the District of Columbia) that issued payment cards (other than American Express) that either: (a) were Alerted On Payment Cards; or (b) were used at Wawa during the period of the incident March 4, 2019–December 12, 2019.[7]

---

[7] The term "Alerted On Payment Card" is further defined in the Settlement Agreement. *See*. § 2.1. Excluded from the Settlement Class are: the judge of this Court presiding over this

S.A. § 3.1.

50.    The Settlement provides for up to $28.5 million in direct cash compensation for Settlement Class Members that file claims. The relief is comprised of: (i) up to $18.5 million in cash payments to financial institutions that cancelled and replaced cards that were compromised in the data breach at rate of $5.00 per replaced card; (ii) up to $8 million in cash for fraudulent charges incurred on compromised cards, with each financial institution eligible to receive up to $4,000; and (iii) an alternative option for Class Members to elect a fixed payment (based on a *pro rata* division of $2 million by the number of Class Members), if the financial institution attests that it incurred *some cost* in dealing with the Data Security Incident, but opts not to submit a claim under the other two options.

51.    The compensation made available to Settlement Class Members is broken down into three categories designed to address the specific types of harm resulting from the breach.

52.    **Tier 1** compensation consists of $5.00 per replaced payment card to those financial institutions who attest, under penalty of perjury, to having cancelled and replaced the Impacted Cards in response to the Data Security Incident, if replaced between December 12, 2019, and May 1, 2020. Wawa has committed a minimum of $3 million and maximum of $18.5 million for Settlement Class Members that file claims in this tier. S.A. § 4.6(a)(i).

53.    **Tier 2** provides up to $4,000 per financial institution to compensate for fraudulent charges reflected in reasonable documentation submitted by the financial institution. The financial institution must provide a statement made under penalty of perjury that those costs reflect

---

Litigation and its staff and the judges of any other court that preside, or have jurisdiction, over this Litigation or Settlement and their staff; directors, officers, and employees of Wawa; parents and subsidiaries of Wawa, and any entity in which Wawa has a controlling interest; and financial institutions that fall within the Settlement class definition that timely and validly request exclusion from the Settlement Class. S.A. § 3.1.

unreimbursed out of pocket absorption or reimbursement to a card holder of fraudulent charges on the Impacted Cards when such fraudulent charges resulted from a transaction that was either: (1) card not present non-CVV submitted; or (2) non-EMV processed, if those charges occurred between December 12, 2019 and May 1, 2020. Payments under Tier 2 have a total cap of $8 million. S.A. § 4.6(a)(ii).

54.    *Tier 3* provides Class Members an option, in the alternative to Tiers 1 and 2, to make a claim without documentation. The claim value will be a fixed amount for all claiming Class Members, calculated by dividing $2 million by the final number of Class Members (to be confirmed during the notice period). S.A. § 4.6(a)(iii). The Class Member must submit a claim and attest that the Class Member incurred *some cost* in dealing with the Data Security Incident to receive the Tier 3 amount.[8]

55.    These packages of benefits are reasonable relative to the risks involved and the Action and the expected defenses raised by Wawa regarding standing, damages, causation, and class certification, among other things.

56.    Wawa also agreed to pay for class notice and settlement administration costs as part of the Settlement. After issuing a competitive request for proposals from potential claims administrators, the Parties selected Analytics. Class Counsel worked closely with Analytics to develop the Notice Plan.

---

[8] The Tier 3 fixed value will also be used as a minimum claim value, such that if a Class Member submits a claim under Tier 1 and/or Tier 2, and the value of that claim does not exceed the Tier 3 fixed value per Class Member, then the Class Member will receive the Tier 3 (higher) claim value instead. S.A. § 4.6(b)–(c).

57.     The total value of the Settlement, when considering the settlement relief, class notice and settlement administration costs, attorneys' fees and expenses, and the Service Awards, is $37.5 million.

58.     Based on our experience and expertise, Class Counsel believes that the Settlement is fair, adequate, reasonable, an excellent result for the class, and represents a desirable resolution of this litigation.

59.     In the still developing area of data breach litigation, there are many impediments to victory for a plaintiff suffering harm in a data breach, as well as significant impediments to class certification. The complex contractual relationships surrounding the payment card networks add additional layers of factual and legal complexity, as was demonstrated to the Court in the motion to dismiss briefing. Given these litigation risks, this Settlement is a good one for the Settlement Class Members and provides an opportunity for the recoupment of a significant percentage of the losses resulting from the Data Security Incident.

60.     Other than the Settlement Agreement itself, there are only three additional agreements involving the Parties related to this Settlement. The first is a supplemental agreement regarding the threshold number of exclusions required to trigger Wawa's right to terminate the agreement under S.A. Section 10.2. The other two agreements are between the Parties and the Escrow Agent, Huntington Bank, regarding the terms governing the Escrow Accounts. Copies of these three agreements were previously submitted to the Court for in-camera review.

## V.     **PRELIMINARY APPROVAL**

61.     On March 10, 2023, FI Plaintiffs filed a Unopposed Motion for an Order Authorizing Notice of Proposed Class Action Settlement (ECF No. 360); a Memorandum of Law in support (ECF No. 360-1); the Declaration of Gary F. Lynch in Support of FI Plaintiffs'

Unopposed Motion for an Order Authorizing Notice of Proposed Class Action Settlement (ECF No. 360-2); the Declaration of Richard W. Simmons of Analytics Consulting LLC in Support of Plaintiffs' Proposed Notice Program (ECF No. 360-3); the Settlement Agreement and Release with exhibits (ECF No. 360-4); and a [Proposed] Order (ECF No. 360-5).

62.    On October 12, 2023, the Court issued a Memorandum and Order preliminarily approving the Settlement as set forth in the Settlement Agreement, as being within the range of what may be found to be fair, reasonable, and adequate to the Settlement Class for the claims against Wawa. ECF Nos. 411-412. The Court preliminarily certified the following Settlement Class (ECF No. 412 at ¶ 10):

> All financial institutions in the United States (including its Territories and the District of Columbia) that issued payment cards (other than American Express) that either: (a) were Alerted On Payment Cards; or (b) were used at Wawa during the period of the incident March 4, 2019-December 12, 2019.

63.    That same day, the Court also approved the Notice Plan and scheduled a Fairness Hearing for a date to be determined. ECF No. 412.

64.    On November 8, 2023. FI Plaintiffs filed an unopposed motion for the Court suspend the deadlines set forth in the Court's October 12, 2023 preliminary approval order to provide the Parties with an opportunity to review the Settlement in light of the recent opinion by the Third Circuit Court of Appeals regarding the Wawa Consumer Track settlement. *See In re Wawa, Inc. Data Security Litig.*, 2023 WL 7210345 (3d Cir. Nov. 2, 2023). ECF No. 416. On November 9, 2023, the Court stayed all preliminary approval deadlines. ECF No. 417.

65.    On March 9, 2024, FI Plaintiffs filed an unopposed motion to amend the schedule set forth in the Court's October 12, 2023 preliminary approval order (ECF No. 412) to address the Third Circuit's commentary on when a court should consider an attorney fee application as well

15

as to set a final approval hearing date. ECF No. 434. On March 13, 2024, the Court issued an order

setting the various notice dates and fixing the final approval hearing for September 16, 2024. ECF

No. 435. The next day, on March 14, 2024, the Court issued an amended order correcting its order

from the day prior, setting the various notice dates and fixing the final approval hearing for

December 18, 2024. ECF No. 436.

## VI.    NOTICE PROGRAM AND EFFORTS BY THE CLAIMS ADMINISTRATOR AND CLASS COUNSEL

66.    Based on Class Counsel's prior experience in these types of cases and settlements

and work with Analytics on other recent data breach settlements involving financial institution

plaintiffs, Class Counsel believes that the identities and addresses of nearly all of the individual

Settlement Class Members were readily ascertainable from the records of Visa, MasterCard, and

the other card brands.

67.    Class Counsel has experience obtaining this information from the card brands.

From these prior cases, Class Counsel also believes that that the Class Members are likely be

familiar with the claim process and claim form, having received similar documents in recent years.

68.    Class Counsel conducted discovery with the card brands to ascertain the list of

financial institutions that were impacted by the Wawa Data Security Incident.

69.    The card brands provided Analytics with the names and addresses of financial

institutions identified to be members of the Settlement Class.

70.    Notice commenced in April 2024 and included, *inter alia*, direct mail notice sent

by Analytics to 4,913 financial institution addressees.  In April and May 2024, summary notice

was published in the ABA Banking Journal Digital Edition. *See* Declaration of Kari L. Schmidt in

Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Amended Analytics

Decl.") ¶¶ 5-10.

16

71.    The initial claims report from Analytics, dated May 16, 2024, indicated that only 142 claims had been submitted for a claims rate of approximately 3%.

72.    Beginning that same month, Class Counsel contacted several regional and national financial institution trade associations such as the CrossState Credit Union Association (Pennsylvania and New Jersey), the Cooperative Credit Union Association (Delaware, Massachusetts, New Hampshire, and Rhode Island), the New York Credit Association, and the Maryland/District of Columbia Credit Union Associations, among others.

73.    This outreach resulted in several associations providing additional information to their members in newsletters, on their website, and by email, at no additional cost to the Class. For example, the Independent Community Bankers of America ("ICBA") distributed information about the settlement—including the claim deadline and a link to the settlement website—in its newsletter. The newsletter is sent to the entire membership of the ICBA, which represents community banks with approximately 50,000 locations nationally. The ICBA also agreed to provide additional reminders to its membership regarding the settlement as we approach the claims deadline.

74.    The CrossState Credit Union Association also distributed a summary of the settlement in their *Daily Newsletter* with a link to a set of frequently asked questions ("FAQs") about the settlement that Class Counsel created. CrossState also reposted information about the settlement in its weekly *Compliance Connection Weekly* communication. CrossState serves more than 500 credit unions across PA and NJ and is one of the largest regional credit union associations in the nation with 5 million members.   These FAQs were also shared with the American Association of Credit Union Leagues ("AACUL") and Americas Credit Unions for distribution to their member credit unions.   For example, the Maryland and District of Columbia Credit Union

17

Association and the Dakota Credit Union Association sent a similar news item to their members, also with links to the Settlement website.

75.     Around the same time, Class Counsel and Analytics engaged The Credit Union ("CU") Times to send a co-branded email in June, July, and August to its readership regarding the settlement, as well as to post an article about the settlement for an unlimited duration of time (up to 50,000 views). The CU Times serves credit union professionals and has a membership of approximately 16,000 members who have received co-branded emails and have access to the article.

76.     Class Counsel separately reached out to the Credit Union National Association (now America's Credit Unions) and AACUL, advocacy organizations for credit unions, associations, and leagues.  America's Credit Unions and AACUL included the settlement FAQs in their respective communications and distributed this information to their members and credit unions at no cost. In late July, America's Credit Unions sent an electronic news item to its members making them aware of the upcoming claims deadline with links to the FAQs and the Settlement website.

77.     While these trade groups and associations were sending information about the settlement to their members, Class Counsel personally reached out to credit unions impacted by the breach via email, telephone, and facsimile to answer questions and offer assistance with filing claims and to remind them of the claim deadline.

78.     Analytics also issued reminder postcard notice in July 22, 2024, approximately 30 days before the then August 12, 2024 claim deadline. Amended Analytics Decl. ¶ 7.

79.     By July 22, 2024, 220 submissions were on file, increasing the claims rate to 4.477% per Analytics' report to Class Counsel.

18

80.    Because the additional notice and associated outreach efforts were improving Settlement Class awareness, Class Counsel believed that additional time in the claims period was necessary to permit those class members to file their claims. On July 26, 2024, Class Counsel filed a Motion to Extend August 12, 2024 Settlement Claims Deadline and Amend Schedule ("Motion to Extend Claims Deadline") to September 30, 2024.  ECF No. 447.   This extension was contested by Wawa.  ECF No. 448; *see also* ECF No. 450 (FI Plaintiffs' response in further support of motion to extend the claims deadline).

81.    In August 2024, in advance of the August 12, 2024 claims deadline, Class Counsel directed Analytics to issue an additional round of direct notice to Settlement Class Members that had not filed claims. Amended Analytics Decl. ¶ 7.

82.    Also in advance of the August 12 deadline, and while the trade groups and associations were sending information to their members, Class Counsel reached out personally to hundreds of Settlement Class Members through a variety of means, including telephone calls, direct emails and facsimile to leadership of and legal counsel for Settlement Class Members, personalized mailed letters to leadership and general counsel (as available), LinkedIn and Facebook messaging, and Settlement Class Members' websites.

83.    As of August 12, 2024, the original claims deadline, Analytics reported the claims rate at 11.6%.

84.    Because the Court had not yet ruled on the Motion to Extend Claims Deadline, Class Counsel continued their efforts to reach out the Settlement Class Members who had not filed a claim.

85.    Class Counsel obtained an updated list of Settlement Class Members that timely attempted to file their claim but due to various technical issues on the settlement website had not

yet finalized their claim submissions as of August 12, 2024 (*i.e.,* "incomplete claims"). Class Counsel reached out to these entities via telephone phone, email, letter, and facsimile to assist them with correcting their claim.

86.    On September 11, 2024, the Court issued an Order (ECF No. 455) granting FI Plaintiffs' motion to extend the claims deadline to September 12, 2024, effectively causing any claim filed between August 12 and September 12, 2024, to become timely.

87.    That same day, Class Counsel asked ICBA to send one final email blast to its membership about the extension to encourage additional submissions.

88.    Presently, the claims rate is approximately 15%. Amended Analytics Decl. at ¶¶ 16-17.

89.    Only two (2) opt-out requests have been filed and no Class Member has objected to the Settlement. Amended Analytics Decl. ¶ 14.

90.    Analytics has preliminarily validated the following claims to date: (1) 345 claims were filed for a total of $8,151,525.00 in ***Tier 1*** benefits; (2) 17 ***Tier 2*** claims for a total of $36,889.40 to compensate Class Members for out of pocket fraudulent charges; and (3) 381 claims were filed for a total of $155,097.48 in ***Tier 3*** benefits. Amended Analytics Decl. ¶¶ 18-20.

## VII.    CLASS COUNSEL'S EXPERIENCE

91.    Class Counsel have extensive experience in handling complex class actions, including complex data breach class actions.

92.    Class Counsel previously submitted applications for appointment as Interim Class Counsel and Liaison Counsel which were approved by the Court.  *See, e.g.,* ECF Nos. 24, 79 and 83 (leadership motions), 105 (consensus application), 120 (interim appointments), 412 (leadership order).  Attached hereto as Exhibits B-E are updated copies of firm resumes and individual

biographies for each of the Class Counsel:  Exhibit B (Lynch Carpenter LLP and Gary F. Lynch);

Exhibit C (Lowey Dannenberg, P.C. and Christian Levis); Exhibit D (Hausfeld LLP and Jeannine

M. Kenney); and Exhibit E (Lite DePalma Greenberg & Afanador, LLC and Mindee J. Reuben).

### A.    <u>Gary Lynch, Lynch Carpenter LLP</u>

99.    Mr. Lynch is an attorney licensed in Pennsylvania and New York and is admitted

to numerous federal appellate and district courts. He is a partner at the law firm of Lynch

Carpenter, LLP.

100.    Mr. Lynch is a founding partner of Lynch Carpenter, LLP, a national plaintiffs'

class action firm with more than 20 attorneys and offices in Pittsburgh, Chicago, Los Angeles, and

San Diego.

101.    Mr. Lynch has been practicing law for 35 years. His most notable current leadership

appointment roles include: Co-Lead Counsel, *In re MOVEit Customer Data Security Breach

Litigation*, No. 1:23-md-3083 (D. Mass.); Co-Lead Counsel, *In re FedLoan Student Loan

Servicing Litig.*, MDL No. 2833 (E.D. Pa.); Chair, Plaintiffs' Steering Committee, *In re: Change

Healthcare, Inc., Customer Data Security Breach Litig.*, No. 0:24-MD-03108 (D. Minn.);

Plaintiffs' Steering Committee, *In re Intellihartx Data Security Incident Litig.*, No. 3:23-cv-1224

(N.D. Ohio); and Plaintiffs' Steering Committee, *In re Marriott International Customer Data

Security Breach Litig.*, MDL No. 2879 (D. Md.).

102.    Mr. Lynch is one of the most experienced litigators in the country in payment card

data breach cases brought on behalf of financial institutions. His prior leadership roles in such

cases include: Co-Lead Counsel, *First Choice Federal Credit Union v. The Wendy's Company et

al.*, No. 2:16-cv-0506 (W.D. Pa.); Co-Lead Counsel, *In re Equifax, Inc. Customer Data Security

Breach Litig.*, MDL No. 2800 (N.D. Ga.); Co-Lead Counsel, *In re: The Home Depot, Inc.

*Customer Data Security Breach Litig.*, MDL No. 2583 (N.D. Ga.); Plaintiffs' Executive Committee, *Greater Chautauqua Federal Credit Union et al. v. Kmart Corporation et al.*, No. 15-cv-02228 (N.D. Ill.); and Plaintiffs' Executive Committee, *In re Target Corporation Customer Data Breach Litig.*, MDL No. 2522 (D. Minn.).

103.    In addition to his leadership of complex, multi-district cases, Mr. Lynch has also been instrumental in shaping data privacy law in Pennsylvania and elsewhere. For example, in 2018, Gary successfully argued before the Pennsylvania Supreme Court in *Dittman et al. v. UPMC*, where the Court issued its landmark decision recognizing that companies owe a general duty of care to protect against data breaches and clarifying the parameters of the economic loss doctrine in the data breach context, as well as any other context where an independent legal duty is sought to be enforced for purely economic damages.

104.    Mr. Lynch was a 2019 finalist for *The Legal Intelligencer's* Attorney of the Year award. He has been named a *Super Lawyer* every year since 2014. In 2020, Gary's firm was selected by The Legal Intelligencer as the Litigation Department of the Year. In 2021, the firm was named as a finalist for Litigation Department of the Year in the Pennsylvania region by The American Lawyer. In 2022, the firm was named as a finalist for Privacy/Data Breach firm of the year by ALM. In 2023, the firm was named as a Pennsylvania Powerhouse by Law360. Gary, along with two of his partners, also co-authored recent updates to *Class Actions: The Law of 50 States*, published by Law Journal Press.

### B.    Christian Levis, Lowey Dannenberg P.C.

105.    Mr. Levis is an attorney licensed in New York and New Jersey and has been admitted to numerous federal appellate and district courts. He is a partner at the law firm of Lowey Dannenberg, P.C.

106.    Mr. Levis is head of the firm's data breach and privacy practice groups. The firm has offices in both New York and Pennsylvania with more than 40 attorneys across both offices.

107.    Mr. Levis has extensive experience in complex class action litigation and has been integral in securing hundreds of millions of dollars in settlements on behalf of class members. Most notably, Mr. Levis served as court-appointed co-lead counsel in *In re GSE Bonds Antitrust Litigation*, Case No. 19-cv-1704 (JSR) (S.D.N.Y.) ("*GSE Bonds*"), a class action against sixteen of the world's largest banks alleging a conspiracy to fix the prices of debt securities issued by government sponsored entities. Mr. Levis, with other co-lead counsel, ultimately secured more than $386 million on behalf of class members. In recognition of these significant results, Mr. Levis and four other Lowey Dannenberg attorneys received the American Antitrust Institute award for Outstanding Antitrust Litigation Achievement in Private Law Practice.

108.    In 2023, Mr. Levis also received the American Antitrust Institute award for Outstanding Achievement by a Young Lawyer for his work on *Fund Liquidation Holdings, LLC v. Citibank N.A. et. al.*, Case No. 16-cv-5263 (S.D.N.Y.), an antitrust class action that ultimately settled for more than $170 million. His work in several other antitrust actions, including *Laydon v. Mizuho Bank, Ltd.*, Case No. 12-cv-03419 (S.D.N.Y); *Sullivan v. Barclays PLC*, Case No. 13-cv-02811 (S.D.N.Y.), *In re: London Silver Fixing Ltd. Antitrust Litigation*, Case No. 14-md-02573 (S.D.N.Y.), and *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, Case No. 15-cv-871 (S.D.N.Y), resulted in settlements of over $820 million collectively.

109.    Separate from these achievements, Mr. Levis has served as co-lead counsel in several prominent data breach actions, including *Barr v. Drizly, LLC f/k/a Drizly, Inc., et al.*, Case No. 1:20-cv-11492 (D. Mass.) (serving as co-lead counsel in an action representing 2.5 million consumers and obtaining a settlement of $7.10 million and other relief), *In Re: Data Security Cases Against NELNET SERVICING, LLC*, Case No. 4:22-cv-03191 (D. Neb.) (serving as co-lead counsel,

in which Mr. Levis has recently moved for preliminary approval of a $10 million settlement), *Rand v. The Travelers Indemnity Company*, Case No. 7:21-cv-10744 (S.D.N.Y.) (serving as co-lead counsel, in which Mr. Levis has recently moved for preliminary approval of a $6 million settlement), and *Dolan v. United Services Automobile Association*, Case No. 7:21-cv-05813(S.D.N.Y.) (currently serving as co-lead counsel in an action alleging the defendant improperly disclosed driver's license information through its website portal).

110.    Mr. Levis is also currently leading the prosecution of several cutting-edge privacy actions. *See In re Google Assistant Priv. Litig.*, No. 5:19-cv-04286 (N.D. Cal.) (class action on behalf of Google Assistant-enabled device users whose conversations were obtained by Google and shared with third parties without users' consent); *Lopez v. Apple, Inc.*, No. 4:19-cv-04577 (N.D. Cal.) (class action on behalf of Siri-enabled device users whose conversations were obtained by Apple, Inc. and shared with third parties without users' consent); *Frasco v. Flo Health, Inc*., 3:21-cv-00757 (N.D. Cal. Oct. 12, 2021) (privacy class action alleging a women's health app disclosed health data to some of the world's largest advertisers) ; *Wesch v. Yodlee, Inc. et al*., No. 3:20-cv-05991 (N.D. Cal.) (class action alleging defendant collected the sensitive financial information of tens of millions of individuals without their consent); *Doe v. Regents of the University of California*, No. 3:23-cv-00598 (N.D. Cal.) (privacy action alleging health care facility disclosed private health data to Meta Platforms, Inc. and Google, LLC).

111.    Mr. Levis is also an avid computer programmer with experience developing both iOS and Android apps and manages Lowey Dannenberg's e-discovery infrastructure.

**C.    Jeannine M. Kenney, Hausfeld LLP**

112.    Ms. Kenney is an attorney licensed in Pennsylvania and the District of Columbia and has been admitted to numerous federal appellate and district courts. She is a partner at the law firm of Hausfeld LLP.

24

113.    Hausfeld LLP is one of the largest plaintiffs' class action firms in the world with over 175 attorneys worldwide. Headquartered in Washington, D.C., domestically, it has offices in Philadelphia, New York, San Francisco, and Boston. Internationally, it has offices in London, Dusseldorf, Berlin, Hamburg, Stockholm, Brussels, and Am

114.    A graduate of the Georgetown University Law Center, Ms. Kenney has practiced exclusively in complex class action litigation, including data breach and antitrust matters, on behalf of plaintiffs. She has extensive experience in managing and leading all aspects of multi-defendant, complex litigation, including data breach actions, from initial pleading, through discovery, class certification, summary judgment, settlement, and trial. She has been repeatedly named as a *Super Lawyer* in Pennsylvania.

115.    Ms. Kenney currently serves as court-appointed Interim Co-Lead Class Counsel in *Anaya v. Cencora, Inc.*, No. 24-cv-2961 (E.D.Pa.), a consolidated data breach action pending in the Eastern District of Pennsylvania, and as a court-appointed member of the Plaintiffs' Steering Committee in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724, No. 16-md-2724 (E.D. Pa.), one of the largest antitrust class actions in history, also pending in this District. She was also appointed as Plaintiffs' Liaison Counsel in *In re NFL Players' Concussion Injury Litig.*, No. 12-md-2323 (E.D.Pa.).

116.    Hausfeld is the only plaintiffs' firm to be ranked in the top tiers of cyber and privacy law firms in the United States States by *The Legal 500* and *Chambers and Partners*. The National Law Journal's 2024 Elite Trial Lawyer awards named Hausfeld as the top firm in the Privacy/Data Breach category and Law360 named it the 2021 Cybersecurity Practice Group of the Year.

117.    In addition to Ms. Kenney's appointment in *Wawa* and *Cencora*, Hausfeld lawyers have been appointed to leadership positions in numerous complex data breach actions, including:

- *In re Equifax, Inc. Customer Data Security Breach Litig.*, No. 17-md-2800 (N.D. Ga.) (Plaintiffs' Steering Committee and Settlement Committee);
- *In re: T-Mobile Customer Data Security Breach Litig.*, No. 21-md-3019 (W.D. Mo.) (co-lead counsel);
- *In re Marriott Int'l Inc., Customer Data Security Breach Litig.*, No. 19-md-2879 (D. Md.) (co-lead counsel; litigation class certified with appeal pending)
- *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 15-md-2633 (D. Or.) (Executive Leadership Committee);
- *In re The Home Depot. Inc. Customer Data Security Breach Litig.*, No. 14-md-2583 (Chair of the Plaintiffs' Steering Committee); and
- *In re: Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.) (Cross Discovery Committee);
- *In re: Perry Johnson & Assoc. Medical Transcription Data Sec. Breach Litig.*, 24-md-3096 (E.D.N.Y.) (Co-Lead) (pending); and
- *In re American Medical Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2904 (D.N.J.) (Plaintiffs' Steering Committee) ($6.3 million partial settlement) (pending); among others.

118.    In addition, Ms. Kenney, who managed discovery in the *Wawa* FI action, is nationally known for her expertise in electronic discovery, ranked by *Chambers and Partners* in Band 1 for "E-Discovery & Information Governance: Plaintiffs", a recognition bestowed on only four plaintiffs' attorneys in the United States. Ms. Kenney is active in the Sedona Conference Working Group 1 on electronic discovery, including regularly serving as a panelist and member of brainstorming groups and drafting committees. She serves on the board of the Complex eDiscovery Litigation Forum, the Advisory Counsel for the eDiscovery Reference Manual—an entity that provides global resources to practitioners on e-discovery, proviacy, security, and information governance.  She speaks regularly at trade conferences, counseling attorneys on discovery and complex litigation management practices

**D.    Mindee J. Reuben, Lite DePalma Greenberg & Afanador, LLC**

119.    Ms. Reuben is an attorney licensed in Pennsylvania and New Jersey who has been admitted to numerous federal appellate and district courts.  She is a partner at the law firm of Lite DePalma Greenberg & Afanador, LLC ("LDGA").  She resides in the firm's Philadelphia office.

26

120.    In practice for over 30 years, Ms. Reuben is currently involved in several plaintiff class action matters in which she has leadership roles, including *In re: Generic Pharmaceutical Pricing Antitrust Litigation,* No. 16-md-2724 (E.D. Pa.) (Steering Committee), *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.) (Liaison), and *In re: Deere & Company Repair Services Antitrust Litigation,* No. 22-cv-50188 (N.D. Ill.) (Steering Committee).

121.    Other representative federal antitrust matters in which Ms. Reuben has had leadership or other significant roles include:  *In re: Processed Eggs Products Antitrust Litigation*, No. 08-md-2002 (E.D. Pa.) (co-lead and liaison counsel, $130 million settlement); *In re Blue Cross Blue Shield Antitrust Litigation* (Subscriber Track), No. 13-cv-20000 (N.D. Ala.) (trial plan committee, $2.67 billion settlement); *In re Broiler Chicken Antitrust Litigation* (Direct Purchasers), No. 18-cv-8637 (N.D. Ill.) (deposition and trial teams, $284 million settlement); and *In re: Polyurethane Foam Antitrust Litigation*, MDL No. 2196 (N.D. Ohio) (executive committee, $147,000,000 settlement). Ms. Reuben has also served as class counsel in various federal and state consumer class actions, including *Fritzinger v. Angie's List*, Case No. 12-cv-1118 (S.D. Ind.) and *Stone v. Stewart Title Guaranty Co.*, Philadelphia Court of Common Pleas, June Term, 2006, No. 2003 (consol. under *Cummings v. Stewart Title Guaranty Co., et al.*, Philadelphia Court of Common Pleas, March Term, 2005, No. 747) (Glazer, J.), both of which resulted in favorable settlements for the class.

122.    LDGA has had leadership roles in other data breach cases, including *In re: In re: Prudential Financial, Inc. Data Breach Litig.*, No. 24-cv-6818 (D.N.J.) (liaison); *In Re: Samsung Customer Data Security Breach Litig.*, No. 23-md-3055 (D.N.J.) (liaison); *American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904 (D.N.J.) (co-lead

counsel); and *In Re Horizon Healthcare Servs. Inc. Data Breach Litig.*, No. 13-cv-7478 (D.N.J.) (co-lead counsel).

123.    *Super Lawyers* and *Philadelphia Magazine* have repeatedly named Ms. Reuben as one of Pennsylvania's and Philadelphia's top lawyers in the field of antitrust, as well as one of the top 50 Women Super Lawyers overall in the state.  Ms. Reuben has also been recognized in *The Best Lawyers in America* for her work in Antitrust Law and Litigation – Antitrust, as well as in *Chambers USA*.

## VIII.   FEES AND EXPENSES

### A.    Management of Time and Expenses

124.    Class Counsel has taken measures to ensure that the work performed by all counsel representing Financial Institution Plaintiffs ("FI Counsel") was necessary, completed efficiently, and was not duplicative.

125.    The Court ordered that FI Counsel submit quarterly reports for any time and expenses "for which counsel for any plaintiff intends to seek compensation at the end of the litigation."  Case Management Order No. 2 at 9 (ECF No. 119); *see also* Case Management Order No. 4 (ECF No. 125) (amending dates).  These submissions were made *in camera* to the Court for its review on a quarterly basis and included a summary of hours and fees and a summary of expenses, by firm, from case inception through July 15, 2024.[9]

126.    To facilitate the compilation and review of quarterly time and expenses incurred in this case for the Court, each firm representing FI Plaintiffs was required to submit two *monthly*

---

[9] The next quarterly submission is due on October 15, 2024.  However, because this Motion is being submitted on October 9, 2024, FI Plaintiffs moved for relief from their obligations under Case Management Order No. 4.  ECF No. 456 (Financial Institution Plaintiffs' Motion for Relief from Case Management Order No. 4).

reports to Class Counsel: (i) standardized time and expense report sand (ii) detailed monthly fee and expense reports, along with a partner certification from the submitting firm attesting that the submissions are true and accurate.  A copy of the templates are attached to the Joint Declaration as Exhibit F (Time & Expense Template).

127.     The time template requires the submitting firm to identify the name of the professional performing services, the status of the employee (*e.g.*, attorney, paralegal), year of admission/when legal career began, hourly rate at time work performed, category of work, and time expended.

128.     The fee and expense template requires categorization of the expenses by type and amount.

129.     FI Counsel were directed by Class Counsel to retain detailed back-up for the monthly time and expense submissions in-house by each firm.

130.     Directions on how these forms should be completed, as well as what work would be considered for compensation in the event a fee petition was submitted to the Court for consideration, were detailed in a time and expense protocol that was sent to all FI Counsel.  A copy of the protocol is attached to the Joint Declaration as Exhibit G (Time & Expense Protocol).

131.     These quarterly time and expense submissions to the Court in accordance with Case Management Order No. 4, supported by the partner-certified monthly time and expense submissions to Class Counsel, are the basis for FI Counsel's lodestar calculation and fees requested here.

132.     In addition, any work performed by other FI Counsel was at the direction of Class Counsel; Class Counsel managed this process effectively, limiting the work assigned to other FI

Counsel to mostly client management issues once it became clear that settlement was a real possibility.

**B.    Rates, Hours & Fees**

133.    FI Counsel are seeking $8.5 million in attorneys' fees, $85,453.81 in expenses and costs, and a $5,000 service award to each class representative ($15,000 total), exclusive of notice and settlement administration costs.

134.    Based on the monthly time and expenses submissions, FI Counsel have expended 8,663.3 hours on this case through September 30, 2024, for a total lodestar of $5,698,762.70.

135.    Class Counsel have expended 7067.4 hours on this case through September 30, 2024, for a total lodestar of $4,653,908.50.

| Law Firm | Hours through 9/30/2024 | Lodestar through 9/30/2024 |
|---|---|---|
| Class Counsel | 7,067.4 | $4,653,908.50 |
| >Lynch Carpenter | 2,024.5 | $1,514,497.50 |
| >Lowey Dannenberg | 1,978.7 | $1,149,613.00 |
| >Hausfeld | 1,594.6 | $1,039,900.50 |
| >Lite DePalma Greenberg & Afanador | 1,469.6 | $  949,897.50 |
| All Other FI Counsel | 1,595.9 | $1,044,854.20 |
| **TOTAL:** | 8,663.3 | $5,698,762.70 |

A comprehensive chart of all hours and fees by firm is attached hereto as Exhibit I (FI Counsel – Comprehensive Chart of Hours & Fees).    A table identifying the amount of time spent by Class Counsel on each task category is attached hereto as Exhibit H (Class Counsel – Time by Category).

136.    The requested fees represent 22.6% of the constructive common fund of $37.5 million, and 29.8% of the $28.5 million available to the Class.

137.    The requested fees represent a modest multiplier of 1.49 based upon the efforts of FI Counsel and the highly beneficial terms of the Settlement Agreement to the Class.

**C.  Class Counsel's Lodestar and Hourly Rates**

1011240.2

138.    Class Counsel's rates (Mr. Lynch, Mr. Levis, Ms. Kenney, and Ms. Reuben) have ranged from $675-$1,175 per hour over the course of the litigation through September 30, 2024. The highest rates are those of counsel who are most experienced in complex class actions and data breach litigation.

139.    The hourly rate range of other individuals working on this litigation from Class Counsel's firms range from $300 to $1,175 for attorneys, from $125 to $350 for law clerks, and from $225-$350 for paralegals.

### *Lynch Carpenter Detailed Rates, Hours & Fees*

140.    Lynch Carpenter billed 2,204.5 hours and $1,514,497.50 in fees through September 30, 2024, using historical hourly rates.  Detailed chart identifying individual timekeepers and their rates, hours and fees is attached hereto as Exhibit J.

141.    The hourly rates set forth in the reference charts are the usual and customary historical rates charged by each biller in the firm's class action cases.  Lynch Carpenter does not handle non-contingent matters.

142.    Lynch Carpenter's hourly rates for class actions are accepted by courts throughout the United States, including in the Eastern District of Pennsylvania.  *See, e.g., See, e.g., In re: Philips CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation*, 2:21-mc-1230, MDL No. 3014 (W.D. Pa.) (final approval of economic loss settlement granted April 25, 2024); *Engel v. Gannon Univ.*, 23-cv-244 (W.D. Pa.) (final approval granted July 17, 2024); *Jackson v. Suffolk Univ.*, 1:23-cv-10019 (D. Mass.) (final approval granted June 18, 2024); *Patel v. Viatris, Inc.*, GD-21-13314 (Pa. Comm. Pls.) (final approval granted June 12, 2024); *Degidio v. Crazy Horse Saloon and Restaurant, Inc.*, 4:13-cv-2136 (D.S.C.) (final approval granted February 23, 2024); *Copley v. Evolution Wells Services, LLC*, Case No. 2:20-cv-01442 (W.D. Pa.) (final

31

approval granted on July 14, 2023); *Opris, et al. v. Sincera Reproductive Medicine*, No. 2:21-cv-03072, ECF Nos. 62-64 (E.D. Pa.).

### *Lowey Dannenberg's Detailed Rates, Hours & Fees*

143.    Lowey Dannenberg billed 1,978.7 hours and $1,149,613.00 in fees through September 30, 2024, using historical hourly rates.  A detailed chart identifying individual timekeepers and their rates, hours and fees is attached hereto as Exhibit K.

144.    The hourly rates set forth in the reference charts are the usual and customary historical rates charged by each biller in the firm's class action cases.

145.    Lowey Dannenberg's hourly rates are accepted by courts throughout the United States, including in the Eastern District of Pennsylvania.  *See, e.g., Hozza v. PrimoHoagies Franchising, Inc.*, No. 1:20-cv-04966 (D.N.J.), ECF No. 61 (application reporting rates between $1,015 for partners and $430 for associates); ECF Nos. 70-71 (granting final approval and fees); *Barr v. Drizly, LLC f/k/a Drizly, Inc. et al.*, No. 1:20-cv-11492 (D. Mass.), ECF No. 59-2 (application reporting rates between $1,025 for partners and $400 for associates); ECF Nos. 72-73 (granting final approval and fees); *Fund Liquidation Holdings LLC v. UBS*, No. 1:15-cv-05844 (S.D.N.Y.), ECF No. 758 (application reporting rates between $1,500 for partners and $300 for associates); ECF Nos. 768-769 (granting final approval and fees); *In re European Government Bonds Antitrust Litig.*, No. 1:19-cv-2601 (S.D.N.Y.); ECF No. 423-3 (application including attorney rates ranging from $365 – $1,395); ECF No. 487 (approving attorneys' fees of $12 million).

146.    For private, non-class arrangements, Lowey Dannenberg typically charges its actual hourly rates, ranging from $210 for Paralegals, and from $535 – $1,045 for associates and from $1,175 – $1,500 for partners.

*Hausfeld's Detailed Rates, Hours, and Fees*

147.    Hausfeld billed 1,594.6 hours and $1,039,900.50 in fees through September 30, 2024, using historical hourly rates.  A detailed chart identifying individual timekeepers and their rates, hours and fees is attached hereto as Exhibit L.

148.    The hourly rates set forth in the reference charts are the usual and customary historical rates charged by each biller in the firm's class action cases.

149.    Hausfeld's hourly rates for class actions are based on regular and ongoing monitoring of prevailing market rates for attorneys of comparable skill, experience, and qualifications in antitrust, consumer, and other class actions.  Hausfeld's rates are regularly accepted by courts in class cases throughout the United States.  *See, e.g.* Order Approving Payment of Attorney Fees, *In re Cattle and Beef Antitrust Litig.*, No. 22-md-3031 (D. Minn. Jun 11, 2024) (ECF No. 705) (application included Hausfeld attorney rates for 2021-2022 ranging between $350 for paralegals, $430 for associates to $960 for senior attorneys);   Order re; Final Approval, Attorneys' Fees and Costs, and Incentive Awards, *In re Google Play Developer Antitrust Litig.*, No. 21-md-2981, (N.D. Cal.  Jan. 11, 2024) (ECF No. 903) (application included Hausfeld attorney rates for 2020-2022 ranging from $425 for staff attorneys to $1,370 for lead partner with decades of experience); Order, *Niewinski v. State Farm Life Ins. Co*., No. 23-cv-4159 (W.D. Mo.  Apr. 1, 2024) (ECF No. 36) (application included Hausfeld rates ranging from  $350 for paralegals, $460-560 for staff attorneys and associates, and $860-$920 for mid-level partners); Order, *In re Broiler Chicken Grower Antitrust Litigation*, No. 20-md-2977, (E.D. Okla. Nov. 2, 2023) (ECF No. 566) (application included Hausfeld rates ranging from $350 for paralegals, and $450 for staff attorneys/associates to $1,550 for leading partner); Order & Judgment Granting Final Approval and Awarding Attorneys' Fees, Costs, and Service Awards, *In re T-Mobile Customer Data*

33

*Security Breach Litig.,* No. 21-md-3019 (W.D. Mo. June 29, 2023) (application included Hausfeld rates ranging from $325 for paralegals, and $420 to $1,275 for attorneys); Final Approval Order & Order Graning Application for Attorneys' Fees, Costs, and Service Award, *McNeil v. Capitol One Bank* (E.D.N.Y. May, 31, 2024) (ECF No. 176) (application included Hausfeld rates ranging from $350 for paralegals, $480-$600 for associates and up to $1,370 for most senior partner).

150.    For private, non-class contingent fee arrangements, the percentage of recovery that Hausfeld would charge depends on a number of factors (e.g., the relative risks, stage of the case, potential recovery, etc.) but would typically range from between 15% and 40% depending on those factors.

### LDGA's Detailed Rates. Hours, and Fees

151.    LDGA billed 1,469.6 hours and $949,897.50 in fees through September 30, 2024, using historical hourly rates.  A detailed chart identifying individual timekeepers and their rates, hours and fees is attached hereto as Exhibit M.

152.    The hourly rates set forth in the reference charts are the usual and customary historical rates charged by each biller in the firm's class action cases.

153.    LDGA's hourly rates are accepted by courts throughout the United States, including in the Eastern District of Pennsylvania.  See, e.g., In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litig., No. 19-md-2904 (D.N.J.), ECF No. 576-5 (application included LDGA 2023 attorney rates ranging from $500-$800, paralegal, law clerk and contract attorney rates from $250-$350) and ECF No. 609 at  15 (approving Class Counsel award); In re BlueCross BlueShield Antitrust Litig. (Subscriber Track), No. 13-cv-20000 (N.D. Ala.), ECF No. 2032 at  4 (Order approving request for attorneys' fees) (application included LDGA 2017-2021 attorney rates ranging from $675-$850, paralegal rate of $250); In re Broiler Chicken Antitrust

34

Litig. (Direct Purchaser Class), No. 18-cv-8637 (N.D. Ill.), ECF No. 5229 (Order) and ECF No. 4552-2 at p. 110/192 (application included LDGA attorney rates from 2018 through 2020 ranging from $375-$850 for attorneys, paralegal rate of $250); In re Processed Egg Products Antitrust Litig. (Direct Purchaser Class), No. 08-md-2002 (E.D. Pa.), ECF No. 1570 (Order) and ECF No. 1537-2 (Exhibit H-3, referencing LDGA professional rates from 2014-2017).

154.    For private, non-class contingent fee arrangements, LDGA typically charges between 25%-40%.

**D.    Litigation Expenses**

155.    FI Counsel's outstanding adjusted litigation expenses, exclusive of settlement administration costs and document platform costs, are $82,993.06.  A chart of all FI Plaintiffs' unadjusted expenses by firm is attached as Exhibit N (FI Counsel – Comprehensive Chart of Unadjusted Expenses by Firm).  A chart of all FI Plaintiffs' adjusted expenses incurred by category is attached hereto as Exhibit O (FI Counsel – Comprehensive Chart of Adjust Expenses by Category).

156.    Class Counsel incurred the majority of the expenses—$77,143.39—which includes $47,700 in Class Counsel assessments that were put towards a litigation fund.  A chart showing litigation fund transactions and depletion of the litigation fund is attached at Exhibit P.

157.    FI Counsel have incurred $3,460.75 in fees from JND eDiscovery, the document platform host for the Financial Institution Plaintiffs in this litigation.  A copy of that invoice is attached as Exhibit Q.

158.    This invoice has not yet been paid but will be included as a line item in FI Counsel's request for reimbursement

159.    FI Counsel is seeking recovery of assessments, internal copies, court fees, court reporters/transcripts, postage, professional fees, witness/service fees, transportation, and miscellaneous costs associated with document production.  Class Counsel has disallowed the charges for commercial copies and telephone/fax/email.

160.    The expenses and costs for which FI Counsel seek recovery were ordinary and customary expenses incurred during the prosecution of this litigation.

E.    **Settlement Administration Costs**

161.    The Court-approved Settlement Administrator, Analytics LLC, has provided a separate declaration that sets forth the amount of settlement administration costs incurred to date in the amount of $73,680.25.  Amended Analytics Decl. at ¶ 21.

162.    Analytics' review and evaluation of claim submission has not yet been finalized (and will not be finalized for several weeks after the filing of this motion), and payments still need to issue to claimants, assuming final approval is granted.  *Id.* and ¶ 17 n.5.

163.    In advance of the December 18, 2024 hearing for final approval, Analytics will prepare and Class Counsel will submit a supplemental declaration addressing any additional costs incurred between this submission and final approval hearing, as well as expected costs incurred as well as to complete the process of distributing funds to Settlement Class Members.  *Id.* at 21.

IX.    **FINANCIAL INSTITUTION PLAINTIFFS' EFFORTS IN THE ACTION & SERVICE AWARDS**

164.    The Settlement Class Representatives have demonstrated their adequacy in selecting well-qualified Class Counsel, monitoring the litigation, cooperating with the discovery process and producing relevant documents, and participating closely in the negotiation of the settlement.

165.    Additionally, each Settlement Class Member actively communicated with Class Counsel for purposes of advising and consulting with regard to the consequences of the Data Security Incident and their resulting damages. These communications were crucial to drafting of detailed factual allegations in the consolidated amended complaint and the development of an acceptable settlement proposal. Class Counsel are aware of no conflicts of interests between the Settlement Class Representatives and the members of the proposed Settlement Class.

166.    FI Counsel seek a service award in the amount of $5,000 for each of the three Class Representatives Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union.

167.    The Class Representatives provided the following assistance, *inter alia*, to FI Counsel and the Class:  participated in interviews with FI Counsel to gather facts used in drafting pleadings; collected and preserved documents; arranged for litigation holds on destruction of documents; collected documents in response to Wawa's request for production of documents; reviewed and approved of pleadings and significant case filings; monitored litigation over the past four years; and engaged with Class Counsel during the settlement negotiation process including approval.

168.    These Class Representatives were responsive to FI Counsel as needed throughout litigation and settlement negotiations, despite the disruption, costs, and inconvenience to their businesses.

169.    The Settlement Class had advance notice that FI Counsel would be seeking service awards of up to $10,000 per Class Representative.

170.    Payment of these service awards will not reduce any amounts payable to Settlement Class Members.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on October 21, 2024, in Pittsburgh, Pennsylvania.

*/s/ Gary F. Lynch*
Gary F. Lynch

I certify under penalty of perjury that the foregoing is true and correct.

Executed on October 21, 2024, in White Plains, New York.

*/s/ Christian Levis*
Christian Levis

I certify under penalty of perjury that the foregoing is true and correct.

Executed on October 21, 2024, in Philadelphia, Pennsylvania.

*/s/ Jeannine M. Kenney*
Jeannine M. Kenney

I certify under penalty of perjury that the foregoing is true and correct.

Executed on October 21, 2024, in Wynnewood, Pennsylvania.

*/s/ Mindee J. Reuben*
Mindee J. Reuben

# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made as of March 3, 2023, by and between, as hereinafter defined, (a) Financial Institution Plaintiffs, both individually and on behalf of the Settlement Class (both as defined herein), and (b) Wawa, Inc. (collectively, "Wawa" or "Defendant"). By this Agreement, Wawa and the Financial Institution Plaintiffs seek to and do hereby resolve all claims of the Financial Institution Plaintiffs and the Settlement Class (as defined in this Agreement) that could have been or were asserted in the Litigation as defined herein.

# RECITALS

1.1.   WHEREAS, Financial Institution Plaintiffs filed the putative class action, *In re Wawa, Inc. Data Security Litigation (Financial Institution Track)*, Case No. 2:19-CV-06019 ("Action"), currently pending and consolidated in the U.S. District Court for the Eastern District of Pennsylvania, and including all actions consolidated individually and on behalf of the Settlement Class against Wawa.

1.2.   WHEREAS, Financial Institution Plaintiffs alleged that Wawa breached its duty of care to the Settlement Class in connection with the Data Security Incident involving Wawa's payment systems at its store locations, resulting in the compromise of payment card information for more than 30 million payment cards,[1] and are seeking declaratory and injunctive relief.

1.3.   WHEREAS, Wawa denies any wrongdoing whatsoever in connection with the claims that have been or could have been alleged against it in the Action and has asserted a number of defenses to Financial Institution Plaintiffs' claims.

1.4.   WHEREAS, nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, the parties agree to settle the Litigation on the terms as set forth in this Settlement, subject to Court approval.

1.5.   WHEREAS, this Settlement resulted from good faith, arm's-length settlement negotiations, including multiple settlement conferences among counsel for the Parties and several rounds of mediation with The Honorable Diane M. Welsh, U.S.M.J. (Ret.).

1.6.   WHEREAS, the Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to all Released Claims (as defined below) of the Settlement Class. The Parties intend this Settlement Agreement to bind Financial Institution Plaintiffs, Wawa, and all Settlement Class Members that do not timely and validly exclude themselves from the Settlement.

---

[1] "Payment Card(s)" means any debit, credit, charge, prepaid, ATM, or POS ("point of sale") card.

1.7.    WHEREAS, the Parties agree that this Settlement Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Wawa with respect to any claim of fault or liability or wrongdoing or damages whatsoever, any infirmity in the defenses that Wawa asserted or would assert, or to Financial Institution Plaintiffs' ability to satisfy the requirements of the Federal Rule of Civil Procedure Rule 23.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Litigation be settled, compromised, and dismissed on the merits and with prejudice, subject to preliminary and final Court approval, as required by Rule 23, on the following terms and conditions:

## DEFINITIONS

2.1.    "Alerted On Payment Card" means any payment card (including debit or credit cards) that was identified as having been compromised by the Data Security Incident: (i) in an alert in the MasterCard series ADC-008258-19; (ii) in an alert in the Visa series US-2019-0520a-PA, US-2019-0520b-PA, US-2019-0520c-PA, US-2019-0520d-PA, US-2019-0520e-PA, or US-2019-0520f-PA; and (iii) any payment card issued by a financial institution identified by Discover in the Litigation.

2.2.    "Approved Claim" means a claim for Settlement benefits made using a Claim Form by a Settlement Class Member found to be timely, valid, and in an amount approved by the Settlement Administrator.

2.3.    "Claims Administration" means the validation and processing of Claim Forms received from Settlement Class Members and processing of payment of Approved Claims by the Settlement Administrator, as well as any other duties and obligations of the Settlement Administrator, as set forth in the Settlement.

2.4.    "Claim Filing Deadline" means the deadline by which Settlement Class Members must submit a claim for benefits under this Settlement. The Claim Filing Deadline shall be set by the Court in the Preliminary Approval Order. The Parties propose a Claims Filing Deadline that is no later than 150 days after entry of the Preliminary Approval Order .

2.5.    "Claim Form" shall mean the form (including an electronic version thereof) attached as **Exhibit 3**, or one that is substantially similar to **Exhibit 3**, that a Settlement Class Member must complete and submit in order to be eligible for benefits under the Settlement. A Settlement Class Member that timely submits a Claim Form shall be deemed to have filed a "Claim" for payment from the Settlement Fund.

2.6.    "Class Counsel" means the Court-appointed Co-Lead Counsel and Liaison Counsel in the

2

Litigation:

Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
*Co-Lead Counsel*

Christian Levis
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
*Co-Lead Counsel*

Jeannine M. Kenney
**HAUSFELD LLP**
325 Chestnut Street #900
Philadelphia, PA 19106
*Co-Lead Counsel*

Mindee J. Reuben
**LITE DEPALMA GREENBERG & AFANADOR, LLP**
1835 Market Street, Suite 2626
Philadelphia, PA 19103
*Liaison Counsel*

2.7.    "Complaint" means the operative Consolidated Amended Class Action Complaint (ECF No. 128), filed in the Litigation on July 13, 2020.

2.8.    "Costs of Settlement Administration" means all reasonable actual costs and expenses of the Settlement Administrator associated with or arising from the Claims Administration and the Notice Program.

2.9.    "Court" means the United States District Court for the Eastern District of Pennsylvania.

2.10.    "Data Security Incident" mean the data security incident involving Payment Card Data reported by Wawa, Inc. on December 19, 2019.

2.11.    "Defendants' Released Persons" means: (a) Wawa; (b) its current and former parents, subsidiaries, related or affiliated companies, and divisions, whether indirect or direct; and (c) the respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, reinsurers, subrogees, shareholders, members, advisors, consultants, representatives, partners, joint venturers, and assigns of each of the entities and persons listed in sections (a) and (b) of this Paragraph.

2.12.   "Effective Date" means the first business day after which all of the following events have occurred:  (a) Class Counsel and Wawa's counsel have executed this Settlement; (b) the Court has entered the Final Approval Order and Final Judgment and (c)(i) the time for seeking rehearing, appellate, or other review of the Final Approval Order and Judgment has expired with no appeal, motion for rehearing, or motion for further review being filed, or (ii) the Final Approval Order and Judgment is affirmed on appeal or review, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.

2.13.   "Escrow Accounts" means interest-bearing accounts to be established by the Parties to hold the Settlement Fund and the Fees & Costs Fund and held by the Escrow Agent consistent with the terms and conditions described in the Settlement.

2.14.   "Escrow Agent" means the bank into which the Settlement Fund and the Fees & Costs Fund shall be deposited and maintained as set forth in Paragraph 12.2 of this Agreement.

2.15.   "Exclusion Deadline" means the deadline set by the Court for Settlement Class Members to file requests to be excluded from the Settlement.

2.16.   "Fees & Costs Fund" means a sum of up to $9,000,000 (Nine Million Dollars) to be placed in a Fees & Costs Fund Escrow Account using funds provided by Wawa to make all necessary payments or reimbursements towards Costs of Settlement Administration and to make payment of any Court-approved attorneys' fees, litigation expense reimbursements, or Service Awards, as further indicated in this Agreement.

2.17.   "Final Approval" means the date that the Court enters an order granting final approval of the Settlement and enters a Final Judgment that is in a form substantially similar to **Exhibit 5**.

2.18.   "Final Resolution Date" means the first business day after the time has expired for seeking rehearing, appellate, or other review of a final order (or aspect of an order) concerning an award of either 1) Attorneys' Fees, 2) Expenses of Litigation (including costs of Claims Administration and Notice), or 3) Service Awards, with no appeal, motion for rehearing, or motion for further review being filed (or when no further such actions are available). This term is only pertinent to the timing of certain payments by Wawa into the Fees & Costs Fund, and it has no other functional meaning in this Agreement.

2.19.   "Financial Institution Plaintiffs" means the following financial institutions:  Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union.

2.20.   "Impacted Cards" means payment cards other than those issued by American Express or its subsidiaries and affiliates, that were either (a) Alerted On Payment Cards as defined

herein; or (b) used at Wawa during the period of the incident March 4, 2019–December 12, 2019.

2.21.  "Litigation" means the Financial Institution Track of the consolidated action styled *In re: Wawa, Inc. Data Security Litigation*, Case No. 2:19-cv-06019-GEKP (E.D. Pa.) in the United States District Court for the Eastern District of Pennsylvania.

2.22.  "Notice" means the forms of notices of the Settlement Agreement, which shall include the Long Notice and Summary Notice, in a form substantially similar to the forms attached as **Exhibits 1** and **2**, respectively, that will be provided to the Settlement Class and for which Financial Institution Plaintiffs seek the Court's approval.

2.23.  "Parties" means Wawa and the Financial Institution Plaintiffs, individually and on behalf of the Settlement Class.

2.24.  "Payment Instructions" means the payment instructions set forth in the Custodian/Escrow Agreement for Settlement Fund and Custodian/Escrow Agreement for Fees & Costs Fund agreed to by Class Counsel, Wawa, and the Escrow Agent.  The terms and conditions of the executed Custodian/Escrow Agreement for Settlement Fund and Custodian/Escrow Agreement for Fees & Costs Fund are incorporated by reference into this Settlement Agreement.

2.25.  "Plaintiffs' Released Persons" means the Settlement Class, their current and former parents, subsidiaries, affiliated companies, predecessors, successors, officers, directors, agents, predecessors, assigns, assignees, partnerships, partners, insurers, reinsurers and divisions and the Settlement Class Representative's counsel of record in the Litigation.

2.26.  "Preliminary Approval Order" means the Court's order preliminarily approving the Settlement in a form substantially similar to the form set forth in **Exhibit 4**.

2.27.  "Releasing Parties" means the Financial Institution Plaintiffs and all Settlement Class Members who do not timely and validly exclude themselves from the Settlement, and each of these entities' current and former parents, subsidiaries, affiliated companies, predecessors and divisions, as well as their respective heirs, assigns, beneficiaries, predecessors, officers, directors, agents, partnerships, partners, insurers, reinsurers and successors.

2.28.  "Service Award" means a payment to one or more Financial Institution Plaintiffs awarded by the Court and payable out of the Fees & Costs Fund.

2.29.  "Settlement Agreement," "Settlement" or "Agreement" means this settlement agreement and release.

2.30.  "Settlement Administrator" means Analytics Consulting LLC, a company experienced in administering class action settlements generally and processing claims like those contemplated in this Agreement, as agreed by the Parties and to be approved by the Court, to effectuate the Notice Program and Claims Administration per the terms of this Settlement. The Settlement Administrator may be removed and replaced upon agreement of the Parties or as directed by the Court.

2.31.  "Settlement Class Members" or "Settlement Class" means all persons and entities that fall within the settlement class definition set forth in this Settlement that do not timely and validly exclude themselves from the Settlement.

2.32.  "Settlement Class Representatives" means Financial Institution Plaintiffs.

2.33.  "Settlement Fund" means the amount placed in the Settlement Fund Escrow Account using funds provided by Wawa to pay the total amount of all Approved Claims under the terms of Paragraph 4.4 of this Agreement.

2.34.  "Settlement Website" means the website that the Settlement Administrator will establish in conjunction with Settlement Administration and publication of Notice.

2.35.  "Wawa" means Wawa, Inc.

2.36.  "Wawa's counsel" means Morgan, Lewis & Bockius LLP.

## SETTLEMENT CLASS

3.1.  Wawa hereby agrees not to object to or oppose any motion by Plaintiffs consistent with this Settlement Agreement to certify, for purposes of settlement only, that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to court approval the following Settlement Class shall be certified for settlement purposes only (with the understanding that, by agreeing not to object to or oppose any such motion, Wawa does not agree that Rule 23 requirements are met for purposes of a litigation class, and reserves all rights to oppose the certification of any class in the event this Settlement is not finally approved):

> **All financial institutions in the United States (including its Territories and the District of Columbia) that issued payment cards (other than American Express) that either: (a) were Alerted On Payment Cards; or (b) were used at Wawa during the period of the incident March 4, 2019–December 12, 2019.**

Excluded from the class are the judge of this Court presiding over this Litigation and its staff and the judges of any other court that preside, or have jurisdiction, over this Litigation

or Settlement and their staff; directors, officers, and employees of Wawa; parents and subsidiaries of Wawa, and any entity in which Wawa has a controlling interest; and financial institutions that fall within the Settlement class definition that timely and validly request exclusion from the Settlement Class.

3.2. For settlement purposes only, Class Counsel shall seek, and Wawa shall not oppose, preliminary and final approval of the Settlement, the appointment of Class Counsel as settlement class counsel, the appointment Financial Institution Plaintiffs as Settlement Class Representatives, and certification of the Settlement Class for settlement purposes only.

3.3. As soon as practicable after receipt of discovery from the Payment Card brands regarding Alerted On Payment Cards and the identity of potential Settlement Class Members, Class Counsel shall provide, or cause to be provided, to the Settlement Administrator and Wawa a class list reflecting the available contact information (i.e., name and mailing address) of each issuer of Alerted On Payment Cards falling under the class definition (the "Class List").

## SETTLEMENT CONSIDERATION

4.1. In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases set forth below and Final Judgment as to Wawa upon the Effective Date, Wawa agrees to pay and provide the settlement consideration described in Paragraphs 4.6 and 4.7 herein (the "Settlement Consideration").

4.2. In no event shall Wawa be required to pay or provide more than the Settlement Consideration in connection with this Settlement.

4.3. Wawa shall make an initial payment of $250,000 into the Escrow Account for the Settlement Fund within ten (10) days of the later of (i) the Court's entry of the Preliminary Approval Order or (ii) Wawa's receipt of the Payment Instructions. This initial payment shall be applied only toward payment of the Approved Claims.

In the event that this Settlement is terminated for any reason as set forth herein, Wawa's initial payment of $250,000 into the Escrow Account for the Settlement Fund shall be returned to Wawa or its authorized designee within ten (10) days.

4.4. After the Effective Date, and within twenty (20) days after the later of (i) the date the Settlement Administrator completes its final valuation of Approved Claims, or (ii) Wawa's receipt of the Payment Instructions, Wawa shall cause to be paid into the Settlement Fund Escrow Account funds sufficient to satisfy the payment of all Approved Claims as determined by the Settlement Administrator in accordance with the provisions in Paragraph 4.6.

4.5.     The value of a Claim will be determined by the Settlement Administrator in accordance with the options chosen by the claiming Settlement Class Members and formulas described in Paragraph 4.6.

4.6.     <u>Settlement Consideration.</u>   Wawa   agrees   to   provide   the   following   Settlement Consideration:

      a.   <u>Class Relief / Claim Tier Payments.</u>

          i.   *Tier 1 Payments (Cancellation & Replacement).* Wawa shall pay a total amount of up to $18,500,000 (Eighteen Million Five Hundred Thousand Dollars) and no less than $3,000,000 (Three Million Dollars), to satisfy Approved Claims made under this tier. To make a valid claim under this tier, a Settlement Class Member must attest, under penalty of perjury, to having cancelled and replaced Impacted Cards and the number of Impacted Cards replaced in response to the Data Security Incident. Only Impacted Cards replaced by the Settlement Class Member between December 12, 2019 and May 1, 2020 are eligible for inclusion in an Approved Claim under this tier. The Settlement Administrator will value all Approved Claims under this tier at $5.00 per validly identified Impacted Card, provided, however, that the Settlement Administrator shall make a *pro rata* adjustment upward or downward to the per Impacted Card value as necessary to meet the $3,000,000 floor or $18,500,000 cap, respectively (or as close thereto as mathematically possible).

          ii.   *Tier 2 Payments (Fraud).* Wawa shall pay a total amount of up to $8,000,000 to satisfy Approved Claims made under this tier. To make a valid claim under this tier, a Settlement Class Member must provide reasonable supporting documentation to the Settlement Administrator and a statement made under penalty of perjury indicating:

                1) that the Settlement Class Member suffered financial loss in the form of unreimbursed out of pocket absorption or reimbursement to a card holder attributable to fraudulent charges on Impacted Cards;

                2) that the fraudulent charges on the Impacted Cards resulted from a transaction that was either:

                   (a) card not present non-CVV[2]; or

---

[2] A "card not present non-CVV" transaction means an online transaction where CVV code information was not requested or required to process the transaction.

(b) non-EMV processed [3];

and

3) that occurred between December 12, 2019 and May 1, 2020.

The Settlement Administrator will value Approved Claims under this tier at the amount of fraud loss validly identified by the Settlement Class Member, up to a maximum of $4,000 per Settlement Class Member. In the event that the total fraud losses validly claimed in all Approved Claims under this tier exceeds $8,000,000, the Settlement Administrator will reduce the value of all Approved Claims under this tier on a *pro rata* basis until the value of all Approved Claims under this tier reaches exactly $8,000,000.

iii. *Tier 3 Payments (Other Costs).* Wawa shall pay a total amount of up to $2,000,000 to satisfy Approved Claims under this tier. Settlement Class Members may make a claim under this tier as an alternative to making a claim under Tiers 1 and 2. The value of a claim made under this tier will be a fixed amount calculated by dividing $2,000,000 by the estimated number of Class Members ultimately confirmed in discovery (the "Tier 3 amount"). To illustrate: if there are 5,000 class members, the value of a claim under this tier will be $400 per claimant. Settlement Class Members may make a claim under this tier by submitting a validly completed claim form that indicates selection of this tier and attesting that the Settlement Class Member incurred costs as a result of the Data Security Incident. No supporting documentation will be required.

b. Settlement Class Members may make claims under (i) either or both Tier 1 and Tier 2, or (ii) Tier 3. In other words, a Settlement Class Member may submit a claim in only these forms:

    i. Tier 1 alone;
    ii. Tier 2 alone;
    iii. Both Tier 1 and Tier 2; or
    iv. Tier 3 alone.

c. In the event that a Settlement Class Member submits an Approved Claim under Tier 1, Tier 2, or both, but the combined value of such claim is less than the fixed value of a Tier 3 claim, the Settlement Administrator will increase the value of that

---

[3] A "non-EMV processed" means a transaction made where the card was present at the time of the transaction but required use of only a card's magnetic stripe to process the transaction, as contrasted with a transaction that requires an EMV chip to process the transaction.

Settlement Class Member's claim to match the Tier 3 amount and convert the Settlement Class Member's claim into a Tier 3 claim. Any claims converted to Tier 3 claims will not be included in calculation of any *pro rata* adjustment made to Tier 1 and Tier 2 claims under Paragraphs 4.6(a)(i) and (ii).

    d.  <u>For Illustration Purposes Only</u>: Class Member X submits a valid Tier 1 claim identifying 35 reissued Impacted Cards. The Settlement Administrator determines that there are 500,000 reissued Impacted Cards identified in all Approved Claims under Tier 1, and adjusts the per-card value of Tier 1 claims upward to $6.00 to meet the $3,000,000 minimum total payout for Tier 1 claims. Class Member X's Tier 1 claim would be worth $210 (35 cards multiplied by $6). If the fixed value of a Tier 3 claim is $400, then Class Member X's claim value will be increased to $400, and Class Member X will receive $400 instead of $210. The Settlement Administrator will similarly increase the value of any Settlement Class Member's claims under Tier 1 and/or Tier 2 if such claims (combined) are valued at less than $400. The conversion of any claim to a Tier 3 claim shall not increase the Tier 3 payment above $2,000,000.

4.7.  <u>Payment of Notice and Administration Costs, Service Awards, Attorneys' Fees, and Expenses of Litigation</u>. Wawa agrees to pay the Attorneys' Fees and Expenses, Financial Institution Plaintiffs' Service Awards, and Notice and Administration Costs of the Settlement, as may be approved by the Court, in an amount not to exceed $9,000,000. These costs will be paid by Wawa into the Fees & Costs Fund as follows:

    a.  *Notice and Administration Costs*. Wawa shall make an initial payment of $250,000 into the Escrow Account for the Fees & Costs Fund within ten (10) days of the later of (i) the Court's entry of the Preliminary Approval Order or (ii) Wawa's receipt of the Payment Instructions. Until the Effective Date, such funds may be used by Class Counsel only to reimburse the Settlement Administrator for the fees and costs in connection with carrying out the Notice Program and other Settlement administration obligations, including payment of any taxes. After the Effective Date, if reasonable Costs of Settlement Administration exceed $250,000 or are reasonably anticipated to do so, Wawa will pay additional money into the Escrow Account for the Fees & Costs Fund to cover such costs within thirty (30) days of receipt of a request by Class Counsel that includes documentation of the need for such additional payments. Once Wawa's cumulative payments into the Fees & Costs Fund reach $9,000,000, Wawa shall have no further obligations to make payments.

In the event that the Effective Date does not occur, Wawa will not be entitled to a return of any of the monies paid to the Settlement Administrator incurred up to that

point but will be entitled to a return of any monies remaining in the Fees & Costs Fund Escrow Account. Class Counsel and the Settlement Administrator will take reasonable steps to ensure that no further Costs of Settlement Administration are incurred thereafter without Wawa's express written approval.

b. *Attorneys' Fees and Expenses of Litigation, and Service Awards*. Wawa agrees to pay up to $9,000,000 for Court-approved Attorneys' Fees, Expenses of Litigation, and Service Awards less payments made for Notice and Costs of Settlement Administration into the Fees & Costs Fund Escrow Account. Wawa will make payments into the Fees & Costs Fund Escrow Account equal to the Court-approved amounts of these three items within twenty (20) days of the later of (i) the Effective Date, (ii) the Final Resolution Date pertinent to the particular item in question, or (iii) Wawa's receipt of the Payment Instructions. If the Settlement Agreement is not approved by the Court or is terminated in accordance with its terms, Wawa will not be entitled to a return of any of the monies it has paid to the Settlement Administrator for the Costs of Settlement Administration incurred up to that point, but will be entitled to a return of any remaining monies it has paid into the Fees & Costs Fund Escrow Account after accounting for the Costs of Settlement Administration.

4.8.    The Parties and their Counsel shall treat and shall cause the Escrow Agent and Settlement Administrator to treat the Settlement Fund and Fees & Costs Fund as "qualified settlement funds" within the meaning of United States Treasury Reg. §1.468B-l, at all times, from the creation of the Escrow Accounts. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed upon Wawa, Plaintiff, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively, "Taxes"), shall be paid out of the Fees and Costs Fund Escrow Account.

4.9.    <u>Taxes</u>. Class Counsel shall be solely responsible for directing the Settlement Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund or Fees & Costs Fund. Further, Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund or Fees & Costs Fund ("Tax Expenses") from the Escrow Accounts. Class Counsel shall be entitled to direct the Escrow Agent in writing to pay customary and reasonable Tax Expenses, including reasonable professional fees and expenses incurred in connection with

11

carrying out their responsibilities as set forth in this Paragraph, from the applicable Settlement Fund by notifying the Escrow Agent in writing. Wawa shall have no responsibility to make any tax filings or tax payments relating to this Agreement or the Settlement Fund.

4.10. The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Financial Institution Plaintiff or any Settlement Class Member of any payment or transfer made pursuant to this Agreement. Each Settlement Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to it of the receipt of any funds pursuant to this Agreement.

4.11. Wawa shall make all payments called for by this Settlement Agreement in accordance with the Payment Instructions and shall have no liability for or obligation to further make payment on any payment that is made in accordance with the Payment Instructions.

## PRELIMINARY APPROVAL AND DEVELOPMENT OF THE NOTICE PROGRAM

5.1. Upon execution of this Settlement, Class Counsel shall promptly move the Court for an order granting Preliminary Approval of the Settlement Agreement. The Motion for Preliminary Approval shall request that the Court: (a) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (b) certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) for settlement purposes only; (c) stay all proceedings in the Litigation unrelated to the Settlement, including all the Litigation deadlines, pending Final Approval of the Settlement; (d) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning any Released Claims; and (e) appoint Class Counsel and Settlement Class Representatives. A proposed Preliminary Approval Order shall be submitted with the Motion for Preliminary Approval and shall be substantially in the form set forth in **Exhibit 4**.

5.2. Contemporaneously with the filing of the Motion for Preliminary Approval and no later than thirty (30) days of filing the Motion for Preliminary Approval, Class Counsel shall move the Court to: (a) appoint the Settlement Administrator; (b) approve a Notice Program and Form of Notice for notification of the Settlement Agreement to the Settlement Class, and a Claim Form; (c) approve the procedures and deadlines for Settlement Class Members to exclude themselves from the Settlement Class, object to the Settlement, and submit claims for payment from the Settlement Fund; (d) set the deadline for Settlement Class Representative's motion for final approval of the Settlement and Class Counsel's application for attorneys' fees, costs, and expenses and Service Awards, (e) set the deadlines for the filing of objections to and requests for exclusions from the Settlement and the filing of Claim Forms, and (f) set the schedule for the Final Approval hearing, at which time the Court will conduct an inquiry into the fairness of the Settlement, determine

whether it was made in good faith and should be finally approved (the "Final Approval Hearing").

5.3. Counsel shall take all necessary and appropriate steps to ensure that Notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of this Agreement are provided in accordance with the Federal Rules of Civil Procedure and any Court orders.

5.4. The Notice Program shall include, at a minimum, (1) Direct U.S. First-Class Mail Long-Form Notice to potential Settlement Class Members identified in discovery pursuant to Paragraph 3.3 herein, (2) reminder U.S. Mail Post Card Notice mailed no later than thirty (30) days prior to the Claims Filing Deadline, (3) Summary Notice published in online or print publications targeted to banking or other publications as determined by the Settlement Administrator to be reasonably calculated to reach Settlement Class Members, and (4) published Notice on the dedicated Settlement Website.

5.5. Class Counsel shall, together with the proposed Settlement Administrator, design the Notice Program and the forms of Notice, in a form substantially similar to the ones attached hereto as **Exhibits 1** and **2**, to provide the best Notice practicable under the circumstances and that meets the requirements of Rule 23(c)(2)(B), as well as the Claim Form. The Notice Program, form of Notice, and Claim Form shall be subject to Wawa's review and consent, which consent shall not be unreasonably withheld, and subject to approval by the Court pursuant to the requirements Rule 23(c)(2)(B). If the Court rejects or requires modification of the Notice Program, form of Notice, or Claim Form, the Parties agree that any changes to the foregoing required by the Court shall not be grounds for recission of this Agreement.

5.6. Within ten (10) days of the filing of the Motion for Preliminary Approval and the Settlement Agreement, Wawa shall serve, or cause to be served, a notice of the proposed Settlement on appropriate state officials in accordance 28 U.S.C. § 1715.

## SETTLEMENT ADMINISTRATION

6.1. Class Counsel shall select the Settlement Administrator, subject to Wawa's approval, which approval shall not be unreasonably withheld, and move the Court for appointment of a Settlement Administrator to administer various aspects of the Settlement as approved by the Court. The Settlement Administrator may be removed and replaced upon agreement of the Parties or as directed by the Court.

6.2. Following Preliminary Approval of the Settlement Agreement and a Court Order approving a Notice Program and Form of Notice, and after receipt of discovery from the Payment Card brands regarding Alerted On Payment Cards and the identity of potential Settlement Class Members, at the direction of Class Counsel, the Settlement Administrator will

commence the Court-approved Notice Program, using the forms of Notice and Claim Form approved by the Court.

## FINAL APPROVAL ORDER AND JUDGMENT

7.1.    Settlement Class Representatives' motion for approval of the Notice Program and Form of Notice shall include a request to the Court for a scheduled date on which the Final Approval Hearing will occur, which date shall occur after the Claim Filing Deadline and sufficiently far in advance to accommodate deadlines for dissemination of Notice, requests for exclusions, objections to the Settlement Agreement, and submission of Claims Forms.  In no event shall Settlement Class Representatives propose a date for the Final Approval Hearing to occur earlier than ninety (90) days after the CAFA notices are mailed to ensure compliance with 28 U.S.C. § 1715.

7.2.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and Judgment granting Final Approval of the Settlement, and whether to approve Class Counsel's Application for Attorney's Fees, costs, expenses, and Service Awards.

7.3.    Settlement Class Representatives shall seek entry of an Order, substantially in the form attached hereto as **Exhibit 5**, granting final approval and entering Final Judgment which shall:

    a.    approve finally this Settlement Agreement and its terms as is fair, adequate, and reasonable within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation according to its terms;

    b.    finally certify the Settlement Class for settlement purposes only;

    c.    determine that the Settlement Class Notice Program and Form of Notice satisfied Rule 23 and due process requirements;

    d.    dismiss all claims in the Complaint and Litigation with prejudice;

    e.    bar and enjoin the Releasing Parties from asserting any of the Released Claims, including during the pendency of any appeal from the Final Approval Order and Judgment;

    f.    release and forever discharge Wawa and Defendants' Released Persons from the Released Claims and release Plaintiffs' Released Persons, as provided in this Settlement Agreement;

      g.      determine under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and direct that the Final Judgment shall be entered; and

      h.      reserve the Court's continuing and exclusive jurisdiction over Wawa and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Settlement in accordance with its terms.

## **RELEASES**

8.1.    As of the Effective Date, the Releasing Parties, each on behalf of itself and any predecessors, successors, or assigns, and any other entity purporting to claim through or on behalf of them directly or indirectly, shall automatically be deemed to have fully, completely, finally, irrevocably, and forever released and discharged Defendants' Released Persons of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown (including Unknown Claims), existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, administrative, statutory, or equitable, that are, were or could have been asserted in the Litigation or the Complaint, including, but not limited to, claims that result from, arise out of, are based upon, or relate to the Data Security Incident, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (a) Wawa's information security policies and practices; (b) the allegations, facts, and/or circumstances described in the Litigation and/or Complaint; (c) Wawa's response to and notices about the Data Security Incident; (d) the fraudulent use of any Alerted On Payment Cards (e) the cancellation and reissuance of any Alerted On Payment Cards; and (f) any expenses incurred investigating, responding to, or mitigating potential damage from the theft or illegal use of Alerted On Payment Cards or the Data Security Incident (the "Released Claims").

8.2.    For the avoidance of doubt, the Released Claims include, without limitation, any claims, causes of actions, remedies, or damages that were, or could have been, asserted in the Litigation and also include, without limitation: any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States; causes of action under the common or civil laws of any state in the United States, including, but not limited to, unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on privacy rights provided for under

the constitutions of the United States or of any states in the United States; any statutory claims under state or federal law; and also including, but not limited to, any and all claims in any state or federal court of the United States for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief.

8.3.    As of the Effective Date, Defendants' Released Persons will be deemed to have completely released and forever discharged the Releasing Parties and Plaintiffs' Released Persons from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or Unknown Claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Litigation, except for claims relating to the enforcement of the Settlement or this Agreement, and for the submission of false or fraudulent claims for Settlement benefits. For the avoidance of doubt, Defendants' Released Persons release, as set forth in this Paragraph, does not include entities that do not meet the definition of either Releasing Parties or Plaintiffs Released Persons.

8.4.    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including the Settlement Class Representatives, does not know or suspect to exist in its favor at the time of the release of Defendants' Released Persons that, if known by it, might have affected its settlement with, and release of, the Defendants' Released Persons, or might have affected its decision not to object to and/or to participate in this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Settlement Class Representatives expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, waived the provisions, rights, and benefits conferred by Cal. Civ. Code § 1542 to the extent applicable, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR

HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including the Settlement Class Representatives, and any of them, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Settlement Class Representatives expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims, including Unknown Claims. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Final Approval Order and Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

8.5. The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

8.6. For purposes of clarity, the releases described herein are not intended to, and shall not apply, to claims relating to the enforcement of this agreement.

8.7. As of the Effective Date, Settlement Class Members shall be enjoined from prosecuting or otherwise pursuing whether directly or in any other capacity any claim they have released in this Settlement against any of Defendants' Released Persons or based on any actions taken by any of Defendants' Released Persons that are authorized or required by this Settlement or by the Final Approval Order and Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding or action asserting claims released by this Settlement

### ATTORNEYS' FEES, COSTS, EXPENSES AND SERVICE AWARD

9.1. <u>Attorneys' Fees, Expenses of Litigation, and Service Awards</u>. Class Counsel will move for an award for attorneys' fees and reimbursement of litigation expenses, and service awards in amounts not to exceed $9,000,000, less payments made for Notice and Costs of Settlement Administration. Wawa agrees not to oppose the motion provided it is consistent with the provisions of this Agreement. Wawa will thereafter cause a sufficient sum to be deposited into the Fees & Costs Fund as provided in Paragraph 4.7.

9.2.   Notwithstanding anything herein, no decision by the Court or modification or reversal or appeal of any decision by the Court that fails to approve, in whole or in part, the amounts of requested Service Awards and/or attorneys' fees, costs, and expenses where the Court has otherwise entered a Final Approval Order and Final Judgment shall alter the Effective Date nor will it be grounds for termination of this Settlement Agreement.  Further, the Effective Date shall not be altered, precluded, or delayed in the event that an appeal is filed, with the sole issues on appeal being the award of attorneys' fees, costs, and/or expenses to Class Counsel and/or Service Award.

If the Court declines to approve, in whole or in part, the requested Service Award and/or attorneys' fees, costs, and expenses in the amount set forth above, or at all, the remaining provisions of this Settlement Agreement will remain in full force and effect. The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount of attorneys' fees or costs or Service Awards.

9.3.   Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Financial Institution Plaintiffs' counsel of record.

## **TERMINATION**

10.1.   This Settlement is void if it does not receive preliminary and/or final approval from the Court.

10.2.   If Class Counsel notify Wawa that the percentage of Class Members timely and validly excluding themselves from the Settlement Class equals or exceeds a threshold percentage of Settlement Class Members or the Class Members excluding themselves from the Settlement Class issued a number of Impacted Cards that equals or exceeds a threshold of Impacted Cards (the "Exclusion Thresholds"), where such Exclusion Thresholds are set forth in a supplemental agreement signed by the Parties and incorporated into this Agreement ("Supplemental Agreement"), Wawa may terminate this Agreement within fifteen (15) days after receipt of such notice. Wawa shall give written notice to Class Counsel to invoke rights under this Paragraph to terminate the Agreement.

The Parties intend that the Supplemental Agreement shall be specifically disclosed to the Court and offered for *in camera* inspection by the Court at or prior to entry of the Preliminary Approval Order, but, subject to the Court's approval, it shall not be filed with the Court before the expiration of the Exclusion Deadline unless ordered otherwise by the Court. The Parties shall keep the Exclusion Thresholds confidential before the Exclusion Deadline. In the event that the Court directs that the Supplemental Agreement be filed prior to the Exclusion Deadline, no Party shall have any right to any relief by reason of such disclosure.

10.3.   If void, the provisions of this Settlement Agreement will be deemed to have no effect, and the Parties shall be deemed to be in the same litigation position they were in before agreeing to mediation.

10.4.   Defendant shall not solicit, suggest, or encourage Settlement Class Members, either directly or indirectly, to exclude themselves from the Settlement Class.

10.5.   Financial Institution Plaintiffs may terminate this Agreement if the Parties discover that there are more than 35 million Impacted Cards issued by the Settlement Class or that there are more than 7,000 Settlement Class Members. Within fifteen (15) days of confirmation of the number of Class Members, Financial Institution Plaintiffs shall provide written notice to Wawa of their election to terminate this Agreement.

10.6.   If the requirements to terminate the Settlement Agreement set forth in Paragraph 10.2 are met and Wawa provides Class Counsel with notice of its intent to terminate the Settlement Agreement, Class Counsel will have sixty (60) days from the date of such notice for the purposes of communicating with any potential Settlement Class Member that so excluded themselves to attempt to have such Settlement Class Members withdraw their notice of exclusion and remain in the Settlement Class. Such withdrawals shall be effective even if the exclusion is withdrawn after the deadline for exclusion.

10.7.   This Settlement Agreement may be terminated by either Class Counsel or Wawa by serving on counsel for the opposing Party and filing with the Court a written notice of termination within forty-five (45) days (or such longer time as may be agreed between Class Counsel and Wawa) after any of the following occurrences:

a.      Class Counsel and Wawa mutually agree to termination before the Effective Date;

b.      the Court rejects or declines to preliminarily or finally approve the Settlement;

c.      an appellate court affirms the Court's decision not to approve the Settlement;

d.      an appellate court reverses the Final Approval Order and Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand; or

e.      the Court, or any reviewing appellate court, incorporates material terms or provisions into, deletes or strikes material terms or provisions from, the Settlement Agreement;

10.8    In the event of a termination, as provided for in the Settlement, the Settlement shall be considered null and void; all of the Parties' obligations under the Settlement shall cease to be of any force and effect; and any Court orders approving certification of the Settlement

Class and any other orders entered pursuant to this Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion; the Parties shall return to the *status quo ante* in the Litigation, as if the Parties had not entered into this Settlement. In such an event, the fact of this Settlement, its terms, and that Defendants did not oppose certification of any class under the Settlement, shall not be used or cited by any person or entity, including in any contested proceeding relating to certification of any proposed class. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including all defenses to class certification. Further, if Wawa elects to terminate the Settlement pursuant to Paragraph 10.2 or if Financial Institution Plaintiffs elect to terminate the Settlement pursuant to Paragraph 10.5, the Parties agree to conduct good faith settlement discussions during a thirty (30) day period following such notice of termination, including renewed mediation if feasible.

## **NO ADMISSION OF LIABILITY**

11.1. This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to this Agreement:

    a. Shall not be offered or received against Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Defendant with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted in the Litigation or in any other litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of Defendant;

    b. Shall not be offered or received against Defendant as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Defendant;

    c. Shall not be offered or received against Defendant as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against Defendant, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

    d.   Shall not be construed against Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

    e.   Shall not be construed as or received in evidence as an admission, concession or presumption against Financial Institution Plaintiffs or any member of the putative litigation class, including with respect to the merits of their claims, whether the class may be certified, the merits of any defenses asserted by Wawa, or damages, including the amount of damages recoverable under the Litigation.

11.2.    The Parties understand and acknowledge that this Settlement constitutes a compromise and settlement of disputed claims. No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Settlement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever.

## MISCELLANEOUS

12.1.    <u>Confidentiality.</u> Prior to the filing of the Motion for Preliminary Approval, the Parties agree to keep the Settlement's terms and existence strictly confidential unless otherwise required by law or as reasonably determined by Defendant as necessary or appropriate in order to comply with financial reporting and disclosure obligations. The Limitations in this Section 13.1 shall not apply to: (1) communications between Class Counsel and their clients (including Settlement Class Members); (2) any SEC or other contractual or legal disclosure obligations that Wawa may have; (3) Wawa's communications with its employees; (4) the ability of the Parties to communicate with the payment card brands about the Settlement, in order to facilitate notice to the Settlement Class, as provided in the Settlement Agreement; (5) the ability of Wawa to notify its insurers about the Settlement; (6) the ability of the Parties to communicate with necessary third Parties for the purpose of facilitating the administration of the Settlement. The Parties may also disclose the Settlement's terms and existence to its insurers or auditors provided that they agree to maintain such information as confidential. Neither party shall make any oral or written statement about the other party that is intended or reasonably likely to disparage the other party, or otherwise degrade the other party's reputation.

12.2.    <u>Escrow Account Bank.</u> Class Counsel shall select the Escrow Agent which shall hold the Settlement Fund and Fees & Costs Fund exclusively in an interest-bearing account or accounts where the principal will not decrease, including certificates of deposit, a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and

credit of the United States Government. Wawa shall not bear any responsibility for or liability related to the investment of the Escrow Account by the Escrow Account Bank.

12.3. <u>Singular and Plurals.</u> As used in this Settlement, all references to the plural shall also mean the singular and all references to the singular shall also mean the plural whenever the context so indicates.

12.4. <u>Binding Effect.</u> This Settlement shall be binding upon, and inure to the benefit of, the Successors and assigns of the Releasing Parties and Defendants' Released Persons.

12.5. <u>Settlement Class Member Communications.</u> Wawa shall not communicate with any Settlement Class Member about the Settlement during the pendency of the Settlement approval process, including with respect to exclusion from the Settlement Class or the relief being awarded in the Settlement. For purposes of clarity, this provision restricts only communications regarding the Settlement; it does not purport to limit any other communications.

12.6. <u>Cooperation of Parties.</u> The Parties to this Settlement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, defend Court approval, and do all things reasonably necessary to complete and effectuate the Settlement, as described herein. Nothing in this provision is intended to limit any Party's right to terminate the Settlement in accordance with its terms.

12.7. <u>Obligation to Meet and Confer.</u> Before filing any motion in the Court raising a dispute arising out of, or related to, this Settlement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

12.8. <u>Entire Agreement.</u> This Settlement (along with any exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

12.9. <u>Drafting.</u> The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentem*. This Agreement is a collaborative effort of the Parties and their attorneys.

12.10. <u>Modification or Amendment.</u> This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Parties who executed this Agreement or their Successors.

12.11. <u>Waiver.</u> The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of

the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

12.12. <u>Successors</u>. This Agreement shall be binding upon and inure to the benefit of the Successors and assigns of the Parties thereto.

12.13. <u>Survival</u>. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

12.14. <u>No Conflict Intended.</u> Any inconsistency between the headings used in this Settlement and the text of the paragraphs of this Settlement shall be resolved in favor of the text.

12.15. <u>Governing Law.</u> The Settlement shall be construed in accordance with, and be governed by, the laws of the state of Pennsylvania, without regard to the principles thereof regarding choice of law.

12.16. <u>Counterparts.</u> This Settlement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

12.17. <u>Jurisdiction.</u> The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Settlement and shall retain jurisdiction for the purpose of enforcing all terms of the Settlement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and Settlement Administration. As part of its agreement to render services in connection with this Settlement Agreement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

12.18. <u>Notices.</u> All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 253-6307

gary@lcllp.com

Christian Levis
Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601Tel: (215) 399-4770
clevis@lowey.com

Jeannine M. Kenney
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 958-3270
jkenney@hausfeld.com

Mindee J. Reuben
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
1835 Market Street, Suite 2626
Philadelphia, PA 19103
mreuben@litedepalma.com

All notices to Wawa provided for herein, shall be sent by overnight mail and email to:

Gregory T. Parks
Kristin M. Hadgis
**MORGAN LEWIS & BOCKIUS, LLP**
1701 Market Street
Philadelphia, PA 19103
gparks@morganlewis.com
kristin.hadgis@morganlewis.com

Michael Eckhardt
Senior Vice President & General Counsel
Wawa, Inc.
260 W. Baltimore Pike
Wawa, PA 19063
Michael.Eckhardt@wawa.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other

with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

12.19. <u>Authority.</u> Any person executing this Settlement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Settlement to all of the terms and provisions of this Settlement.

DATED: March 3 2023

**ACCEPTED AND AGREED**:

Gary F. Lynch
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
gary@lcllp.com
jamisen@lcllp.com

Mindee J. Reuben
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
1835 Market Street
Suite 2700
Philadelphia, PA 19103
Tel: (267) 314-7980
Fax: (973) 623-0858
mreuben@litedepalma.com

*Liaison Counsel for Financial Institution Plaintiffs*

Christian Levis
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
Fax: (914) 997-0035
clevis@lowey.com
achristina@lowey.com

Jeannine M. Kenney
**HAUSFELD LLP**
325 Chestnut Street #900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-7201
jkenney@hausfeld.com

*Co-Lead Class Counsel for Financial Institution Plaintiffs*

**COUNSEL FOR PLAINTIFFS AND THE SETTLEMENT CLASS**

DocuSign Envelope ID: 63D1A654-228F-48BC-ABCA-98BD836DA465

with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

12.19.  <u>Authority.</u> Any person executing this Settlement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Settlement to all of the terms and provisions of this Settlement.

DATED: March 3 2023

**<u>ACCEPTED AND AGREED</u>**:

Gary F. Lynch
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
gary@lcllp.com
jamisen@lcllp.com

Christian Levis
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
Fax: (914) 997-0035
clevis@lowey.com
achristina@lowey.com

Jeannine M. Kenney
**HAUSFELD LLP**
325 Chestnut Street #900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-7201
jkenney@hausfeld.com

*Co-Lead Class Counsel for Financial Institution Plaintiffs*

Mindee J. Reuben
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
1835 Market Street
Suite 2700
Philadelphia, PA 19103
Tel: (267) 314-7980
Fax: (973) 623-0858
mreuben@litedepalma.com

*Liaison Counsel for Financial Institution Plaintiffs*

**COUNSEL FOR PLAINTIFFS AND THE SETTLEMENT CLASS**

Inspire Federal Credit Union, by:

James M. Merrill
[Name]
[Title] President / CEO

Insight Credit Union, by:

_____

[Name]
[Title]

Greater Cincinnati Credit Union, by:

_____

[Name]
[Title]

**PLAINTIFFS**

Inspire Federal Credit Union, by:

_____
[Name]
[Title]

Insight Credit Union, by:

_Jesse E Dean_____
[Name]   Jesse Dean
[Title]   Chief Risk Officer

Greater Cincinnati Credit Union, by:

_____
[Name]
[Title]

**PLAINTIFFS**

Inspire Federal Credit Union, by:

_____


Insight Credit Union, by:

_____


Greater Cincinnati Credit Union, by:

_____  CONTROLLER

Kathy Johnson, Controller

**PLAINTIFFS**

DocuSign Envelope ID: 63D1A654-278F-48BC-AB64-98BD836DA465

Wawa, Inc., by:

DocuSigned by:

*Eckhardt, Michael*

529D145A1328472

Michael J. Eckhardt
Senior Vice President

**DEFENDANT**

DocuSigned by:

*Gregory T. Parks*

3B3216E417BA4D6

Gregory T. Parks
**MORGAN LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
gparks@morganlewis.com

**COUNSEL FOR DEFENDANT WAWA, INC.**

# EXHIBIT B



## **OUR MISSION**

Lynch Carpenter is a national law firm with a singular mission – to provide a voice to those who have been silenced by the disproportionate powers which too often exist in America. With lawyers based in Pittsburgh, San Diego, Los Angeles, and Chicago, Lynch Carpenter has created an inclusive national community of like-minded legal talent to represent plaintiffs in complex litigation. Lynch Carpenter lawyers have developed strong collaborative working relationships with counsel throughout the nation and have been involved in numerous high-profile multidistrict litigation proceedings, frequently in leadership roles.

The Lynch Carpenter platform is self-made, without reliance upon the legacy of a long-established "repeat player" law firm and is based upon the fundamental principle that input from a broad base of lawyers with diverse backgrounds, working together with mutual respect, will result in the strongest possible organization. The firm strives to provide equal opportunities for promotion and leadership to its attorneys and supporting professionals. Fourteen of the twenty-one Lynch Carpenter attorneys have been appointed to leadership positions in multidistrict or otherwise consolidated litigation, or in class-action matters involving financial fraud (including securities fraud, derivative actions, and lending fraud), data breach, privacy, consumer fraud, breach of contract, labor and employment, antitrust, and civil rights, in federal and state courts throughout the country.

Lynch Carpenter represents a wide variety of clients, including individual consumers and employees, small businesses, non-profits, issue advocacy groups, and governmental entities. Over the past ten years, Lynch Carpenter lawyers emerged as national leaders in data breach and privacy litigation, and in that time have negotiated or contributed to class recoveries totaling more than $250 million in that sector alone. Along the way, the Lynch Carpenter team has generated seminal legal authority in both trial and appellate courts. For example, in 2018, as a direct result of Lynch Carpenter's tenacious appellate advocacy, the Pennsylvania Supreme Court became one of the first state high courts to recognize that a common-law duty of reasonable care applies to the collection and management of sensitive electronically-stored data. This landmark opinion, *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018), paved the way for data breach victims to bring viable negligence claims against companies whose inadequate security practices allow major breach incidents to happen.

In October 2020, *The Legal Intelligencer* named Lynch Carpenter (under its predecessor name) "Litigation Department of the Year" for general litigation in Pennsylvania. In 2021, the firm was named as a finalist for Litigation Department of the Year in the Pennsylvania region by *The American Lawyer*. In 2022, the firm was named as a finalist for Privacy/Data Breach firm of the year by *ALM*. In 2023, the firm was named as a Pennsylvania Powerhouse by *Law360*. Several of its partners co-authored updates to *Class Actions: The Law of 50 States*, published by Law Journal Press, from 2021 to 2023. Lynch Carpenter's attorneys are recipients of numerous additional individual awards, as described in more detail in the individual biographies on the firm's website.

Lynch Carpenter continues to grow and establish itself as a leader in representing plaintiffs in complex litigation throughout the country. The firm remains committed to developing its younger lawyers and providing them with opportunities for professional growth, both inside and outside of the firm. In leading major complex litigation, the firm draws strength from its decentralized management structure, which fosters collaboration within the firm and enables the assembly of internal litigation teams for each case and epitomizes the synergistic benefits which result from a group of good lawyers working together to do good things.

<u>**REPRESENTATIVE AND NOTABLE CASES**</u>

<u>**PRIVACY & DATA BREACH LITIGATION**</u>

*In re: MOVEit Customer Data Security Breach Litig.*, MDL No. 3083 (D. Mass). In January 2024, Judge Burroughs appointed Gary Lynch as Co-Lead Counsel in this sprawling multi-district litigation action arising from an exploited file-sharing software vulnerability, which led to thousands of data breaches that compromised PII and PHI of nearly 80 million individuals. The defendants' motions for lack of jurisdiction are currently pending.

*Hasson v. Comcast Cable Communications, LLC.*, Case No. 2:23-cv-05039 (E.D. Pa.). In May 2024, Judge Younge appointed Gary Lynch as Co-Lead counsel in this consolidated action involving a data breach that impacted the personal information of 36 million individuals. Defendants' motions to dismiss are currently pending.

*Hulewat v. Medical Management Resource Group*, No. 2:24-cv-00377 (D. Ariz.). In July 2024, Judge Humetewa appointed Patrick Donathen to the Plaintiffs' Executive Committee in this consolidated action involving a data breach that impacted the personal information of approximately 2.3 million individuals. The plaintiffs recently filed their consolidated amended complaint in August 2024.

*In Re: Perry Johnson & Associates Medical Transcription Data Breach Litig.*, MDL No. 3096 (E.D.N.Y.). In June 2024, Judge Kovner appointed Connor Hayes as the Federal-State Court Liaison in this multidistrict litigation arising from a data breach at a medical transcription services company that impacted the personal and protected health information of approximately 13.3 million individuals.

*In re TikTok, Inc., Consumer Privacy Litig.*, No. 20-cv-4699 (MDL No. 2948) (N.D. Ill.). Judge Lee appointed Katrina Carroll as Co-lead Counsel in this multidistrict litigation alleging that one of the world's biggest social media platforms captured, collected, and transmitted personal data from TikTok users and their devices without their consent and/or knowledge, including private information and biometric information within the meaning of the Illinois Biometric Information Privacy Act. In August 2022, a settlement for $92 million received final approval.

*Kolstedt v. TMX Finance Corporate Services, Inc.*, No. 4:23-cv-00076 (S.D. Ga.). In September 2023, Judge Baker appointed Kelly Iverson as Co-Lead Counsel in this consolidated litigation involving a data breach impacting 5 million consumers. The defendant's motion to dismiss is currently pending.

*Miller et al. v. NextGen Healthcare Inc.*, No. 1:23-cv-02043 (N.D. Ga.). In September 2023, Judge Thrash appointed Gary Lynch to the Plaintiffs' Steering Committee in this consolidated matter related to a data breach at an electronic health record provider which compromised the information of over 1 million patients. The court recently denied in part and granted in part the defendant's motion to dismiss.

*In re Samsung Customer Data Security Breach Litig.*, MDL No. 3055 (D.N.J.). In March 2023, Judge O'Hearn appointed Kelly Iverson to the Plaintiffs' Executive Committee in this MDL relating to a data breach at Samsung that impacted the PII of millions of the defendant's current and former customers. The defendant's motion to dismiss the fourth consolidated amended complaint is currently pending.

*In re Wawa, Inc. Data Security Litig.*, No. 2:19-cv-6019 (E.D. Pa.). Gary Lynch was appointed Co-Lead Counsel for a putative class of financial institution plaintiffs in consolidated actions brought against Wawa, Inc. arising out of a 2019 payment card data breach involving the convenience store's point-of- sale systems. A consolidated amended complaint was filed in July 2020, and in 2021 the district court denied the defendant's motion to dismiss the primary claims. In March 2023, the parties negotiated a proposed settlement that will provide up to $37 million in relief for the class; a final approval hearing is anticipated in the final quarter of 2024.

*In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL No. 2800 (N.D. Ga.). The Equifax data breach compromised the nation's entire credit reporting system. More than 400 lawsuits filed by consumers and financial institutions were consolidated in the MDL. Gary Lynch was appointed Co-Lead Counsel for financial institution plaintiffs. After significant dispositive motions practice and initial rounds of discovery, the parties negotiated a settlement of the financial institution class action that provides up to $7.75 million in cash benefits, plus additional injunctive relief. The court granted final approval in October 2020.

*In re Blackbaud, Inc. Customer Data Breach Litig.*, MDL No. 2972 (D.S.C.). In 2020, data security company Blackbaud, Inc. was target for a ransomware attack. In the litigation that followed, brought by Blackbaud's customers, Kelly Iverson was appointed to the Plaintiffs' Steering Committee. On October 19, 2021, the Honorable J. Michelle Childs denied Blackbaud's motion to dismiss Plaintiffs' negligence and gross negligence claims. Plaintiffs are currently continuing their efforts to obtain class certification.

*Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022). Lynch Carpenter won reversal of a district court's summary judgment for defendants in a case regarding applicability of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 PA. CONS. STAT. 5702 *et seq*. The Third Circuit rejected the defendants' attempt to establish a "direct party" exception to WESCA, which would have undermined the two-party consent requirement of the statute. The Third Circuit also confirmed that defendants bear the burden of proving a prior consent defense, and that the location of electronic interception of website communications under WESCA is at the point where software re-routes transmissions from a user's device, not where the website communications are ultimately received. The remanded case remains in litigation in the Western District of Pennsylvania.

*In re Marriott International Customer Data Security Breach Litig.*, MDL No. 2879 (D. Md.). Lynch Carpenter was appointed to the Plaintiffs' Steering Committee in this multidistrict litigation related to the data breach involving Starwood guest information dating back to at least 2014. The MDL includes more than 100 cases and is in pretrial litigation. The district court certified several bellwether classes in May 2022 and the Fourth Circuit granted the defendant's Rule 23(f) appeal. On remand, the case was re-certified by the district court and is, again, on appeal to the Fourth Circuit.

*Baker v. ParkMobile, LLC*, No. 1:21-cv-02182 (N.D. Ga.). This case involved a data breach of ParkMobile's servers, impacting personal information of 21 million consumers. Nicholas Colella was appointed to the Plaintiffs' Steering Committee. Judge Steve Jones denied ParkMobile's motion to dismiss the negligence, negligence per se, and state consumer protection claims. The parties are preparing a proposed class settlement.

*In re Home Depot Customer Data Breach Litig.*, MDL 2583 (N.D. Ga.). In this multidistrict litigation, Lynch Carpenter attorneys represented financial institutions in litigation related to the major data breach at the retailer which continued for almost six months in 2014 and resulted in the compromise of approximately 56 million payment card accounts. Lynch Carpenter was appointed by Judge Thrash to be one of three Lead Counsel managing the financial institution track of the litigation. In September 2017, the Court granted final approval to a

comprehensive class settlement that provides over $27 million in relief to the financial institution class.

***First Choice Federal Credit Union v. The Wendy's Company et al.***, No. 2:16-cv-0506, (W.D. Pa.). This class action arose out of malware installed on the point-of-sale systems of Wendy's franchised restaurants for the purpose of capturing and ex-filtrating customer payment card data. Approximately 18 million payment cards were exposed. The United States District Court for the Western District of Pennsylvania consolidated several proposed class actions and appointed Lynch Carpenter as Co-lead Counsel on behalf of the plaintiff financial institutions. In November 2018, after three rounds of in- person mediation, Wendy's agreed to pay $50 million into a non-reversionary fund and to adopt and/or maintain certain reasonable safeguards to manage its data security risks. When the settlement received final approval in November 2019, the Honorable Maureen P. Kelly noted Class Counsel's "national reputation," "significant experience in these types of class actions and in data breach litigation," and "high level of skill and efficiency." Judge Kelly further explained:

> This case has gone on for three and a half years…This was a very involved case and everyone brought to the table an incredible wealth of knowledge, was always prepared, really was thorough and professional in everything that was provided to the Court. And as involved as this case was, if every case I had was as well organized and professionally presented as this case has been, my life would be much easier… The briefs I got in this case and any filings were just so well-done and detailed. And my law clerks and I have discussed that a number of times. I want to thank counsel for the way you have conducted yourselves and the way you've all presented this case.

***Dittman et al. v. UPMC d/b/a The University of Pittsburgh Medical Center and UPMC McKeesport***, Allegheny Cty., Pa. No. GD-14-003285; 196 A.3d 1036 (Pa. 2018). Lynch Carpenter represented several employees of the health care group UPMC in a class action stemming from a breach of UPMC's personnel files. On November 21, 2018, the Supreme Court of Pennsylvania issued a landmark decision, reversing two lower courts, regarding the viability of common law negligence claims in the wake of a data breach. The Court found that UPMC engaged in affirmative conduct by collecting and storing employee data, and that general principles of negligence support holding actors to "a duty to others to exercise the care of a reasonable man to protect [others] against an unreasonable risk of harm to them arising out of the act." As to the economic loss doctrine, the Court agreed with Plaintiffs' interpretation of Pennsylvania legal precedent on the issue, finding that the question of whether the economic loss doctrine applies necessarily turns on the "source of the duty alleged," and, accordingly, a plaintiff may seek pecuniary damages under a negligence theory if the duty sought to be enforced arises independently of any contractual relationship between the parties. After remand to the trial court, additional motions practice, and initiating discovery, the parties reached a multimillion-dollar settlement that received final approval in December 2021.

## Consumer Protection/Products Liability

***In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litig.***, MDL No. 3014 (W.D. Pa.). In February 2022, Kelly Iverson was appointed as one of four Co-Lead Counsel from a pool of 75 applicants. The MDL includes over 300 actions involving allegations regarding the potentially harmful degradation of sound abatement foam on recalled continuous positive airway pressure (CPAP) machines and the manufacturers' conduct in marketing and ultimate recall of the machines. The parties negotiated a proposed $479 million resolution of the economic loss claims in the case, which received final approval in April 2024. The parties further reached a $1.1 million dollar settlement to resolve the personal injury and medical monitoring claims in April 2024.

*In re East Palestine Train Derailment*, No. 4:23-cv-00242 (N.D. Ohio). The court appointed Kelly K. Iverson to the Plaintiffs' Steering Committee in this consolidated action arising from the derailment of a Norfolk Southern train and subsequent release of toxic chemicals in East Palestine, Ohio. The parties reached a $600 million settlement which received preliminary approval in May 2024.

*In re Robinhood Outage Litig.*, No. 20-cv-1626 (N.D. Cal.). In July 2020, Jamisen Etzel was appointed to the Executive Committee overseeing consolidated actions brought by consumers who sustained losses when the trading application Robinhood suffered severe service outages during a period of intense market volatility. A class settlement received final approval in July 2023 for $9.9 million.

*Luca v. Wyndham Hotel Group, LLC*, No. 2:16-cv-746 (W.D. Pa.). Lynch Carpenter attorneys were Co-Lead Counsel in a class action against the Wyndham hotel companies for violations of New Jersey consumer protection statutes. Plaintiffs alleged that Wyndham's websites deceptively masked the resort fees charged at certain hotels and forced patrons to agree to illegal terms and conditions. In 2017, plaintiffs defeated a motion to dismiss filed by two of the primary operating subsidiaries. A class settlement worth up to $7.6 million was reached in 2019 and approved later that year.

*Mednick v. Precor, Inc.*, No. 14-cv-03624 (N.D. Ill.): Lynch Carpenter partner Katrina Carroll served as court-appointed Co-lead Counsel in this products liability matter concerning the heart rate monitoring feature on Precor fitness machines. Due to Ms. Carroll's efforts, the plaintiffs defeated a contested class certification motion and obtained class certification for a multi-state consumer class. Ms. Carroll was instrumental in negotiating a class settlement providing meaningful relief for class members, for which the Court issued final approval in 2019.

*Morrow v. Ann Inc.*, No. 16-cv-3340 (S.D.N.Y.). Lynch Carpenter attorneys were Co-Class Counsel in a case alleging deceptive pricing practices by a major national retail chain. After plaintiffs overcame a motion to dismiss, the case settled for $6.1 million worth of class benefits. The settlement was approved in April 2018.

*In re Rust-Oleum Restore Marketing, Sales Practices and Prods. Liab. Litig.*, No. 1:15-cv- 1364 (N.D. Ill.): In this sprawling products liability MDL relating to defective deck resurfacing products, Katrina Carroll was instrumental in negotiating a $9.3 million settlement providing meaningful relief to consumers, which received final approval in March of 2017 by the Honorable Amy J. St. Eve of the United States District Court for the Northern District of Illinois, now a sitting Judge of the Court of Appeals for the Seventh Circuit.

## Financial Fraud, Lending Practices, and Securities

*In re FedLoan Student Loan Servicing Litig.*, MDL No. 2833 (E.D. Pa.). Lynch Carpenter serves as court-appointed Co-Lead Counsel on behalf of student loan borrowers and federal grant recipients in this multidistrict litigation. The claims relate to widespread and systemic failures on the part of a student loan servicer and the U.S. Department of Education to adequately service the programs and advise its participant. A consolidated complaint was filed in November 2019. A motion to dismiss is fully briefed and currently awaiting resolution by the Court.

*CitiMortgage SCRA Litig.*, (S.D.N.Y.). Lynch Carpenter attorneys were Tri-Lead Counsel in this class action against CitiMortgage on behalf of Sergeant Jorge Rodriguez in the Southern District of New York. This case alleges that CitiMortgage improperly foreclosed upon Mr. Rodriguez's home (and the homes of similarly situated individuals) while he was serving in Iraq, in violation of the Servicemembers Civil Relief Act. The case settled and received final approval in October 2015, securing $38.2 million for members of our military service.

*In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Secondary Mortgage Loan Litig.*, (W.D. Pa./3d Cir.). Lynch Carpenter attorneys were Co-Lead Class Counsel in this national litigation on behalf of second mortgage borrowers under the Real Estate Settlement Procedures Act. The class was certified by the district court and affirmed by the Third Circuit, 795 F.3d 380 (2015). A class settlement was finalized in early 2017 and obtained a total recovery of $24 million.

*In re Tenet Healthcare Corp. Securities Litig.*, No. 02-cv-8462 (C.D. Cal.). Prior to joining the firm, Katrina Carroll represented the State of New Jersey's Division of Investment in this securities class action against Tenet Healthcare and its outside auditor, KPMG, related to false and misleading public statements those entities made between 2000 and 2002 about Tenet's financial health. Katrina played a large role in drafting motions *in limine* briefing issues regarding the admissibility of plaintiff's expert witness report. Tenet settled in 2006 for $215 million, and KPMG settled in 2008 for $65 million.

*In re Motorola Securities Litig.*, No. 03-cv-287 (N.D. Ill.). Katrina Carroll represented the State of New Jersey's Division of Investment in this securities class action against Motorola, stemming from misrepresentations made by the company regarding a $2 billion loan it made to a Turkish entity that was not repaid. The case settled a few days before trial for $190 million.

*Figueroa v. Capital One*, No. 18-cv-692 (S.D. Cal.). Todd Carpenter and Eddie Kim served as Class Counsel in a class action challenging the unlawful assessment of multiple ATM fees in contravention of the customer account agreement, which resulted in a $13 million settlement.

*Schertzer v. Bank of America*, No. 19-cv-264 (S.D. Cal.). Lynch Carpenter attorneys represent bank customers who were assessed out-of-network ATM fees for balance inquiries transpiring from deceptive ATM prompts utilized by independent ATM operators Cardtronics and FCTI. Plaintiffs prevailed on challenges to the pleadings. An appeal is currently pending in the 9th Circuit regarding class certification.

*Bingham v. Acorns Grow*, 30-2019-0150842 (Cal. Sup. Ct. Orange Cnty.). Eddie Kim served as Class Counsel in a class action on behalf of customers of a financial mobile app that automatically transferred "spare change" from each purchase using debit cards issued by customers' banks into an Acorns Grow investment account. This action challenged the app's failure to prevent overdrafts of customers' checking accounts as a result of the automated transfers and the resultant assessment of overdraft fees. A $2.5 million settlement received final approval in September 2022.

## COVID-19 Closures Litigation

*Hickey v. Univ. of Pittsburgh*, 8 F.4th 301 (3d Cir. 2023). Gary Lynch argued in front of the Third Circuit after motions to dismiss were granted in favor of the University of Pittsburgh and Temple University. The District Courts held that students could not bring a breach of implied contract under Pennsylvania law, and must point to specific promises in writing. The Third Circuit reversed and remanded, adopting Mr. Lynch's argument that nothing in Pennsylvania case law suggests implied contract claims brought by students are barred, but rather, can be inferred based on course of conduct and marketing material received by the students that tout the benefits of campus. The Third Circuit also reversed the District Courts' dismissal of unjust enrichment in the alternative. The cases are currently pending in district courts.

*Ramey v. The Pennsylvania State University*, No. 2:20-cv-00753 (W.D. Pa.). Lynch Carpenter serves as co-lead counsel for students enrolled at Penn State University during the Spring 2020 semester, who received only remote

online only instruction and lost access to most campus facilities during the Covid-19 pandemic. In September 2024, the parties submitted a proposed $17 million class settlement for approximately 72,000 class members, which, if approved, will be the largest settlement in the nation for claims of this type.

***Espejo et al. v. Cornell Univ.***, No. 3:20-cv-00467 (N.D.N.Y.). Lynch Carpenter represented students of Cornell University who paid for in-person learning, but received remote online only education and services for half of the Spring 2020 semester following the Covid-19 pandemic. The parties reached a settlement of $3 million class action settlement, which received final approval in December 2023.

***Carpey v. Board of Regents of the Univ. of Colorado***, No.: 2020cv31409 (Colo. Dist. Ct., Denver Cnty.). Lynch Carpenter represented students of the University of Colorado who paid for in-person learning, but received remote online only education and services for half of the Spring 2020 semester following the Covid-19 pandemic. The parties reached a settlement of $5 million for the class, which was approved in July 2023.

***Figueroa v. Point Park Univ.***, No. 2:20-cv-01484 (W.D. Pa.). Lynch Carpenter represented students of Point Park University who paid for in-person learning, but received remote online only education and services for half of the Spring 2020 semester following the Covid-19 pandemic. After overcoming a motion to dismiss breach of implied contract and unjust enrichment claims, the parties reached a settlement of $1.25 million for the class, which received final approval in December 2023.

***Smith v. Univ. of Pennsylvania***, No. 2:20c-cv-2086 (E.D. Pa.). Lynch Carpenter was appointed co-lead counsel to represent students who paid for in-person learning but received remote online only education and services for half of the Spring 2020 semester following the Covid-19 pandemic. Plaintiffs prevailed on a motion to dismiss as to the fees paid for the semester. The parties reached a settlement of $4.5 million for the class, which received final approval in January 2023.

### WAGE AND HOUR & EMPLOYMENT DISCRIMINATION LITIGATION

***Genesis Healthcare v. Symczyk***, No. 11-1059 (U.S. Supreme Court). Gary Lynch served as Counsel of Record before the United States Supreme Court in an appeal addressing the application of mootness principles in a putative collective action filed under Section 216(b) of the Fair Labor Standards Act. When defendant served the plaintiff with a Rule 68 offer of judgment for "make whole" relief, the district court dismissed the case as moot. Gary Lynch successfully argued the appeal in the United States Court of Appeals for the Third Circuit, which held that the FLSA collective action did not become moot upon the plaintiff's receipt of a Rule 68 offer of judgment for full satisfaction of her individual claim. The Supreme Court reversed in a 5-4 opinion, with Justice Kagan writing a strong dissent on behalf of our client—a position which was subsequently adopted by the majority of the Court in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Plaintiff's position before the Supreme Court was supported by the United States as Amicus Curiae.

***Verma v. 3001 Castor Inc.***, No. 2:13-cv-03034 (E.D. Pa.). As Co-Class Counsel, Lynch Carpenter attorneys won a $4.59 million jury verdict in 2018 for misclassified workers at a Philadelphia nightclub. The claims were brought under the FLSA and Pennsylvania Minimum Wage Act. The trial verdict was fully affirmed by the Third Circuit in August 2019.

***Reynolds v. Turning Point Holding Co., et. al.***, Case No. 2:19-cv-01935 (E.D. Pa.). Lynch Carpenter served as co-lead counsel in this wage and hour class action and collective action that alleged that the defendants failed to properly provide complete and accurate tip credit notification to their tipped employees in violation of the FLSA

and similar state wage and hour laws. Following extensive discovery and motions practice, the parties reached a $799,500 settlement on behalf of classes consisting of Pennsylvania and New Jersey employees. The settlement received final approval on March 3, 2023.

***Copley v. Evolution Well Services, LLC***, No. 2:20-cv-01442 (W.D. Pa.). In February 2022, Lynch Carpenter obtained collective certification under the FLSA of several hundred "hitch employees." These employees spent hours per week travelling to remote job sites, time for which they were unpaid. In July 2023, Judge Wiegand finally approved a $2.55 million dollar settlement for the FLSA collective, as well as Pennsylvania and Ohio state classes.

***Wintjen v. Denny's, Inc. et al.***, No. 2:19-cv-00069 (W.D. Pa). On November 18, 2021, Judge Wiegand of the Western District of Pennsylvania granted class and conditional certification and appointed Lynch Carpenter LLP as Class Counsel. The class encompasses all tipped employees within the Commonwealth of Pennsylvania and involves Denny's failure to comply with the tip credit notification requirements as well as the 80/20 rule regarding sidework.

## ANTITRUST

***In re Railway Industry Employee No-Poach Antitrust Litig.***, MDL No. 2850 (W.D. Pa.), Chief Judge Joy Flowers Conti appointed Lynch Carpenter partner Kelly K. Iverson as Plaintiffs' Liaison Counsel on behalf of the class of employees who alleged the defendants and their co-conspirators entered into unlawful agreements to reduce and eliminate competition among them for employees and to suppress the compensation of those employees. The two defendants agreed to class settlements worth a combined $48.95 million, and final approval was granted in August 2020.

***In re Blue Cross Blue Shield Antitrust Litig.***, MDL No. 2406 (N.D. Ala.). Lynch Carpenter attorneys represented healthcare subscriber plaintiffs in four states in this nationwide class action challenging the anti-competitive practices of Blue Cross/Blue Shield's nationwide network of local insurers who do not compete with each other based on geographic boundaries. A $2.7 billion settlement received final approval in August 2022. An appeal of final approval ensued, and the Eleventh Circuit affirmed the judgment approving the settlement agreement in October 2023.

# LYNCH
# CARPENTER



1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
T. (412) 322-9243
gary@lcllp.com

**Practice Emphasis**

Data Breach
Class Actions
Multidistrict Litigation
Consumer Protection
Financial Fraud
Employment Law

**Education**

University of Pittsburgh
School of Law, J.D., 1989

Editor, University of
Pittsburgh Law Review,
1988-1989

The Pennsylvania State
University, B.S., 1986

Northwestern University
School of Professional
Studies, Certificate in
Mediation Skills Training,
2018

## GARY F. LYNCH | PARTNER

Gary Lynch prosecutes class and complex litigation on behalf of plaintiffs and has extensive experience in data breach and privacy litigation, consumer protection, and employment law. Courts have consistently appointed Gary to leadership positions in high profile class actions and coordinated proceedings, including, most recently, as Co-Lead Counsel representing consumers nationwide in *Hasson v. Comcast Cable Communications, LLC*. Gary has previously been appointed as Co-Lead Counsel representing plaintiffs in numerous large consolidated/MDL class actions, such as, for example: *In re MOVEit Customer Data Security Breach Litigation*; *In re Equifax, Inc. Customer Data Security Breach Litigation*; *First Choice Federal Credit Union v. The Wendy's Company*; *In re: The Home Depot, Inc. Customer Data Security Breach Litigation*; *In re: Wawa, Inc. Data Security Litigation*; and *In re: FedLoan Student Loan Servicing Litigation*. Additionally, Gary has been appointed as a member of the Plaintiffs' Steering Committee representing consumer plaintiffs in *In re Marriott International Customer Data Security Breach Litigation*, as well as numerous other cases, as set forth in his firm's resume, and on the firm's website: LynchCarpenter.com.

In 2018, Gary successfully argued before the Pennsylvania Supreme Court in *Dittman et al. v. UPMC*, where the Court issued its landmark decision recognizing that companies owe a general duty of care to protect against data breaches and clarifying the parameters of the economic loss doctrine in the data breach context, as well as any other context where an independent legal duty is sought to be enforced for purely economic damages. In 2012, Gary served as Counsel of Record before the United States Supreme Court in the case of *Genesis HealthCare Corp. v. Symczyk*, addressing the issue of whether Rule 68 of the Federal Rules of Civil Procedure can be used to moot a Fair Labor Standards Act ("FLSA") collective action. In addition to the foregoing cases before the United States and Pennsylvania highest courts, Gary has successfully argued many federal appeals, often-times addressing significant issues of first impression, including in *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022) (recognizing cause of action under Pennsylvania's wiretap law for third-party's recording of website visitor's browsing activity) and *Hickey v. Univ. of Pittsburgh*, No. 21-2013, 2023 WL 5159578 (3d Cir. Aug. 11, 2023) (recognizing implied contract claim by students against universities in the wake of the Covid-19 campus shutdowns).

**Admissions**

Pennsylvania, 1989
New York, 2018

U.S. Supreme Court, 2012

First Circuit, 2012
Second Circuit, 2015
Third Circuit, 1994
Fourth Circuit, 2017
Fifth Circuit, 2013
Sixth Circuit, 2011
Seventh Circuit, 2010
Ninth Circuit, 2007
Tenth Circuit, 2022
Eleventh Circuit, 2002

W.D. Pa., 1989
M.D. Pa., 2006
E.D. Pa., 2007
N.D. Oh., 2000
S.D. Oh., 2006
C.D. Ill., 2010
N.D. Ill., 2010
E.D. Mich., 2010
D. Md., 2011
W.D.N.Y., 2011
W.D. Mich., 2013
E.D. Wisc., 2016
E.D. Mo., 2016
D. Colo., 2017
S.D.N.Y., 2020
N.D.N.Y., 2020

*For more information, visit:*
www.lynchcarpenter.com
*and* www.garylynchlaw.com.

In addition to his appellate advocacy and successful leadership of multi-district and consolidated litigation, Gary also has experience in taking class actions to trial. In 2018, in *Verma v. 3001 Castor Inc.* (E.D. Pa.), Gary served as co-lead trial counsel and obtained a $4.59 million jury verdict on behalf of a class of misclassified workers at a Philadelphia nightclub for claims under the FLSA and Pennsylvania Minimum Wage Act in a trial over which Senior Judge Anita B. Brody presided.

In 2019, Gary was selected by *The Legal Intelligencer* as a finalist for its Attorney of the Year award.

In 2020, Gary's firm was selected by *The Legal Intelligencer* as the Litigation Department of the Year. In 2021, the firm was named as a finalist for Litigation Department of the Year in the Pennsylvania region by *The American Lawyer*. In 2022, the firm was named as a finalist for Privacy/Data Breach firm of the year by *ALM.* In 2023, the firm was named as a Pennsylvania Powerhouse by *Law360.* Gary, along with two of his partners, also co-authored the current edition of *Class Actions: The Law of 50 States*, published by Law Journal Press.

With over thirty-four years of experience, Gary has developed a distinguished reputation with his peers and the judiciary for his ability to work efficiently and cooperatively with co-counsel, and professionally with opposing counsel in class action litigation. To this end, during a 2019 Fairness Hearing in a data breach case, Hon. Maureen P. Kelly of the Western District of Pennsylvania recognized:

> And as involved as this case was, if every case I had was as well-organized and professionally presented as this case has been, my life would be much easier… The briefs I got in this case and any filings were just so well-done and detailed. And my law clerks and I have discussed that a number of times. So, I want to thank counsel for the way you have conducted yourselves and the way you've all presented this case.

> And, also, the Court notes that both class counsel for the plaintiffs, as well as counsel for the defendants, have very significant experience in these types of class actions and in data breach litigation. On adequacy, class counsel's well-qualified and, clearly, adequate to represent the plaintiffs.

Hon. Maureen P. Kelly, *First Choice Federal Credit Union v. The Wendy's Company*, (W.D. Pa. Nov. 6, 2019).

## Awards & Honors

- Attorney of the Year Finalist, *The Legal Intelligencer*, 2019
- *Super Lawyer*® for Class Action and Mass Torts, 2014 – Present
- *AV Preeminent*® Peer Review Rated by Martindale-Hubbell
- U.S. District Court for the W.D. Pa., *Local Rules Advisory Committee Member*
- Fellow of the College of Labor & Employment Lawyers, 2021
- Fellow of the American Bar Foundation, 2022

## Representative Speaking Engagements

**Co-Presenter (w/ Jamisen Etzel of Lynch Carpenter):** Pennsylvania Bar Institute ("PBI"), Employment Law Institute West (November 2019 – Pittsburgh). Topic: Cybersecurity of Employee Data, including discussion of the Pennsylvania Supreme Court's opinion in *Dittman v. UPMC* and its effect on employers' duty to safeguard employee data.

**Panelist:** Harris Martin's Equifax Data Breach Litigation Conference (November 2017 – Atlanta). Topic: Counseling financial institutions and other businesses in the wake of the Equifax breach.

**Panelist:** Current Development and Strategies for Confronting Cyber and Data Security Risks in 2017: ABA Annual Meeting Section of Labor and Employment Law (August 2017 – New York). Topic: The theories of liability and damages in data breach litigation.

**Panelist:** PBI's Advanced Cyber Security Law (June 2016 – Pittsburgh). Topic: The composition of plaintiff classes in data breach litigation, as well as the theories of liability and defenses, including the economic loss doctrine and challenges to Article III standing.

**Panelist:** New Jersey Association for Justice – Boardwalk Seminar (April 2015 – Atlantic City). Topic: Data breach and cybersecurity.

**Panelist:** PBI's Cybersecurity Law (August 2014 – Pittsburgh). Topic: The Target data breach and its impact on breach litigation generally.

## Representative Experience

**Co-Lead Counsel**, *In re MOVEit Customer Data Security Breach Litigation*, No. 1:23-md-3083 (D. Mass.) – Gary serves as Co-Lead Counsel in this MDL related to an array of data breaches that involved a file-sharing software vulnerability and impacted thousands of organizations and tens of millions of victims.

**Co-Lead Counsel**, *In re: Zillow Group, Inc. Session Replay Software Litig.*, No. 2:22-cv-1282 (W.D. Wash.) – Gary serves as Co-Lead Counsel on behalf of visitors to Zillow's website who allege they were illegally wiretapped by software operating on the page. An amended complaint was filed in April 2023.

**Co-Lead Counsel**, *Dusterhoft v. OneTouchPoint, Inc.*, No. 2:22-cv-00882 (E.D. Wis.) – Gary serves as Co-Lead Counsel in this consolidated matter related to a data breach that compromised the PII and PHI of over 2.5 million individuals. A consolidated amended complaint was filed in November 2022.

**Co-Lead Counsel**, *In re: Wawa, Inc. Data Security Litig.*, No. 2:19-cv-06019-GEKP (E.D. Pa.) – The Court appointed Gary Co-Lead Counsel in a group of consolidated cases brought by financial institutions against the Wawa convenience store chain. In March 2023, the parties negotiated a proposed settlement that will provide up to $37 million in relief for the class; a final approval hearing is anticipated in the first quarter of 2024.

**Co-Lead Counsel**, *In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL No. 2800 (N.D. Ga.) – In February 2018, in a heavily contested leadership fight, Chief United States District Judge Thomas W. Thrash, Jr. appointed Gary to co-lead a leadership structure consisting of Co-Lead Counsel, an eight-member steering committee, and co-liaison counsel in multidistrict litigation involving the largest data breach in history.

**Co-Lead Counsel**, *First Choice Federal Credit Union v. The Wendy's Company et al.*, No. 2:16-cv-0506 (W.D. Pa.) – The Court appointed Gary Co-Lead Counsel in a group of consolidated cases brought by financial institutions against the Wendy's fast-food chain in the aftermath of a late 2015 data breach that exposed customers' credit card information. Magistrate Judge Maureen P. Kelly recommended the denial of Wendy's motion to dismiss in February 2017, and District Judge Nora Barry Fischer adopted that report and recommendation in March 2017. The case ultimately settled for $50 million, and received final approval in 2019.

**Co-Lead Counsel**, *In re: The Home Depot, Inc. Customer Data Security Breach Litig.*, MDL No. 2583 (N.D. Ga.) – Gary served as Co-Lead Counsel in this landmark data breach case, which found that retailers have a duty to not "turn a blind eye to the ever-increasing risk of cyberattacks." In September 2017, the Court granted final approval to a comprehensive settlement that provided over $27 million in relief to the class.

**Lead Counsel**, *Dittman et al. v. UPMC d/b/a The University of Pittsburgh Medical Center and UPMC McKeesport*, GD-14-003285 (Allegheny Cty., Pa.). Gary represented employees in a class action stemming from a breach of UPMC's personnel files. Hundreds of employee files were compromised, and fraudulent tax returns were filed using the stolen data. On November 21, 2018, the Pennsylvania Supreme Court found that employers have a duty to exercise reasonable care to safeguard employees' sensitive data and that employees can bring claims for negligence when their employer's internet-accessible computer systems are breached. After remand to the trial court, additional motions practice, and initiating discovery, the parties reached a multimillion-dollar settlement that received final approval in December 2021.

**Co-Lead Counsel**, *In re FedLoan Student Loan Servicing Litig.*, MDL No. 2833 (E.D. Pa.). Judge Jones appointed Gary Co-Lead Counsel in this multidistrict litigation related to the country's largest student loan servicer's mismanagement of student loan accounts.

**Co-Class Counsel/Trial Counsel**, *Verma v. 3001 Castor Inc.*, No. 2:13-cv-03034 (E.D. Pa.) – In 2018, Gary, as co-lead trial counsel, received a $4.59 million jury verdict over which Senior Judge Anita B. Brody presided. Gary represented a class of misclassified workers at a Philadelphia nightclub for claims under the FLSA and Pennsylvania Minimum Wage Act. The Third Circuit affirmed the verdict in full after a post-judgment appeal.

**Lead Executive Committee**, *Haag v. Janney Montgomery Scott*, No. 2:06-cv-05634 (E.D. Pa.) – Gary served as a member of the Plaintiffs' Executive Committee, which led the litigation, in this wage and

hour class action alleging that the defendant, a stock brokerage company, violated federal and state overtime laws.

**Lead Counsel**, *Crozer-Keystone Health System Overtime Litig.*, (E.D. Pa.) – Gary filed a collective action in the Eastern District of Pennsylvania challenging pay practices related to nurse practitioners and/or physicians' assistants. After discovery, the parties filed cross motions for summary judgment. In a widely reported opinion, 760 F. Supp. 2d 513, Senior District Judge Eduardo C. Robreno granted the plaintiff's motion for summary judgment, holding that the defendant misclassified individuals in plaintiff's job position. Gary led efforts to resolve the matter after summary judgement, and Judge Robreno approved a settlement in August 2012.

**Lead Counsel**, *Kahrer v. Ameriquest Mortgage Co.*, No. 2:05-cv-00391/No. 1:06-cv-03586 (W.D. Pa./MDL N.D. Ill.) – Gary filed this action to challenge how courts determine consumer standing under RESPA and how damages under the statute are calculated. In a seminal decision, 418 F. Supp. 2d 748, Gary successfully argued that prior courts had misinterpreted RESPA's legislative history to dismiss claims under the statute. Multiple federal courts of appeal have adopted the *Kahrer* reasoning, including at least the Third and Sixth Circuits.

**Counsel of Record**, *Genesis HealthCare Corp. v. Symczyk*, No. 11-1059 (U.S.) – Gary represented the plaintiff and served as Counsel of Record in *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523 (2013). Although the five-justice majority ruled for the defendant, Justice Kagan's influential dissent in *Genesis* laid the foundation for the Court's subsequent decision in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016), which held that an unaccepted offer of judgment does not moot a plaintiff's claims. *See Campbell-Ewald*, 136 S.Ct. at 669–72.

**Chair of Plaintiffs' Executive Committee**, *Doe v. Highmark, Inc.*, No. 2:23-cv-00250 (W.D. Pa.) – Gary serves as chair of the Plaintiffs' Executive Committee in this consolidated matter related to a data breach at a health insurance provider that compromised the PII and PHI of over 200,000 individuals. The parties are currently awaiting a decision by the Court on the defendant's motion to dismiss.

**Plaintiffs' Executive Committee**, *Greater Chautauqua Federal Credit Union et al. v. Kmart Corporation et al.*, No. 15-cv-02228 (N.D. Ill.). Gary served on the Plaintiffs' Executive Committee in a consolidated case in which financial institutions sought recovery for losses sustained as a result of a 2014 data breach. A settlement was approved in 2017.

**Plaintiffs' Executive Committee**, *In re Ashley Madison Customer Data Security Breach Litig.*, MDL No. 2669 (E.D. Mo.) – Gary was appointed to serve on the Plaintiffs' Executive Committee to represent individuals whose highly sensitive account information was leaked. A class settlement for $11.2 million was given final approval in November 2017.

**Plaintiffs' Executive Committee**, *In re Target Corporation Customer Data Breach Litig.*, MDL No. 2522 (D. Minn.). Gary served on the Plaintiffs' Executive Committee in this MDL related to the massive data breach that occurred in late 2013. The Court granted final approval of settlement agreements that provided $10 million to affected individual customers and approximately $39 million to financial institutions.

**Chair, Plaintiffs' Steering Committee**, *In re: Change Healthcare, Inc., Customer Data Security Breach Litig.*, No. 0:24-MD-03108 (D. Minn.). The Court appointed Gary as Co-Chair of the Plaintiffs' Steering Committee for the patient track in this multidistrict litigation stemming from a massive data breach and subsequent system shutdown of a healthcare technology company's platform.

**Plaintiffs' Steering Committee**, *In re: Overby-Seawell Company Customer Data Security Breach Litig.*, No. 1:23-md-03056 (N.D. Ga.) – The Court appointed Gary to the Plaintiffs' Steering Committee in this multidistrict litigation related to a data breach involving a vendor for various lenders, including KeyBank. A motion to dismiss is pending.

**Plaintiffs' Steering Committee**, *In re Intellihartx Data Security Incident Litig.*, No. 3:23-cv-1224 (N.D. Ohio) – The Court appointed Gary to the Plaintiffs' Steering Committee in this consolidated matter related to a data breach at a revenue cycle management company which compromised the PII and PHI over approximately 490,000 individuals.

**Plaintiffs' Steering Committee,** *Miller et al. v. NextGen Healthcare Inc.*, Case No. 1:23-cv-02043 (N.D. Ga.) – The Court appointed Gary to the Plaintiffs' Steering Committee in this consolidated matter related to a data breach at an EHR provider that compromised PII of over 1 million patients.

**Plaintiffs' Steering Committee**, *In re Marriott International Customer Data Security Breach Litig.*, MDL No. 2879 (D. Md.). The Court appointed Gary to the Plaintiffs' Steering Committee in this multidistrict litigation related to the data breach involving Starwood guest information. The MDL includes more than 100 cases and is in pretrial litigation.

**Plaintiffs' Steering Committee**, *In re Community Health Systems, Inc., Customer Data Security Breach Litig.*, MDL No. 2595 (N.D. Ala.). Gary served on the Plaintiffs' Steering Committee in this multidistrict litigation concerning a 2014 data breach involving one of the nation's largest hospital chains. The breach affected over 200 hospitals and compromised the sensitive information of approximately 4.5 million patients. The action settled on a class basis for up to $3.1 million.

**Chair of Plaintiffs' Leadership Committee**, *Ellis v. Edward D. Jones & Co., L.P.* (N.D. Ohio) – Gary chaired the Plaintiffs' Leadership Committee in this wage and hour class action alleging that the defendant, a stock brokerage company, violated federal and state overtime laws. Following protracted discovery and multiple rounds of mediation, the parties reached a class settlement in which class members from multiple states received more than $19 million.

# EXHIBIT C



Data Privacy

# Firm Resume



www.lowey.com

info@lowey.com

**New York**
44 South Broadway
Suite 1100
White Plains, NY 10601
(914) 997-0500

**Pennsylvania**
One Tower Bridge, 100 Front St.
Suite 520
West Conshohocken, PA 19428
(215) 399-4770

# Contents

1  **Firm Overview**

2  **Data Breach Class Actions**
2  Barr v. Drizly, LLC, Case No. 20-CV-11492 (D. Mass.)
2  In re Wawa, Inc. Data Security Litigation, No. 19-cv-06019 (E.D. Pa.)
2  Hozza v. PrimoHoagies Franchising, Inc., No. 20-cv-04966 (D.N.J.)
2  In re Rutter's Inc. Data Security Breach Litigation, No. 20-cv-00382 (M.D. Pa.)
3  In re USAA Data Security Litigation, No. 21-cv-05813 (S.D.N.Y.)

4  **Privacy Class Actions**
4  In re Google Assistant Privacy Litigation, No. 19-cv-04286 (N.D. Cal.)
4  Lopez v. Apple, Inc., No. 19-cv-04577 (N.D. Cal.)
4  Frasco v. Flo Health, Inc., No. 21-cv-00757 (N.D. Cal.)
4  Wesch v. Yodlee, Inc., No. 20-cv-05991 (N.D. Cal.)
4  Doe v. Hey Favor, Inc., 3:23-00059 (N.D. Cal.).
4  Laskowski v. Florida Health Sciences Center, Inc., No. 8:23-cv-00456 (M.D. Fl.)
5  Doe v. The Regents of the University of California, No. 3:23-cv-00598 (N.D. Cal.)
5  Doe v. GoodRx Holdings, Inc. et al, No. 3:23-00501 (N.D. Cal.)

6  **Securities Litigation**
6  **Active Securities Cases**
6  Shafer et al v. Active Network LLC et al
6  In Re: Kirkland Lake Gold LTD Securities Litigation
7  **Notable Recoveries**
7  Norfolk County Retirement System v. Community Health Systems, Inc., et al.
7  In re Beacon Associates Litigation; In re J.P. Jeanneret Associates, Inc., et al.
7  In re Juniper Networks, Inc. Sec. Litig.
8  In re ACS Shareholder Litigation
8  In re Bayer AG Securities Litigation
8  In re WorldCom Securities Litigation
8  Federated American Leaders Fund, Inc.
8  In re Philip Services Corp., Securities Litigation
8  In re New York Stock Exchange/Archipelago Merger Litigation
9  Delcath Systems, Inc. v. Ladd, et al.
9  Salomon Brothers Municipal Partners Fund, Inc. v. Thornton
9  In re DaimlerChrysler AG Sec. Litigation
9  Doft & Co. v. Travelocity.com, Inc.
9  MMI Investments, LP v. NDCHealth Corp., et al.
9  Omnicare, Inc. v. NCS Healthcare, Inc.
9  In re CINAR Securities Litigation
9  meVC Draper Fisher Jurvetson Fund 1, Inc. v. Millennium Partners
9  In re Reliance Securities Litigation

10 **Protecting Investors in Other Financial Markets**
10 **Antitrust Cases in the Financial Markets**
10 In re GSE Bonds Antitrust Litigation
10 In re Mexican Government Bonds Antitrust Litigation
10 In re European Government Bonds Antitrust Litigation
11 Sullivan, et al. v. Barclays plc, et al. (Euribor)
11 Laydon v. Mizuho Bank, Ltd., et al.; Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al. (Yen-LIBOR and Euroyen TIBOR)
11 In re London Silver Fixing Ltd., Antitrust Litig.
12 Dennis, et al. v. JPMorgan Chase & Co., et al.
12 Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG et al.
12 Fund Liquidation Holdings LLC v. Citibank, N.A.
12 Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC et al.
13 **Commodities Litigation**
13 Sumitomo
13 In re Natural Gas
14 Amaranth
14 Pacific Inv. Mgmt. Co. ("PIMCO")
14 Optiver
14 White v. Moore Capital Management, L.P.
14 In re Crude Oil Commodity Futures Litigation
14 Kraft Wheat Manipulation
15 Lansing Wheat Manipulation
15 The Andersons Wheat Manipulation
16 In re JPMorgan Precious Metals Spoofing Litigation
16 Bouchard, et al. v. Gandhi, et al. — E-mini Index Futures Spoofing
16 JPMorgan Treasuries Spoofing
16 Deutsche Treasury and Eurodollar Spoofing

17 **Healthcare: Prescription Overcharge Antitrust Litigation**
17 Drugs Failing to Meet FDA's Manufacturing Standards
17 "Pay-for-Delay" Antitrust Claims
18 Price Fixing of Pharmaceutical Drugs
18 Product Hopping Claims
18 Deceptive Marketing Claims
19 Class Action Defense/Lien Recovery Cases

20 **Consumer Protection**
20 In re FedLoan Student Loan Servicing Litigation
20 Greg Walker et al v. Central Hudson Gas and Electric Corp.
20 In Re Archstone Westbury Tenant Litigation
20 Broder v. MBNA Corp.
20 Snyder v. Nationwide Insurance Company
20 Lyons v. Litton Loan Servicing LP
20 In re Warfarin Sodium Antitrust Litigation



## Firm Overview

Since the firm's founding by Stephen Lowey in the 1960s, Lowey Dannenberg, P.C. ("Lowey Dannenberg") has represented sophisticated clients in complex financial litigation pursuant to the federal securities, antitrust, and commodities laws. Lowey Dannenberg also regularly represents some of the world's largest health insurers in healthcare cost recovery actions.

Lowey Dannenberg has recovered billions of dollars for its clients and the classes they represent. Those clients include some of the nation's largest pension funds, e.g., the California State Teachers' Retirement System ("CalSTRS"), the Treasurer of the Commonwealth of Pennsylvania and the Pennsylvania Treasury Department, the New York State Common Retirement Fund, and the New York City Pension Funds; sophisticated institutional investors, including Federated Investors, which manages more than $600 billion in assets; and Fortune 100 companies like Aetna, Anthem, CIGNA, Humana, and Verizon.

Aetna and Humana have publicly lauded Lowey in Corporate Counsel Magazine as their "Go To" outside counsel because of the firm's years of service to Fortune 100 health insurers in opt-out litigation involving state and federal fraud claims.



*The Court itself had occasion to notice the high quality of [Lowey Dannenberg's] work, both in briefs and oral argument. Moreover, counsels' achievement in obtaining valuable recompense and forward-looking protections for its clients is particularly noteworthy given the caliber and vigor of its adversaries.*

Judge Jed Rakoff, In re GSE Bonds Antitrust Litigation, No. 19-CV-1704 (S.D.N.Y.)

# Data Breach Class Actions

Lowey Dannenberg represents both consumers and financial institutions in some of the largest data breach class actions this year, including those affecting tens of millions of customers across the hospitality, healthcare, and retail industries.

## Barr v. Drizly, LLC, Case No. 20-CV-11492 (D. Mass.)

Lowey Dannenberg served as court-appointed class counsel on behalf of millions of consumers impacted by a data breach at one of the largest alcohol delivery companies, Drizly LLC ("Drizly"). On March 30, 2021, U.S. District Judge Leo T. Sorokin granted preliminary approval of a settlement in which Drizly agreed to pay a total of no less than $1,050,000 and no more than $3,150,000, and issue service credits up to $447,750. Drizly also agreed to implement and maintain sufficient data security measures to prevent future data breaches. On November 22, 2021, the Court granted final approval of the settlement. As a result of Lowey Dannenberg's robust notice program, Drizly paid the maximum amount under the terms of the settlement.

## In re Wawa, Inc. Data Security Litigation, No. 19-cv-06019 (E.D. Pa.)

Lowey Dannenberg serves as co-lead counsel in a class action against Wawa, Inc. ("Wawa") on behalf of a class of financial institutions affected by Wawa's failure to properly secure their card processing system. As a result of Wawa's conduct, unauthorized third parties were able to gain access to customers' payment card information for over nine months. The data breach is estimated to have impacted more than 30 million individuals at 850 locations. Judge Gene E.K. Pratter of the U.S. District Court for the Eastern District of Pennsylvania sustained several of Plaintiffs' claims, including negligence and injunctive relief. On October 12, 2023, Lowey received preliminary approval for a $28.5 million settlement for a class of financial institutions.

Under the Settlement, Wawa has committed a total of up to $28.5 million to compensate class members that submit valid claims, including: (1) up to $18.5 million to cover costs associated with cancelling and replacing payment cards in response to the data breach; (2) up to $8 million for losses resulting from payment card fraud; and (3) up to $2 million to be distributed to class members that attest to incurring other costs, in the alternative to filing another form of claim.

## Hozza v. PrimoHoagies Franchising, Inc., No. 20-cv-04966 (D.N.J.)

Lowey Dannenberg recently settled a class action against PrimoHoagies Franchising, Inc. ("PrimoHoagies") arising out of the company's deficient data security that exposed consumers' personal data, including credit card information. The data breach is estimated to have lasted seven months, impacting dozens of locations across seven states. On March 22, 2023, Lowey received final approval for a settlement for a class of consumers that allows for up to $120 for out-of-pocket expenses and an additional $7.50 for lost time related to the data breach. In addition to payments, class members received one year of credit-monitoring services valued as $119.40.

## In re Rutter's Inc. Data Security Breach Litigation, No. 20-cv-00382 (M.D. Pa.)

Lowey Dannenberg is serving as co-lead class counsel in a class action on behalf of consumers against Rutter's Holdings, Inc. ("Rutter's"). The action arises out of Rutter's failure to secure its point-of-sale system, which allowed hackers to compromise customers' payment card information. The breach is estimated to have lasted approximately eight months.

Chief Judge John E. Jones, III of the U.S. District Court for the Middle District of Pennsylvania sustained several of Plaintiffs' key claims, including negligence, breach of implied contract, and unjust enrichment. During discovery, Lowey Dannenberg successfully argued that Rutter's must turn over investigative reports prepared by third party consultants, which Rutter's argued were protected by the attorney-client privilege and work product doctrine.



## In re USAA Data Security Litigation, No. 21-cv-05813 (S.D.N.Y.)

On November 17, 2021, Judge Vincent L. Briccetti appointed Lowey Dannenberg as co-lead counsel representing a proposed class of consumer plaintiffs. The case alleges that United Services Automobile Association ("USAA") allowed unauthorized third parties to intentionally target and improperly obtain Plaintiffs' and class members' personally identifiable information, including Driver's License numbers, through the use of USAA's online insurance quote and/or policy process. Plaintiffs defeated Defendant's Motion to Dismiss, including sustaining claims pursuant to the Drivers Privacy Protection Act.

# Privacy Class Actions

Lowey Dannenberg is at the forefront of some of the most high-profile and largest privacy cases in the country, including those involving new and emerging technology.

### In re Google Assistant Privacy Litigation, No. 19-cv-04286 (N.D. Cal.)

Lowey Dannenberg serves as co-lead class counsel in one of the largest privacy cases in the country, representing a class of consumers against tech giant Google. Plaintiffs' claims arise out of Google's unlawful and intentional recording of Plaintiffs' and class members' confidential communications without their consent through its Google Assistant software. On February 9, 2024, Judge Freeman granted Plaintiffs' Unopposed Motion for Approval of Class Notice Plan.

### Lopez v. Apple, Inc., No. 19-cv-04577 (N.D. Cal.)

Similar to the case above, Lowey Dannenberg serves as co-lead class counsel in a class action on behalf of consumers alleging that Apple unlawfully and intentionally recorded Plaintiffs' and class members' confidential communications without their consent through its Siri-enabled devices. The case is currently pending in the Northern District of California.

### Frasco v. Flo Health, Inc., No. 21-cv-00757 (N.D. Cal.)

Lowey Dannenberg serves as court appointed co-lead counsel in a class action against Flo Health, Inc. ("Flo"), Google, LLC, Facebook, Inc., AppsFlyer, Inc. and Flurry, Inc. Plaintiffs represent a class of consumers alleging that Flo collected and disclosed their intimate health data to some of the largest data analytics and advertising companies in the world. Plaintiffs allege claims for invasion of privacy, breach of contract, and violation of the Federal Wiretap Act, among others. Lowey Dannenberg successfully defeated two separate motions to dismiss, including sustaining first-of-its-kind aiding and abetting violations of the California Confidentiality of Medical Information Act claims against Google, Meta, and Flurry.

### Wesch v. Yodlee, Inc., No. 20-cv-05991 (N.D. Cal.)

Lowey Dannenberg is leading the prosecution against Yodlee, Inc., one of the largest data and analytics companies in the world. Lowey Dannenberg represents a class of consumers whose financial data Yodlee, Inc. surreptitiously collected and sold without consent through software incorporated in third party applications. Lowey Dannenberg has successfully defeated two rounds of motion to dismiss briefing and a motion for summary judgment, leaving intact claims for invasion of privacy, fraud, unjust enrichment, and violation of California's Anti-Phishing Act.

### Doe v. Hey Favor, Inc., 3:23-00059 (N.D. Cal.).

Lowey Dannenberg represents a class of Hey Favor, Inc. website and app users alleging their personal data, including prescription information, were unlawfully disclosed to and intercepted by Meta Platforms, Inc., TikTok, Inc., and FullStory, Inc. using sophisticated tracking technology (e.g., the Meta Pixel, the TikTok Pixel, and Session Replay Software).

### Laskowski v. Florida Health Sciences Center, Inc., No. 8:23-cv-00456 (M.D. Fl.)

Lowey Dannenberg represents a class of Tampa General Hospital patients who allege that their highly sensitive data, including information relating to their patient status, medical conditions, prescriptions, appointments, specific treatment, messages to healthcare providers and PII was disclosed to Meta Platforms, Inc. through Tampa General Health's intentional incorporation of Meta's tracking software (e.g., the Meta Pixel) on its website and patient portal.

### Doe v. The Regents of the University of California, No. 3:23-cv-00598 (N.D. Cal.)

Lowey Dannenberg represents a class of University of California San Francisco Medical Center ("UCSF") patients who allege that their highly sensitive data, including information relating to their medical conditions, appointments, specific treatment, messages to health care providers, and PII was disclosed to Meta Platforms, Inc. through UCSF's incorporation of Meta's tracking software (e.g., the Meta Pixel) on its website and patient portal.

### Doe v. GoodRx Holdings, Inc. et al, No. 3:23-00501 (N.D. Cal.)

Lowey Dannenberg serves as court appointed co-lead counsel in a class action against GoodRx Holdings, Inc. ("GoodRx"), Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and Criteo Corp. ("Criteo"). Plaintiffs represent a class of GoodRx website and app users alleging their personal data, including prescription information, was unlawfully disclosed to and intercepted by Meta, Google, and Criteo using sophisticated tracking technology (e.g., pixels, software development kits, and session replay software).



# Securities Litigation

Lowey Dannenberg has extensive experience representing clients in federal securities cases, including cases involving: financial fraud, auction rate securities, options backdating, Ponzi schemes, challenges to unfair mergers and tender offers, statutory appraisal proceedings, proxy contests and election irregularities, failed corporate governance, stockholder agreement disputes, and customer/brokerage firm arbitration proceedings.

Lowey's securities litigation practice has recovered billions of dollars on behalf of defrauded investors. The firm has also achieved landmark, long term corporate governance changes at public companies, including reversing results of elections and returning corporate control to the companies' rightful owners, its stockholders.

Lowey Dannenberg's public pension fund clients include the California State Teachers' Retirement System (CalSTRS), the New York State Common Retirement Fund, the State of Connecticut Retirement Plans and Trust Funds, the Treasurer of the Commonwealth of Pennsylvania, and the Pennsylvania Treasury Department. Representative institutional investor clients include Federated Investors, Inc., Glickenhaus & Co., Millennium Partners LLP, Karpus Investment Management LLP, Amegy Bank, Monster Worldwide Inc., Zebra Technologies, Inc., and Delcath Systems, Inc.

## Active Securities Cases

### Shafer et al v. Active Network LLC et al

Lowey Dannenberg serves as court-appointed co-lead counsel in *Shafer et al v. Active Network LLC et al.*, No. 1:23-CV-00577 (N.D. Ga.). The case is currently pending before Judge Leigh Martin May. The securities lawsuit alleges that: (a) Active Network used deceptive and abusive acts and practices to dupe its customers into enrolling into Active Network's own discount club; (b) since July 2011, Active Network and by extension, Global Payments, was aware of such unauthorized conduct and that it was violating relevant regulations and laws aimed at protecting its consumers; (c) since 2011, Global Payments failed to properly monitor its subsidiary from engaging in such unlawful conduct, detect and stop the misconduct, and identify and remediate harmed consumers; (d) all the foregoing subjected the Company to a foreseeable risk of heightened regulatory scrutiny or investigation; (e) Global Payments' revenues were in part the product of Active Network's unlawful conduct and thus unsustainable; and (f) as a result, the Company's public statements were materially false and misleading at all relevant times. On August 26, 2024, Judge Leigh Martin May issued an order granting preliminary approval of a $3.6 million settlement between Global Payments Inc.

### In Re: Kirkland Lake Gold LTD Securities Litigation

Lowey Dannenberg serves as sole Lead Counsel representing a proposed class of shareholders against Toronto-based gold-mining company Kirkland Lake Gold Ltd. (now merged with Agnico Eagle Mines Ltd. as of February 2022). Plaintiffs allege that the company misled investors when its CEO Anthony Makuch repeatedly downplayed the possibility that the company would engage in any mergers or acquisitions, while simultaneously negotiating the acquisition of Detour Gold Corporation in 2019. The case is pending before Judge J. Paul Oetken. *In re Kirkland Lake Gold Ltd. Sec. Litig.*, No. 20-cv-4953 (JPO), 2021 WL 4482151 (S.D.N.Y. Sept. 30, 2021).

## Notable Recoveries

Notable achievements for our securities clients include the following:

### Norfolk County Retirement System v. Community Health Systems, Inc., et al.

Lowey Dannenberg recovered $53 million on behalf of Lead Plaintiff, the New York City Pension Funds, and the certified class of investors in Community Health Systems common stock. As Lead Counsel in this hard-fought and long-standing securities class action, Lowey Dannenberg charged Community Health Systems, one of the largest for-profit hospital systems in the United States, with failing to disclose that its highly-touted growth and performance were achieved through a scheme to improperly inflate Medicare patient admissions.

U.S. District Judge Eli J. Richardson addressed Lowey Dannenberg's efforts at the final approval hearing finding that *"counsel for plaintiff has been diligent, very diligent, has worked very hard, knows the case, knows the facts, is very experienced in these sorts of securities fraud class actions, and has gone to the mat for their client for many years."* During the litigation, Lowey Dannenberg achieved a unanimous reversal of the lower court's dismissal of the case before the Sixth Circuit Court of Appeals and successfully opposed Supreme Court review. *Norfolk Cty. Ret. Sys. v. Community Health Sys., Inc.*, 877 F.3d 687 (6th Cir. 2017), cert. denied 139 S. Ct. 310 (2018). Following extensive discovery, the court preliminarily approved the settlement in January 2020, which the Court approved and made final on June 19, 2020. *Norfolk County Retirement System v. Community Health Systems, Inc., et al.* 11-cv-0433 (M.D. Tenn.).

### In re Beacon Associates Litigation; In re J.P. Jeanneret Associates, Inc., et al.

*In re Beacon Associates Litigation*, 09-CV-0777 (S.D.N.Y.); *In re J.P. Jeanneret Associates, Inc.*, et al., 09-cv-3907 (S.D.N.Y.). Lowey Dannenberg represented several unions, which served as Lead Plaintiffs, in litigation arising from Bernie Madoff's Ponzi scheme. On March 15, 2013, the Honorable Colleen McMahon of the United States District Court for the Southern District of New York granted final approval of the $219.9 million settlement of Madoff feeder-fund litigation encompassing the *In re Beacon* and *In re Jeanneret* class actions. Lowey Dannenberg, as Liaison Counsel, was instrumental in achieving this outstanding result. The settlement covered several additional lawsuits in federal and New York state courts against the settling defendants, including suits brought by the United States Secretary of Labor and the New York Attorney General. Plaintiffs in these cases asserted claims under the federal securities laws, ERISA, and state laws arising out of hundreds of millions of dollars of losses sustained by unions and other investors in Bernard Madoff feeder funds. The settlement recovered an extraordinary 70% of investors' losses. This settlement, combined with anticipated recovery from a separate liquidation of Madoff assets, is expected to restore the bulk of losses to the pension funds for the local unions and other class members. In granting final approval, Judge McMahon praised both the result and the lawyering in these coordinated actions, noting that *"[i]n the history of the world there has never been such a response to a notice of a class action settlement that I am aware of, certainly, not in my experience,"* and that *"[t]he settlement process really was quite extraordinary."* In her written opinion, Judge McMahon stated that *"[t]he quality of representation is not questioned here, especially for those attorneys (principally from Lowey Dannenberg) who worked so hard to achieve this creative and, in my experience, unprecedented global settlement." In re Beacon Associates Litig.*, 09 CIV. 777 CM, 2013 WL 2450960, at *14 (S.D.N.Y. May 9, 2013).

### In re Juniper Networks, Inc. Sec. Litig.

In 2010, as lead counsel for the Lead Plaintiff, the New York City Pension Funds, Lowey Dannenberg achieved a settlement in the amount of $169.5 million, one of the largest settlements in an options backdating case, after more than three years of hard-fought litigation. *In re Juniper Networks, Inc. Sec. Litig.*, No. C-06-04327 JW (N.D. Cal.).

## In re ACS Shareholder Litigation

Lowey Dannenberg successfully challenged a multi-billion-dollar merger between Xerox Corp. and Affiliated Computer Systems ("ACS"), which favored Affiliated's CEO at the expense of our client, Federated Investors, and other ACS shareholders. In expedited proceedings, Lowey achieved a $69 million settlement as well as structural protections in the shareholder vote on the merger. The settlement was approved in 2010. *In re ACS Shareholder Litigation*, Consolidated C.A. No. 4940-VCP (Del. Ch.).

## In re Bayer AG Securities Litigation

We represented the New York State Common Retirement Fund as Lead Plaintiff in a securities fraud class action arising from Bayer's marketing and recall of its Baycol drug. Lowey Dannenberg was appointed as lead counsel for the New York State Common Retirement Fund at the inception of merits discovery, following the dismissal of the New York State Common Retirement Fund's former counsel. The class action settled for $18.5 million in 2008. *In re Bayer AG Securities Litigation*, 03 Civ. 1546 (WHP) (S.D.N.Y.).

## In re WorldCom Securities Litigation

Lowey Dannenberg's innovative strategy and zealous prosecution produced an extraordinary recovery in the fall of 2005 for the New York City Pension Funds in the *WorldCom Securities Litigation*, substantially superior to that of any other WorldCom investor in either class or opt-out litigation. Following our advice to opt out of a class action in order to litigate their claims separately, the New York City Pension Funds recovered almost $79 million, including 100% of their damages resulting from investments in WorldCom bonds. *In re WorldCom Securities Litigation*, Master File No. 02 Civ. 3288 (DLC) (S.D.N.Y.).

## Federated American Leaders Fund, Inc.

*Federated American Leaders Fund, Inc.*, No. 08-cv-01337-PB (D.N.H.). In 2008, Lowey Dannenberg successfully litigated an opt-out case on behalf of client Federated Investors, Inc., arising out of the *Tyco Securities Litigation*. The client asserted claims unavailable to the class (including a claim for violation of § 18 of the Securities Exchange Act of 1934 and a claim for violations of the New Jersey RICO statute). Pursuit of an opt-out strategy resulted in a recovery of substantially more than the client would have received had it merely remained passive and participated in the class action settlement.

## In re Philip Services Corp., Securities Litigation

*In re Philip Services Corp., Securities Litigation*, No. 98 Civ. 835 (AKH) (S.D.N.Y.). On March 19, 2007, the United States District Court for the Southern District of New York approved a $79.75 million class action settlement, in which Lowey Dannenberg acted as Co-Lead Counsel, on behalf of United States investors of Philip Services Corp., a bankrupt Canadian resource recovery company. $50.5 million of the settlement was paid by the Canadian accounting firm of Deloitte & Touche, LLP, perhaps the largest recovery from a Canadian auditing firm in a securities class action, and among the largest obtained from any accounting firm. Earlier in the litigation, the United States Court of Appeals for the Second Circuit issued a landmark decision protecting the rights of United States citizens to sue foreign companies who fraudulently sell their securities in the United States. *DiRienzo v. Philip Services Corp.*, 294 F.3d 21 (2d Cir. 2002).

## In re New York Stock Exchange/ Archipelago Merger Litigation

Lowey Dannenberg acted as co-lead counsel for a class of seatholders seeking to enjoin the merger between the New York Stock Exchange ("NYSE") and Archipelago Holdings, Inc. As a result of the action, the merger terms were revised, providing the seatholders with more than $250 million in additional consideration. Further, the NYSE agreed to retain an independent financial adviser to report to the court as to the fairness of the deal to the NYSE seatholders. Plaintiffs also provided the court with their expert's analysis of the new independent financial adviser's report so that seatholders could assess both reports prior to the merger vote. The court noted that "these competing presentations provide a fair and balanced view of the proposed merger and present the NYSE Seatholders with an opportunity to exercise their own business judgment with eyes wide open. The presentation of such differing viewpoints ensures transparency and complete disclosure." *In re New York Stock Exchange/ Archipelago Merger Litigation*, No. 601646/05, 2005 WL 4279476, at *14 (N.Y. Sup. Ct. Dec. 5, 2005).

## Delcath Systems, Inc. v. Ladd, et al.

On September 25, 2006, Lowey Dannenberg helped Laddcap Value Partners win an emergency appeal, reversing a federal district court's order disqualifying the votes Laddcap solicited to replace the board of directors of Delcath Systems, Inc. Prior to Lowey Dannenberg's involvement in the case, on September 20, 2006, the district court enjoined Laddcap, Delcath's largest stockholder, from submitting stockholder consents on the grounds of alleged and unproven violations of federal securities law. After losing an injunction proceeding in the district court on September 20, 2006, and with the election scheduled to close on September 25, 2006, Laddcap hired Lowey Dannenberg to prosecute an emergency appeal, which Lowey won on September 25, 2006, the last day of the election period. *Delcath Systems, Inc. v. Ladd*, 466 F.3d 257 (2d Cir. 2006). Shortly thereafter, the case settled with Laddcap gaining seats on the board, reimbursement of expenses, and other benefits. *Delcath Systems, Inc. v. Ladd, et al.*, No. 06 Civ. 6420 (S.D.N.Y.).

## Salomon Brothers Municipal Partners Fund, Inc. v. Thornton

Lowey Dannenberg represented Karpus Investment Management in its successful proxy contest and subsequent litigation to prevent the transfer of management by Citigroup to Legg Mason of the Salomon Brothers Municipal Partners Fund. We defeated the Fund's preliminary injunction action which sought to compel Karpus to vote shares it had solicited by proxy but withheld from voting in order to defeat a quorum and prevent approval of the transfer. *Salomon Brothers Mun. Partners Fund, Inc. v. Thornton*, 410 F. Supp. 2d 330 (S.D.N.Y. 2006).

## In re DaimlerChrysler AG Sec. Litigation

Lowey Dannenberg represented Glickenhaus & Co., a major registered investment advisor and, at the time, the second largest stockholder of Chrysler, in an individual securities lawsuit against DaimlerChrysler AG. Successful implementation of the firm's opt-out strategy led to a recovery for its clients far in excess of that received by other class members. *See Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002); *In re DaimlerChrysler AG Sec. Litig.*, 269 F. Supp. 2d 508 (D. Del. 2003). *In re DaimlerChrysler AG Sec. Litigation*, Master Docket No. 00-993-JJF (D. Del.).

## Doft & Co. v. Travelocity.com, Inc.

Following a three-day bench trial in a statutory appraisal proceeding, the Delaware Chancery Court awarded the firm's clients, an institutional investor and investment advisor, $30.43 per share plus compounded prejudgment interest, for a transaction in which the public shareholders who did not seek appraisal were cashed out at $28 per share. *Doft & Co. v. Travelocity.com, Inc.*, No. Civ. A. 19734, 2004 WL 1152338 (Del. Ch. May 20, 2004), modified, 2004 WL 1366994 (Del. Ch. June 10, 2004).

## MMI Investments, LP v. NDCHealth Corp., et al.

Lowey Dannenberg filed an individual action on behalf of hedge fund, MMI Investments, asserting claims for violations of the federal securities laws and the common law, including claims not available to the class, most notably a claim for violation of § 18 of the Securities Exchange Act of 1934 and a claim for common law fraud. After zealously litigating the client's claims, the Firm obtained a substantial settlement, notwithstanding the fact that the class claims were dismissed. *MMI Investments, LP v. NDCHealth Corp., et al.*, 05 Civ. 4566 (S.D.N.Y.).

## Omnicare, Inc. v. NCS Healthcare, Inc.

Lowey Dannenberg, as Co-Lead Counsel on behalf of an institutional investor, obtained an injunction from the Delaware Supreme Court, enjoining a proposed merger between NCS Healthcare, Inc. and Genesis Health Ventures, Inc., in response to Lowey Dannenberg's argument that the NCS board breached its fiduciary obligations by agreeing to irrevocable merger lock-up provisions. As a result of the injunction, the NCS shareholders were able to benefit from a competing takeover proposal by Omnicare, Inc., a 300% increase from the enjoined transaction, providing NCS's shareholders with an additional $99 million. *Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914 (Del. 2003).

## In re CINAR Securities Litigation

Lowey Dannenberg acted as Lead Counsel, obtaining a $27.25 million settlement on behalf of client the Federated Kaufmann Fund and a class of purchasers of securities of CINAR Corporation. The court found that "the quality of [Lowey Dannenberg's] representation has been excellent." *In re CINAR Securities Litigation*, Master File No. 00 CV 1086 (E.D.N.Y. Dec. 2, 2002).

## meVC Draper Fisher Jurvetson Fund 1, Inc. v. Millennium Partners

Lowey Dannenberg successfully represented an affiliate of Millennium Partners, a major private investment fund, in litigation in the Delaware Chancery Court over a board election. Lowey's efforts resulted in the voiding of two elections of directors of meVC Draper Fisher Jurvetson Fund 1, Inc., a NYSE-listed closed end mutual fund, on grounds of breach of fiduciary duty. In a subsequent proxy contest litigation in the United States District Court for the Southern District of New York, the entire board of directors was ultimately replaced with Millennium's slate. *meVC Draper Fisher Jurvetson Fund 1, Inc. v. Millennium Partners*, 260 F. Supp. 2d 616 (S.D.N.Y. 2003); *Millenco L.P. v. meVC Draper Fisher Jurvetson Fund 1, Inc.*, 824 A.2d 11 (Del. Ch. 2002).

# Protecting Investors in Other Financial Markets

## Antitrust Cases in the Financial Markets

Lowey Dannenberg regularly serves as court appointed lead or co-lead counsel on some of the most important and complex antitrust class actions against some of the world's largest corporations, financial institutions, and producers. The firm has more than 40 attorneys who specialize in prosecuting these cases, including the following representative matters.

### In re GSE Bonds Antitrust Litigation

Lowey Dannenberg served as Court-appointed Co-Lead Counsel in an antitrust class action alleging that several of the world's largest banks and brokers conspired to fix the prices of debt securities issued by government sponsored entities (e.g., Fannie Mae, Freddie Mac, Federal Farm Credit Banks, and Federal Home Loan Banks) between 2009 and 2016. *In re GSE Bonds Antitrust Litigation*, No. 19-cv-1704 (S.D.N.Y.) (Rakoff, J.).

On June 16, 2020, Judge Jed S. Rakoff finally approved settlements with all defendants totaling more than $386 million. Judge Rakoff praised "the high quality of [Lowey's] work, both in briefs and oral argument," and Lowey's achievement in "obtaining valuable recompense and forward-looking protections for its clients" in the face of vigorous opposition from adversaries of the highest caliber. *See In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020). Notably, in addition to the substantial financial recovery in the case, Lowey worked closely with its client, the Treasurer of the Commonwealth of Pennsylvania, to curb future misconduct and successfully negotiated settlement provisions that required each defendant to maintain or create a compliance program designed prevent and detect future anticompetitive conduct in the GSE Bond Market.

### In re Mexican Government Bonds Antitrust Litigation

Lowey Dannenberg serves as Court-appointed sole Lead Counsel in a class action against 10 global financial institutions that allegedly violated the Sherman Act by colluding to fix the prices of debt securities issued by the Mexican Government between 2006 and 2016. Plaintiffs are eight institutional investors that transacted in Mexican government debt, including directly with Defendants. The case is pending before Judge J. Paul Oetken in the Southern District of New York. On October 28, 2021, Judge Oetken granted final approval of a settlement with Defendants JPMorgan Chase and Barclays PLC for $20.7 million. *In re Mexican Government Bonds Antitrust Litigation*, 1:18-cv-02830 (S.D.N.Y). On February 9, 2024, the United States Court of Appeals for the Second Circuit vacated an order granting the remaining Defendants' motion to dismiss for lack of personal jurisdiction and remanded the case back to the district court for further proceedings.

### In re European Government Bonds Antitrust Litigation

Lowey Dannenberg serves as court-appointed co-lead counsel in *In re European Government Bonds Antitrust Litigation*, Case No. 19-cv-2601 (VM) (S.D.N.Y.) before Judge Victor Marrero in the Southern District of New York. The case involves alleged price fixing by dealers responsible for bringing bonds issued by Eurozone member countries to the secondary market. On July 23, 2020, Judge Marrero sustained antitrust claims against certain dealers and allowed Plaintiffs to seek leave to replead their claims against the remaining defendants. *In re European Gov't Bonds Antitrust Litig.*, No. 19-cv-2601 (VM), 2020 WL 4273811 (S.D.N.Y. July 23, 2020). Subsequently, Lowey reached settlements with State Street, JPMorgan, Natixis, and UniCredit that the Court finally approved in April 2024, resulting in a settlement fund of $40 million. On July 29, 2024, Judge Marrero granted preliminary approval to an $80 million settlement with Bank of America, NatWest, Nomura, UBS, Citigroup, and Jefferies.

PROTECTING INVESTORS IN OTHER FINANCIAL MARKETS

### Sullivan, et al. v. Barclays plc, et al. (Euribor)

Lowey Dannenberg is co-lead counsel prosecuting claims against international financial institutions responsible for setting the Euro Interbank Offered Rate ("Euribor"), a global reference rate used to benchmark, price and settle over $200 trillion of financial products. Co-Lead Plaintiffs include the California State Teachers' Retirement System ("CalSTRS"). Lowey Dannenberg has recovered a total of $651.5 million for Euribor-based derivatives investors, which includes (1) a $94 million settlement with Barclays plc and related Barclays entities; (2) a $45 million settlement with Defendants HSBC Holdings plc and HSBC Bank plc; (3) a $170 million settlement with Defendants Deutsche Bank AG and DB Group Services (UK) Ltd.;  (4) a $182.5 million settlement with Defendants Citigroup Inc., Citibank, N.A., JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A; (5) a $55 million settlement with Defendants Crédit Agricole S.A. and Crédit Agricole CIB; and (6) a $105 million settlement with Defendant Société Générale. The claims against the remaining defendants in the case are presently on appeal before the United States Court of Appeals for the Second Circuit.

### Laydon v. Mizuho Bank, Ltd., et al.; Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al. (Yen-LIBOR and Euroyen TIBOR)

Lowey Dannenberg is sole lead counsel prosecuting claims against international financial institutions responsible for the intentional and systematic manipulation of the London Interbank Offered Rate ("LIBOR") for the Japanese Yen and Euroyen TIBOR (the Tokyo Interbank Offered Rate). The firm represents clients in two actions relating to manipulation of products price-based on these benchmarks ("Euroyen-based derivatives"): *Laydon v. Mizuho Bank, Ltd. et al.*, 12-cv- 03419 (S.D.N.Y.) (Daniels, J.) (involving exchange based Euroyen-based derivatives) and *Fund Liquidation Holdings LLC et al. v. UBS AG et al.*, 15-cv-5844 (Daniels, J.) (involving over-the-counter Euroyen-based derivatives). Co-Lead Plaintiffs in the *Fund Liquidation* matter include CalSTRS. The *Fund Liquidation* action is presently on appeal before the United States Court of Appeals for the Second Circuit.

Lowey Dannenberg has thus far recovered $364.5 million for the Settlement Class and received substantial cooperation from settling defendants that it is using in the actions against the remaining defendants. In 2016, Judge Daniels granted final approval of a $35 million settlement with HSBC Holdings plc and HSBC Bank plc, a $23 million settlement with Citigroup, Inc. and several Citi entities, and a cooperation settlement with R.P. Martin. In 2017, Judge Daniels granted final approval of a $77 million settlement with Deutsche Bank AG and DB Group Services (UK) Ltd. and a $71 million settlement with JPMorgan Chase & Co. and related entities. On July 12, 2018, Judge Daniels granted final approval of a $30 million settlement with the The Bank of Tokyo-Mitsubishi UFJ, Ltd. and Mitsubishi UFJ Trust and Banking Corporation. In December 2019, the court finally approved two sets of settlements, one with Bank of Yokohama, Ltd., Shinkin Central

Bank, The Shoko Chukin Bank, Ltd., Sumitomo Mitsui Trust Bank, Ltd. and Resona Bank, Ltd. for $31.75 million, and the second with Mizuho Bank, Ltd., Mizuho Corporate Bank, Ltd., and Mizuho Trust & Banking Co., Ltd., The Norinchukin Bank, and Sumitomo Mitsui Banking Corporation for $39.25 million. On March 14, 2023, Judge Daniels granted final approval of three settlements with Barclays Bank PLC, Barclays Capital Inc., and Barclays PLC for $17,750,000; Nex International Limited (f/k/a ICAP plc) and ICAP Europe Limited for $2,375,000; and TP ICAP plc (f/k/a Tullett Prebon plc and n/k/a TP ICAP Finance plc) for $2,375,000. On June 18, 2024, the Court approved an additional settlement with Société Générale for $35 million.

### In re London Silver Fixing Ltd., Antitrust Litig.

Lowey Dannenberg is serving as co-lead counsel on behalf of a class of silver investors, including Commodity Exchange Inc. ("COMEX") silver futures contracts traders, against banks that allegedly colluded to fix the London Silver Fix, a global benchmark that impacts the value of more than $30 billion in silver and silver-based financial instruments. Judge Valerie E. Caproni sustained Sherman Antitrust Act and CEA claims alleged in Lowey Dannenberg's complaint, which relied predominately on sophisticated econometric analysis that Lowey Dannenberg developed in conjunction with a team of leading financial markets experts. *See In re London Silver Fixing Ltd., Antitrust Litig.*, No. 14-md-2573, 2016 WL 5794777 (S.D.N.Y. Oct. 3, 2016). In appointing Lowey Dannenberg, the Court praised Lowey Dannenberg's experience, approach to developing the complaint, attention to detail, and the expert resources that the firm brought to bear on behalf of the class. *See In re London Silver Fixing Ltd., Antitrust Litig.*, Case No. 14-md-2573 (VEC), ECF No. 17 (Nov. 25, 2014 S.D.N.Y.) (Caproni, J.). On June 15, 2021, Judge Caproni granted final approval of a $38 million settlement with Deutsche Bank AG and several of its subsidiaries. *See* Final Approval Order of Settlement with Deutsche Bank AG, Deutsche Bank Americas Holding Corporation, DB U.S. Financial Markets Holding Corporation, Deutsche Bank Securities, Inc., Deutsche Bank Trust Corporation, Deutsche Bank Trust Company Americas, and Deutsche Bank AG New York Branch, *In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 14-md-2573 (S.D.N.Y. Jun. 15, 2021), ECF No. 536. The case is ongoing against the remaining defendants.

### Dennis, et al. v. JPMorgan Chase & Co., et al.

Lowey Dannenberg served as co-lead counsel in an antitrust class action against numerous global financial institutions responsible for setting the Australian Bank Bill Swap Reference Rate ("BBSW"), before Judge Lewis A. Kaplan in the Southern District of New York. *Dennis, et al. v. JPMorgan Chase & Co., et al.*, No. 16-cv-6496 (LAK) (S.D.N.Y.). The case alleges that the defendants engaged in uneconomic transactions in Prime Bank Bills, a type of short-term debt instrument, to manipulate BBSW. In addition to prevailing against most of the defendants on their motions to dismiss, (*see Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122 (S.D.N.Y. 2018), adhered to on denial of reconsideration, No. 16-CV-6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018); *Dennis v. JPMorgan Chase & Co.*, 439 F. Supp. 3d 256 (S.D.N.Y. 2020)), Lowey Dannenberg negotiated class settlements totaling $185,875,000 with those defendants. Judge Kaplan granted final approval of the settlements on November 1, 2022.

### Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG et al.

Lowey Dannenberg is the court-appointed sole lead counsel in a class action pending before Judge Sidney H. Stein against numerous global financial institutions responsible for setting the London Interbank Offered Rate for the Swiss Franc ("Swiss Franc LIBOR"). *Fund Liquidation Holdings LLC et al. v. Credit Suisse Group AG, et al.*, Case No. 15-cv-0871 (S.D.N.Y.). The case alleges that defendants manipulated Swiss Franc LIBOR and the prices of Swiss Franc LIBOR-Based Derivatives to benefit their derivatives positions. Lowey Dannenberg has negotiated six class settlements with defendants totaling $73,950,000. On September 28, 2023, the Court finally approved settlements with (1) JPMorgan Chase & Co. for $22,000,000; (2) Credit Suisse Group AG and Credit Suisse AG for $13,750,000; (3) Deutsche Bank AG and DB Group Services (UK) Ltd. for $13,000,000; (4) TP ICAP plc (f/k/a Tullett Prebon plc and n/k/a TP ICAP Finance plc), Tullett Prebon Americas Corp., Tullett Prebon (USA) Inc., Tullett Prebon Financial Services LLC, Tullett Prebon (Europe) Limited, and Cosmorex AG; Gottex Brokers SA; and Velcor SA for $2,100,000; and (5) NEX Group plc, NEX International Limited (f/k/a ICAP plc), ICAP Capital Markets LLC (n/k/a Intercapital Capital Markets LLC), ICAP Securities USA LLC, and ICAP Europe Limited for $2,100,000. On October 24, 2023, the Court finally approved a $21,000,000 settlement with NatWest Markets Plc (f/k/a The Royal Bank of Scotland plc). The case is ongoing against one remaining defendant.

### Fund Liquidation Holdings LLC v. Citibank, N.A.

Lowey Dannenberg filed a proposed class action in July 2015 alleging that the 20 global financial institutions responsible for setting the Singapore Interbank Offered Rate ("SIBOR") and the Singapore Swap Offer Rate ("SOR") manipulated these benchmark rates to benefit their own derivatives positions at the expense of U.S. investors. The Monetary Authority of Singapore investigated these banks and found that traders manipulated SIBOR and SOR, imposing sanctions. On March 17, 2021, the Second Circuit Court of Appeals vacated dismissal of the action and remanded the case to Judge Hellerstein for further proceedings. On November 29, 2022, Judge Hellerstein granted final approval of seven settlements totaling $155,458,000 with all Defendants in the case. *Fund Liquidation Holdings LLC v. Citibank, N.A., et al.*, 16-cv-5263 (S.D.N.Y.).

### Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC et al.

Lowey Dannenberg is co-lead counsel in an antitrust class action against numerous global financial institutions responsible for setting the Sterling London Interbank Offered Rate ("Sterling LIBOR"). *Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC et al.*, Case No. 15-cv-3538 (S.D.N.Y.). The case alleges that defendants manipulated Sterling LIBOR and the prices of Sterling LIBOR-Based Derivatives to benefit their derivatives positions. Lowey Dannenberg and co-lead counsel negotiated a $5,000,000 settlement with defendant Deutsche Bank AG ("Deutsche Bank"). On November 21, 2023, the Court finally approved the $5,000,000 settlement with Deutsche Bank. The claims against the remaining defendants in the case are presently on appeal before the United States Court of Appeals for the Second Circuit.

# Commodities Litigation

Lowey Dannenberg has successfully prosecuted the most important and complex commodity manipulation actions since the enactment of the Commodity Exchange Act ("CEA").
As court-appointed lead counsel, Lowey Dannenberg has a history of successfully certifying classes of investors harmed by market manipulation schemes.

## Sumitomo

In *In re Sumitomo Copper Litigation* ("*Sumitomo*"), Master File No. 96 CV 4854 (S.D.N.Y.) (Pollack, J.), Lowey Dannenberg was appointed as one of three executive committee members. Stipulation and Pretrial Order No. 1, dated October 28, 1996, at ¶ 13. Plaintiffs' counsel's efforts in *Sumitomo* resulted in a settlement on behalf of the certified class of more than $149 million, which represented **the largest** class action recovery in the history of the CEA at the time. *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998). One of the most able and experienced United States District Court judges in the history of the federal judiciary, the Honorable Milton Pollack, took note of counsel's skill and sophistication:

*The unprecedented effort of Counsel exhibited in this case led to their successful settlement efforts and its vast results. Settlement posed a saga in and of itself and required enormous time, skill and persistence. Much of that phase of the case came within the direct knowledge and appreciation of the Court itself. Suffice it to say, the Plaintiffs' counsel did not have an easy path and their services in this regard are best measured in the enormous recoveries that were achieved under trying circumstances in the face of natural, virtually overwhelming, resistance.*

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999).

## In re Natural Gas

Lowey Dannenberg served as co-lead counsel in *In re Natural Gas Commodity Litigation*, Case No. 03 CV 6186 (VM) (S.D.N.Y.) ("*In re Natural Gas*"), which involved manipulation of the price of natural gas futures contracts traded on the NYMEX by more than 20 large energy companies.

Plaintiffs alleged that Defendants, including El Paso, Duke, Reliant, and AEP Energy Services, Inc., manipulated the prices of NYMEX natural gas futures contracts by making false reports of the price and volume of their trades to publishers of natural gas price indices across the United States, including Platts. Lowey Dannenberg won significant victories throughout the litigation, including:

> defeating Defendants' motions to dismiss (*In re Natural Gas*, 337 F. Supp. 2d 498 (S.D.N.Y. 2004));

> prevailing on a motion to enforce subpoenas issued to two publishers of natural gas price indices for the production of trade report data (*In re Natural Gas*, 235 F.R.D. 199 (S.D.N.Y. 2005)); and

> successfully certifying a class of NYMEX natural gas futures traders who were harmed by defendants' manipulation of the price of natural gas futures contracts traded on the NYMEX from January 1, 2000 to December 31, 2002. *In re Natural Gas*, 231 F.R.D. 171, 179 (S.D.N.Y. 2005), *petition for review denied, Cornerstone Propane Partners, LP, et al. v. Reliant Energy Services, Inc., et al.*, Docket No. 05-5732 (2d Cir. August 1, 2006).

The total settlement obtained in this complex litigation—$101 million—was at the time, the **third largest** recovery in the history of the CEA.

## Amaranth

Lowey Dannenberg served as co-lead counsel in *In re Amaranth Natural Gas Commodities Litigation*, Master File No. 07 Civ. 6377 (S.D.N.Y) (SAS) ("*Amaranth*"), a certified CEA class action alleging manipulation of NYMEX natural gas futures contract prices in 2006 by Amaranth LLC, one of the country's largest hedge funds prior to its widely-publicized multi-billion dollar collapse in September 2006. Significant victories Lowey Dannenberg achieved in the *Amaranth* litigation include:

> On April 27, 2009, Plaintiffs' claims for primary violations and aiding-and-abetting violations of the CEA against Amaranth LLC and other Amaranth defendants were sustained. *Amaranth*, 612 F. Supp. 2d 376 (S.D.N.Y. 2009).

> On April 30, 2010, the Court granted Plaintiffs' motion for pre-judgment attachment pursuant to Rule 64 of the Federal Rules of Civil Procedure and Section 6201 of the New York Civil Practice Law and Rules against Amaranth LLC, a Cayman Islands company and the "Master Fund" in the Amaranth master-feeder-fund hedge fund family. *Amaranth*, 711 F. Supp. 2d 301 (S.D.N.Y. 2010).

> On September 27, 2010, the Court granted Plaintiffs' motion for class certification. *Amaranth*, 269 F.R.D. 366 (S.D.N.Y. 2010). In appointing Lowey Dannenberg as co- lead counsel for plaintiffs and the Class, the Court specifically noted "the impressive resume" of Lowey Dannenberg and that "Plaintiffs' counsel has vigorously represented the interests of the class throughout this litigation." On December 30, 2010, the Second Circuit Court of Appeals denied Amaranth's petition for appellate review of the class certification decision.

> On April 11, 2012, the Court entered a final order and judgment approving the $77.1 million settlement reached in the action. The $77.1 million settlement is **more than ten times greater** than the $7.5 million joint settlement achieved by the Federal Energy Regulatory Commission ("FERC") and the Commodity Futures Trading Commission ("CFTC") against Amaranth Advisors LLC and at that time, represented the **fourth largest** class action recovery in the 85-plus year history of the CEA.

## Pacific Inv. Mgmt. Co. ("PIMCO")

Lowey Dannenberg served as counsel to certified class representative Richard Hershey in a class action alleging manipulation by PIMCO of the multi-billion-dollar market of U.S. 10-Year Treasury Note futures contracts traded on the Chicago Board of Trade ("CBOT"). *Hershey v. Pacific Inv. Management Co. LLC*, 571 F.3d 672 (7th Cir. 2009). The case settled in 2011 for $118.75 million, the **second largest** recovery in the history of the CEA at that time.

## Optiver

Lowey Dannenberg acted as co-lead counsel in a proposed class action alleging that Optiver US, LLC and other Optiver defendants manipulated NYMEX light sweet crude oil, heating oil, and gasoline futures contracts prices in violation of the Sherman Antitrust Act and CEA. *In re Optiver Commodities Litigation*, Case No. 08 CV 6842 (S.D.N.Y.) (LAP), Pretrial Order No. 1, dated February 11, 2009. The Honorable Loretta A. Preska of the Southern District of New York granted final approval of a $16.75 million settlement in June 2015.

## White v. Moore Capital Management, L.P.

Lowey Dannenberg acted as counsel to a class representative in an action alleging manipulation of NYMEX palladium and platinum futures prices in 2007 and 2008 in violations of the Sherman Antitrust Act, CEA, and RICO. *White v. Moore Capital Management, L.P.*, Case No. 10 CV 3634 (S.D.N.Y.) (Pauley, J.). Judge William H. Pauley III granted final approval of a settlement in the amount of $70 million in 2015.

## In re Crude Oil Commodity Futures Litigation

Lowey Dannenberg served as counsel to a class representative and large crude oil trader in a Sherman Antitrust Act class action involving the alleged manipulation of NYMEX crude oil futures and options contracts. *In re Crude Oil Commodity Futures Litigation*, Case No. 11-cv-03600 (S.D.N.Y.) (Forrest, J.). The Court granted final approval to a $16.5 million settlement in January 2016.

## Kraft Wheat Manipulation

Lowey Dannenberg serves as court-appointed co-lead counsel for a class of wheat futures and options traders pursuing claims against Kraft Foods Group, Inc. and Mondelēz Global LLC (collectively, "Kraft"), alleging Kraft manipulated the prices of Chicago Board of Trade wheat futures and options contracts. On June 27, 2016, Judge Edmond E. Chang denied Kraft's motion to dismiss Plaintiffs' CEA, Sherman Act and common law unjust enrichment claims relating to Kraft's alleged "long wheat futures scheme." *See Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037 (N.D. Ill. 2016). On January 3, 2020, Judge Chang certified a class of wheat futures and options traders to bring the claims in the case. *See Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003 (N.D. Ill. 2020). Kraft filed a petition to the United States Court of Appeals for the Seventh Circuit, seeking permission to immediately appeal Judge Chang's certification of the class, which was denied on February 21, 2020. The case is currently pending before Judge John F. Kness in the Northern District of Illinois.

## Lansing Wheat Manipulation

Lowey Dannenberg served as co-lead counsel for a class of wheat futures and options traders pursuing claims against Lansing Trade Group, LLC and Cascade Commodity Consulting, LLC, alleging they manipulated the prices of Chicago Board of Trade wheat futures and options contracts in 2015. *See Budicak, et al. v. Lansing Trade Group, LLC, et al.*, No. 19 CV 2499 (JAR) (D. Kan.). On March 25, 2020, Chief District Judge Julie A. Robinson denied Defendants' motions to dismiss and sustained claims under the Sherman Act, the CEA, and for unjust enrichment. *Budicak, Inc. v. Lansing Trade Grp., LLC*, No. 2:19-CV-2449-JAR-ADM, 2020 WL 2892860 (D. Kan. Mar. 25, 2020). On June 16, 2023, Judge Toby Crouse granted final approval of proposed settlements with Lansing Trade Group and Cascade Commodity Consulting totaling $18 million.

## The Andersons Wheat Manipulation

Lowey Dannenberg is leading the prosecution of claims on behalf of a class of wheat futures and options traders against The Andersons, Inc. for alleged manipulation of the wheat futures and options market in the fourth quarter of 2017. On July 9, 2021 and May 3, 2022, respectively, the Court denied Defendants' motions to dismiss in their entirety. *Dennis v. The Andersons Inc.*, Case No. 20-cv-04090 (N.D. Ill.).



## SPOOFING LITIGATION

Lowey Dannenberg continues to innovate and is at the forefront of litigation under the CEA arising from claims of market participants spoofing various futures markets.

### In re JPMorgan Precious Metals Spoofing Litigation

Lowey Dannenberg serves as Court-appointed sole Lead Counsel in a commodities manipulation class action against JPMorgan and several of its traders, alleging spoofing in the market for precious metals futures and options between 2009 and 2015. On July 7, 2022, the Court granted final approval of a $60 million settlement with JPMorgan. *In re JPMorgan Precious Metals Spoofing Litigation*, No. 18-CV-10356 (S.D.N.Y.).

### JPMorgan Treasuries Spoofing

On October 9, 2020, the Court appointed Lowey Dannenberg to serve as Interim Co-Lead Counsel in a commodities manipulation class action against JPMorgan, alleging manipulation in the market for U.S. Treasuries futures and options between 2009 and the present. On June 3, 2022, the Court granted final approval of a $15.7 million settlement with JPMorgan. *In re JPMorgan Treasuries Spoofing Litigation*, No. 20-CV-3515 (S.D.N.Y.).

### Boutchard, et al. v. Gandhi, et al. — E-mini Index Futures Spoofing

Lowey Dannenberg prosecuted claims on behalf of a class of investors that transacted E-mini Index Futures (e.g., Dow, S&P, Nasdaq) and options against Tower Research Capital LLC and several of its traders for alleged spoofing violations between 2012 and 2014. On July 30, 2021, Judge John J. Tharp, Jr. granted final approval of a $15 million settlement with Tower. *Boutchard v. Gandhi et al*, No. 18-CV-07041 (N.D. Ill).

### Deutsche Treasury and Eurodollar Spoofing

On September 1, 2020, Lowey Dannenberg was appointed Interim Co-Lead Counsel in a commodities manipulation class action against Deutsche Bank, alleging manipulation in the market for U.S. Treasury and Eurodollar futures and options throughout 2013. The case is pending before Judge Joan B. Gottschall in the Northern District of Illinois, *Rock Capital Markets, LLC v. Deutsche Bank Securities Inc.*, No. 20-CV-3638.



# Healthcare: Prescription Overcharge Antitrust Litigation

Lowey Dannenberg is the nation's premier pharmaceutical recovery law firm. It is known in the healthcare industry for its market-leading initiatives, depth of experience, and consistent results. The Firm's advice is valued by the largest health benefits companies in the United States, including Aetna CVS, Anthem, the Blue Cross and Blue Shield Association, Cigna, HCSC, Humana, and numerous other companies. Lowey Dannenberg's expertise was highlighted when Aetna and Humana each identified Lowey as a "Go-to Law Firm" for litigation services Corporate Counsel magazine's *"In House Law Departments at the Top 500 Companies."*

Health insurers routinely turn to Lowey Dannenberg for its industry expertise, particularly in the areas of:

> **Defective Drugs and Products** – Litigating on behalf of insurers to recover overpayments for defective drugs and medical products, including those manufactured in violation of FDA standards

> **Prescription Drug and Device Price Manipulation** – Recovering overcharges from prescription drug and medical device price manipulation, including "generic delay" cases, price fixing, and "off-label" marketing

> **Lien Recovery** – Prosecuting and negotiating medical lien reimbursements in mass tort litigation

> **Class Action Defense** – Representing health insurers facing class actions in state and federal courts

### Drugs Failing to Meet FDA's Manufacturing Standards

> *Blue Cross Blue Shield Ass'n, et al. v. GlaxoSmithKline LLC.* Lowey Dannenberg and its co-counsel represented 39 health insurers (accounting for 60% of the U.S. market for non-governmental health insurance) in a novel recovery action seeking billions in damages against British drug maker GlaxoSmithKline for selling prescription drugs manufactured under conditions that amounted to egregious violations of federal standards. After defeating summary judgment (*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531 (E.D. Pa. 2019)), the parties confidentially settled on the literal eve of trial.

> *Rezulin Litigation.* Lowey Dannenberg, representing a class of endpayers, made law that has influenced every third party payer prescription drug case since. Louisiana BlueCross BlueShield ("LABCBS"), sued Warner Lambert and Pfizer for alleged misrepresentations about the qualities of their antidiabetic medication, Rezulin, injuring LABCBS in excessive purchases of the drug. Lowey successfully argued to reverse dismissal of LABCBS' class action in a precedent-setting appeal to the Second Circuit. This case established the direct rights (as contrasted with derivative, and more limited, subrogation rights) of third-party payers to sue pharmaceutical manufacturers for drug overcharges for defective drugs. *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003).

### "Pay-for-Delay" Antitrust Claims

> **Aggrenox Generic Delay Litigation:** Lowey Dannenberg represented Humana and 10 other health insurers in a generic delay antitrust case against defendant Boehringer Ingelheim Pharmaceuticals, Inc., the Aggrenox brand manufacturer, and generic manufacturer Barr Pharmaceuticals Inc. (later acquired by Teva Pharmaceuticals), before Judge Stefan R. Underhill in the District of Connecticut in connection with their antitrust claims. Class actions on behalf of direct purchasers reached a $146 million settlement and indirect purchasers reached a $54 million settlement. The litigation asserted claims under state antitrust law, claiming a $100 million co-promotion agreement was a disguised pay-for-delay, and as a result, insurers overpaid for Aggrenox. Lowey achieved confidential settlements on behalf of Humana and several other health insurers who opted-out of the class to separately litigate their claims. *Humana Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG*, et al., No. 3:14-cv-00572 (D. Conn.).

> **Lidoderm Generic Delay Litigation:** Lowey Dannenberg represented 21 health insurers in connection with their antitrust claims against sellers of branded and generic Lidoderm. *Government Employees Health Association v. Endo Pharmaceuticals, Inc., et al.*, No. 3:14-cv-02180-WHO (N.D. Cal.).

Case 2:19-cv-06019-KBH    Document 460-3    Filed 10/21/24    Page 109 of 185

> **Hytrin Generic Delay Litigation:** Lowey Dannenberg represented a class of health insurers asserting antitrust claims against Abbott Laboratories and Geneva Pharmaceuticals, sellers of branded and generic Hytrin, and ultimately settled the case for $28.7 million. *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99-MD-01317 (S.D. Fl.).

> **Cardizem CD Generic Delay Litigation:** In 1998, Lowey Dannenberg filed the first-ever generic delay class action antitrust cases for endpayers (a term reflecting consumers and health insurers). Those cases were centralized by the Judicial Panel on Multidistrict Litigation ("JPML") under the caption *In re Cardizem CD Antitrust Litigation*, MDL No. 1278 (E.D. Mich.). After the court certified a class (200 F.R.D. 326 (E.D. Mich. 2001)) and affirmed partial summary judgment for plaintiffs (332 F.3d 896 (6th Cir. 2003)), the case was settled for $80 million.

> *Federal Trade Commission v. Actavis*, 570 U.S. 756 (2013). America's Health Insurance Plans (AHIP), the national trade association representing health insurers, retained Lowey Dannenberg to represent it before the United States Supreme Court as *amicus curiae* in a seminal "pay-for-delay" pharmaceutical case. *Federal Trade Commission v. Actavis*, 570 U.S. 756 (2013).

## Price Fixing of Pharmaceutical Drugs

> **Generic Pharmaceuticals Price Fixing.** Lowey Dannenberg represents 39 of the nation's largest health insurers, including Anthem, Aetna, Humana, and 23 BlueCross BlueShield licensees in connection with their claims relating to widespread price-fixing of generic pharmaceutical products. Lowey Dannenberg's clients collectively purchased billions of dollars of these drugs during the alleged price-fixing conspiracies. Some of this litigation has been centralized before the Honorable Cynthia M. Rufe in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.).

## Product Hopping Claims

> On July 8, 2024, Plaintiffs Aetna, Inc. Blue Cross Blue Shield of Massachusetts, Inc., Health Care Service Corp., Blue Cross Blue Shield of Florida, Inc., and Molina Healthcare, Inc., represented by Lowey Dannenberg, settled their Suboxone-related fraud and antitrust claims with Defendants Indivior Inc. and Indivior Solutions Inc. for $85 million. Plaintiffs, who opted out of an End-Payor class in the In re Suboxone MDL, filed suit in the Fall of 2020 in Circuit Court of Virginia, Roanoke County, alleging that Indivior, manufacturer of Suboxone, an opioid treatment medication, engaged in a fraudulent and anticompetitive "product hop" scheme designed to prevent generic competition by converting the market from Suboxone tablets to Suboxone film. The $85 million settlement is one of the highest "opt out" pharmaceutical drug recovery settlements on record. Health Care Service Corp. v. Indivior Inc., et al., CL20-1474 (Va. Cir. Ct. Jul 31, 2020)

## Deceptive Marketing Claims

> *In re Neurontin Marketing and Sales Practices Litig.* Lowey represented Aetna in an individual action seeking recovery against Pfizer for its off-label marketing of Neurontin and served as class counsel on the Plaintiffs' Steering Committee. The firm secured the first-ever verdict in history against a pharmaceutical manufacturer finding it engaged in a RICO enterprise by fraudulently marketing its drug, resulting in a $142 million trebled award. This pivotal decision reversed a negative trend in off-label drug marketing cases. The Court's conclusion that "Aetna's economic injury was a foreseeable and natural consequence" of Pfizer's scheme represents a common-sense application of the law to the economic realities of the prescription drug market.

> Lowey later argued and won a landmark RICO decision in the United States Court of Appeals for the First Circuit, holding drug manufacturers accountable to health insurers for damages attributable to marketing fraud. *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 51 (1st Cir. 2013).

> *Warfarin Sodium Antitrust Litig.* Lowey Dannenberg represented health insurers asserting antitrust and unfair trade practices claims against DuPont Pharmaceuticals Company. *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3rd Cir. 2004).

## Class Action Defense/Lien Recovery Cases

> Lowey Dannenberg secured judgments dismissing the class action lawsuits, which sought to apply New York State's anti-subrogation law to void health insurance plans' subrogation and reimbursement rights in New York. *Meek-Horton v. Trover, et al.*, 910 F. Supp. 2d 690 (S.D.N.Y. 2013); *Potts v. Rawlings Co. LLC*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012).

> Lowey Dannenberg defended Aetna and secured judgments dismissing the class action lawsuits seeking to bar certain reimbursement lien recoveries under New Jersey law. *Minerley v. Aetna, Inc.*, No. 13-cv-1377, 2019 WL 2635991 (D.N.J. June 27, 2019), *aff'd*, No. 19-2730, 2020 WL 734448 (3d Cir. Feb. 13, 2020) and *Roche v. Aetna, Inc.*, 165 F. Supp. 3d 180 (D.N.J. 2016), *aff'd*, 681 F. App'x 117 (3d Cir. 2017).

> Lowey Dannenberg successfully established Medicare Advantage Organizations' reimbursement recovery rights under the Medicare Secondary Payer Act. *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 685 F.3d 353, 367 (3d Cir. 2012).



# Consumer Protection

Lowey Dannenberg has served as lead or co-lead counsel in many challenging consumer protection cases. The firm has recovered millions of dollars on behalf of consumers injured as a result of unfair business practices. The firm's Consumer Protection Group has experience litigating class actions under state and federal consumer protection law and before state and federal courts.

### In re FedLoan Student Loan Servicing Litigation

Attorneys from Lowey Dannenberg were appointed by Judge C. Darnell Jones, II as Co-Lead Counsel and Executive Committee members in *In re FedLoan Student Loan Servicing Litigation*, No. 18-MD-2833 (E.D. Pa.) ("*FedLoan*"). Lowey Dannenberg filed the first action in the *FedLoan* litigation alleging that one of the nation's largest student loan servicers, the Pennsylvania Higher Education Assistance Agency, failed to properly service student loans in order to maximize the fees it received from the Department of Education under its loan servicing contract. Lowey Dannenberg also brought claims against the U.S. Department of Education for failing to comply with the Higher Education Act and its own regulations and rules. The alleged scheme harmed student loan borrowers by causing them to accrue additional interest on their loans, improperly extending their repayment terms, and erroneously placing their loans into forbearance. The litigation is ongoing.

### Greg Walker et al v. Central Hudson Gas and Electric Corp.

Lowey Dannenberg represents a class of consumers seeking to redress the deceptive business acts and practices of Central Hudson Gas & Electric Corp. that have caused thousands of New York consumers to pay considerably more for their electricity and gas than they should otherwise have paid absent Central Hudson's misconduct. The case is currently pending before Judge Acker in Dutchess County Supreme Court. *Greg Walker et al v. Central Hudson Gas and Electric Corp*, Index No. 2023-50074 (Sup. Ct. Dutchess Co. Jan. 6, 2023).

### In Re Archstone Westbury Tenant Litigation

As lead counsel, Lowey Dannenberg successfully represented a class of renters of mold-infested apartments in a $6.3 million settlement of a complex landlord-tenant class action in *In Re Archstone Westbury Tenant Litigation*, Index No. 21135/07 (N.Y. Sup. Ct. Nassau County).

### Broder v. MBNA Corp.

Lowey Dannenberg served as Lead Counsel in *Broder v. MBNA Corp.*, No. 605153/98 (Sup. Ct., N.Y. County), and recovered $22.8 million dollars on behalf of a class of holders of credit cards issued by MBNA Bank, who took cash advances in response to a deceptive MBNA promotion. The Court noted that Lowey Dannenberg is an "able law firm having long-standing experience in commercial class action litigation."

### Snyder v. Nationwide Insurance Company

In *Snyder v. Nationwide Insurance Company*, Index No. 97/0633 (Sup. Ct. Onondaga Co. December 17, 1998), Lowey Dannenberg, as co-lead counsel, secured a $100 million dollar settlement for consumers purchasing "vanishing premium" life insurance policies. In approving the settlement, the Court found that the attorneys of Lowey Dannenberg are "great attorneys" who did a "very, very good job" for the class.

### Lyons v. Litton Loan Servicing LP

In *Lyons v. Litton Loan Servicing LP, et al.*, No. 13-cv-00513 (S.D.N.Y.), Lowey Dannenberg served as Class Counsel and recovered $4.1 million on behalf of a class of homeowners alleging that mortgage servicers colluded to force them to buy unnecessary lender-placed insurance.

### In re Warfarin Sodium Antitrust Litigation

In *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3rd Cir. 2004), the Third Circuit Court of Appeals affirmed the United States District Court for the District of Delaware's approval of a $44.5 million class action settlement paid by DuPont Pharmaceuticals to consumers and third-party payers nationwide to settle claims of unfair marketing practices in connection with the prescription blood thinner, Coumadin. Lowey Dannenberg, appointed by the District Court to the Plaintiffs' executive committee as the representative of third-party payers, successfully argued the appeal.

# Lowey Dannenberg's Recognized Expertise

Courts have repeatedly recognized the attorneys of Lowey Dannenberg as expert practitioners in the field of complex litigation.

For example, on March 15, 2013, the Honorable Colleen McMahon of the United States District Court for the Southern District of New York granted final approval of the $219 million settlement of Madoff feeder-fund litigation encompassing the In re Beacon and In re Jeanneret class actions. In a subsequent written decision, with glowing praise, Judge McMahon stated:

> "The quality of representation is not questioned here, especially for those attorneys (principally from Lowey Dannenberg) who worked so hard to achieve this creative and, in my experience, unprecedented global settlement."

> "I thank everyone for the amazing work that you did in resolving these matters. **Your clients—all of them—have been well served.**"

> "Not a single voice has been raised in opposition to this remarkable settlement, or to the Plan of Allocation that was negotiated by and between the Private Plaintiffs, the NYAG and the DOL."

> "All formal negotiations were conducted with the assistance of two independent mediators - one to mediate disputes between defendants and the investors and another to mediate claims involving the Bankruptcy Estate. Class Representatives and other plaintiffs were present, in person or by telephone, during the negotiations. The US Department of Labor and the New York State Attorney General participated in the settlement negotiations. **Rarely has there been a more transparent settlement negotiation. It could serve as a prototype for the resolution of securities-related class actions, especially those that are adjunctive to bankruptcies.**"

> "**The proof of the pudding is that an astonishing 98.72% of the Rule 23(b)(3) Class Members who were eligible to file a proof of claim did so (464 out of 470), and only one Class Member opted out [that Class Member was not entitled to recover anything under the Plan of Allocation]. I have never seen this level of response to a class action Notice of Settlement, and I do not expect to see anything like it again.**"

> "**I am not aware of any other Madoff-related case in which counsel have found a way to resolve all private and regulatory claims simultaneously and with the concurrence of the SIPC/Bankruptcy Trustee. Indeed, I am advised by Private Plaintiffs' Counsel that the Madoff Trustee is challenging settlements reached by the NYAG in other feeder fund cases [Merkin, Fairfield Greenwich] which makes the achievement here all the more impressive.**"

In *Juniper Networks, Inc. Securities Litigation*, the court, in approving the settlement, acknowledged that "[t]he successful prosecution of the complex claims in this case required the participation of highly skilled and specialized attorneys." *In re Juniper Networks, Inc.*, C06-04327, Order dated August 31, 2010 (N.D. Cal.). In the WorldCom Securities Litigation, the court repeatedly praised the contributions and efforts of the firm. On November 10, 2004, the court found that "the Lowey Firm . . . has worked tirelessly to promote harmony and efficiency in this sprawling litigation .

[Lowey Dannenberg] has done a superb job in its role as Liaison Counsel, conducting itself with professionalism and efficiency . . . ." *In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288, 2004 WL 2549682, at *3 (S.D.N.Y. Nov. 10, 2004).

In the *In re Bayer AG Securities Litigation*, 03 Civ. 1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) order approving a settlement of $18.5 million for the class of plaintiffs, Judge William H. Pauley III noted that the attorneys from Lowey Dannenberg are "nationally recognized complex class action litigators, particularly in the fields of securities and shareholder representation," that "provided high-quality representation."

In the *In re Luminent Mortgage Capital, Inc., Securities Litigation*, No. C07-4073 (N.D. Cal.) hearing for final approval of settlement and award of attorneys' fees, Judge Phyllis J. Hamilton noted that "[t]he $8 million settlement . . . is excellent, in light of the circumstance." Judge Hamilton went on to say that "most importantly, the reaction of the class has been exceptional with only two opt- outs and no objections at all received." *See* Tr. of Hearing on Plaintiff's Motion for Final Approval of Settlement/Plan of Allocation and for an Award of Attorneys' Fees and Reimbursement of Expenses, *In re Luminent Mortgage Capital, Inc., Securities Litigation*, No. C07-4073-PJH (N.D. Cal. Apr. 29, 2009), ECF No. 183.





info@lowey.com

**New York**
44 South Broadway
Suite 1100
White Plains, NY 10601
(914) 997-0500

**Pennsylvania**
One Tower Bridge, 100 Front St.
Suite 520
West Conshohocken, PA 19428
(215) 399-4770

***Christian Levis – Head of Lowey's Data Breach and Data Privacy Practice Group***



Christian Levis
44 S. Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
Email: clevis@lowey.com

Christian Levis is a partner at Lowey Dannenberg, P.C., and head of the firm's data breach and privacy practice group. He also has extensive experience litigating class actions across various practice areas, including antitrust, commodities, and consumer protection. Mr. Levis has litigated against some of the largest corporations in the world and has achieved substantial recoveries on behalf of plaintiffs such as the California State Teachers' Retirement System, the nation's largest educator-only pension fund, and the Treasurer of the Commonwealth of Pennsylvania.

## Notable Data Breach & Privacy Cases:

*In re Google Assistant Privacy Litig.*, Case No. 19-cv-04286 (N.D. Cal.), Mr. Levis is class counsel for a certified class of purchasers of Google-made devices (e.g., Google Home speakers, and Pixel phones) in the United States. The case centers on Google alleged unauthorized recording of Google Assistant users in the absence of "Hey Google" or "Ok Google" and subsequent use of that audio.

*Lopez v. Apple, Inc.*, Case No. 19-cv-04577 (N.D. Cal.). Mr. Levis also leads the prosecution of a similar privacy action arising out of the alleged unauthorized recording of consumers by Apple through its Siri virtual assistant. Plaintiffs defeated Apple's motion to dismiss those claims in 2021 and are currently working towards class certification.

*Barr v. Drizly, LLC f/k/a Drizly, Inc., et al.*, Case No. 1:20-cv-11492 (D. Mass.). Mr. Levis served as co-lead counsel representing a class of 2.5 million consumers impacted by a data breach impacting the popular liquor delivery app. The court granted final approval to a settlement recovering $7.10 million in monetary and other financial relief for class members in 2021.

*Doe v. GoodRx Holdings Inc., et al.*, Case No. 3:23-cv-00501 (N.D. Cal.). Mr. Levis is co-lead counsel in this class action alleging that GoodRx improperly disclosed medical information, including regarding class members' prescription drugs, to third-party advertisers and analytics companies. Plaintiffs recently reached an agreement in principle with GoodRx to resolve the action. The case continues against the remaining defendants.

*Laskowski v. Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*, Case No. 8:23-cv-00456 (M.D. Fla.). Mr. Levis represents a class of patients harmed as a result of Tampa General's allegedly improper disclosure medical information to third-party advertisers. Plaintiffs recently reached an agreement in principle with Tampa General to resolve the action.

*In Re: Data Security Cases Against NELNET SERVICING, LLC*, Case No. 4:22-cv-03191 (D. Neb.). Mr. Levis serves as co-lead counsel in this data breach class action alleging that student loan servicer Nelnet improperly disclosed borrowers' sensitive financial information. Plaintiffs recently moved for preliminary approval of a $10 million settlement that would resolve this action.

*Rand v. The Travelers Indemnity Company*, Case No. 7:21-cv-10744 (S.D.N.Y.). Mr. Levis is co-lead counsel in class action alleging that Travelers violated individuals' privacy rights when it disclosed driver's license information without consent though its web portal. This action recently settled for $6 million and is awaiting court approval.

*Dolan v. United Services Automobile Association*, Case No. 7:21-cv-05813(S.D.N.Y.). Mr. Levis is also co-lead counsel in a similar case involving USAA and the alleged unauthorized disclosure of driver's license information though its web portal.

**Other Notable Cases:**

*Bond Rigging*: Mr. Levis represented the Treasurer of the Commonwealth of Pennsylvania as court appointed co-lead counsel in *In re GSE Bonds Antitrust Litigation*, Case No. 19-cv-1704 (JSR) (S.D.N.Y.) ("*GSE Bonds*"), a class action against sixteen of the world's largest banks alleging a conspiracy to fix the prices of debt securities issued by government sponsored entities. Plaintiffs reached settlements totaling more than $386 million, resulting in a substantial recovery for bond investors nationwide. These settlements also obligated defendants to adopt and maintain remedial measures, including compliance reforms designed to detect and prevent anticompetitive conduct in the GSE bond market. Mr. Levis and 4 other Lowey Dannenberg attorneys received the American Antitrust Institute award for Outstanding Antitrust Litigation Achievement in Private Law Practice as recognition for these significant results.

*Benchmark Manipulation*: Mr. Levis played an integral role in several class actions involving the manipulation of IBOR-denominated financial instruments, in which Lowey served as either sole or co-lead counsel. *See, e.g., Laydon v. Mizuho Bank, Ltd.*, Case No. 12-cv-03419 (S.D.N.Y); *Sullivan v. Barclays PLC*, Case No. 13-cv-02811 (S.D.N.Y.); *In re: London Silver Fixing Ltd. Antitrust Litigation*, Case No. 14-md-02573 (S.D.N.Y.); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, Case No. 15-cv-871 (S.D.N.Y). Collectively these actions have resulted in over $820 million in settlements.

In 2023, Mr. Levis received the American Antitrust Institute award for Outstanding Achievement by a Young Lawyer for his work on *Fund Liquidation Holdings, LLC v. Citibank N.A. et. al.*, Case No. 16-cv-5263 (S.D.N.Y.), an antitrust class action alleging that a group of banks manipulated the Singapore Interbank Offered Rate. After extensive litigation both at the district court and appellate level, the case ultimately settled for more than $170 million.

# EXHIBIT D



**FIRM RESUME
HAUSFELD PRIVACY & DATA BREACH**

# About Hausfeld

In the last decade, Hausfeld attorneys have won landmark trials, negotiated complex settlements among dozens of defendants, and recovered billions of dollars for clients both in and out of court. Renowned for skillful prosecution and resolution of complex and class-action litigation, Hausfeld is the only claimants' firm to be ranked in the top tier of private enforcement of antitrust/competition law, as well as a firm to watch in privacy law, in both the United States and the United Kingdom by *The Legal 500* and *Chambers and Partners*. Our German office is also ranked by *The Legal 500* for general competition law.

From our locations in Washington, D.C., Boston, New York, Philadelphia, San Francisco, Amsterdam, Berlin, Brussels, Düsseldorf, Hamburg, Stockholm, and London, Hausfeld contributes to the development of law in the United States and abroad in the areas of Antitrust/Competition, Commercial and Financial Disputes, Environmental and Product Liability, Human Rights, and Privacy & Data Breach. Hausfeld attorneys have studied the global integration of markets—and responded with innovative legal theories and a creative approach to claims in developed and emerging markets.

Hausfeld was founded by Michael D. Hausfeld, who is widely recognized as one of the country's top civil litigators and a leading expert in the fields of private antitrust/competition enforcement and international human rights. The *New York Times* has described Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers," while *Washingtonian* characterizes him as a lawyer who is "determined to change the world—and succeeding," noting that he "consistently brings in the biggest judgments in the history of law."

## Privacy & Data Breach

Hausfeld has long been recognized as a leader in cybersecurity and privacy litigation and has been involved in many of the largest and most cutting-edge data breach and privacy cases – both in the United States and in Europe. Hausfeld's Technology & Data Breach attorneys have led dozens of cases and been pioneers in seeking compensation for victims of data breaches and privacy violations. Hausfeld has also contributed to the development of privacy law in the United States and abroad. We have recovered billions of dollars of benefits for consumers and other entities in legal actions against retailers, healthcare companies, credit bureaus, and others whose ineffective security measures led to the exfiltration of private information. We have also been pioneers in seeking enhanced business practice changes to ensure that such data is protected in the future.

Hausfeld's accolades in the cybersecurity world are unmatched. Hausfeld is the only plaintiffs' firm in the country ranked by *Legal500* in Cyber Law (including data privacy and data protection). *Chambers and Partners* ranks the leading lawyers and law firms across the world. In 2024, it ranked Jamie Pizzirusso, Hausfeld's Techynolgy & Data Breach practice group leader, (for the fourth year in a row) as a top lawyer in "Privacy and Data Security: Litigation." It described Mr. Pizzirusso as "a highly experienced litigator, noted for his successful track record acting for plaintiffs in high-stakes cybersecurity and privacy law class actions." Hausfeld is also the only Plaintiffs' firm in the country to be ranked for the third year in a row by *Chambers* in the category of Privacy & Data Security: Litigation, Nationwide where they wrote: "Hausfeld's team is talented across the board, it contains some of the hardest-working and smartest lawyers." In 2024, *The National Law Journal* recognized Hausfeld as the top firm in the Privacy/Data Breach category in their Elite Trial Lawyer awards. The *The National Law Journal* also named Mr. Pizzirusso as one of its "2023 Class Action/Mass Tort Trailblazers" for his work on data breach and privacy cases and in 2017 as a "Cybersecurity Trailblazer." In 2020, *The National Law Journal* recognized Mr. Pizzirusso as a "Washington Trailblazer" for his role in data breach and privacy matters. *Law360* recognized Hausfeld as having a "2021

# HAUSFELD
## FOR THE CHALLENGE

Practice Group of the Year" in Cybersecurity & Privacy. Additionally, in 2021, Mr. Pizzirusso was personally named as one of *Law360's* "Cybersecurity & Privacy MVPs" (the only plaintiffs' attorney to receive that distinction). *SuperLawyers* has recognized Mr. Pizzirusso as a "Top Rated Class Action & Mass Torts Attorney" in Washington, DC since 2016 and Lawdragon has named him as one of 500 Leading Plaintiff Consumer Lawyers since 2019.



**Hausfeld, which 'commits extensive resources to the most difficult cases,' widely hails as one of the few market-leading plaintiff firms.**
*The Legal 500*

## Hausfeld: a global reach

Hausfeld's international reach enables it to advise across multiple jurisdictions and pursue claims on behalf of clients worldwide. Hausfeld works closely with clients to deliver outstanding results while always addressing their business concerns. Hausfeld does so by anticipating issues, considering innovative strategies, and maximizing the outcome of legal disputes in a way that creates shareholder value. The firm's inventive cross border solutions work to the benefit of the multinational companies it often represents.

### Creative solutions to complex legal challenges

Hausfeld lawyers consistently apply forward-thinking ideas and creative solutions to the most vexing global legal challenges faced by clients. As a result, the firm's litigators have developed numerous innovative legal theories that have expanded the quality and availability of legal recourse for claimants around the globe that have a right to seek recovery. Hausfeld's impact was recognized by the *Financial Times*, which honored Hausfeld's European team with the "Innovation in Legal Expertise - Dispute Resolution," award, which was followed up by FT commending Hausfeld's North American team for its innovative work in the same category. In addition, *The Legal 500* has ranked Hausfeld as the only top tier claimants firm in private enforcement of antitrust/competition law in both the United States and the United Kingdom. For example, the landmark settlement that Hausfeld negotiated to resolve claims against Parker ITR for antitrust overcharges on marine hoses represented the first private resolution of a company's global cartel liability without any arbitration, mediation, or litigation—creating opportunities never before possible for dispute resolution and providing a new model for global cartel settlements going forward.

## Unmatched global resources

The firm combines its U.S. offices on both coasts and vibrant European presence with a broad and deep network around the globe to offer clients the ability to seek redress or dispute conflicts in every corner of the world and across every industry. With over 165 lawyers in offices in Washington, D.C., Boston, New York, Philadelphia, San Francisco, Amsterdam, Berlin, Düsseldorf, Hamburg, Brussels, Stockholm, and London, Hausfeld is a "market leader for claimant-side competition litigation" (*The Legal 500*).

## Litigation achievements

Hausfeld has achieved groundbreaking decisions and settlements on behalf of victims of data breach and privacy violations, including:

*In re: T-Mobile Customer Data Security Breach Litigation MDL* Represented a class of plaintiffs, as co-lead counsel, whose data was exposed during a 2021 breach, securing a $350 million settlement and an agreement to increase data security spending by $150 million over the next two years, one of the largest per capita settlements ever reached in a large data breach.

*In re Marriott International Inc., Customer Data Security Breach Litig.* Representing a class of plaintiffs as co-lead plaintiffs' counsel against hotel chain Marriott and its data security vendor Accenture. Hausfeld's filing came on the heels of Marriott's admission that approximately 5.25 million unencrypted passport numbers and 20.3 million encrypted passport numbers were among the sensitive customer records accessed by hackers. A federal judge in Maryland granted class certification in May 2022, issuing a 70-plus page opinion certifying the case for trial. The opinion allows the plaintiffs to seek damages related to overpayment for hotel rooms, as well as statutory and nominal damages. The Court also found that consumers might be able to recover damages for the inherent value of their personal information stolen during the breach. This is by far the largest of any consumer data breach class action ever certified. An appeal is currently pending.

*In re Equifax, Inc. Customer Data Security Breach Litig.* Reached a $1.5 billion settlement for data breach victims as part of the court-appointed Plaintiffs' Steering and Settlement Committee. This massive 2017 breach exposed the Social Security numbers, birth dates, addresses, driver's licenses, and credit card numbers of millions of consumers. In 2021, the Eleventh Circuit Court of Appeals upheld the settlement over the appeal of several objectors making it the largest data breach settlement ever approved by a Circuit Court of Appeals.



FOR THE CHALLENGE

***In re TikTok, Inc. Consumer Privacy Litig.*** Obtained a $92 million settlement, one of the largest Biometric Information Protection Act ("BIPA") settlements ever, against popular app, TikTok. TikTok violated the Illinois BIPA laws, as well as numerous other privacy statutes, with its face capturing software that numerous minors and young adults use to share videos and messages.

***In re Target Corporation Customer Data Security Breach Litig.*** Secured a $60 million settlement to a nationwide class of financial institutions after class certification. This data breach was the largest data breach at the time, where financial institutions were forced to replace millions of credit cards. The settlement covered the out-of-pocket costs sustained due to the breach and required Target to implement numerous data security changes going forward.

***In re Premera Blue Cross Customer Data Sec. Breach Litig.*** Secured a $74 million settlement, as a member of the Executive Leadership Committee, on behalf of health insurance customers' whose data was stolen. Premera Blue Cross was aware of their inadequate data security when an employee opened a phishing email, giving hackers access to company data.

# JEANNINE M. KENNEY

Partner
Philadelphia

she / her / hers

✉ jkenney@hausfeld.com

📞 +1 215 309 7478

in LinkedIn



## / OVERVIEW

Jeannine joined the firm upon its inception in 2009, and her practice focuses primarily on private enforcement of federal and state antitrust laws.

Jeannine brings to her legal work nearly two decades of experience in public policy spanning a wide range of legislative and regulatory fields, including agriculture, food safety, telecommunications, and financial services, among others, advocating for the public interest and consumers. For nearly five years, she worked as a legislative assistant for two United States Senators. As a Senior Policy Analyst for Consumer Reports, she advocated for consumer interests before Congress and federal agencies, testifying before congressional committees, appearing as a speaker at Federal Trade Commission events, and presenting oral and written testimony to federal regulatory agencies. Jeannine also served as an appointed member of two federal advisory committees related to pesticide safety. Between stints at Consumers Union, she served as the Vice President of Domestic Affairs for the National Cooperative Business Association, representing member-owned consumer, producer, and purchasing cooperatives. From 2010 to 2011, Jeannine clerked for the Honorable Cynthia M. Rufe, United States District Court Judge, Eastern District of Pennsylvania.

Jeannine is adept and experienced in managing all aspects and phases of e-discovery, the complex process of discovering and producing electronically stored information (ESI). She routinely navigates detailed, complex and contentious ESI issues from dispute to resolution, including briefing and arguing e-discovery motions when necessary. As a member of the Sedona Conference's Working Group on Electronic Document Retention and Production, Jeannine counsels Hausfeld's litigation teams in negotiations relating to preservation, search, and production of ESI in cases often involving dozens of defendants, negotiates ESI search terms, technology assisted review (predictive coding) methodologies, and database disclosures and productions, and manages complex document reviews using advanced review analytics to speed discovery.

### Clients

Jeannine's clients run the gamut of industries and include payors of generic drugs, direct purchasers of eggs and potatoes, insurance subscribers, and student athletes, among others.

## / EDUCATION

Georgetown University Law Center J.D., magna cum laude, Order of the Coif, 2009
University of Wisconsin-Madison, B.A., Political Science and Economics, with distinction, 1988

## ◢ BAR ADMISSIONS

District of Columbia
Commonwealth of Pennsylvania
United States District Court for the Eastern District of Pennsylvania
United States District Court for the District of Columbia
United States Courts of Appeals for the 9th Circuit
United States Courts of Appeals for the District of Columbia

## ◢ AFFILIATIONS

Jeannine educates other practitioners on e-discovery realities, serving as a faculty coach to participants in Georgetown University's intensive eDiscovery Training Academy, and speaking at conferences regarding the complexities and ethical quandaries involved in the search for and production of ESI and the importance of cooperation among the parties. Jeannine also uses her antitrust expertise to educate the bar, serving as an instructor for ABA's Antitrust Masters Courts. Affiliations include:

- American Association for Justice Electronic Discovery Committee, Co-Chair
- Arizona State University Arkfeld 2024 eDiscovery Conference, Member, Advisory Committee
- Complex Litigation E-Discovery Forum, Board Member
- Global Advisory Council, Electronic Discovery Reference Model (EDRM), Member
- Georgetown Law Journal (2007-2009)
- Pennsylvania Association for Justice
- Philadelphia Bar Foundation, Board of Trustees
- Sedona Conference Working Group on Electronic Document Retention and Production, Member

## ◢ WHAT OTHERS SAY

**Chambers**
USA
- Band 1, E-Discovery & Information Governance: Plaintiffs - Nationwide (2021 – Present)
- Band 4, E-Discovery & Information Governance - Nationwide (2021 – Present)
Global Guide
- E-Discovery & Information Governance – USA (2022 - 2024)
"Noted for her ability to successfully litigate e-discovery matters on behalf of plaintiffs, including in data breaches and antitrust cases, among many others. A source reported, 'She is very tough, very knowledgeable and I really enjoy working with her.'" (Chambers US, E-Discovery & Information Governance, 2021)
**Lawdragon**
- 500 Leading Plaintiff Financial Lawyers since 2019
**Super Lawyers**
- Super Lawyer, Antitrust Litigation in Philadelphia since 2020
- Super Lawyer, Antitrust Litigation in Washington, DC in 2020
- Rising Star, Antitrust Litigation for five consecutive years from 2015-2019
**Other**
- International Academy of Trial Lawyers Student Advocacy Award: an honor given for her work as part of Georgetown University's Appellate Litigation Clinic in 2009.

# ✒ EVENTS

- "Drafting Team Report: Discovery-Related Sanction," The Sedona Conference Group 1, Mid-Year Meeting (April 2024), Panelist
- "Privilege Determinations and Logs: The Elusive Search for an Easy Button," Arizona State University Arkfeld eDiscovery, Law, and Technology Conference (March 2024), Moderator
- "Under Pressure: Adapt Your Ethics Mindset to the Adapting Workplace… or Bite the (Sanctions) Dust," Arizona State University Arkfeld eDiscovery, Law, and Technology Conference (March 2024), Panelist
- "WiE New York | Negotiating ESI Protocols - Panel Discussion - CLE & Dinner," Women in eDiscovery | NYC-Chapter (November 2023), Panelist
- "Discovery Sanctions," AAJ Annual Meeting (July 2023), Panelist
- "eDiscovery" Emerging Issues & Essential Strategies in Class Actions" Epiq's Class of Our Own Women's Summit (May 2023), Panelist
- "Ethical Obligations in ESI Disclosure and Negotiation," The Sedona Conference Working Group 1 Mid-Year Meeting (April 2023), Panelist
- "Latest Policy & Rule Updates," Complex Litigation e-Discovery Forum (March 2023), Discussion Leader
- "Class Certification," and "Pleading and Proving Conspiracy" ABA Antitrust Masters Course (Oct. 2022), Panelist
- "Draft Outline Review: Commentary on Discovery-Related Sanctions" The Sedona Conference Working Group 1 Annual Meeting (October 2022), Panelist
- "Rule 37(e) - Establishing Spoliation and Appropriate Remedies" and "Trust But Verify, But How?" ASU - Arkfeld eDiscovery, Law, and Technology Conference (Oct. 2022), Panelist
- "The Effective Use of Discovery-Related Sanctions" The Sedona Conference Working Group 1 Annual Meeting (October 2021), Panelist
- "Discovery negotiations" ABA Section of Antitrust Law, Civil Practice and Procedure Committee: Discovery Nuts and Bolts Series (June 2021), Panelist
- "The Great Native v. TIFF Debate," Complex Litigation eDiscovery Forum (Oct. 2020), Discussion Leader
- "Reinventing the Privilege Log," Sedona Conference Working Group 1 Annual Meeting (Oct. 2020), Panelist
- "eDiscovery Special Masters: The Good, the Bad, and the Ugly," Arizona State University-Arkfeld eDiscovery, Law and Technology Conference (March 2020), Speaker
- "eDiscovery Negotiation Training (eDNT) program," The Sedona Conference 2020 (Feb. 2020), Faculty
- "Fifth Annual (2019) Judicial Training Symposium," hosted by the Federal Judicial Center and Electronic Discovery Institute (Oct. 2019), Faculty
- "Hot Button Issues in Negotiating ESI Protocols," The Sedona Conference Working Group 1 Annual Meeting (Oct. 2019), Dialogue Leader
- "Hot Topics with ESI Protocols," Complex Litigation E-Discovery Forum (Sept. 2019), Presenter
- "Perspectives on the Impact of the 2015 Rule 25 Amendments," The Duke Law Bolch Judicial Institute's Distinguished Lawyers Conference on Evaluating the 2015 Rule 26 Discovery-Proportionality Amendments and Bolch-Duke Guidelines and Best Practices (June 2019), Panelist
- "TAR Unstuck: Choosing the Right Tool, Using It Wisely, and Negotiating an Effective TAR Protocol," Eighth Annual ASU-Arkfeld eDiscovery and Digital Evidence Conference (March 2019), Panelist
- "eDiscovery Negotiation Training (eDNT) program," The Sedona Conference 2019 (Feb. 2019), Faculty
- "Food Supply Chains: Integration, Globalization, and What it Means for Competition and Stability," American Antitrust Institute Food and Agriculture Competition Roundtable (Dec. 2018), Moderator
- "Fourth Annual Judicial Training Symposium," hosted by the Federal Judicial Center and Electronic Discovery Institute (Nov. 2018), Faculty
- "Fourth Annual Judicial Training Symposium," hosted by the Federal Judicial Center and Electronic Discovery Institute (Nov. 2018), Faculty
- "Coaches Corner," Georgetown University Law Center eDiscovery Training Academy (2016, 2017) Presenter
- "eDiscovery Coach", Georgetown University Law Center eDiscovery Training Academy, (2015- 2017), Faculty

- "Engaging the Disinterested Judge," Georgetown Advanced E-Discovery Institute (Nov. 2017), Panelist
- "Game On: Ethics & eDiscovery," Georgetown Advanced E-Discovery Institute (Nov. 2016), Panelist
- "Agriculture & Food Litigation Roundup: Updates and Perspectives on Active Antitrust Cases in the Agriculture and Food Sectors," American Bar Association (2015 and 2016), Panelist
- "Where Does the Buck Stop? The Latest in Cost Shifting," Georgetown Advanced E-Discovery Institute (Nov. 2016), Panelist
- "Essential Checklist for E-Discovery," D.C. Bar CLE Program (May 2015), Panelist
- "So How Exactly is Plaintiffs' Side E-Discovery Practice Different?," D.C. Bar E-Discovery Committee Meeting (Jan. 2015), Speaker
- "ESI Discovery," NCLC Consumer Class Action Symposium (2013)

# EXPERIENCE

## Antitrust/Competition

- *In re Foreign Exchange Benchmark Rates Antitrust Litig.* – Alleging a conspiracy among leading financial institutions to manipulate the foreign exchange market, in which Hausfeld serves as co-lead interim counsel and has obtained more than $2.1 billion in settlements to date.
- *In re Generic Pharmaceuticals Pricing Antitrust Litig.* – Representing a class of end-payers alleging generic drug manufacturers and marketers conspired to unlawful inflate the price of critical medications. Jeannine serves as a court-appointed member of the Plaintiffs' Steering Committee.
- *In re Domestic Airline Travel Antitrust Litig.* – Alleging major airlines conspired to reduce capacity to artificially inflate the price of domestic air travel, in which Hausfeld serves as interim co-lead counsel.
- *In re Blue Cross Blue Shield Antitrust Litig.* – Representing subscribers alleging dozens of Blue Cross Blue Shield entities entered into an unlawful agreement not to compete, in which Hausfeld serves as co-lead counsel and discovery chair; Jeannine works primarily on e-discovery in the matter.
- In re Processed Egg Products Antitrust Litig. – Representing egg purchasers alleging egg producers and distributors entered into an unlawful agreement to restrict egg supplies, in which Hausfeld served as co-lead counsel and obtained more than $135 million in settlements, secured class certification of a shell egg class, and obtained summary judgment that eliminated a primary affirmative defense.
- In re Fresh and Process Potatoes Antitrust Litig. – Alleging more than 24 potato growers, distributors, and processor defendants entered into an unlawful agreement to restrict potato supplies to inflate the price. Hausfeld chaired the 10-member Plaintiffs' Executive Committee and secured a ground-breaking ruling on a novel question of law undermining a key defense in the case, ultimately obtaining a global settlement of nearly $20 million and significant injunctive relief. Jeannine managed the 20-plus defendant case from discovery through resolution, including all e-discovery matters.

## Technology & Data Breach

- *In re Wawa, Inc. Data Security Litigation* – Jeannine serves as court-appointed Interim Co-lead Counsel in In re Wawa Data Security Litigation (No. 19-cv-6019, E.D. Pa.) for a proposed class of financial institutions alleging the convenience-store chain's negligence resulted in a massive data breach, compromising more than 30 million payment cards used at up to 850 store locations on the East Coast.

## Human Rights

- *Kiobel v. Royal Dutch Petroleum* – Jeannine and Hausfeld served as counsel to amicus Nobel prize winning economist Joseph E. Stiglitz in support of plaintiffs in Kiobel v. Royal Dutch Petroleum before the Supreme Court of the United States, in which the plaintiffs alleged domestic and foreign corporations aided and abetted torture, rape, and other violations of international human rights committed by the Nigerian government against its people. At issue on appeal to the Supreme Court was, among other issues, whether corporations could be held liable for violation of internationally recognized human rights under the Alien Tort Statute. Amici argued that the economics and policy arguments against such liability were unfounded and that corporate liability would advance rather than deter investment in developing countries and promote compliance with international human rights norms.
- *Nestle v. Doe* – Jeannine and Hausfeld served as counsel to amici Oxfam USA and Columbia University economics professors Joseph Stiglitz and Geoffrey Heal in support of plaintiffs in Nestle v. Doe before the Supreme Court of the United States. Plaintiffs in that case alleged certain corporations aided and abetted forced child labor on cocoa plantations in violation of international human rights norms.  Amici expanded upon the economic arguments in the Stiglitz amicus brief in Kiobel and argued that liability would not deter proactive efforts by corporations to invest in measures designed to prevent human rights violations in their supply chains.

## Sports & Entertainment

- *In re National Football League Players' Concussion Injury Litigation* – Jeannine served as court-appointed Plaintiffs' Liaison Counsel in and represented hundreds of former NFL players suffering from long-term or permanent neurological or cognitive impairments as a result of head injuries during NFL play and who alleged the League hid from them the serious risks of head trauma.
- *McCants v. National Collegiate Athletic Association, et al.* – Jeannine represented a putative class of former college athletes in who allege the University of North Carolina offered them fraudulent classes and, for decades, concealed that fraud.

# EXHIBIT E



## FIRM BIOGRAPHY

## LITE DEPALMA GREENBERG & AFANADOR, LLC

## October 2024

Lite DePalma Greenberg & Afanador, LLC is a general practice law firm, with offices in Newark and Philadelphia. The firm specializes in commercial and complex litigation with a concentration in class action matters in the areas of securities, antitrust, consumer fraud, and insurance sales practices. More detail about the firm and its attorneys appears on its website, www.litedepalma.com.

### Diversity and Inclusiveness: Our Tradition

Lite DePalma Greenberg & Afanador, LLC has a long-standing tradition of recruitment, retention, and advancement of women and minority attorneys. The firm did not attain its diverse team of partners, associates, and staff as a result of a contemporary mission to create diverse workplaces. Long before multiculturalism became the trend, Lite DePalma Greenberg & Afanador, LLC was committed to diversity in the workplace. Having elected its first minority attorney to the partnership over twenty-five years ago, the firm has continually maintained a team of partners, associates, and staff that is representative of various multicultural backgrounds. The firm is committed to the advancement of women and minority attorneys and currently boasts a team comprised of 50% women and/or minority attorneys at the partnership level. We are also committed to staffing cases with a diverse team of seasoned attorneys that are capable of tending to the needs of our clients in today's increasingly diverse global economy. To that end, Lite DePalma Greenberg & Afanador, LLC actively recruits women and minority attorneys. We are immensely proud to have been part of that journey and have witnessed firsthand how this type of trail blazing motivates and inspires our associates.

**Community and Leadership: Our Devotion to the Development of the Newark Community and Minority / Socioeconomically Disadvantaged Groups**

Founded in 1978, our law firm began its practice in Newark, New Jersey and has remained a Newark resident at all times.  As a proud member of the Newark community, Lite DePalma Greenberg & Afanador, LLC supports its local charitable, educational, cultural, and pro bono legal institutions. The firm is heavily involved with Newark's educational institutions. The firm has participated in a summer hiring program that employs minority students from University High School on a part-time basis in order to provide inner city students with valuable exposure to a law practice. It also supports Newark's law schools by supporting Seton Hall and Rutgers-Newark, financially and otherwise. Our attorneys are deeply committed to both schools and regularly volunteer their time in alumni, moot court, and other programs. In the cultural arena, the firm was a Founding Sponsor of the New Jersey Performing Arts Center in Newark and a consistent financial supporter of NJPAC since its inception. Among the pro bono legal institutions that Lite DePalma Greenberg & Afanador, LLC has actively assisted are Consumers League of New Jersey and the Center for Auto Safety in Washington, DC.  The firm successfully represented both organizations as amicus curiae in cases before the Supreme Court of New Jersey. Additionally, several of our attorneys were among the first in New Jersey to handle pro bono appeals in the New Jersey Appellate Division's Pro Bono Civil Pilot Program and have participated in several pro bono matters.

**Loyalty: Our Commitment to Family and Personal Relationships**

Lite DePalma Greenberg & Afanador, LLC has long-realized that promoting healthy family and personal relationships is a key component to building a successful and cohesive practice. Mindful of the increase in dual income families, the firm strives to create an environment that is respectful of family obligations. Lite DePalma Greenberg & Afanador, LLC endeavors to

1002645.1

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

facilitate flexible work arrangements by offering a fair family leave policy, flex-time, and telecommuting.

## MEMBERS OF THE FIRM

**JOSEPH J. DEPALMA** (Newark Office), the Firm's Managing Member, has a vast breadth of experience in many types of class action cases involving securities, ERISA, antitrust, product liability, and consumer fraud. Mr. DePalma also handles shareholder derivative litigation, commercial litigation, and transactional matters for the firm's corporate clients. He has a Masters Degree in Business Administration and a J.D. degree from Seton Hall University School of Law.

Mr. DePalma has served as Co-Lead Counsel for the State of New Jersey, Division of Investment, as Lead Plaintiff in two prominent class actions that have resulted in significant recoveries: *Reginald Newton v. Tenet Healthcare Corp.,* (Tenet Healthcare Securities Litigation), cv-02-8462-RSWL (C.D. Cal.) ($281.5 million settlement); *In re Motorola Securities Litig.*, Civ. No. 03-C-287 (N.D. Ill.) ($193 million settlement reached three business days before trial).

Mr. DePalma has also played an active role in obtaining settlements in numerous recognized class actions comprising some of the largest settlements in the nation. Included in such cases are: *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) (over $4 billion paid out in largest insurance sales practices settlement ever) (Liaison Counsel); *In re Lucent Technologies Securities Litig.*, Civil Action No. 00cv621(AJL) (D.N.J.), reported opinions, 2003 WL 25488395 (D.N.J. Dec. 15 2003), 2002 WL 32815233 (D.N.J. July 16, 2002), 217 F. Supp. 2d 529 (D.N.J. 2002), 2002 WL 32818345 (D.N.J., May 9, 2002), 221 F. Supp. 2d 463 (D.N.J. 2001), 221 F. Supp. 2d 472 (D.N.J. 2001) (approximate $610 million settlement) (Liaison Counsel); *Galanti v. Goodyear*, Civil Action No. 03-209(SRC) (D.N.J.) ($300 million product liability settlement) (Liaison Counsel); *In re Aremissoft Corp. Securities Litig.,* Civil

3

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Action No. 01-CV-2486 (JAP) (D.N.J.), reported opinion, 210 F.R.D. 109 (D.N.J. 2002) (over $250 million recovered to date; case is ongoing) (Liaison Counsel); *In re Royal Dutch/Shell Transport Litigation*, Civil Action No. 04-1398 (JWB) (D.N.J.), reported opinions, 404 F. Supp. 2d 605 (D.N.J. 2005), 380 F. Supp. 2d 509 (D.N.J. 2005) ($90 million ERISA settlement, the largest settlement ever under ERISA) (Liaison Counsel); *P. Schoenfeld Asset Management, LLC v. Cendant Corp.*, Civil Action No. 98-4734(WHW) ($26 million settlement after precedent-setting decision in same case); *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000)) (Liaison Counsel); *Steiner v. MedQuist,* Civil Action No. 04-CV-05487-JBS (D.N.J.), reported opinion, 2006 WL 2827740 (D.N.J. Sept. 29, 2006) ($7.75 million) (Liaison Counsel); *In re Tellium Securities Litig.,* No. 02-CV-5878 (FLW) (D.N.J.), reported opinion, 2005 WL 1677467 (D.N.J. June 30, 2005) ($5.5 million) (Liaison Counsel); and *In re NUI Securities Litig.,* Civil Action No. 02-CV-5220 (MLC) (D.N.J.), reported opinion, 314 F. Supp. 2d 388 (D.N.J. 2004) ($3.5 million) (liaison counsel).

Mr. DePalma's years of experience also include the following major matters: *In re Computron Software, Inc. Securities Litig.*, Civil Action No. 96-1911 (AJL) (approximate $15 million settlement) (Liaison Counsel); *In re USA Detergents, Inc. Securities Litigation*, Master File No. 97-2459 (MTB), District of New Jersey ($10 million settlement) (Liaison Counsel); *In re: The Children's Place Securities Litig.*, Master File No. 97-5021 (JCL), (D.N.J.), reported opinion, 1998 WL 35167284 (D.N.J. Sept. 4, 1998) ($1.7 million settlement) (Liaison Counsel); *Arthur Fields, et al. v. Biomatrix, Inc., et al.*, Civil Action No. 00-CV-3541 (WGB), (D.N.J.) ($2.45 million settlement) (Liaison Counsel); *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 2:13-cv-7418 (D.N.J.), reported opinion, 846 F.3d 625 (2017) (case settled) (Co-Lead

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Counsel); and *In re Atlas Mining Securities Litig.*, Civil Action No. 07-428-N-EJL (D. Idaho) ($1.25 million) (Lead Counsel).

Some of Mr. DePalma's other court approved class action and mass action settlements, involved product liability, takeover and ERISA matters. In a complex MDL mass action proceeding involving the illegal harvesting of body parts and the untested surgical implanting of those parts, Mr. DePalma, along with a team of nationally recognized colleagues, achieved a global settlement in a case captioned *In re Human Tissue Product Liability Litig.* (D.N.J.). Mr. DePalma achieved a settlement on behalf of shareholders in tender offer litigation, *In re Alpharma Shareholder Litigation*, (N.J. Superior Ct.). In a complex ERISA matter involving two appeals to the Third Circuit, *In re Schering-Plough Corporation ERISA Litigation*, (D.N.J.), Mr. DePalma obtained a settlement of $8.5 million on behalf of a class of participants in a retirement plan alleging breaches of fiduciary duties.

Mr. DePalma is currently involved in several plaintiff class action antitrust matters and has leadership roles in *In re: Fragrance Indirect Purchaser Antitrust Litigation*, 2:23-cv-03249 (D.N.J.) (liaison counsel for indirect purchaser plaintiff class); *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.) (liaison counsel); and *Vascepa Antitrust Litigation Indirect Purchaser Plaintiffs*, Docket No. 21-12061 (ZNQ)(LHG) (D.N.J.) (executive committee). Mr. DePalma also currently is involved in the following class actions in the District of New Jersey: *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, Docket No. 19-md-2904 (co-lead counsel); *In re Emisphere Technologies, Inc. et al., Securities Litigation*, Case No. 2:23-cv-20898-SDW-AME (liaison counsel); *Mendez v. Avis Budget Group, Inc.*, Docket No. 2:2011-cv-06537 (co-lead counsel, recently settled for $45 million); and *BCR Carpentry LLC v. FCA US LLC*, 3:21-cv-19364-GC-DEA (liaison counsel).

5

Mr. DePalma has represented defendants in class action litigation involving prisoners' rights: *Ford v. Smith*, 1:20-cv-18863 (NLH)(AMD) (D.N.J.) and *Brown v. Warren*, 1:20-cv-7907 (NLH)(AMD) (D.N.J.). Mr. DePalma has also successfully represented customers of Showtime and AMC in mass arbitrations.

Mr. DePalma has achieved excellent results for clients in other areas of litigation. Among other things, he won large settlements for a condominium association on construction defect and legal malpractice claims and has successfully handled securities arbitrations as well.

Mr. DePalma has lectured in the areas of class action law and in complex commercial litigation. He has also served as a member of the New Jersey Supreme Court's District Ethics Committee.

Mr. DePalma served on the Board of Visitors of the Seton Hall University School of Law from 2011 to 2022. Mr. DePalma served as co-chair of the law school's Small Firm Committee and was a member of its Diversity Counsel.

Mr. DePalma was named as a New Jersey Super Lawyer in the 2007-2024 issues of *New Jersey Monthly* magazine. He was also named to ALM's 2012 "New Jersey Top Rated Lawyers," listed under "Business & Commercial."

**BRUCE D. GREENBERG** (Newark Office) has served as Co-Lead Counsel, Executive Committee or Steering Committee member, or Liaison Counsel in major antitrust, defective products, consumer fraud, and securities class action cases. He also handles sophisticated appellate, commercial and real estate litigation.

A number of Mr. Greenberg's class action cases have resulted in significant settlements. Among his federal court class action successes are a settlement worth more than $750 million for a nationwide class in *Varacallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207 (D.N.J.

**LITE DEPALMA**
**GREENBERG &**
**≡ AFANADOR**

2005) (Co-Lead Counsel), an insurance sales practices case, a $35.75 million nationwide class settlement in *In re STEC Securities Litig.*, No. SACV 09-01304-JVS (MLGx) (Co-Lead Counsel), a securities fraud case, *Cole v. NIBCO, Inc.*, No. 13-7871 (FLW) (TJB) (Co-Lead Counsel), a $43.5 million nationwide settlement in a defective products case, a nationwide consumer settlement worth up to $13 million in *Schwartz v. Avis Rent a Car System, LLC*, Civil Action No. 11-4052 (JLL) (Co-Lead Counsel), a highly valuable nationwide settlement in *In re Samsung DLP Television Class Action Litigation*, Civil Action No. 07-2141 (GEB) (MCA) (Executive Committee), a $9.59 million settlement in *In re N.J. Tax Sale Certificate Antitrust Litig.*, 750 Fed. Appx. 73 (3d Cir. 2018) (Liaison Counsel), settlements totaling over $200 million for a nationwide class in the multidistrict antitrust litigation captioned *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, Civil Action No. 04-5184 (FSH) (D.N.J.) (Liaison Counsel), and another antitrust class action, *In re Liquid Aluminum Sulfate Antitrust Litigation*, MDL No. 2687, Civil Action No. 16-md-2687 (JLL) (JAD) (District of New Jersey) (Steering Committee and Liaison Counsel), which produced settlements totaling over $90 million for a nationwide class. His efforts as Co-Lead Counsel for certified classes in the United States District Court for the Western District of Pennsylvania (*Zeno v. Ford Motor Co.*, 238 F.R.D. 173 (W.D. Pa. 2006), and 480 F. Supp. 2d 825 (W.D. Pa. 2007)), and in the Superior Court of New Jersey, led to a four-state settlement that afforded full benefit of the bargain relief to consumers in *Pedersen v. Ford Motor Co.*, No. GIC 821797 (Cal. Super Ct.).  Mr. Greenberg was also instrumental in *In re Motorola Securities Litig.*, Civ. No. 03-C-287 (N.D. Ill.), where Lite DePalma Greenberg & Afanador, LLC, as Co-Lead Counsel, achieved a $193 million settlement just three business days before trial was to begin.



Mr. Greenberg's New Jersey state court class actions include a settlement valued at $8.6 million for a nationwide class of current and former merchants in *Roma Pizzeria v. Harbortouch f/k/a United Bank Card*, Docket No. HNT-L-637-12 (Co-Lead Counsel); a $100 million settlement for a nationwide consumer class in *Friedman v. Samsung Electronics America, Inc.*, Docket No. BER-L-7250-01 (Liaison Counsel), a comparably sized settlement for a nationwide consumer class in *Summer v. Toshiba America Consumer Products, Inc.*, Docket No. BER-L-7248-01 (Liaison Counsel), another nationwide consumer class settlement in *Barrood v. IBM*, Docket No. MER-L-843-98 (Co-Lead Counsel), which afforded class members full benefit of the bargain relief, (Co-Lead Counsel), a settlement for a New Jersey consumer class worth over $7 million in *Delaney v. Enterprise Rent-A-Car Co.*, Docket No. OCN-L-1160-01 (Co-Lead Counsel), a $4.5 million settlement for a New Jersey consumer class in *DeLima v. Exxon*, Docket No. HUD-L-8969-96 (Co-Lead Counsel), and an unprecedented settlement in a class action involving a merger, *Rubin v. Mercer Insurance Group, Inc., et al.*, Docket No. MER-C-102-10 (Co-Liaison Counsel), which afforded stockholders the opportunity to review forward looking financial information of the company, thus allowing shareholders to make a more informed decision concerning the merger.

A 1982 graduate of the Columbia University School of Law, Mr. Greenberg clerked for Justice Daniel J. O'Hern of the Supreme Court of New Jersey for the 1982-83 Term.  Before joining the firm, Mr. Greenberg was a partner at one of New Jersey's largest law firms.

Mr. Greenberg appears regularly in the appellate courts.  He has argued thirteen times in the Supreme Court of New Jersey, three cases in the Third Circuit Court of Appeals, over 75 cases in New Jersey's Appellate Division, and one case in the Colorado Court of Appeals. Over 40 of his cases have resulted in published, precedential opinions, including major decisions on class

LITE DEPALMA
GREENBERG &
AFANADOR

actions, mass torts, zoning and land use, restrictive employment covenants, real estate brokerage, and other topics.

Among his many other publications, Mr. Greenberg is the author of the chapter entitled "Supreme Court Review" in *New Jersey Appellate Practice Handbook* (New Jersey ICLE), co-author, with Susana Cruz Hodge, of the chapter entitled "Class Action Litigation" in *New Jersey Federal Civil Procedure* (NJLJ Books (1st ed. 1999 and annual supplements)), and author of "Keeping the Flies Out of the Ointment: Restricting Objectors to Class Action Settlements," 84 St. John's L. Rev. 949 (2010). That and other law review articles that he has written have been cited with approval by the Supreme Court of New Jersey, the Appellate Division, and federal and state courts in other jurisdictions. Mr. Greenberg has lectured on class actions for both New Jersey and Pennsylvania CLE, and he delivered the 27th Annual Evangelides Memorial Lecture at Rutgers University's Eagleton Institute on the topic "Class Action Litigation: Who Benefits?" He has served as an expert witness on attorneys' fees in class actions and Chancery litigation and has also spoken on civil trial preparation, appellate practice and other subjects. Mr. Greenberg also writes the New Jersey Appellate Law blog, http://appellatelaw-nj.com, New Jersey's foremost appellate blog, since 2010.

Mr. Greenberg belongs to the New Jersey State Bar Association ("NJSBA") and was Chair of the Association's Appellate Practice Committee from 2004-2006. He is a past Co-Chair of the NJSBA's Class Actions Committee, a position he held from 2008-2016. From 1991-2006, Mr. Greenberg was a member of the Supreme Court of New Jersey Committee on Character. He was also one of the founding members, and a past Chair, of the New Jersey Law Firm Group, a consortium of major law firms to advance hiring of minority lawyers.

Mr. Greenberg has been named to the "New Jersey Super Lawyers" list, for "Appellate Practice," in *New Jersey Monthly* magazine every year since 2005, when that list was first published, and has twice been named to the "New Jersey Super Lawyers" Top 100, most recently in 2020. Mr. Greenberg has been listed in "Best Lawyers in America®" each year since 2019 for "Appellate Practice." He was also named a Fellow of the American Academy of Appellate Lawyers, one of only four New Jersey lawyers who are so designated. Mr. Greenberg was also listed in ALM's 2012 "New Jersey Top Rated Lawyers," under "Commercial Litigation." Mr. Greenberg has an "AV" rating from Martindale-Hubbell.

**VICTOR A. AFANADOR** (Newark Office) chairs the litigation and trial practice group for civil and criminal cases. His experience includes private and public entity litigation including but not limited to tort liability defense, employment related defense of CEPA and LAD matters, police related state and federal civil rights defense, condemnation and redevelopment law, complex commercial litigation, and criminal defense. His experience includes trial, oral advocacy and settlement negotiations before the New Jersey Office of Administrative Law, the Superior Court of New Jersey in various vicinages, the Appellate Division, the United States Court for the District of New Jersey, the United States Third Circuit Court of Appeals and the Supreme Court of the United States. In addition, Mr. Afanador served from September 1999 through May of 2005 as Deputy Director of Law for the City of Perth Amboy. In that capacity, he provided counsel to the Mayor, the City Council, and City department directors on legal matters.

Mr. Afanador has successfully tried to verdict jury and bench trials in a myriad of matters. In addition to his trial work, Mr. Afanador has also applied his investigative skills in the class action area. He interviewed Spanish-speaking employees and prepared a report for the Court as

LITE DEPALMA
GREENBERG &
AFANADOR

part of the firm's responsibilities as Class Administrator for an employment discrimination class action.

Mr. Afanador clerked for Judges Mathias E. Rodriguez and Frederick P. DeVesa, Superior Court of New Jersey, Law Division Criminal Part, in Middlesex County from 1998-1999.

Mr. Afanador was appointed by the Essex County Executive in September of 2005 to serve as a Commissioner on the Essex County Board of Public Utilities. He is a member of the Association of the Federal Bar of the State of New Jersey (Immediate Past President), Seton Hall University School of Law Alumni Association (Past President), New Jersey State Bar Association, the Essex County Bar Association, and the Hispanic Bar Association of New Jersey. He was admitted into the American College of Trial Lawyers as a Fellow in 2023. He is also a proud 2003 Graduate of the Leadership Newark Fellowship Program and has served on the African Globe Theatreworks Board of Directors, a professional theater company based in Newark, New Jersey.

Mr. Afanador was designated a Rising Star in May 2006, May 2007, May 2008, May 2009, May 2010, May 2011, May 2012, and May 2013 issues of *Super Lawyers* and has been selected as a Super Lawyer every year since 2016 through 2024. He was also named to the "40 Under 40" issue by the New Jersey Law Journal in 2010.

**SUSANA CRUZ HODGE** (Newark Office) is a member of Lite DePalma Greenberg & Afanador, LLC and focuses her practice on class actions. Her primary focus is on product liability and consumer fraud cases. Ms. Hodge has participated in numerous consumer cases, including *Cole v. NIBCO, Inc.*, No. 13-CV-07871 (D.N.J.), a case involving defective plumbing piping, tubing and fixtures that resulted in a nationwide consumer settlement worth $44 million; *Schwartz v. Avis Rent a Car System, LLC*, No. 11-4052 (D.N.J.), a case involving fraudulent fee charges that resulted in a nationwide consumer settlement worth up to $13 million; *In re Shop-Vac Marketing*

11



& *Sales Practices Litig.*, No. 4:12-MD-2380 (M.D. Pa.), a case involving misrepresentation of the peak horsepower of wet/dry vacuums that resulted in a nationwide settlement fund valued at $174 million; and *Mendez v. Avis Budget Group, Inc.*, No. 11-cv-6537 (D.N.J.), a case involving the misrepresentation of toll charges that resulted in a settlement of $45 million on behalf of a nationwide class of over 10 million consumers.

Recently, Ms. Hodge was appointed co-lead counsel in *In re Plum Baby Food Litigation*, No. 4:21-cv-00913 (N.D. Cal.), a multi-state class action filed on behalf of purchaser of Plum baby food products alleged to contain heavy metals and perchlorate. Ms. Hodge was also appointed as a member of the Executive Committee in *In re Robinhood Outage Litigation,* No. 20-01626-JD (N.D. Cal.), which was filed on behalf of users of Robinhood's trading platform. Ms. Hodge was also actively involved in representing plaintiffs in several consumer class actions involving heavy metals, BPA, and other contaminants and toxins in food, including, *Zeiger v. WellPet LLC*, No. 3:17-cv-04056 (N.D. Cal.), where a class of California dog food purchasers was recently certified.

Ms. Hodge also represents individual parties in general business disputes arising from breach of contract and fraud, as well as employment-related issues. In her capacity as a commercial litigator, Ms. Hodge represented a major food and beverage company in recovering millions of dollars fraudulently converted in a Ponzi scheme. She has also represented a struggling local business in closing its doors without filing bankruptcy, which involved negotiating settlements with nearly 100 creditors and successfully pursuing claims against various debtors. Ms. Hodge has investigated, negotiated, and litigated claims by subcontractors and material suppliers in a range of construction-related contractual disputes. Ms. Hodge has also filed and defended commercial and residential construction liens, and payment and performance bond surety claims in cases

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

involving public and private construction projects, and represented developers in breach of contract actions.

Ms. Hodge has briefed and argued before the United States Court of Appeals for the Seventh Circuit, the U.S. District Court for the District of New Jersey, and the New Jersey Superior Court. Ms. Hodge has also participated in appeals to the United States Court of Appeals for the Third, Seventh, and Ninth Circuits, as well as to the Appellate Division of the New Jersey Superior Court involving constitutional and employment law, rent control, and commercial leasing issues.

Ms. Hodge was one of the first attorneys in New Jersey to handle pro bono appeals in the New Jersey Appellate Division's Pro Bono Civil Pilot Program and has participated in several pro bono matters. Notably, Ms. Hodge represented an individual in an emergency application to the New Jersey Appellate Division, which led to the client avoiding eviction, and secured a dismissal of a temporary restraining order in another matter that would have imposed automatic prison time for her client.

Ms. Hodge is co-author, with Bruce D. Greenberg, of the chapter entitled "Class Action Litigation" in New Jersey Federal Civil Procedure and has been a panelist in various seminars such as "Significant Developments in Class Actions," hosted yearly by the New Jersey Institute for Continuing Legal Education, and "The Evolving Nature of Class Actions," hosted by New Jersey State Bar Association.

Ms. Hodge is a graduate of Boston College (2001) and Boston College Law School (2005). Prior to joining private practice, Ms. Hodge clerked for the Hon. Thomas J. LaConte, Superior Court of New Jersey, Passaic County. She also taught Legal Writing at Seton Hall University Law School to first year law students prior to joining Lite DePalma Greenberg & Afanador, LLC. Prior to attending law school, Ms. Hodge taught Portuguese, English, and math to young students in Rio

13

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

de Janeiro, Brazil, as part of Projeto Unicom Rocinha, a Brazilian non-profit organization. Ms. Hodge was named as a "Rising Star" in *New Jersey Monthly* magazine from 2014 to 2019 and has since been named to the "New Jersey Super Lawyers" list every year.

**MINDEE J. REUBEN** (Philadelphia Office) is a Member of the firm and is resident in the firm's Philadelphia office. Ms. Reuben represents plaintiffs across the country in a broad range of antitrust and consumer class action matters, regularly serving as lead, co-lead and liaison counsel and as a member of case-management committees in high-profile, multi-jurisdictional litigation. *Super Lawyers* and *Philadelphia Magazine* have repeatedly named Ms. Reuben as one of Pennsylvania's and Philadelphia's top lawyers in the field of antitrust, as well as one of the top 50 Women Super Lawyers overall in the state. Mindee has also been recognized in *The Best Lawyers in America* for her work in Antitrust Law and Litigation – Antitrust and in Chambers USA.

Ms. Reuben is currently involved in several plaintiff class action antitrust matters and has leadership roles in *In re: Generic Pharmaceutical Pricing Antitrust Litigation,* No. 16-md-2724 (E.D. Pa.) and *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.). Representative antitrust matters in which Ms. Reuben has had leadership or other significant roles include: *In re: Processed Eggs Products Antitrust Litigation*, No. 08-md-2002 (E.D. Pa.) (co-lead and liaison counsel, $130 million settlement); *In re Blue Cross Blue Shield Antitrust Litigation* (Subscribers), No. 13-cv-20000 (N.D. Ala.) (trial plan committee, $2.67 billion settlement); *In re Broiler Chicken Antitrust Litigation* (Direct Purchasers), No. 18-cv-8637 (N.D. Ill.) (deposition and trial teams, $284 million settlement); and *In re: Polyurethane Foam Antitrust Litigation,* MDL No. 2196 (N.D. Ohio) (executive committee, $147,000,000 settlement).

14

LITE DEPALMA
GREENBERG &
AFANADOR

Ms. Reuben serves as liaison counsel in the data breach matter of *In re Wawa, Inc. Data Security Litig.*, 19-cv-6019 (E.D. Pa.) (settlement pending). Ms. Reuben has also served as class counsel in federal and state consumer class actions, including *Fritzinger v. Angie's List*, Case No. 12-cv-1118 (S.D. Ind.) and *Stone v. Stewart Title Guaranty Co.*, Philadelphia Court of Common Pleas, June Term, 2006, No. 2003 (consol. under *Cummings v. Stewart Title Guaranty Co., et al.*, Philadelphia Court of Common Pleas, March Term, 2005, No. 747) (Glazer, J.), both of which resulted in favorable settlements for the class. At the final approval hearing in *Stone*, the court noted that "counsel really did an extraordinary job."

Ms. Reuben is actively involved with the Philadelphia Bar Association, having served as Vice Chair of the Association's Bench Bar and Annual Meeting and as Chair of its Women's Rights Committee. Her work on the Women's Rights Committee focused on human trafficking in the United States and resulted in the Association's Board of Governors passing a Resolution in Support of Ratification of the United Nations Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW). She is also a member of the Federal Courts Committee, Women in the Profession Committee and Business Law Section.

Ms. Reuben is a founding member of Women Antitrust Plaintiffs' Attorneys, a national organization of women who focus their practices on cartel and other anticompetitive cases. She has been appointed to serve in various leadership roles and on task forces in American Bar Association, and appointed to be a judge in the ABA regional moot court competition held in Philadelphia. Ms. Reuben is also a Lecturer in Law for legal writing for the LL.M. program at the University of Pennsylvania School of Law. She previously served as an Adjunct Professor of Law at the James E. Beasley School of Law of Temple University.



Ms. Reuben has contributed to numerous comprehensive legal publications, and has spoken on a variety of subjects, including ethics and the Federal Rules of Civil Procedure.  Most recently, Mindee was a panelist for the ABA Civil Practice and Procedure Section of Antitrust Law speaking on "Antitrust Class Action Program Series: Class Action Killer or Business as Usual? -- Rule 23(b)(3) and the Predominance Requirement" and a panelist for the ABA Section of Litigation's "Rules Roadshow," on the topic "Precision Advocacy: Reinventing Motion Practice to Win" in Philadelphia.

After earning her J.D. and M.P.A. from the University of Pittsburgh, Ms. Reuben served as a law clerk for the Honorable Frank J. Montemuro, Senior Justice of the Supreme Court of Pennsylvania.

**ALLEN J. UNDERWOOD II** (Newark Office) is a seasoned corporate, commercial and bankruptcy attorney who serves as outside general and special counsel to public and private manufacturing, trading, lending and service providers. His corporate and commercial career has as its foundation many years of intensive representations of creditors, debtors, committees and trustees in federal bankruptcy and state law debtor/creditor matters.  Representing a distressed entity in workout, forbearance, reorganization (either inside or outside of bankruptcy), wind-down or liquidation requires certain confidence, experience and mettle. These same characteristics are required when representing companies in strategic growth phases, commercial negotiations and, where unavoidable, civil litigation. Mr. Underwood's extensive experience counseling clients at their best of times and their worst of times enables him to provide fast and efficient advice on the executive level.  Mr. Underwood holds a Bachelor of Arts Degree in both History and Creative Writing from Hamilton College in Clinton, New York. He holds a Juris Doctorate from the Seton Hall University School of Law. He was law clerk to the Honorable Edward V. Torack, J.S.C.



Mr. Underwood is chair of the firm's Corporate, Commercial and Bankruptcy Department. This practice, by definition, encompasses diverse areas of state and federal law, something he both relishes, and emphasizes when describing his work with clients. In the Chancery and Law Divisions, Mr. Underwood has represented corporate and individual plaintiffs and defendants in breach of contract, common-law fraud and breach of fiduciary duty matters, employment cases, and all manner of commercial actions. In the bankruptcy courts, Mr. Underwood has represented a multitude of corporate bankruptcy creditors on administrative, secured, priority and unsecured claims, with many of these matters involving complex issues of securitization, priority, setoff, recoupment, reclamation and possession of collateral. These matters frequently involve related issues (difficult in their own right) of purportedly preferential or fraudulent transfers, demands for turnover, alleged unauthorized pre- or post-petition transfers, assumption and rejection, and the like.  Issues of guaranty and indemnity, whether as to principal, corporations, or construction and insurance entities, have likewise proliferated in recent years. Mr. Underwood has also represented creditors in numerous healthcare-related bankruptcies, including in most of the major hospital bankruptcies filed in New Jersey over many years.

In bankruptcy and insolvency matters, Mr. Underwood's ethos for creditors is to minimize costs while maximizing leverage and recovery. The ability to achieve this, time and again, is the product of efficiency, hard work and experience. That same ethos characterizes his efforts in commercial and transactional matters.

Mr. Underwood is admitted and frequently practices in the state courts of New York and New Jersey, and the Federal District and Bankruptcy Court in New Jersey, as well as the Federal District and Bankruptcy Courts in the Southern, Eastern and Western Districts of New York.  Mr. Underwood is also admitted in the District of Columbia, and from time to time as necessary has

LITE DePALMA
GREENBERG &
AFANADOR

been admitted pro hac vice before the United States Bankruptcy Court for the District of Delaware. Notable bankruptcy matters over the years are many, but include: representation of personal injury and wrongful death plaintiffs as creditors in multiple Delaware nursing home and healthcare-related bankruptcies; representation of insurance entities in numerous New Jersey bankruptcies on every aspect of coverage, from pre-filing negotiations to cash collateral and budget treatment, claims filing, plan confirmation, assumption and rejection, claims objections, and defense of avoidance actions; representation of commercial lenders in New York and New Jersey bankruptcies on secured claims; representation of a New Jersey city as creditor of a major real estate development in Chapter 11, and a complex settlement enabling resolution of takings claims, debtor refinance and project completion, maintenance and beneficial modification of the redevelopment plan, a confirmed Chapter 11, and ultimately a successful project that amplified revenue and regenerated a blighted area, representation of a manufacturer of factory equipment in Delaware bankruptcies on reclamation, administrative and unsecured claims related to immediate pre-bankruptcy factory renovations, and product and work supplied thereto.

Notable non-bankruptcy court litigations include: summary judgment for a plaintiff pension fund on dispositive motion as to multiple conveyances under the Uniform Fraudulent Transfers Act; settlement and payment following litigation to judgment on equipment shipped to Iraq but not paid for in full; settlement of trust and estate litigation in the Chancery Division alleging fraud and defalcation in fiduciary capacities by trustee and executor.

In addition to the above litigation, Mr. Underwood has always simultaneously represented individuals, and public and private corporations (with a distinct preference for closely held businesses) on the panoply of issues that arise for businesses. Notable corporate representations include: reorganization of a deadlocked non-profit and conversion of same to a for-profit entity,

**LITE DEPALMA
GREENBERG &
AFANADOR**

with continuing corporate general representation; corporate reorganization of all U.S. subsidiaries of a major manufacturer, streamlining corporate structure and operations, reducing overall costs, and deriving operation and tax benefit thereby, with continuing corporate general representation on all matters; negotiations with the Pension Benefit Guaranty Corporation, resulting in a successful resolution regarding legacy subsidiary plan underfunding due in large part to market fluctuations; internal reorganization of a deadlocked business closely held by multiple generations of multiple families, streamlining of operations, and continuing corporate general representation on all matters.

Notable discrete corporate and commercial transactions include: negotiation and documentation of oil- and gas-related manufacturing supply and service contracts involving the supply of equipment and coordinated projects to public companies and state-owned entities in the state of Texas and in Brazil, Mexico, Romania, Tajikistan and many places in between; negotiation and documentation of supply contracts for equipment manufactured for U.S. government and military use; routine negotiation and documentation of agreements for the supply of curated data and information from licensed sources.

Mr. Underwood speaks frequently on bankruptcy and commercial matters at private client seminars, and events sponsored by the New Jersey State Bar Association/New Jersey Institute for Continuing Legal Education (NJICLE), the American Bankruptcy Institute, and other industry organizations. In 2014, Mr. Underwood received from Martindale-Hubbell® Peer Review Ratings™ a Peer Review Rating of AV® Preeminent™ in Bankruptcy, Insolvency and Creditor's Rights. This is the highest rating obtainable. In 2011, he was named to the New Jersey Law Journal's top "40 Under 40" List. Mr. Underwood is a member of the American Bankruptcy Institute, the Turnaround Management Association, The Association of Commercial Finance

LITE DEPALMA
GREENBERG &
AFANADOR

Attorneys, Garden State Credit Associates, and the New Jersey Bar Association, among other organizations, and he remains an associate member of the Bergen County Bar Association.

**COUNSEL**

**STEVEN J. GREENFOGEL** (Philadelphia Office) is Counsel to the firm and is resident in the firm's Philadelphia office. Throughout his over fifty-year career, Mr. Greenfogel has specialized in class action antitrust litigation, including many of the most significant multidistrict class action price fixing cases of modern times. He has served as Co-Lead Counsel in *In re Chain Link Antitrust Litigation*, Master File CLF-1 (D. Md); *In re Industrial Silicon Antitrust Litigation*, 95-2104 (W.D. Pa) (which he tried to verdict), *In re Isostatic Graphite Antitrust Litigation*, No. 2000-cv-4965 (E.D. Pa); and *Gordon v. Amadeus IT Group, S.A.*, 15-cv-03457-KPF (S.D.N.Y.). Mr. Greenfogel also served as one of the main trial counsel as well as co-chairman discovery in *In re High Pressure Laminates Antitrust Litigation*, No. 00-MD-1368(CLB) (S.D.N.Y.) (tried to verdict) and *In re Carbon Dioxide Antitrust Litigation,* MDL 940 (M.D. Fla) (settled after jury selection). In addition to being Co-Chairman of Discovery in *In re Infant Formula Antitrust Litigation*, Master File No. MDL 878 (N.D. Fla), Mr. Greenfogel served as one of plaintiff's trial counsel (settled after jury selection). He has served as a member of Plaintiffs' Executive Committee in numerous cases, including: *In re Municipal Derivatives Antitrust Litigation*, MDL 1950 (S.D.N.Y. 2008); *In re Static Random Access Memory (SRAM) Antitrust Litigation,* cv-1819 (N.D. Cal 2007); and *In re Publication Paper Antitrust Litigation*, MDL 1631 (D. Ct . 2004). Mr. Greenfogel has also played a major role in numerous other multidistrict antitrust class actions, including: *O'Bannon v. National Collegiate Athletic Ass'n, et al.*, 4:09-cv-3329 (N.D. Cal 2009) (member of Plaintiff's trial team and co-chairman of discovery); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal 2006); *In re Direct Random Access Memory (DRAM)*

20



*Antitrust Litigation*, No. 02-cv-01486-OHG (N.D. Cal 2002); *In re NASDAQ Market Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.) (chairman of discovery); *In re Brand Names Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.); *In re Commercial Tissue Antitrust Litigation*, MDL 1189 (N.D. Fla); *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla); *Cumberland Farms v. Browning Ferris Industries, Inc*., A.A. No. 87-3717; *Superior Beverage/Glass Container Antitrust Litigation*, 89 C 5251 (N.D. Ill.); *In re Chlorine & Caustic Soda Antitrust Litigation*, 86-5428 (E.D. Pa); *In re Records & Tapes Antitrust Litigation*, No. 82 C 7589 (N.D. Ill.); and *In re Broiler Chicken Antitrust Litigation*, No. 18-cv-8637 (N.D. Ga).

Earlier in his career from 1977 to 1980, Mr. Greenfogel served as an Assistant Attorney General in the Commonwealth of Massachusetts and was the first Chief of its Antitrust Division. He was the author of the Commonwealth's Antitrust Law (M.G.L. 93). During that time, he was a panelist at the New England Antitrust Conference in Boston as well as speaking on antitrust matters at various venues in Massachusetts.

Mr. Greenfogel served as a member of the Board of Trustees of Camden County College from 2000 through 2017, having been appointed to that position by Governors Whitman, McGreevy and Corzine. He has been selected fourteen times as one of the Top Attorneys in Pennsylvania by *Philadelphia Magazine* and has an "AV" rating from Martindale Hubbell.

**CATHERINE B. DERENZE** (Newark Office) is Counsel with the firm. Catherine plays a significant role in a diverse range of class action matters at the firm, including antitrust, consumer, and data breach litigation. Representative matters include: *In re Samsung Customer Data Security Breach Litig.*, No 23-md-3055 (D.N.J.) (appointed liaison counsel); *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (D.N.J.); *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.); *In re Wawa,*

21

LITE DEPALMA
GREENBERG &
AFANADOR

*Inc. Data Security Litig.*, No. 19-cv-6019 (E.D. Pa.); *In re: Hard Disk Drive Suspension Assemblies Antitrust Litig. ("In re HDD")*, 19-md-02918 (N.D. Cal.); *In re: Generic Pharmaceutical Pricing Antitrust Litigation,* No. 16-md-2724 (E.D. Pa.); and *In re Plum Baby Food Litig.*, 1:21-cv-2417 (N.D. Cal.). She is heavily involved in discovery and motion practice and is developing a burgeoning appellate practice. Notable successes include defeating motions to dismiss in an antitrust matter, *In re HDD*, and a data breach matter, *In re AMCA*, and successfully briefing and arguing before the New Jersey Supreme Court on behalf of amici in *DiFiore v. Pezic*, 254 N.J. 212 (2023). She also provides research and writing assistance to new associates at the firm.

Ms. Derenze is a graduate of the College of the Holy Cross (2013) and Seton Hall University School of Law (2018). She is a member of the bars of the State of New Jersey and the Federal Bar of New Jersey. Ms. Derenze is also a member of the New Jersey Bar Association and is currently serving for her second year as the co-chair of its Appellate Practice Committee. Before joining LDGA, Ms. Derenze clerked for the Honorable Heidi Willis Currier, J.A.D., of the Appellate Division of the New Jersey Superior Court. Prior to that, she served as an extern to the Honorable Patty Shwartz, of the United States Court of Appeals for the Third Circuit.

In 2023 and 2024, Ms. Derenze spoke on recent trends in class action litigation for the New Jersey Institute for Continuing Legal Education ("NJICLE") and the New Jersey State Bar Convention, and has spoken for NJICLE several times on appellate practice. She was also named as a "Rising Star" for "Appellate Practice" on the 2024 "New Jersey Super Lawyers" list.

**GARY S. LIPSHUTZ** (Newark Office) is Counsel with the firm. Mr. Lipshutz joined the firm in 2024 after spending more than two decades with the City of Newark Law Department, where he was First Assistant Corporation Counsel. Mr. Lipshutz has been certified by the New

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

Jersey Supreme Court as a Civil Trial Attorney since 2013 (having been recertified twice, in 2018 and 2023). Mr. Lipshutz has extensive trial and appellate experience in diverse litigated matters, including federal and state civil rights claims, Tort Claim Act, LAD and CEPA, contract, public bidding, and redevelopment matters. Mr. Lipshutz was the City of Newark's lead counsel in connection with the Consent Decree between United States Department of Justice and the City's Department of Public Safety, Division of Police. He also was lead counsel who handled the United States Coast Guard investigation into July 2023 ship fire at Port Newark that caused the death of two Newark firefighters. Mr. Lipshutz is a graduate of the University of Pennsylvania (B.A.) and the University of Florida (J.D.). He is admitted to the New Jersey and Florida bars.

<u>**ASSOCIATES**</u>

**ANTHONY ZATKOS** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New Jersey and the United States District Court for the District of New Jersey in 2002 and the bar in New York in 2003. He is a graduate of Seton Hall University (B.S., Mathematics 1996) and the Seton Hall University School of Law (J.D. 2002).

Early in his legal career, Mr. Zatkos practiced personal injury and civil rights law in New York City, as well as family law in New Jersey. He also served as a contributing writer and editor on The Yudes Family Law Citator, published each year by the New Jersey Institute of Legal Education. Since that time, his focus in practice has been electronic discovery, where Mr. Zatkos has learned the nuances of this growing field. With this experience, he has worked on cases covering a myriad of matters, including pharmaceutical patents, mergers, due diligence, residential mortgage-backed securities, anti-trust, bankruptcy, fraud, contract, and, most recently, class action. Prior to joining the firm, Mr. Zatkos worked directly with firm members on several class-action matters.

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

**JOSHUA S. KAUFMAN** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New York in 2020 and is admitted to both the United States District Courts for the Southern and Eastern District of New York. He is awaiting admission to the bar in New Jersey. He attended Baruch College (B.A. in Political Science 2012) and Brooklyn Law School (J.D. 2019). Prior to joining the firm, Mr. Kaufman served as an Assistant Corporation Counsel with the New York City Law Department in the Special Federal Litigation Unit. Mr. Kaufman also interned for former United States Magistrate Judge Lisa Margaret Smith, in the Southern District of New York.

**NICHOLAS R. McCLELLAND** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New Jersey in 2018 and is also admitted to practice in the United States District Court for the District of New Jersey. He attended Syracuse University (B.A. in Philosophy and Political Science 2015) and Seton Hall Law School (J.D. 2018). Following law school, Mr. McClelland served as Judicial Law Clerk to the Honorable Alan G. Lesnewich, J.S.C., of the Superior Court of New Jersey, Union County. Prior to joining LDGA, Mr. McClelland was engaged in the practice as a civil litigation associate at a regional law firm based in Monmouth County.

**CONNOR T. WRIGHT** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New Jersey in 2022. Prior to joining the firm, Mr. Wright held a clerkship position with the Honorable Arthur J. Batista, J.S.C. in the Essex County Superior Court, Family Division. He obtained his J.D. from Rutgers Law School (Newark) in 2021. Prior to graduation, Mr. Wright interned for the Honorable Arthur J. Batista, J.S.C. in the Essex County Superior Court, Criminal Division, for two years. Mr. Wright was also an in-house legal intern for PIM Brands, Inc., and for Celldex Therapeutics, Inc., where his focus was primarily on intellectual

24

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

property litigation and FDA compliance. He graduated from James Madison University in 2018 with a Bachelor's degree in Political Science.

**NICOLE A. FLYNN** (Newark Office) is an associate with the firm in our Newark office. She was admitted to the bar in New Jersey in 2023. Ms. Flynn returned to LDGA in September of 2023 after working as a law clerk at the firm in the summer of 2022. During law school, Ms. Flynn worked as a legal intern for Advocates for Children of New Jersey in Newark. She graduated from Rutgers University with a Bachelor's Degree in History and a Master's Degree in Education. Ms. Flynn earned her Juris Doctor from Seton Hall School of Law, where she was in the part-time program. While in law school, she taught full-time at a middle school in Bergen County.

**COLLIN J. SCHAFFHAUSER** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New Jersey in 2023.  Mr. Schaffhauser graduated from Rutgers University New Brunswick in 2016 with a Bachelor's degree in Political Science and Minors in History and German.  Prior to law school, Mr. Schaffhauser worked as a paralegal handling matters related to debtors' and creditors' rights. Mr. Schaffhauser then obtained his J.D. from Rutgers Law School Newark in 2023.

While in law school, Mr. Schaffhauser was a member of the Rutgers Moot Court Board, the Rutgers Journal of Law and Public Policy, and the National Appellate Advocacy Team. In these endeavors, Mr. Schaffhauser argued before the Honorable Kevin McNulty (U.S.D.J.) and won the 2022 Nathan Baker Mock Trial Competition; wrote a note, "A Restraint of Speech as a Restraint of Trade: How Rediscovering Antitrust's Equitable Origins and Evolution Can Help Protect America's Democracy and Economy," published in the Journal of Law and Public Policy in August 2024; and won the second-best brief and fourth-best oralist awards in the 2023 Touro Law – Law & Religion Appellate Competition. Mr. Schaffhauser also worked at a civil litigation

LITE DEPALMA
GREENBERG &
AFANADOR

firm during law school and handled contract, employment, and personal injury cases, conducting legal research and drafting legal documents for state and federal courts at both the trial- and appellate-level.

Prior to joining LDGA, Mr. Schaffhauser served as a judicial law clerk to the Honorable Maritza Berdote Byrne, J.A.D., of the Appellate Division of New Jersey Superior Court. Outside of LDGA, Mr. Schaffhauser coaches for the Rutgers Law School Newark National Appellate Advocacy Team and helped coach the winners of the 2024 Touro Law – Law & Religion Appellate Advocacy competition.

**ERIN M. McNAMARA** (Newark Office) is an associate with the firm in our Newark office. She was admitted to the bar in New Jersey in 2023. Ms. McNamara graduated from Boston College in 2020 with Bachelor's degrees in English and Psychology. She then obtained her J.D. from Seton Hall Law School in 2023, where she was a Chancellor Scholarship recipient. During law school, she served as a Mock Trial Board Member and worked as a law clerk at a Plaintiff's personal injury firm in Chatham, New Jersey. Prior to joining LDGA, Ms. McNamara served as a Judicial Law Clerk to the Honorable Rosemary E. Ramsay, P.J. Cv. in the Morris County Superior Court, Civil Division.



1515 Market Street / Suite 1200 / Philadelphia, PA 19102
P: 215.854.4060 / F: 973.623.0858 / litedepalma.com

Newark ▮ Philadelphia

**MINDEE J. REUBEN** (Philadelphia Office) is a Member of the firm and is resident in the firm's Philadelphia office.  Ms. Reuben represents plaintiffs across the country in a broad range of antitrust and consumer class action matters, regularly serving as lead, co-lead and liaison counsel and as a member of case-management committees in high-profile, multi-jurisdictional litigation. *Super Lawyers* and *Philadelphia Magazine* have repeatedly named Ms. Reuben as one of Pennsylvania's and Philadelphia's top lawyers in the field of antitrust, as well as one of the top 50 Women Super Lawyers overall in the state.  Mindee has also been recognized in *The Best Lawyers in America* for her work in Antitrust Law and Litigation – Antitrust as well as in *Chambers USA*.



Ms. Reuben is currently involved in several plaintiff class action matters in which she has leadership roles, including *In re: Generic Pharmaceutical Pricing Antitrust Litigation,* No. 16-md-2724 (E.D. Pa.) (antitrust), *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.) (antitrust), *In re: Deere & Company Repair Services Antitrust Litigation,* No. 22-cv-50188 (N.D. Ill.) (antitrust), and *In re Wawa, Inc. Data Security Litig.*, 19-cv-6019 (E.D. Pa.) (data breach).

Representative federal antitrust matters in which Ms. Reuben has had leadership or other significant roles include:  *In re: Processed Eggs Products Antitrust Litigation*, No. 08-md-2002 (E.D. Pa.) (co-lead and liaison counsel, $130 million settlement); *In re Blue Cross Blue Shield Antitrust Litigation* (Subscriber Track), No. 13-cv-20000 (N.D. Ala.) (trial plan committee, $2.67 billion settlement); *In re Broiler Chicken Antitrust Litigation* (Direct Purchasers), No. 18-cv-8637 (N.D. Ill.) (deposition and trial teams, $284 million settlement); and *In re: Polyurethane Foam Antitrust Litigation,* MDL No. 2196 (N.D. Ohio) (executive committee, $147,000,000 settlement). Ms. Reuben has also served as class counsel in various federal and state consumer class actions, including *Fritzinger v. Angie's List*, Case No. 12-cv-1118 (S.D. Ind.) and *Stone v. Stewart Title Guaranty Co.*, Philadelphia Court of Common Pleas, June Term, 2006, No. 2003 (consol. under *Cummings v. Stewart Title Guaranty Co., et al.*, Philadelphia Court of Common Pleas, March Term, 2005, No. 747) (Glazer, J.), both of which resulted in favorable settlements for the class. At the final approval hearing in *Stone*, the court noted that "counsel really did an extraordinary job."

Ms. Reuben is actively involved with the Philadelphia Bar Association, having served as Vice Chair of the Association's Bench Bar and Annual Meeting and as Chair of its Women's Rights Committee. Her work on the Women's Rights Committee focused on human trafficking in the United States and resulted in the Association's Board of Governors passing a Resolution in

**LITE DePALMA
GREENBERG &
AFANADOR**

Support of Ratification of the United Nations Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW). She is also a member of the Federal Courts Committee, Women in the Profession Committee and Business Law Section.

Ms. Reuben is a founding member of Women Antitrust Plaintiffs' Attorneys, a national organization of women who focus their practices on cartel and other anticompetitive cases. She has been appointed to serve in various leadership roles and on task forces in American Bar Association and invited to be a judge in the ABA regional moot court competition held in Philadelphia.  Ms. Reuben is also a Lecturer in Law for legal writing for the LL.M. program at the University of Pennsylvania School of Law.  She previously served as an Adjunct Professor of Law at the James E. Beasley School of Law of Temple University.

Ms. Reuben has contributed to numerous comprehensive legal publications, and has spoken on a variety of subjects, including ethics and the Federal Rules of Civil Procedure.  Most recently, Ms. Reuben was a panelist for the ABA Civil Practice and Procedure Section of Antitrust Law speaking on "Antitrust Class Action Program Series: Class Action Killer or Business as Usual? -- Rule 23(b)(3) and the Predominance Requirement" and a panelist for the ABA Section of Litigation's "Rules Roadshow," on the topic "Precision Advocacy: Reinventing Motion Practice to Win" in Philadelphia.

She is admitted to federal practice in the Court of Appeals for the Third Circuit, the District Courts of Pennsylvania, the District of New Jersey, and the Northern District of Illinois.  She is also admitted to practice in the Commonwealth of Pennsylvania and New Jersey.

Ms. Reuben received a B.A. in Political Science and English from Indiana University in Bloomington, Indiana. After earning her J.D. and M.P.A. from the University of Pittsburgh, in Pittsburgh, Pennsylvania, Ms. Reuben served as a law clerk for the Honorable Frank J. Montemuro, Senior Justice of the Supreme Court of Pennsylvania.

Lite DePalma Greenberg & Afanador, LLC is a general practice law firm, with offices in Newark and Philadelphia. The firm specializes in commercial and complex litigation with a concentration in class action matters in the areas of securities, antitrust, consumer fraud, and insurance sales practices, and has a long-standing tradition of recruitment, retention, and advancement of women and minority attorneys. More detail about the firm and its attorneys appears on its website, www.litedepalma.com.

# EXHIBIT F

**IN RE WAWA, INC. DATA SECURITY LITIG., NO. 19-6019 (EDPA) – F1 TRACK**

Time Report and Lodestar Summary

**Reporting Period:  January ----**

Firm:
Name of Person Entering Information Below:
Email address of Person Entering Information

| Name of Professional | Status | Year of Admission/ Year Legal Career Began | Hourly Rate At Time Work Performed | (1) Investigations, Factual Research | (2) Discovery & Discovery Motions* | (3) Pleadings, Briefs, Pretrial Motions* | (4) Court Appearances Incl. Preparation | (5) Settlement | (6) Litigation Strategy, Analysis & Case Management | (7) Class Certification | Current Month Total Hours | Current Month Lodestar | Year-to-Date Total Hours | Year-to-Date Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | S    - | 0.00 | S    - |

*including legal research.

Notes about entered information:

**IN RE WAWA, INC. DATA SECURITY LITIG., NO. 19-6019 (EDPA) – FI TRACK**
Expense Report and Summary of Fees & Expenses

**Firm:**
Name of Person Entering Information Below:
Email address of Person Entering Information:

| Description | Jan 1-31, 2019 | January YTD | Feb 1-28, 2019 | February YTD | March 1-31, 2019 | March YTD | April 1-30, 2019 | April YTD |
|---|---|---|---|---|---|---|---|---|
| Assessments | | | | | | | | |
| Commercial Copies | | | | | | | | |
| Internal Reproduction/Copies | | | | | | | | |
| Court Fees (filing, etc.) | | | | | | | | |
| Court Reporters/Transcripts | | | | | | | | |
| Computer Research | | | | | | | | |
| Telephone/Fax/Email | | | | | | | | |
| Postage/Express Delivery/Messenger | | | | | | | | |
| Professional Fees (expert, investigator, accountant, etc.) | | | | | | | | |
| Witness/Service Fees | | | | | | | | |
| Travel (Air Transportation, Ground Travel, Meals, Lodging, etc.) | | | | | | | | |
| Word Processing | | | | | | | | |
| Miscellaneous (Describe): | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **TOTAL EXPENSES** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| General Notes about entered information: | January Notes: | February Notes: | March Notes: | April Notes: |
|---|---|---|---|---|
| | | | | |

1

# EXHIBIT G

| IN RE: WAWA, INC. DATA SECURITY LITIGATION | ) ) ) ) ) ) | Lead Case No. 2:19-cv-06019-GEKP<br><br>CLASS ACTION |
|---|---|---|

### IN RE: WAWA, INC. DATA SECURITY LITIGATION
### TIME AND EXPENSE PROTOCOL

**Financial Institution Class**

## I.    Submission of Time & Expenses

To facilitate the compilation and review of all time and expenses incurred in this case, we each firm must submit (i) standardized time and expense summaries (template attached) in the Excel format provided (no PDFs of the Excel will be accepted), (ii) an attorney certification (template attached); and (iii) detailed monthly time reports (preferably, in Excel format if your time reporting system can generate detailed time reports in that format).  Please note that the Excel time and expense template includes embedded formulas that automatically calculate totals for each timekeeper for that month, and month-over-month; please do not alter any of the formulas.

All time should be reported at the billing rates in effect at your firm during the particular month(s) for which you are reporting.  Reporting for the preceding month will be due on the 15th day of each month (or next business day thereafter if the 15th day falls on a weekend or holiday) and should be sent via email to **WawaTimeExpense@litedepalma.com.**  The first reports, due July 15, should include all time that your firm has accrued to date.

Pursuant to Case Management Order No. 2 (ECF 119), Plaintiffs are expected to submit a quarterly time and expense report to the Court for any work for which counsel intends to seek compensation at the end of the litigation.  Before submission to the Court, monthly reports will be audited by Interim Counsel for accuracy, consistency, and to ensure that the work performed was directed by Interim Counsel.

Submission of time does not guarantee that a firm will be paid for that time, and we will not include in any fee petition any time that is not timely reported. [1]

---

[1] Because firms may have performed work prior to appointment that benefits the class and may represent individuals who are ultimately selected as proposed class representatives in any

## II.    Work Performed at the Direction of Counsel

Going forward, only work performed at the direction of Interim Counsel should be eligible for submission and inclusion in any fee award should the case be successfully resolved. Accordingly**, please enter the name of the Interim Counsel who assigned your firm the work in your detailed description of the work in your internal time reports.**    (*E.g.,* Edited consolidated amended complaint (per G. Lynch)).

## III.    Expenses

Only expenses that are documented and timely reported and that benefit all the class will be eligible for reimbursement.

Expenses are to be reported only at cost with no markup.  Individuals will retain all receipts and billing records necessary to justify reimbursement.

Expenses should be reported in the month incurred.  When an expense is reported later, due to delays caused by slow third-party billing statements or billing cycles, the expense must be reported in the first-possible submission.

To manage expectations and keep expenses reasonable, expenses will be eligible for reimbursement only if they comport with the following guidelines, though Interim Counsel should have the authority to authorize exceptions in special cases:

- Air Travel:  Counsel shall use their best efforts to obtain reasonably priced airfare and first-class travel will not be reimbursed.

- Ground Transportation:  Car rental or taxi fees should be reasonable for the type of travel required.

- Hotel:  Counsel shall stay in accommodations that do not exceed the cost of standard, business-class hotels.

- Meals:  Meal expenses should be reasonable, accounting for the purpose of the meal and the options available.  Alcoholic beverages are not cognizable expenses.

---

consolidated or amended complaint, we intend to collect and review pre-appointment time submissions but include only qualifying time entries in the first quarterly report. Qualifying entries may include work and costs related to filing complaints and working with clients for firms whose clients are selected as named class members, legal and factual research that benefits the class, and any expert work that may benefit the class.

- Legal Research Costs:  Expenses for legal research services incurred in connection with work assigned by Interim Counsel may be submitted with no markup over cost and as appropriately allocated to the case.

- Administrative Expenses:  Administrative expenses such as charges for conference call services, copying, shipping, couriers, faxes, and postage should be reported at cost.

Other Common Benefit expenses will be paid directly from a litigation fund to be managed by one of the Interim Counsel, who will also maintain an accurate accounting of all expenses submitted and paid.  Only Interim Counsel are authorized to approve expenses for reimbursement from the litigation fund.  These expenses include:

- filing and service costs,
- ESI collection, processing, hosting, and review expenses,
- deposition transcript and court reporter fees,
- expert witness costs,
- trial-related costs, and
- administrative expenses.

## IV.    Time Keeping and Form of Reporting

All time should be contemporaneously recorded.  Time must be billed in increments of tenths of an hour and rounded to the nearest tenth of an hour.

Each task must be described in enough detail to permit evaluation of the quality and quantity of the services provided. Timekeepers should not rely on the task codes or use vague descriptions. For example, entries for calls or meetings should identify the participants (at least generally, such as "def counsel") and the subject of the meeting, and entries about a motion or brief must specify which motion or brief.

Block billing will not be accepted.  Each task should be recorded separately.  Although tasks related to a particular task may be recorded in a single entry if there is sufficient detail (e.g., review case law in prep for meet and confer re sufficiency of defs production; meet and confer with defs re same; email with co-counsel re same; draft follow-letter to defs re same), unrelated tasks may not be aggregated into a single time entry, even though they may fall within the same billing category (e.g., deposition preparation may not be billed in the same entry as a meet and confer on another discovery subject even though they both fall into the discovery task code).

All time and expense reports submitted to Interim Counsel will be certified by an attorney with authority in each firm attesting to the accuracy of the submissions.  Please use the templates provided.  Instructions on how to use the templates are included on the first tab.

3

831788.1

# EXHIBIT H

**EXHIBIT H**

Time (Hours) by Category
From Inception through September 30, 2024

<u>Class Counsel</u>

| Firm | Investigations, Factual Research | Discovery & Discovery Motions | Pleadings, Briefs, Pretrial Motions | Court Appearances & Preparation | Settlement | Litigation Strategy, Analysis & Case Mgmt | Class Certification | Totals |
|---|---|---|---|---|---|---|---|---|
| Hausfeld | 23.6 | 842.6 | 224.3 | 21.2 | 172 | 310.9 | 0 | 1,594.6 |
| Lite DePalma Greenberg & Afanador | 9.6 | 395 | 119.4 | 24.2 | 536.6 | 384.3 | 0.5 | 1,469.6 |
| Lowey Dannenberg | 74.2 | 118 | 873.9 | 226.3 | 345.8 | 352.5 | 0 | 1,990.7 |
| Lynch Carpenter | 65.9 | 437.5 | 493.9 | 74.3 | 669 | 283.9 | 0 | 2,024.5 |
| **Totals** | **173.3** | **1,793.1** | **1,711.5** | **346.00** | **1,723.40** | **1,331.60** | **0.50** | **7,079.40** |

# EXHIBIT I

**EXHIBIT I**

Hours and Fees
From Inception through September 30, 2024

Financial Institution Counsel

| FIRMS | | Inception-2/29/2020 | 3/1/2020-5/31/2020 | 6/1/2020-9/30/2020 | 10/1/2020-12/31/2020 | 1/1/2021-3/31/2021 | 4/1/2021-6/30/2021 | 7/1/2021-9/30/2021 | 10/1/2021-12/31/2021 |
|---|---|---|---|---|---|---|---|---|---|
| Boni Zack & Snyder | hours | 4.6 | 0.6 | 2.3 | 1.3 | 0 | 0 | 0 | 0.4 |
| | fees | $3,500.00 | $540.00 | $2,070.00 | $910.00 | $0.00 | $0.00 | $0.00 | $370.00 |
| Chestnut Cambronne | hours | 21.3 | 0.5 | 91.1 | 14.6 | 0.5 | 28.0 | 18.6 | 0 |
| | fees | $14,672.50 | $362.50 | $59,820.00 | $10,035.00 | $412.50 | $20,520.00 | $15,345.00 | $0.00 |
| Coffman Law Firm | hours | 85.1 | 1.8 | 4.4 | 1.0 | 0 | 0 | 0.5 | 0 |
| | fees | $55,888.50 | $795.00 | $3,133.50 | $750.00 | $0.00 | $0.00 | $375.00 | $0.00 |
| DiCello Levitt | hours | 12.3 | 0.5 | 24.7 | 0.8 | 8.1 | 2.8 | 18.1 | 1.4 |
| | fees | $10,178.50 | $425.00 | $21,108.00 | $700.00 | $6,292.50 | $2,450.00 | $12,278.00 | $1,015.00 |
| Golomb Spirit Grunfeld | hours | 80.4 | 5.9 | 52.4 | 12.6 | 3.5 | 8.7 | 13.5 | 4.8 |
| | fees | $44,530.00 | $2,950.00 | $26,200.00 | $6,425.00 | $1,925.00 | $3,425.00 | $4,293.00 | $1,832.50 |
| Hausfeld | hours | 93.7 | 110.5 | 223.9 | 109.8 | 82.1 | 154.9 | 348.4 | 158.0 |
| | fees | $64,523.00 | $76,746.00 | $142,869.00 | $65,959.00 | $49,816.00 | $97,352.00 | $223,834.00 | $104,178.00 |
| Kudulis Reisinger | hours | 0 | 0 | 1.1 | 1.5 | 0 | 0.1 | 7.3 | 18.4 |
| | fees | $0.00 | $0.00 | $459.80 | $627.00 | $0.00 | $41.80 | $3,051.40 | $7,691.20 |
| Levin Sedran & Berman | hours | 43.9 | 0.5 | 16.4 | 18.4 | 18.9 | 24.9 | 44.4 | 58.1 |
| | fees | $39,665.00 | $487.50 | $13,377.50 | $14,662.50 | $15,625.00 | $21,522.50 | $41,105.00 | $44,040.00 |
| Lite DePalma Greenberg & Afanador | hours | 39.1 | 25.6 | 119.0 | 52.2 | 31.2 | 73.80 | 125.9 | 294.9 |
| | fees | $29,060.00 | $18,150.00 | $76,780.00 | $32,220 | $18,800.00 | $50,992.50 | $82,225.00 | $191,072.50 |
| Lockridge Grindal Nauen | hours | 18.9 | 0.5 | 18.4 | 21.3 | 0 | 8.8 | 59.0 | 34.8 |
| | fees | $14,420.00 | $202.50 | $13,085.00 | $13,992.50 | $0.00 | $7,040.00 | $46,392.50 | $27,840.00 |
| Lowey Dannenberg | hours | 593.5 | 78.8 | 452.2 | 94.5 | 13.6 | 15.5 | 21.2 | 82.1 |
| | fees | $281,403.00 | $41,962.50 | $234,715.00 | $54,924.00 | $7,682.00 | $10,364.50 | $14,824.00 | $51,544.00 |
| Lynch Carpenter | hours | 355.4 | 95.1 | 204.4 | 146.5 | 14.5 | 71.3 | 151.8 | 301.6 |
| | fees | $253,235.00 | $71,402.50 | $152,700.00 | $99,597.50 | $11,237.50 | $30,855.00 | $117,950.00 | $224,110.00 |
| Rupp Pfalzgraf | hours | 7.1 | 1.4 | 0.4 | 0.2 | 0.9 | 0 | 0.4 | 0.3 |
| | fees | $3,195.00 | $630.00 | $180.00 | $85.00 | $405.00 | $0.00 | $180.00 | $135.00 |
| Zimmerman Reed | hours | 43.9 | 10.1 | 15.6 | 94.3 | 31.3 | 74.6 | 202.1 | 50.8 |
| | fees | $23,927.50 | $5,543.50 | $9,904.00 | $53,086.50 | $16,463.50 | $46,283.00 | $111,588.50 | $35,433.00 |
| **TOTALS** | **hours** | **1,399.2** | **331.8** | **1,226.3** | **571.3** | **204.6** | **463.4** | **1,011.2** | **1,005.6** |
| | **fees** | **$838,198.00** | **$220,197.00** | **$756,401.80** | **$355,526.50** | **$128,659.00** | **$290,846.30** | **$673,441.40** | **$689,261.20** |

1010111.1

**EXHIBIT I**

Hours and Fees
From Inception through September 30, 2024

Financial Institution Counsel

| FIRMS | | 1/1/2022-3/31/2022 | 4/1/2022-6/30/2022 | 7/1/2022-9/30/2022 | 10/1/2022-12/31/2022 | 1/1/2023-3/31/2023 | 4/1/2023-6/30/2023 | 7/1/2023-9/30/2023 | 10/1/2023-12/31/2023 |
|---|---|---|---|---|---|---|---|---|---|
| Boni Zack & Snyder | hours | 0.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | fees | $190.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Chestnut Cambronne | hours | 0.2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | fees | $190.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Coffman Law Firm | hours | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DiCello Levitt Gutzler | hours | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Golomb Spirit Grunfeld | hours | 9.2 | 3.6 | 2.3 | 0 | 1.7 | 0 | 0 | 0 |
| | fees | $2,262.50 | $2,160.00 | $1,190.00 | $0.00 | $1,020.00 | $0.00 | $0.00 | $0.00 |
| Hausfeld | hours | 55.2 | 107.1 | 34.7 | 22.8 | 11.7 | 2.2 | 11 | 27.3 |
| | fees | $39,965.50 | $69,251.50 | $22,308.50 | $14,916.00 | $6,941.00 | $1,094.00 | $8,022.00 | $21,340.50 |
| Kudulis Reisinger | hours | 0.6 | 0.3 | 3 | 0 | 0.6 | 0 | 0 | 0 |
| | fees | $25.80 | $125.40 | $1,254.00 | $0.00 | $250.80 | $0.00 | $0.00 | $0.00 |
| Levin Sedran & Berman | hours | 17.5 | 1.7 | 0 | 0 | 0.8 | 0 | 1.5 | 0.0 |
| | fees | $14,402.50 | $1,657.50 | $0.00 | $0.00 | $820.00 | $0.00 | $975.00 | $0.00 |
| Lite DePalma Greenberg & Afanador | hours | 190.0 | 93.9 | 52.8 | 72.4 | 41.3 | 14.7 | 10.9 | 50.6 |
| | fees | $113,270.00 | $58,912.50 | $36,715.00 | $50,695.00 | $25,972.50 | $8,735.00 | $7,015.00 | $37,620.00 |
| Lockridge Grindal Nauen | hours | 8.2 | 3.1 | 3 | 0 | 0 | 0 | 0 | 0.0 |
| | fees | $6,970.00 | $2,635.00 | $2,550.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Lowey Dannenberg | hours | 48.3 | 46.7 | 49.9 | 37.2 | 33.5 | .1 | 14.1 | 165.3 |
| | fees | $35,325.00 | $36,532.00 | $34,066.00 | $27,660.00 | $31,107.50 | $109.00 | $12,522.00 | $99,314.50 |
| Lynch Carpenter | hours | 126.9 | 153.5 | 105.9 | 63.5 | 93 | .9 | 19.8 | 44.2 |
| | fees | $101,125.00 | $115,960.00 | $75,880.00 | $51,700.00 | $79,950.00 | $900.00 | $17,400.00 | $42,280.00 |
| Rupp Pfalzgraf | hours | 0 | 0 | 0 | 0 | 0.2 | .6 | .8 | 0.7 |
| | fees | $0.00 | $352.50 | $0.00 | $0.00 | $95.00 | $285.00 | $760.00 | $317.50 |
| Zimmerman Reed | hours | 6.8 | 23.2 | 8.1 | .8 | 2.4 | 0 | 0 | 0.4 |
| | fees | $4,957.50 | $14,570.00 | $6,460.00 | $680.00 | $2,100.00 | $0.00 | $0.00 | $350.00 |
| **TOTALS** | **hours** | **463.1** | **433.9** | **259.2** | **196.7** | **185.2** | **18.5** | **58.1** | **288.5** |
| | **fees** | **$318,683.80** | **$302,156.40** | **$180,223.50** | **$145,651.00** | **$148,256.80** | **$11,123.00** | **$46,694.00** | **$201,222.50** |

1010111.1

**EXHIBIT I**

Hours and Fees
From Inception through September 30, 2024

Financial Institution Counsel

| FIRMS | | 1/1/2024-3/31/2024 | 4/1/2024-6/30/2024 | 7/1/2024-10/9/2024 | TOTALS (ALL PERIODS) |
|---|---|---|---|---|---|
| Boni Zack & Snyder | hours | 0 | 0 | 0 | **9.4** |
| | fees | $0.00 | $0.00 | $0.00 | **$7,580.00** |
| Chestnut Cambronne | hours | 0 | 0 | 0 | **174.8** |
| | fees | $0.00 | $0.00 | $0.00 | **$18,680.00** |
| Coffman Law Firm | hours | 0 | 0 | 0 | **92.8** |
| | fees | $0.00 | $0.00 | $0.00 | **$60,942.00** |
| DiCello Levitt Gutzler | hours | 0 | 0 | 0 | **68.7** |
| | fees | $0.00 | $0.00 | $0.00 | **$54,447.00** |
| Golomb Spirit Grunfeld | hours | 0 | 0 | 0 | **198.6** |
| | fees | $0.00 | $0.00 | $0.00 | **$98,213.00** |
| Hausfeld | hours | 7.3 | 21.3 | 12.7 | **1,594.6** |
| | fees | $4,994.00 | $17,880.50 | $7,910.00 | **$1,039,900.50** |
| Kudulis Reisinger | hours | 0 | 0 | 0 | **32.9** |
| | fees | $0.00 | $0.00 | $0.00 | **$13,527.20** |
| Levin Sedran & Berman | hours | 0 | 0 | 0 | **247.0** |
| | fees | $0.00 | $0.00 | $0.00 | **$208,340.00** |
| Lite DePalma Greenberg & Afanador | hours | 42.6 | 35.8 | 102.9 | **1,469.6** |
| | fees | $30,560.00 | $20,995.00 | $60,107.50 | **$949,977.00** |
| Lockridge Grindal Nauen | hours | 0 | 0 | 0 | **176.0** |
| | fees | $0.00 | $0.00 | $0.00 | **$135,127.50** |
| Lowey Dannenberg | hours | 54.6 | 55.2 | 132.1 | **1,990.7** |
| | fees | $32,925.00 | $47,213.00 | $98,607.50 | **$1,154,353.00** |
| Lynch Carpenter | hours | 13.6 | 17.4 | 45.7 | **2024.5** |
| | fees | $14,560.00 | $18,680.00 | $35,175.00 | **$1,514,497.50** |
| Rupp Pfalzgraf | hours | 0.5 | 1.4 | 2.5 | **18.2** |
| | fees | $237.50 | $589.00 | $741.50 | **$8,188.00** |
| Zimmerman Reed | hours | 0 | 0.2 | .9 | **565.5** |
| | fees | $0.00 | $190.00 | $855.00 | **$332,392.00** |
| **TOTALS** | **hours** | **118.6** | **131.3** | **296.8** | **8,663.3** |
| | **fees** | **$83,276.50** | **$105,547.50** | **$275,396.50** | **$5,698,762.70** |

# EXHIBIT J

**EXHIBIT J**

Hours and Fees by Timekeeper
From Inception through September 30, 2024

<u>Lynch Carpenter</u>

| Name | Title | Hourly Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| **Class Counsel** | | | | |
| Gary Lynch | Partner | $775-$1,100 | 1,164.7 | $1,004,332.50 |
| **Other Counsel and Staff** | | | | |
| Nicholas Colella | Partner | $375-$700 | 5.6 | $2,830.00 |
| Jamisen Etzel | Partner | $575-$900 | 242.9 | $163,247.50 |
| Kelly Iverson | Partner | $625-$800 | 37.4 | $23,410.00 |
| Gary Lynch | Partner | $775-$1,100 | 1,164.7 | $1,004,332.50 |
| Elizabeth Pollock-Avery | Partner | $575-$800 | 362.7 | $246,755.00 |
| Hannah Barnett | Associate | $400 | 45.8 | $18,320.00 |
| Matthew Brady | Associate | $375-$500 | 14.3 | $5,387.50 |
| Bailey Corbin | Associate | $400 | 7.0 | $2,800.00 |
| Patrick Donathen | Associate | $400-$500 | 46.0 | $18,430.00 |
| Kevin Tucker | Associate | $575 | 23.3 | $13,397.50 |
| Daniel Berkowitz | Law Clerk | $250 | 3.7 | $925.00 |
| Deja Byrant | Law Clerk | $150 | 29.7 | $4,455.00 |
| Haven Campbell | Law Clerk | $250 | 4.5 | $1,125.00 |
| Lucia Romani | Law Clerk | $250 | 3.2 | $800.00 |
| Brittany Hargenrader | Paralegal | $200 | 3.0 | $600.00 |
| Daniel Hart | Paralegal | $250-$275 | 7.5 | $2,037.50 |
| Kate O'Reilly | Paralegal | $275 | 8.5 | $2,337.50 |
| Jon Romanishin | Paralegal | $225 | 14.7 | $3,307.50 |
| **TOTAL** | | | **2,024.5** | **$1,514,497.50** |

# EXHIBIT K

**EXHIBIT K**

Hours and Fees by Timekeeper
From Inception through September 30, 2024

<u>Lowey Dannenberg, P.C.</u>

| Name | Title | Hourly Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| **Class Counsel** | | | | |
| Christian Levis | Partner | $675-$1,175 | 598.1 | $449,324.00 |
| **Other Counsel and Staff** | | | | |
| Sitso Bediako | Partner | $1,015-$1,175 | 30.3 | $32,837.50 |
| Vincent Briganti | Partner | $980-$1,025 | 5.2 | $5,141.00 |
| Barbara Hart | Partner | $980 | 4.8 | $4,704.00 |
| Geoffrey Horn | Partner | $980-$1,500 | 13.0 | $15,223.00 |
| Nicholas Alicata | Associate | $460-$495 | 47.4 | $22,479.50 |
| Amir Alimehri | Associate | $410 | 3.0 | $1,230.00 |
| Anthony Christina | Associate | $410-$755 | 627.0 | $347,623.00 |
| Amanda Fiorilla | Associate | $380-$755 | 376.5 | $144,534.00 |
| Thomas Griffith | Associate | $380 | 1.0 | $380.00 |
| Rachel Kesten | Associate | $560-$605 | 9.9 | $5,544.00 |
| Charles Kopel | Associate | $410 | 6.6 | $2,706.00 |
| Henry Kusjanovic | Associate | $380 | 23.6 | $8,968.00 |
| Yuanchen Lu | Associate | $300-$565 | 30.5 | $13,807.50 |
| Joseph Mansilla | Associate | $350 | 8.0 | $2,800.00 |
| Nicole Maruzzi | Associate | $455 | 4.1 | $1,865.50 |
| William Olson | Associate | $410 | 4.0 | $1,640.00 |
| Andrew Sacher | Associate | $820 | 18.7 | $15,334.00 |
| Johnathan Seredynski | Associate | $650 | 30.7 | $19,955.00 |
| Adam Settle | Associate | $325 | 3.4 | $1,105.00 |
| Peyton Woodward | Associate | $460-$535 | 63.0 | $30,585.00 |
| Mitsuka Attys | Law Clerk | $300 | 13.0 | $3,900.00 |
| Elise Dee | Law Clerk | $300 | 34.9 | $10,470.00 |
| Radhika Gupta | Law Clerk | $350 | 11.6 | $4,060.00 |
| Matthew Roberts | Law Clerk | $350 | 5.3 | $1,855.00 |
| Katherine Vogel | Paralegal | $300-$315 | 5.1 | $1,542.00 |
| **TOTAL** | | | **1,978.7** | **$1,149,613.00** |

# EXHIBIT L

**EXHIBIT L**

Hours and Fees by Timekeeper
From Inception through September 30, 2024

Hausfeld LLP

| Name | Title | Hourly Rate | Total Hours | Total Fees |
|------|-------|-------------|-------------|------------|
| **Class Counsel** | | | | |
| Jeannine Kenney | Partner | $680-$900 | 1,188.3 | $833,323.00 |
| **Other Counsel and Staff** | | | | |
| Melinda Coolidge | Partner | $700 | 0.4 | $280.00 |
| Nataniel Giddings | Partner | $660 | 3.5 | $2,310.00 |
| Brent Landau | Partner | $870-$995 | 3.0 | $2,897.50 |
| James Pizzirusso | Partner | $840-$995 | 81.2 | $68,441.50 |
| Brian Ratner | Partner | $900 | 0.3 | $270.00 |
| Theodore DiSalvo | Associate | $450 | 12.4 | $5,580.00 |
| Kimberly Fetsick | Associate | $490 | 1.7 | $833.00 |
| Samuel Maida | Associate | $480-$540 | 47.3 | $22,922.00 |
| Leland Shelton | Associate | $490-$510 | 113.9 | $57,379.00 |
| Kevin Wang | Law Clerk | $260 | 8.2 | $2,132.00 |
| Seth Gassman | Of Counsel | $875 | 0.4 | $350.00 |
| Steven Nathan | Of Counsel | $650-$725 | 3.3 | $2,182.50 |
| James Mitchell | Paralegal | $300-$350 | 130.7 | $41,000.00 |
| **TOTAL** | | | **1,594.6** | **$1,039,900.50** |

1010248.1

# EXHIBIT M

**EXHIBIT M**

Hours and Fees by Timekeeper
From Inception through September 30, 2024

<u>Lite DePalma Greenberg & Afanador, LLC</u>

| Name | Title | Hourly Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| **Class Counsel** | | | | |
| Mindee Reuben | Partner | $700-$800 | 751.7 | $582,450.00 |
| **Other Counsel and Staff** | | | | |
| Victor Afanador | Partner | $800 | 3.0 | $2,400.00 |
| Joseph DePalma | Partner | $800 | 30.3 | $24,240.00 |
| Bruce Greenberg | Partner | $800 | 0.4 | $320.00 |
| Jeremy Nash | Of Counsel | $675 | 340.3 | $229,702.50 |
| Dana Smith | Of Counsel | $675 | 34.7 | $23,422.50 |
| Catherine Derenze | Associate | $375 | 80.0 | $30,000.00 |
| Michael Scales | Associate | $375 | 0.3 | $112.50 |
| Colin Schaffhauser | Associate | $375 | 4.9 | $1,837.50 |
| Patrick Soundy | Associate | $375 | 2.1 | $787.50 |
| Mary Youssef | Law Clerk | $125 | 6.8 | $850.00 |
| Eric Henley | Paralegal | $250 | 213.7 | $53,425.00 |
| Elvira Palomino | Paralegal | $250 | 1.4 | $350.00 |
| **TOTAL** | | | **1,469.6** | **$949,897.50** |

# EXHIBIT N

**EXHIBIT N**

Unadjusted Expenses by Firm
From Inception through September 30, 2024

Financial Institution Counsel

| FIRMS | Inception-2/29/2020 | 3/1/2020-5/31/2020 | 6/1/2020-9/30/2020 | 10/1/2020-12/31/2020 | 1/1/2021-3/31/2021 | 4/1/2021-6/30/2021 | 7/1/2021-9/30/2021 | 10/1/2021-12/31/2021 |
|---|---|---|---|---|---|---|---|---|
| Boni Zack & Snyder | $9.80 | $63.70 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Chestnut Cambronne | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Coffman Law Firm | $815.04 | $124.01 | $1.90 | $5.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| DiCello Levitt Gutzler | $62.76 | $3.00 | $252.41 | $15.22 | $0.00 | $0.00 | $0.00 | $0.00 |
| Golomb & Honik | $1,058.91 | $140.80 | $0.00 | $5.10 | $6.00 | $36.40 | $3.00 | $0.00 |
| Hausfeld | $765.25 | $236.15 | $11,127.76* | $110.51 | $186.56 | $0.00 | $37.88 | $94.61 |
| Kudulis Reisinger | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Levin Sedran & Berman | $21.60 | $0.00 | $0.00 | $15.30 | $9.70 | $0.00 | $272.53 | $939.94 |
| Lite DePalma Greenberg & Afanador | $0.00 | $0.00 | $10,000.00* | $0.00 | $0.00 | $35.28 | $0.00 | $190.00 |
| Lockridge Grindal Nauen | $31.60 | $3.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Lowey Dannenberg | $4,140.47 | $821.15 | $10,915.27* | $1,349.94 | $619.88 | $105.44 | $1,509.48 | $1,515.95 |
| Lynch Carpenter | $0.00 | $0.00 | $13,900.97* | $928.93 | $40.00 | $0.00 | $0.00 | $6,800.00 |
| Rupp Pfalzgraf | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Zimmerman Reed | $43.89 | $41.20 | $3.00 | $63.40 | $28.98 | $90.51 | $730.58 | $770.17 |
| **TOTALS** | **$6,949.32** | **$1,433.01** | **$46,201.31** | **$2,493.70** | **$891.12** | **$267.63** | **$2,553.47** | **$10,310.67** |

\* includes $10,000 contribution to litigation fund
\*\* includes $2,500 contribution to litigation fund

1010112.1

**EXHIBIT N**

Unadjusted Expenses by Firm
From Inception through September 30, 2024

Financial Institution Counsel

| FIRMS | 1/1/2022-3/31/2022 | 4/1/2022-6/30/2022 | 7/1/2022-9/30/2022 | 10/1/2022-12/31/2022 | 1/1/2023-3/31/2023 | 4/1/2023-6/30/2023 | 7/1/2023-9/30/2023 | 10/1/2023-12/31/2023 |
|---|---|---|---|---|---|---|---|---|
| Boni Zack & Snyder | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Chestnut Cambronne | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Coffman Law Firm | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DiCello Levitt | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Golomb Spirit Grunfeld | $0.00 | $116.77 | $3.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Hausfeld | $162.51 | $2,541.29** | $268.63 | $0.00 | $0.00 | $0.00 | $36.50 | $161.09 |
| Kudulis Reisinger | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Levin Sedran & Berman | $386.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $11.40 | $0.00 |
| Lite DePalma Greenberg & Afanador | $95.95 | $2,500.00** | $0.00 | $0.00 | $29.50 | $0.00 | $0.00 | $0.00 |
| Lockridge Grindal Nauen | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Lowey Dannenberg | $174.36 | $40.97 | $119.36 | $163.29 | $105.69 | $78.08 | $381.55 | $252.59 |
| Lynch Carpenter | $0.00 | $2,500.00** | $0.00 | $0.00 | $40.00 | $0.00 | $0.00 | $986.69 |
| Rupp Pfalzgraf | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Zimmerman Reed | $0.00 | $0.00 | $6.65 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTALS** | **$819.56** | **$7,699.03** | **$398.04** | **$163.29** | **$175.19** | **$78.08** | **$429.45** | **$1,400.37** |

\* includes $10,000 contribution to litigation fund
\*\* includes $2,500 contribution to litigation fund

1010112.1

**EXHIBIT N**

Unadjusted Expenses by Firm
From Inception through September 30, 2024

Financial Institution Counsel

| FIRMS | 1/1/2024–3/31/2024 | 4/1/2024–6/30/2024 | 7/1/2024–9/30/2024 | TOTALS (ALL PERIODS) |
|---|---|---|---|---|
| Boni Zack & Snyder | $0.00 | $0.00 | $0.00 | $73.50 |
| Chestnut Cambronne | $0.00 | $0.00 | $0.00 | $0.00 |
| Coffman Law Firm | $0.00 | $0.00 | $0.00 | $946.25 |
| DiCello Levitt | $0.00 | $0.00 | $0.00 | $333.39 |
| Golomb Spirit Grunfeld | $0.00 | $0.00 | $0.00 | $1,370.38 |
| Hausfeld | $9.80 | $34.77 | $38.24 | $15,811.55 |
| Kudulis Reisinger | $0.00 | $0.00 | $0.00 | $0.00 |
| Levin Sedran & Berman | $0.00 | $0.00 | $6.60 | $1,663.81 |
| Lite DePalma Greenberg & Afanador | $0.00 | $0.00 | $21.16 | $12,871.89 |
| Lockridge Grindal Nauen | $0.00 | $0.00 | $0.00 | $34.60 |
| Lowey Dannenberg | $568.64 | $66.86 | $334.39 | $23,263.36 |
| Lynch Carpenter | $0.00 | $0.00 | $0.00 | $25,196.59 |
| Rupp Pfalzgraf | $0.00 | $0.00 | $0.00 | $0.00 |
| Zimmerman Reed | $0.00 | $0.00 | $0.00 | $1,778.38 |
| **TOTALS** | **$578.44** | **$101.63** | **$400.39** | **$83,343.70** |

\* includes $10,000 contribution to litigation fund
\*\* includes $2,500 contribution to litigation fund

1010112.1

# EXHIBIT O

**EXHIBIT O**

Adjusted Expenses by Category
From Inception through September 30, 2024

Financial Institution Counsel

| Expense Categories | Totals |
|---|---|
| Assessments | $47,700.00 |
| Commercial Copies | -- |
| Internal Reproduction/Copies | $438.91 |
| Court Fees (filing, etc.) | $4,595.40 |
| Court Reporters/Transcripts | $541.11 |
| Computer Research | $9,078.00 |
| Telephone/Fax/Email | -- |
| Postage/Express Delivery/Messenger | $336.61 |
| Professional Fees (expert, investigator, accountant, etc.) | $7,383.65 |
| Witness/Service Fees | $1,796.60 |
| Travel (Air Transportation, Ground Travel, Meals, Lodging, etc.) | $5,744.42 |
| Miscellaneous (incl. Document Production, Advertising) | $5,378.36 |
| **ADJUSTED TOTAL** | **$82,993.06** |

1010237.1

# EXHIBIT P

**EXHIBIT P**

Litigation Fund Ledger
From Inception through September 30, 2024

Financial Institution Plaintiffs

| Litigation Fund | | |
|---|---|---|
| **Deposits** | | |
| **Name** | **Date** | **Amount** |
| Lowey Dannenberg, P.C. | 7/8/2020 | $10,000.00 |
| Carlson Lynch LLP | 7/10/2020 | $10,000.00 |
| Hausfeld LLP | 7/10/2020 | $10,000.00 |
| Lite DePalma Greenberg LLC | 7/15/2020 | $10,000.00 |
| Lynch Carpenter LLP | 5/10/2022 | $2,500.00 |
| Hausfeld LLP | 5/13/2022 | $2,500.00 |
| Lite DePalma Greenberg LLC | 6/10/2022 | $2,500.00 |
| Hausfeld LLP | 9/8/2022 | $200.00 |
| **Total Deposits** | | $47,700.00 |
| **Payments** | | |
| Kathleen Feldman, CSR, RPR (Inv#20200919) | 11/18/2020 | $458.25 |
| Zaxyz Corp. (Matthew Strebe) Invoice: 20974 | 1/22/2021 | $3,033.33 |
| Rapid Delivery Order No: 1205262 | 8/3/2021 | $10.00 |
| JND eDiscovery LLC invoice: 122659 | 8/16/2021 | $1,108.85 |
| JND eDiscovery LLC Invoice: 122913 | 9/23/2021 | $2,559.60 |
| Intelligent Discovery Solutions, Inc. Invoice: 24457 | 9/23/2021 | $1,470.00 |
| Intelligent Discovery Solutions, Inc. Invoice: 24828 | 10/14/2021 | $1,050.00 |
| JND eDiscovery LLC Invoice: 123165 | 11/4/2021 | $1,485.40 |
| U.S. Legal Support Inc. Invoice: 110495837 | 12/3/2021 | $1,268.99 |
| Intelligent Discovery Solutions, Inc. Invoice: 25612 | 12/17/2021 | $420.00 |
| Intelligent Discovery Solutions, Inc. Invoice: 25207 | 1/21/2022 | $1,207.50 |
| JAMS, Inc. Invoice: 1450008026 Mediation | 3/9/2022 | $4,902.00 |
| JAMS, Inc. Invoice: 6071840 Mediation | 4/12/2022 | $5,000.00 |
| Zaxyz Corp. (M. Strebe) Inv.: 21104 21182 21145 21086 21255 | 4/19/2022 | $10,183.32 |
| GlassRatner Advisory and Capital Group LLC Invoice: 58281 | 5/26/2022 | $7,013.50 |
| JAMS, Inc. Invoice: 6165770 Mediation | 8/23/2022 | $5,647.00 |
| Computer Forensic Services, LLC. Invoice: 103556 | 10/19/2022 | $880.00 |
| **Total Payments** | | $47,697.74 |
| | | |
| **Balance** | | $2.26 |

# EXHIBIT Q

**JND eDiscovery**

1201 2nd Avenue, Suite 3400
Seattle, WA  98101
accounting.ediscovery@jndla.com
www.jndla.com



# Statement

**TO**
Lowey Dannenberg, P.C. -
WAWA
Suite 1100
44 South Broadway
White Plains, NY  10601

**STATEMENT NO.** 4391
**DATE** 10/04/2024
**TOTAL DUE** $3,460.75
**ENCLOSED**

| DATE | ACTIVITY | AMOUNT | OPEN AMOUNT |
|------|----------|-------:|------------:|
| 11/30/2021 | Invoice #123635: Due 12/30/2021. | 3,557.90 | 2,145.50 |
| 12/31/2021 | Invoice #123944: Due 01/30/2022. | 208.25 | 208.25 |
| 01/31/2022 | Invoice #124200: Due 03/02/2022. | 20.75 | 20.75 |
| 02/28/2022 | Invoice #124589: Due 03/30/2022. | 21.10 | 21.10 |
| 03/31/2022 | Invoice #124695: Due 04/30/2022. | 21.10 | 21.10 |
| 04/30/2022 | Invoice #125014: Due 05/30/2022. | 21.10 | 21.10 |
| 05/31/2022 | Invoice #125289: Due 06/30/2022. | 21.15 | 21.15 |
| 06/30/2022 | Invoice #125538: Due 07/30/2022. | 21.25 | 21.25 |
| 07/31/2022 | Invoice #125884: Due 08/30/2022. | 144.65 | 144.65 |
| 08/31/2022 | Invoice #126093: Due 09/30/2022. | 32.15 | 32.15 |
| 09/30/2022 | Invoice #126453: Due 10/30/2022. | 32.15 | 32.15 |
| 10/31/2022 | Invoice #126819: Due 11/30/2022. | 32.15 | 32.15 |
| 11/30/2022 | Invoice #126989: Due 12/30/2022. | 32.15 | 32.15 |
| 12/31/2022 | Invoice #127280: Due 01/30/2023. | 32.15 | 32.15 |
| 01/31/2023 | Invoice #127696: Due 03/02/2023. | 32.15 | 32.15 |
| 02/28/2023 | Invoice #128019: Due 03/30/2023. | 32.15 | 32.15 |
| 03/31/2023 | Invoice #128261: Due 04/30/2023. | 32.15 | 32.15 |
| 04/30/2023 | Invoice #128668: Due 05/30/2023. | 32.15 | 32.15 |
| 05/31/2023 | Invoice #128897: Due 06/30/2023. | 32.15 | 32.15 |
| 06/30/2023 | Invoice #129253: Due 07/30/2023. | 32.15 | 32.15 |
| 07/31/2023 | Invoice #129622: Due 08/30/2023. | 32.15 | 32.15 |
| 08/31/2023 | Invoice #129881: Due 09/30/2023. | 32.15 | 32.15 |
| 09/30/2023 | Invoice #130212: Due 10/30/2023. | 32.15 | 32.15 |
| 10/31/2023 | Invoice #130410: Due 11/30/2023. | 32.15 | 32.15 |
| 11/30/2023 | Invoice #130926: Due 12/30/2023. | 32.15 | 32.15 |
| 12/31/2023 | Invoice #131265: Due 01/30/2024. | 32.15 | 32.15 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|-------------|--------------------|---------------------|---------------------|-------------------|-----------:|
| 32.15 | 32.15 | 32.15 | 32.15 | 3,332.15 | **$3,460.75** |

| DATE | ACTIVITY | AMOUNT | OPEN AMOUNT |
|------|----------|--------|-------------|
| 01/31/2024 | Invoice #131415: Due 03/01/2024. | 32.15 | 32.15 |
| 02/29/2024 | Invoice #131855: Due 03/30/2024. | 32.15 | 32.15 |
| 03/31/2024 | Invoice #132103: Due 04/30/2024. | 32.15 | 32.15 |
| 04/30/2024 | Invoice #132453: Due 05/30/2024. | 32.15 | 32.15 |
| 05/31/2024 | Invoice #132821: Due 06/30/2024. | 32.15 | 32.15 |
| 06/30/2024 | Invoice #133216: Due 07/30/2024. | 32.15 | 32.15 |
| 07/31/2024 | Invoice #133516: Due 08/30/2024. | 32.15 | 32.15 |
| 08/31/2024 | Invoice #134014: Due 10/02/2024. | 32.15 | 32.15 |
| 09/30/2024 | Invoice #134338: Due 10/23/2024. | 32.15 | 32.15 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|-------------|--------------------|--------------------|--------------------|--------------------|------------|
| 32.15 | 32.15 | 32.15 | 32.15 | 3,332.15 | **$3,460.75** |