**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

.

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION | Case No. 2:19-cv-6019 |
| | **The Hon. Kelley B. Hodge** |
| *This Document Relates To: Financial Institution Track* | |

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF
FINANCIAL INSTITUTION TRACK PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES,
EXPENSES, SERVICE AWARDS
<u>& COSTS OF SETTLEMENT ADMINISTRATION</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................1

II.    SUMMARY OF BENEFITS ................................................................................2

III.   THE COURT SHOULD APPROVE THE ATTORNEYS' FEE AWARD.......................3

     A.     The Percentage-of-Recovery Analysis Supports the Reasonableness of the Fee
           Request...........................................................................................................4

          1.     The Amounts Made Available to the Class Is the Appropriate Basis for
                Evaluating Reasonableness.........................................................................5

          2.     Attorneys' Fees, Expenses and Administrative Costs Should Be Included
                in Calculation of the Settlement Value .......................................................6

          3.     Reasonable Attorneys' Fees Often Fall Within a Range of 19-45% of the
                Settlement Value..........................................................................................6

          4.     The Fee Request Is Reasonable Under the Third Circuit's *Gunter* and
                *Prudential* Factors......................................................................................7

                a.     The Gunter Analysis Supports the Reasonableness of the Fee
                     Request..............................................................................................7

                b.     The Prudential Analysis Supports the Reasonableness of the Fee
                     Request............................................................................................12

     B.     The Requested Attorneys' Fee Is Also Reasonable Under the Lodestar Cross-
           Check ...........................................................................................................15

          1.     Time & Expense Reports Support FI Counsels' Lodestar.........................15

          2.     The Number of Hours Incurred by FI Counsel Is Reasonable...................17

          3.     Class Counsel's Hourly Rates Are Reasonable .........................................18

          4.     The Requested Attorneys' Fee Reflects a Modest Multiplier....................20

IV.    THE EXPENSE REIMBURSEMENT REQUEST IS REASONABLE ..........................20

V.     THE REQUEST FOR SERVICE AWARDS IS MODEST AND SHOULD BE
     APPROVED ....................................................................................................22

VI.    CONCLUSION...................................................................................................23

i

## <u>TABLE OF AUTHORITIES</u>

*Abrams v. Lightolier Inc.*,
 50 F.3d 1204–25 (3d Cir. 1995) ................................................................21

*Arkansas Federal Credit Union v. Hudson's Bay Co*.,
 No. 19-cv-4492 (S.D.N.Y.).................................................................8, 13

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) ..........................................................................5

*Caddick v. Tasty Baking Co.*,
 2021 U.S. Dist. LEXIS 206991 (E.D. Pa. Oct. 27, 2021) ...............................13

*City of Burlington v. Dague*,
 505 U.S. 557–63 (1992) .....................................................................18

*Erby v. Allstate Fire & Cas. Ins. Co.*,
 2022 U.S. Dist. LEXIS 192916 (E.D. Pa. Oct. 24, 2022) ...............................19

*Fickinger v. C.I. Plan. Corp.*,
 1989 U.S. Dist. LEXIS 14448 (E.D. Pa. Nov. 30, 1989) ..................................5

*First Choice Fed. Credit Union v. Wendy's Co.*,
 No. 2:16-cv-00506, ECF No. 185-2 (W.D. Pa.) .................................. *passim*

*Fulton-Green v. Accolade, Inc.*,
 2019 U.S. Dist. LEXIS 11149 (E.D. Pa. Sept. 23, 2019) ..................................3

*Fulton-Green v. Accolade, Inc.*,
 2019 U.S. Dist. LEXIS 164375 ........................................................6, 19

*Greater Chautauqua Federal Credit Union v. Kmart Corp.,*
 No 1:15-cv-02228 (N.D. Ill.) .............................................................8, 13

*Gunter v. Ridgewood Energy Corp.*,
 223 F.3d at 195 n.1 (3d Cir. 2000) ............................................... *passim*

*Hall v. Accolade*,
 2020 U.S. Dist. LEXIS 52632 (E.D. Pa. March 24, 2020)...............................13

*In re American Medical Collection Agency Customer Data Breach Litig.*,
 No. 2:19-md-2904 (D.N.J.)...................................................................6

*In re Anthem, Inc. Data Breach Litig.*,
 2018 U.S. Dist. LEXIS 140137 (N.D. Cal. Aug. 17, 2018) ...............................7

*In re Arby's Restaurant Grp., Inc. Data Sec. Litig.*
 No. 1:17-cv-514 (N.D. Ga.)..................................................................8

*In re AT&T Corp. Sec. Litig.*,
  455 F.3d at 166 .................................................................................................... *passim*

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) .................................................................................5

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010) ..................................................................... 22-23

*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) .........................................................................10

*In re Cigna-American Specialty Health Admin. Fee Litig.*,
  2019 U.S. Dist. LEXIS 146899 (E.D. Pa. Aug. 29, 2019) ...................................19

*In re Citrix Data Breach Litig.*,
  2021 U.S. Dist. LEXIS 112272 (S.D. Fla. June 10, 2021) ....................................6

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
  333 F.R.D. 364 (E.D. Pa. 2019) ...........................................................................5

*In re Equifax, Inc. Customer Data Security Breach Litig.*,
  No. 1:17-md-2800 (N.D. Ga.) ...............................................................................7

*In re GMC Pick-Up Truck Fuel Tank Prods., Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...............................................................................3, 4

*In re Home Depot Customer Data Sec. Breach Litig.*,
  No. 1:14-md-02583 ..............................................................................................13

*In re Home Depot Inc.*,
  931 F.3d 1065 (11th Cir. 2019) ...........................................................................14

*In re Ikon Office Sols., Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ...........................................................................6

*In re Imprelis Herbicide Mktg.*,
  296 F.R.D. 351 (E.D. Pa. 2013) ...........................................................................7

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ...............................................................................21

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .................................................................................7

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...........................................................................4, 15

*In re SmithKline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) .........................................................................6

iii

*In re Sonic Corp. Customer Data SEC Breach Litig. Fin. Institutions*,
  2022 U.S. Dist. LEXIS 189402 (N.D. Ohio Oct. 17, 2022)............................................7, 8, 18

*In re Target Customer Data Sec. Breach Litig.*,
  No. 0:14-md-02522.............................................................................................................13, 18

*In re Wawa, Inc. Data Sec. Litig.*,
  85 F.4th 712 (3d Cir. 2023) ........................................................................................................3

*Jackson v. Wells Fargo Bank, N.A.*,
  136 F. Supp. 3d 687 (W.D. Pa. 2015) .........................................................................................6

*McIntyre v. Realpage, Inc.*,
  2023 U.S. Dist. LEXIS 53732 (E.D. Pa. March 24, 2023).........................................................19

*Minehan v. McDowell*,
  2023 U.S. Dist. LEXIS 223383 ...................................................................................................6

*Moore v. GMAC Mortg.*,
  2014 U.S. Dist. LEXIS 181432 (E.D. Pa. Sept. 18, 2014)...................................................20, 23

*O'Keefe v. Mercedes-Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) ...............................................................................................11

*Opris v. Sincera Reproductive Medicine*,
  2:21-cv-3072 (E.D. Pa.) ............................................................................................................23

*Perry v. FleetBoston Finan. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005) ................................................................................................18

*Serrano v. Sterling Testing Sys.*,
  711 F. Supp. 2d 402 (E.D. Pa. 2010).........................................................................................23

*Skeen v. BMW of N. Am., LLC*,
  2016 U.S. Dist. LEXIS 97188 (D.N.J. July 26, 2016) ...............................................................20

*Sullivan v. DB Investments, Inc.*,
  667 F3d 273 (3d Cir. 2011) .......................................................................................................22

*Taha v. Bucks County Pa.*,
  2020 U.S. Dist. LEXIS 222655 (E.D. Pa. Nov. 30, 2020) .........................................................15

*Teh Shou Kao v. CardConnect Corp.*,
  2021 U.S. Dist. LEXIS 33147 (E.D. Pa. Feb. 23, 2021) .............................................................5

*Veridian Credit Union v. Eddie Bauer LLC*,
  2:17-cv-00356 (W.D. Wash.)...............................................................................................8, 13

*Whiteley v. Zynerba Pharms., Inc.*,
  2021 U.S. Dist. LEXIS 176101 (E.D. Pa. Sept. 16, 2021) ........................................................19

**Rules**

Fed. R. Civ. P. 23 (h) .................................................................................................................... 3

1011239.1

## I.   <u>INTRODUCTION</u>

Financial Institution Plaintiffs Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union ("FI Plaintiffs") initiated the financial institution track actions against Defendant Wawa, Inc. ("Wawa") (collectively the "Parties"), in January 2020, shortly after the company announced a data beach had compromised its payment card environment and compromising more than 30 million payment cards. *See* Financial Institution Plaintiffs' Consolidated Amended Class Action Complaint ("Amended Complaint"), ECF No. 128, ¶ 3.

Following resolution of Wawa's motion to dismiss but while discovery was ongoing, the Parties negotiated this Settlement over an extended period of time with the assistance of a private mediator, the Honorable Diane M. Welsh, U.S.M.J. (Ret.).   FI Plaintiffs sought preliminary approval on March 10, 2023, ECF No. 360, which the Court granted on October 12, 2023, ECF No. 412.  A copy of the Settlement Agreement is attached hereto as **Exhibit A** for ease of reference. FI Plaintiffs now submit this application for attorneys' fees, expenses and service awards pursuant to the amended case schedule entered on September 11, 2024.  ECF No. 455.

As detailed below, FI Counsel[1] respectfully request that the Court approve their application for $8.5 million in attorneys' fees, $82,993.06 in expenses and $3,460.75 in costs incurred but not paid ($86,453.81 total), and a $5,000 service award to each class representative ($15,000 total). These amounts will be paid from a fund separate and apart from that provided for recompense of the Settlement Class.  Supplemental declarations and an updated proposed Order will be filed in advance of the final approval hearing to include any additional costs and expenses, particularly those incurred by the claims administrator between now and the Final Approval Hearing.

---

[1] "FI Counsel" refers to all counsel that have worked on behalf of Financial Institution Plaintiffs in this litigation.   "Class Counsel" refers to counsel appointed by the Court to represent the Settlement Class as set forth in ECF No. 412, ¶ 13.

## II.   **SUMMARY OF BENEFITS**

FI Plaintiffs' motions for preliminary (ECF No. 360) and final approval (filed this same date) explain the benefits of the Settlement, which provides up to $28.5 million in monetary compensation to eligible class members who timely file claims. The Settlement is structured to address the primary harms financial institutions suffer as a result of payment card data breaches: (1) card reissuance costs and (2) losses resulting from fraud on compromised card accounts. *See, e.g.,* ECF No. 360-1 at 2, 8. These are captured by Tier 1 and Tier 2 of the Settlement, respectively. The Settlement also provides a fixed payment option in Tier 3 for those financial institutions impacted by the breach but who do not wish to submit a Tier 1 or Tier 2 claim.[2]

Analytics Consulting, LLC, the Court-appointed settlement administrator (ECF No. 412 § B) has analyzed all claims that have been timely submitted and has preliminarily identified the following number of valid claims and estimated payments to date:

| Tier | No. of Valid Claimants | Est. Amount to be Paid to Claimants |
|---|---|---|
| Tier 1 | 345 | $8,151,525.00 |
| Tier 2 | 17 | $36,889.40 |
| Tier 3 | 381 | $155,097.48 |
| | | **TOTAL: $8,343,511.88** |

Amended Declaration of Kari L. Schmidt, Analytics Consulting LLC ("Amended Analytics Decl.") at ¶¶ 18-20.[3]

---

[2] Additionally, any financial institution whose claim under Tier 1 or Tier 2 is less than the amount it would receive under Tier 3 will automatically receive the higher amount available under Tier 3.

[3] These numbers are not final. Analytics is still processing and validating claims that, while submitted timely, were deficient in some respect (*e.g.,* missing a signature) and require additional information from the claimant. The deadline for such claimants to respond is October 21, 2024. Analytics will file a supplemental declaration in advance of the final approval hearing on December 18, 2024, to provide updated information regarding the claims process. Amended Analytics Decl. at ¶¶ 17 n.5, 21.

In exchange for the consideration set forth in the Settlement Agreement, all Class Members who do not exclude themselves from the Settlement release their breach-related claims against Wawa.  S.A. §§ 8.1– 8.7.  No Settlement Class Members have filed objections and only two have excluded themselves from the Settlement.  Amended Analytics Decl. at ¶¶ 14-15.  The deadline for both was June 26, 2024.  ECF No. 436 at E1.

Separate and apart from the compensation to Class Members, Wawa has agreed to pay up to $9 million to cover attorneys' fees and expenses, Class Representative service awards, and the costs of settlement administration, subject to Court approval. S.A. § 4.7. This amount was negotiated with Judge Welsh's assistance and supervision after the Parties reached agreement on the structural Class Member relief terms and other components of the settlement.  Declaration of Hon. Diane M. Welsh ("Welsh Decl.") at ¶ 20.

Together with the $28.5 million in compensation for the Settlement Class, the aggregate settlement value is $37.5 million.

## III.   THE COURT SHOULD APPROVE THE ATTORNEYS' FEE AWARD

An award of attorneys' fees is governed by Fed. R. Civ. P. 23(h), with the touchstone being the "reasonableness" of the award.  *See In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 718 (3d Cir. 2023) (consumer track).  When evaluating a fee request, the court "'should determine what sort of action the court is adjudicating and then primarily rely on the corresponding method of awarding fees'—lodestar for statutory fee-shifting cases, and percentage-of-recovery in common fund disputes." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 722 n.18 (3d Cir. 2023) (consumer

track) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995) ("*In re Gen. Motors*").[4]

In this data breach case, the Court is presented with a settlement resulting in a constructive common fund.[5]  Because both the Settlement Class funds and the attorneys' fees will come from the same source—Wawa— if approved by the Court, the percentage-of-the-fund methodology is the appropriate choice to evaluate the reasonableness of the fee.  *See In re GMC Pick-Up Truck Fuel Tank Prods., Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("*In re Gen. Motors*") ("although the parties claim that the fee and settlement are independent, they actually come from the same source").  Regardless of which test is chosen by a court, "it is sensible for a court to use a second method of fee approval to cross-check its initial fee calculation," *In re Wawa*, 85 F.4th at 722 n.18 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)).

FI Counsel provide a percentage-of-fund analysis and lodestar cross-check for the Court's consideration, and both support FI Counsel's request for $8.5 million in attorneys' fees.

### A.    The Percentage-of-Recovery Analysis Supports the Reasonableness of the Fee Request

The total settlement value is $37.5 million, calculated by adding (i) $28.5 million in monetary compensation made available to the Settlement Class and (ii) $9 million made available to cover attorneys' fees, expenses, and administrative costs. FI Counsel's request for $8.5 million

---

[4] The lodestar method is also sometimes used "'in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method.'" *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 11149, at *30 (E.D. Pa. Sept. 23, 2019) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 332 (3d Cir. 1998)).

[5] A traditional common fund is a singular fund out of which class, attorneys' fees and costs, service awards, and settlement administration are paid.  A constructive common fund exists when there is a single settlement, but the funds to pay the class are separate from the funds to pay attorneys' fees, costs, service awards, and settlement administration.  *In re Wawa*, 85 F.4th at 716 n.2; *see also id.* (recognizing that common funds exist in the settlement context where class members must submit claims).

4

in fees, representing 22.6% of the total constructive fund of $37.5 million (and 29.8% of the $28.5 million available to the Settlement Class), is reasonable and well-within accepted parameters of approved fees in this jurisdiction and for data breach cases generally.

> **1.    The Amounts Made Available to the Class Is the Appropriate Basis for Evaluating Reasonableness**

When evaluating a settlement, the reasonableness of an attorneys' fee under the percentage-of-recovery cross-check may be evaluated "by reference to *either* amounts paid or amounts made available" to the Class.  *In re Wawa*, 85 F.4th at 724 (emphasis in original).  In the Third Circuit, courts have consistently affirmed the amounts made available to the Class as an appropriate measurement.  *See, e.g.*, *Boeing Co. v. Van Gemert,* 444 U.S. 472, 480-81 (1980); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 177 (3d Cir. 2013); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 386-87 (E.D. Pa. 2019).

The rationale is simple: considering the full amount made available to the class more accurately reflects the benefit created by counsel's work, against which the reasonableness of their fee should be judged.  *See Boeing*, 444 U.S. at 480 ("to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.").  *See also Teh Shou Kao v. CardConnect Corp.*, 2021 U.S. Dist. LEXIS 33147, at * (E.D. Pa. Feb. 23, 2021) (citing *Boeing*).  Limiting the value created for calculating fees to only the amounts paid to class would unfairly penalize counsel.  *See Fickinger v. C.I. Plan. Corp.*, 1989 U.S. Dist. LEXIS 14448, at *8 (E.D. Pa. Nov. 30, 1989) ("The benefit to the plaintiff in this litigation must be determined from the amount that would have been recovered if every class member had exercised [its'] rights under the settlement agreement. … Counsel should not be punished because members of the class failed to exercise their vested right to collect from the Fund.").

Here, this rationale supports considering the full $28.5 million made available for distribution to the Settlement Class when evaluating FI Counsel's request for attorneys' fees.

### 2. Attorneys' Fees, Expenses and Administrative Costs Should Be Included in Calculation of the Settlement Value

In a constructive common fund case such as this, courts commonly add attorneys' fees, expenses, and administrative costs to amounts made available to the class to determine the total settlement value because "these are the costs for which the class would otherwise be responsible" in a traditional common fund case." *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 706 (W.D. Pa. 2015).

Here, the total settlement value is $37.5 million, calculated by adding $28.5 in settlement funds made available to the Settlement Class and $9 million made available to pay attorneys' fees, expenses and administration costs.   S.A. §§ 4.6 and 4.7(b).

### 3. Reasonable Attorneys' Fees Often Fall Within a Range of 19-45% of the Settlement Value

There is no general rule as to what percentage of the common fund should be awarded as attorneys' fees.  *In re Ikon Office Sols., Inc. Sec. Litig.,* 194 F.R.D. 166, 193 (E.D. Pa. 2000) ("determination is somewhat elastic").  Most fee awards in this Circuit fall within the range of 19% to 45%.  *Id.* at 194; *see also Minehan v. McDowell*, 2023 U.S. Dist. LEXIS 223383, at *10 ("Courts in this circuit have established a 'general range' of 19%-45%");  *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *33 ("'Courts have allowed attorney compensation ranging from 19 to 45% of the settlement fund created, and one Circuit panel has concluded that the appropriate benchmark for fee awards is 25%'") (quoting *In re SmithKline*

*Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)).  This range is also consistent with fees awarded in recent data breach cases in other jurisdictions.[6]

FI Counsel's request for attorneys' fees is well within the 19%-45% range deemed appropriate by this Circuit and is consistent with other fee awards in data breach cases.

### 4.    The Fee Request Is Reasonable Under the Third Circuit's *Gunter* and *Prudential* Factors

Courts in this Circuit look to the *Gunter* and *Prudential* factors, set forth in their namesake cases, to further evaluate the reasonableness of a fee request in a class action when evaluated as percentage-of-recovery.  *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d at 195 n.1 (3d Cir. 2000); *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998); *In re Imprelis Herbicide Mktg.*, 296 F.R.D. 351, 370 (E.D. Pa. 2013) (listing all factors).  These ten factors "'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *In re AT&T Corp. Sec. Litig.*, 455 F.3d at 166 (quoting *Rite Aid*, 396 F.3d at 302).

Evaluation of these factors supports the reasonableness of the attorneys' fees sought here.

---

[6] *See, e.g., In re: Citrix Data Breach Litig.*, 2021 U.S. Dist. LEXIS 112272 (S.D. Fla. June 10, 2021) (32.9% fee award); *In re American Medical Collection Agency Customer Data Breach Litig.*, No. 2:19-md-2904 (D.N.J.), ECF No. 609 (33.3% fee award for settlement with single defendant); *In re Arby's Rest. Grp. Inc. Data Sec. Litig.*, No. 1:17-cv-514 (N.D. Ga.), ECF No. 317 (27.57% fee award in financial institutions track); *In re Anthem, Inc. Data Breach Litig.*, 2018 U.S. Dist. LEXIS 140137 (N.D. Cal. Aug. 17, 2018) (27% fee award); *In re: Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-2807 (N.D. Ohio), ECF No. 527 (28.7%, $1.64 million in fees and $5.7 million settlement); *In re: Equifax, Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800 (N.D. Ga.) ECF No. 1193 (25.8% fee aware in financial institutions track); *First Choice Fed. Credit Union v. Wendy's Co.*, No. 2:16-cv-00506, ECF No. 191 at ¶ 17 (W.D. Pa.) (combined fee and cost reimbursement award was 30% of common fund.

### a. The Gunter Analysis Supports the Reasonableness of the Fee Request

*Gunter Factor 1 – The Size of the Fund Created & Number of Persons Benefitted*.  As previously discussed, this case involves a constructive common fund totaling $37.5 million.  Wawa has agreed to pay up to $28.5 million to compensate Settlement Class Members and resolve this litigation and up to $9 million to cover fees, costs and expenses. S.A. §§ 4.6, 4.7.  To date, 747 claims have been timely submitted to Analytics for review, representing approximately 15% of the estimated Settlement Class.  Amended Analytics Decl. at ¶¶ 16-17.  This claims rate is consistent with and even higher than most other data breach settlements.[7]

Separate and apart from the funds available to the Settlement Class, and negotiated subsequent thereto, Welsh Decl. at ¶ 20, Wawa has also agreed to pay the cost of notice and claims administration if approved by the Court, S.A. § 4.7.  This is a substantial benefit to the Settlement Class which would otherwise have to pay for such notice.

This factor weighs in favor of approval of the fee award.

*Gunter Factor 2 – The Presence or Absence of Substantial Objections by Class Members.*

---

[7] *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2022 U.S. Dist. LEXIS 189402, *3, *7 (N.D. Ohio Oct. 17, 2022) (337 claims out of 5,085 class members, for a claims rate of 6.6%); *In re Arby's Restaurant Grp., Inc. Data Sec. Litig. (Consolidated Fin. Inst. Case)*, Nos.17-md-55555, 17-cv-514, ECF Nos. 509 (order) and 505 (declaration) (298 claims out of 4,379 class members, for a claims rate of 6.8%); *Greater Chautauqua Federal Credit Union v. Kmart Corp.,* No 1:15-cv-02228 (N.D. Ill.), ECF No. 148 at 2 n.1, ECF No. 133 at ¶ 4 (337 claims of out of 5,052 class members, for a claims rate of 6.7% of class members); *First Choice Fed. Credit Union v. Wendy's Co*., No. 2:16-cv-00506 (W.D. Pa.), ECF No. 185-3 at ¶¶ 5, 13 (1,389 claims filed out of 5,168 class members, for a claims rate of 26.8% of class members); *In re Arby's Rest. Grp., Inc. Data Sec. Litig*., No. 1:17-cv-0514 (N.D. Ga.), ECF No. 307-3 ¶¶ 5, 11, ECF No. 312 at 26:10–11 (381 claims out of 4,379 class members, for a claims rate of 8.7% of class members); *Veridian Credit Union v. Eddie Bauer LLC,* 2:17-cv-00356 (W.D. Wash.), ECF No. 168 at ¶ 5 & ECF No. 184 at ¶ 3 (748 approved claims out of 4,315 class members, for a claims rate of 17.3% of class members); *Arkansas Federal Credit Union v. Hudson's Bay Co*., No. 19-cv-4492 (S.D.N.Y.), ECF No. 96 at ¶ 4, ECF No. 106 ¶ 4 (241 claims out of 4,736 class members, for a claims rate of 5% of class members).

The deadline to object to the Settlement was June 26, 2024.  ECF No. 436.  No objections were received and only two Settlement Class Members opted out.  Amended Analytics Decl. at ¶¶14-15.

Notice to the Settlement Class provided that "The lawyers intend to ask the Court to approve an award of no more than $9 million, to be paid separately by Wawa, as attorneys' fees to compensate them for their time, the financial risk that they undertook, reimbursement of all litigation expenses incurred, and settlement notice and claims administration cost."  Amended Analytics Decl. at Ex. A (long form notice).  The deadline to object to any request for attorneys' fees, expenses and service awards is October 29, 2024; FI Counsel have until November 18, 2024 to address any Settlement Class Member objections.  ECF No. 455.  To date, no objections have been received.  Amended Joint Declaration of Class Counsel ("Amended Joint Decl.") at ¶ 7.

This factor weighs in favor of approval of the fee award.

*Gunter Factor 3 – The Skill and Efficiency of the Attorneys.*  As set forth in their Amended Joint Declaration, Class Counsel, as well as the other FI Counsel, have extensive experience in handling complex class actions, including complex data breach class actions.  Amended Joint Decl. at ¶¶ 91-123 & Exhibits B-E (Firm Resumes and Individual Biographies).  This Court has already approved of Class Counsel's ability to skillfully and efficiently manage this litigation; the same individuals were appointed as Interim Co-Lead and Liaison Counsel at the outset of this litigation, ECF No. 120, and again as Class Counsel following preliminary approval, ECF No. 412.  *See also* ECF Nos. 24, 79, and 83 (individual leadership motions).

Class Counsel was able to manage this case efficiently as well.  Although the settlement negotiations were extensive and took quite some time, ultimately Class Counsel was able to bring closure to this litigation for the Financial Institution Plaintiffs before class certification and

summary judgment motion practice.  In addition, any work performed by other FI Counsel was at the direction of Class Counsel; Class Counsel managed this process effectively, limiting the work assigned to other FI Counsel to mostly client management issues once it became clear that settlement was a real possibility.   Amended Joint Decl. at ¶¶ 124-132.

This factor weighs in favor of approval of the fee award.

*Gunter Factor 4 – The Complexity and Duration of the Litigation.*  Data breach cases are complicated and require experience class action attorneys.  As noted above and in the attached Amended Joint Declaration, Class Counsel here are highly skilled and experienced in both data breach litigation and complex class action litigation and, collectively, have been involved in most, if not all, of the prior payment card data breach cases brought by financial institutions.  Class Counsel's experience in representing financial institutions in this context was particularly crucial in this case, where the class representative plaintiffs, all financial institutions which had issued payment cards impacted by the Wawa data breach, had to be guided by Class Counsel to provide detailed information regarding their individual damages to assist in the creation of a class-wide damage model and a reliable estimate of class-wide damages for negotiation purposes.

Class Counsel's knowledge and experience in dealing with financial institutions regarding their payment card businesses was essential to facilitating a negotiated resolution of this case.  If settlement had not been reached between the parties, each side would have had to invest considerable additional time and money in producing and reviewing documents, presenting and examining witnesses, retaining experts, and briefing class certification and summary judgment motions.  And, although this case settled before class certification and summary judgment motion practice, Class Counsel heavily negotiated numerous discovery issues (requests for production, electronic discovery and privilege log stipulations, protective orders, the specific custodians and

data sources from which documents would be produced, and complex electronic search terms, among others), moved against Wawa on discovery matters and conducted related written and testimonial discovery ordered by the Court in connection with discovery disputes.

Class Counsel also participated in multiple, day-long, and hard-fought settlement negotiations that ultimately resolved this litigation. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 223 (E.D. Pa. 2014) ("Class counsel have also participated in mediation sessions and submitted filings to the Court. Absent Settlement, litigation would likely continue for some time and would require both Plaintiffs and Defendants to incur considerable expert witness fees and other expenses. I find that the complexity and duration of the litigation weigh in favor of the requested award of fees.").

This factor weighs in favor of approval of the fee award.

*Gunter Factor 5 – The Risk of Nonpayment.* "Any contingency fee includes a risk of non-payment." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003). In working on behalf of the Settlement Class, FI Counsel has expended 8,663.3 hours of attorney and paralegal time and incurred $82,993.06 in expenses (including the cost of mediation). Amended Joint Decl. at ¶ 135 & Exhibit I (Comprehensive Chart of Hours & Fees. There are other outstanding costs as well: Analytics has incurred $73,680.25 and expects to incur additional costs as it finalizes review of the claims and, potentially, distribution of claim amounts, Amended Analytics Decl. at ¶ 21, and FI Plaintiffs' document host, JND eDiscovery, is owed $3,460.75, Amended Joint Decl. at ¶ 157 & Exhibit Q. FI Counsel have invested considerable resources without any guarantee that their commitment would result in the payment of any fee or reimbursement of expenses. FI Counsel have not received any fees or reimbursement of costs at this time.

This factor weighs in favor of approval of the fee award.

*Gunter Factor 6 – The Amount of Time Devoted by FI Counsel.*  FI Counsel and their staff devoted a significant amount of time 8663,3 hours) to litigation of this matter in four principal (albeit not exclusive) areas: (i) discovery, including negotiations and motion practice; (ii) pleadings, briefs, and pretrial motions (including the motion to dismiss); (iii) settlement negotiations; and (iv) related litigation strategy and analysis. Amended Joint Decl. at Exhibit H. Subsumed within this was the extensive outreach efforts that Class Counsel made to reach Settlement Class Members.  Amended Joint Decl. at ¶¶ 66-90.  These efforts were reasonable and appropriately tailored to the needs of this case and are documented in the detailed time reports that support the quarterly summary reports provided to the Court.

Class Counsel made extraordinary efforts to increase visibility of the Settlement, particularly beginning mid-summer through the claims deadline of September 12, 2024.  Amended Joint Decl. at ¶¶ 66-90.  These efforts correlate to an increase in claims rates during that time frame.  *See id.*

*Gunter Factor 7 – Awards in Similar Cases.*  The attorneys' fees sought by FI Counsel are well within the range of attorneys' fees awarded in this District (19%-45% of settlement fund) as well as in other financial institution data breach cases.  *Supra*, III.A.3 and n.6, citing cases.

### b.   The Prudential Analysis Supports the Reasonableness of the Fee Request

*Prudential Factor 1 – Benefits Attributable to Class Counsel Efforts Versus Other Groups.* This factor evaluates the "value of benefits accruing to class members attributable to the efforts of class counsel as opposed to other groups, such as government agencies conducting investigations." *In re AT&T*, 455 F.3d at 166 (citing *Prudential*, 148 F.3d at 338).  All of the benefits that will inure to the financial institutions in the Settlement Class in this case will be due to the efforts of FI Counsel and not any other group.

12

Accordingly, this factor weighs in favor of approving the fee.

*Prudential Factor 2 – Contingent Private Percentage Fee.*  This factor evaluates "the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained." *In re AT&T Corp.*, 455 F.3d at 166 (citing *Prudential*, 148 F.3d at 340).  As set forth in the Amended Joint Declaration, those Class Counsel have historically executed private contingent fee agreements in the range of 15%-40% or at their usual hourly rates.  *See, e.g.,* Amended Joint Decl. at ¶¶ 150, 154.  The proposed 22.6% fee here is low relative to these rates, as well as commonly accepted ranges for contingency fees, which are generally between 30% and 40%.  *See, e.g., Caddick v. Tasty Baking Co.*, 2021 U.S. Dist. LEXIS 206991, at *26 (E.D. Pa. Oct. 27, 2021); *Hall v. Accolade*, 2020 U.S. Dist. LEXIS 52632, at *29 (E.D. Pa. March 24, 2020).

This factor weighs in favor of approving the fee.

<u>*Prudential Factor 3 – Innovative Terms of Settlement*</u>.  The Settlement Agreement itself is innovative when compared to traditional payment card data breach settlements.  *See In re AT&T Corp. Sec. Litig.*, 455 F.3d at 166 (citing *Prudential*, 148 F.3d at 339) (evaluating "innovative" terms of the settlement).

In traditional payment card data breach settlements involving financial institutions, the relief distributed to those entities is tied to the number of "alerted on" cards, *i.e.*, cards for which the financial institution received notice of the breach.  For example, if a financial institution received an alert from the card brands (*e.g.*, Visa and MasterCard) that it had 100 cards that were potentially impacted by the data breach, and the financial institution submitted a claim in that settlement, the financial institution would receive about $2 (and sometimes less) per alerted on

13

card, regardless of whether it suffered any actual damages in connection with those cards or actually incurred the cost of cancelling and replacing such cards.[8]

Here, the number of alerted on cards is *not* the measure of a Settlement Class Member's compensation under Tier 1.  Instead, under Tier 1 the calculation is based on the number of cards that were actually cancelled and reissued by the financial institution.  S.A. § 4.6.i.  Because fewer cards are reissued than are alerted upon, the Settlement Agreement provides Settlement Class Members with a higher dollar value per-card, S.A. § 4.6.i ($5 per card issued), and represents a more accurate distribution of the class relief.[9]   This increases the compensation to Settlement Class Members who reissued cards as a result of the breach, rather than simply paying the issuers who received an alert and took no action.

Moreover, the funds available to the Settlement Class are *in addition to* other compensation that Settlement Class members may have received from the card brands.  By way of background, the card brands (*e.g.*, Visa, MasterCard) engage in a "recovery" process by which the card brands impose assessments on the breached entity (and its acquiring bank) for the breach.  That money is

---

[8] *See, e.g., In re Target Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, ECF No. 653-2 at 3, ¶ 2.1 (D. Minn.) (providing option to claim $1.50 per alerted-on card); *In re Home Depot Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 327-3 at 29, ¶ 2.1 (N.D. Ga.) (providing option to claim $2.00 per alerted-on card); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-0514, ECF No. 307-2 at 25 ¶ 2 (N.D. Ga.) (less than $2.00 per card); *First Choice Fed. Credit Union v. Wendy's Co.*, No. 2:16-cv-00506, ECF No. 185-1 at 31 ¶ 2.1 (W.D. Pa.) (providing option to claim equal pro rata payment per alerted-on card); *Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-00356, ECF No. 164-1 at 6 ¶ 33(a) (W.D. Wash.) (providing option to claim $2.00 per alerted-on card, subject to pro rata adjustment); *Arkansas Federal Credit Union v. Hudson's Bay Co.*, No. 19-cv-4492, ECF No. 86-1 at 10 ¶ 4.4(a)(ii)(1) (S.D.N.Y.) (providing option to claim $1.85 per alerted-on card); *Greater Chautauqua Federal Credit Union v. Kmart Corp.*, No 1:15-cv-02228, ECF No. 100-1 at 38 (N.D. Ill.) (providing between $1 to $2.38 per alerted-on card).

[9] This Settlement Agreement also provides an option for Settlement Class Members to recover for any fraudulent transactions (Tier 2), S.A. § 4.6.a.ii., and, as an alternative to Tier 1 and/or Tier 2 claims, for miscellaneous costs sustained as a result of having to manage fallout from the Wawa data breach (Tier 3), S.A. § 4.6.a.iii.

14

then used to partially reimburse financial institutions for the harm they suffered from the data breach.

However, these payments do not, and are not intended to, fully compensate financial institutions for their breach-related losses.  Despite this fact, in some cases, further recovery by the financial institutions from settlements in civil cases is precluded by their receipt of an assessment payment from the card brands.  *See, e.g., In re Home Depot Inc.*, 931 F.3d 1065, 1072–74 (11th Cir. 2019) (describing recovery process and potential impact of releases obtained in recovery process on the pending litigation in federal court). Here, the Settlement permits injured financial institutions to make a claim against Wawa regardless of any recovery process or payments received from the card brands.  As a result, the financial institutions have a better chance of being made whole as a result of the data breach.

In sum, evaluation of the *Gunter* and *Prudential* factors, individually and collectively, supports the reasonableness of the fee request.

**B.      The Requested Attorneys' Fee Is Also Reasonable Under the Lodestar Cross-Check**

District courts should "cross-check the percentage award at which they arrive against the 'lodestar' award method." *Gunter*, 223 F.3d at 194 n.1.  The lodestar method "multipl[ies] the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services in the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  Once the lodestar amount is calculated, "the court will then calculate the lodestar multiplier, determined by dividing the requested fee by the lodestar figure."  *Taha v. Bucks County Pa.*, 2020 U.S. Dist. LEXIS 222655, at *24 (E.D. Pa. Nov. 30, 2020) (citing *In re AT&T Corp. Sec. Litig.*, 445 F.3d 160, 164 (3d Cir. 2006)).  Here, FI Counsel total lodestar is $5,698,762.70.  The requested fee of $8.5

million reflects a modest multiplier of 1.49 of the total lodestar.  As explained below, the attorneys'
fee is reasonable given the size, scope, complexity and overall amount of work devoted to this
case.

### 1.    Time & Expense Reports Support FI Counsels' Lodestar

The Court ordered that FI Counsel submit quarterly reports for any time and expenses "for
which counsel for any plaintiff intends to seek compensation at the end of the litigation."  Case
Management Order No. 2 at 9 (ECF No. 119); *see also* Case Management Order No. 4 (ECF No.
125) (amending dates).  These submissions were made *in camera* to the Court for its review on a
quarterly basis and included a summary of hours and fees and a summary of expenses, by firm,
from case inception through July 15, 2024.[10]  Amended Joint Decl." at ¶ 125.

To facilitate the compilation and review of quarterly time and expenses incurred in this
case for the Court, each firm representing FI Plaintiffs was required to submit two *monthly* reports
to Class Counsel: (i) standardized time and expense report sand (ii) detailed monthly fee and
expense reports, along with a partner certification from the submitting firm attesting that the
submissions are true and accurate.  Amended Joint Decl. at ¶ 126.  Copies of the templates are
attached to the Amended Joint Declaration as Exhibit F (Time & Expense Template).  The time
template requires the submitting firm to identify the name of the professional performing services,
the status of the employee (*e.g.*, attorney, paralegal), year of admission/when legal career began,
hourly rate at time work performed, category of work, and time expended.  Amended Joint Decl.

---

[10] The next quarterly submission is due on October 15, 2024.  However, because this Motion is
being submitted on October 9, 2024, FI Plaintiffs moved for relief from their obligations under
Case Management Order No. 4.  ECF No. 456 (Financial Institution Plaintiffs' Motion for Relief
from Case Management Order No. 4).

at ¶ 127.  The fee and expense template requires categorization of the expenses by type and amount. Amended Joint Decl. at ¶ 128.

FI Counsel were directed by Class Counsel to retain detailed back-up for the monthly time and expense submissions in-house by each firm.  Amended Joint Decl. at ¶ 129.  Directions on how these forms should be completed, as well as what work would be considered for compensation in the event a fee petition was submitted to the Court for consideration, were detailed in a time and expense protocol that was sent to all FI Counsel.  Amended Joint Decl. at ¶ 130.  A copy of the protocol is attached to the Amended Joint Declaration as Exhibit G (Time & Expense Protocol).

These quarterly time and expense submissions to the Court in accordance with Case Management Order No. 4, supported by the partner-certified monthly time and expense submissions to Class Counsel, are the basis for FI Counsel's lodestar calculation and fees requested here.  Amended Joint Decl. at ¶ 131.

### 2. The Number of Hours Incurred by FI Counsel Is Reasonable

This case has been pending for almost four years; the first case was filed in December 2019, Case No. 2:19-cv-6019 (E.D. Pa.).  In that time, counsel for FI Plaintiffs have collectively expended 8,663.3 hours on this case through September 30, 2024, which correlates to a lodestar of $5,698,762.70.  Amended Joint Decl. at ¶¶ 134-135 & Exhibit I (FI Counsel – Comprehensive Chart of Hours & Fees).[11]  The hours and lodestar incurred by Class Counsel and all other FI Counsel, presented at historical rates, are below set forth:

| Law Firm | Hours through 9/30/2024 | Lodestar through 9/30/2024 |
|---|---|---|
| Class Counsel | 7,067.4 | $4,653,908.50 |
| >Lynch Carpenter | 2,024.5 | $1,514,497.50 |

---

[11] If pre-Class Counsel appointment time is removed, the lodestar is approximately $4,640,367.70. The lodestar value is approximated because Class Counsel was appointed June 12, 2020 (ECF No. 120) and the relevant quarterly reports end on June 30, 2020.

| | | |
|---|---|---|
| >Lowey Dannenberg | 1,978.7 | $1,149,613.00 |
| >Hausfeld | 1,594.6 | $1,039,900.50 |
| >Lite DePalma Greenberg & Afanador | 1,469.6 | $  949,897.50 |
| All Other FI Counsel | 1,595.9 | $1,044,854.20 |
| **TOTAL:** | 8,663.3 | $5,698,762.70 |

*Id.*

The time spent by FI Counsel was reasonable and necessary to the effective prosecution of this litigation. Details regarding FI Counsel's efforts throughout the litigation are detailed in the Amended Joint Declaration in Sections II, III, and VI.

Finally, when compared to other data breach settlements that have been litigated by financial institution plaintiffs over several years, the time expended by FI Counsel in this case is consistent and reasonable with a case pending for four years. *See, e.g., In re Sonic Corp. Customer Data SEC Breach Litig. Fin. Institutions*, 2022 U.S. Dist. LEXIS 189402 (N.D. Ohio Oct. 17, 2022) (10,262.3 hours expended by financial institution plaintiffs' counsel for three years was reasonable); *In re Target Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, ECF No. 725 at 30, ¶ 85 (D. Minn.) (reporting 51,359.87 total hours expended over 24-month period); *First Choice Fed. Credit Union v. Wendy's Co.*, No. 2:16-cv-00506, ECF No. 185-2 at 9–10 ¶ 19 (W.D. Pa.) (reporting 21,947.38 hours expended over 42 month period).

### 3. Class Counsel's Hourly Rates Are Reasonable

A reasonable hourly rate is determined by "assessing the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for years of reasonably comparable skill, experience and reputation." *Perry v. FleetBoston Finan. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005). Compared to attorneys who perform non-contingent fee work (*i.e.*, those who are paid by clients for most hours billed, regardless of outcome), attorneys who perform contingency fee work ordinarily bill at a higher hourly rate to account for contingent

18

nature of their work. *See, e.g., City of Burlington v. Dague,* 505 U.S. 557, 562–63 (1992) (noting that the risk of loss in a case is "ordinarily" accounted for in an attorney's lodestar which includes "the higher hourly rate of the attorney skilled and experienced enough to" litigate claims on a contingent fee basis).

Class Counsel's rates (Mr. Lynch, Mr. Levis, Ms. Kenney, and Ms. Reuben) have ranged from $675-$1,175 per hour over the course of the litigation through September 30, 2024. The hourly rate range of other individuals working on this litigation from Class Counsel's firms range from $300 to $1,175 for attorneys, from $125 to $350 for law clerks, and from $225-$350 for paralegals. *See* Amended Joint Decl. at ¶ 139. Detailed charts identifying all individual billers and each biller's hourly rates over time from Class Counsel's firms are attached to the Amended Joint Declaration as Exhibits J-M (Hours & Fees by Individual Timekeeper).[12] The rates presented are the usual and customary (and historical) rates for Class Counsel, and they have been accepted in other cases including within the Third Circuit as well as in data breach cases. Amended Joint Decl. at ¶ 141-142, 144-145, 148-149, and 152-153.

Rates within the above ranges have also been deemed reasonable in other cases within this District. *See, e.g., Erby v. Allstate Fire & Cas. Ins. Co.*, 2022 U.S. Dist. LEXIS 192916, at * 42-*43 (E.D. Pa. Oct. 24, 2022) (approving partner rate of $975) *McIntyre v. Realpage, Inc.*, 2023 U.S. Dist. LEXIS 53732, at *9 n.5 (E.D. Pa. March 24, 2023) (approving hourly rates of $305 for paralegal and $885 for partner); *Whiteley v. Zynerba Pharms., Inc.*, 2021 U.S. Dist. LEXIS 176101, at *39 (E.D. Pa. Sept. 16, 2021) (approving hourly rates from $110-$1100); *In re Cigna-*

---

[12] FI Counsel have not included a detailed chart identifying each individual biller and each biller's hourly rates over time from non-Class Counsel firms that have assisted on this case because Class Counsel did the majority of the work on the case and because each of the other firm's rates are comparable to those of Class Counsel's rates.

*American Specialty Health Admin. Fee Litig.*, 2019 U.S. Dist. LEXIS 146899, at *440 (E.D. Pa. Aug. 29, 2019) (approving rates from $175-$995; *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *32 (E.D. Pa. Sept. 23, 2019) (approving rates from $202-$975 per hour and citing other cases).

The hourly rates charged by FI Counsel in this litigation are reflective of counsel's experience in complex class actions and fully support the reasonableness of the hourly rates presented. *Moore v. GMAC Mortg.*, 2014 U.S. Dist. LEXIS 181432, at *7 (E.D. Pa. Sept. 18, 2014) ("a 'reasonable hourly rate' reflects an attorney's experience and expertise").

### 4.      The Requested Attorneys' Fee Reflects a Modest Multiplier

A multiplier is intended "to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Rite Aid*, 396 F.3d at 305-06 (footnote and citation omitted). The "[l]odestar multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *In re AT & T*, 455 F.3d at 172–73 (citation and quotations omitted). In complex class action cases, "'a lodestar multiplier between 1 and 4 is fair and reasonable.'" *Skeen v. BMW of N. Am., LLC,* 2016 U.S. Dist. LEXIS 97188, at * (D.N.J. July 26, 2016) (citation omitted) (citing cases).

FI Counsel's combined lodestar is $5,698,762.70 and the requested attorneys' fees are $8.5 million. This results in a modest multiplier of 1.49, well within the range approved by courts.[13] FI Counsel believe that a multiplier is warranted here for two principal reasons: First, the Settlement is novel in that it directly targets and provides a higher level of compensation to those parties who were injured as a result of the data breach. *Supra*, III.A.4.b. (innovative terms of settlement). Second, Class Counsel made extraordinary efforts to engage with Settlement Class

---

[13] If the settlement value is calculated at $28.5 million (the funds available to the Settlement Class), instead of $37.5 million ($28.5 million + $9 million for fees, expenses and service awards), the multiplier is 1.49.

Members an encourage claim submission which, Class Counsel believes, directly translated into an increased claims rate in this case.  *See* Amended Joint Decl. at ¶¶ 66-88.

## IV.  THE EXPENSE REIMBURSEMENT REQUEST IS REASONABLE

FI Counsel request reimbursement of $82,993.06 which represent adjusted, out-of-pocket litigation expenses incurred to date, exclusive of settlement administration costs (ongoing but $73,680.25) and other billed but unpaid costs ($3,460.75).  Amended Joint Decl. at ¶¶ 155, 157, 161-163. Attached to the Amended Joint Declaration are three expense-related charts: (i) Exhibit N (FI Counsel – Comprehensive Chart of Unadjusted Expenses by Firm); (ii) Exhibit O (FI Counsel – Comprehensive Chart of Adjusted Expenses by Category; and (iii) Exhibit P (Litigation Fund Ledger).

The expenses for which FI Counsel seek recovery are ordinary and customary expenses that are commonly approved within the Third Circuit courts.  *See, e.g., Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224–25 (3d Cir. 1995) (class action counsel are "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action"); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 125 (D.N.J. 2012) (same).  If authorized by the Court, payment of these expenses will be made by Wawa and will not reduce any amounts payable to Settlement Class Members.  S.A. § 4.7(b) ("Wawa agrees to pay up to $9,000,000 for Court-approved Attorneys' Fees, Expenses of Litigation, and Service Awards").

FI Counsel also request payment of notice and settlement administration costs.  To date, Analytics has incurred $73,680.25 in connection with issuing notice and administering the settlement.  Amended Analytics Decl. at ¶ 21.   Analytics' review and evaluation of claim submission has not yet been finalized (and will not be finalized for several weeks after the filing

21

of this motion), and payments still need to issue to claimants, assuming final approval is granted. In advance of the December 18, 2024 hearing for final approval, Analytics will prepare and Class Counsel will submit a supplemental declaration addressing any additional costs incurred between this submission and the final approval hearing, as well as expected costs to complete the process of distributing funds to Settlement Class Members.  *Id.*  Again, payment of notice and settlement administration costs, if approved, will not reduce any amounts payable to Settlement Class Members.  S.A. § 4.7(b).

FI Counsel have also incurred but not yet paid an invoice in the amount of $3,460.75 from JND eDiscovery, the document platform for Financial Institution Plaintiffs.  Amended Joint Decl. at ¶ 157 & Exhibit Q.

## V.      THE REQUEST FOR SERVICE AWARDS IS MODEST AND SHOULD BE APPROVED

FI Counsel seek a service award in the amount of $5,000 for each of the three Class Representatives, Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union.

The purpose of service awards is "to compensate names plaintiffs for the services they provided and the risks the incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws."  *Sullivan v. DB Investments, Inc.*, 667 F3d 273, 333 n.65 (3d Cir. 2011).  Here, the Class Representatives provided the following assistance, *inter alia*, to FI Counsel and the Class:  participated in interviews with FI Counsel to gather facts used in drafting pleadings; collected and preserved documents; arranged for litigation holds on destruction of documents; collected documents in response to Wawa's request for production of documents; reviewed and approved of pleadings and significant case filings; monitored litigation over the past four years; and engaged with Class Counsel during the settlement

negotiation process including approval. Amended Joint Decl. at ¶¶ 165-167. These Class Representatives were responsive to FI Counsel as needed throughout litigation and settlement negotiations, despite the disruption, costs, and inconvenience to their businesses. Amended Joint Decl. at ¶ 168.

Courts in this Circuit regularly approve incentive payments in class action suits when such awards are authorized by the settlement and disclosed in the class notice. *See, e.g., In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 486 (E.D. Pa. 2010); *Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d 402, 424 (E.D. Pa. 2010). The suggested service awards, if approved by the Court, are authorized by the Settlement Agreement and will not reduce any amounts payable to Settlement Class Members. S.A. § 4.7(b). In addition, the Settlement Class had notice that FI Counsel would be seeking service awards: the notice distributed to Settlement Class Members provided that "if approved by the Court, Wawa will pay Service Awards of up to $10,000 to each Settlement Class Representative." *See* Amended Joint Decl. at ¶ 169.

The awards proposed here are within the range of service awards approved by this Court for a similar level of involvement. *See, e.g., Opris v. Sincera Reproductive Medicine*, 2:21-cv-3072 (E.D. Pa.) ECF No. 64 (approving $8,000 incentive award); *Moore v. GMAC Mortg.*, 2014 U.S. Dist. LEXIS 181432, at *9 (E.D. Pa. Sept. 18, 2014) ($5,000 service awards for plaintiffs who responded to written discovery and consulted with Class Counsel). Accordingly, awards of for the Class Representatives are appropriate.

## VI.    CONCLUSION

For the foregoing reasons, FI Counsel respectfully request entry of an Order granting their request for attorneys' fees, expenses, and service awards.

23

Dated: October 21, 2024

Respectfully submitted,

 /s/ Mindee J. Reuben
LITE DEPALMA GREENBERG & AFANADOR, LLC
Mindee J. Reuben (PA ID 75308)
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (215) 854-4060
mreuben@litedepalma.com

LYNCH CARPENTER LLP
Gary F. Lynch (PA ID 56887)
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
gary@lcllp.com

LOWEY DANNENBERG, P.C.
Christian Levis (admitted pro hac vice)
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
clevis@lowey.com

HAUSFELD LLP
Jeannine M. Kenney (PA ID 307635)
325 Chestnut St #900
Philadelphia, PA 19106
Tel: (215) 985-3270
jkenney@hausfeld.com

*Co-Lead Class Counsel for
Financial Institution Plaintiffs*