**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION | Case No. 2:19-cv-06019 |
| *This Document Applies to the Financial Institutions Track* | |

**DECLARATION OF THE HONORABLE DIANE M. WELSH, U.S.M.J. (RET.) OF
JAMS IN SUPPORT OF FINANCIAL INSTITUTION PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

I, Diane M. Welsh, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I submit this Declaration in my capacity as the mediator in connection with the proposed class action settlement of the above-captioned action brought by Financial Institution Plaintiffs Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union ("FI Plaintiffs") against Defendant Wawa, Inc. ("Wawa") (together, the "Parties").

2.      While the mediation process is confidential, the Parties have authorized me to inform the Court of the procedural and substantive matters set forth herein in support of final approval of the proposed class action settlement between the Parties negotiated under my supervision. My statements and those of the Parties during the mediation process are subject to a confidentiality agreement and Federal Rule of Evidence 408, and there is no intention on either my part or the Parties' part to waive the agreement or the protections of Rule 408. I make this Declaration based on personal knowledge and am competent to so testify.

3.      As will be described in more detail below, the negotiations between the Parties were extensive, hard fought, conducted at arm's length, and were performed in good faith without collusion or other improper conduct.

4.      I have personal knowledge of the facts stated herein from my role as the mediator of the settlement negotiations, and I am competent to testify to the matters set forth in this Declaration.

5.      I previously served as a U.S. Magistrate Judge in the U.S. District Court for the Eastern District of Pennsylvania from 1994 to 2005. Thereafter, I became a mediator with JAMS. As a former U.S. Magistrate Judge and current JAMS neutral, I have successfully resolved over 5,000 matters covering virtually every type of complex dispute. Most relevant here, I have substantial experience resolving class actions of all types, including those involving data breaches such as the consumer track settlement *In Re Wawa, Inc. Data Security Litigation*, No. 19-cv-06019, approved by this Court.

6.      I set forth my background to provide context for the statements that follow, and to demonstrate that my perspective on the settlement in this matter is based upon significant experience in the resolution of complex litigation of this type.

7.      I was engaged in November 2021 through JAMS to serve as a mediator in this case for the Financial Institution Track. Before the mediation session, I corresponded with the Parties' counsel to discuss the general issues in the case and the logistics for the mediation.

8.      At my request, the Parties exchanged detailed mediation statements in advance of the first mediation session. Their submissions addressed the factual issues in the case, the Parties' strengths and weaknesses, and key legal issues including damages, class certification, data breach precedent, and the Parties' settlement proposals. I closely reviewed the mediation statements, the Consolidated Amended Class Action Complaint, the motion to dismiss briefing, and the Court's May 6, 2021 motion to dismiss opinion, becoming intimately familiar with the nature of the claims and defenses asserted.

2

9.     The first mediation all-day mediation session occurred on December 15, 2021, *via* Zoom. The mediation session was attended by representatives from FI Plaintiffs' counsel, Wawa's outside counsel, and company representatives. Throughout the day I conducted joint sessions with all participants, and breakout sessions with FI Plaintiffs and Wawa individually. During the sessions, counsel made multiple presentations regarding various factual and legal issues. There were extensive discussions of the strengths and weaknesses of the Parties' respective positions concerning the merits, damages, and possible resolutions. Unfortunately, the first mediation session was unsuccessful, and the Parties agreed to formally continue their mediation.

10.     The second all-day mediation session occurred on January 4, 2022, *via* Zoom. Prior to the second mediation, the Parties' counsel submitted supplemental memoranda. While the Parties made further progress, they unfortunately ended the second mediation at an impasse with regard to several issues.

11.     In the months that followed the second mediation the Parties proceeded with discovery while each continuing to engage with me.

12.     A third all-day mediation session occurred on April 29, 2022, *via* Zoom. Prior to the third mediation, the Parties' counsel submitted supplemental memoranda. Unfortunately, the third mediation did not result in an agreement.

13.     The Parties scheduled a fourth all-day mediation session for May 18, 2022, which was ultimately canceled by the Parties.

14.    During the three mediation sessions the Parties first negotiated the structure of the settlement and did not discuss fee levels. Unfortunately, the Parties could not reach agreement on the compensation levels for the class and were very far apart on the total compensation to be made available to the class.

15.    I became aware that after the fourth mediation session was cancelled, the Parties later resumed discussions during summer 2022, culminating in the Parties executing a term sheet on August 26, 2022.

16.    The Parties spent the next several months working on drafting a settlement agreement and notice plan. As a result of the extensive negotiations that I mediated, the Parties reached a compromise and settlement, which they later incorporated into a long form agreement which FI Plaintiffs filed with the Court on March 10, 2023.

17.    The negotiations entailed considerable back-and-forth between the Parties regarding numerous offers and demands. Throughout the mediation process, the Parties engaged in extensive adversarial negotiations over all core issues in the case. The facilitated negotiations were lengthy, principled, exhaustive, informed, and sometimes contentious but always professional.

18.    The negotiations involved highly qualified attorneys with extensive experience and expertise in complex class actions in general and data breach litigation in particular. At all times, Class Counsel zealously represented the proposed class. They passionately expressed a desire for the settlement to provide meaningful benefits to the class while at the same time recognizing the significant risks they faced if they proceeded with discovery, class certification, summary judgment, trial, and appeal. Counsel for Wawa likewise zealously represented their client. They pushed back on many of the demands advanced by Class Counsel and presented the

obstacles the Class would face in actual litigation, while at the same time recognizing the risks and burdens of such litigation.

19.     The total value of the settlement is $28.5 million in direct compensation for Class Members that file claims, which is comprised of: (1) up to $18.5 million in payments to financial institutions to cover card cancellation and replacement costs at rate of up to $5.00 per replaced card; (2) up to $8 million in compensation for fraudulent charges incurred on compromised cards, with each financial institution eligible to receive up to $4,000; and (3) an alternative option for Class Members to elect a fixed payment (based on a *pro rata* division of $2 million by the number of Class Members), if the financial institution attests that it incurred some cost in dealing with the Data Breach.

20.     The Parties' agreement that Wawa will pay up to $9 million towards notice and administration costs, attorneys' fees and expenses, and service awards to the Class Representatives was negotiated with my oversight after the Parties substantially reached agreements on the structural Class Member relief terms and other components of the settlement.

21.     In my opinion, the settlement was the result of fair, thorough, and fully informed arm's-length negotiations between highly capable, experienced, and informed Parties and their counsel. The settlement represents the Parties' and counsel's best efforts and judgments after thoroughly investigating the case, considering the risks, strengths, and weaknesses of their respective positions on substantive issues, the risks, burdens, delays and costs of continued litigation, and the best interests of their respective clients.

22.     I believe that the proposed settlement reflects the risks and potential rewards of the claims being settled. Although the Court will need to make its own determination as to the proposed settlement's fairness under Fed. R. Civ. P. 23(e)(2), I can say that, from an experienced

mediator's perspective, the negotiated settlement produced by the mediation process represents a thorough, deliberative, and comprehensive resolution that will benefit Class Members through meaningful relief and avoids the considerable risks and costs inherent in class action litigation.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to be best of my knowledge.

Executed on _October 8_, 2024

_Hon. Diane M. Welsh, U.S.M.J. (Ret.)_