IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: WAWA, INC. DATA SECURITY LITIGATION<br><br>*This Document Applies to the Financial Institution Track* | Case No. 2:19-cv-06019<br><br>The Honorable Kelley B. Hodge |

**DEFENDANT WAWA, INC.'S PARTIAL OPPOSITION TO
THE AMENDED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND AMENDED MOTION FOR ATTORNEY FEES,
EXPENSES, SERVICE AWARDS & COSTS OF SETTLEMENT ADMINISTRATION**

Defendant Wawa, Inc. ("Wawa") respectfully submits this Partial Opposition to the Amended Motion for Approval of Proposed Class Action Settlement ("Final Approval Motion") (ECF No. 460) and Amended Motion for Attorney Fees, Expenses, Service Awards & Costs of Settlement Administration ("Fees Motion") (ECF No. 461) filed by the Financial Institution Track Plaintiffs ("Plaintiffs"). Wawa agrees that the proposed Settlement and Settlement Agreement were fair, reasonable and adequate and would be deserving of final approval. But as more fully set forth herein, the manner in which Plaintiffs and the Settlement Administrator propose to calculate relief to the class incorporated in the proposed Final Approval order is flawed and contrary to the Settlement Agreement. Plaintiffs are demanding that Wawa pay claims in excess of what the Settlement Agreement requires. Many claims Plaintiffs and the Settlement Administrator propose to have Wawa pay are invalid under the Settlement Agreement. Unfortunately, Plaintiffs and the Settlement Administrator are withholding from Wawa information that Wawa needs to fully evaluate additional claims that may be invalid, including communications that Wawa's counsel should have received but did not. Accordingly,

Wawa proposes that the Court should direct the Settlement Administrator to reject those claims that are invalid under the Settlement Agreement and defer final approval to allow discovery to fully illuminate the discrepancies described below and the possibility of additional invalid claims. In the alternative, Wawa proposes that the Court direct the Settlement Administrator to reject the claims identified herein as deficient before granting final approval. To be clear, Wawa does not oppose eventual final approval of the Settlement as reflected in the Settlement Agreement if the amounts of relief are properly calculated as required by the Settlement Agreement. Wawa simply believes that the way Plaintiffs are proposing to have the Settlement Agreement implemented and paid by Wawa is flawed and requires further evaluation before final approval can be granted.

## I. BACKGROUND

### A. The Settlement Agreement and Initial Notice Process Is As Expected

Plaintiffs are financial institutions who allege to have been harmed by the Wawa data security incident announced in December of 2019. ECF No. 128. After more than two years of litigation, Wawa and Plaintiffs entered into a class Settlement Agreement dated March 10, 2023 (the "Settlement Agreement" or "Settlement").[1] The Settlement Agreement called for a notice and claims made process to provide most relief to the class. Class Members were required to make a valid and timely claim to receive cash benefits. ECF 360-4 at 2 & 7, ¶¶ 2.2, 2.5, & 4.4. Class notice to the 4,913 Class Members started on April 12, 2024 and a reminder was mailed on July 22, 2024. ECF No. 460-2 ¶¶ 4-5. As of July 24, 2024, about two months after notice started, Analytics Consulting LLC ("Analytics"), the Settlement Administrator, reported that 220

---

[1] All terms with initial capitalization not otherwise defined in this memorandum shall have the meanings ascribed to them in the Settlement Agreement (ECF No. 360-4).

claims had been filed.  *See* Declaration of Gregory T. Parks, attached hereto as **Exhibit A** ("Parks Decl."), at ¶ 6, Ex. 1, at 3-4 (reporting 220 claims).  That made the claims rate about 4.5 percent, a number that was expected and consistent with previous experience in similar cases.  *See id*.

        **B.**        **Plaintiffs' Counsel Are Dissatisfied with the Claims Rate and Take Action**

Plaintiffs and their counsel apparently noticed the claims rate in the July 24 report and decided to take action.  Two later, on July 26, 2024, and expressly because they believed the claims rate was "lower than expected," Plaintiffs moved to extend the Claims Deadline by six weeks, to September 30, 2024.  ECF No. 447 at ¶ 16.  Then, on August 1, 2024, Plaintiffs' counsel inserted themselves into the notice program previously approved by the Court and mailed their own letters to Settlement Class Members.  Parks Decl. ¶ 8, Ex. 2.  These letters were not approved by the Court despite the Court's role in supervising notices and communications to the class regarding a proposed settlement.  *Id.*  Nor did Plaintiffs' counsel share the letters with Wawa before sending them.  *Id.*  Rather, it appears the August 1 letters were the result of communications between Plaintiffs' counsel and the Settlement Administrator.  ECF 460-3, at 22, ¶ 81.  The letters urged Settlement Class Members to file a claim under Tier 1 of the settlement for alleged replacement of cards.  They emphasized that filing a claim for card replacement "**is simple**" and "**could not be easier.**"  Parks Decl. at Ex. 2 (emphasis added).  The letters included information about the amounts the class members could credibly claim.  It then encouraged them to claim that full amount by inciting them to "simply confirm" the information and emphasizing that "**no further documentation is required.**"  *Id.* (emphasis added).  This letter stands in stark contrast to the Court-approved notice and claims forms, which clearly outlined "materials to review before submitting this claim" and further instructed class members to "review your records" in order to make a claim.  ECF 360-4 at 48.

3

C.   **The Claims Rate Jumps**

Immediately after the August 1 letter from Plaintiffs' counsel emphasizing the lack of documentation requirements and failing to mention the need to review records, the claims rate spiked. In Analytics' August 6 report, the claims filed jumped to 338, about 6.9 percent. Parks Decl. ¶ 9, Ex. 1, at 1-2. In Analytics' August 26 report, the claims filed jumped again to 671, more than triple the number from before the August 1 letter, bringing the claims rate to an astounding 13.7 percent, far exceeding any reasonable expectations. *Id.* ¶ 9, Ex. 3, at 6-7. By October 3, 2024, Analytics reported 747 claims filed, making the claims rate an unbelievable 15.2 percent. *Id.* at Ex. 3, at 1. As Plaintiffs have highlighted in their motion papers, this claims rate is two to three times the claims rate in other settlements of virtually identical cases. ECF No. 461-1, at 7-8. It is also three to seven times the claims rate that should be reasonably expected in undersigned counsel's opinion. Parks Decl. ¶ 9.

D.   **Wawa Seeks Information and is Rebuffed by Plaintiffs' Counsel**

Given the surprisingly high 13.7% claims rate reported on August 26, and unaware of Plaintiffs' August 1 letter, Wawa asked Analytics for copies of the claims for review in an email sent on August 28. Parks Decl. ¶ 10, Ex. 3, at 5-6 (Aug. 28, 2024 email from K. Hadgis to K. Schmidt). Wawa simply wanted to verify the claims against it, investigate the surprisingly high claims rate, and be able to report to its internal and external auditors that the claims were valid and needed to be paid. *Id.* ¶ 10.

Surprisingly, Wawa had to follow up on this request to the Settlement Administrator four times. *See id*. Wawa emailed Analytics again on August 29, September 4, September 12, September 23. *Id.* ¶ 10, Ex. 3, at 3-5. After several weeks with no substantive response, Analytics provided a response that clearly evidenced the involvement of Plaintiffs' counsel. The email copied Plaintiffs' counsel and said that "it is my understanding that the Settlement

4

Agreement does not authorize or require Analytics to provide copies of the claim forms to Wawa. Please direct further inquiries to Class Counsel." *Id.* at Ex. 3, at 2 (Sept. 23, 2024 email from K. Schmidt to K. Hadgis). In subsequent discussions, Plaintiffs' counsel admitted that they had instructed Analytics to take that position. *Id.* ¶ 12.

Wawa then raised the issue with Plaintiffs' counsel by email and multiple phone calls. After weeks of meeting and conferring, by phone and through no less than eight follow up emails, on October 29, 2024, Plaintiffs' counsel finally responded to Wawa's requests to review the claims. Parks Decl. ¶ 14, Ex. 4, at 3-4. Plaintiffs' counsel took the position that Wawa was not entitled to see the claim forms because the Settlement Agreement did not contain a provision that expressly allowed Wawa to see the claim forms. They further alleged the claims forms would not "assuage or confirm Wawa's concerns about the claims rate" and that they provided no "useful information to Wawa." *Id.* at Ex. 4, at 3-4. Therefore, instead of providing the claims, Plaintiffs' counsel provided a chart showing some claim-level detail for the Tier 1 claims. *Id.* at Ex. 4, at 6. The chart did not include the name of the financial institution involved, the date it was submitted (before or after the August 1 letter and extension of the Claims Deadline) and, without the actual claims, gave Wawa no basis on which to evaluate the claims and determine their validity. Wawa therefore informed Plaintiffs' counsel via email of its position that the summary chart was insufficient without the claims forms, and that it would have no choice but to seek court intervention. *Id.* at ¶ 15, Ex. 4, at 2-3 (Oct. 30, 2024 email from G. Parks to G. Lynch).

### E.     Plaintiffs Eventually Provide Redacted Claims Forms, Which Reveal Issues

On October 31, 2024, after Wawa issued a subpoena to Analytics,[2] Plaintiffs' counsel changed course and agreed to provide Wawa with copies of the validated Tier 1 claim forms, redacted to shield the identity of the Settlement Class Member. It is unclear why Plaintiffs and the Settlement Administrator concluded that Plaintiffs and their counsel were entitled to see the claim forms when they had declined to allow Wawa's counsel to see the claim forms. Parks Decl. ¶ 19. Although Plaintiffs' counsel took the position that the Settlement Agreement did not allow Wawa to see the claim forms, the Settlement Agreement provides Plaintiffs' counsel no greater rights. This and many other factors indicate significant communication between Plaintiffs and the Settlement Administrator to which Wawa and its counsel were not privy.

Plaintiffs' counsel said that Wawa could use the redacted forms to "cross-reference the information on the summary chart and confirm that the Settlement Administrator appropriately processed the claims." *Id.* at Ex. 4, at 1-2 (Oct. 31, 2024 email from G. Lynch to G. Parks). The parties, therefore, agreed to file a joint stipulation extending Wawa's deadline to oppose the Motion for Final Approval and Fees Motion to November 22, 2024, to allow Wawa sufficient time to review the claims. ECF No. 465.

Plaintiffs' counsel ultimately produced heavily redacted claims forms on November 10, 2024, eleven days after they agreed to provide them and less than two weeks before the revised opposition deadline. Parks Decl. ¶ 18. Wawa nevertheless analyzed the claims to the extent

---

[2]Counsel for Wawa served a subpoena on Analytics to obtain the claims forms on October 31, 2024. Parks Decl. ¶ 16. Wawa subsequently withdrew that subpoena upon receipt of the claims forms. *Id.* ¶ 30. Based on Wawa's review of the claims and the issues that arose during that review which are detailed in this Opposition, however, Wawa issued a new subpoena to Analytics on November 19, 2021 seeking communications between Analytics, Plaintiffs' counsel, and Settlement Class Members on which Wawa was not copied. *Id.*

possible and quickly discovered numerous discrepancies giving rise to questions concerning their validity. On November 18, 2024, Wawa raised these issues with Plaintiffs' counsel via email in an effort to meet and confer about invalid claims. Parks Decl. ¶ 29. Wawa also asked to see communications: (1) between Plaintiffs' counsel and the Settlement Administrator on which Wawa was not copied; and (2) between Plaintiffs counsel and any Settlement Class Member claimants regarding claims after the August 1 letter. *Id.* On November 19, 2024, Plaintiffs' counsel responded via email outlining their position that all of the claims identified by Wawa are valid and should be allowed and approved. *Id.* They further refused to provide any of the requested communications to Wawa. *Id.* This met Wawa's obligation to meet and confer and necessitated the filing of this Opposition.*Id.* It also made clear that Plaintiffs' counsel and the Settlement Administrator had numerous communications about late, amended, and deficient claims in which counsel for Wawa was not involved.

Separately from the above, on September 11, 2024, the Court ruled on Plaintiffs' request for an extension of the Claims Deadline. ECF No. 455. Plaintiffs had sought an extension of the Claims Deadline through September 30, 2024. ECF No. 447. Wawa opposed on the grounds that it was inconsistent with the Settlement Agreement. ECF No. 448. The Court entered an Order allowing an extension of the Claims Deadline, but limited that extension to September 12, 2024. ECF No. 455. Wawa respects the Court's decision on the revised Claims Deadline and will not raise again here its objection, but does perserve its rights on the extension of the Claims Deadline.

## II. WAWA AND THE COURT HAVE THE AUTHORITY TO REVIEW THE CLAIMS TO DETERMINE THEIR VALIDITY

Wawa's obligation to pay monetary relief to the class under the proposed settlement is contingent upon a claims made process. *See* Settlement Agreement (ECF No. 360-4), at § 4.6.

7

To be paid by Wawa, a claim from a class member must be an "Approved Claim" which is defined in the Settlement Agreement to be "a claim for Settlement benefits made using a Claim Form by a Settlement Class Member found to be ***timely***, ***valid***, ***and*** in any amount approved by the Settlement Administrator." *Id.* at § 2.1 (emphasis added). Only "a Settlement Class member that timely submits a Claim Form shall be deemed to have filed a "Claim" for payment from the Settlement Fund. *Id.* at § 2.6. As a result, the Court's approval of the settlement, and the corresponding request for attorneys' fees rests upon the determination of whether the claims submitted are timely and valid. For these reasons, the Settlement Agreement provided that the Court "shall retain jurisdiction over the implementation, enforcement, and performance of this Settlement" and "with respect to the administration, consummation, and enforcement of the Settlement" including "all questions and/or disputes related to the Notice Program and Settlement Administration." *Id.* at § 12.17. Although the parties have an obligation to meet and confer pursuant to Section 12.7 of the Settlement Agreement before presenting such a dispute to the Court, that has clearly been satisfied here as set forth above and in the accompanying declaration.

Indeed, Wawa committed to not oppose approval of the Settlement and Plaintiffs' Fees Motion as long as the approvals were **consistent with** the terms of the Settlement Agreement. *See* Settlement Agreement (ECF No. 360-4) at §§ 3.1, 3.2, 9.1). The deficient claims outlined below are clearly inconsistent with the Settlement Agreement. Wawa has been unable to determine whether there are additional claims that are invalid or what else has transpired in the claims process that may have inappropriately influenced the claims that were made.

### III. THE PROPOSED SETTLEMENT CALCULATION INCLUDES INVALID AND INHERENTLY SUSPICIOUS CLAIMS THAT SHOULD BE DISALLOWED UNDER THE AGREEMENT

Through its review of the redacted claim forms and Plaintiffs' Tier 1 summary chart, Wawa has identified claims purportedly included in the calculation Plaintiffs propose to include in the final approval (the "Proposed Calculation") that (1) must be excluded under the Settlement Agreement for being filed, cured or amended after the revised Claims Deadline, (2) should be rejected given the disproportionate number of claimed cards compared to the number of impacted cards, and (3) are inherently suspicious given the timing of their submission and Plaintiffs' counsel's involvement outside the scope of the Court-approved notice program.

#### A. Claims Filed After The Revised September 12, 2024 Deadline

The Proposed Calculation includes claims that were submitted after the revised September 12, 2024 Claims Deadline set by the Court's Order of September 11, 2024. ECF No. 455 & n.1. Plaintiffs' counsel and the Settlement Administrator have refused to exclude them. *See* Parks Decl. ¶ 29. As set forth below, this includes late-filed claims, late-amended claims, and late-cured deficient claims. Plaintiffs sought to extend the Claims Deadline from August 12 to September 30. The Court limited the extension to September 12. Plaintiffs are now attempting to take the extension they initially sought and more by including claims filed, amended or purportedly cured after September 12, 2024 and as late as November 4, 2024. This goes against the parties' Settlement Agreement, the Court's Order on the revised Claims Deadline and circumvents the Court's notice program.

##### 1. Late-Filed Claims

The Proposed Calculation includes four claims that were initially submitted after the revised September 12 Claims Deadline. *See* Parks Decl. ¶ 21, Ex. 5. When Wawa raised this issue with Plaintiffs' counsel, counsel took the untenable position that the claims were valid

9

because they were allegedly linked to claimants who had tried and failed to properly submit prior to the deadline. Thus, the Settlement Administrator allowed, and Plaintiffs' counsel approved, claimants to submit their claims after the Claims Deadline. Claimants here are sophisticated financial institutions that had every opportunity to properly submit their claims prior to September 12. There is no basis in the Settlement Agreement and otherwise no reason to allow these late-filed claims to be included in the Settlement. In fact the Settlement Agreement provides that only "a Settlement Class Member that ***timely*** submits a Claim Form shall be deemed to have filed a "Claim" for payment from the Settlement Fund." ECF No. 360-4, Settlement Agreement, § 2.5.

### 2. Late-Amended Claims

The Proposed Calculation also includes two claims that were "amended" on November 4, 2024, nearly two months after the revised deadline. *See id.* ¶ 21, Ex. 6. The request to amend for both claims states the claimant was "relying on a representation that we would be able to amend." *Id.* at Ex. 6, at 1. It is not clear who made that representation or the basis of it since the Settlement Agreement does not allow for any amendment process. Section 4.5 the Settlement Agreement gives the Settlement Administrator authority to determine the value of a Claim in accordance with the options chosen and formulas described in Paragraph 4.6. Nothing in Section 4.6 or anywhere else in the Agreement allows for amending claims, and certainly not after the Claims Deadline.*See* ECF No. 360-4. In fact, an "Approved Claim" is only one that was filed in a "timely" way using a "Claim Form," which is a defined term to include just the claim forms attached to the Settlement Agreement and approved by the Court. *Id.* at §§ 2.2 and 2.5.

The claims in this category were originally submitted on the original Claims Deadline of August 12 (along with sixty other claim forms submitted that day all in the same type face). *See*

Parks Decl. at Ex. 6, at 2-9, 14-19. Per the original claim forms, one claim (number 1005075) sought reimbursement for just a single impacted card on August 12, 2024 as follows:

> **CLAIM YOUR PAYMENT:** If you wish to claim and receive your payment for Tier 1, please fill in the information below, check the attestation box, and sign the attestation:
>
> 1. This financial institution cancelled and replaced **1** Impacted Cards between December 12, 2019 and May 1, 2020 in response to the Data Security Incident.
>
> ☑ I attest that this financial institution cancelled and replaced the above number of Impacted Cards between December 12, 2019 and May 1, 2020 in response to the Data Security Incident.
>
> I declare under penalty of perjury under the laws of the United States and the state where this Claim Form is signed that the information supplied above is true and correct to the best of my knowledge.
>
> Print Name: [redacted] _____
> On behalf of (*Financial Institution/Class Member*): [redacted] _____
> Signature: [redacted]       Date: **08/12/2024**

On November 4, 2024, almost two months after the Claims Deadline, this same claimant purportedly amended the Claim Form to seek reimbursement for 294,113 cards (in an amount of $1,470,565) as follows:

> **CLAIM YOUR PAYMENT:** If you wish to claim and receive your payment for Tier 1, please fill in the information below, check the attestation box, and sign the attestation:
>
> 1. This financial institution cancelled and replaced **294,113** Impacted Cards between December 12, 2019 and May 1, 2020 in response to the Data Security Incident.
>
> ☑ I attest that this financial institution cancelled and replaced the above number of Impacted Cards between December 12, 2019 and May 1, 2020 in response to the Data Security Incident.
>
> I declare under penalty of perjury under the laws of the United States and the state where this Claim Form is signed that the information supplied above is true and correct to the best of my knowledge.
>
> Print Name: [redacted]
> On behalf of (*Financial Institution/Class Member*): [redacted]
> Signature: [redacted]       Date: **11/4/24**
> Location: Birmingham, AL

11

*Id.* at 4, 10.  Nothing in the Settlement Agreement authorizes the claimant to submit, or the Settlement Administrator to accept, an amended claim, especially one filed on November 4, 2024, almost two months after the Claims Deadline.

The second claim (number 1000181) was initially filed on August 12, 2024 and sought reimbursement for exactly 100,000 cards.  This suspiciously round number suggests that claimant failed to heed the instructions that required a claimant to review their records to determine the number of impacted cards.  This claimant also purported to cure that deficiency on November 4, 2024, long after the Claims Deadline with no basis, then seeking reimbursement for 112,590 cards.  *Id.* at Ex. 6.  This claim should be excluded in its entirety.

These claims should be disallowed both because they were purportedly amended on November 4, 2024, almost two months after the Claims Deadline, and because the claims in of themselves are riddled with ambiguities and inaccuracies.  Moreover, if the Court were to permit amended claims to be "Approved Claims," there would be no end to the claims process.  Theoretically, Class Members could continue to "amend" claims for months or perhaps even years.  The Claims Deadline serves to allow for finality and to allow the parties to evaluate the claims and make appropriate arguments to the Court.  This should not be an ever-moving target.

### 3. Late-Cured Deficient Claims

There are five claims included in the Proposed Calculation that were purportedly deficient when filed and then "cured" after the revised September 12 deadline.  *See* Parks Decl. ¶ 23, Ex. 7. Just as with the late-filed amended claims, the Settlement Agreement does not allow for any deficiency process, and certainly not any process that would allow claims to be "cured" after the Claims Deadline.  *See* ECF No. 360-4.  Consequently, all of these claims should be excluded.

### B. The Proposed Calculation Mis-States the Number Reported on Claim 1002860

Claim 1002860 shows a suspiciously round number of 300 impacted cards. *See* Parks Decl. ¶ 24, Ex. 8. But the Proposed Calculation reports it as 4,284 impacted cards. *Id.* When Wawa raised this discrepancy of 3,984 cards (worth $19,920), Plaintiffs' counsel responded that they had other information indicating that the 4,284 number is correct. *Id.* The Settlement Agreement plainly provides that claims must be based on the completed Claims Form to be approved. *See* ECF no. 360-4, at §§ 2.2 and 2.5. There is no basis to use "other information" that might be available.

### C. Claims Seeking A Disproportionate Number Of Replaced Cards

A number of claims reviewed seek a disproportionate number of replaced cards compared to the number of cards reported to be involved from Visa or Mastercard, sometimes referred to as the "alerted-on" cards. The definition of the class and impacted cards includes both "alerted-on" impacted cards as well as other cards used at Wawa during the relevant time frame. Accordingly, some small discrepancy may be expected between the claimed and alerted-on card numbers. This was intended to account for instances where cards beyond the alerted-on number would be claimed. Plaintiffs' counsel represented that the Settlement Administrator would have a process by which to weed out claims where the claimed replacement was significantly in excess of the alerted-on number.

Based on the claims reviewed, this process was clearly never implemented. There are a number of claims that purport to have replaced 100% or more cards than the alerted on number, with many claiming more than 1,000% more than the alerted on cards. Parks Decl. ¶ 26. There are also claims included in the settlement with zero alerted on cards that seek to replace hundreds

of cards. *Id.* ¶ 27. Plaintiffs' counsel has offered no explanation or substantiation for these gaps. These claims should also be disallowed.

### D. The Settlement Includes Claims Potentially Impacted By Plaintiffs' Counsel's Interference In the Notice Program

Wawa's review revealed that the overwhelming majority of Tier 1 claims were submitted after Plaintiffs' counsel's August 1, 2024 letter to class members. *Id.* ¶ 28. More specifically, sixty four percent of Tier 1 claims were submitted after August 1, and seventeen percent of all Tier 1 claims were submitted on August 12, 2024, the original Claims Deadline that remained the presumptive deadline until the Court's later Order granting Plaintiffs' extension. *Id.* These claims total $6.1 million of the $8.2 million purportedly claimed under Tier 1. Wawa recognizes that some communication between Plaintiffs' counsel and the class is appropriate if class members have questions. But proactive communications such as the August 1 letter should be limited to those that the Court has approved because of the risk of confusion. *See Georgine v. Amchem Prods., Inc.*, 160 FRD 478, 490-98 (E.D. Pa. 1995). To that end, parties to a class action must respect the Court's obligation to "safeguard class members from 'unauthorized and misleading communications from the parties or their counsel.'" *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 310 (3d Cir. 2005) (quoting *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (noting further that "misleading communications by soliciting counsel have a detrimental effect on the class notice procedure and, therefore, on the fair administration of justice"). Indeed, Plaintiffs' counsel characterizes the August 1 letter as "an additional round of direct notice to the Settlement Class members." ECF 460-3, at 22, ¶ 81. Yet despite the obligation to respect the Court's role, Plaintiffs' counsel never sought approval from the Court or Wawa for this "additional notice" or its contents despite the clear command from Rule 23 that the Court should supervise and approve all class notice. *See* Rule 23(c)(2)(B) and (e)(1). Here,

14

counsel's August 1 letter was not approved by the Court and contained language different than that contained in the Court-approved notices. The letter therefore risked misleading and confusing class members, a risk that very well may have been realized given the claims spiking immediately following its release.

Beyond the August 1 letter, however, there is evidence that Plaintiffs' counsel and the Settlement Administrator had many more communications with class members about the claims process unbeknownst to Wawa. As referenced above, one class member's request to amend their claim stated they were "[r]elying on ***representation that we would be able to amend*** the number of cards compromising our claims." Parks Decl. at Ex. 6, at 1 (emphasis added). In addition, in the course of the meet and confer process before filing this Partial Opposition, it became clear to Wawa that Plaintiffs' counsel was involved in discussions with the Settlement Administrator about encouraging and allowing claims to be purported filed, cured, and amended after the Claims Deadline. Wawa is confident that discovery from Plaintiffs and the Settlement Administrator would likely reveal more communications and "representations" made to class members beyond the bounds of the Court-approved notice program.

The timing and the actions of Plaintiffs' counsel make clear they have undertaken extraordinary efforts to increase the claims rate in light of the Third Circuit's opinion in the appeal of the Wawa consumer settlement. As this Court knows, Wawa agreed to settle the consumer track of this litigation for $12.2 million, comprised of $9 million made available to settlement class members on a claims made basis and $3.2 million in attorneys' fees and costs. *See* ECF No. 314. Class members claimed $2.9 million of the $9 million available, making the fee award greater than the amount recovered. *Id.* at 17-18. An objector appealed, arguing that the amount of the fee award was unreasonable given that it exceeded the amount claimed. ECF

No. 321. On November 2, 2023, the Third Circuit overturned the award, remanding to the district court to consider whether the $3.2 million was "reasonable" under Rule 23(h) compared to the $2.9 million claimed, not just compared to the $9 million in the fund. *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 725 (3d Cir. 2023). Faced with this decision and anticipating scrutiny of the fee award in the financial track, Plaintiffs' counsel has very clearly approached the claims process with a new and powerful incentive to increase the claims rate and amount.

All of these facts bring the validity of the claims submitted post-August 1, 2024, when Plaintiffs' counsel began gaming the notice program, into question. The remedy should be that Wawa should be allowed to take discovery from Plaintiffs and the Settlement Administrator to more fully understand Plaintiffs' counsel's impact on the claims before final approval is entered. Wawa proposes that the Court direct Plaintiffs' counsel to produce to Wawa (a) all communications between them and the Settlement Administrator on which counsel for Wawa was not copied, including any emails, text messages, calendar or entries reflecting phone calls, video calls, or other meetings; and (b) all communications between them and Class Members (other than Named Plaintiffs) related to claims after their August 1, 2024 letter. Wawa should then have an opportunity to take additional discovery in light of said communications and be able to submit a further opposition identifying additional claims that are deficient.

## IV.   CONCLUSION

For these reasons, Wawa respectfully requests that the Court enter an order in the form of the proposed order accompanying this Partial Opposition that: (1) directs the Settlement Administrator to reject, invalidate, and exclude from any final valuation of Approved Claims, all claims that are invalid under the Settlement Agreement as set forth herein; (2) compels Plaintiffs' counsel to produce communications: (a) between Plaintiffs' counsel and the Settlement Administrator on which Wawa was not copied, including any involving Class Members; and (b)

16

between Plaintiffs' Counsel and or Class Members after August 1, 2024 related to claims; (3) allows Wawa to take additional discovery after receipt of such communications; and (4) allows the submission of additional briefing before the Court enters final approval.

Date: November 22, 2024

/s/ *Gregory T. Parks*
Gregory T. Parks
Ezra D. Church
Kristin M. Hadgis
Terese M. Schireson
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA  19103
Tel: (215) 963-5000
Fax: (215) 963-5001
gregory.parks@morganlewis.com
ezra.church@morganlewis.com
kristin.hadgis@morganlewis.com
terese.schireson@morganlewis.com

*Attorneys for Defendant Wawa, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 22, 2024, the foregoing was served via the Court's ECF system upon all counsel of record.

                                                  /s/ *Gregory T. Parks*
                                                  Gregory T. Parks