IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE WAWA, INC. DATA SECURITY LITIGATION | Case No. 2:19-cv-06019 |
| | The Honorable Kelley Brisbon Hodge |
| *This Document Applies to the Financial Institutions Track* | |

**FINANCIAL INSTITUTION PLAINTIFFS' REPLY IN FURTHER SUPPORT OF AMENDED MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEY'S FEES, EXPENSES, SERVICE AWARDS & COSTS**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FINAL VALUATION OF CLAIMS ............................................................................. 1

III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT .............. 2

    A. The Settlement Agreement Vests the Administrator, Not Wawa, with the Authority to Manage the Claims Process ......................................................... 2

    B. Analytics Correctly Accepted Each Claim Under the Terms of the Settlement Agreement ................................................................................................ 4

        1. Timely Amended Claims ................................................................................ 4

        2. Tier 1 Attestation Claims ................................................................................ 8

        3. Claims Subject to Technical Issues ............................................................... 10

    C. Wawa's Demand to Revise Tier 1 Eligibility Criteria is Contrary to the Express Terms of the Settlement and Due Process ............................................. 12

    D. Wawa's Demand for Class Counsel's Communications Is Unwarranted .................. 13

IV. CONCLUSION ............................................................................................................. 15

Financial Institution Plaintiffs Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit Union ("FI Plaintiffs"), by and through their undersigned counsel, submit this Reply in Further Support of Amended Motions for Final Approval of Class Action Settlement and for Attorney's Fees, Expenses, Service Awards & Costs.

## I. INTRODUCTION

Flipping the customary critique of class action settlements on its head—that claims rates are *too low*—Wawa complains that the modest but respectable claims rate of 15% achieved here is too high and that Settlement Class Counsel ("Class Counsel") worked too hard to obtain it. But Wawa's disappointment in its own flawed payment projections provides no basis for Wawa's demands to delay final approval, vitiate Wawa's obligations under the Settlement Agreement, add new terms to the Settlement Agreement about which the Class had no notice, reject claims totaling $1.8 million (or nearly 20% of the total value of claims filed), and permit unjustified discovery.

For the reasons set forth herein, the Court should deny Wawa's objections, approve the final valuation of claims; grant final approval to the Settlement, and order distribution of the Settlement Funds.

## II. FINAL VALUATION OF CLAIMS

When FI Plaintiffs moved for final approval in October (ECF No. 460), the Court-appointed Settlement Administrator, Analytics Consulting LLC ("Analytics"), had not completed its traditional claims deficiency process, and it advised the Court that the number of claims and valuations amounts were subject to change. ECF No. 460-2 ¶ 17 n.5 (Amended Schmidt Decl.). The deficiency process, "a data integrity audit of all timely submitted claims after the claims deadline passed to evaluate completeness and identify any outstanding defects," is a standard practice that is now complete, and the final valuations by Tier are as follows:

1

| Tier | Number of Approved Claims | Total Approved Value |
|---|---|---|
| Tier 1 | 355 | $9,834,450.00 |
| Tier 2 | 26 | $63,110.42 |
| Tier 3[1] | 380 | $154,690.40 |
| **TOTAL:** | | **$10,052,250.82** |

Supp. Decl. of Kari I. Schmidt ("Supp. Analytics Decl.") at ¶¶ 6, 21.

### III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Wawa argues that the Court should reject four categories of claims that the Settlement Administrator accepted (the "Accepted Claims"), order two more layers of discovery, and defer final approval (thereby delaying distribution to the Class) because of purportedly "suspicious" claims. Opp. 9–16. But Wawa's characterization of the Accepted Claims and the Administrator's determinations is misleading and factually inaccurate, tactically omitting key facts regarding Analytics' reasons for accepting these claims that FI Plaintiffs disclosed to Wawa. And Wawa's insistence that the claims rate achieved here is beyond rates that "should be reasonably expected"—thus rendering suspicious all claims filed after Class Counsel's outreach—is unsupported by anything other than its counsel's (also unsupported) opinion and flatly contrary to rates obtained in other data breach cases.

#### A. The Settlement Agreement Vests the Administrator, Not Wawa, with the Authority to Manage the Claims Process

Analytics was appointed by the Court to act as the Settlement Administrator empowered by the express terms of the Settlement Agreement to make determinations regarding the validity of claims and to approve or reject those claims. In the Court's October 13, 2023 Order preliminarily approving the Settlement Agreement, the Court "authorized [Analytics] to conduct the settlement

---

[1] Tier 3 claims include claims filed under Tier 3 and claims rolled over to Tier 3. *See* Supp. Analytics Decl. at ¶¶ 18–20.

2

administration procedures set forth in the Settlement Agreement." Order ¶ B.3. (ECF No. 412). The plain language of the Settlement Agreement provides Analytics (not Wawa) with the authority to establish the claims process, including processes to correct technical or other deficiencies and permit Settlement Class Members to amend their claims. The claims processing restrictions Wawa seeks—no amendments, no opportunity to cure deficiencies—are inconsistent with ensuring that claims processes are not unduly demanding. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) advisory committee note (2018 amendment).

Here, the plain language of the Settlement Agreement vests the Administrator with the authority to design and manage the claims process. It provides in relevant part as follows:

> 2.2.  "Approved Claim" means a claim for Settlement benefits made using a Claim Form by a Settlement Class Member *found to be timely, valid, and in an amount approved by the Settlement Administrator.*
>
> 2.3.  "Claims Administration" means *the validation and processing of Claim Forms received* from Settlement Class Members *and processing of payment of Approved Claims* by the Settlement Administrator, as well as any other duties and obligations of the Settlement Administrator, as set forth in the Settlement.
>
> 2.30.  "Settlement Administrator" means Analytics Consulting LLC, a company experienced in administering class action settlements generally and processing claims like those contemplated in this Agreement, as agreed by the Parties and to be approved by the Court, *to effectuate the Notice Program and Claims Administration* per the terms of this Settlement…
>
> 4.5.  *The value of a Claim will be determined by the Settlement Administrator* in accordance with the options chosen by the claiming Settlement Class Members and formulas described in Paragraph 4.6.

Settlement Agreement ("S.A.") at ¶¶ 2.2, 2.3, 2.30, and 4.5 (emphases added).

Analytics was thus empowered to effectuate Claims Administration, including the authority to validate and process claims (¶ 2.3) including the handling of amended or technically deficient claims and the process by which they may be resolved; determine whether a claim should be allowed as timely due to technical issues (¶ 2.2); and the value of each claim that is Approved

3

¶¶ 2.2, 4.5). And that is precisely what Analytics did. Wawa fails to identify any way in which Analytics exceeded its authority. If Wawa intended to limit the Settlement Administrator's claims processing discretion and provide Wawa with audit or other claims review rights, the time for obtaining those rights through express terms in the Settlement Agreement has long since passed.

    **B.    Analytics Correctly Accepted Each Claim Under the Terms of the Settlement Agreement.**

        **1.    Timely Amended Claims**

Wawa challenges amended claims filed by two class members and accepted by the Settlement Administrator which Wawa characterizes as "Late-Amended Claims" (*see* Opp. 10–12) and "Mis-States the Number Reported" claims (*id*. 13). Notwithstanding Wawa's misleading and erroneous characterization of these claims, each claim was timely filed and amended prior to the claims deadline. These claims are reflected in Table 1 below:

**Table 1 – Timely Amended Claims**

| Claim No. | Original Submission | Original Amount | Amended Submission | Amended Attestation Requested | Amended Attestation Received | Approved Amount |
|---|---|---|---|---|---|---|
| Claim 1005075 | 8/9/2024 | 1 Card (Tier 1) | 8/23/2024 | 11/4/2024 | 11/4/2024 | 294,113 Cards $1,470,565.00 |
| Claim 1000181 | 8/9/2024 | 100,000 Cards (Tier 1) | 8/23/2024 | 11/4/2024 | 11/4/2024 | 112,590 Cards $562,950.00 |
| Claim 1002860 | 8/5/2024 | 300 Cards (Tier 1) | 8/5/2024 | 11/21/2024 | 11/21/2024 | 4,284 Cards $21,420.00 |

Supp. Analytics Decl. ¶¶ 6–10.

As Table 1 shows, each claim was not only initially submitted *prior* to the original August 12, 2024 claims filing deadline, but each claim was timely amended *before* the extended September 12, 2024 deadline.

<u>Claims 1005075 and 1000181</u>. Claims 1005075 and 1000181 were filed same Claimant and, respectively, reflect Visa and Mastercard branded payment cards cancelled and reissued due

4

to the breach. *Id*. ¶ 7 & n.4. The Claimant contacted Class Counsel on August 9, 2024, to obtain assistance with their claims. Class Counsel directed the Claimant to Analytics. *Id.* ¶ 7 & Ex. A-1. The Claimant advised Analytics that they were unsure whether they could pull together information for the claim by August 12 but were working to confirm the card numbers involved. *Id.* ¶ 7 & Exs. A-1 and A-2 (e-mail chains between Claimant and Analytics).[2] Analytics advised the Claimant to submit their claims by the then-claims deadline with all available information by the deadline and email the dedicated claims inbox with updated information.[3] *Id.* ¶ 7. The Claimant, accordingly, submitted timely claim forms and signed the appropriate attestations on August 12, 2024, listing one Visa card in Claim 1005075, and 100,000 MasterCard cards in Claim 1000181. *Id.* ¶ 7 & n.4.

The claimant then contacted Analytics on August 23, 2024—weeks prior to the extended deadline—to inform Analytics that the Claimant had finalized its research on the number of impacted cards claims (294,112 cards for Claim 1005075, and 112,590 cards for Claim 1000181) and that it had attempted to but was unable to update its claim forms using the website portal. Supp. Analytics Decl. ¶ 8 & Ex. A.-2. It asked Analytics to "advise how [it] can properly amend the correct count of cards for our Tier 1 claim[s]." *Id.* ¶ 8 & Ex. A-2. Pursuant to standard

---

[2] These are the complete e-mail exchanges (with redaction to protect the identity of the Claimant) between the Claimant and Analytics. Class Counsel provided a redacted excerpt of Exhibit A-2 to Wawa during the meet and confer process to demonstrate that the Claimant had amended its claims *before* the claims deadline, and Counsel explained in their November 19, 2024 email the circumstances of these amendments. *See* Second Jt. Decl. ¶¶ 14, 24 & Ex. B Wawa's Opposition omits from its narrative Wawa's knowledge that the claimants provided the amended information *long before the claims deadline.*

[3] Wawa asserts that it is "unclear" who represented to the claimant that they could amend their claims even though Class Counsel informed Wawa that the Settlement Administrator advised the claimant that it should file a claim form by the deadline with information at hand and provide updated information via email when it became available. Second Jt. Decl., Ex. B at 1 ¶ 2.

5

processing protocol, Analytics advised the claimant that it would update Claims 1005075 and 1000181 to reflect the amended card numbers in the email. *Id.* ¶ 8.

Claim 1002860.[4] Claim 1002860 was similarly timely filed on August 5, 2024, prior to the initial claim deadline, and identified 300 Impacted Cards. *Id.* ¶ 9. Immediately after filing its claim, however, the Claimant alerted Analytics that it entered an incorrect number of cards on the claim form and was unable to correct the error with the accurate number of cancelled and replaced cards (4,284) on the website portal. *Id.* Analytics advised the Claimant that it would update the Claim to reflect this correction consistent with standard processing protocol. *Id.* ¶ 9 & Ex. B.

Analytics subsequently (on November 4 and 21) asked both Claimants to provide updated claim forms and new attestations, and both promptly complied. *Id.* ¶ 10. Their prompt responses *on the same days* Analytics requested them, *id.*, reflects their diligence and good faith reliance on Analytics' instructions. These claims are not "late"; they were submitted and amended in advance of the extended claims deadline, and Analytics, relying on the attestations timely submitted with each Claimants' initial claims, did not request new attestations until it undertook its claims processing audit.

Contrary to Wawa's assertions, Analytics acted well within its authority under the Settlement in accepting the amended card numbers via email, with later submission of amended forms and supplemental attestations. A claim is deemed *timely filed* if the Claim Form is submitted

---

[4] Wawa misleadingly suggests that Class Counsel did not share with Wawa the basis on which the Claims Administrator accepted the corrected number of cards for Claim 1002680: "When Wawa raised this issue with Plaintiffs' counsel, they responded that they had other information, other than on the Claim Form showing that 4,284 is the correct number." Parks Decl. ¶ 24; *see also* Opp. 13. In fact, Class Counsel told Wawa the specific reason the claim was valid: the Claimant gave Analytics the corrected card number on August 5, the same day as its claim submission. Second Jt. Decl. ¶ 24, Ex. B, ¶ 2. They did not vaguely refer to "other information," as Wawa asserts.

6

before the Claim Filing Deadline. Settlement Agreement ¶ 2.5 ("A Settlement Class Member that timely submits a Claim Form shall be deemed to have filed a "Claim" for payment from the Settlement Fund."); *see also id*. ¶ 2.4 ("Claim Filing Deadline" means the deadline by which Settlement Class Members must submit a claim for benefits under this Settlement."). To be *eligible* for a payment under the Settlement Fund, class members must also "complete" their claim. *Id*. ¶ 2.5. Nothing in the Agreement, however, requires the Claim Form to be fully *complete* by the filing deadline, facilitating the Settlement Administrator's audit and claims deficiency process. That is, nothing in the Settlement Agreement requires Settlement Class Members to perfect their claims by the Claim Filing Deadline. *See id*. ¶¶ 2.4–2.5. Analytics irrefutably received the Timely Amended Claims from authorized representatives of each Claimant before the deadline, and the Claimants did all they were instructed to do to amend prior to the deadline. Supp. Analytics Decl. ¶¶ 6–10. Accordingly, these Claimants are eligible for payment from the Settlement.

Wawa's arguments ignore these facts and the Settlement's terms. Contrary to Wawa's position, the Settlement Agreement does not preclude Claimants who timely file claims from: (a) amending those claims within a reasonable time if they later discover more accurate information, such as the number of cancelled and replaced Impacted Cards,[5] or (b) correcting minor or technical deficiencies in timely submitted claims. Wawa's arguments are particularly unpersuasive given that Claimants at all times relied on instructions they received from Analytics and cannot be faulted or deemed dilatory. Even if these claims were deemed untimely, courts routinely permit acceptance of marginally untimely claims when claimants made a good faith, reasonable effort to submit a

---

[5] Under Wawa's logic, a claimant would be unable to correct inaccuracies in their claim form, even to *reduce* the amount of their claim. For example, as Class Counsel explained to Wawa (and about which Wawa does not complain), after the claims deadline passed, Claimant 1001470 requested that the number of cards claimed under Tier 1 be *reduced*. Second Jt. Decl. Ex. B at 2.

7

claim by the deadline. *See In re Orthopedic Bone Screw Prod. Liab. Litig.* ("*Orthopedic Bone Screw*"), 246 F.3d 315, 323 (3d Cir. 2001); *In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176, 183–84 (3d Cir. 2000). The Claimants should not be penalized for following these instructions in good faith. Doing so would also run afoul of Rule 23(e)(2)(C)(ii)'s concern about "unduly demanding" claims processing procedures. Fed. R. Civ. P. 23(e), 2018 Advisory Committee.

### 2. Tier 1 Attestation Claims

Wawa also objects to Analytics' accepting what Wawa erroneously deems "Late-Cured Deficient Claims" without explaining what, precisely, the deficiency was. Opp. 12; Parks Decl. ¶ 23. These claims are reflected in Table 2, below:

Table 2 – Tier 1 Attestation Claims

| Claim No. | Filed | Deficiency Notice | Cured | Amount Approved |
|---|---|---|---|---|
| Claim 1003100 | 5/21/2024 | 10/15/2024 | 10/21/2024 | $3,955.00 |
| Claim 1004263 | 5/6/2024 | 10/15/2024 | 10/21/2024 | $8,660.00 |
| Claim 1000975 | 8/12/2024 | 10/15/2024 | 10/22/2024 | $455.00 |
| Claim 1005248 | 5/1/2024 | 10/15/2024 | 10/22/2024 | $500.00 |
| Claim 1005504 | 8/7/2024 | 10/15/2024 | 10/23/2024 | $21,400.00 |

Supp. Analytics Decl. ¶¶ 11, 14 & n.7. Wawa does not dispute that each of these five Tier 1 Claims was *timely filed* and each contained all the information the Settlement Agreement requires for "valid" Tier I claims": (a) the number of Impacted Cards the claimant cancelled and replaced, and (b) a signed attestation as having cancelled and replaced those Impacted Cards and that the information in the Claim form is true and correct. Settlement Agreement ¶ 4.6(a)(i).

The technical deficiency—a clerical oversight—identified by Analytics was that the claimant, at the time of submission, overlooked a second attestation on the sixth and last page of the Claim Form, three pages below the Tier 1 attestation the claimants signed. *See, e.g.*, Supp. Analytics Decl., Ex. D, ECF pp. 7–8 (exemplar of original and corrected form). That attestation, though required for a complete claim, requires redundant certifications (for example, that the

8

information provided in the claim form is true and accurate),[6] certification of certain legal propositions that apply whether or not the attestation is made[7] or relate to ministerial details (*e.g.*, that the claimant read the Notice and Claim Form). None of the attestations goes to the validity of Tier 1 claims that Wawa contests; by the terms of the Settlement Agreement, each was valid upon submission.

As discussed above, Analytics was well within its authority to conduct a deficiency review and provide an opportunity to cure defects. And, as Wawa well knows, Analytics did not begin its deficiency review until *after* the close of the claims period (*see* Supp. Analytics Decl. ¶ 11; Second Jt. Decl. at Ex. B, p. 1 ¶ 3 (explaining why not all deficiencies can be resolved before the deadline))[8] and thus claimants had no opportunity to correct any deficiencies prior to the claims deadline. As part of that process, Analytics identified claims missing the last signature and issued deficiency notices to each of these Claimants on October 15, 2024. Supp. Analytics Decl. ¶ 11. The purpose of issuing such notices is to give claimants who otherwise filed a valid claim an opportunity to cure any mistakes, *e.g.*, omitting a field, or as here, a second signature, required for a complete claim. Indeed, Analytics owed a duty to provide that notice and opportunity to cure to effectuate the purpose of the Settlement, particularly where, as here, the defect was merely a missing signature on a page easily overlooked. *See Dahingo v. Royal Caribbean Cruises, Ltd.*, 312

---

[6] Additionally, the second attestation signature asks the claimant to certify they are a member of the Class—something they attested to by signing the Tier 1 claim form.

[7] For example, the claimant must certify that it acknowledges that "by operation of law" the claimant is releasing claims.

[8] Such deficiency processes are standard in class action settlement administration. *See e.g. Martin v. Murfreesboro TN*, No. 19-cv-00914, 2020 WL 13854712, at *3 (M.D. Tenn. Jan. 27, 2020) (discussing deficiency process); *Burns v. Falconstor Software, Inc.,* No. 10-cv- 4572, 2015 WL 13855738, at *1 (E.D.N.Y. July 14, 2015) (same); *In re Delphi Corp. Sec. Litig.*, No. 05-md-1725, 2010 WL 2737159, at *3 (E.D. Mich. July 9, 2010) (same).

F. Supp. 2d 440, 448–49 (S.D.N.Y. 2004). Each Claimant in this group promptly provided a completed verification page within a few days after Analytics mailed the deficiency letters. Supp. Analytics Decl. ¶ 14 & n.6.

As with the purported "Late-Amended Claims," Table 2 shows that these claims *were not submitted late*. *Id.* ¶ 14. Each was timely and, by the express terms of the Settlement Agreement *valid* when they were timely submitted with the first attestation as to the number of cancelled and replaced Impacted Cards. There is no indication of neglect or delay, or that they would have failed to correct the issues with their otherwise timely filed claims had Analytics notified them of the defect prior to the claims filing deadline.

### 3. Claims Subject to Technical Issues

Wawa identifies four "Late-Filed Claims" (*see* Opp. 9–10) that it contends must be rejected because they were filed after the September 12, 2024 deadline. These claims are summarized below in Table 3:

**Table 3 – Claims Subject to Technical Issues**

| Claim # | Initiated Online | Claimant Contacted | Re-submitted | Amount Claimed & Approved |
|---|---|---|---|---|
| Claim 1004576 | 6/13/2024 | 8/5/2024 & 9/3/2024 | 9/13/2024 | $7,135.00 (Tier 1) |
| Claim 1000913 | 6/17/2024 | 8/1/2024 & 9/3/2024 | 9/19/2024 | $765.00 (Tier 1) |
| Claim 1001235 | 8/7/2024 | 9/6/2024 | 9/16/2024 | $1,195.00 (Tier 1) |
| Claim 1000874 | 9/3/2024 | 8/1/2024 | 9/25/2024 | $1,095.00 (Tier 1) |

Supp. Analytics Decl. ¶ 5 & n.3; Second Jt. Decl. ¶¶ 27–28. As Table 3 shows, the Claimants initiated their claims prior to the applicable claims filing deadline. Each of these claimants initiated a claim by entering their unique claim number and pin when they accessed the filing portal, and Analytics has a record of that access. Supp. Analytics Decl. ¶ 5. However, no further data was captured. *Id.* Because Analytics cannot ascertain whether these submissions failed as a result of a

10

system error or claimant error, Analytics permitted each Claimant that sought to correct the technical issue to do so, even though it was after the September 12, 2024 deadline. *Id*.

The Court has traditional powers in equity to allow the Claims Subject to Technical Issues. *See, e.g., In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194–95 (3d Cir. 2000); *see also* Manual for Complex Litig., Fourth § 21.662 (2004) ("The court should allow adequate time for late claims before any refund or other disposition of settlement fund occurs…."). The determination of whether to accept proof of claims after the deadline is measured by whether there is "good cause" to do so, or whether the claimant has shown "excusable neglect." *See, e.g., In re Cendant Corp. Prides Litig.*, 233 F.3d at 195; *Orthopedic Bone Screw*, 246 F.3d at 321–23. To evaluate excusable neglect, the Court looks to the "fault" of the untimely party, as well as to (i) prejudice to the non-movant; (ii) length of delay and effect on proceedings; (iii) reason for the delay, "including whether it was within the reasonable control of the movant"; and (iv) good faith of the moving party. *Orthopedic Bone Screw*, 246 F.3d at 322–23.

These factors strongly support accepting the Claims Subject to Technical Issues. Again, each of these claims was commenced (and, quite possibly, completed and submitted) before the claims deadline. *See* Table 3. There is no evidence that these submissions were the product of bad faith or fraud, as supposed to simple technical problems. Moreover, accepting these claims will not delay the litigation, nor will it prejudice Wawa as these claims reflect a nominal $10,190 of the total $10 million (or 1/10th of 1 percent) to be paid to Claimants, *see* Supp. Analytics Decl. ¶¶ 5, 21, and is an amount well below the $18.5 million cap on Tier 1 claims Wawa committed to pay under the Settlement Agreement. Simply put, it would be unfair to penalize Claimants for issues with a website they do not control when they attempted and were able to correct the deficiency once informed about it. Second Jt. Decl. ¶¶ 27–30. Their claims should be honored.

### C. Wawa's Demand to Revise Tier 1 Eligibility Criteria is Contrary to the Express Terms of the Settlement and Due Process.

The requirements for a valid Tier 1 Claim are crystal clear under the Settlement Agreement: (1) an attestation to having cancelled and replaced "Impacted Cards" and (2) the number of Impacted Cards replaced in response to the Data Security Incident. Settlement Agreement ¶ 4.6(a)(i). "Impacted Cards" is a defined term as: (1) payment cards "alerted-on" by a relevant card brand notice, *or* (2) used at Wawa during a specific time period. *Id.* ¶ 2.20. No supporting documentation is required. Class Notice (ECF No. 360-4) at ECF pp. 36–37 (providing that other than the attestation and number of cancelled and replaced Impacted Cards, "Class Members are not required to provide any other documentation").

Although Tier 1 benefits are available to any Class Member that cancelled and replaced payment cards used at Wawa during a specified time period per the Settlement Agreement, whether or not those cards were "alerted on" as identified by the card brands, Wawa impermissibly asks the Court to reject claims where the number of cards claimed under Tier 1 is "disproportionate" to the number of "alerted on" cards. Opp. 13–14. The claims Wawa asks the Court to reject amount to around $253,290, and range in value from as low as $500 to $73,215. Parks Decl. ¶¶ 26–27 (ECF No. 466-2).

The Court cannot do so. First, prohibiting claims for institutions with cancelled and replaced cards in numbers "disproportionate" to the alerted-on cards impermissibly alters the terms of the Settlement by limiting Class Members' eligibility for Tier 1 benefits in a manner not provided for in the Settlement.[9] *Evans v. Jeff D.*, 475 U.S. 717, 727 (1986)) ("[T]he power to

---

[9] Wawa asserts without support (either in the brief or its counsel's declaration) that Class Counsel represented that the Administrator would "weed out" claims in excess of alerted-on cards. Opp. 13. This is expressly contrary to the Settlement's "Entire Agreement" clause. Settlement

12

approve or reject a settlement negotiated by the parties . . . does not authorize the court to require the parties to accept a settlement to which they have not agreed."). Second, it would violate the due process rights of Settlement Class members by imposing new restrictions on their right to recovery under the Settlement of which they had no notice and to which they had no opportunity to object. *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, No. 1203, 2017 WL 937735, at *5 (E.D. Pa. Mar. 9, 2017) (due process requires notice of changes that materially and adversely affect class member rights). Third, Wawa's proposed "disproportionate" standard would be so subjective as to render the Settlement unfair, which is one reason FI Plaintiffs never agreed to it. *See, e.g.*, *In re Flint Water Cases*, 571 F. Supp. 3d 746, 781 (E.D. Mich. 2021) ("The use of objective criteria to determine settlement distribution is a hallmark of fairness."). Whatever Wawa's dissatisfaction with the terms to which it agreed, it cannot alter them now.

### D. Wawa's Demand for Class Counsel's Communications Is Unwarranted

Wawa's demand for discovery of Class Counsel's communications relies solely on inappropriate innuendo and factual misstatements.[10] First, the increase in the claims rate after Class Counsel's August 1 letter is expected, not suspicious. Opp. 4, 14. Plaintiffs sought the extension of the claims deadline—which the Court granted in part—for the *express purpose* of conducting outreach to Settlement Class Members to increase the claims rate (which they believed to be too low) and ensure that more class members recovered under the Settlement.[11] Class Counsel have also been transparent and detailed about their communications with Class Members. Joint

---

Agreement ¶ 12.8 ("No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.").

[10] Plaintiffs will further address these points in their forthcoming opposition to Wawa's motion to compel.

[11] FI Pls.' Mot. to Extend Aug. 12, 2014 Settlement Claims Deadline ("Mot. to Extend Deadlines") ¶ 16 (ECF No. 447).

13

Decl. e.g., ¶ 82 (describing personal outreach to hundreds of Class Members), ¶ 85 (outreach to Class Members that attempted to file claims) (ECF No. 460-3). It is thus unsurprising that claims rates increased following that outreach. Nor is the claims rate itself grounds for suspicion. Far from being "unbelievable," claims rates in financial institution data breach settlements can achieve rates even higher than that obtained here.[12] Wawa's bad bet on the claims rate (Opp. 4, Parks Decl. ¶ 9)[13] does not warrant the intrusive discovery it seeks.

Second, Class Counsel's August 1 letter is not remotely misleading. Its guidance that Class Members "confirm" (Opp. 3) that the institution cancelled and replaced cards is wholly consistent with the Court-approved Claim Form, and actually encourages greater diligence. The pertinent, full paragraph of the letter states:

> Claiming under **Tier 1** (cancel and replace) could not be easier. Simply confirm that your financial institution **cancelled and replaced qualifying cards as a result of the data breach incident** and **certify** the number of cancelled and replaced cards. **No further documentation is required**.

ECF 466-4 (emphasis added). That communication accurately relays the Tier 1 claim requirements. Settlement Agreement ¶ 4.6(a)(i). While the Claim Form merely instructs Class Members to "review your records" to identify whether the member *issued* Impacted Cards (ECF 360-4 at 48)—not whether it cancelled and replaced them—Counsels' August 1 letter advises

---

[12] *See* ECF No. 461-1 at 8 n.7, *citing First Choice Fed. Credit Union v. Wendy's Co.*, No. 2:16-cv-00506 (W.D. Pa.), ECF No. 185-3 at ¶¶ 5, 13 (1,389 claims filed out of 5,168 class members, for a claims rate of 26.8% of class members); *Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-00356 (W.D. Wash.), ECF No. 168 at ¶ 5 & ECF No. 184 at ¶ 3 (748 approved claims out of 4,315 class members, for a claims rate of 17.3% of class members). While Class Counsel wrote that the claims rate in this Settlement "is consistent with and even higher than most other data breach settlements," ECF No. 461-1 at 8, it is simply not true that the claims rate here is unprecedented or unbelievable. It is lower than two of the most recent similar settlements, and Wawa knew that before filing its opposition.

[13] Defense Counsel's unsupported expectation of a 2–5% claims rate is well below those obtained in data breach settlements. *See* ECF No. 461-1 at 8 n.7 (citing claims rates, none of which are below 5 percent).

14

confirmation of eligibility before submitting a claim. No reasonable person could read that paragraph as encouraging erroneous claims as Wawa implies. The letter's statement that supporting documentation is not required is *precisely* consistent with the Court-approved Claim Form. ECF No. 360-4 at 46 ("No supporting documentation is required."); 48 ("You are not required to provide any documentation."). And Class Counsel's emphasis on the ease of filing a Tier 1 claim form is not only true, but also appropriately ensures Class Members are not discouraged from filing claims. *See, e.g.,* Fed. R. Civ. P. 23(e)(2)(C)(ii) advisory committee note (2018 amendment) (requiring consideration of burden of claim filing at settlement approval).

Third, Class Counsel has an unquestionable right to communicate with the class,[14] including by giving legal advice to advance their interests and encouraging them to file claims. Wawa has identified *nothing* that even remotely suggests Class Counsel's communications with the Class Members were in any way misleading. As Wawa's Opposition makes clear, Wawa possesses all the information pertinent for the Court's determination of whether Analytics' properly approved claims. It has copies of hundreds of Tier 1 claim forms, multiple spreadsheets illustrating Analytics' classification decisions, a template copy of Class Counsel's August 1 letter, and pertinent communications between Analytics and claimants.

## IV. CONCLUSION

FI Plaintiffs respectfully request that the Court approve Analytics' final valuation of the claims, grant final approval to the Settlement, and deny Wawa's requests to reduce and delay its Settlement payment obligations.

---

[14] *Dial Corp. v. News Corp.*, No. 13-cv-6802, 2015 WL 9256930, at *2 (S.D.N.Y. Nov. 16, 2015).

15

Dated: November 29, 2024

Respectfully submitted,

*/s/ Mindee J. Reuben*
Mindee J. Reuben (PA ID 75308)
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (215) 854-4060
Email: mreuben@litedepalma.com

Gary F. Lynch (PA ID 56887)
Jamisen A. Etzel
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Email: gary@lcllp.com
Email: jamisen@lcllp.com

Jeannine M. Kenney (PA ID 307635)
**HAUSFELD LLP**
325 Chestnut Street, #900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Email: jkenney@hausfeld.com

Christian Levis (*pro hac vice*)
Amanda G. Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Email: clevis@lowey.com
Email: afiorilla@lowey.com

Anthony M. Christina (PA ID 322528)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Email: achristina@lowey.com

*Class Counsel for Financial Institution Plaintiffs*